IN THE

# United States Court of Appeals

## FOR THE THIRD CIRCUIT



UNITED STATES OF AMERICA EX REL.,
STEPHEN A. KRAHLING; JOAN A. WLOCHOWSKI,

*against*

MERCK & CO, INC.,

STEPHEN A. KRAHLING; JOAN A. WLOCHOWSKI,

*Appellants.*

---

*On Appeal from the United States District Court
for the Eastern of District of Pennsylvania
The Honorable Chad F. Kenney, Case No. 2:10-04374-CFK*

## JOINT APPENDIX
## VOLUME XIX OF XLV
## Pages Appx8001 to Appx8500
## (Filed Under Seal)

VENABLE LLP
750 East Pratt Street, Suite 900
Baltimore, Maryland 21202
410-244-7400

MORGAN LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, Pennsylvania 19103
215-963-5000

HOGAN LOVELLS US LLP
555 Thirteenth Street, NW
Washington, DC 20004
202-637-5600

*Attorneys for Defendant-Appellee*

CONSTANTINE CANNON LLP
355 Madison Avenue, 9th Floor
New York, New York 10017
212-350-2700

KELLER GROVER, LLP
1965 Market Street
San Francisco, California 94103
415-543-1305

*Attorneys for Relators-Appellants*



# Table of Contents

**Page**

**Volume III**
**(Filed Under Seal)**

Order of the Honorable Lynne A. Sitarski, dated May 16, 2019
(Doc. 250) ................................................................. Appx181

Statement of Material Facts by Defendant in Support of
Its First Dispositive Motion, dated October 25, 2019
(Doc. 281-3) ............................................................. Appx185

Statement of Material Facts by Defendant in Support of
Its Fourth Dispositive Motion, dated October 25, 2019
(Doc. 287-3) ............................................................. Appx247

Statement of Material Facts by Relators,
dated October 25, 2019 (Doc. 294) ........................... Appx295

Declaration of Gary Reilly, for Relators,
in Support of Motion, dated October 25, 2019 (Doc. 24) ......... Appx396

Exhibit 1 to Reilly Declaration -
Expert Report of Eugene Shapiro, M.D.,
dated March 13, 2018. ........................................... Appx438

Exhibit 2 to Reilly Declaration -
Expert Report of Dr. Robert Malone, M.D.,
dated March 13, 2018 ............................................ Appx460
*(Cont'd in Vol IV)*

**Volume IV**
**(Filed Under Seal)**

Exhibit 3 to Reilly Declaration -
Expert Report of David A. Kessler, M.D.,
dated March 14, 2018, with Schedules
and Appendices ................................................... Appx551
*(Cont'd in Vol V)*

**Table of Contents**
**(Continued)**

**Volume V**
**(Filed Under Seal)**

Exhibit 4 to Reilly Declaration -
Deposition Testimony of David Kessler, M.D.,
taken September 28, 2018 ...................................................... Appx1483
*(Cont'd in Vol VI)*

**Volume VI**
**(Filed Under Seal)**

Exhibit 5 to Reilly Declaration -
Expert Report of D. Bruce Burlington, M.D.,
dated June 19, 2018 ............................................................... Appx1588

Exhibit 6 to Reilly Declaration -
Deposition Testimony of D. Bruce Burlington, M.D.,
taken December 13, 2018 ....................................................... Appx1637

Exhibit 7 to Reilly Declaration -
Deposition Testimony of Mark Pallansch, M.D.,
taken October 13, 2017 .......................................................... Appx1715

Exhibit 8 to Reilly Declaration -
Deposition Testimony of Eugene Shapiro, M.D.
taken November 7, 2018 ......................................................... Appx1765

Exhibit 9 to Reilly Declaration -
Deposition Testimony of Alison L. Fisher, Ph.D.,
taken November 1, 2016 ......................................................... Appx1822

Exhibit 10 to Reilly Declaration -
Expert Report of Ann M. Arvin, M.D.,
dated June 11, 2018 ............................................................... Appx1910

Exhibit 11 to Reilly Declaration -
Letter from Dr. Robert Redfield, Director, CDC,
dated May 24, 2018 ............................................................... Appx1945

**Table of Contents**
**(Continued)**

**Page**

Exhibit 12 to Reilly Declaration -
Letter from Dr. Anne Schuchat, Principal Deputy
Director, CDC, dated September 26, 2017 ........................... Appx1950

Exhibit 13 to Reilly Declaration -
Statement of Dr. Jesse Goodman, FDA,
dated April 18, 2007 .............................................................. Appx1956

Exhibit 14 to Reilly Declaration -
Letter from Merck to Jacqueline Little, Ph.D.,
dated March 23, 2006 (MRK-CHA00214088-148) ............... Appx1960
*(Cont'd in Vol VII)*

**Volume VII**
**(Filed Under Seal)**

Exhibit 15 to Reilly Declaration -
Deposition Testimony of Jonathan L. Temte, M.D., Ph.D.,
taken August 17, 2018 ........................................................... Appx2010

Exhibit 16 to Reilly Declaration -
Expert Report of Peter H. Calcott, B.Sc. (Hons.), D.Phil.,
dated March 12, 2018 ............................................................ Appx2061

Exhibit 17 to Reilly Declaration -
Deposition Testimony of Joye L. Bramble, Ph.D.,
taken January 6, 2017 ............................................................ Appx2141

Exhibit 18 to Reilly Declaration -
FDA Warning Letter, dated February 9, 2001
(MRK-CHA00209399-409) .................................................... Appx2220

Exhibit 19 to Reilly Declaration -
Excerpts from Defendant Merck's Answer to
Amended Complaint (ECF No. 62) ....................................... Appx2232

**Table of Contents**
**(Continued)**

                                                                                                    **Page**

Exhibit 20 to Reilly Declaration -
Excerpts from Defendant Merck's Responses and
Objections to Relator's Third Set of Requests for Admission,
dated August 16, 2017 .......................................................... Appx2239

Exhibit 21 to Reilly Declaration -
ProQuadTM (Measles, Mumps, Rubella and Varicella
[Oka/Merck] Virus Vaccine Live)-Original Application
(MRK-CHA00158126-79) ...................................................... Appx2293

Exhibit 22 to Reilly Declaration -
Expert Report of William L. Atkinson, M.D., MPH,
dated June 12, 2018 ............................................................... Appx2348

Exhibit 23 to Reilly Declaration -
Deposition Testimony of Jonathan Hartzel, Ph.D.,
taken June 23, 2017 ............................................................... Appx2380

Exhibit 24 to Reilly Declaration -
Expert Report of Anna Durbin, M.D, dated June 14, 2018 ... Appx2476
***(Cont'd in Vol VIII)***

**Volume VIII**
**(Filed Under Seal)**

Exhibit 25 to Reilly Declaration -
Expert Report of Marcela Pasetti, Ph.D.,
dated June 14, 2018 ............................................................... Appx2511

Exhibit 26 to Reilly Declaration -
Excerpts of Presentation, Principles of Vaccinology,
produced as "Principles of Vaccination.ppt"
(MRK-CHA01339555) .......................................................... Appx2534

Exhibit 27 to Reilly Declaration -
Deposition Testimony of Mary K. Yagodich,
taken August 18, 2016 ........................................................... Appx2538

**Table of Contents**
(Continued)

Exhibit 28 to Reilly Declaration -
GlaxoSmithKline Application for Priorix
(GSK-MMR-IND-0019450-76) ............................................. Appx2631

Exhibit 29 to Reilly Declaration -
Deposition Testimony of Marcela Pasetti, Ph.D.,
taken December 4, 2018 ....................................................... Appx2659

Exhibit 30 to Reilly Declaration -
Deposition Testimony of Anna P. Durbin, M.D.,
taken October 8, 2018 ........................................................... Appx2699

Exhibit 31 to Reilly Declaration -
Excerpts from Rationale for the M-M-R®II End Expiry
Clinical Studies Presentation (MRK-CHA01893680-730) ... Appx2788

Exhibit 32 to Reilly Declaration -
Letter to the Editor "Comparability of M-M-R™II and
Priorix" from Scott Thaler, M.D., *et al.*, *The Pediatric
Infectious Disease Journal*, September 1999:18(9)
(MRK-CHA00088592-3) ....................................................... Appx2836

Exhibit 33 to Reilly Declaration -
Phase V Clinical Development Plan for M-M-R®II
(MRK-CHA00667054-122) ................................................... Appx2839

Exhibit 34 to Reilly Declaration -
Fax from Yolanda Stewart to Donna Boyce,
dated April 25, 2012 (GSK-MMR-IND-0029256-63) ........... Appx2909

Exhibit 35 to Reilly Declaration -
Letter from Karen L. Goldenthal, M.D. to Angus Grant, Ph.D.,
dated September 2, 1997 (GSK-MMR-IND-0000004-7) ...... Appx2918

Exhibit 36 to Reilly Declaration -
Email from Katalin G. Abraham to Keith D. Chirgwin, M.D.,
dated October 5, 1998 (MRK-CHA00095142) ..................... Appx2923

# Table of Contents
## (Continued)

**Page**

Exhibit 37 to Reilly Declaration -
M-M-R®II Label (MRK-CHA01449029-40) ....................... Appx2925

Exhibit 38 to Reilly Declaration -
Deposition Testimony of Mark Stannard,
taken December 13, 2016 ...................................................... Appx2938
*(Cont'd in Vol IX)*

## Volume IX
## (Filed Under Seal)

Exhibit 39 to Reilly Declaration -
Deposition Testimony of Luwy Musey, M.D.,
taken October 7, 2016 .......................................................... Appx3023

Exhibit 40 to Reilly Declaration -
Deposition Testimony of Ann M. Arvin, M.D.,
taken November 12, 2018 ..................................................... Appx3129

Exhibit 41 to Reilly Declaration -
Deposition Testimony of William Nichols,
taken October 25, 2018 ......................................................... Appx3213

Exhibit 42 to Reilly Declaration -
Proposed New Stabilizer for M-M-R®II,
dated July 26, 2022 (MRK-CHA00207690-7735) ................ Appx3249

Exhibit 43 to Reilly Declaration -
M-M-R®II Mumps End Expiry Study: AIGENT Assay Issues
Impact on Study Criteria Regulatory Implications,
dated October 11, 2002 (MRK-CHA00094161-82) .............. Appx3296

Exhibit 44 to Reilly Declaration -
Memo re: Historical Review and Confirmation of Mumps
Virus Potency Formulation Targets in M-M-R®II,
dated April 8, 2011 (MRK-CHA01456760) .......................... Appx3319

# Table of Contents
## (Continued)

Exhibit 45 to Reilly Declaration -
Presentation, M-M-R II Mumps End Expiry Trial, produced as
"CDOC presentation November 15-00-draft.ppt"
(MRK-CHA00020396) .......................................................... Appx3321

Exhibit 46 to Reilly Declaration -
Memo re: Stability of Mumps Component in Merck's Live
Virus Vaccines, dated October 5, 2000
(MRK-CHA00587859-62) ..................................................... Appx3419

Exhibit 47 to Reilly Declaration -
Memo re: Stability of Measles, Mumps, and
Rubella Components in Merck's Live Virus Vaccines,
dated October 17, 2000 (MRK-CHA00549487-94) .............. Appx3424

Exhibit 48 to Reilly Declaration -
Email from Katalin G. Abraham to Bonita M. Stankunas,
dated October 5, 2000 (MRK-CHA00284623-9) .................. Appx3433

Exhibit 49 to Reilly Declaration -
Deposition Testimony of Philip S. Bennett,
taken May 24, 2017 .............................................................. Appx3441

## Volume X
## (Filed Under Seal)

Exhibit 50 to Reilly Declaration -
Email from Keiko Simon, dated October 2, 2002
(MRK-CHA00615147-74) ..................................................... Appx3501

Exhibit 51 to Reilly Declaration -
Internal Strategy Document regarding M-M-R®II
Regulatory Compliance (MRK-CHA00019225-45) .............. Appx3530

Exhibit 52 to Reilly Declaration -
"Genetic Heterogeneity of Mumps Strains: Potential
Implications in Comparative Neutralization Studies" CBER
Background Information, dated November 1999
(MRK-CHA00020635-42) ..................................................... Appx3552

**Table of Contents**
(Continued)

Exhibit 53 to Reilly Declaration -
Draft memo, produced as "Outstanding-
issuesMMRV&MMRII.doc"
(MRK-CHA00198876-91) ..................................................... Appx3561

Exhibit 54 to Reilly Declaration -
Memo re: Mumps neutralization meeting minutes,
dated September 16, 1999 (MRK-CHA00020425-7) ............ Appx3578

Exhibit 55 to Reilly Declaration -
Email from Katalin G. Abraham to Keith D. Chirgwin,
dated February 25, 2000 (MRK-CHA00095143) .................. Appx3582

Exhibit 56 to Reilly Declaration -
Memo re: Team Biologics Close Out – Form FDA 483,
dated October 11, 2000 (MRK-CHA00071265-71) .............. Appx3584

Exhibit 57 to Reilly Declaration -
Email from Dorothy Margolskee, M.D., to
Florian Schodel, M.D., with attachments,
dated February 26, 2001
(MRK-CHA00549510-35) ..................................................... Appx3592

Exhibit 58 to Reilly Declaration -
Email from Joseph F. Heyse with attachments,
dated March 5, 2001
(MRK-CHA00616007-12) ..................................................... Appx3627

Exhibit 59 to Reilly Declaration -
Response to FDA 483 Observation 3
(MRK-CHA00086295-7) ...................................................... Appx3634

Exhibit 60 to Reilly Declaration -
Draft Response to FDA 483 Observation 3
(MRK-CHA00086298-317) .................................................. Appx3638

Exhibit 61 to Reilly Declaration -
Draft Response to FDA 483 Observation 3
(MRK-CHA00562230-41) .................................................... Appx3659

# Table of Contents
## (Continued)

Exhibit 62 to Reilly Declaration -
Draft Response to FDA 483 Observation 3
(MRK-CHA01440844-64) ...................................................... Appx3672

Exhibit 63 to Reilly Declaration -
Letter from Robert L. McKee, Ph.D. to Steven A. Masiello,
dated March 8, 2001 (MRK-CHA01537603-11) ................... Appx3694

Exhibit 64 to Reilly Declaration -
Deposition Testimony of Dorothy Margolskee, M.D.,
taken April 21, 2017 .............................................................. Appx3704

Exhibit 65 to Reilly Declaration -
Excerpts from Label Claim Compliance M-M-R®II
Peer Review Meeting, dated July 15, 2002
(MRK-CHA00322038-65) ...................................................... Appx3796

Exhibit 66 to Reilly Declaration -
Memo re: Executive Summary-CBER/Merck Meeting
April 4, 2001, dated April 8, 2001
(MRK-CHA01649955-6) ......................................................... Appx3819

Exhibit 67 to Reilly Declaration -
Memo re: Minutes, Meeting with CBER on 4/4/01
Regarding Mumps Stability, dated April 9, 2001
(MRK-CHA00754687-91) ....................................................... Appx3822

Exhibit 68 to Reilly Declaration -
Email from Christopher J. Petroski to Keith D. Chirgwin,
dated January 21, 2002 (MRK-CHA00561350-5) ................. Appx3828

Exhibit 69 to Reilly Declaration -
Presentation, M-M-R®II Mumps Expiry Mumps Potency
Claim in Label (MRK-CHA00334863-8) .............................. Appx3835

Exhibit 70 to Reilly Declaration -
Presentation, Mumps Expiry- Label Claim, produced as
"RMC mumps expiry update.ppt" (MRK-CHA00086318) ... Appx3842

**Table of Contents**
(Continued)

Exhibit 71 to Reilly Declaration -
Memo re: M-M-R®II: Mumps End Expiry label change –
filing strategy, dated August 2, 2001
(MRK-CHA00247149-52) ...................................................... Appx3846

Exhibit 72 to Reilly Declaration -
Email from Keith D. Chirgwin to Manal A. Morsy with
attachment, dated January 22, 2002
(MRK-CHA00019084-5) ...................................................... Appx3851

Exhibit 73 to Reilly Declaration -
Email from Cynthia F. Morrisey, dated September 5, 2002
(MRK-CHA01562819-20) ...................................................... Appx3873

Exhibit 74 to Reilly Declaration -
Email from Roberta L. McKee, Ph.D.,
dated October 31, 2002 (MRK-CHA00094134-5) ................ Appx3876

Exhibit 75 to Reilly Declaration -
Memo, Mumps and Rubella Formulation and Potency Assay
Format Changes to Support Potency through Twenty-four
Month Expiry (MRK-CHA01894982-98) ............................. Appx3879

Exhibit 76 to Reilly Declaration -
Email from Mark S. Galinski to Keiko Simon,
dated August 23, 2004 (MRK-CHA01564065-8) .................. Appx3897

Exhibit 77 to Reilly Declaration -
Email from Alison L. Fisher with attachments,
dated September 20, 2004
(MRK-CHA01574732-8) ...................................................... Appx3902

Exhibit 78 to Reilly Declaration -
Presentation, Accomplishments to Date,
produced as "accomplishments to 5-17-01.ppt"
(MRK-CHA00724288) ......................................................... Appx3910

**Table of Contents**
**(Continued)**

Exhibit 79 to Reilly Declaration -
Draft letter from Roberta L. McKee, Ph.D., to
Michael Angelo, with metadata date of October 17, 2002
(MRK-CHA01649892-3) ...................................................... Appx3917

Exhibit 80 to Reilly Declaration -
Email from Manal Morsy to Keith D. Chirgwin,
dated November 4, 2002 (MRK-CHA00501762-5) .............. Appx3920

Exhibit 81 to Reilly Declaration -
Memo re: Preparations for the Mumps Stability-CBER
discussion, dated March 19, 2001
(MRK-CHA00019430-2) ...................................................... Appx3925

Exhibit 82 to Reilly Declaration -
Email from Philip S. Bennett to Joseph M. Antonello,
dated September 5, 2002 (MRK-CHA00780325-6) .............. Appx3929

Exhibit 83 to Reilly Declaration -
Memo re: Mumps End Expiry study issues,
with Attachment (MRK-CHA00019246-67) ........................ Appx3932

Exhibit 84 to Reilly Declaration -
Draft Presentation, M-M-R II to October 8, 2002 CRRC,
produced as "Draft#1-CRRC 10-08-02 slides.ppt"
(SCHOFIELD_00000201) ...................................................... Appx3955

Exhibit 85 to Reilly Declaration -
Presentation, M-M-R II to October 8, 2002 CRRC,
produced as"CRRC-10-08-02 slides.ppt"
(MRK-CHA00027726) ........................................................ Appx3991
*(Cont'd in Vol XI)*

**Volume XI**
**(Filed Under Seal)**

Exhibit 86 to Reilly Declaration -
Email from Philip S. Bennett with attachment,
dated March 14, 2001 (MRK-CHA00562218-9) ................... Appx4021

**Table of Contents**
(Continued)

Exhibit 87 to Reilly Declaration -
Meeting Agenda, dated March 7, 2002
(MRK-CHA00205854-60) ..................................................... Appx4024

Exhibit 88 to Reilly Declaration -
Email from Manal Morsy, M.D., Ph.D. to Deitra E. Arena,
dated March 27, 2002 (MRK-CHA00064005-12) ................. Appx4032

Exhibit 89 to Reilly Declaration -
Email from Manal Morsy, M.D., Ph.D. to David Krah, M.D.,
dated April 10, 2002 (MRK-CHA00561310-2) ..................... Appx4041

Exhibit 90 to Reilly Declaration -
Spreadsheet for June 10, 2003 Vaccine Assay Committee
meeting (MRK-CHA00440797-811) ...................................... Appx4045

Exhibit 91 to Reilly Declaration -
Minutes of CBER Teleconference, dated December 7, 2001
(MRK-CHA00019434-7) ....................................................... Appx4061

Exhibit 92 to Reilly Declaration -
Draft Summary of Teleconference Notes
(MRK-CHA00024596-9) ....................................................... Appx4066

Exhibit 93 to Reilly Declaration -
Memo re: CBER teleconference (December 7, 2001): Mumps
Inspection results and discussion, dated December 13, 2001
(MRK-CHA00071082-9) ....................................................... Appx4071

Exhibit 94 to Reilly Declaration -
Memo re: Consultation with Dr. William Fairweather
on Vaccine Stability, dated December 14, 2000
(MRK-CHA00590949-58) ...................................................... Appx4080

Exhibit 95 to Reilly Declaration -
Excerpts from Proposed New Stabilizer for M-M-R®II,
dated August 2002 (MRK-CHA01591461-87) ...................... Appx4091

**Table of Contents**
(Continued)

Page

Exhibit 96 to Reilly Declaration -
Email from Manal Morsy, M.D., Ph.D. to Joye L. Bramble,
dated June 11, 2002 (MRK-CHA00494158-61) .................... Appx4117

Exhibit 97 to Reilly Declaration -
M-M-R®11 Defense Action Plan, dated June 1999
(MRK-CHA00285276-96) .................................................... Appx4122

Exhibit 98 to Reilly Declaration -
Memo re: Statement of Interest for ProQuad™ Measles,
mumps, rubella, and varicella virus vaccine live, dated
November 10, 2000 (MRK-CHA00325472-91) .................... Appx4144

Exhibit 99 to Reilly Declaration -
Memo re: Statement of Interest for ProQuad™ Measles,
mumps, rubella, and varicella virus vaccine live,
dated November 10, 2000 (MRK-CHA00671410-28) .......... Appx4165

Exhibit 100 to Reilly Declaration -
Memo re: Minimum Expiry Specification Limit for Mumps
Potency in M-M-R®II, dated July 5, 2001
(MRK-CHA01896349) .......................................................... Appx4185

Exhibit 101 to Reilly Declaration -
Excerpts from Clinical and Regulatory Review Committee
Development Projects, dated October 29, 2002
(MRK-CHA01725276-364) ................................................... Appx4187

Exhibit 102 to Reilly Declaration -
Presentation, MMRII Mumps End Expiry study status &
Regulatory implications, produced as "slides for
GRSRC_MumpsEndExpiry -10-11-02.ppt"
(MRK-CHA00040705) .......................................................... Appx4197

Exhibit 103 to Reilly Declaration -
Presentation, MMRII Mumps End Expiry study status &
Regulatory implications, produced as
"slides for GRSRC -10-11-02.ppt"
(MRK-CHA00094159) .......................................................... Appx4227

**Table of Contents**
(Continued)

Exhibit 104 to Reilly Declaration -
Email from Joseph F. Heyse to Keith D. Chirgwin,
dated September 30, 2002 (MRK-CHA01582137-9) ............ Appx4256

Exhibit 105 to Reilly Declaration -
MRL Clinical Study Report, Multicenter Study: A Study of
M-M-R II at Mumps Expiry Potency in Healthy Children 12
to 18 Months of Age (Protocol 007)
(MRK-CHA00224982-26529) ............................................... Appx4260

Exhibit 106 to Reilly Declaration -
Email from Dorothy Margolskee to Keith D. Chirgwin,
dated March 8, 1998 (MRK-CHA00095320-1) ..................... Appx4419

Exhibit 107 to Reilly Declaration -
Slide Deck from M-M-R™ Expiry Investigators Meeting,
dated March 15-16, 1999 (MRK-CHA00017605-12) ........... Appx4422

Exhibit 108 to Reilly Declaration -
Excerpts from Merck Submission to the Department of Justice,
dated April 9, 2012 (MRK-CHA0002549-75) ....................... Appx4431

Exhibit 109 to Reilly Declaration -
Letter from Karen L. Goldethal, M.D. to
Keith Chirgwin, M.D., dated September 8, 1998
(MRK-CHA00001467-9) ....................................................... Appx4459

Exhibit 110 to Reilly Declaration -
Memo re: BB-IND 1016: Summary of discussion with
Dr. Kathryn Carbone and Ms. Luba Vujcic (CBER) regarding
the Mumps neutralization assay, dated February 8, 2000
(MRK-CHA00001255-7) ....................................................... Appx4463

Exhibit 111 to Reilly Declaration -
Memo re: Communication with Dr. Kathryn Carbone (CBER)
on April 12, 200 regarding CBER's meeting (face to face-
March 13, 2000) minutes and the mumps neutralization
and ELISA assays, dated April 12, 2000
(MRK-CHA01927351-5) ....................................................... Appx4467

**Table of Contents**
**(Continued)**

**Page**

Exhibit 112 to Reilly Declaration -
Response to FDA Request for Information,
dated November 17, 2004 (MRK-CHA00126963-71) .......... Appx4473

Exhibit 113 to Reilly Declaration -
Summary of Findings of Inspection, dated August 6, 2001
(MRK-CHA02021754-61) ..................................................... Appx4483

Exhibit 114 to Reilly Declaration -
Meeting Minutes, dated March 14, 2000
(MRK-CHA00001258-61) ..................................................... Appx4492

Exhibit 115 to Reilly Declaration -
Deposition Testimony of Emilio Emini, Ph.D.,
taken June 6, 2017 .................................................................. Appx4497
*(Cont'd in Vol XII)*

**Volume XII**
**(Filed Under Seal)**

Exhibit 116 to Reilly Declaration -
Deposition Testimony of Florian Schodel, M.D.,
taken December 22, 2016  .................................................... Appx4592

Exhibit 117 to Reilly Declaration -
Email from Manal Morsy, dated September 13, 2002
(MRK-CHA01386177-82) ..................................................... Appx4700

Exhibit 118 to Reilly Declaration -
Email from Keiko Simon with attachments,
dated October 27, 2003
(MRK-CHA00279197-247) .................................................. Appx4707

Exhibit 119 to Reilly Declaration -
Slide Deck from M-M-R™ Expiry Investigators Meeting,
dated March 15-16, 1999 (MRK-CHA01888826-913) ......... Appx4759

**Table of Contents**
**(Continued)**

Exhibit 120 to Reilly Declaration -
Email from Deitra E. Arena with attachments,
dated June 16, 2000
(MRK-CHA00026466-89) ...................................................... Appx4848

Exhibit 121 to Reilly Declaration -
Email from Manal Morsy to Henrietta Ukwu,
dated October 10, 1999 (MRK-CHA01898773-6) ................ Appx4874

Exhibit 122 to Reilly Declaration -
Deposition Testimony of David Krah, M.D.,
taken July 11-12, 2017 ........................................................... Appx4879
*(Cont'd in Vol XIII)*

**Volume XIII**
**(Filed Under Seal)**

Exhibit 123 to Reilly Declaration -
Mumps Neutralization Assay Development
(MRK-CHA00336905-18) ...................................................... Appx5076

Exhibit 124 to Reilly Declaration -
Minutes of CAS Meeting, dated June 20, 2000
(MRK-CHA00209674-8) ........................................................ Appx5091

Exhibit 125 to Reilly Declaration -
Email from Ted L. Staub to George Williams,
dated February 20, 1998 (MRK-CHA00625629-30) ............. Appx5097

Exhibit 126 to Reilly Declaration -
Minutes of Mumps Neutralization Assay Meeting,
dated September 29, 1999 (MRK-CHA00020428-9) ............ Appx5100

Exhibit 127 to Reilly Declaration -
Presentation, MMR II End Expiry Trial,
produced as "MMRII-Neut-fnQPAslides9-27-99.ppt"
(MRK-CHA00025315) ........................................................... Appx5103

**Table of Contents**
(Continued)

Exhibit 128 to Reilly Declaration -
Draft Summary of 8/17/99 meeting by M. Morsy
(MRK-CHA00198869-70) ......................................................Appx5111

Exhibit 129 to Reilly Declaration -
Memo re: Options and proposed path forward for the
Mumps Expiry Trial (MRK-CHA00086292-3) ..................... Appx5114

Exhibit 130 to Reilly Declaration -
Email from Florian P. Schodel to Colleen A. Forsythe,
dated July 7, 1997 (MRK-CHA01648951-6) ........................ Appx5117

Exhibit 131 to Reilly Declaration -
Memo re: Monthly report for August, 2000,
dated August 23, 2000 (MRK-CHA00016632-5) .................. Appx5124

Exhibit 132 to Reilly Declaration -
Virus & Cell Biology Research Procedure
(MRK-CHA00002189-98) .................................................... Appx5129

Exhibit 133 to Reilly Declaration -
Letter from Karen L. Goldenthal, M.D. to Keith D. Chirgwin,
M.D., dated October 26, 1999 (MRK-CHA00761482-4) ...... Appx5140

Exhibit 134 to Reilly Declaration -
Memo re: Filing Strategy for ProQuad,
dated January 31, 2002 (MRK-CHA00818776-81) ............... Appx5144

Exhibit 135 to Reilly Declaration -
Memo re: CBER teleconference (October 16, 2001):
Measles, Mumps and Rubella ELISAs, dated October 19, 2001
(MRK-CHA00331831-6) ...................................................... Appx5151

Exhibit 136 to Reilly Declaration -
Email from Michael L. Dekleva to Alison L. Fisher,
dated October 26, 2004 (MRK-CHA00846454-8) ............... Appx5158

**<u>Table of Contents</u>**
**(Continued)**

<u>Page</u>

Exhibit 137 to Reilly Declaration -
Response to FDA Request for Information,
dated April 13, 2005 (MRK-CHA00000315-60) ................... Appx5164

Exhibit 138 to Reilly Declaration -
Response to FDA Request for Information,
dated November 15, 2006 (MRK-CHA00000393-409) ........ Appx5211

Exhibit 139 to Reilly Declaration -
Response to CBER Comments, dated June 10, 2002
(MRK-KRA00761628-702) ................................................... Appx5229

Exhibit 140 to Reilly Declaration -
Regulatory Liaison FDA Conversation Record,
dated October 5, 2004 (MRK-CHA00846405-15) ................ Appx5305

Exhibit 141 to Reilly Declaration -
Email from Florian Schodel to Michael L. Dekleva,
dated July 3, 2004 (MRK-CHA00791315-9) ........................ Appx5317

Exhibit 142 to Reilly Declaration -
Proposal for Immunogenicity Analyses
(MRK-CHA00561111-2) ...................................................... Appx5323

Exhibit 143 to Reilly Declaration -
Email from David Krah, M.D. to Emilio Emini, Ph.D.,
dated October 9, 2000 (MRK-CHA00065695-703) .............. Appx5326

Exhibit 144 to Reilly Declaration -
Anti-IgG Enhanced Mumps Neutralization Assay-Update,
dated October 24, 2000 (MRK-CHA00026912-8) ................ Appx5336

Exhibit 145 to Reilly Declaration -
Email from Jospeh Antonello to David Krah, M.D.,
dated October 30, 2000 (MRK-CHA00759836-9) ................ Appx5344

Exhibit 146 to Reilly Declaration -
Deposition Testimony of Barbara Kuter,
taken February 9, 2018 ........................................................ Appx5349

**Table of Contents**
**(Continued)**

**Page**

Exhibit 147 to Reilly Declaration -
Email from Steven Rubin to David Krah, M.D.,
dated August 24, 2011 (MRK-CHA00030994-8) .................. Appx5398

Exhibit 148 to Reilly Declaration -
Excerpts from Attachments to 11/18/98 CDOC Meeting
(MRK-CHA01731773-1804) ................................................ Appx5404

Exhibit 149 to Reilly Declaration -
Memo re: BB-IND 1016 (M-M-R®II); Summary of CBER
teleconference on methods used for the plaque reduction
neutralization assay, dated February 22, 1999
(MRK-CHA00095050-2) ..................................................... Appx5437

Exhibit 150 to Reilly Declaration -
Extra CDAB Meeting Abstract, dated August 1, 2011
(GSK-MMR-0195819-42) .................................................... Appx5441

Exhibit 151 to Reilly Declaration -
Performance Characteristics and Validation for Mumps Plaque
Reduction Microneutralization assay
(GSK-MMR-IND-0022195-269) .......................................... Appx5466
*(Cont'd in Vol XIV)*

**Volume XIV**
**(Filed Under Seal)**

Exhibit 152 to Reilly Declaration -
Agenda for CBER Meeting, dated March 13, 2000
(MRK-CHA00016335-43) .................................................... Appx5542

Exhibit 153 to Reilly Declaration -
Email from David Krah, M.D. to Alan Shaw,
dated August 15, 2000 (MRK-CHA00068546) ..................... Appx5552

Exhibit 154 to Reilly Declaration -
To-Do List, dated August 26, 2000
(MRK-CHA00273243-4) ..................................................... Appx5554

**Table of Contents**
(Continued)

Exhibit 155 to Reilly Declaration -
Deposition Testimony of Stephen Krahling,
taken May 2-3, 2017 ........................................................... Appx5557

Exhibit 156 to Reilly Declaration -
Memo re: Monthly report for May, 2000, dated May 23, 2000
(MRK-CHA01634869-71) ..................................................... Appx5690

Exhibit 157 to Reilly Declaration -
Handwritten Notes in Book 31271, Pages 161-2
(MRK-CHA00064608-9) ....................................................... Appx5694

Exhibit 158 to Reilly Declaration -
Email from David Krah, M.D. to Emilio Emini, Ph.D.,
dated March 30, 2000 (MRK-CHA00336323-5) ................... Appx5697

Exhibit 159 to Reilly Declaration -
Email from Keith D. Chirgwin with attachment,
dated February 26, 2001
(MRK-CHA00549462-72) ..................................................... Appx5701

Exhibit 160 to Reilly Declaration -
Relator Stephen A. Krahling's Responses and Objections
to Merck's Revised First Set of Interrogatories,
dated May 18, 2015 .............................................................. Appx5713

Exhibit 161 to Reilly Declaration -
Deposition Testimony of Joseph Antonello, Ph.D.,
taken August 3, 2017 ........................................................... Appx5780

Exhibit 162 to Reilly Declaration -
Email from Beverly A. Zaber to Cathy W. Wadsworth,
dated August 9, 2001 (MRK-CHA00008835-9) .................... Appx5862

Exhibit 163 to Reilly Declaration -
Memo re: Supplemental Activities for Mumps Neuts,
Protocol 005, Steve Krahling, dated March 29, 2001
(MRK-CHA00015702-3) ....................................................... Appx5868

**Table of Contents**
**(Continued)**

Exhibit 164 to Reilly Declaration -
Memo re: Supplemental Activities for Mumps Neuts,
Protocol 005, Colleen Barr, dated March 29, 2001
(MRK-CHA00014739-40) ...................................................... Appx5871

Exhibit 165 to Reilly Declaration -
Memo re: Supplemental Activities for Mumps Neuts,
Protocol 005, Mary Yagodich, dated March 29, 2001
(MRK-CHA00014746-7) ...................................................... Appx5874

Exhibit 166 to Reilly Declaration -
Memo re: Supplemental Activities for Mumps Neuts,
Protocol 005, Jennifer Kriss, dated March 29, 2001
(MRK-CHA00014829-30) ...................................................... Appx5877

Exhibit 167 to Reilly Declaration -
Memo re: Supplemental Activities for Mumps Neuts,
Protocol 005, Steve Krahling, dated March 29, 2001
(MRK-CHA00014731-2) ...................................................... Appx5880

Exhibit 168 to Reilly Declaration -
Memo re: Supplemental Activities for Mumps Neuts,
Protocol 005, Mary Yagodich, dated March 29, 2001
(MRK-CHA00014744-5) ...................................................... Appx5883

Exhibit 169 to Reilly Declaration -
Memo re: Supplemental Activities for Mumps Neuts,
Protocol 005, Jill DeHaven, dated March 29, 2001
(MRK-CHA00014749-50) ...................................................... Appx5886

Exhibit 170 to Reilly Declaration -
Memo re: Supplemental Activities for Mumps Neuts,
Protocol 005, Jennifer Kriss, dated March 29, 2001
(MRK-CHA00015719-20) ...................................................... Appx5889

Exhibit 171 to Reilly Declaration -
Memo re: Study KM-248 Phase III-Questionable ELISA
Results in the Comparator Group, dated November 1, 2001
(MRK-CHA00760670-2) ...................................................... Appx5892

**Table of Contents**
**(Continued)**

**Page**

Exhibit 172 to Reilly Declaration -
Deposition Testimony of Joan L. Wlochowski,
taken June 13-14, 2017 ........................................................ Appx5896
*(Cont'd in Vol XV)*

**Volume XV**
**(Filed Under Seal)**

Exhibit 173 to Reilly Declaration -
Outline for HR Discussion (RELATOR_00000273) ............. Appx6040

Exhibit 174 to Reilly Declaration -
Expert Report of Philip Stark, Ph.D.,
dated March 12, 2018 .......................................................... Appx6042

Exhibit 175 to Reilly Declaration -
Supplemental Expert Report of Philip Stark, Ph.D.,
dated October 16, 2018 ........................................................ Appx6072

Exhibit 176 to Reilly Declaration -
Email from Jospeh Antonello with attachments,
dated March 20, 2002
(MRK-CHA00544820-47) ..................................................... Appx6079

Exhibit 177 to Reilly Declaration -
Excerpts from journal of David Krah, M.D.
(MRK-CHA00489903-490080) ............................................. Appx6133

Exhibit 178 to Reilly Declaration -
Handwritten Log (RELATOR_00001025-6) .......................... Appx6136

Exhibit 179 to Reilly Declaration -
Excerpts from journal of David Krah, M.D.
(MRK-CHA00490592-91038) ............................................... Appx6139

Exhibit 180 to Reilly Declaration -
Memo re: Review of mumps-AIGENT neutralization data,
dated August 1, 2001 (MRK-CHA00026864) ....................... Appx6144

**Table of Contents**
(Continued)

Exhibit 181 to Reilly Declaration -
Email from Karen R. McKenney, dated August 7, 2001
(MRK-CHA00052249-53) ..................................................... Appx6146

Exhibit 182 to Reilly Declaration -
General Correspondence and Submission to FDA,
dated February 4, 2002 (MRK-CHA00000410-78) ............... Appx6152

Exhibit 183 to Reilly Declaration -
Assay Log (MRK-CHA00050333-42) .................................. Appx6222

Exhibit 184 to Reilly Declaration -
Handwritten Notes regarding Discarded Plates
(MRK-CHA00055013) ......................................................... Appx6233

Exhibit 185 to Reilly Declaration -
Memo re: Validation of the Anti-IgG Enhanced Mumps Wild
Type Plaque Reduction Neutralization Assay (Virus and Cell
Biology Research Procedure #874.3489), dated
February 27, 2001 (MRK-CHA00016988-17023) ................ Appx6235

Exhibit 186 to Reilly Declaration -
Response to FDA Request for Information,
dated March 12, 2001 (MRK-CHA00017036-115) ............... Appx6272

Exhibit 187 to Reilly Declaration -
Biological Product Deviation Report Form,
dated April 20, 2001 (MRK-CHA00754233-8) ..................... Appx6353

Exhibit 188 to Reilly Declaration -
Background Document: M-M-R®II Protocol 007-Mumps End
Expiry Study: AIGENT Assay Issues and Impact on Study
Criteria (MRK-CHA00615152-74) ....................................... Appx6360

Exhibit 189 to Reilly Declaration -
Supplemental Biologics License Application,
dated January 29, 2004 (MRK-CHA00000032-139) ............. Appx6384

**Table of Contents**
**(Continued)**

Exhibit 190 to Reilly Declaration -
Information Amendment-Clinical, dated November 30, 2001
(MRK-CHA00126233-66) .................................................... Appx6493
*(Cont'd in Vol XVI)*

**Volume XVI**
**(Filed Under Seal)**

Exhibit 191 to Reilly Declaration -
Email from Mandie Lyon to David Krah, M.D.,
dated August 19, 2004 (MRK-CHA00337141-57) ................ Appx6528

Exhibit 192 to Reilly Declaration -
Email from Barbara J. Kuter to Barbara J. Kuter
with attachment, dated August 5, 2009
(MRK-CHA00121080-82) .................................................... Appx6546

Exhibit 193 to Reilly Declaration -
ClinicalTrials.gov webpage for the Protocol 007
clinical study, archived as of October 24, 2011 ..................... Appx6550

Exhibit 194 to Reilly Declaration -
ClinicalTrials.gov webpage for the Protocol 007
clinical study, archived as of September 26, 2012 ................. Appx6555

Exhibit 195 to Reilly Declaration -
ClinicalTrials.gov webpage for the Protocol 007
clinical study, archived as of October 17, 2012 ..................... Appx6559

Exhibit 196 to Reilly Declaration -
ClinicalTrials.gov webpage for the Protocol 007
clinical study, archived as of December 22, 2012 ................. Appx6563

Exhibit 197 to Reilly Declaration -
ClinicalTrials.gov webpage for the Protocol 007
clinical study, archived as of July 3, 2013 ............................. Appx6567

**Table of Contents**
(Continued)

Exhibit 198 to Reilly Declaration -
ClinicalTrials.gov webpage for the Protocol 007
clinical study, archived as of October 7, 2015 ....................... Appx6571

Exhibit 199 to Reilly Declaration -
CinicalTrials.gov "Background" webpage,
last accessed October 14, 2019 .............................................. Appx6575

Exhibit 200 to Reilly Declaration -
EMEA Scientific Discussion Paper re: M-M-RVAXPRO
and M-M-RII, downloaded October 10, 2019 ........................ Appx6580

Exhibit 201 to Reilly Declaration -
Letter from Dr. Gudrun V. Wangenheim to
D. Wonnacott, Ph.D. (MRK-CHA00626021-2) .................... Appx6616

Exhibit 202 to Reilly Declaration -
Letter from Karen L. Goldenthal, M.D. to Alison Fisher,
Ph.D., dated October 17, 2005 (MRK-CHA00560257-8) ..... Appx6619

Exhibit 203 to Reilly Declaration -
Amendment to Supplemental Biologics License Application
Response to FDA Request for Information,
dated June 5, 2007, with Attachments
(MRK-CHA00000368-82) ..................................................... Appx6622

Exhibit 204 to Reilly Declaration -
Email from Margaret Kanters to Donna Zacholski,
dated January 30, 2009 (MRK-CHA01300697-9) ................. Appx6638

Exhibit 205 to Reilly Declaration -
Approval Letter from FDA, dated December 6, 2007
(MRK-CHA01519087-8) ...................................................... Appx6642

Exhibit 206 to Reilly Declaration -
Memo re: Review of Merck's 7068-214, dated July 27, 2004
(MRK-CHA00846451-3) ....................................................... Appx6645

**Table of Contents**
(Continued)

Exhibit 207 to Reilly Declaration -
ProQuad™ Original Application, dated August 3, 2004
(MRK-CHA00158320-71) ..................................................... Appx6649

Exhibit 208 to Reilly Declaration -
Deposition Testimony of Michael Dekleva,
taken February 9, 2017 ........................................................ Appx6687

Exhibit 209 to Reilly Declaration -
Original Biologics License Application, dated August 27, 2004
(MRK-CHA00157572-3) ........................................................ Appx6760

Exhibit 210 to Reilly Declaration -
Email from Louis H. Washington to Michael L. Dekleva,
dated June 10, 2004 (MRK-CHA00821967-9) ...................... Appx6763

Exhibit 211 to Reilly Declaration -
Information Amendment-Clinical, dated November 27, 2001
(MRK-CHA00152449-67) ..................................................... Appx6767

Exhibit 212 to Reilly Declaration -
Excerpts from Merck's Responses and Objections to
Plaintiffs' First Set of Interrogatories,
dated August 16, 2017 ........................................................ Appx6787

Exhibit 213 to Reilly Declaration -
Excerpts from Merck's Response to Request for Information,
dated May 4, 2005 (MRK-CHA00846087-6404) .................. Appx6798

Exhibit 214 to Reilly Declaration -
Approval Letter, dated September 6, 2005
(MRK-CHA00761865-89) ..................................................... Appx6804

Exhibit 215 to Reilly Declaration -
Supplemental Biologics License Application,
dated June 30, 2004 (MRK-CHA00137854-5) ...................... Appx6830

**Table of Contents**
(Continued)

**Page**

Exhibit 216 to Reilly Declaration -
Excerpts from A Comparison of the Safety, Tolerability, and
Immunogenicity of M-M-R™II Manufactured With
Recombinant Human Albumin (rHA) Versus M-M-R™II
Manufactured with Pooled-Donor Human Serum Albumin
(HSA) in Healthy Children 12 to 18 Months of Age
Protocol 009 (MRK-CHA00140056-41340) ......................... Appx6833

Exhibit 217 to Reilly Declaration -
Excerpts from Measles, Mumps, and Rubella Virus Vaccine,
Live-Replacement of Human Serum Albumin With
Recombinant Albumin (MRK-CHA00138137-72) ............... Appx6908

Exhibit 218 to Reilly Declaration -
Excerpts from Response to FDA Request for Information,
dated June 28, 2004 (MRK-CHA00124554-4690) ................ Appx6931

Exhibit 219 to Reilly Declaration -
Approval Letter, dated August 31, 2005
(MRK-CHA00141909-22) ..................................................... Appx6979

Exhibit 220 to Reilly Declaration -
M-M-R®II Label (April 1999)
(MRK-CHA00757072-6) ....................................................... Appx6994

Exhibit 221 to Reilly Declaration -
M-M-R®II Label (MRK-CHA00757108-11) ........................ Appx7000
*(Cont'd in Vol XVII)*

**Volume XVII**
**(Filed Under Seal)**

Exhibit 222 to Reilly Declaration -
M-M-R®II Label (2004) (MRK-CHA00757100-3) .............. Appx7005

Exhibit 223 to Reilly Declaration -
M-M-R®II Label (MRK-CHA01449260-70) ....................... Appx7010

**Table of Contents**
**(Continued)**

Exhibit 224 to Reilly Declaration -
Current M-M-R®II Label (last revised: 09/2019),
downloaded on October 22, 2019 .......................................... Appx7022

Exhibit 225 to Reilly Declaration -
M-M-R®II Label (1990) (MRK-CHA00757060-3) .............. Appx7034

Exhibit 226 to Reilly Declaration -
Summary of Revisions of M-M-R®II Label
(MRK-CHA00137876-7) ...................................................... Appx7039

Exhibit 227 to Reilly Declaration -
Protocol 006 Clinical Study Report Synopsis,
dated August 16, 2004 (MRK-CHA01580213-19) ................ Appx7042

Exhibit 228 to Reilly Declaration -
M-M-R®II Label (MRK-CHA01449029-40) ........................ Appx7050

Exhibit 229 to Reilly Declaration -
Description of ProQuad® (MRK-CHA00177125-36) .......... Appx7063

Exhibit 230 to Reilly Declaration -
ProQuad® Label (MRK-CHA01449181-2) .......................... Appx7076

Exhibit 231 to Reilly Declaration -
Current ProQuad Label (last revised: 09/2019),
downloaded on October 22, 2019 ......................................... Appx7079

Exhibit 232 to Reilly Declaration -
Excerpts from Merck's Responses and Objections to Relators'
First Set of Interrogatories, dated April 9, 2015 .................... Appx7105

Exhibit 233 to Reilly Declaration -
Expert Report of Yonatan Grad, M.D., Ph.D.,
dated June 12, 2018 ............................................................... Appx7114

Exhibit 234 to Reilly Declaration -
Excerpts from "Summary of Notifiable Diseases-United
States, 2006," *MMWR*, 2008:55(53) ...................................... Appx7169

# **Table of Contents**
## **(Continued)**

Exhibit 235 to Reilly Declaration -
Excerpts from "Summary of Notifiable Diseases-United
States, 2009," *MMWR*, 2009:58(53) ..................................... Appx7173

Exhibit 236 to Reilly Declaration -
Excerpts from a "Summary of Notifiable Diseases-United
States, 2010," *MMWR*, 2012:59(53) ..................................... Appx7177

Exhibit 237 to Reilly Declaration -
Excerpts from "Summary of Notifiable Diseases-United
States, 2012," *MMWR*, 2014:61(53) ..................................... Appx7181

Exhibit 238 to Reilly Declaration -
Excerpts from "Summary of Notifiable Infectious
Diseases and Conditions-United States, 2013,"
*MMWR*, 2015:62(53) ........................................................... Appx7185

Exhibit 239 to Reilly Declaration -
Excerpts from "Summary of Notifiable Infectious
Diseases and Conditions-United States, 2014,"
*MMWR*, 2016:63(54) ........................................................... Appx7189

Exhibit 240 to Reilly Declaration -
Excerpts from "Summary of Notifiable Infectious
Diseases and Conditions-United States, 2015,"
*MMWR*, 2017:64(53) ........................................................... Appx7194

Exhibit 241 to Reilly Declaration -
National Notifiable Infectious Diseases and Conditions:
United States TABLE 2j. Reported cases of notifiable
diseases, by region and reporting area-United States and
U.S. territories, 2016 ........................................................... Appx7199

Exhibit 242 to Reilly Declaration -
National Notifiable Infectious Diseases and Conditions:
United States TABLE 2j. Reported cases of notifiable
diseases, by region and reporting area-United States and
U.S. territories, 2017 ........................................................... Appx7202

**Table of Contents**
(Continued)

Exhibit 243 to Reilly Declaration -
Nationally Notifiable Infectious Diseases and Conditions,
United States: Weekly Tables; TABLE 1y. Weekly cases of
notifiable diseases, United States, U.S. Territories, and
Non-U.S. Residents weeks ending September 14, 2019
(week 37) .............................................................. Appx7205

Exhibit 244 to Reilly Declaration -
"Decreased humoral immunity to mumps in young adults
immunized with MMR vaccine in childhood," Rasheed, *et al.*,
PNAS, dated September 17, 2019 116 (38) .......................... Appx7209

Exhibit 245 to Reilly Declaration -
Deposition Testimony of William L. Atkinson, M.D., MPH,
taken January 30, 2019 .......................................... Appx7216

Exhibit 246 to Reilly Declaration -
Email from Don Latner to William Bellini,
dated July 29, 2010 (BIAOHE000446-53) ........................... Appx7270

Exhibit 247 to Reilly Declaration -
Deposition Testimony of Yonatan Grad, M.D., Ph.D.,
taken October 30, 2018 .......................................... Appx7279

Exhibit 248 to Reilly Declaration -
Press Briefing Transcripts from CDC,
dated April 19, 2006 ............................................ Appx7342

Exhibit 249 to Reilly Declaration -
Deposition Testimony of Alan W. Sims,
taken October 12, 2017 .......................................... Appx7349

Exhibit 250 to Reilly Declaration -
Deposition Testimony of Katalin Abraham,
taken May 18, 2017 .............................................. Appx7403
*(Cont'd in Vol XVIII)*

**Table of Contents**
**(Continued)**

**Volume XVIII**
**(Filed Under Seal)**

Exhibit 251 to Reilly Declaration -
Email from Eric T. Skjeveland to Christopher J. Petroski,
dated June 7, 2012 (MRK-CHA00955961) ........................... Appx7504

Exhibit 252 to Reilly Declaration -
Expert Report of Jonathan Temte, M.D., Ph.D.,
dated June 12, 2018 ............................................................ Appx7506

Exhibit 253 to Reilly Declaration -
M-M-R®II Label (MRK-CHA01449243-53) ....................... Appx7556

Exhibit 254 to Reilly Declaration -
Transcription of an MVX (voice mail) from Manal A. Morsy
to Henrietta Ukwu and Keith D. Chirgwin
(MRK-CHA00020421-2) ...................................................... Appx7568

Exhibit 255 to Reilly Declaration -
CDC Presentation, "Mumps-What Happened in 2006?
National Perspective," by Gustavo Dayan,
dated March 5, 2007
(MRK-CHA01372603-33) .................................................... Appx7571

Exhibit 256 to Reilly Declaration -
"Commentary: Mumps Vaccines: Do We Need A New One?"
by Stanely A. Plotkin, M.D., accepted for publication
December 4, 2012 ................................................................ Appx7603

Exhibit 257 to Reilly Declaration -
"Mumps: A Pain in the Neck," by Stanley A. Plotkin, M.D.,
accepted for publication April 19, 2018 ................................ Appx7606

Exhibit 258 to Reilly Declaration -
"Emerging Mumps Infection," by Rubin, *et al.*,
accepted for publication April 12, 2016 ................................ Appx7609

**Table of Contents**
(Continued)

Exhibit 259 to Reilly Declaration -
"Measles and mumps outbreaks in the United States: Think
globally, vaccinate locally," by Jennifer A. Whitaker,
*Vaccine* 32 (2014) ................................................................. Appx7613

Exhibit 260 to Reilly Declaration -
"Remembering Mumps," by Latner, *et al.*, *PLOS Pathogens*,
published May 7, 2015 ........................................................... Appx7616

Exhibit 261 to Reilly Declaration -
"The resurgence of mumps and pertussis," by Martine Sabbe
and Corinne Vandermeulen accepted for publication
October 22, 2015 ................................................................... Appx7621

Exhibit 262 to Reilly Declaration -
"Mumps Outbreaks in Vaccinated Populations: Are Available
Mumps Vaccines Effective Enough to Prevent Outbreaks?"
by Dayan, *et al.*, accepted for publication May 20, 2008 ...... Appx7631

Exhibit 263 to Reilly Declaration -
Shapiro Deposition Exhibit 25, Program Announcement for
the Department of Defense's Defense Health Program for
Funding Opportunity No. W81XWH-17-PRMRP-CTA ........ Appx7642

Exhibit 264 to Reilly Declaration -
Excerpts from Notice of Grant Award, issued May 7, 2012
(RELATOR_00004392-478) .................................................. Appx7712

Exhibit 265 to Reilly Declaration -
Expert Report of William P. Nichols, dated June 12, 2018 .... Appx7743

Exhibit 266 to Reilly Declaration -
Solicitation Number 2003-N-00734,
issued December 19, 2002 by the CDC ................................. Appx7779

Exhibit 267 to Reilly Declaration -
Solicitation Number 2005-N-01706,
issued January 4, 2005 by the CDC ...................................... Appx7826

# Table of Contents
## (Continued)

**Page**

Exhibit 268 to Reilly Declaration -
Solicitation Number 2007-N-09211,
issued January 23, 2007 by the CDC ..................................... Appx7872

Exhibit 269 to Reilly Declaration -
Solicitation Number 2010-N-11873,
issued January 26, 2010 by the CDC ..................................... Appx7923

Exhibit 270 to Reilly Declaration -
Solicitation Number 2011-N-13043,
issued December 21, 2010 by the CDC ................................. Appx7956

Exhibit 271 to Reilly Declaration -
Solicitation Number 2012-N-14228,
issued December 13, 2011 by the CDC ................................. Appx7987
*(Cont'd in Vol XIX)*

## Volume XIX
## (Filed Under Seal)

Exhibit 272 to Reilly Declaration -
Solicitation Number 2013-N-14972,
issued January 22, 2013 by the CDC ..................................... Appx8013

Exhibit 273 to Reilly Declaration -
Solicitation Number 2014-N-15784,
issued January 24, 2014 by the CDC ..................................... Appx8040

Exhibit 274 to Reilly Declaration -
Solicitation Number 2015-N-16850,
issued January 16, 2015 by the CDC ..................................... Appx8067

Exhibit 275 to Reilly Declaration -
Solicitation Number 2016-N-17693,
issued January, 4, 2015 by the CDC ..................................... Appx8098

Exhibit 276 to Reilly Declaration -
Solicitation Number 2017-N-18099,
issued January 21, 2017 by the CDC ..................................... Appx8127

**Table of Contents**
**(Continued)**

**Page**

Exhibit 277 to Reilly Declaration -
Solicitation Number 2018-N-67769,
issued January 10, 2018 by the CDC ..................................... Appx8156

Exhibit 278 to Reilly Declaration -
Solicitation Number 75D301-19-R-67848,
issued January 7, 2019 by the CDC ...................................... Appx8183

Exhibit 279 to Reilly Declaration -
Summary of GSK-CDC MMR/V Vaccine Meeting
(GSK-MMR-0030570-2) ....................................................... Appx8212

Exhibit 280 to Reilly Declaration -
Charter of the Advisory Committee on Immunization
Practices, filed April 1, 2018 ................................................. Appx8216

Exhibit 281 to Reilly Declaration -
Relators' Expert Report of Dr. Thomas McGuire,
dated March 13, 2018 .......................................................... Appx8222

Exhibit 282 to Reilly Declaration - [1]
Transactional data, "1998 Lot Assignment.xlsx"
(MRK-CHA02143443) ........................................................ Appx8369

Exhibit 283 to Reilly Declaration -
Transactional data, "1999 Lot Assignment.xlsx"
(MRK-CHA02143444) ........................................................ Appx8371

Exhibit 284 to Reilly Declaration -
Transactional data, "2000 Lot Assignment.xlsx"
(MRK-CHA02143445) ........................................................ Appx8373

Exhibit 285 to Reilly Declaration -
Transactional data, "2001 Lot Assignment.xlsx"
(MRK-CHA02143446) ........................................................ Appx8375

---

[1] Exhibits 282 through 299 to the Reilly Declaration have been omitted by consent of the parties.

## Table of Contents
## (Continued)

**Page**

Exhibit 286 to Reilly Declaration -
Transactional data, "2002 Lot Assignment.xlsx"
(MRK-CHA02143447) ......................................................... Appx8377

Exhibit 287 to Reilly Declaration -
Transactional data, "2003 Lot Assignment.xlsx"
(MRK-CHA02143448) ......................................................... Appx8379

Exhibit 288 to Reilly Declaration -
Transactional data, "2004 Lot Assignment.xlsx"
(MRK-CHA02143449) ......................................................... Appx8381

Exhibit 289 to Reilly Declaration -
Transactional data, "2005 Lot Assignment.xlsx"
(MRK-CHA02143450) ......................................................... Appx8383

Exhibit 290 to Reilly Declaration -
Transactional data, "2006 Lot Assignment.xlsx"
(MRK-CHA02143451) ......................................................... Appx8385

Exhibit 291 to Reilly Declaration -
Transactional data, "2007 Lot Assignment.xlsx"
(MRK-CHA02143452) . ......................................................... Appx8387

Exhibit 292 to Reilly Declaration -
Transactional data, "2008 Lot Assignment.xlsx"
(MRK-CHA02143453) ......................................................... Appx8389

Exhibit 293 to Reilly Declaration -
Transactional data, "2009 Lot Assignment.xlsx"
(MRK-CHA02143454) ......................................................... Appx8391

Exhibit 294 to Reilly Declaration -
Transactional data, "2010 Lot Assignment.xlsx"
(MRK-CHA02143455) ......................................................... Appx8393

Exhibit 295 to Reilly Declaration -
Transactional data, "2011 Lot Assignment.xlsx"
(MRK-CHA02143456) ......................................................... Appx8395

Case: 23-2553 Document: 47 Page: 37 Date Filed: 11/16/2023

**Table of Contents**
**(Continued)**

**Page**

Exhibit 296 to Reilly Declaration -
Transactional data, "2012 Lot Assignment.xlsx"
(MRK-CHA02143457) ........................................................ Appx8397

Exhibit 297 to Reilly Declaration -
Transactional data, "2013 Lot Assignment.xlsx"
(MRK-CHA02143458) ........................................................ Appx8399

Exhibit 298 to Reilly Declaration -
Transactional data, "2014 Lot Assignment.xlsx"
(MRK-CHA02143459) ........................................................ Appx8401

Exhibit 299 to Reilly Declaration -
Transactional data, "2015 Lot Assignment.xlsx"
(MRK-CHA02143460) ........................................................ Appx8403

Exhibit 300 to Reilly Declaration -
Letter from Lisa C. Dykstra to Counsel,
dated April 17, 2017 ............................................................ Appx8405

Exhibit 301 to Reilly Declaration -
Letter from Stan Bernard, M.D., M.B.A. to Kim Haupt,
dated November 9, 2008 (MRK-CHA02063339-45) ............ Appx8407

Exhibit 302 to Reilly Declaration -
Merck's 2004 Vaccine for Children Contract with the CDC
(MRK-CHA01371280-310) .................................................. Appx8415

Exhibit 303 to Reilly Declaration -
Merck's 2003 Vaccine for Children Contract with the CDC
(MRK-CHA01371311-40) .................................................... Appx8447

Exhibit 304 to Reilly Declaration -
Merck's 2005 Vaccine for Children Contract with the CDC
(MRK-CHA01371341-72) .................................................... Appx8478
***(Cont'd in Vol XX)***

**Table of Contents**
**(Continued)**

**Page**

**Volume XX**
**(Filed Under Seal)**

Exhibit 305 to Reilly Declaration -
Merck's 2010 Vaccine for Children Contract with the CDC
(MRK-CHA01371373-97) ..................................................... Appx8511

Exhibit 306 to Reilly Declaration -
Merck's 2012 Vaccine for Children Contract with the CDC
(MRK-CHA01371398-421) .................................................. Appx8537

Exhibit 307 to Reilly Declaration -
Merck's 2013 Vaccine for Children Contract with the CDC
(MRK-CHA01371422-44) ..................................................... Appx8562

Exhibit 308 to Reilly Declaration -
Merck's 2014 Vaccine for Adults Contract with the CDC
(MRK-CHA01371445-72) ..................................................... Appx8586

Exhibit 309 to Reilly Declaration -
Merck's 2014 Vaccine for Children Contract with the CDC
(MRK-CHA01371473-96) ..................................................... Appx8615

Exhibit 310 to Reilly Declaration -
Merck's 2011 Vaccine for Children Contract with the CDC
(MRK-CHA01371497-518) .................................................. Appx8640

Exhibit 311 to Reilly Declaration -
Merck's 2011 Vaccine for Adults Contract with the CDC
(MRK-CHA01371519-47) ..................................................... Appx8663

Exhibit 312 to Reilly Declaration -
Merck's 2013 Vaccine for Adults Contract with the CDC
(MRK-CHA01371548-71) ..................................................... Appx8693

Exhibit 313 to Reilly Declaration -
Merck's 2012 Vaccine for Adults Contract with the CDC
(MRK-CHA01371572-603) .................................................. Appx8718

# Table of Contents
## (Continued)

**Page**

Exhibit 314 to Reilly Declaration -
Merck's 2007 Vaccine for Children Contract with the CDC
(MRK-CHA01371604-23) .................................................... Appx8751

Exhibit 315 to Reilly Declaration -
Merck's 2006 Vaccine for Children Contract with the CDC
(MRK-CHA01371624-55) .................................................... Appx8772

Exhibit 316 to Reilly Declaration -
Merck's 2001 Vaccine for Children Contract with the CDC
(MRK-CHA01371656-92) .................................................... Appx8805

Exhibit 317 to Reilly Declaration -
Merck's 2000 Vaccine for Children Contract with the CDC
(MRK-CHA01371693-727) .................................................... Appx8843

Exhibit 318 to Reilly Declaration -
Merck's 1998 Vaccine for Children Contract with the CDC
(MRK-CHA01371728-50) .................................................... Appx8879

Exhibit 319 to Reilly Declaration -
Merck's 1999 Vaccine for Children Contract with the CDC
(MRK-CHA01371751-84) .................................................... Appx8903

Exhibit 320 to Reilly Declaration -
Merck's 2002 Vaccine for Children Contract with the CDC
(MRK-CHA01371785-816) .................................................... Appx8938

Exhibit 321 to Reilly Declaration -
Merck's 2008 Vaccine for Children Contract with the CDC
(MRK-CHA01371817-840) .................................................... Appx8971

Exhibit 322 to Reilly Declaration -
Merck's 2009 Vaccine for Adults Contract with the CDC
(MRK-CHA01371841-879) .................................................... Appx8996
*(Cont'd in Vol XXI)*

**Table of Contents**
**(Continued)**

**Page**

**Volume XXI**
**(Filed Under Seal)**

Exhibit 323 to Reilly Declaration -
Merck's 2009 Vaccine for Children Contract with the CDC
(MRK-CHA01371880-1900) ................................................. Appx9036

Exhibit 324 to Reilly Declaration -
Merck's 2010 Vaccine for Adults Contract with the CDC
(MRK-CHA01371901-33) ..................................................... Appx9058

Exhibit 325 to Reilly Declaration -
Merck's 2015 Vaccine for Adults Contract with the CDC
(MRK-CHA01371934-61) ..................................................... Appx9092

Exhibit 326 to Reilly Declaration -
Merck's 2016 Vaccine for Children Contract with the CDC
(MRK-CHA01371962-89) ..................................................... Appx9121

Exhibit 327 to Reilly Declaration -
Merck's 2010 Vaccine for Adults Contract with the CDC
(MRK-CHA01371990-2020) ................................................. Appx9150

Exhibit 328 to Reilly Declaration -
Merck's 2016 Vaccine for Adults Contract with the CDC
(MRK-CHA01372021-44) ..................................................... Appx9182

Exhibit 329 to Reilly Declaration -
Merck's 2015 Vaccine for Children Contract with the CDC
(MRK-CHA01372045-72) ..................................................... Appx9207

Exhibit 330 to Reilly Declaration -
Invoice, dated March 14, 2012 (MRK-CHA01371253) ........ Appx9236

Exhibit 331 to Reilly Declaration -
Invoice, dated January 3, 2011(MRK-CHA01371256) ......... Appx9238

Exhibit 332 to Reilly Declaration -
Invoice, dated January 6, 2014 (MRK-CHA01371258) ........ Appx9240

**Table of Contents**
(Continued)

Exhibit 333 to Reilly Declaration -
Invoice, dated May 20, 2010 (MRK-CHA01371259) ........... Appx9242

Exhibit 334 to Reilly Declaration -
Invoice, dated January 14, 2013 (MRK-CHA01371261) ...... Appx9244

Exhibit 335 to Reilly Declaration -
Invoice, dated February 2, 2011 (MRK-CHA01371262) ...... Appx9246

Exhibit 336 to Reilly Declaration -
Invoice, dated November 17, 2010 (MRK-CHA01371263) . Appx9248

Exhibit 337 to Reilly Declaration -
Invoice, dated November 28, 2012 (MRK-CHA01371264) . Appx9250

Exhibit 338 to Reilly Declaration -
Invoice, dated March 20, 2013 (MRK-CHA01371268-69) ... Appx9252

Exhibit 339 to Reilly Declaration -
Invoice, dated January 22, 2016 (MRK-CHA01371274) ...... Appx9255

Exhibit 340 to Reilly Declaration -
Invoice, dated February 26, 2014 (MRK-CHA01371278) .... Appx9257

Exhibit 341 to Reilly Declaration -
Invoice, dated February 4, 2015 (MRK-CHA01371279) ...... Appx9259

Exhibit 342 to Reilly Declaration -
FDA webpage, "National Drug Code Directory," accessible
online at https://www.fda.gov/drugs/drug-approvals-and-
databases/national-drug-code-directory, last accessed
October 1, 2019 ................................................................... Appx9261

Exhibit 343 to Reilly Declaration -
Email from Jonathan Hartzel to Joseph M. Antonello,
dated October 18, 2005 (MRK-CHA00759061-4) ................ Appx9268

**Table of Contents**
(Continued)

Exhibit 344 to Reilly Declaration -
Email from Joseph M. Antonello to Timothy L. Shofield,
dated May 5, 2005 (MRK-CHA00649638-40) ...................... Appx9273

Exhibit 345 to Reilly Declaration -
Letter from Lisa C. Dykstra to Counsel,
dated September 13, 2018 ...................................................... Appx9277

Exhibit 346 to Reilly Declaration -
Letter from Lisa C. Dykstra to the Honorable
Lynne A. Sitarski, dated June 15, 2015 ................................. Appx9289

Exhibit 347 to Reilly Declaration -
Deposition Testimony of Peter Calcott, Ph.D.,
taken September 7, 2018 ....................................................... Appx9307

Exhibit 348 to Reilly Declaration -
Email from Mandie Lyon, dated May 5, 2006
(MRK-CHA00069026-36) .................................................... Appx9385

Exhibit 349 to Reilly Declaration -
Presentation, M-M-R II End Expiry, produced as "12-14
CDOC presentation.ppt" (MRK-CHA00021319) ................. Appx9397

Exhibit 350 to Reilly Declaration -
Department of Justice Press Release, dated May 13, 2013 .... Appx9410

Exhibit 351 to Reilly Declaration -
Department of Justice Press Release,
dated October 26, 2010 ......................................................... Appx9414

Exhibit 352 to Reilly Declaration -
Department of Justice Press Release,
dated January 12, 2017 .......................................................... Appx9417

Exhibit 353 to Reilly Declaration -
Department of Justice Press Release,
dated September 24, 2014 ...................................................... Appx9420

**Table of Contents**
**(Continued)**

Exhibit 354 to Reilly Declaration -
Department of Justice Press Release, dated April 15, 2009 ... Appx9423

Exhibit 355 to Reilly Declaration -
Rule 30(b)(6) Deposition topics, dated December 13, 2016
(Stannard Ex. 3) .................................................................. Appx9426

Exhibit 356 to Reilly Declaration -
Department of Justice Press Release,
dated August 8, 2014 ........................................................... Appx9443

Exhibit 357 to Reilly Declaration -
FDA Form 483, dated August 6, 2001
(MRK-CHA00000547) ......................................................... Appx9446

Exhibit 358 to Reilly Declaration -
Deposition Testimony of Robert Malone, M.D.,
taken September 14, 2018 .................................................... Appx9448
*(Cont'd in Vol XXII)*

**Volume XXII**
**(Filed Under Seal)**

Exhibit 359 to Reilly Declaration -
Deposition Testimony of Dr. Manal Morsy,
taken August 5, 2016 ........................................................... Appx9511

Exhibit 360 to Reilly Declaration -
Atkinson Deposition Exhibit 6, "Recommendations of
the Immunization Practices Advisory Committee Measles
Prevention: Supplementary Statement,"
dated January 13, 1989 ........................................................ Appx9621

Declaration of Lisa C. Dykstra in Support of
Defendant's Motions for Summary Judgment,
executed October 25, 2019 (Doc. 295) .................................. Appx9625

Exhibit 1 to Dykstra Declaration -
Stephen A. Krahling's Resume (MRK-KRA00331426-7) .... Appx9656

**Table of Contents**
(Continued)

Exhibit 2 to Dykstra Declaration -
Excerpts from Deposition Testimony of Stephen Krahling,
taken May 2, 2017 ................................................................. Appx9659

Exhibit 3 to Dykstra Declaration -
Merck Employee Initialization Form for Stephen Krahling
(MRK-KRA00582401) ......................................................... Appx9680

Exhibit 4 to Dykstra Declaration -
Stephen Krahling's November 30, 2001 Separation Agreement
(MRK-KRA00582394-7) ...................................................... Appx9682

Exhibit 5 to Dykstra Declaration -
Excerpts from Relator Stephen A. Krahling's Responses
and Objections to Merck's First Set of Interrogatories,
dated January 28, 2015 ......................................................... Appx9687

Exhibit 6 to Dykstra Declaration -
Excerpts from Relator Stephen A. Krahling's Responses
and Objections to Merck's Revised First Set of Interrogatories,
dated May 18, 2015 .............................................................. Appx9716

Exhibit 7 to Dykstra Declaration -
Excerpts from the Deposition Testimony of
Stephen Krahling, taken May 3, 2017 ................................... Appx9783

Exhibit 8 to Dykstra Declaration -
Stephen Krahling's handwritten notes,
dated October 1, 2001 (RELATOR_00001044-5) ................. Appx9792

Exhibit 9 to Dykstra Declaration -
FDA's Summary of Findings, dated August 6, 2001
(RELATOR_00004086-94) ................................................... Appx9795

Exhibit 10 to Dykstra Declaration -
Merck FDA Inspection Records, dated August 6, 2001
(MRK-KRA01631009-254) .................................................. Appx9805
*(Cont'd in Vol XXIII)*

**Table of Contents**
**(Continued)**

**Volume XXIII**
**(Filed Under Seal)**

Exhibit 11 to Dykstra Declaration -
Excerpts from the Expert Report of
D. Bruce Burlington M.D.  ................................................... Appx10052

Exhibit 12 to Dykstra Declaration -
Merck's Virus and Cell Biology Organization Chart
(RELATOR_00000902-3) ................................................... Appx10070

Exhibit 13 to Dykstra Declaration -
Excerpts from Relator Stephen A. Krahling's Responses
and Objections to Defendant Merck's Requests for
Admission, dated April 4, 2016 .......................................... Appx10073

Exhibit 14 to Dykstra Declaration -
FDA Form 483 Frequently Asked Questions ....................... Appx10101

Exhibit 15 to Dykstra Declaration -
FDA Re-Inspection Memorandum, dated August 10, 2001
(MRK-KRA00071241-5) ................................................... Appx10104

Exhibit 16 to Dykstra Declaration -
CBER Merck Communications Mumps Expiry,
dated August 8, 2002 (MRK-KRA00623049-51) ............... Appx10110

Exhibit 17 to Dykstra Declaration -
Email Communication with Attachments regarding FDA
Inspection-IND 1016, dated September 14, 2001
(MRK-KRA00063885-8) ................................................... Appx10114

Exhibit 18 to Dykstra Declaration -
FDA Telephone Conversation Memorandum,
dated September 17, 2001 (MRK-KRA00019107) ............. Appx10119

Exhibit 19 to Dykstra Declaration -
FDA Teleconference-IND 1016 Inspection Follow up,
dated September 25, 2001 (MRK-KRA00071300-1) .......... Appx10121

**Table of Contents**
(Continued)

Exhibit 20 to Dykstra Declaration -
CBER December 7, 2001 Teleconference: Mumps Inspection
results and discussions, dated December 13, 2001
(MRK-KRA00019640-6) ..................................................... Appx10124

Exhibit 21 to Dykstra Declaration -
General Correspondence to FDA in response to CBER
Comments, dated February 4, 2002
(MRK-KRA00025847-916) ................................................ Appx10132

Exhibit 22 to Dykstra Declaration -
General Correspondence to FDA regarding April 18, 2002
Teleconference, dated April 2002
(MRK-KRA00337265-72) ................................................. Appx10203

Exhibit 23 to Dykstra Declaration -
BB-IND 1016 Memorandum regarding Summary of
Discussion with CBER on March 22, 2002 regarding
acceptability of mumps PRN assay data,
dated March 23, 2002 (MRK-KRA00009042) .................... Appx10212

Exhibit 24 to Dykstra Declaration -
Offer Letter to Stephen A. Krahling, dated October 24, 2000
(RELATOR_00001058-60) ................................................ Appx10214

Exhibit 25 to Dykstra Declaration -
Correspondence from Stephen A. Krahling to
Emilio A. Emini, Ph.D., dated April 8, 2001
(RELATOR_00000328-31) ................................................ Appx10218

Exhibit 26 to Dykstra Declaration -
Email communication from Stephen Krahling to
Alan Shaw, dated July 17, 2001 (MRK-KRA00002243) .... Appx10223

Exhibit 27 to Dykstra Declaration -
Email communication from Stephen Krahling to Alan Shaw,
dated September 25, 2001 (RELATOR_00000745) ............ Appx10225

**Table of Contents**
(Continued)

Exhibit 28 to Dykstra Declaration -
Email communications between Stephen Krahling and
Alan Shaw, dated September 27-28, 2001
(RELATOR_00000747) ....................................................... Appx10227

Exhibit 29 to Dykstra Declaration -
Letter from Emilio A. Emini, Ph.D. to Stephen Krahling,
dated October 15, 2001, (RELATOR_00001100-3) ............ Appx10229

Exhibit 30 to Dykstra Declaration -
Letter from Tonia Torquato to Alexis Pinto,
dated October 22, 2001 (MRK-KRA00002033-5) .............. Appx10234

Exhibit 31 to Dykstra Declaration -
Letter from Alexis Pinto to Tonia Torquato,
dated October 19, 2001 (MRK-KRA00002036-9) .............. Appx10238

Exhibit 32 to Dykstra Declaration -
Letter from Tonia Torquato to Alexis Pinto,
dated October 26, 2001 (MRK-KRA00002028-9) .............. Appx10243

Exhibit 33 to Dykstra Declaration -
Letter from Alexis Pinto to Tonia Torquato,
dated October 26, 2001 (MRK-KRA00002017-25) ............ Appx10246

Exhibit 34 to Dykstra Declaration -
Letter from Tonia Torquato to Alexis Pinto,
dated October 29, 2001 (MRK-KRA00002013-16) ............ Appx10256

Exhibit 35 to Dykstra Declaration -
Letter from Axel Johnson to Tonia Torquato,
dated November 26, 2001 (RELATOR_00001086) ............ Appx10261

Exhibit 36 to Dykstra Declaration -
Stephen Krahling Pay Stubs (RELATOR_00001061-7) ...... Appx10263

Exhibit 37 to Dykstra Declaration -
Letter from Axel Johnson to Tonia Torquato,
dated December 20, 2001 (RELATOR_00001090) ............. Appx10271

# Table of Contents
## (Continued)

Exhibit 38 to Dykstra Declaration -
CDC Vaccines for Children Program web page
"About VFC," last reviewed on February 18, 2016 ............. Appx10273

Exhibit 39 to Dykstra Declaration -
Advisory Committee on Immunization Practices Charter
approved March 27, 2018 .................................................... Appx10277

Exhibit 40 to Dykstra Declaration -
Excerpts from Expert Report of William P. Nichols ............ Appx10283

Exhibit 41 to Dykstra Declaration -
Excerpts from the Deposition Testimony of Mark Pallansch,
Ph.D., taken October 13, 2017 ............................................ Appx10292

Exhibit 42 to Dykstra Declaration -
1971 MMR Product License (MRK-KRA01972538) ......... Appx10307

Exhibit 43 to Dykstra Declaration -
1995 MMR Product License (MRK-KRA01676252) ......... Appx10309

Exhibit 44 to Dykstra Declaration -
Merck's Establishment License (MRK-KRA01676250) ..... Appx10311

Exhibit 45 to Dykstra Declaration -
Advisory Committee on Immunization Practices Vaccines for
Children Program-Resolution No. 10/17-3, Vaccines to
Prevent Measles, Mumps, Rubella and Varicella,
dated October 25, 2017 ....................................................... Appx10313

Exhibit 46 to Dykstra Declaration -
Vaccines for Children Program-Resolution No. 6/06-1,
Vaccines included in the VFC Program,
dated June 29, 2006 ............................................................ Appx10317

Exhibit 47 to Dykstra Declaration -
Advisory Committee on Immunization Practices, Policies
and Procedures, dated December 2018 ............................... Appx10319

**Table of Contents**
**(Continued)**

Exhibit 48 to Dykstra Declaration -
"Recommendation of the Advisory Committee on
Immunization Practices for Use of a Third Dose of Mumps
Virus Containing Vaccine in Persons at Increased Risk for
Mumps During Outbreak," *MMWR*,
dated January 12, 2018 ........................................................ Appx10345

Exhibit 49 to Dykstra Declaration -
Excerpts from the Expert Report of
William L. Atkinson M.D., MPH, dated June 12, 2018 ....... Appx10355

Exhibit 50 to Dykstra Declaration -
National Center for Immunization and Respiratory Diseases
(CVG) Fact Sheet ................................................................ Appx10365

Exhibit 51 to Dykstra Declaration -
"Prevention of Measles, Rubella, Congenital Rubella
Syndrome, and Mumps," *MMWR*, dated June 14, 2013 ...... Appx10380

Exhibit 52 to Dykstra Declaration -
CDC's "Measles, Mumps, and Rubella (MMR) Vaccination:
What Everyone Should Know," last reviewed
March 28, 2019 .................................................................. Appx10421

Exhibit 53 to Dykstra Declaration -
"Measles, Mumps and Rubella-Vaccine Use and Strategies for
Elimination of Measles, Rubella and Congenital Rubella
Syndrome and Control of Mumps: Recommendations of the
Advisory Committee on Immunization Practices,"
*MMWR*, dated May 22, 1998 ............................................... Appx10428

Exhibit 54 to Dykstra Declaration -
Merck's 1998 Vaccine for Children Contract with the CDC
(MRK-KRA01371728-50) ................................................... Appx10473

Exhibit 55 to Dykstra Declaration -
Merck's 1999 Vaccine for Children Contract with the CDC
(MRK-KRA01371751-84) ................................................... Appx10497
*(Cont'd in Vol XXIV)*

**Table of Contents**
**(Continued)**

**Volume XXIV**
**(Filed Under Seal)**

Exhibit 56 to Dykstra Declaration -
Merck's 2000 Vaccine for Children Contract with the CDC
(MRK-KRA01371693-1727) ................................................. Appx10532

Exhibit 57 to Dykstra Declaration -
Merck's 2001 Vaccine for Children Contract with the CDC
(MRK-KRA01371656-92) ................................................. Appx10568

Exhibit 58 to Dykstra Declaration -
Merck's 2002 Vaccine for Children Contract with the CDC
(MRK-KRA01371785-816) ................................................. Appx10606

Exhibit 59 to Dykstra Declaration -
Merck's 2003 Vaccine for Children Contract with the CDC
(MRK-KRA01371311-340) ................................................. Appx10639

Exhibit 60 to Dykstra Declaration -
Merck's 2004 Vaccine for Children Contract with the CDC
(MRK-KRA01371280-310) ................................................. Appx10670

Exhibit 61 to Dykstra Declaration -
Merck's 2005 Vaccine for Children Contract with the CDC
(MRK-KRA01371341-72) ................................................. Appx10702

Exhibit 62 to Dykstra Declaration -
Merck's 2006 Vaccine for Children Contract with the CDC
(MRK-KRA01371624-55) ................................................. Appx10735

Exhibit 63 to Dykstra Declaration -
Merck's 2007 Vaccine for Children Contract with the CDC
(MRK-KRA01371604-23) ................................................. Appx10768

Exhibit 64 to Dykstra Declaration -
Merck's 2008 Vaccine for Children Contract with the CDC
(MRK-KRA01371817-40) ................................................. Appx10789

**Table of Contents**
**(Continued)**

**Page**

Exhibit 65 to Dykstra Declaration -
Merck's 2009 Vaccine for Children Contract with the CDC
(MRK-KRA01371880-1900) ............................................... Appx10814

Exhibit 66 to Dykstra Declaration -
Merck's 2010 Vaccine for Children Contract with the CDC
(MRK-KRA01371373-97) ................................................... Appx10836

Exhibit 67 to Dykstra Declaration -
Merck's 2011 Vaccine for Children Contract with the CDC
(MRK-KRA01371497-518) ................................................. Appx10862

Exhibit 68 to Dykstra Declaration -
Merck's 2012 Vaccine for Children Contract with the CDC
(MRK-KRA01371398-421) ................................................. Appx10885

Exhibit 69 to Dykstra Declaration -
Merck's 2013 Vaccine for Children Contract with the CDC
(MRK-KRA01371422-44) ................................................... Appx10910

Exhibit 70 to Dykstra Declaration -
Merck's 2014 Vaccine for Children Contract with the CDC
(MRK-KRA01371473-96) ................................................... Appx10934

Exhibit 71 to Dykstra Declaration -
Merck's 2015 Vaccine for Children Contract with the CDC
(MRK-KRA01372045-72) ................................................... Appx10959

Exhibit 72 to Dykstra Declaration -
Merck's 2016 Vaccine for Children Contract with the CDC
(MRK-KRA01371962-89) ................................................... Appx10988
*(Cont'd in Vol XXV)*

**Volume XXV**
**(Filed Under Seal)**

Exhibit 73 to Dykstra Declaration -
CDC Vaccine Price List for Vaccines for Children Program
as of April 6, 2001 .............................................................. Appx11017

**Table of Contents**
(Continued)

Exhibit 74 to Dykstra Declaration -
Letter from Katherine Norris to Lisa C. Dykstra, dated
November 24, 2015 (MRK-KRA01373392-1373393) ........ Appx11022

Exhibit 75 to Dykstra Declaration -
Excerpts from the Deposition Testimony of Alan Sims,
taken October 12, 2017 ........................................................ Appx11025

Exhibit 76 to Dykstra Declaration -
Excerpts from the Deposition Testimony of Michele Taylor,
taken May 9, 2017 ................................................................ Appx11045

Exhibit 77 to Dykstra Declaration -
Excerpts from the Deposition Testimony of Colleen Duffy,
taken December 12, 2016 .................................................... Appx11052

Exhibit 78 to Dykstra Declaration -
Letter from Lisa Dykstra to CDC regarding FOIA
request, dated May 18, 2015 ............................................... Appx11058

Exhibit 79 to Dykstra Declaration -
ACIP's Vaccine Recommendations and Guidelines-MMR
Vaccine Recommendations, last reviewed
November 21, 2014 ............................................................. Appx11067

Exhibit 80 to Dykstra Declaration -
FDA's Vaccines Licensed for Use in the United States ....... Appx11069

Exhibit 81 to Dykstra Declaration -
CDC's Mumps Vaccination, last reviewed
March 8, 2019 .................................................................... Appx11077

Exhibit 82 to Dykstra Declaration -
Excerpts from the Expert Report of
Thomas G. McGuire Ph.D., dated March 13, 2018 ............. Appx11081

Exhibit 83 to Dykstra Declaration -
Excerpts from the Deposition Testimony of
Thomas G. McGuire, taken July 2, 2018 ............................ Appx11086

# Table of Contents
## (Continued)

Exhibit 84 to Dykstra Declaration -
Relator Joan Wlochowski's Responses and Objections
to Merck's Revised First Set of Interrogatories,
dated May 20, 2015 ............................................................ Appx11091

Exhibit 85 to Dykstra Declaration -
Relator Joan Wlochowski's Responses and Objections
to Defendant Merck's Request for Admission,
dated April 6, 2016 ............................................................Appx11116

Exhibit 86 to Dykstra Declaration -
"Live, Attenuated Mumps-Virus Vaccine," *New England
Journal of Medicine*, by R. Weibel, *et al.*,
dated February 2, 1967 ........................................................Appx11144

Exhibit 87 to Dykstra Declaration -
Letter from Karen Goldenthal, M.D. to Alison Fisher, Ph.D.,
dated October 17, 2005 (MRK-KRA00000479-80) .............Appx11152

Exhibit 88 to Dykstra Declaration -
Response to FDA Request for Information,
dated November 15, 2006 (MRK-KRA00000393-409) .......Appx11155

Exhibit 89 to Dykstra Declaration -
Email from Zak Johns to Marlene Koury,
dated February 23, 2017 ......................................................Appx11173

Exhibit 90 to Dykstra Declaration -
Excerpts from the Expert Report of
Ann M. Arvin, M.D., dated June 11, 2018 ...........................Appx11176

Exhibit 91 to Dykstra Declaration -
Excerpts from the Expert Report of
Dipti Gulati, M.S., D. Phil. ..................................................Appx11183

Exhibit 92 to Dykstra Declaration -
Excerpts from the Expert Report of Anna Durbin, M.D.,
dated June 14, 2018 .............................................................Appx11194

**Table of Contents**
(Continued)

Exhibit 93 to Dykstra Declaration -
FDA's Guidance for Industry for the Evaluation of
Combination Vaccines for Preventable Diseases: Production,
Testing and Clinical Studies, dated April 1997 .................... Appx11210

Exhibit 94 to Dykstra Declaration -
CDC's How Flu Vaccine Effectiveness and Efficacy is
Measured, last reviewed January 29, 2016 .......................... Appx11234

Exhibit 95 to Dykstra Declaration -
Excerpts from the CDC's Manual for the Surveillance of
Vaccine-Preventable Diseases ............................................. Appx11243

Exhibit 96 to Dykstra Declaration -
Excerpts from the Deposition Testimony of
Joseph Antonello, taken August 3, 2017 .............................. Appx11253

Exhibit 97 to Dykstra Declaration -
"Summary of Notifiable Diseases-United States," 2005,
*MMWR*, dated March 30, 2007 ........................................... Appx11258

Exhibit 98 to Dykstra Declaration -
CDC's Mumps Cases and Outbreaks, last reviewed
September 17, 2019 ............................................................ Appx11361

Exhibit 99 to Dykstra Declaration -
CDC's Mumps: For Healthcare Providers, last reviewed
March 15, 2019 .................................................................. Appx11364

Exhibit 100 to Dykstra Declaration -
CDC's Principles of Epidemiology in Public Health Practice,
Third Edition: An Introduction to Applied Epidemiology
and Biostatistics, last reviewed May 18, 2012 ..................... Appx11369

Exhibit 101 to Dykstra Declaration -
CDC's Flu Vaccine Effectiveness: Questions and Answers for
Health Professionals, last updated November 27, 2013 ...... Appx11373

# **Table of Contents**
## (Continued)

**Page**

Exhibit 102 to Dykstra Declaration -
"Mumps Virus," by Cherry, *et al.*, *Viral Infections*,
(7th Edition, Chapter 180) .................................................... Appx11383

Exhibit 103 to Dykstra Declaration -
Excerpts from the Deposition Testimony of
David Kessler, M.D., taken September 28, 2018 ................. Appx11399

Exhibit 104 to Dykstra Declaration -
Excerpts from the Deposition Testimony of
Anna Durbin, M.D., taken October 8, 2018 ......................... Appx11402

Exhibit 105 to Dykstra Declaration -
Excerpts from the Deposition Testimony of
Emilio Emini, Ph.D., taken June 6, 2017 ............................. Appx11406

Exhibit 106 to Dykstra Declaration -
January 1998 *Curriculum Vitae* of David L. Krah, M.D.
(MRK-KRA00000695-702) ................................................. Appx11415

Exhibit 107 to Dykstra Declaration -
Excerpts from the Expert Report of
David A. Kessler, M.D. ....................................................... Appx11424

Exhibit 108 to Dykstra Declaration -
FDA Lot Release ................................................................. Appx11429

Exhibit 109 to Dykstra Declaration -
Drugs@FDA Instructions: Health Information ................... Appx11434

Exhibit 110 to Dykstra Declaration -
FDA's Vaccine Safety Questions and Answers ................... Appx11440

Exhibit 111 to Dykstra Declaration -
Excerpts from the Expert Report of
Gary Freed M.D., MPH ...................................................... Appx11447

**Table of Contents**
(Continued)

Exhibit 112 to Dykstra Declaration -
"Vaccine Manufacturing," by Philip Gomez
and James Robinson ............................................................ Appx11450

Exhibit 113 to Dykstra Declaration -
Informational Amendment: Clinical, dated September 15, 2011
(GSK-MMR-IND-0022162-3) ............................................. Appx11461

Exhibit 114 to Dykstra Declaration -
Mumps Serology Strategy in Support of Phase III
Development of Priorix®
(GSK-MMR-IND-0022180-6) ............................................. Appx11464

Exhibit 115 to Dykstra Declaration -
Fax from Yolanda Stewart to Donna Boyce,
dated April 25, 2012 (GSK-MMR-IND-0029256-63) ......... Appx11472

Exhibit 116 to Dykstra Declaration -
Excerpts from the Deposition Testimony of
Dipti Gulati, M.S., D. Phil., taken December 5, 2018 ......... Appx11481

Exhibit 117 to Dykstra Declaration -
Excerpts from the Deposition Testimony of Amy Keegan,
taken February 9, 2018 ....................................................... Appx11485

Exhibit 118 to Dykstra Declaration -
Excerpts from the Deposition Testimony of
David Krah, M.D., taken July 11, 2017 ............................... Appx11488

Exhibit 119 to Dykstra Declaration -
Excerpts from the Deposition Testimony of
David Krah, M.D., taken July 12, 2017 ............................... Appx11493

Exhibit 120 to Dykstra Declaration -
Excerpts from the Expert Report of
Marcela Pasetti, Ph.D. ........................................................ Appx11497
*(Cont'd in Vol XXVI)*

**Table of Contents**
**(Continued)**

**Volume XXVI**
**(Filed Under Seal)**

Exhibit 121 to Dykstra Declaration -
M-M-R®II Current Label ................................................... Appx11507

Exhibit 122 to Dykstra Declaration -
Excerpts from the Deposition Testimony of
Cynthia Morrisey, taken July 27, 2017 ............................... Appx11519

Exhibit 123 to Dykstra Declaration -
Supplemental Biologics License Application,
dated January 29, 2004 (MRK-KRA00000032-139) ........... Appx11522

Exhibit 124 to Dykstra Declaration -
Amendment to Supplemental Biologics License
Application Response to FDA Request for Information,
dated June 5, 2007, with Attachments
(MRK-KRA00000368-82) ................................................... Appx11631

Exhibit 125 to Dykstra Declaration -
Approval Letter, dated December 8, 2007
(MRK-KRA00000383-4) .................................................... Appx11647

Exhibit 126 to Dykstra Declaration -
Letter from Paul Richman, Ph.D. to Alison Fisher, Ph.D.,
dated May 18, 2007 (MRK-KRA00000385-6) .................... Appx11650

Exhibit 127 to Dykstra Declaration -
Response to Form FDA 483, dated August 20, 2001
(MRK-KRA00000481-539) ................................................. Appx11653

Exhibit 128 to Dykstra Declaration -
Memo re: BB-IND 1016 (M-M-R®II); Summary of CBER
teleconference regarding clarification of CBER's comments on
the Mumps Expiry trial, dated November 10, 1998
(MRK-KRA00001215-7) ..................................................... Appx11713

**Table of Contents**
(Continued)

Exhibit 129 to Dykstra Declaration -
Memo re: Mumps End Expiry trial; November 29th, 2000
CBER teleconference, dated November 29, 2000
(MRK-KRA00001218-21) .................................................. Appx11717

Exhibit 130 to Dykstra Declaration -
Letter from Manal Morsy, M.D., Ph.D., to Luba Vujcic,
dated December 1, 1999 (MRK-KRA00001222-30) ........... Appx11722

Exhibit 131 to Dykstra Declaration -
Letter from Karen Goldenthal, M.D. to
Manal Morsy, M.D., Ph.D., dated October 27, 2000
(MRK-KRA00001231-6) .................................................. Appx11732

Exhibit 132 to Dykstra Declaration -
General Correspondence to FDA, dated November 16, 2000
(MRK-KRA00001237-48) .................................................. Appx11739

Exhibit 133 to Dykstra Declaration -
Memo re: MMRV (BB-IND 7068): Summary of Pre-Phase III
teleconference discussion on 01/31/00 with CBER,
dated January 31, 2000 (MRK-KRA00001249-52) ............. Appx11752

Exhibit 134 to Dykstra Declaration -
Teleconference Minutes with CBER, dated February 19, 1999
(MRK-KRA00001253-4) .................................................. Appx11757

Exhibit 135 to Dykstra Declaration -
Memo re: BB-IND 1016: Summary of discussion with Dr.
Kathryn Carbone and Ms. Luba Vujcic (CBER) regarding the
Mumps neutralization assay, dated February 8, 2000
(MRK-KRA00001255-57) .................................................. Appx11760

Exhibit 136 to Dykstra Declaration -
Meeting Minutes, dated March 14, 2000
(MRK-KRA00001258-61) .................................................. Appx11764

**Table of Contents**
**(Continued)**

**Page**

Exhibit 137 to Dykstra Declaration -
Memo re: BB-IND 1016 (M-M-R®II) and BB-IND 7068
(MMRV); Summary of face-to-face meeting discussion
(3/13/00) with CBER regarding wild type mumps
neutralization and ELISA assays, dated March 13, 2000
(MRK-KRA00001262-5) .................................................... Appx11768

Exhibit 138 to Dykstra Declaration -
Letter from Karen Goldenthal, M.D. to Keith Chirgwin, M.D.,
dated August 30, 1999 (MRK-KRA00001266-9) ................ Appx11773

Exhibit 139 to Dykstra Declaration -
Letter from M. Carolyn Hardegree, M.D. to
Keith Chirgwin, M.D., dated September 8, 1998
(MRK-KRA00001467-9) .................................................... Appx11778

Exhibit 140 to Dykstra Declaration -
Response to FDA Request for Information,
dated December 30, 1999 (MRK-KRA00001470-1924) ..... Appx11782
***(Cont'd in Vol XXVII)***

**Volume XXVII**
**(Filed Under Seal)**

Exhibit 141 to Dykstra Declaration -
Letter from Loris McVittie, Ph.D. to
Roberta L. McKee, Ph.D., dated August 20, 1999
(MRK-KRA00018614-9) .................................................... Appx12238

Exhibit 142 to Dykstra Declaration -
Memo re: Teleconference with CBER: Mumps End
Expiry trial-BB IND 1016, dated November 8, 2000
(MRK-KRA00025161-2) .................................................... Appx12245

Exhibit 143 to Dykstra Declaration -
FDA Warning Letter, dated February 9, 2001
(PUBLIC0000666-670) ...................................................... Appx12248

# Table of Contents
## (Continued)

Exhibit 144 to Dykstra Declaration -
Memo re: M-M-R®II (BB-IND 1016); Summary of telephone
discussions on 11/23/99 and 12-06-99 with Ms. Luba Vujcic
(CBER) regarding the neutralization assay results and impact
on Equivalence Margin and lower bound criterion of the
M-M-R®II End Expiry Study hypothesis,
dated December 23, 1999 (MRK-KRA00025713-24) ......... Appx12254

Exhibit 145 to Dykstra Declaration -
Memo re: BB-IND 1016: Summary of discussion with
Ms. Luba Vujcic (CBER) regarding the Mumps neutralization
assay, dated January 5, 2000 (MRK-KRA00048855) ......... Appx12267

Exhibit 146 to Dykstra Declaration -
Memo re: BB-IND 1016 (M-M-R®II); Summary of CBER
teleconference on methods used for the plaque reduction
neutralization assay, dated February 22, 2019
(MRK-KRA00062710-3) .................................................... Appx12269

Exhibit 147 to Dykstra Declaration -
Meeting Minutes with CBER, dated March 13, 2000
(MRK-KRA00062845-53) ................................................... Appx12274

Exhibit 148 to Dykstra Declaration -
Email from David M. Wonnacott to Roberta L. McKee, Ph.D.,
dated May 12, 1999 (MRK-KRA00094960) ....................... Appx12284

Exhibit 149 to Dykstra Declaration -
Email from Katalin G. Abraham to Joye L. Bramble,
dated December 3, 1998 (MRK-KRA00095063) ................ Appx12286

Exhibit 150 to Dykstra Declaration -
Memo re: Teleconference with Dr. Norman Baylor, CBER,
Regarding Meeting on Expiry Titers for M-M-R®II,
dated December 3, 1998 (MRK-KRA00095064) ................ Appx12288

**Table of Contents**
**(Continued)**

Exhibit 151 to Dykstra Declaration -
Memo re: Teleconference with Norman Baylor, CBER,
on 11/16/98, Regarding VARIVAX® and M-M-R®II,
dated November 16, 1998 (MRK-KRA00095065) ............. Appx12290

Exhibit 152 to Dykstra Declaration -
Email from Katalin G. Abraham to Keith Chirgwin, M.D.,
dated October 5, 1998 (MRK-KRA00095142) ................... Appx12292

Exhibit 153 to Dykstra Declaration -
ProQuad™ Original Application, dated August 3, 2004
(MRK-KRA00158320-526) ................................................ Appx12294
*(Cont'd in Vol XXVIII)*

**Volume XXVIII**
**(Filed Under Seal)**

Exhibit 154 to Dykstra Declaration -
Memo re: CBER teleconference (October 16, 2001): Measles,
Mumps and Rubella ELISAs, dated October 19, 2001
(MRK-KRA00201389-91) ................................................ Appx12502

Exhibit 155 to Dykstra Declaration -
Clinical Study Report for the Protocol 007 Study
(MRK-KRA00224982-6529) ............................................ Appx12506
*(Cont'd in Vols XXIX, XXX, and XXXI)*

**Volume XXXI**
**(Filed Under Seal)**

Exhibit 156 to Dykstra Declaration -
Memo re: Supporting Documents for Stephen Krahling,
dated October 10, 2000 (MRK-KRA00331424-33) ............ Appx14055

Exhibit 157 to Dykstra Declaration -
Neutralization Assay Draft faxed on February 19, 1999
(MRK-KRA00336634-6) ................................................... Appx14066

**Table of Contents**
**(Continued)**

**Page**

Exhibit 158 to Dykstra Declaration -
Letter from Paul G. Richman, Ph.D. to Alison Fisher, Ph.D.,
dated May 18, 2007 (MRK-KRA00570703-5) .................... Appx14070

Exhibit 159 to Dykstra Declaration -
Response to FDA Request for Information,
dated February 2, 2001 (MRK-KRA00622078-273) ........... Appx14074

Exhibit 160 to Dykstra Declaration -
Response to FDA Request for Information,
dated August 1, 2002 (MRK-KRA00624279-87) ................ Appx14271

Exhibit 161 to Dykstra Declaration -
General Correspondence to FDA, dated June 23, 1998
(MRK-KRA00624345-4446) ............................................... Appx14281

Exhibit 162 to Dykstra Declaration -
Response to FDA Request for Information,
dated February 5, 1999 (MRK-KRA00624448-4589) ......... Appx14384
***(Cont'd in Vol XXXII)***

**Volume XXXII**
**(Filed Under Seal)**

Exhibit 163 to Dykstra Declaration -
Memo re: BB-IND 1016 (M-M-R®II); Summary of CBER
telephone conversations on 9/24/98 regarding the revised
M-M-R®II draft label and on 9/29/98 regarding the mumps
expiry protocol, dated September 29, 1998
(MRK-KRA00636592-3) .................................................... Appx14527

Exhibit 164 to Dykstra Declaration -
Biological Product Deviation Report Form,
dated April 20, 2001 (MRK-KRA00754233-8) ................... Appx14530

Exhibit 165 to Dykstra Declaration -
M-M-R®II Label (March 1995)
(MRK-KRA00757060-3) .................................................... Appx14537

# Table of Contents
## (Continued)

Exhibit 166 to Dykstra Declaration -
M-M-R®II Label (April 1999)
(MRK-KRA00757072-6) ..................................................... Appx14542

Exhibit 167 to Dykstra Declaration -
M-M-R®II Label (2004) (MRK-KRA00757100-3) ............ Appx14548

Exhibit 168 to Dykstra Declaration -
Response to FDA Request for Information,
dated November 17, 2004 (MRK-KRA00761530-8) .......... Appx14553

Exhibit 169 to Dykstra Declaration -
Response to CBER Comments, dated June 10, 2002
(MRK-KRA00761628-702) ................................................. Appx14563

Exhibit 170 to Dykstra Declaration -
Email from Charlotte Shay to Michael L. Dekleva,
dated June 30, 2004 (MRK-KRA00791508-10) .................. Appx14639

Exhibit 171 to Dykstra Declaration -
Meeting Minutes from a MMRV Pre-Phase III meeting
with CBER, dated February 16, 2000
(MRK-KRA00821856-61) ................................................. Appx14643

Exhibit 172 to Dykstra Declaration -
Approval Letter, dated September 6, 2005
(MRK-KRA00821906-9) ................................................... Appx14650

Exhibit 173 to Dykstra Declaration -
Regulatory Liaison FDA Conversation Record,
dated October 5, 2004 (MRK-KRA00846405-15) .............. Appx14655

Exhibit 174 to Dykstra Declaration -
CBER's Clinical Review of Studies submitted in support of
Licensure of ProQuad™ (MRK-KRA01285010-272) ........ Appx14667

Exhibit 175 to Dykstra Declaration -
FDA report on the release of MMR,
dated February 23, 2016 (MRK-KRA01447562) ................ Appx14931

## Table of Contents
### (Continued)

Exhibit 176 to Dykstra Declaration -
Standard Operating Procedure-Preparation, Review and
Shipment of Biological Product Protocols and Samples to
CBER, dated September 23, 2015
(MRK-KRA01448181-207) ................................................ Appx14933

Exhibit 177 to Dykstra Declaration -
Letter from Roberta L. McKee, Ph.D. to Steven Masiello,
dated March 8, 2001 (MRK-KRA01537603-11) ................. Appx14961

Exhibit 178 to Dykstra Declaration -
Letter from Roberta L. McKee, Ph.D. regarding a proposal for
changes to release specifications, dated December 10, 1998
(MRK-KRA01622125) ....................................................... Appx14971

Exhibit 179 to Dykstra Declaration -
Prior Approval Supplement from Roberta L. McKee, Ph.D.
to William Egan, Ph.D., dated June 18, 1999
(MRK-KRA01622463-5) .................................................... Appx14973

Exhibit 180 to Dykstra Declaration -
Minutes from a December 8, 1998 Meeting,
dated January 8, 1999 (MRK-KRA01622468-72) ............... Appx14977

Exhibit 181 to Dykstra Declaration -
Letter from Katalin Abraham to Dr. Suresh Rastogi
(MRK-KRA01622552) ....................................................... Appx14983

Exhibit 182 to Dykstra Declaration -
Letter from David Wonnacott Ph.D. to Dr. Suresh Rastogi,
dated December 16, 1998 (MRK-KRA01622600-1) ........... Appx14985

Exhibit 183 to Dykstra Declaration -
Prior Approval Supplement from Roberta L. McKee, Ph.D. to
William Egan, Ph.D., dated September 15, 1999
(MRK-KRA01622711-2) .................................................... Appx14988

**Table of Contents**
**(Continued)**

<div align="right">**Page**</div>

Exhibit 184 to Dykstra Declaration -
Attachment 4 to the Prior Approval Supplement from
Roberta L. McKee, Ph.D. to William Egan, Ph.D.,
dated September 15, 1999 (MRK-KRA01622778-9) .......... Appx14991

Exhibit 185 to Dykstra Declaration -
Letter from William Egan, Ph.D. to Roberta L. McKee, Ph.D.,
dated August 20, 1999 (MRK-KRA01624909-10) .............. Appx14994

Exhibit 186 to Dykstra Declaration -
Letter from Barry D. Garfinkle, Ph.D. to Carolyn Hardegree,
M.D., dated January 28, 1998
(MRK-KRA01625508-5639) .............................................. Appx14997
*(Cont'd in Vol XXXIII)*

**Volume XXXIII**
**(Filed Under Seal)**

Exhibit 187 to Dykstra Declaration -
Letter from Peter Patriarca, M.D. to Roberta L. McKee, Ph.D.,
dated February 11, 2000 (MRK-KRA0187091-2) .............. Appx15130

Exhibit 188 to Dykstra Declaration -
MMR Statistical Analysis of Potency on Stability,
dated October 24, 2000 (MRK-KRA01897103-7271) ........ Appx15133

Exhibit 189 to Dykstra Declaration -
Letter from David Wonnacott, Ph.D. to Carolyn Hardegree,
M.D., dated December 5, 1997 (MRK-KRA01972451) ..... Appx15303

Exhibit 190 to Dykstra Declaration -
Various Correspondence between the FDA and Merck,
dated 1969 to 1994 (MRK-KRA01972464-546) ................. Appx15305

Exhibit 191 to Dykstra Declaration -
Various Email Correspondence in 1997
(MRK-KRA01972735-58) ................................................... Appx15389

**Table of Contents**
(Continued)

Exhibit 192 to Dykstra Declaration -
Vaccine & Biological Stability Protocol,
dated September 6, 2016 (MRK-KRA02139917-25) .......... Appx15414

Exhibit 193 to Dykstra Declaration -
Chapter "Mumps Vaccine," by Steven Rubin and
Stanley Plotkin .................................................... Appx15424

Exhibit 194 to Dykstra Declaration -
Stephen Krahling's 2001 Correspondence
(RELATOR_00000736-66) .................................. Appx15453

Exhibit 195 to Dykstra Declaration -
Letter from Axel Johnson to Tonia Torquato,
dated November 30, 2001 (RELATOR_00001036-43) ....... Appx15485

Exhibit 196 to Dykstra Declaration -
Stephen Krahling's 2001 Correspondence and Papers
(RELATOR_00001071-90) .................................. Appx15494
*(Cont'd in Vol XXXIV)*

**Volume XXXIV**
**(Filed Under Seal)**

Exhibit 197 to Dykstra Declaration -
Chapter "Mumps Vaccine," by Steven Rubin,
in Plotkin's Vaccines, 7th edition (2018) ............................ Appx15515

Exhibit 198 to Dykstra Declaration -
Letter from Kevin Malone to Kathleen Hardway,
dated July 31, 2018 ............................................. Appx15548

Exhibit 199 to Dykstra Declaration -
"Live, Attenuated Mumps Virus Vaccine," *New England
Journal of Medicine*, by R. Weibel, *et al.*,
dated February 2, 1967 ....................................... Appx15556

# Table of Contents
## (Continued)

**Page**

Exhibit 200 to Dykstra Declaration -
Excerpts from the Deposition Testimony of
Luwy Musey, M.D., taken October 7, 2016 ......................... Appx15565

Exhibit 201 to Dykstra Declaration -
Rule 30(b)(6) Deposition Topics, dated December 13, 2016
(Stannard Ex. 3) ................................................................. Appx15569

Exhibit 202 to Dykstra Declaration -
Excerpts from the Deposition Testimony of Mark Stannard,
taken December 13, 2016 ..................................................... Appx15585

Exhibit 203 to Dykstra Declaration -
*Curriculum Vitae* of Joan L. Wlochowski ........................... Appx15595

Exhibit 204 to Dykstra Declaration -
Excerpts from the Deposition Testimony of
Joan L. Wlochowski, taken June 13, 2017 ........................... Appx15597

Exhibit 205 to Dykstra Declaration -
FDA/CDC Submission, dated October 23, 2019 ................. Appx15603

Exhibit 206 to Dykstra Declaration -
Excerpts of Defendant Merck's Responses and Objections to
Relators' Third Set of Requests for Admission,
dated August 16, 2017 ........................................................ Appx15719

Exhibit 207 to Dykstra Declaration -
"Vaccine Impact: Benefits for human health,"
by M. Doherty *et al.*, in *Vaccine* 34 (2016) ........................... Appx15722

Exhibit 208 to Dykstra Declaration -
FDA Prescription Drug Labeling Resources ........................ Appx15731

Exhibit 209 to Dykstra Declaration -
ACIP Committee Members ................................................... Appx15738

**Table of Contents**
(Continued)

Exhibit 210 to Dykstra Declaration -
"Notice to Readers: Updated Recommendations of the
ACIP for the Control and Elimination of Mumps," *MMWR*,
June 9, 2006/55(22); 629-630 ............................................... Appx15743

Exhibit 211 to Dykstra Declaration -
"Measles Prevention: Recommendations of the ACIP,"
*MMWR*, December 28, 1989 38(S-9); 1-18 ......................... Appx15749

Exhibit 212 to Dykstra Declaration -
"FDA in Brief: FDA reiterates the importance of vaccines
such as MMR vaccine," dated September 6, 2019 .............. Appx15766

Exhibit 213 to Dykstra Declaration -
"Recommendations of the ACIP Mumps Prevention,"
*MMWR*, June 9, 1989/38(22) ............................................... Appx15769

Exhibit 214 to Dykstra Declaration -
"Recommendation of the ACIP Mumps Vaccine,"
*MMWR*, November 26, 1982; 31(46) ................................... Appx15777

Exhibit 215 to Dykstra Declaration -
Statement by Peter Marks M.D., Ph.D., FDA, on FDA's
continued confidence in the safety and effectiveness
of the MMR vaccine, dated April 22, 2019 ......................... Appx15783

Exhibit 216 to Dykstra Declaration -
About CBER ...................................................................... Appx15788

Exhibit 217 to Dykstra Declaration -
Excerpt from FDA's Website on Warning Letters ................ Appx15791

Exhibit 218 to Dykstra Declaration -
Excerpt of FDA's Website with an Index to Warning
Letters for 'M' Companies .................................................... Appx15794

**Table of Contents**
**(Continued)**

Exhibit 219 to Dykstra Declaration -
"The Immunological Basis for Immunization Series, Module
16: Mumps," by McLean, *et al.*, *Immunization, Vaccines and
Biologicals-World Health Organization* (2010) ................... Appx15817

Exhibit 220 to Dykstra Declaration -
Email from Sue Manoff to Mark Paponia,
dated February 25, 2000 (MRK-KRA00091399-405) ......... Appx15862

Exhibit 221 to Dykstra Declaration -
Memo re: Teleconference with Norman Baylor, CBER, on
11/16/98, Regarding VARIVAX® and M-M-R®II
(MRK-KRA00095065) ....................................................... Appx15870

Exhibit 222 to Dykstra Declaration -
M-M-R®II Label (MRK-KRA00757064-7) ....................... Appx15872

Exhibit 223 to Dykstra Declaration -
M-M-R®II Label (February 2001)
(MRK-KRA00757068-71) .................................................. Appx15877

Exhibit 224 to Dykstra Declaration -
M-M-R®II Label (August 2001)
(MRK-KRA00757077-80) .................................................. Appx15882

Exhibit 225 to Dykstra Declaration -
M-M-R®II Label (February 2006)
(MRK-KRA00757081-4) .................................................... Appx15887

Exhibit 226 to Dykstra Declaration -
M-M-R®II Label (March 1995)
(MRK-KRA00757085-8) .................................................... Appx15892

Exhibit 227 to Dykstra Declaration -
M-M-R®II Label (March 1995)
(MRK-KRA00757089-91) .................................................. Appx15897

**Table of Contents**
**(Continued)**

Page

Exhibit 228 to Dykstra Declaration -
M-M-R®II Label (October 2003)
(MRK-KRA00757092-5) ..................................................... Appx15901

Exhibit 229 to Dykstra Declaration -
M-M-R®II Label (September 2002)
(MRK-KRA00757096-9) ..................................................... Appx15906

Exhibit 230 to Dykstra Declaration -
M-M-R®II Label (February 2007)
(MRK-KRA00757104-7) ..................................................... Appx15911

Exhibit 231 to Dykstra Declaration -
M-M-R®II Label (February 2007)
(MRK-KRA00757108-11) ..................................................... Appx15916

Exhibit 232 to Dykstra Declaration -
M-M-R®II Label (April 19999)
(MRK-KRA01449029-40) ..................................................... Appx15921

Exhibit 233 to Dykstra Declaration -
M-M-R®II Label (February 2014)
(MRK-KRA01449226-36) ..................................................... Appx15934

Exhibit 234 to Dykstra Declaration -
M-M-R®II Label (June 2014)
(MRK-KRA01449243-53) ..................................................... Appx15946

Exhibit 235 to Dykstra Declaration -
M-M-R®II Label (October 2015)
(MRK-KRA01449260-70) ..................................................... Appx15958

Exhibit 236 to Dykstra Declaration -
M-M-R®II Label (February 2000)
(MRK-KRA01449271-5) ..................................................... Appx15970

Exhibit 237 to Dykstra Declaration -
M-M-R®II Label (March 2010)
(MRK-KRA01449276-83) ..................................................... Appx15976

**Table of Contents**
**(Continued)**

Exhibit 238 to Dykstra Declaration -
M-M-R®II Label (December 2010)
(MRK-KRA01449284-91) .................................................. Appx15985

Exhibit 239 to Dykstra Declaration -
M-M-R®II Label (September 2009)
(MRK-KRA01449292-99) .................................................. Appx15994
*(Cont'd in Vol XXXV)*

**Volume XXXV**
**(Filed Under Seal)**

Exhibit 240 to Dykstra Declaration -
Attachment 1 to Letter from Barry D. Garfinkle, Ph.D.
to Carolyn Hardegree, M.D., dated January 28, 1998
(MRK-KRA01625510-639) ................................................. Appx16003

Exhibit 241 to Dykstra Declaration -
Memo re: BB-IND 1016 (M-M-R®II) and BB-IND 7068
(MMRV); Summary of Face-to face meeting discussion
(3/13/00) with CBER regarding wild type mumps
neutralization and ELISA assays, dated March 13, 2000
(MRK-KRA00019855-7) .................................................... Appx16134

Exhibit 242 to Dykstra Declaration -
PowerPoint Presentation entitled Immunogenicity
Mumps-Containing Vaccines (MRK-KRA00091408) ........ Appx16138

Exhibit 243 to Dykstra Declaration -
Letter from David M. Wommacott, Ph.D. to
Suresh C. Rastogi, Ph.D., dated December 16, 1998
(MRK-KRA01629294-1629295) ........................................ Appx16152

Exhibit 244 to Dykstra Declaration -
Response to the FDA Form 483, dated October 24, 2000
(MRK-KRA01649535-1649551) ........................................ Appx16155

Exhibit 245 to Dykstra Declaration -
Warning Letters from FDA Website ................................... Appx16173

**Table of Contents**
**(Continued)**

Exhibit 246 to Dykstra Declaration -
MMD Quality Manual Glossary, dated October 5, 2016
(MRK-KRA01679618-1679772) .......................................... Appx16176

Exhibit 247 to Dykstra Declaration -
Excerpts from the Deposition Testimony of Eric Metzger,
taken June 11, 2015 ............................................................ Appx16332

Exhibit 248 to Dykstra Declaration -
Federal Register Vol. 58 No. 137, July 20, 1993 ................. Appx16336

Exhibit 249 to Dykstra Declaration -
FDA Review of Vaccine Labeling Requirements for
Warnings, Use Instructions, and Precautionary
Information, dated October 2004 .......................................... Appx16342

Defendant Merck's Response to Relators' Statement of
    Material Facts, dated November 26, 2019 (Doc. 299) .......... Appx16345

**Volume XXXVI**
**(Filed Under Seal)**

Declaration of Lisa C. Dykstra, for Merck, in Support of
    Response to Relators' Statement of Material Facts,
    executed November 26, 2019 (Doc. 299) ............................. Appx16501

Exhibit 250 to Dykstra Declaration -
"Mumps Complications and Effects of Mumps Vaccination,
England and Wales, 2002-2006," by Yung, Chee-Fu, *et al.*,
*Emerging Infectious Diseases*, (2011) 17(4):661-667 ......... Appx16513

Exhibit 251 to Dykstra Declaration -
Excerpts from the Deposition Testimony of April Cohen,
taken January 4, 2018 ....................................................... Appx16521

**Table of Contents**
(Continued)

Exhibit 252 to Dykstra Declaration -
"Mumps Virus-Specific Antibody Titers from Pre-Vaccine
Era Sera: Comparison of the Plaque Reduction Neutralization
Assay Enzyme Immunoassays," by Mauldin, Jeremy, *et al.*,
*Journal of Clinical Microbiology*, 2005:43(9):4847-4851 .. Appx16525

Exhibit 253 to Dykstra Declaration -
"Correlates of Protection," by Plotkin and Gilbert,
2018:35-40 .......................................................................... Appx16531

Exhibit 254 to Dykstra Declaration -
FDA, Guidance for Industry: FDA Review of Vaccine
Labeling Requirements for Warnings, Use Instructions, and
Precautionary Information, dated September 2004 ............. Appx16538

Exhibit 255 to Dykstra Declaration -
Excerpts from the Deposition Testimony of
Roberta L. McKee, Ph.D., taken March 30, 2017 ............... Appx16547

Exhibit 256 to Dykstra Declaration -
Excerpts from the Expert Report of
Dipti Gulati, MS, D. Phil. .................................................... Appx16551

Exhibit 257 to Dykstra Declaration -
Biological Product Deviation Report Form
submitted by Merck to the FDA, dated March 5, 2001
(MRK-KRA00754239-44) ..................................................... Appx16556

Exhibit 258 to Dykstra Declaration -
"Jeryl Lynn Strain Live Attenuated Mumps Virus Vaccine
-Influence of Age, Virus Dose, Lot, and-Globulin
Administration on Response," by Buynak, Eugene, *et al.*,
*Journal of the American Medical Association* (1968)
203(1):63-67 ....................................................................... Appx16563

Exhibit 259 to Dykstra Declaration -
2003 Annual Stability Report for M-M-R®II
(MRK-KRA01632888-945) .................................................. Appx16569

## Table of Contents
### (Continued)

**Page**

Exhibit 260 to Dykstra Declaration -
"Sensitive Neutralization Test for virus antibody,"
by Sato *et al.*, *Archives of Virology*, (1978) 58:301-311 ...... Appx16628

Exhibit 261 to Dykstra Declaration -
Letter from Karen Goldenthal, M.D. to Alison Fisher, Ph.D.,
dated December 3, 2004 (MRK-KRA00000361-5) ............. Appx16640

Exhibit 262 to Dykstra Declaration -
Fax from Luba Vujcic to Alison Fisher, Ph.D.,
dated July 20, 2007 (MRK-KRA00141957-8) .................... Appx16646

Exhibit 263 to Dykstra Declaration -
Submission, dated August 8, 2007
(MRK-KRA00000140-225) ................................................ Appx16649

Exhibit 264 to Dykstra Declaration -
Submission, dated December 3, 2007
(MKR-KRA00000226-300) ................................................ Appx16736

Exhibit 265 to Dykstra Declaration -
"Long-Term Persistence of Mumps Antibody after Receipt of 2
Measles-Mumps-Rubella (MMR) Vaccinations and Antibody
Response after a Third MMR Vaccination among a University
Population," by Date, Anand, *et al.*, *Journal of Infectious
Diseases*, (2008) 197:1662-1668 ........................................ Appx16812

Exhibit 266 to Dykstra Declaration -
"Mumps Antibody Levels Among Students Before a Mumps
Outbreak: In Search of a Correlate of Immunity,"
by Cortese, *et al.*, *Journal of Infectious Diseases*, (2011)
204:1413-1422 .................................................................. Appx16820

**Table of Contents**
**(Continued)**

Exhibit 267 to Dykstra Declaration -
"Immunogenicity and Safety of Two Tetravalent (Measles,
Mumps, Rubella, Varicella) Vaccines Coadministered With
Hepatitis A and Pneumococcal Conjugate Vaccines to Children
Twelve to Fourteen Months of Age," by Blatter, *et al.*,
*The Pediatric Infectious Disease Journal,*
(2012) 31:e133-e140 .......................................................... Appx16831

Exhibit 268 to Dykstra Declaration -
Analytical Validation Protocol
(MRK-KRA00337307-18) ................................................... Appx16840

Exhibit 269 to Dykstra Declaration -
Expert Report of Robert Platt, Ph.D.,
dated June 14, 2018 ............................................................ Appx16853

Exhibit 270 to Dykstra Declaration -
Excerpts from the Deposition Testimony of Amy Keegan,
taken April 27, 2017 ........................................................... Appx16992

Exhibit 271 to Dykstra Declaration -
Documentation of Work Activities
(RELATOR_00000272-3) .................................................... Appx16995

Exhibit 272 to Dykstra Declaration -
Work Summary Document (RELATOR_00000274-6) ........ Appx16998
*(Cont'd in Vol XXXVII)*

**Volume XXXVII**
**(Filed Under Seal)**

Exhibit 273 to Dykstra Declaration -
Submission, dated May 5, 2005
(MRK-KRA00176342-176654) ........................................... Appx17002

Exhibit 274 to Dykstra Declaration -
Submission, dated June 30, 2004
(MKR-KRA00137854-55 and 8137-72) .............................. Appx17316

**Table of Contents**
**(Continued)**

**Page**

Exhibit 275 to Dykstra Declaration -
"Safety and Immunogenicity of Human Serum Albumin-Free
MMR Vaccine in US Children Aged 12-15 months,"
by Mufson, *et al.*, *Journal of Pediatric Infectious Diseases
Society*, (2014) 4:339-348 ................................................. Appx17355

Exhibit 276 to Dykstra Declaration -
Letter from Jerry P. Weir, Ph.D. to Alison Fisher, Ph.D.,
dated December 30, 2004 (MRK-KRA00141670-2) ........... Appx17366

Exhibit 277 to Dykstra Declaration -
Submission, dated February 28, 2005
(MRK-KRA00141676-729) ................................................. Appx17370

Exhibit 278 to Dykstra Declaration -
Submission, dated July 13, 2005
(MRK-KRA00141789-906) ................................................. Appx17425
***(Cont'd in Vol XXXVIII)***

**Volume XXXVIII**
**(Filed Under Seal)**

Exhibit 279 to Dykstra Declaration -
"Summary of Notifiable Diseases-United States 2012,"
*MMWR*, 2014:61(53):1-121 ................................................. Appx17544

Exhibit 280 to Dykstra Declaration -
CDC Publication "Mumps Outbreak-Related Questions
and Answers for Patients," last reviewed March 15, 2019 .. Appx17669

Exhibit 281 to Dykstra Declaration -
CDC Publication "Nationally Notifiable Infectious Diseases
and Conditions, United States: Annual Tables" .................. Appx17672

Exhibit 282 to Dykstra Declaration -
"Characteristics of Large Mumps Outbreaks in the United
States during July 2010-December 2015," by Clemmons,
Nakia *et al.*, *Clinical Infectious Diseases*, (2019) ............... Appx17676

**Table of Contents**
**(Continued)**

Exhibit 283 to Dykstra Declaration -
CDC Publication "Healthy People 2010 Final Review" ...... Appx17684
*(Cont'd in Vol XXXIX)*

**Volume XXXIX**
**(Filed Under Seal)**

Exhibit 284 to Dykstra Declaration -
CDC Publication "Healthy People 2020 Immunization and
Infectious Diseases Objectives" .......................................... Appx18245

Exhibit 285 to Dykstra Declaration -
CDC Publication "Healthy People 2020 IID-1.2
Cases of Hib Data" .............................................................. Appx18278

Exhibit 286 to Dykstra Declaration -
CDC Publication "Healthy People 2020 IID-1.4
U.S.-acquired cases of Measles Data" ................................ Appx18280

Exhibit 287 to Dykstra Declaration -
CDC Publication "Healthy People 2020 IID-1.5
U.S.-acquired cases of Mumps Data" ................................ Appx18282

Exhibit 288 to Dykstra Declaration -
CDC Publication "Healthy People 2020 IID-1.9
 U.S.-acquired cases of Rubella Data" ................................ Appx18284

Exhibit 289 to Dykstra Declaration -
CDC Webpage "National Center for Immunization
and Respiratory Diseases" ................................................... Appx18286

Exhibit 290 to Dykstra Declaration -
"Mumps vaccination coverage and vaccine effectiveness in a
large outbreak among college students-Iowa, 2006,"
by Marin, Mona *et al.*, *Vaccine*, (2008) 26:3601-3607 ........ Appx18301

**Table of Contents**
(Continued)

Exhibit 291 to Dykstra Declaration -
"Mumps Outbreak in Orthodox Jewish Communities in the
United States," Barskey, Albert, *et al.*, *New England Journal
of Medicine*, (2012) 367(18):1704-1713 .............................. Appx18309

Exhibit 292 to Dykstra Declaration -
"Impact of a Third Dose of Measles-Mumps-Rubella Vaccine
on a Mumps Outbreak," by Ogbuanu, Ikechukwu, *et al.*,
*Pediatrics*, (2012) 130(6):1-8 ............................................ Appx18320

Exhibit 293 to Dykstra Declaration -
"Epidemiology of a Mumps Outbreak in a Highly Vaccinated
Island Population and Use of a Third Dose of Measles-
Mumps-Rubella Vaccine for Outbreak Control—Guam 2009
to 2010," by Nelson, George, *et al.*, *Pediatric Infectious
Disease Journal*, (2013) 32(4):374-380 .............................. Appx18330

Exhibit 294 to Dykstra Declaration -
"Effectiveness of a Third Dose of MMR Vaccine for Mumps
Outbreak Control," by Cardemil, Cristina, *et al.*, *New England
Journal of Medicine*, (2017) 377(10):947-956 ................... Appx18338

Exhibit 295 to Dykstra Declaration -
"Mumps in a highly vaccinated Marshallese community in
Arkansas, USA: an outbreak report," by Fields, Virgie, *et al.*,
*Lancet Infectious Diseases*,
(Published online January 8, 2019) 1-8 .............................. Appx18349

Exhibit 296 to Dykstra Declaration -
"Antibody Induced by Immunization with the Jeryl Lynn
Mumps Vaccine Strain Effectively Neutralizes a Heterologous
Wild-Type Mumps Virus Associated with a Large Outbreak,"
by Rubin, Steven, *et al.*, *Journal of Infectious Diseases*, (2008)
198:508-515 ...................................................................... Appx18358

Exhibit 297 to Dykstra Declaration -
"Vaccine waning and mumps-re-emergence in the United
States," by Lewnard, Joseph and Grad, Yonatan, *Science
Translational Medicine*, (2018) 10(433):1-10 .................... Appx18367

**Table of Contents**
(Continued)

Exhibit 298 to Dykstra Declaration -
"Comment: The changing epidemiology of mumps in a high
vaccination era," by Marshall, Helen and Plotkin, Stanley,
*Lancet Infectious Diseases*, (2019) 19:118-119 ................... Appx18379

Exhibit 299 to Dykstra Declaration -
"Successes and challenges for preventing measles, mumps and
rubella by vaccination," by Bankamp, Bettina, *et al.*, *Current
Opinion in Virology*, (2019) 34:110-116 .............................. Appx18382

Exhibit 300 to Dykstra Declaration -
"Mumps Vaccines Do We Need a New One?," by Rubin,
Steven and Beeler, Judy, *Pediatric Infectious Disease Journal*,
(2013) 32(10):1156-1157 ..................................................... Appx18390

Exhibit 301 to Dykstra Declaration -
CDC website listing Measles-related *MMWR* Articles ........ Appx18393

Exhibit 302 to Dykstra Declaration -
CDC website listing Pertussis (Whooping Cough)
Publications ........................................................................ Appx18399

Exhibit 303 to Dykstra Declaration -
CDC website listing Chickenpox (Varicella) References and
Resources .......................................................................... Appx18407

Exhibit 304 to Dykstra Declaration -
CDC webpage: Glossary ...................................................... Appx18411

Exhibit 305 to Dykstra Declaration -
Email from Jeanne Santoli to Eric Skjeveland,
dated June 12, 2012 (MRK-KRA00122172-3) .................... Appx18425

Exhibit 306 to Dykstra Declaration -
CDC webpage, ACIP Workgroups, last reviewed
May 30, 2019 ...................................................................... Appx18428

# Table of Contents
## (Continued)

**Page**

Exhibit 307 to Dykstra Declaration -
"Recommendations of the Advisory Committee on
Immunization Practices for Use of Hepatitis A Vaccine
for Persons Experiencing Homelessness,"
*MMWR* 2019:68(6):153-56 ................................................. Appx18435

Exhibit 308 to Dykstra Declaration -
"Human Papillomavirus Vaccination for Adults: Updated
Recommendations of the Advisory Committee on
Immunization Practices," *MMWR* 2019:68(3):698-702 ...... Appx18440

Exhibit 309 to Dykstra Declaration -
"Prevention and Control of Seasonal Influenza with
Vaccines: Recommendations of the Advisory Committee
on Immunization Practices-United States, 2019-20
Influenza Season," *MMWR* 2019:69(3):1-21 ....................... Appx18446

Exhibit 310 to Dykstra Declaration -
"Japanese Encephalitis Vaccine: Recommendations of the
Advisory Committee on Immunization Practices,"
*MMWR* 2019:68(2);1-33 ................................................... Appx18475
***(Cont'd in Vol XL)***

### Volume XL
### (Filed Under Seal)

Exhibit 311 to Dykstra Declaration -
"Prevention of Pertussis, Tetanus, and Diphtheria with
Vaccines in the United States: Recommendations of the
Advisory Committee on Immunization Practices,"
*MMWR* 2018:67(2):1-44 ................................................... Appx18516

Exhibit 312 to Dykstra Declaration -
"Updated Recommendations for Use of Tetanus Toxoid,
Reduced Diphtheria Toxoid and Acellular Pertussis Vaccine
(Tdap) in Pregnant Women and Persons Who Have or
Anticipate Having Close Contact with an Infant Aged <12
Months-Advisory Committee on Immunization Practices
(ACIP), 2011," *MMWR* 2011:60(41):1424-1426 ................. Appx18565

**Table of Contents**
**(Continued)**

Exhibit 313 to Dykstra Declaration -
"Updated Recommendations for the Use of Tetanus Toxoid,
Reduced Diphtheria Toxoid, and Acellular Pertussis Vaccine
(Tdap) in Pregnant Women-Advisory Committee on
Immunization Practices (ACIP), 2012," *MMWR*
2013:62(7):131-135 ............................................................ Appx18569

Exhibit 314 to Dykstra Declaration -
"Immunization in the United States (Chapter 73),"
by Cohn, *et al.*, *Vaccines* 1421-1440 ................................... Appx18575

Exhibit 315 to Dykstra Declaration -
Excerpts from the Expert Report of
Daniel Salmon, Ph.D., MPH ................................................ Appx18596

Exhibit 316 to Dykstra Declaration -
Excerpts from Merck's Supplemental Responses and
Objections to Relators' First Set of Interrogatories,
dated December 12, 2016 .................................................... Appx18608

Exhibit 317 to Dykstra Declaration -
"The Pertussis Problem," by Plotkin, Stanley, *Clinical
Infectious Diseases*, (2014) 58(6): 830-833 ......................... Appx18618

Exhibit 318 to Dykstra Declaration -
"Establishing a Global Vaccine-Development Fund,"
by Plotkin, Stanley, *et al.*, *New England Journal of Medicine*,
(2015) 373:297-300 ........................................................... Appx18623

Exhibit 319 to Dykstra Declaration -
Chapter 11 "Anthrax Vaccines," by Friedlander, Arthur, *et al.*,
*Vaccines* (2018) ................................................................ Appx18628

Exhibit 320 to Dykstra Declaration -
Chapter 38 "Meningococcal Capsular Group A, C, W, and Y
Conjugate Vaccines," by Harrison, Lee, *et al.*,
*Vaccines* (2018) ................................................................ Appx18646

**Table of Contents**
**(Continued)**

Exhibit 321 to Dykstra Declaration -
Chapter 52 "Rotavirus Vaccines," by Parashar, Umesh, *et al.*,
*Vaccines* (2018) ................................................................... Appx18673

Exhibit 322 to Dykstra Declaration -
Chapter 60 "Tuberculosis Vaccines," by Hanekom, Willem,
*et al.*, *Vaccines* (2018) ......................................................... Appx18694

Exhibit 323 to Dykstra Declaration -
Excerpts from Expert Report of
Gary L. Freed, M.D., MPH .................................................. Appx18714

Exhibit 324 to Dykstra Declaration -
Excerpts from the Deposition Testimony of
Gary L. Freed, M.D., MPH, taken October 18, 2018  .......... Appx18718

Exhibit 325 to Dykstra Declaration -
Excerpts from "2012 CDC Summary of
Notifiable Diseases" ............................................................ Appx18721

Exhibit 326 to Dykstra Declaration -
Excerpts from "1977 Annual Summary,"
*MMWR*, Vol. 26, No. 53, September 1978 .......................... Appx18729

Exhibit 327 to Dykstra Declaration -
Excerpts from "1980 Annual Summary,"
*MMWR*, Vol. 29, No. 54, September 1981 .......................... Appx18734

Exhibit 328 to Dykstra Declaration -
Excerpts from "2013 CDC Summary of
Notifiable Diseases" ............................................................ Appx18742

Exhibit 329 to Dykstra Declaration -
Excerpts from "2014 CDC Summary of
Notifiable Diseases" ............................................................ Appx18747

**Table of Contents**
(Continued)

Relators' Responses to Merck's Statements of Material Facts in
Support of Its First and Fourth Summary Judgment Motions
and Their Corresponding Additional Statement of Material
Facts, dated November 26, 2019 (Doc. 300) ........................ Appx18751

Declaration of Gary Reilly in Support of Relators' Oppositions to
Merck's Four Motions for Summary Judgment,
executed November 26, 2019 (Doc. 300) ............................ Appx18984

    Exhibit 361 to Reilly Declaration -
    Deposition Testimony of Amy Keegan,
    taken April 27, 2017 ............................................................ Appx18996
    *(Cont'd in XLI)*

**Volume XLI**
**(Filed Under Seal)**

    Exhibit 362 to Reilly Declaration -
    Memorandum titled "Delay of Filing for Optimized
    GOS/HAS-free Diluent for M-M-R®II" with Attachment,
    dated August 28, 2000 (MRK-CHA01593194-9) ............... Appx19070

    Exhibit 363 to Reilly Declaration -
    The Current Manufacturing Target Titer for the Mumps
    Component of Measles, Mumps, and Rubella Virus Vaccine
    Live M-M-R®II (MRK-CHA00576983-93) ...................... Appx19077

    Exhibit 364 to Reilly Declaration -
    Letter from Robert L. McKee, Ph.D. to Carolyn Hardegree,
    M.D., dated December 10, 1998, with Attachment
    (MRK-CHA00756233-55) .................................................. Appx19089

    Exhibit 365 to Reilly Declaration -
    Excerpts from Clinical and Regulatory Review Committee
    Critical Activities, issued August 15, 2001
    (MRK-CHA01724860-25029) ........................................... Appx19113

**Table of Contents**
(Continued)

Exhibit 366 to Reilly Declaration -
Excerpts from Clinical and Regulatory Review Committee
Critical Activities, issued March 17, 1999
(MRK-CHA01717354-7508) ............................................... Appx19123

Exhibit 367 to Reilly Declaration -
Table (MRK-CHA00280517) ............................................... Appx19142

Exhibit 368 to Reilly Declaration -
Project Management Regulatory Submissions
Schedule for "All Products," from 01-AUG-2002
(MRK-CHA01726084-7) ..................................................... Appx19144

Exhibit 369 to Reilly Declaration -
Email from Hentrietta Ukwu to David W. Blois,
dated October 6, 1998, with Attachment
(MRK-CHA00625837-9) ..................................................... Appx19149

Exhibit 370 to Reilly Declaration -
Justification of Mumps Component Frequency
(MRK-CHA00032404-7) ..................................................... Appx19153

Exhibit 371 to Reilly Declaration -
Email from Alison L. Fisher, Ph.D. to Mark S. Galinski,
dated March 28, 2005 (MRK-CHA00560317-9) ................. Appx19158

Exhibit 372 to Reilly Declaration -
Email from Bonita M. Stankunas to Amy Keegan,
dated October 1, 2010 (MRK-CHA01470854-6) ................ Appx19162

Exhibit 373 to Reilly Declaration -
Presentation titled M-M-R®II
(MRK-CHA00021133-67) ................................................... Appx19166

Exhibit 374 to Reilly Declaration -
Excerpts from Pediatric Measles, Mumps, Rubella &
Varicella-containing Franchise: Integrated Vaccine T-PAC
Review, dated October 28, 2002
(MRK-CHA00233586-3623) ............................................... Appx19202

**Table of Contents**
**(Continued)**

Exhibit 375 to Reilly Declaration -
Deposition Testimony of April D. Cohen,
taken January 4, 2018 ........................................................ Appx19211

Exhibit 376 to Reilly Declaration -
Minutes of October 6, 1999 Project Team Meeting,
dated October 8, 1999 (MRK-CHA01899074-86) .............. Appx19276

Exhibit 377 to Reilly Declaration -
Draft Memo re: Clinical and Regulator Review Committee
Meeting Summary-October 8, 2002, dated October 11, 2002
(MRK-CHA01728735-8) ..................................................... Appx19290

Exhibit 378 to Reilly Declaration -
Pediatric Live Virus Vaccine Franchise Review,
dated October 28, 2002 (MRK-CHA00207636-83) ............ Appx19295

Exhibit 379 to Reilly Declaration -
Presentation, produced as "M-M-R II and Priorix Profiles
8_19_11F.ppt" (MRK-CHA00955777) ............................... Appx19344

Exhibit 380 to Reilly Declaration -
Deposition Testimony of Tim Schofield,
taken March 20, 2017 ........................................................ Appx19347

Exhibit 381 to Reilly Declaration -
Memo re: Mumps Stability and Potency Estimations,
dated February 27, 2001 (MRK-CHA01896072-3) ............. Appx19449

Exhibit 382 to Reilly Declaration -
Email from Philip S. Bennett to Cynthia Morrisey,
dated January 18, 2002 (MRK-CHA00094849-50) ............. Appx19452

Exhibit 383 to Reilly Declaration -
*Curriculum Vitae* of Manal Anwar Morsy, M.D., Ph.D., MBA
(MORSY00001-10) ............................................................ Appx19455

**Table of Contents**
**(Continued)**

Exhibit 384 to Reilly Declaration -
*Curriculum Vitae* of Cynthia F. Morrisey
(MORRISEY_00000001-6) ................................................ Appx19466

Exhibit 385 to Reilly Declaration -
Memo re: Determination of Minimum Release
Specifications for Mumps and Rubella in M-M-R®II,
dated February 9, 2004 (MRK-CHA00722641-2) ............... Appx19473

Exhibit 386 to Reilly Declaration -
Memo re: Determination of Minimum Release Specifications
for Mumps in M-M-R®II, dated November 4, 2004
(MRK-CHA00722667-8) .................................................... Appx19476

Exhibit 387 to Reilly Declaration -
Email from Philip S. Bennett with attachments,
dated December 4, 2012
(MRK-CHA01580006-15) ................................................... Appx19479

Exhibit 388 to Reilly Declaration -
Email from Kimberly A. Duffy to Amy Keegan,
dated December 5, 2012 (MRK-CHA01579943-5) ............. Appx19490

Exhibit 389 to Reilly Declaration -
*Curriculum Vitae* of Amy Keegan
(MRK-CHA02009507-9) .................................................... Appx19494

Exhibit 390 to Reilly Declaration -
Presentation, MMRII Protocol #007 - Mumps End Expiry
study: AIGENT Assay Issues and Impact on Study Criteria,
produced as "6-30 pm Draft 10-04-02 for CRRC-10-08-02
slides.ppt" (MRK-CHA00025831) ...................................... Appx19498
*(Cont'd in Vol LXII)*

**Table of Contents**
**(Continued)**

**Volume LXII**
**(Filed Under Seal)**

Exhibit 391 to Reilly Declaration -
Gulati Deposition Exhibit 14, Select Pages of Supplemental
Biologics License Application, dated June 30, 2004
(MRK-CHA00137854-55 and
MRK-CHA00138585-708) ................................................. Appx19533

Exhibit 392 to Reilly Declaration -
Regulatory Liaison FDA Conversation Record,
dated May 27, 2005 (MRK-CHA00793082-3) .................... Appx19539

Exhibit 393 to Reilly Declaration -
Submission, dated July 13, 2005
(MRK-CHA00141789-906) ................................................. Appx19542

Exhibit 394 to Reilly Declaration -
Deposition Testimony of Dipti Gulati, M.S., D. Phil.,
taken December 5, 2018 ..................................................... Appx19550

Exhibit 395 to Reilly Declaration -
Merck's Biological Stability Program 2001 Annual Stability
Report for M-M-R®II (MRK-CHA01632745-51) .............. Appx19661

Exhibit 396 to Reilly Declaration -
Biological Stability Program 2004 Annual Stability
Report for M-M-R®II (MRK-CHA01632833-8) ................ Appx19669

Exhibit 397 to Reilly Declaration -
Biological Stability Program 2005 Annual Stability
Report for M-M-R®II (MRK-CHA01634117-22) .............. Appx19676

Exhibit 398 to Reilly Declaration -
Biological Stability Program 2008 Annual Stability
Report for M-M-R®II (MRK-CHA01633948-59) .............. Appx19683

**Table of Contents**
(Continued)

Exhibit 399 to Reilly Declaration -
Response to FDA Request for Information,
dated February 28, 2005 (MRK-CHA02078926-7) ............. Appx19696

Exhibit 400 to Reilly Declaration -
Excerpts from Biological Stability Program 2010
Annual Stability Report for M-M-R®II
(MRK-CHA01458201-6) ..................................................... Appx19699

Exhibit 401 to Reilly Declaration -
CDC "Mumps Cases and Outbreaks" webpage,
last accessed November 25, 2019 ........................................ Appx19706

Exhibit 402 to Reilly Declaration -
CDC "Mumps Vaccination" webpage, last reviewed
March 28, 2019 ................................................................... Appx19709

Exhibit 403 to Reilly Declaration -
CDC "Mumps Vaccination" webpage, archived as of
May 30, 2012 ...................................................................... Appx19711

Exhibit 404 to Reilly Declaration -
CDC "Mumps Vaccination" webpage, archived as of
December 8, 2009 ............................................................... Appx19714

Exhibit 405 to Reilly Declaration -
Email from Janet Ernst-Gerner to Alan Modlinger,
dated September 23, 2016 (MRK-CHA02008691-4) .......... Appx19717

Exhibit 406 to Reilly Declaration -
Marked M-M-R®II (Measles, Mumps, and Rubella Virus
Vaccine Live) Literature (MRK-CHA02008695-705) ......... Appx19722

Exhibit 407 to Reilly Declaration -
Email from Mark Papania to Barbara Kuter,
dated February 12, 2010 (MRK-CHA00351988-90) ........... Appx19734

# Table of Contents
## (Continued)

Exhibit 408 to Reilly Declaration -
Email from Chester J. Kitchen, dated February 25, 2010
(MRK-CHA00790153-4) ..................................................... Appx19738

Exhibit 409 to Reilly Declaration -
Email from Chester J. Kitchen to Scott Porreca,
dated February 26, 2010 (MRK-CHA00791347) ................ Appx19741

Exhibit 410 to Reilly Declaration -
FDA Conversation re; PRIOrix™, measles, mumps &
rubella live, attenuated, viral vaccine BB-IND-7229,
dated December 18, 1997 (GSK-MMR-IND-0047687-9) ... Appx19743

Exhibit 411 to Reilly Declaration -
FDA Conversation re: PRIOrix IND submission,
Clinical Hold, dated October 16, 1997
(GSK-MMR-IND-0047654-6) ............................................. Appx19747

Exhibit 412 to Reilly Declaration -
Extra CDAB Meeting Abstract, dated August 1, 2011
(GSK-MMR-019819-42) .................................................... Appx19751

Exhibit 413 to Reilly Declaration -
Memo re: Minutes of Meeting with CBER on 4/4/01,
dated April 9, 2001 (MRK-CHA00049238-40) ................... Appx19776

Exhibit 414 to Reilly Declaration -
Email from Sally S. Wong to Cathy Hoath,
dated February 26, 2013 (MRK-CHA01556424-8) ............. Appx19780

Exhibit 415 to Reilly Declaration -
Email from Joseph D. Bernardo to Mark J. Stannard,
dated November 30, 2016 (MRK-CHA02101841) ............. Appx19786

Exhibit 416 to Reilly Declaration -
Deposition Testimony of Roberta L. McKee, Ph.D.,
taken March 30, 2017 ......................................................... Appx19788

**Table of Contents**
(Continued)

Exhibit 417 to Reilly Declaration -
Vaccine & Biological Stability Protocol for M-M-R®II
(MRK-CHA01714300-8) .................................................... Appx19870

Exhibit 418 to Reilly Declaration -
Excerpts from Biological Stability Program 2000
Annual Stability Report for M-M-R®II
(MRK-CHA01633601-6) .................................................... Appx19880

Exhibit 419 to Reilly Declaration -
Excerpts from Biological Stability Program 2002
Annual Stability Report for M-M-R®II
(MRK-CHA01633529-39) .................................................. Appx19887

Exhibit 420 to Reilly Declaration -
Excerpts from Biological Stability Program 2003
Annual Stability Report for M-M-R®II
(MRK-CHA01632888-95) .................................................. Appx19899

Exhibit 421 to Reilly Declaration -
SOP Active Stability Monitoring of Live Virus Vaccine
Potency Results, effective November 10, 2000
(MRK-CHA00049165-73) .................................................. Appx19908

Exhibit 422 to Reilly Declaration -
SOP Real Time Stability Trend Monitoring, effective
September 21, 2016 (MRK-CHA01714343-54) .................. Appx19918

Exhibit 423 to Reilly Declaration -
Label Claim Compliance of M-M-R®II
(MRK-CHA00322066-73) .................................................. Appx19931

Exhibit 424 to Reilly Declaration -
Proposed New Stabilizer for M-M-R®II,
dated July 12, 2002 (MRK-CHA00239179-99) .................. Appx19940

**Table of Contents**
**(Continued)**

Exhibit 425 to Reilly Declaration -
Clinical and Regulatory Review Committee Agenda,
dated October 8, 2002 (MRK-CHA00780210-65) .............. Appx19962
*(Cont'd in Vol XLIII)*

**Volume XLIII**
**(Filed Under Seal)**

Exhibit 426 to Reilly Declaration -
Analytical Approach for MMR in Japan
(MRK-CHA00719989-20008) ............................................. Appx20019

Exhibit 427 to Reilly Declaration -
Excerpts from Memo re: Mumps neutralizing antibody test vs.
efficacy and effectiveness, dated September 10, 1999
(MRK-CHA00061698-703) .................................................. Appx20040

Exhibit 428 to Reilly Declaration -
Atkinson Deposition Exhibit 2, Letter from Kevin Malone
to Kathleen Hardway, dated July 31, 2018,
and Letter from Robert Redfield to Kathleen Hardway,
dated May 24, 2018 ............................................................ Appx20047

Exhibit 429 to Reilly Declaration -
CDC Publication, Ensuring the Safety of Vaccines in the
United States, last updated July 2011 ................................... Appx20055

Exhibit 430 to Reilly Declaration -
Email from Colleen M. Duffy to Diana DeLong,
dated December 14, 2005 (MRK-CHA00942187-8) ........... Appx20058

Exhibit 431 to Reilly Declaration -
Email from Kevin Agnew to Diana DeLong,
dated March 14, 2014 (MRK-CHA01673057-9) ................. Appx20061

Exhibit 432 to Reilly Declaration -
Letter to CDC Request for Final Proposal to RFP 2014-N-
15784 Consolidated Vaccines for Children Contact,
dated March 7, 2014 (MRK-CHA01655048-93) ................. Appx20065

### Table of Contents
### (Continued)

Exhibit 433 to Reilly Declaration -
Email from Diana DeLong to Cindy Rivera,
dated March 13, 2014 (MRK-CHA01656202-3) ................. Appx20112

Exhibit 434 to Reilly Declaration -
FDA Comments on PRN Assay, dated May 9, 2007
(GSK-MMR-IND-0015993-4) ............................................ Appx20115

Exhibit 435 to Reilly Declaration -
Excerpts from Merck Presentation, dated November 10, 2011
(MRK-CHA0002441-681) .................................................. Appx20118

Exhibit 436 to Reilly Declaration -
Letter from Lisa C. Dykstra to CDC and Office of General
Counsel for Department of Health and Human Services,
dated May 18, 2015 (MRK-CHA01374713-20) ................. Appx20121

Exhibit 437 to Reilly Declaration -
Summary of GSK Vaccines development pipeline meeting
with CDC March 8, 2016 (GSK-MMR-0062025-30) ......... Appx20130

Exhibit 438 to Reilly Declaration -
Email from Ouzama Nicholson to Donna Boyce,
dated May 27, 2010 (GSK-MMR-0058532) ....................... Appx20137

Exhibit 439 to Reilly Declaration -
Memo re: Supporting Documents for Stephen Krahling,
dated October 10, 2000 (MRK-CHA00447565-74) ............ Appx20139

Exhibit 440 to Reilly Declaration -
Excerpts from journal of David Krah, M.D.
(MRK-CHA00490081-591) ................................................ Appx20150

Exhibit 441 to Reilly Declaration -
Minutes of August 8, 2001 Project Team Meeting
(MRK-CHA00209441-53) .................................................. Appx20176

**Table of Contents**
(Continued)

Exhibit 442 to Reilly Declaration -
Deposition Testimony of Thomas McGuire, Ph.D.,
taken July 2, 2018 ............................................................... Appx20190

Exhibit 443 to Reilly Declaration -
National Vaccine Advisory Committee Report,
The National Vaccine Program 2008 State of the
Program Report, dated February 2009................................... Appx20274

Exhibit 444 to Reilly Declaration -
"National, State, and Local Area Vaccination Coverage
Among Children Aged 19–35 Months — United States, 2012,"
*MMWR* 2013; 62:733-755, dated September 13, 2013 ........ Appx20289

Exhibit 445 to Reilly Declaration -
"Financing Immunizations in the United States," Hinman
*et al.*, *Clinical Infectious Diseases* 2004; 38:1440-6 ........... Appx20314

Exhibit 446 to Reilly Declaration -
"Program Review, National Immunization Survey (NIS) and
State and Local Area Integrated Telephone Survey (SLAITS),"
dated November 27-28, 2007 ............................................... Appx20322

Exhibit 447 to Reilly Declaration -
"About VFC" webpage ........................................................ Appx20344

Exhibit 448 to Reilly Declaration -
"Medicaid Program; Charges for Vaccine Administration
Under the Vaccines for Children Program,"
Federal Register Volume 59, Issue 190
(October 3, 1994) ............................................................... Appx20347

Exhibit 449 to Reilly Declaration -
Deposition Testimony of Michele Taylor,
taken May 9, 2017 ............................................................... Appx20360

**Table of Contents**
**(Continued)**

Defendant Merck's Response to Relators' Additional Statement of
Material Facts in Connection with Defendant's First and Fourth
Summary Judgment Motions, dated December 20, 2019
(Doc. 311) .......................................................................... Appx20427

Defendant Merck's Response to Relators' Additional Statement of
Material Facts in Connection with Defendant's First and Fourth
Summary Judgment Motions, dated December 20, 2019
(Doc. 314) .......................................................................... Appx20486
*(Cont'd in Vol XLIV)*

**Volume XLIV**
**(Filed Under Seal)**

Declaration of Lisa C. Dykstra in Support of Defendant's
Replies and Response to Motions for Summary Judgment,
executed December 20, 2019 (Doc. 315) .............................. Appx20545

    Exhibit 330 to Dykstra Declaration -
    Excerpts from the Deposition Testimony of Amy Keegan,
    taken February 9, 2018 ....................................................... Appx20552

    Exhibit 331 to Dykstra Declaration -
    Email from Paul Lanzetta to Thomas Romanus
    and John Comonitski, dated August 19, 2011
    (MRK-KRA00955764-955765) .......................................... Appx20555

    Exhibit 332 to Dykstra Declaration -
    Excerpts from Deposition Testimony of Cynthia Morrisey,
    taken July 27, 2017 ............................................................ Appx20558

    Exhibit 333 to Dykstra Declaration -
    Table of Contents for Information Submitted with Merck's
    BLA for the replacement of Human Serum Albumin with
    Recombinant Albumin (MRK-KRA00137827-137828) ..... Appx20562

    Exhibit 334 to Dykstra Declaration -
    FDA's Draft Guidance for Industry Stability Testing of
    Drug Substances and Drug Products (June 8, 1998) ............ Appx20565

# Table of Contents
## (Continued)

Exhibit 335 to Dykstra Declaration -
WHO's Draft Guidelines on Stability Evaluation of
Vaccines, Expert Committee on Biological Standardization
(October 23-27, 2006) ........................................................ Appx20662

Exhibit 336 to Dykstra Declaration -
Biological Stability Program 1999 Annual Stability
Report for M-M-R®II (MRK-KRA01632656-86) .............. Appx20691

Exhibit 337 to Dykstra Declaration -
Biological Stability Program 2000 Annual Stability
Report for M-M-R®II (MRK-KRA01633601-29) .............. Appx20723

Exhibit 338 to Dykstra Declaration -
Biological Stability Program 2001 Annual Stability
Report for M-M-R®II (MRK-KRA01632745-822) ............ Appx20753

Exhibit 339 to Dykstra Declaration -
Biological Stability Program 2002 Annual Stability
Report for M-M-R®II (MRK-KRA01633529-600) ............ Appx20832

Exhibit 340 to Dykstra Declaration -
Biological Stability Program Annual 2003 Stability
Report for M-M-R®II (MRK-KRA01632888-945) ............ Appx20905

Exhibit 341 to Dykstra Declaration -
Biological Stability Program 2004 Annual Stability
Report for M-M-R®II (MRK-KRA01632833-68) .............. Appx20964

## Volume XLV
## (Filed Under Seal)

Exhibit 342 to Dykstra Declaration -
Biological Stability Program 2005 Annual Stability
Report for M-M-R®II (MRK-KRA01633267-99) .............. Appx21001

Exhibit 343 to Dykstra Declaration -
M-M-R®II Stability Data Summary for the 2006
Annual Stability Report (MRK-KRA0163946-83) ............. Appx21035

**Table of Contents**
**(Continued)**

Exhibit 344 to Dykstra Declaration -
M-M-R®II Stability Data Summary for the 2007
Annual Stability Report (MRK-KRA01633723-31) ........... Appx21074

Exhibit 345 to Dykstra Declaration -
CDC's Nationally Notifiable Infectious Diseases and
Conditions, United States: Weekly Tables, Table 1y
(October 2019) .................................................................... Appx21084

Exhibit 346 to Dykstra Declaration -
CDC's Nationally Notifiable Infectious Diseases and
Conditions, United States: Weekly Tables, Table 1z
(October 2019) .................................................................... Appx21088

Exhibit 347 to Dykstra Declaration -
CDC's Nationally Notifiable Infectious Diseases and
Conditions, United States: Weekly Tables, Table 1kk
(October 2019) .................................................................... Appx21092

Exhibit 348 to Dykstra Declaration -
"An Assessment of Mumps Vaccine Effectiveness by Dose
during an Outbreak in Canada," by Deeks, Shelley, *et al.*,
*CMAJ*, 183(9) (June 14, 2011) ............................................ Appx21096

Exhibit 349 to Dykstra Declaration -
"Mumps Vaccine Effectiveness and Risk Factors for Disease
in Households during an Outbreak in New York City,"
by Livingston, Kara, *et al.*, Vaccine 32; 369-374 (2014) ..... Appx21104

Exhibit 350 to Dykstra Declaration -
"A Large Outbreak of Mumps in the Postvaccine Era,"
by Wharton, Melinda, *et al.*, *Journal of Infectious Diseases*,
Vol. 158, No. 6 (December 1988) ........................................ Appx21111

Exhibit 351 to Dykstra Declaration -
"Persistence of Mumps Antibodies after 2 Doses of
Measles-Mumps-Rubella Vaccine," by LeBaron, Charles,
*et al.*, *Journal of Infectious Diseases*, 2009:199
(February 15, 2009) ............................................................ Appx21120

**Table of Contents**
(Continued)

Exhibit 352 to Dykstra Declaration -
Excerpts from the Deposition Testimony of
Keith Chirgwin, M.D., taken January 26, 2017 ................... Appx21130

Exhibit 353 to Dykstra Declaration -
Excerpts from the Deposition Testimony of
Barbara Kuter, Ph.D., taken December 14, 2016 ................. Appx21137

Exhibit 354 to Dykstra Declaration -
Letter from Manal Morsy, M.D., Ph.D. to Luba Vujcic,
dated March 9, 2000 (MRK-KRA00020409-20410) ........... Appx21141

Exhibit 355 to Dykstra Declaration -
Memorandum from R. Wolchko with the subject "Bridging
Study of the Mumps Legacy ELISA" and "Mumps
'Wild Type' IgG ELISA," dated February 23, 2001
(MRK-KRA00561875-561885) ........................................... Appx21144

Exhibit 356 to Dykstra Declaration -
*Curriculum Vitae* of Emilio Emini, Ph.D. (January 2016)
(EMINI 00001-22) .............................................................. Appx21156

Exhibit 357 to Dykstra Declaration -
General Correspondence to FDA, dated April 23, 2002
(MRK-KRA00000548-553) ................................................. Appx21179

Exhibit 358 to Dykstra Declaration -
"Mumps Epidemiology and Immunity-The Anatomy of a
Modern Epidemic," by Anderson, Larry, *et al.*,
*Pediatric Infectious Disease Journal*, Vol. 27, No. 10
(October 2008) ................................................................... Appx21186

Exhibit 359 to Dykstra Declaration -
IID-1.5 "Reduce cases of mumps (U.S. acquired cases),"
Healthy People 2020 ......................................................... Appx21192

# Table of Contents
## (Continued)

**Page**

Defendant's Response to the United States' Statement of
Interest in Response to the Parties' Summary Judgment
Briefing, dated January 18, 2021 (Doc. 323)...................... Appx21194

Defendant Merck's Reply to Relators' Response Regarding
the United States' Statement of Interest (Doc. 328) .......... Appx21206

**22.    Contract Changes**

The Contracting Officer and the Contractor shall meet (electronic means acceptable) to discuss such modifications to the contract before finalization of any changes to the contract.

**23.   Vaccine Images**

Upon contract award, the Contractor agrees to provide the COR, via email, camera-ready vaccine product images in .jpg format and written authorization for CDC to use the images. CDC will use the images to illustrate the Contractor's products on the CDC vaccine ordering system.  The Contractor agrees to provide CDC with updated product images if there is a change in packaging and vaccine images for new NDCs added to the contract during the period of performance.

**24.   Advance Notice of Supply Issues**

The Contractor agrees to provide advance notification to COR and the CDC Contracting Officer of any supply issue which will result in the Contractor's failure to deliver vaccine within the agreed upon delivery schedule specified in the contract.  This notification shall be given as soon as the Contractor becomes aware of the scope of the problem that will impede the timely delivery of vaccine.

**25.   Authorized Distribution of Record (ADR) Agreement**

In accordance with the Prescription Drug Marketing Act (PDMA) of 1998, Contractor shall provide a written statement (Attachment 4) which designates the CDC as the ADR for all vaccines subject to distribution under this contract.

**26.   Use of VFC Provider Lists and Distribution of Material**

a.   Contractors are prohibited from utilizing VFC providers' lists obtained from any source for any mailing or other communication with VFC providers, except as approved in writing by the CDC COR. In addition, contractors are prohibited from otherwise communicating with VFC providers regarding the VFC program, except as approved in writing by the CDC COR.  To the extent that Contractors have established relationships with VFC providers or authorized purchasers under this contract that are independent from the VFC program, communications related to such independent relationships are not covered by this provision and do not require CDC consent.

b.   Contractors are prohibited from providing names and/or addresses of VFC providers to any third party, except as needed to comply with the terms of this contract, in which cases the CDC COR shall be notified in writing.

c.   Any Contractor that ships vaccine directly to VFC providers is prohibited from inserting any promotional or other material that is promotional in nature for any product that the Contractor produces, into shipping containers for vaccine purchased under this

Appx8001

contract, except for material related to use of the vaccine as approved in writing by the CDC COR.  Additionally any shipping container inserts that are required, such as handling instructions or educational materials, should not contain any promotional material as part of its content.

## 27.    New Vaccine Products

a.    Manufacturers who receive a new FDA product license for a vaccine already included with the scope of a VFC resolution may have the new product added to its contract by modification if it is determined that adding the product is in the best interest of the Government.  Such new products must be consistent with VFC formulary schedules (regarding periodicity and dosage regimens) as established for the vaccines by the Advisory Committee on Immunization Practices (ACIP).

b.    When a new vaccine product is approved by the ACIP for inclusion in the VFC Formulary, the Manufacturer of such product may have the new product added to its contract by modification if it is determined that adding the product is in the best interest of the Government.  This would include totally new vaccines or new combination of vaccines, new indications or new formulations for existing products or new dosing regimens for an existing product.

Solicitation No. 2012-N-14228

# SECTION D - CONTRACT DOCUMENTS, EXHIBITS OR ATTACHMENTS

**D.1    FAR 52.212-5 Contract Terms and Conditions Required to Implement Statutes or Executive Orders - Commercial Items (Aug 2011)**

(a)      The Contractor shall comply with the following Federal Acquisition Regulation (FAR) clauses, which are incorporated in this contract by reference, to implement provisions of law or Executive orders applicable to acquisitions of commercial items:

(1) 52.222-50, Combating Trafficking in Persons (FEB 2009) (22 U.S.C. 7104(g)).

☐ Alternate I (AUG 2007) of 52.222-50 (22 U.S.C. 7104(g)).

(2) 52.233-3, Protest After Award (AUG 1996) (31 U.S.C. 3553).

(3) 52.233-4, Applicable Law for Breach of Contract Claim (OCT 2004) (Pub. L. 108-77, 108-78)


(b)   The Contractor shall comply with the FAR clauses in this paragraph (b) that the Contracting Officer has indicated as being incorporated in this contract by reference to implement provisions of law or Executive orders applicable to acquisitions of commercial items:

*[Contracting Officer check as appropriate.]*

☒ (1) 52.203-6, Restrictions on Subcontractor Sales to the Government (Sept 2006), with Alternate I (Oct 1995) (41 U.S.C. 253g and 10 U.S.C. 2402).

☐ (2) 52.203-13, Contractor Code of Business Ethics and Conduct (Apr 2010) (Pub. L. 110-252, Title VI, Chapter 1 (41 U.S.C. 251 note)).

☐ (3) 52.203-15, Whistleblower Protections Under the American Recovery and Reinvestment Act of 2009 (June 2010) (Section 1553 of Pub. L. 111-5). (Applies to contracts funded by the American Recovery and Reinvestment Act of 2009.)

☐ (4) 52.204-10, Reporting Executive Compensation and First-Tier Subcontract Awards (JUL 2010) (Pub. L. 109-282) (31 U.S.C. 6101 note).

☐ (5) 52.204-11, American Recovery and Reinvestment Act—Reporting Requirements (MAR 2009) (Pub. L. 111-5).

☐ (6) 52.209-6, Protecting the Government's Interest When Subcontracting with Contractors Debarred, Suspended, or Proposed for Debarment (DEC 2010) (31 U.S.C. 6101 note).

☐ (7) 52.209-10, Prohibition on Contracting with Inverted Domestic Corporations (section 740 of Division C of Pub. L. 111-117, section 743 of Division D of Pub. L. 111-8, and section 745 of Division D of Pub. L. 110-161).

☐ (8)52.219-3, Notice of Total HUBZone Set-Aside (Jan 1999) (15 U.S.C. 657a).

☐ (9) 52.219-4, Notice of Price Evaluation Preference for HUBZone Small Business Concerns (July 2005) (if the offeror elects to waive the preference, it shall so indicate in its offer) (15 U.S.C. 657a).

☐ (10) [Reserved]

☐ (11)(i)  52.219-6, Notice of Total Small Business Set-Aside (June 2003) (15 U.S.C. 644).

☐ (ii) Alternate I (Oct 1995) of 52.219-6.

☐ (iii) Alternate II (Mar 2004) of 52.219-6.

☐ (12)(i)  52.219-7, Notice of Partial Small Business Set-Aside (June 2003) (15 U.S.C. 644).

☐ (ii) Alternate I (Oct 1995) of 52.219-7.

☐ (iii) Alternate II (Mar 2004) of 52.219-7.

☒ (13) 52.219-8, Utilization of Small Business Concerns (Dec 2010) (15 U.S.C. 637(d)(2) and (3)).

☒ (14)(i)  52.219-9, Small Business Subcontracting Plan (Oct 2010) (15 U.S.C. 637(d)(4)).

☐ (ii) Alternate I (Oct 2001) of 52.219-9.

☐ (iii) Alternate II (Oct 2001) of 52.219-9.

☐ (iv) Alternate III (July 2010) of 52.219-9.

☐ (15) 52.219-14, Limitations on Subcontracting (Dec 1996) (15 U.S.C. 637(a)(14)).

☐ (16) 52.219-16, Liquidated Damages – Subcontracting Plan (Jan 1999) (15 U.S.C. 637(d)(4)(F)(i)).

☐ (17)(i)  52.219-23, Notice of Price Evaluation Adjustment for Small Disadvantaged Business Concerns (OCT 2008) (10 U.S.C. 2323) (if the offeror elects to waive the adjustment, it shall so indicate in its offer).

☐ (ii) Alternate I (June 2003) of 52.219-23.

☐ (18) 52.219-25, Small Disadvantaged Business Participation Program—Disadvantaged Status and Reporting (Dec 2010) (Pub. L. 103-355, section 7102, and 10 U.S.C. 2323).

Solicitation No. 2012-N-14228

☐ (19) 52.219-26, Small Disadvantaged Business Participation Program—Incentive Subcontracting (Oct 2000) (Pub. L. 103-355, section 7102, and 10 U.S.C. 2323)..

☐ (20) 52.219-27, Notice of Total Service-Disabled Veteran-Owned Small Business Set-Aside (May 2004) (15 U.S.C. 637f).

☐ (21) 52.219-28, Post Award Small Business Program Representation (August 2009) (15 U.S.C. 632(a)(2)).

☐ (22) 52.219-29 Notice of Total Set-Aside for Economically Disadvantaged Women-Owned Small Business (EDWOSB) Concerns (APR 2011).

☐ (23) 52.219-30 Notice of Total Set-Aside for Women-Owned Small Business (WOSB) Concerns Eligible Under the WOSB Program (APR 2011).

☒ (24) 52.222-3, Convict Labor (June 2003) (E.O. 11755).

☒ (25) 52.222-19, Child Labor—Cooperation with Authorities and Remedies (Feb 2008) (E.O. 13126).

☒ (26) 52.222-21, Prohibition of Segregated Facilities (Feb 1999).

☒ (27) 52.222-26, Equal Opportunity (Apr 2002) (E.O. 11246).

☒ (28) 52.222-35, Equal Opportunity for Special Disabled Veterans, Veterans of the Vietnam Era, and Other Eligible Veterans (Sept 2010) (38 U.S.C. 4212).

☒ (29) 52.222-36, Affirmative Action for Workers with Disabilities (Oct 2010) (29 U.S.C. 793).

☐ (30) 52.222-37, Employment Reports on Veterans (Sept 2010) (38 U.S.C. 4212).

☐ (31) 52.222-40, Notification of Employee Rights Under the National Labor Relations Act (DEC 2010) (E.O. 13496).

☐ (32) 52.222-54, Employment Eligibility Verification (Jan 2009). (Executive Order 12989). (Not applicable to the acquisition of commercially available off-the-shelf items or certain other types of commercial items as prescribed in 22.1803.)

☐ (33)(i)  52.223-9, Estimate of Percentage of Recovered Material Content for EPA-Designated Products (May 2008) (42 U.S.C. 6962(c)(3)(A)(ii)).

☐ (ii) Alternate I (May 2008) of 52.223-9 (42 U.S.C. 6962(i)(2)(C)).

☐ (34) 52.223-15, Energy Efficiency in Energy-Consuming Products (Dec 2007) (42 U.S.C. 8259b).

☐ (35)(i) 52.223-16, IEEE 1680 Standard for the Environmental Assessment of Personal Computer Products (Dec 2007) (E.O. 13423).

☐ (ii) Alternate I (Dec 2007) of 52.223-16.

☒ (36) 52.223-18, Encouraging Contractor Policies to Ban Text Messaging While Driving (AUG 2011) (E.O. 13513).

☐ (37) 52.225-1, Buy American Act—Supplies (June 2003) (41 U.S.C. 10a-10d).

☐ (38)(i) 52.225-3, Buy American Act—Free Trade Agreements—Israeli Trade Act (JUNE 2009) (41 U.S.C. 10a-10d, 19 U.S.C. 3301 note, 19 U.S.C. 2112 note, 19 U.S.C. 3805 note, Pub. L. 108-77, 108-78, 108-286, 108-302, 109-53, 109-169, 109-283, and 110-138).

☐ (ii) Alternate I (JAN 2004) of 52.225-3.

☐ (iii) Alternate II (JAN 2004) of 52.225-3.

☒ (39) 52.225-5, Trade Agreements (August 2009) (19 U.S.C. 2501, *et seq.*, 19 U.S.C. 3301 note).

☐ (40) 52.225-13, Restrictions on Certain Foreign Purchases (June 2008) (E.O.'s, proclamations, and statutes administered by the Office of Foreign Assets Control of the Department of the Treasury).

☐ (41) 52.226-4, Notice of Disaster or Emergency Area Set-Aside (Nov 2007) (42 U.S.C. 5150).

☒ (42) 52.226-5, Restrictions on Subcontracting Outside Disaster or Emergency Area (Nov 2007) (42 U.S.C. 5150).

☐ (43) 52.232-29, Terms for Financing of Purchases of Commercial Items (Feb 2002) (41 U.S.C. 255(f), 10 U.S.C. 2307(f)).

☐ (44) 52.232-30, Installment Payments for Commercial Items (Oct 1995) (41 U.S.C. 255(f), 10 U.S.C. 2307(f)).

☒ (45) 52.232-33, Payment by Electronic Funds Transfer—Central Contractor Registration (Oct 2003) (31 U.S.C. 3332).

☐ (46) 52.232-34, Payment by Electronic Funds Transfer—Other than Central Contractor Registration (May 1999) (31 U.S.C. 3332).

☐ (47) 52.232-36, Payment by Third Party (Feb 2010) (31 U.S.C. 3332).

☐ (48) 52.239-1, Privacy or Security Safeguards (Aug 1996) (5 U.S.C. 552a).

☐ (9)(i)  52.247-64, Preference for Privately Owned U.S.-Flag Commercial Vessels (Feb 2006) (46 U.S.C. Appx. 1241(b) and 10 U.S.C. 2631).

☐ (ii) Alternate I (Apr 2003) of 52.247-64.

**Solicitation No. 2012-N-14228**

(c) The Contractor shall comply with the FAR clauses in this paragraph (c), applicable to commercial services, that the Contracting Officer has indicated as being incorporated in this contract by reference to implement provisions of law or Executive orders applicable to acquisitions of commercial items:

[*Contracting Officer check as appropriate.*]

☐ (1) 52.222-41, Service Contract Act of 1965, as Amended (Nov 2007) (41 U.S.C. 351, *et seq.*).

☐ (2) 52.222-42, Statement of Equivalent Rates for Federal Hires (May 1989) (29 U.S.C. 206 and 41 U.S.C. 351, *et seq.*).

☐ (3) 52.222-43, Fair Labor Standards Act and Service Contract Act—Price Adjustment (Multiple Year and Option Contracts) (Nov 2006) (29 U.S.C. 206 and 41 U.S.C. 351, *et seq.*).

☐ (4) 52.222-44, Fair Labor Standards Act and Service Contract Act—Price Adjustment (Feb 2002) (29 U.S.C. 206 and 41 U.S.C. 351, *et seq.*).

☐ (5) 52.222-51, Exemption from Application of the Service Contract Act to Contracts for Maintenance, Calibration, or Repair of Certain Equipment—Requirements (Nov 2007) (41 U.S.C. 351, *et seq.*).

☐ (6) 52.222-53, Exemption from Application of the Service Contract Act to Contracts for Certain Services—Requirements (Feb 2009) (41 U.S.C. 351, *et seq.*).

☐ (7) 52.226-6, Promoting Excess Food Donation to Nonprofit Organizations (MAR 2009) (Pub. L. 110-247).

☐ (8) 52.237-11, Accepting and Dispensing of $1 Coin (Aug 2007) (31 U.S.C. 5112(p)(1)).

(d) *Comptroller General Examination of Record*. The Contractor shall comply with the provisions of this paragraph (d) if this contract was awarded using other than sealed bid, is in excess of the simplified acquisition threshold, and does not contain the clause at 52.215-2, Audit and Records—Negotiation.

(1) The Comptroller General of the United States, or an authorized representative of the Comptroller General, shall have access to and right to examine any of the Contractor's directly pertinent records involving transactions related to this contract.

(2) The Contractor shall make available at its offices at all reasonable times the records, materials, and other evidence for examination, audit, or reproduction, until 3 years after final payment under this contract or for any shorter period specified in FAR Subpart 4.7, Contractor Records Retention, of the other clauses of this contract. If this contract is completely or partially terminated, the records relating to the work terminated shall be made available for 3 years after any resulting final termination settlement. Records relating to appeals under the disputes clause or to litigation or the settlement of claims arising under or relating to this contract shall be made available until such appeals, litigation, or claims are finally resolved.

(3) As used in this clause, records include books, documents, accounting procedures and practices, and other data, regardless of type and regardless of form. This does not require the Contractor to create or maintain any record that the Contractor does not maintain in the ordinary course of business or pursuant to a provision of law.

(e)(1) Notwithstanding the requirements of the clauses in paragraphs (a), (b), (c), and (d) of this clause, the Contractor is not required to flow down any FAR clause, other than those in paragraphs (e)(1) in a subcontract for commercial items. Unless otherwise indicated below, the extent of the flow down shall be as required by the clause—

(i) 52.203-13, Contractor Code of Business Ethics and Conduct (Apr 2010) (Pub. L. 110-252, Title VI, Chapter 1 (41 U.S.C. 251 note)).

(ii) 52.219-8, Utilization of Small Business Concerns (Dec 2010) (15 U.S.C. 637(d)(2) and (3)), in all subcontracts that offer further subcontracting opportunities. If the subcontract (except subcontracts to small business concerns) exceeds $650,000 ($1.5 million for construction of any public facility), the subcontractor must include 52.219-8 in lower tier subcontracts that offer subcontracting opportunities.

(iii) 52.203-15, Whistleblower Protections Under the American Recovery and Reinvestment Act of 2009 (Section 1553 of Pub. L. 111-5). Applies to subcontracts funded under the Act.

(iv) 52.222-26, Equal Opportunity (Mar 2007) (E.O. 11246).

(v) 52.222-35, Equal Opportunity for Veterans (Sept 2010) (38 U.S.C. 4212).

(vi) 52.222-36, Affirmative Action for Workers with Disabilities (Oct 2010) (29 U.S.C. 793).

(vii) 52.222-40, Notification of Employee Rights Under the National Labor Relations Act (DEC 2010) (E.O. 13496). Flow down required in accordance with paragraph (f) of FAR clause 52.222-40.

(viii) 52.222-41, Service Contract Act of 1965 (Nov 2007) (41 U.S.C. 351, *et seq.*).

(ix) 52.222-50, Combating Trafficking in Persons (FEB 2009) (22 U.S.C. 7104(g)).

☐ Alternate I (AUG 2007) of 52.222-50 (22 U.S.C. 7104(g)).

Appx8005

**Solicitation No. 2012-N-14228**

(x) 52.222-51, Exemption from Application of the Service Contract Act to Contracts for Maintenance, Calibration, or Repair of Certain Equipment-Requirements (Nov 2007) (41 U.S.C. 351, *et seq.*).

(xi) 52.222-53, Exemption from Application of the Service Contract Act to Contracts for Certain Services-Requirements (Feb 2009) (41 U.S.C. 351, *et seq.*).

(xii) 52.222-54, Employment Eligibility Verification (Jan 2009).

(xiii) 52.226-6, Promoting Excess Food Donation to Nonprofit Organizations (MAR 2009) (Pub. L. 110-247). Flow down required in accordance with paragraph (e) of FAR clause 52.226-6.

(xiv) 52.247-64, Preference for Privately Owned U.S.-Flag Commercial Vessels (Feb 2006) (46 U.S.C. Appx. 1241(b) and 10 U.S.C. 2631). Flow down required in accordance with paragraph (d) of FAR clause 52.247-64.

(2) While not required, the contractor may include in its subcontracts for commercial items a minimal number of additional clauses necessary to satisfy its contractual obligations.

(End of clause)


**D.2**  **Websites:**  Additional information can be found at www.fob.gov ; www.cdc.gov/vaccines; and http://csrc.nist.gov/publications/nistpubs/


**D.3  Attachment:**  Authorized Distributor of Record (ADR) Agreement (See next page.)

Appx8006

Solicitation No. 2012-N-14228

# Authorized Distributor of Record (ADR) Agreement

This Agreement hereby represents the ongoing relationship between the supplier named below ("MANUFACTURER / SUPPLIER") and the Centers for Disease Control and Prevention, herein after referred to as CDC, to establish and designate CDC as an Authorized Distributor of Record (ADR) as set forth in the Prescription Drug Marketing Act (PDMA) of 1988 as well as in the implementing federal regulations found at 21 CFR Part 203. CDC here after agrees to comply with all applicable state and federal laws to ensure continued status of this relationship. To further meet the requirements of the PDMA, please forward with the signed agreement an attachment with a list of the specific products that CDC is authorized to distribute or a statement that the CDC is an ADR for the manufacturer's entire product line. Specific products should be identified by the pharmaceutical / vaccine name, dosage form, and strength of the drug and the NDC number.

Check the box that applies:

__ The Distributor is the ADR for Supplier's entire product line.

__ The Distributor is the ADR for the products listed on the attachment – 1.

This agreement shall be valid from the date of dual execution until termination by either party on ninety (90) days written notice. This agreement shall not abridge, supplant, modify, or in any way alter any other pre-existing distribution agreement or any future agreements that may, from time to time, be executed in the furtherance of the business relationship between Manufacturer/Supplier and the CDC. This agreement confers no rights upon CDC other than to designate CDC as an Authorized Distributor of Record for Manufacturer/Supplier. This agreement is not intended to be, nor shall it be, interpreted as a sales agreement or any other type of agreement other than to represent an "ongoing relationship" within the meaning set forth in 21 CFR Part 203.3 (u).

*By affixing my signature below, I do hereby acknowledge and represent that I have read this Agreement in its entirety, that I understand its terms, that I am duly authorized to bind my organization to the requirements detailed in the above Agreement and that I agree to ensure that my organization will adhere to such requirements for the duration herein stated.*

Authorized Distributor of Record: **Centers for Disease Control and Prevention (CDC)**

Authorized Signature: _____

Print Name: _____, U.S. Government Contracting Officer

Date: _____

---

Manufacturer / Supplier: _____

Authorized Signature: _____

Print Name: _____

Date: _____

**Appx8007**

Solicitation No. 2012-N-14228

# SECTION E - SOLICITATION PROVISIONS

**E.1** **FAR 52.212-1 as incorporated by reference in Block 27 of the Standard Form 1449, includes the following addendum:**

   **FAR SOURCE**                **TITLE AND DATE**
   52.212-1                      Instructions to Offerors—Commercial Items (June 2008)

**E.2** **Paragraph ( c) of 52.212-1, Period for acceptance of offers, is deleted in its entirety and the following is substituted therefore:**

   ( c) *Period for acceptance of offers*.  The offeror agrees to hold the prices in its offer firm for 60 calendar days from the date specified for receipt of offers, unless another time period is specified in an addendum to the solicitation.

**E.3** **FAR  52.233-2  Service of Protest (AUG 1996)**

   a.   Protests, as defined in section 33.101 of the Federal Acquisition Regulation, that are filed directly with the agency, and copies of any protests that are filed with the General Accounting Office (GAO), shall be served on the Contracting Officer (addressed as follows) by obtaining written and dated acknowledgment of receipt from:

               Centers for Disease Control & Prevention
               Attn: Berta Biltz
               2920 Brandywine Road, Room 3000
               Atlanta, GA 30341-5539

   b.   The copy of any protest shall be received in the office designated above within one day of filing a protest with the GAO.

**E.4** **INSTRUCTIONS FOR SUBMISSION OF  OFFERS:**

   a.   Offerors shall submit their offers on the basis of Firm-Fixed Price by **Midnight, January 23th, 2012.**
   b.   Offers shall be submitted electronically (via e-mail) in MS Word or MS Excel files to Bbiltz@cdc.gov.  The following format is required as e-mail subject:  The RFP No: **2012-N-14228.KT.doc or .xls**  (Where "**2012-N-14228**" is the respective RFP No. and "KT" are the first two letters of the respective Contractor's name; and ".doc" and ".xls" are the format extensions.)
   c.   In the event there are electronic transmission problems, the following steps shall be taken:
      i.   CDC receives the electronic file timely, but cannot access it.  The offeror will be contacted and may be allowed to fax in the portions that cannot be accessed.
      ii.  Facsimile quotes are not authorized. Technical inquiries shall be e-mailed to Bbiltz@cdc.gov . Telephone inquiries will not be honored.
      iii. Contractor sends electronic file, but receives error message indicating e-mail problems at CDC. Fax in a cover sheet indicating transmission difficulties, and the Contract Specialist will contact the Contractor to arrange an alternate method of submission. Quoters are requested not to fax entire proposals to PGO. Facsimile submission shall only be used after contacting the Contract Specialist.

Appx8008

Solicitation  No. 2012-N-14228

    d.  Contractors are responsible for providing accurate and complete information for evaluation. (Failure to do so may rule the quote unacceptable.) Thus, the proposal shall include the following information for evaluation:

        i.  <u>The Technical Proposal</u>:  Offerors other than vaccine manufacturers shall provide documentation that clearly demonstrates their ability to:

            1.  meet the provisions of the Federal Excise Tax Credit contract clause;

            2.  provide vaccine maximum quantities specified within each Contract Line Item Number; and

            3.  meet the vaccine Shelf Life provision.

            4.  produce and deliver vaccines under a current establishment and product license issued by the U.S. Food and Drug Administration.

       ii.  <u>Past Performance</u>:  Past performance is one indicator of the offeror's ability to perform the contract successfully. The government will evaluate different customers' opinions about *how well* (quality) the offeror has satisfied their requirements.   Offerors shall provide, as part of their proposal, a list of clients or former clients for whom they have performed the same or similar work to the one required by this solicitation during the past five years.

## E.5  Inquiries

Inquiries concerning the solicitation document shall be submitted in writing to the issuing office.  Any additions, deletions, or changes to the solicitation will be made by an amendment.  OFFERORS ARE INSTRUCTED SPECIFICALLY TO CONTACT ONLY THE  SOLICITATION CONTRACTING OFFICE IN CONNECTION WITH ANY ASPECT OF THIS REQUIREMENT PRIOR TO CONTRACT AWARD.  PROPOSALS AND ALL CORRESPONDENCE RELATING TO THE SOLICITATION DOCUMENT SHALL BE SUBMITTED TO THE CONTRACTING OFFICE. Inquiries shall be received at the Contracting Office no later than **January 17, 2012** via e-mail ONLY to: bbiltz@cdc.gov .

## E.6   Subcontracting Plan

The offeror, prior to being awarded a contract, shall submit an acceptable subcontracting plan (see FAR 52.219-9) or demonstrate that no subcontracting opportunities exist.  (Note:  This requirement does not apply to small business concerns or to offers which do not exceed $500,000.00 ($1,000,000.00 for construction) or to offers from non-domestic concerns.)

CDC Small Business Goals for 2011[*] are:

| Business Type | % of Obligations |
|---|---|
| Small Business | 10.00% |
| Small Disadvantaged Business | 5.00% |
| HUBZONE | 3.00% |
| Women-Owned Small Business | 5.00% |
| Service-Disabled Veteran-Owned Small Business | 3.00% |
| **Total** | 26.00% |

*Subject to change.  Goals for 2012 have not been received yet.

### E. 7     FAR 52.212-3 Offeror Representations and Certifications

Offerors shall complete the annual representations and certifications electronically via the Online Representations and Certifications Application (ORCA) website at *http://orca.bpn.gov*. After reviewing the ORCA database information, the offeror verifies by submission of the offer that the representations and certifications currently posted electronically have been entered or updated within the last 12 months, are current, accurate, complete, and applicable to this solicitation (including the business size standard applicable to the NAICS code referenced for this solicitation), as of the date of this offer and are incorporated in this offer by reference (see FAR 4.1201).

   (End of Provision)

## E. 8  52.212-2 Evaluation - Commercial Items (Jan 1999)

(a)   The Government will award a contract resulting from this solicitation to the responsible offeror whose offer conforming to the solicitation will be most advantageous to the Government, price and other factors considered. The following factors shall be used to evaluate offers:

   i.   *technical capability of the item offered to meet the Government requirement;*
   ii.  *price;*
   iii. *past performance*

Technical and past performance, when combined, is equal in importance to price.

(b) A written notice of award or acceptance of an offer, mailed or otherwise furnished to the successful offeror within the time for acceptance specified in the offer, shall result in a binding contract without further action by either party. Before the offer's specified expiration time, the Government may accept an offer (or part of an offer), whether or not there are negotiations after its receipt, unless a written notice of withdrawal is received before award.

(c) Past performance will be evaluated for **only those offerors remaining in the competitive range** as follows:

1. Each offeror shall be evaluated on its past performance under current and prior contracts.  By past performance, the Government means the offeror's record of conforming to specifications and to standards of good workmanship; the contractor's record of forecasting and controlling costs; the offeror's adherence to contract schedules and terms, including the administrative aspects of performance; the offeror's reputation for reasonable and cooperative behavior and commitment to customer satisfaction; and generally, the offeror's business-like concern for the interest of the customer and the degree of quality of deliverables and performance.

2. Past performance will not be scored, but the Government's conclusions about overall quality of the offeror's past performance will be highly influential in determining the relative merits of the offeror's proposal and in selecting the offeror whose proposal is considered the most advantageous/best value to the Government.

3. Evaluation of past performance will be a subjective assessment based on a consideration of all relevant facts and circumstances. It will not be based on absolute standards of acceptable performance.

4. The assessment of the offerors past performance will be used as a means of evaluating the relative capability of the offeror and the other competitors. Thus, an offeror with an exceptional record of relevant past performance may receive a more favorable evaluation than another whose record is acceptable and/or less relevant, even though both may have acceptable technical and business proposals.

5. An offeror without a record of past performance or for whom information on past performance is not available will not be evaluated favorably or unfavorably.

6. Evaluation of past performance information will be reflected in terms of the following degrees of performance assessment:

**Excellent:** A significant majority of the sources of information are consistently firm in stating that the offeror's performance was superior and that they would unhesitatingly do business with the offeror again. Complaints are negligible or unfounded. The offeror has no record of criminal conduct, civil fraud, or negligence, or the record is old and the offeror has demonstrated by more recent performance that corrective action has made the likelihood of such conduct in the future highly improbably. No doubt exists that the offeror will successfully perform the Government's requirements as stated in the RFP.

**Good:** Most sources of information state that the offeror's performance was good, better than average, etc., and that they would willingly do business with the offeror again. Complaints, though perhaps well-founded, are few and relatively minor. The offeror has no record of criminal conduct, civil fraud, or negligence, or the record is old and the offeror has demonstrated by more recent performance that corrective action has made the likelihood of such conduct in the future highly improbable. Little doubt exists that the offeror will successfully perform the Government's requirements as stated in the RFP.

**Neutral:** Either no past performance history exists for the corporation, predecessor companies, key personnel, or major/critical subcontractors, or the offeror's record of past performance was neither predominantly favorable nor unfavorable. In the latter case, sources of information are roughly divided over the quality of the offeror's performance. While some state that they would do business with the offeror again, others are doubtful or would not. Complaints are balanced by reports of good work. The offeror has no record of criminal conduct, civil fraud, or negligence, or the record is old.

**Marginal:** Many sources of information made unfavorable reports about the offeror's performance and either express serious doubts about doing business with the offeror again or state that they would refuse to do so. However, there are some favorable reports, and some sources of information indicate that they would do business with the offeror again. There are many significant, serious, and well-founded complaints, but there are some reports of very good performance. The offeror may have been indicted, pled guilty, or may have been found guilty in matters of criminal conduct, but the issues are either unresolved, relatively minor, or do not

reflect a company-wide or managerial pattern of wrongdoing.  The offeror may have lost civil suits for fraud or negligence, but there is no company-wide or managerial pattern of fraudulent, negligent, or criminal conduct.  Some doubt exists that the offeror will successfully perform the Government's requirements as stated in the RFP.

**Poor:**  A significant majority of sources of information are consistently firm in stating that the offeror's performance was entirely unsatisfactory and that they would not do business with the offeror again under any circumstances.  Customer complaints are substantial or numerous and are well-founded.  Or, although not debarred or suspended, the offeror is under indictment or has been convicted of criminal conduct, or has been found civilly liable for fraud or negligence.  The offeror either has presented no persuasive evidence of having taken appropriate corrective action that will guard against such conduct in the foreseeable future, or it appears unlikely that the corrective action will be effective.  Serious doubt exists that the offeror will successfully perform the Government requirements as stated in the RFP.

**(**End of Provision**)**

10/25/2019
Declaration of G. Reilly
EXHIBIT 272

| SOLICITATION/CONTRACT/ORDER FOR COMMERCIAL ITEMS<br>*OFFEROR TO COMPLETE BLOCKS 12, 17, 23, 24, & 30* | 1. REQUISITION NUMBER | | PAGE 1 OF<br>25 |
|---|---|---|---|
| 2. CONTRACT NO. | 3. AWARD/EFFECTIVE DATE | 4. ORDER NUMBER | 5. SOLICITATION NUMBER<br>2013-N-14972 | 6. SOLICITATION ISSUE DATE<br>01/22/2013 |

| 7. FOR SOLICITATION INFORMATION CALL: ▶ | a. NAME<br>Berta Biltz | b. TELEPHONE NUMBER *(No collect calls)*<br>(770) 488-2643 | 8. OFFER DUE DATE/ LOCAL TIME<br>02/11/2013 |
|---|---|---|---|

| 9. ISSUED BY                    CODE   2538 | 10. THIS ACQUISITION IS | 11. DELIVERY FOR FOB DESTINATION UNLESS BLOCK IS MARKED | 12. DISCOUNT TERMS |
|---|---|---|---|
| Centers for Disease Control and Prevention (PGO)<br>Acquisition & Assistance Branch B<br>2920 Brandywine Road<br>Atlanta, GA 30341-5539 | X UNRESTRICTED<br><br>SET ASIDE:        % FOR<br><br>SMALL BUSINESS<br><br>SMALL DISADV. BUSINESS<br><br>8(A)<br><br>SIC:<br>SIZE STANDARD: | X SEE SCHEDULE<br><br>13a. THIS CONTRACT IS A RATED ORDER UNDER DPAS (15 CFR 700)<br>13b. RATING<br><br>14. METHOD OF SOLICITATION<br>RFQ      IFB      X RFP | |

| 15. DELIVER TO          CODE | 16. ADMINISTERED BY          CODE   2538 |
|---|---|
|  | Centers for Disease Control and Prevention (PGO)<br>Acquisition & Assistance Branch B<br>2920 Brandywine Road<br>Atlanta, GA 30341-5539 |

| 17a. CONTRACTOR/ OFFEROR   CODE        FACILITY CODE | 18a. PAYMENT WILL BE MADE BY          CODE   434 |
|---|---|
|  | Centers for Disease Control and Prevention (FMO)<br>PO Box 15580 404-718-8100<br><br>Atlanta, GA 30333-0080 |
| TELEPHONE NO. | |
| 17b. CHECK IF REMITTANCE IS DIFFERENT AND PUT SUCH ADDRESS IN OFFER | 18b. SUBMIT INVOICES TO ADDRESS SHOWN IN BLOCK 18a UNLESS BLOCK BELOW IS CHECKED          SEE ADDENDUM |

| 19.<br>ITEM NO. | 20.<br>SCHEDULE OF SUPPLIES/SERVICES | 21.<br>QUANTITY | 22.<br>UNIT | 23.<br>UNIT PRICE | 24.<br>AMOUNT |
|---|---|---|---|---|---|
|  | **VFC 2013**<br><br>"See Continuation Page"<br><br>*(Attach Additional Sheets as Necessary)* | | | | |

| 25. ACCOUNTING AND APPROPRIATION DATA | 26. TOTAL AWARD AMOUNT *(For Govt. Use Only)* |
|---|---|

X   27a. SOLICITATION INCORPORATES BY REFERENCE FAR 52.212-1 52.212-4.  FAR 52.212-3 AND 52.212-5 ARE ATTACHED. ADDENDA   X ARE       ARE NOT ATTACHED.
27b. CONTRACT/PURCHASE ORDER INCORPORATES BY REFERENCE FAR 52.212-4.  FAR 52.212-5 IS ATTACHED. ADDENDA       ARE       ARE NOT ATTACHED.

| 28.     CONTRACTOR IS REQUIRED TO SIGN THIS DOCUMENT AND RETURN          COPIES TO ISSUING OFFICE. CONTRACTOR AGREES TO FURNISH AND DELIVER ALL ITEMS SET FORTH OR OTHERWISE IDENTIFIED ABOVE AND ON ANY ADDITIONAL SHEETS SUBJECT TO THE TERMS AND CONDITIONS SPECIFIED HEREIN. | 29. AWARD OF CONTRACT: REFERENCE          OFFER DATED          . YOUR OFFER ON SOLICITATION (BLOCK 5), INCLUDING ANY ADDITIONS OR CHANGES WHICH ARE SET FORTH HEREIN, IS ACCEPTED AS TO ITEMS: |
|---|---|
| 30a. SIGNATURE OF OFFEROR/CONTRACTOR | 31a. UNITED STATES OF AMERICA *(Signature of Contracting Officer)* |
| 30b. NAME AND TITLE OF SIGNER *(Type or print)*          30c. DATE SIGNED | 31b. NAME OF CONTRACTING OFFICER *(Type or print)*          31c. DATE SIGNED |

| 32a. QUANTITY IN COLUMN 21 HAS BEEN<br><br>RECEIVED      INSPECTED      ACCEPTED, AND CONFORMS TO THE CONTRACT, EXCEPT AS NOTED | 33. SHIP NUMBER<br><br>PARTIAL     FINAL | 34. VOUCHER NUMBER | 35. AMOUNT VERIFIED CORRECT FOR |
|---|---|---|---|
| 32b. SIGNATURE OF AUTHORIZED GOV'T REPRESENTATIVE          32c. DATE | 36. PAYMENT<br>COMPLETE     PARTIAL     FINAL | | 37. CHECK NUMBER |
|  | 38. S/R ACCOUNT NUMBER | 39. S/R VOUCHER NUMBER | 40. PAID BY |
|  | 42a. RECEIVED BY *(Print)* | | |
| 41a. I CERTIFY THIS AMOUNT IS CORRECT AND PROPER FOR PAYMENT | | | |
| 41b. SIGNATURE AND TITLE OF CERTIFYING OFFICER          41c. DATE | 42b. RECEIVED AT *(Location)* | | |
|  | 42c. DATE REC'D | 42d. TOTAL CONTAINERS | |

AUTHORIZED FOR LOCAL REPRODUCTION          SEE REVERSE FOR OMB CONTROL NUMBER AND PAPERWORK BURDEN STATEMENT          STANDARD FORM 1449   (10-95)

**Appx8014**

# TABLE OF CONTENTS

| Section | Document/Clause/Provision | Page No. |
|---------|---------------------------|----------|
| A | Standard Form 1449 | 1 |
| B | Continuation of SF1449 (Block 19 – 24) | 2 |
| C | Contract Clauses | 5 |
| D | Contract Documents, Exhibits or Attachments | 19 |
| E | Solicitation Provisions | 22 |

Appx8015

Solicitation No. 2013-N-14972

## SECTION B - CONTINUATION OF SF1449

The National Center for Immunization and Respiratory Diseases (NCIRD) requires the award of multiple indefinite quantity, indefinite delivery contracts for the purchase of standard commercial pediatric vaccines, manufactured under a current establishment and product license issued by the U.S. Food and Drug Administration.  The vaccines awarded under these contracts will be purchased for NCIRD's immunization Awardees to support pediatric immunization programs as provided under Section 317(j) of the Public Health Service Act and Vaccine for Children (VFC) program, established pursuant to Section 13631 of the Omnibus Budget Reconciliation Act of 1993 (OBRA '93).

| ITEM | SUPPLIES / SERVICES | QTY / UNIT | UNIT PRICE | EXTENDED PRICE |
|------|---------------------|------------|------------|----------------|
| 1. | DTaP vaccine:<br><br>Min. Shelf Life: 12 Months<br>Fed. Excise Tax: $2.25 per dose | Maximum:<br>6.5M Doses<br><br>Minimum: 100 Doses | | |
| 2. | DTaP/Hep B/IPV vaccine:<br><br>Min. Shelf Life: 12 Months<br>Fed. Excise Tax: $3.75 per dose | Maximum:<br>5.38M Doses<br><br>Minimum: 100 Doses | | |
| 3. | DTaP-IPV Vaccine:<br><br>Min. Shelf Life:  12 months<br>Fed. Excise Tax: $3.00 per dose | Maximum: 3M Doses<br><br>Minimum:<br>100 Doses | | |
| 4. | DTaP-IP-HI Vaccine:<br><br>Min. Shelf Life: 12 months<br>Fed. Excise Tax: $3.75 per dose | Maximum:<br>7.5M Doses<br><br>Minimum. 100 Doses | | |
| 5. | E-IPV vaccine:<br><br>Min. Shelf Life: 12 Months<br>Fed. Excise Tax: $0.75 | Maximum: 4M Doses<br><br>Minimum: 100 Doses | | |
| 6. | Hepatitis A (pediatric) vaccine<br><br>Min. Shelf Life: 12 Months<br>Fed. Excise Tax: $0.75 per dose | Maximum:<br>8.5M Doses<br><br>Minimum: 100 Doses | | |
| 7. | Hepatitis A&B (Age 18 only) vaccine<br><br>Min. Shelf Life: 12 Months<br>Fed. Excise Tax: $1.50 per dose | Maximum:<br>100,000 Doses<br><br>Minimum: 100 Doses | | |
| 8. | Hepatitis B (pediatric/adol.) vaccine<br><br>Min. Shelf Life: 12 Months<br>Fed. Excise Tax: $0.75 per dose | Maximum:<br>7.7M Doses<br><br>Minimum: 100 Doses | | |
| 9. | Hepatitis B/Hib vaccine<br><br>Min. Shelf Life: 12 Months<br>Fed. Excise Tax: $1.50 per dose | Maximum:<br>150K  Doses<br><br>Minimum: 100 Doses | | |

Appx8016

| | | | | |
|---|---|---|---|---|
| 10. | Hib vaccine<br><br>Min. Shelf Life: 12 Months<br>Fed. Excise Tax: $0.75 per dose | Maximum:<br>7.5M Doses<br><br>Minimum: 100<br>Doses | | |
| 11. | Human Papillomavirus types Vaccine,<br>Recombinant  (HPV)<br><br>Min. Shelf Life: 12 Months<br>Fed. Excise Tax: $0.75 per dose | Maximum: 6M<br>Doses<br><br>Minimum: 100<br>Doses | | |
| 12. | Measles, Mumps & Rubella (MMR) vaccine<br><br>Min. Shelf Life: 12 Months<br>Fed. Excise Tax: $2.25 per dose | Maximum:<br>7.5M Doses<br><br>Minimum: 100<br>Doses | | |
| 13. | Meningococcal Conjugate (MCV4) vaccine<br><br>Min. Shelf Life: 12 Months<br>Fed. Excise Tax: $0.75 per dose | Maximum:<br>6.5M Doses<br><br>Minimum: 100<br>Doses | | |
| 14. | Pneumococcal Conjugate vaccine (13 Valent)<br><br>Min. Shelf Life: 12 Months<br>Fed. Excise Tax: $0.75 per dose | Maximum:<br>17M Doses<br><br>Minimum: 100<br>Doses | | |
| 15. | Pneumococcal (23 Valent) Polysaccharide<br>Vaccine<br>Min. Shelf Life:  12 Months<br>Minimum Order Size: 10 doses<br>Fed. Excise Tax:  N/A | Maximum:<br>350K  Doses<br><br>Minimum.:<br>100 Doses | | |
| 16. | Rotavirus vaccine<br><br>Min. Shelf Life: 12 Months<br>Fed. Excise Tax: $0.75 per dose | Maximum: 7M<br>Doses<br><br>Minimum: 100<br>Doses | | |
| 17. | Tetanus and Diphtheria (Td) vaccine<br><br>Min. Shelf Life: 12 Months<br>Fed. Excise Tax: $1.50 per dose | Maximum:<br>750,000 Doses<br><br>Minimum: 100<br>Doses | | |
| 18. | Tdap vaccine<br><br>Min. Shelf Life: 12 Months<br>Fed. Excise Tax: $2.25 per dose | Maximum:<br>5.5M Doses<br><br>Minimum: 100<br>Doses | | |
| 19. | Varicella vaccine<br>Min. Shelf Life: 12 Months<br>Min. Order Size: 10 Doses<br>Fed. Excise Tax: $0.75 per dose | Maximum:<br>10M Doses<br><br>Minimum: 10<br>Doses | | |
| 20. | Measles, Mumps & Rubella (MMR-V) and<br>Varicella vaccine<br>Min. Shelf Life: 12 Months<br>Min. Order Size: 10 Doses | Maximum: 1<br>Million  Doses<br><br>Guaranteed | | |

**Solicitation No. 2013-N-14972**

| | Fed. Excise Tax: $3.0 per dose | Min: 100 Doses | | |
|---|---|---|---|---|
| 21. | Meningococcal and Hib Vaccine (HibMenCY) Min. Shelf Life: 12 Months Fed. Excise Tax: $1.50 | Maximum: 30,000 Doses Guaranteed Min: 100 Dose | | |
| Estimated total based on Maximum Doses | | | | |

**B.1  Background:**  The Centers for Disease Control and Prevention (CDC) awards contracts for the purchase of standard commercial pediatric vaccines.  Vaccines are one of the most cost-effective ways to prevent disease and reduce healthcare costs. The Vaccine for Children (VFC) program, established pursuant to Section 13631 of the Omnibus Budget Reconciliation Act of 1993 (OBRA '93), guarantees federal support for the purchase and supply of sufficient quantities of vaccine to the States to cover a defined group of children.  The program helps assure the implementation of effective immunization practices and proper use of vaccines to achieve higher immunization coverage.  Children (18 years-of-age or younger) who qualify for immunization through the VFC purchase program include those who are (1) Medicaid-eligible, (2) without health insurance, (3) American Indian/Alaska native (as defined in Subsection (h)(3) of the OBRA '93), or (4) children with health insurance, which does not cover the cost of vaccines, if they receive their immunizations at a Federally-qualified health center or rural health clinic (as defined by the Social Security Act). Health care providers who agree to certain requirements are eligible through the States to receive free vaccine through this VFC purchase program.  The establishment of these contracts provides an opportunity to utilize VFC funds and Section 317 vaccine purchase direct assistance (DA) grant funds to obtain vaccines at prices below those available in the commercial market place.  In addition, States may opt to purchase additional quantities of vaccine under any resulting contract to provide immunizations for children who are not federally vaccine-eligible children.

This solicitation will result in firm-fixed price, indefinite delivery/indefinite quantity delivery contracts for the purchase of standard commercial vaccines described herein, manufactured under a current establishment and product license issued by the U.S. Food and Drug Administration (FDA) and as otherwise set forth herein.

**B.2  Definitions:**
- OBRA Orders – Vaccine orders under Section 1928(a) (2)(A) of the Social Security Act.
  317 Orders – Vaccine orders under Section 317(j) of the Public Health Service Act.
- State and Local Orders – Vaccine orders placed by authorized immunization programs using state or local funds in accordance with Section 1928(d)(4)(B) of the Social Security Act.
- Manufacturer – As defined in Subsection (h) (4) of the Social Security Act, means any corporation, organization, or institution, whether public or private, which Manufacturers, imports, processes, or distributes under its label any pediatric vaccine
- Awardees – Includes State health departments and certain local health agencies authorized to order hereunder.

Appx8018

# SECTION C - CONTRACT CLAUSES

## C.1    FAR 52.212-5 Contract Terms and Conditions Required to Implement Statutes or Executive Orders - Commercial Items (Aug 2012)

(a) The Contractor shall comply with the following Federal Acquisition Regulation (FAR) clauses, which are incorporated in this contract by reference, to implement provisions of law or Executive orders applicable to acquisitions of commercial items:

(1) 52.222-50, Combating Trafficking in Persons (Feb 2009) (22 U.S.C. 7104(g)).

☐ Alternate I (Aug 2007) of 52.222-50 (22 U.S.C. 7104(g)).

(2) 52.233-3, Protest After Award (Aug 1996) (31 U.S.C. 3553).

(3) 52.233-4, Applicable Law for Breach of Contract Claim (Oct 2004) (Pub. L. 108-77, 108-78).

(b) The Contractor shall comply with the FAR clauses in this paragraph (b) that the Contracting Officer has indicated as being incorporated in this contract by reference to implement provisions of law or Executive orders applicable to acquisitions of commercial items:

☒ (1) 52.203-6, Restrictions on Subcontractor Sales to the Government (Sept 2006), with Alternate I (Oct 1995) (41 U.S.C. 253g and 10 U.S.C. 2402).

☒ (2) 52.203-13, Contractor Code of Business Ethics and Conduct (Apr 2010) (Pub. L. 110-252, Title VI, Chapter 1 (41 U.S.C. 251 note)).

☐ (3) 52.203-15, Whistleblower Protections under the American Recovery and Reinvestment Act of 2009 (June 2010) (Section 1553 of Pub. L. 111-5). (Applies to contracts funded by the American Recovery and Reinvestment Act of 2009.)

☐ (4) 52.204-10, Reporting Executive Compensation and First-Tier Subcontract Awards (Aug 2012) (Pub. L. 109-282) (31 U.S.C. 6101 note).

☐ (5) 52.204-11, American Recovery and Reinvestment Act—Reporting Requirements (Jul 2010) (Pub. L. 111-5).

☒ (6) 52.209-6, Protecting the Government's Interest When Subcontracting with Contractors Debarred, Suspended, or Proposed for Debarment. (Dec 2010) (31 U.S.C. 6101 note).

☐ (7) 52.209-9, Updates of Publicly Available Information Regarding Responsibility Matters (Feb 2012) (41 U.S.C. 2313).

☒ (8) 52.209-10, Prohibition on Contracting with Inverted Domestic Corporations (May 2012) (section 738 of Division C of Pub. L. 112-74, section 740 of Division C of Pub. L. 111-117, section 743 of Division D of Pub. L. 111-8, and section 745 of Division D of Pub. L. 110-161).

☐ (9) 52.219-3, Notice of HUBZone Set-Aside or Sole-Source Award (Nov 2011) (15 U.S.C. 657a).

☐ (10) 52.219-4, Notice of Price Evaluation Preference for HUBZone Small Business Concerns (Jan 2011) (if the offeror elects to waive the preference, it shall so indicate in its offer) (15 U.S.C. 657a).

☐ (11) [Reserved]

☐ (12)(i)  52.219-6, Notice of Total Small Business Set-Aside (Nov 2011) (15 U.S.C. 644).

☐ (ii) Alternate I (Nov 2011).

☐ (iii) Alternate II (Nov 2011).

Solicitation No. 2013-N-14972

☐ (13)(i) 52.219-7, Notice of Partial Small Business Set-Aside (June 2003) (15 U.S.C. 644).

☐ (ii) Alternate I (Oct 1995) of 52.219-7.

☐ (iii) Alternate II (Mar 2004) of 52.219-7.

☒ (14) 52.219-8, Utilization of Small Business Concerns (Jan 2011) (15 U.S.C. 637(d)(2) and (3)).

☒ (15)(i) 52.219-9, Small Business Subcontracting Plan (Jan 2011) (15 U.S.C. 637(d)(4)).

☐ (ii) Alternate I (Oct 2001) of 52.219-9.

☐ (iii) Alternate II (Oct 2001) of 52.219-9.

☐ (iv) Alternate III (Jul 2010) of 52.219-9.

☐ (16) 52.219-13, Notice of Set-Aside of Orders (Nov 2011)(15 U.S.C. 644(r)).

☐ (17) 52.219-14, Limitations on Subcontracting (Nov 2011) (15 U.S.C. 637(a)(14)).

☐ (18) 52.219-16, Liquidated Damages—Subcontracting Plan (Jan 1999) (15 U.S.C. 637(d)(4)(F)(i)).

☐ (19)(i) 52.219-23, Notice of Price Evaluation Adjustment for Small Disadvantaged Business Concerns (OCT 2008) (10 U.S.C. 2323) (if the offeror elects to waive the adjustment, it shall so indicate in its offer).

☐ (ii) Alternate I (June 2003) of 52.219-23.

☐ (20) 52.219-25, Small Disadvantaged Business Participation Program—Disadvantaged Status and Reporting (Dec 2010) (Pub. L. 103-355, section 7102, and 10 U.S.C. 2323).

☐ (21) 52.219-26, Small Disadvantaged Business Participation Program— Incentive Subcontracting (Oct 2000) (Pub. L. 103-355, section 7102, and 10 U.S.C. 2323).

☐ (22) 52.219-27, Notice of Service-Disabled Veteran-Owned Small Business Set-Aside (Nov 2011) (15 U.S.C. 657 f).

☐ (23) 52.219-28, Post Award Small Business Program Representation (Apr 2012) (15 U.S.C. 632(a)(2)).

☐ (24) 52.219-29, Notice of Set-Aside for Economically Disadvantaged Women-Owned Small Business (EDWOSB) Concerns (Apr 2012) (15 U.S.C. 637(m)).

☐ (25) 52.219-30, Notice of Set-Aside for Women-Owned Small Business (WOSB) Concerns Eligible Under the WOSB Program (Apr 2012) (15 U.S.C. 637(m)).

☐ (26) 52.222-3, Convict Labor (June 2003) (E.O. 11755).

☐ (27) 52.222-19, Child Labor—Cooperation with Authorities and Remedies (Mar 2012) (E.O. 13126).

☐ (28) 52.222-21, Prohibition of Segregated Facilities (Feb 1999).

☐ (29) 52.222-26, Equal Opportunity (Mar 2007) (E.O. 11246).

☐ (30) 52.222-35, Equal Opportunity for Veterans (Sep 2010)(38 U.S.C. 4212).

☐ (31) 52.222-36, Affirmative Action for Workers with Disabilities (Oct 2010) (29 U.S.C. 793).

☐ (32) 52.222-37, Employment Reports on Veterans (SEP 2010) (38 U.S.C. 4212).

☐ (33) 52.222-40, Notification of Employee Rights Under the National Labor Relations Act (Dec 2010) (E.O. 13496).

Solicitation No. 2013-N-14972

☐ (34) 52.222-54, Employment Eligibility Verification (JUL 2012). (Executive Order 12989). (Not applicable to the acquisition of commercially available off-the-shelf items or certain other types of commercial items as prescribed in 22.1803.)

☐ (35)(i) 52.223-9, Estimate of Percentage of Recovered Material Content for EPA–Designated Items (May 2008) (42 U.S.C. 6962(c)(3)(A)(ii)). (Not applicable to the acquisition of commercially available off-the-shelf items.)

☐ (ii) Alternate I (May 2008) of 52.223-9 (42 U.S.C. 6962(i)(2)(C)). (Not applicable to the acquisition of commercially available off-the-shelf items.)

☐ (36) 52.223-15, Energy Efficiency in Energy-Consuming Products (DEC 2007) (42 U.S.C. 8259b).

☐ (37)(i) 52.223-16, IEEE 1680 Standard for the Environmental Assessment of Personal Computer Products (DEC 2007) (E.O. 13423).

☐ (ii) Alternate I (DEC 2007) of 52.223-16.

☒ (38) 52.223-18, Encouraging Contractor Policies to Ban Text Messaging While Driving (AUG 2011) (E.O. 13513).

☐ (39) 52.225-1, Buy American Act—Supplies (Feb 2009) (41 U.S.C. 10a-10d).

☐ (40)(i) 52.225-3, Buy American Act—Free Trade Agreements—Israeli Trade Act (May 2012) (41 U.S.C. chapter 83, 19 U.S.C. 3301 note, 19 U.S.C. 2112 note, 19 U.S.C. 3805 note, 19 U.S.C. 4001 note, Pub. L. 103-182, 108-77, 108-78, 108-286, 108-302, 109-53, 109-169, 109-283, 110-138, 112-41, and 112-42).

☐ (ii) Alternate I (Mar 2012) of 52.225-3.

☐ (iii) Alternate II (Mar 2012) of 52.225-3.

☐ (iv) Alternate III (Mar 2012) of 52.225-3.

☒ (41) 52.225-5, Trade Agreements (MAY 2012) (19 U.S.C. 2501, *et seq*., 19 U.S.C. 3301 note).

☒ (42) 52.225-13, Restrictions on Certain Foreign Purchases (June 2008) (E.O.'s, proclamations, and statutes administered by the Office of Foreign Assets Control of the Department of the Treasury).

☐ (43) 52.226-4, Notice of Disaster or Emergency Area Set-Aside (Nov 2007) (42 U.S.C. 5150).

☐ (44) 52.226-5, Restrictions on Subcontracting Outside Disaster or Emergency Area (Nov 2007) (42 U.S.C. 5150).

☐ (45) 52.232-29, Terms for Financing of Purchases of Commercial Items (Feb 2002) (41 U.S.C. 255(f), 10 U.S.C. 2307(f)).

☐ (46) 52.232-30, Installment Payments for Commercial Items (Oct 1995) (41 U.S.C. 255(f), 10 U.S.C. 2307(f)).

☒ (47) 52.232-33, Payment by Electronic Funds Transfer—Central Contractor Registration (Oct 2003) (31 U.S.C. 3332).

☐ (48) 52.232-34, Payment by Electronic Funds Transfer—Other than Central Contractor Registration (May 1999) (31 U.S.C. 3332).

☐ (49) 52.232-36, Payment by Third Party (Feb 2010) (31 U.S.C. 3332).

☐ (50) 52.239-1, Privacy or Security Safeguards (Aug 1996) (5 U.S.C. 552a).

☐ (51)(i) 52.247-64, Preference for Privately Owned U.S.-Flag Commercial Vessels (Feb 2006) (46 U.S.C. Appx. 1241(b) and 10 U.S.C. 2631).

☐ (ii) Alternate I (Apr 2003) of 52.247-64.

(c) The Contractor shall comply with the FAR clauses in this paragraph (c), applicable to commercial services, that the Contracting Officer has indicated as being incorporated in this contract by reference to implement provisions of law or Executive orders applicable to acquisitions of commercial items:

☐ (1) 52.222-41, Service Contract Act of 1965 (Nov 2007) (41 U.S.C. 351, *et seq.*).

☐ (2) 52.222-42, Statement of Equivalent Rates for Federal Hires (May 1989) (29 U.S.C. 206 and 41 U.S.C. 351, *et seq.*).

☐ (3) 52.222-43, Fair Labor Standards Act and Service Contract Act—Price Adjustment (Multiple Year and Option Contracts) (Sep 2009) (29 U.S.C. 206 and 41 U.S.C. 351, *et seq.*).

☐ (4) 52.222-44, Fair Labor Standards Act and Service Contract Act—Price Adjustment (Sep 2009) (29 U.S.C. 206 and 41 U.S.C. 351, *et seq.*).

☐ (5) 52.222-51, Exemption from Application of the Service Contract Act to Contracts for Maintenance, Calibration, or Repair of Certain Equipment—Requirements (Nov 2007) (41 351, *et seq.*).

☐ (6) 52.222-53, Exemption from Application of the Service Contract Act to Contracts for Certain Services—Requirements (Feb 2009) (41 U.S.C. 351, *et seq.*).

☐ (7) 52.226-6, Promoting Excess Food Donation to Nonprofit Organizations (Mar 2009) (Pub. L. 110-247).

☐ (8) 52.237-11, Accepting and Dispensing of $1 Coin (Sept 2008) (31 U.S.C. 5112(p)(1)).

(d) *Comptroller General Examination of Record.* The Contractor shall comply with the provisions of this

paragraph (d) if this contract was awarded using other than sealed bid, is in excess of the simplified acquisition threshold, and does not contain the clause at 52.215-2, Audit and Records—Negotiation.

(1) The Comptroller General of the United States, or an authorized representative of the Comptroller General, shall have access to and right to examine any of the Contractor's directly pertinent records involving transactions related to this contract.

(2) The Contractor shall make available at its offices at all reasonable times the records, materials, and other evidence for examination, audit, or reproduction, until 3 years after final payment under this contract or for any shorter period specified in FAR Subpart 4.7, Contractor Records Retention, of the other clauses of this contract. If this contract is completely or partially terminated, the records relating to the work terminated shall be made available for 3 years after any resulting final termination settlement. Records relating to appeals under the disputes clause or to litigation or the settlement of claims arising under or relating to this contract shall be made available until such appeals, litigation, or claims are finally resolved.

(3) As used in this clause, records include books, documents, accounting procedures and practices, and other data, regardless of type and regardless of form. This does not require the Contractor to create or maintain any record that the Contractor does not maintain in the ordinary course of business or pursuant to a provision of law.

(e)(1) Notwithstanding the requirements of the clauses in paragraphs (a), (b), (c), and (d) of this clause, the Contractor is not required to flow down any FAR clause, other than those in this paragraph (e)(1) in a subcontract for commercial items. Unless otherwise indicated below, the extent of the flow down shall be as required by the clause—

Solicitation No. 2013-N-14972

 (i) 52.203-13, Contractor Code of Business Ethics and Conduct (Apr 2010) (Pub. L. 110-252, Title VI, Chapter 1 (41 U.S.C. 251 note)).

 (ii) 52.219-8, Utilization of Small Business Concerns (Dec 2010) (15 U.S.C. 637(d)(2) and (3)), in all subcontracts that offer further subcontracting opportunities. If the subcontract (except subcontracts to small business concerns) exceeds $650,000 ($1.5 million for construction of any public facility), the subcontractor must include 52.219-8 in lower tier subcontracts that offer subcontracting opportunities.

 (iii) [Reserved]

 (iv) 52.222-26, Equal Opportunity (Mar 2007) (E.O. 11246).

 (v) 52.222-35, Equal Opportunity for Veterans (Sep 2010) (38 U.S.C. 4212).

 (vi) 52.222-36, Affirmative Action for Workers with Disabilities (Oct 2010) (29 U.S.C. 793).

 (vii) 52.222-40, Notification of Employee Rights Under the National Labor Relations Act (Dec 2010) (E.O. 13496). Flow down required in accordance with paragraph (f) of FAR clause 52.222-40.

 (viii) 52.222-41, Service Contract Act of 1965 (Nov 2007) (41 U.S.C. 351, *et seq.*).

 (ix) 52.222-50, Combating Trafficking in Persons (Feb 2009) (22 U.S.C. 7104(g)).

☐ Alternate I (Aug 2007) of 52.222-50 (22 U.S.C. 7104(g)).

 (x) 52.222-51, Exemption from Application of the Service Contract Act to Contracts for Maintenance, Calibration, or Repair of Certain Equipment-Requirements (Nov 2007) (41 U.S.C. 351, *et seq.*).

 (xi) 52.222-53, Exemption from Application of the Service Contract Act to Contracts for Certain Services-Requirements (Feb 2009) (41 U.S.C. 351, *et seq.*).

 (xii) 52.222-54, Employment Eligibility Verification (JUL 2012).

 (xiii) 52.226-6, Promoting Excess Food Donation to Nonprofit Organizations (Mar 2009) (Pub. L. 110-247). Flow down required in accordance with paragraph (e) of FAR clause 52.226-6.

 (xiv) 52.247-64, Preference for Privately Owned U.S.-Flag Commercial Vessels (Feb 2006) (46 U.S.C. Appx. 1241(b) and 10 U.S.C. 2631). Flow down required in accordance with paragraph (d) of FAR clause 52.247-64.

 (2) While not required, the contractor may include in its subcontracts for commercial items a minimal number of additional clauses necessary to satisfy its contractual obligations.


(End of clause)


**C.2 The following FAR Clause is incorporated by reference:**

  **FAR SOURCE**    **TITLE AND DATE**
  52.212-4       Contract Terms and Conditions - Commercial Items (Feb 2012)


**C.3  352.203-70 ANTI-LOBBYING (MAR 2012)**

Pursuant to the current HHS annual appropriations act, Public Law 112-74, except for normal and recognized executive-legislative relationships, the Contractor shall not use any HHS contract funds for:

a) Publicity or propaganda purposes;

b) The preparation, distribution , or use of any kit, pamphlet, booklet, publication, electronic communication, radio, television or video presentation designed to support or defeat the enactment of legislation before the Congress or any State or local legislature or legislative body, except in presentation to the Congress or any State or local legislature itself; or designed to support or defeat any proposed or pending regulation, administrative action, or order issued by the executive branch of any State or local government; except in presentation to the executive branch of any State or local government itself; or

 c)    Payment of salary or expenses of the Contractor, or any agent acting for the Contractor, related to any activity designed to influence the enactment of legislation, appropriations, regulation, administrative action, or Executive order proposed or pending before the Congress or any State government, State legislature or  local legislature or legislative body, other than for normal and recognized executive-legislative relationships or participation by an agency or officer of a State, local or tribal government in policymaking and administrative processes within the executive branch of that  government.   The prohibitions in subsections a), b) and c) above shall include any activity to advocate or promote any proposed, pending or future Federal, State or local tax increase, or any proposed, pending, or future requirement for, or restriction on, any legal consumer product, including its sale or marketing, including, but not limited to, the advocacy or promotion of gun control.

 (End of Clause)

## C.4    HHSAR 352.204-16,  Prevention and Public Health Fund--Reporting Requirements (MAR 2012)

(a)    Pursuant to Public Law 112-74, FY2012 Labor, HHS and Education Appropriations Act, Sec. 220, this contract requires the contractor to provide products and/or services that are funded from the Prevention and Public Health Fund (PPHF), Public Law 111-148, sec. 4002. Section 220(a)(5) requires each contractor to report on its use of these funds under this contract. These reports will be made available to the public.

(b)    Semi-annual reports from the Contractor for all work funded, in whole or in part, by the PPHF, are due no later than 20 days following the end of each six-month period. The six-month reporting periods are January through June and July through December. The first report is due no later than 20 days after the end of the six-month period following contract award. Subsequent reports are due no later than 20 days after the end of each reporting period. If applicable, the Contractor shall submit its final report for the remainder of the contract period no later than 20 days after the end of the reporting period in which the contract ended.

(c)    The Contractor shall provide the following information in an electronic and 508 compliant format to the Contracting Officer and email a copy to PPHFSIO@CDC.GOV
(1)    The Government contract and order number, as applicable.
(2)    The amount of PPHF funds invoiced by the contractor for the reporting period and the cumulative amount invoiced for the contract or order period.
(3)    A list of all significant services performed or supplies delivered, including construction, for which the contractor invoiced in the reporting period.
(4)    Program or project title, if any.
(5)    The Contractor shall report any subcontract funded in whole or in part with PPHF funding, that is valued at $25,000 or more. The Contractor shall advise the subcontractor that the information will be made available to the public. The Contractor shall report:
(i)    Name and address of the subcontractor.
(ii)    Amount of the subcontract award.
(iii) Date of the subcontract award.
(iv) A description of the products or services (including construction) being provided under the subcontract.

(End of clause)

Solicitation No. 2013-N-14972

## C.5      Needle Exchange (MAY 2012)

No funds appropriated in the FY 12 Appropriations Act and obligated to this contract may be used to carry out any program of distributing sterile needles or syringes for the hypodermic injection of any illegal drug.

(End of clause)

## C.6      SPECIAL CLAUSES

### C.6.1.      Shelf Life

Vaccine provided under this contract shall have a minimum 12 month shelf life remaining upon delivery to the consignee, or as specified within each Contract Line Item Number (See Section B, Continuation of SF 1449).

### C.6.2.      Packaging and Packing Requirements

1. Packaging:   All items shall be packaged in standard commercial manner.

2. Packing:

    a. Product shall be packed to ensure maintenance of FDA recommended temperature during transit and safe arrival at destination. An electronic temperature monitoring device is required with each shipment unless Contractor has obtained prior approval from CDC to use an alternative monitoring method.

    b. Contractor will provide the Contracting Officer Representative (COR) with documentation that explains the cause of each temperature excursion and stability data used by the contractor to determine if the cold chain was adversely affected by temperature variance. Upon review of data provided, CDC will notify appropriate parties if the vaccine is accepted or rejected

### C.6.3.      Contract Period of Performance

The contract period of performance shall be 12 months from date of contract award.

### C.6.4.   Time of Delivery

Delivery is required to be made at destination within 15 working days after receipt of electronic, written, or telephonic order (telephone orders to be confirmed in writing).

### C.6.5.      Place of Delivery

The Contractor shall be required to deliver vaccines F.O.B. Destination, as directed by delivery orders to the CDC centralized distribution locations currently in Sacramento, CA and Memphis, TN.

Appx8025

The Contractor shall be required to deliver frozen vaccines F.O.B. destination as directed by delivery orders.

**C.6.6.      Amendment to OBRA Statute**

In the event of an amendment of 42 U.S.C. Section 1396(s), any terms of the contract affected by such an amendment will be modified in accordance with the revised statute.  The Contracting Officer and the Contractor shall meet to discuss such modifications to the contract before finalization of any changes to the contract.

**C.6.7.      Product Licensure**

a.    The vaccines produced and delivered under this contract shall be manufactured under a current establishment and product license issued by the Food and Drug Administration as indicated below:

___ _____

b.    The Current Good Manufacturing Practice Regulations (CGMPR's) (21CFR Parts 210 211) will be the standard to be applied for manufacturing, processing and packing of drugs, chemicals, biologicals, and reagents.

**c.**    The Contractor shall advise the Contracting Officer immediately of any relocation of his prime manufacturing facility or the relocation of any subcontractor's facility, and if at any time during the life of the contract, the item listed under this contract fails to meet CGMPR's and/or a negative Food and Drug Administration Quality Assurance Evaluation is received; the contract may be terminated, in whole or in part, without further liability to the Government.

**C.6.8.   Placement of Orders**

a.    All vaccine under this contract will be ordered by delivery orders.  Orders shall be placed by the Health and Human Services (HHS), the Centers for Disease Control and Prevention (CDC); Awardees; and other Federal agencies as authorized. Orders may be placed by CDC by telephone (confirmed in writing) or by electronic transfer. Contractors should be able to interface with the CDC Electronic Vaccine Ordering System.

b.    Orders shall be submitted to the Ordering Address specified in Contract Clauses Paragraph C.1.12; Contractor's Ordering/Payment Address and shall contain the following minimum information:

1.   Date of order
2.   Contract number and order number;
3.   Item description, quantity and unit price
4.   Delivery or performance date;
5.   Place of delivery or performance (including consignee);
6.   Packaging, packing and shipping instruction, if any;
7.   Accounting and appropriation data;
8.   Statement to indicate if partial deliveries are not acceptable; (lack of a statement shall be construed to mean partial deliveries are acceptable and payment shall be made as required elsewhere herein)

Appx8026

      9.  Any other pertinent data.

### C.6.9. Delivery Order Limitations

    a.  <u>Minimum Order Size:</u> Individual delivery orders issued under this contract must meet the minimum order size as specified within each Contract Line Item Number (See Section B, Continuation of SF 1449). When the Government requires supplies covered by this contract in amounts less than stated above, the Government is not obligated to purchase, nor is the Contractor obligated to furnish those supplies under this contract.

    b.  <u>Maximum Order:</u> The maximum quantity specified within each Contract Line Item Number (See Section B, Continuation of SF1449) is the maximum number of doses that may be ordered during the contract period of performance. This includes orders from the HHS supply service center and other users. Contractors are advised that the maximum quantity represents their commitment to the Government under their contract.

    c.  Delivery Orders shipments:

      1.  The Government reserves the right to reject vaccine doses that exceed delivery order requirements. The Government shall notify the Contractor when excess doses have been delivered to distribution sites. The Contractor is responsible for contacting the distribution site to make arrangement for the return of the excess doses and will be responsible for shipping cost associated with their return.

      2.  Bulk order shipments, when possible, shall consist of

          a. One NDC per skid

          b. Full skid quantities with same lot number

          c. Full case quantities (when total order size allows)

### C.6.10.   FAR 52.216-18 ORDERING (OCT 1995)

  a.  Any supplies and services to be furnished under this contract shall be ordered by issuance of delivery orders or task orders by the individuals or activities designated in the Schedule. Such orders may be issued from the effective date of the contract through the expiration date of the contract.

  b.  All delivery orders or task orders are subject to the terms and conditions of this contract. In the event of conflict between a delivery order or task order and this contract, the contract shall control.

  c.  If mailed, a delivery order or task order is considered "issued" when the Government deposits the order in the mail. Orders may be issued orally or by written telecommunications only if authorized in the Schedule.

### C.6.11. FAR 52.216-22 INDEFINITE QUANTITY (OCT 1995)

a. This is an indefinite quantity contract for the supplies specified and effective for the period stated, in the Schedule. The quantities of supplies and services specified in the Schedule are estimates only and are not purchased by this contract.

b. Delivery or performance shall be made only as authorized by orders issued in accordance with the Ordering clause. The Contractor shall furnish to the Government, when and if ordered, the supplies specified in the Schedule up to and including the quantity designated in the Schedule as the "maximum." The Government shall order at least the quantity of supplies designated in the Schedule as the "minimum."

c. Except for any limitations on quantities in the Delivery Order Limitations clause or in the Schedule, there is no limit on the number of orders that may be issued. The Government may issue orders requiring delivery to multiple destinations or performance at multiple locations.

d. Any order issued during the effective period of this contract and not completed within that period shall be completed by the Contractor within the time specified in the order. The contract shall govern the Contractor's and Government's rights and obligations with respect to that order to the same extent as if the order were completed during the contract's effective period; provided, that the Contractor shall not be required to make any deliveries under this contract after fifteen (15) working days beyond the expiration date of the contract.

### C.6.12. Contractor's Ordering/Payment Address

Submission of all orders for Contractor's vaccines and payment of invoices shall be addressed as referenced below:

ORDERING ADRESS        PAYMENT ADDRESS

_____     _____
_____     _____
_____     _____

### C.6.13. Invoice Submission

1. Invoice submission under this contract will be made as follows:
   a. Authorized Federal Government: The Contractor shall submit invoices via Electronic Data Interchange (EDI) in a format to be mutually agreed upon between CDC and the Contractor.

   b. Awardees: The Contractor shall submit one hard copy of its invoice(s) to the address specified on the delivery order.

   c. The Contractor agrees to include the following information on each invoice:

2. Contractor's name and invoice date;
3. Contract number, or other authorization for delivery of property and/or services;
4. Description, cost or price, and quantity of property and/or services actually

Appx8028

delivered or rendered;

5. Shipping and payment terms;

6. Other substantiating documentation or information as required by the contract;   and;

7 Name where practicable, title, phone number, and complete mailing address of responsible official to whom payment is to be sent.

8 NDC and Lot number of vaccine vials shipped;

9. CDC accounting and appropriation data as described on the delivery order.

10. Electronic Funds Transfer (EFT) and Taxpayer Identification Number (TIN)


### C.6.14.   Method of Payment

a.   Federal Government:  The Government will use electronic funds transfer to the maximum extent possible when making payment under this contract IAW/FAR Clause 52.232-33, payment by Electronic Funds Transfer - Central Contractor Registration.  Payment under this contract will be made as follows:

b.   Awardees:  By check


### C.6.15.   Contracting Officer Representative (COR)

A COR will be designated in writing by the Contracting Officer to serve during the period of performance of the contract. The COR shall be responsible for guidance in regard to the technical aspect of the contract, provide a point for liaison between the Contractor and other Government agencies and be the general focal point to address technical and logistical problems relating to the performance under the contract. The COR shall not have the authority to make any commitments or authorize any changes which affect the contract price, terms and/or conditions; any such changes shall be referred to the Contracting Officer for action.


### C.6.16.   Return Privileges

Return privileges for credit, reimbursement or exchange do not apply to this contract except vaccines not conforming to the specifications set forth herein, which are limited to credit or exchange only.


### C.6.17.   Restrictions on Use of Vaccines

Vaccines obtained under this contract shall be used only in children 18 years of age and younger as authorized under Section 1928 of the Social Security Act.   Sale of such vaccine to any person or entity or reimbursement of vaccine costs is strictly prohibited.  Free distribution of such vaccine is also prohibited, except where such vaccine is administered in the context of Federal and Awardee immunization program activities.


### C.6.18.   Federal Excise Tax Credit

Negotiated prices for the vaccines included in this Contract may include a Federal Excise Tax (See Continuation of SF 1449 for applicable Contract Line Item Numbers).  If for any

reason the vaccine is returned (other than for resale) or destroyed, the Contractor shall within 6 months following the date the vaccine is returned or destroyed, file a claim for credit or refund relative to any tax previously paid on such vaccine. The Contractor agrees to credit or refund the amount of such excise tax to the purchaser to the extent that the Contractor receives a credit or refund from the Federal Government. Any such credit or refund to the purchaser is expressly conditioned upon the authorized purchaser providing a written summary of events leading to the request for credit or refund. The purchaser shall return all undistributed vaccine to the Contractor for proper disposal, unless destruction of the vaccine renders return impossible. If destruction of the vaccine renders return impossible and is therefore destroyed by the purchaser, the authorized purchaser must provide a written summary of events to the Contractor within 30 days of said destruction. If a contract is in place with the Contractor at the time when a credit or refund is due; the purchaser may elect to receive vaccine which will be purchased at the current contract price in lieu of a cash payment. Otherwise, the Contractor shall refund the amount due to the purchaser's account. If a credit or refund is issued by the Contractor for state or local funds, it shall be submitted to the state or local public health entity identified in the request for FET credit. If a credit or refund is issued by the Contractor to the Federal Funds account, it shall contain the Contractor's DUNS and TIN/EIN and shall be submitted either via EDI (credit) or to the following address (check):

Centers for Disease Control and Prevention

Financial Management Office

Attn: Debt Management Branch

P.O. Box 15580

Atlanta, GA 30333

### C.6.19.    Delinquent Delivery Reports

The Contractor shall provide CDC with a weekly electronic listing of all CDC orders that have not been shipped within the agreed upon delivery schedule. The report shall include the following information: project name, order number, date of order, and status of order in number of pending/undelivered doses. The report shall also provide an explanation as to the cause for the delinquent delivery as well as when the vaccine will be delivered. This notification shall not relieve the contractor from meeting its obligations under the contract and shall not limit the Government's right to seek relief for any breach of contract for failure to perform, including termination for cause.

### C.6.20.    Biological Surveillance Data Reports

A. The Contractor shall submit a monthly report of historical sales data for the United States by month specifying the name of the vaccine, NDC #, and the total number of doses sold (segregated by CDC and non-CDC sales), in a standardized format acceptable to the Contractor and the CDC. The report shall be submitted electronically to the COR by the 15th of the month. Information related to vaccine sales through CDC contracts is not considered proprietary. CDC acknowledges that those reports pertaining to private sales unrelated to this contract are confidential and proprietary information of the Contractor, and shall not use reports for any purpose other than CDC's internal tracking and reporting

purposes and shall not further disclose such reports without the Contractor's prior written consent unless required by the law or other Federal authority; provided that, no Contractor authorization shall be required for the CDC to include the data from the Contractor's report in a report in which aggregated data from multiple Contractors is summarized, so long as, with respect to multi-sourced products, the CDC's aggregated report does not include any data which could be individually identified as the Contractor's. In the event that CDC is required by law or other Federal authority to disclose such reports required to be held confidential hereunder, CDC shall notify the Contractor prior to making such disclosure in accordance with law or other Federal authority.

a.  Data Reports to Manufacturers
The Government will submit monthly reports of all vaccine data specifying doses by project, zip code, and NDC # in a standardized format. For all vaccines except direct ship vaccines, the Government shall provide distribution data. Because the Government does not distribute direct ship vaccines, purchase data will be provided. The reports shall be submitted electronically to the Contractor by the 15th of the month for the previous month. The Government shall also provide the Contractor with an annual Vaccine Ordering Forecasting Application (VOFA)/Vaccine Tracking System (VTrckS) spend plan for each grantee and an annual VFC providers list not later than November 15, 2013.

## C.6.21.   Prohibitions on Inducements

The Contractor is expressly prohibited from offering, providing or arranging inducements of any kind to providers or authorized purchasers ordering vaccine under this contract for the purpose of obtaining orders for vaccine. Examples of such inducements include, but are not limited to: entertainment, meals, and free or reduced prices for syringes, vaccines, or other medical products or supplies. If the Contractor has entered into similar agreements with the authorized purchasers which offer inducements relative to its commercial business, these agreements must be clear that they do not apply to purchases made under the CDC Federal contracts.

## C.6.22.   Contract Changes

Notwithstanding FAR Clause 52.212-4(c), Changes, the parties hereby agree that modifications for incremental funding and other administrative changes (e.g., changes to CDC accounting data) that do not affect the terms and conditions of the contract may be made unilaterally by the CDC.

## C.6.23.   Vaccine Images

Upon contract award, the Contractor agrees to provide via email camera-ready vaccine product images in .pdf format and written authorization for CDC to use the images to the COR. CDC will use the images to illustrate the Contractor's products on the CDC vaccine ordering system. The Contractor agrees to provide CDC with updated product images if there is a change in packaging and vaccine images for new NDCs added to the contract during the period of performance.

### C.6.24.    Advance Notice of Supply Issues

The Contractor agrees to provide advance notification to COR and the CDC Contracting Officer of any supply issue which will result in the Contractor's failure to deliver vaccine within the agreed upon delivery schedule specified in the contract.  This notification shall be given as soon as the Contractor becomes aware of the scope of the problem that will impede the timely delivery of vaccine.  This notification shall not relieve the contractor from meeting its obligations under the contract and shall not limit the Government's right to seek relief for any breach of contract for failure to perform, including termination for cause.  Furthermore, any deviation from the delivery schedule due to a vaccine supply issue will demonstrate reasonably equal treatment with respect to the fulfillment of orders between CDC and the contracting non-government customers.

### C.6.25.    Authorized Distribution of Record (ADR) Agreement

In accordance with the Prescription Drug Marketing Act (PDMA) of 1998, it is requested that all suppliers provide a written statement included as an attachment in Section D of this solicitation, which designates the CDC as the ADR for all vaccines subject to distribution under this contract.

### C.6.26.    Use of VFC Provider Lists and Distribution of Material

a.  Contractors are prohibited from utilizing VFC providers' lists obtained from any source for any mailing or other communication with VFC providers, except as approved in writing by the CDC COR. In addition, contractors are prohibited from otherwise communicating with VFC providers regarding the VFC program, except as approved in writing by the CDC COR.  To the extent that Contractors have established relationships with VFC providers or authorized purchasers under this contract that are independent from the VFC program, communications related to such independent relationships are not covered by this provision and do not require CDC consent.

b.  Contractors are prohibited from providing names and/or addresses of VFC providers to any third party, except as needed to comply with the terms of this contract, in which cases the CDC COR shall be notified in writing.

c.  Any Contractor that ships vaccine directly to VFC providers is prohibited from inserting any promotional or other material that is promotional in nature for any product that the Contractor produces, into shipping containers for vaccine purchased under this contract, except for material related to use of the vaccine as approved in writing by the CDC COR. Additionally any shipping container inserts that are required, such as handling instructions or educational materials, should not contain any promotional material as part of its content.

Solicitation No. 2013-N-14972

# SECTION D - CONTRACT DOCUMENTS, EXHIBITS OR ATTACHMENTS

**D.1 Websites.** Additional information can be found at www.fob.gov ; www.cdc.gov/vaccines; and http://csrc.nist.gov/publications/nistpubs/

**D.2 Attachment A -** Copy of PPHFFY12ContractRecipientReportingTemplate 8-6

**D.3 Authorized Distributor of Record (ADR) Agreement:** Offerors shall complete and return the following agreement with their proposals:

Appx8033

Solicitation No. 2013-N-14972

### *AUTHORIZED DISTRIBUTOR OF RECORD (ADR) AGREEMENT*

This Agreement hereby represents the ongoing relationship between the supplier named below ("MANUFACTURER / SUPPLIER") and the Centers for Disease Control and Prevention , herein after referred to as CDC, to establish and designate CDC as an Authorized Distributor of Record (ADR) as set forth in the Prescription Drug Marketing Act (PDMA) of 1988 as well as in the implementing federal regulations found at 21 CFR Part 203. CDC here after agrees to comply with all applicable state and federal laws to ensure continued status of this relationship. To further meet the requirements of the PDMA, please forward with the signed agreement an attachment with a list of the specific products that CDC is authorized to distribute or a statement that the CDC is an ADR for the manufacturer's entire product line. Specific products should be identified by the pharmaceutical / vaccine name, dosage form, and strength of the drug and the NDC number.

Check the box that applies:

    __ The Distributor is the ADR for Supplier's entire product line.

    __ The Distributor is the ADR for the products listed on the attachment 1-A.

This agreement shall be valid from the date of dual execution until termination by either party on ninety (90) days written notice. This agreement shall not abridge, supplant, modify, or in any way alter any other pre-existing distribution agreement or any future agreements that may, from time to time, be executed in the furtherance of the business relationship between Manufacturer/ Supplier and the CDC.
This agreement confers no rights upon CDC other than to designate CDC as an Authorized Distributor of Record for Manufacturer/ Supplier. This agreement is not intended to be, nor shall it be, interpreted as a sales agreement or any other type of agreement other than to represent an "ongoing relationship" within the meaning set forth in 21 CFR Part 203.3(u).

*By affixing my signature below, I do hereby acknowledge and represent that I have read this Agreement in its entirety, that I understand its terms, that I am duly authorized to bind my organization to the requirements detailed in the above Agreement and that I agree to ensure that my organization will adhere to such requirement for the duration herein stated.*

**Appx8034**

**Solicitation No. 2013-N-14972**

Authorized Distributor of Record: **Centers for Disease Control and Prevention (CDC)**

Authorized Signature:_____

Print Name:   _Alan W. Sims, U.S. Government Contracting Officer_

Date: _____

-----------------------------------------------------------------------------------------------------------

Manufacturer / Supplier: _____

Authorized Signature: _____

Print Name: _____

Date: _____

Appx8035

# SECTION E - SOLICITATION PROVISIONS

**E.1**   **The following provisions are added by reference:**

| FAR SOURCE | TITLE AND DATE |
|---|---|
| 52.212-1 | Instructions to Offerors - Commercial Items (Feb 2012) |
| 52.212-3 | Offeror Representations and Certifications - Commercial Items (Apr 2012) |
| 52.232-18 | Availability of Funds (Apr 1984) |

**E.2**   **Paragraph ( c) of 52.212-1, Period for acceptance of offers, is deleted in its entirety and the following is substituted therefore:**

( c)  *Period for acceptance of offers*.  The offeror agrees to hold the prices in its offer firm for 60 calendar days from the date specified for receipt of offers, unless another time period is specified in an addendum to the solicitation.

**E.3**   **FAR  52.233-2  Service of Protest (AUG 1996)**

a.   Protests, as defined in section 33.101 of the Federal Acquisition Regulation, that are filed directly with the agency, and copies of any protests that are filed with the General Accounting Office (GAO), shall be served on the Contracting Officer (addressed as follows) by obtaining written and dated acknowledgment of receipt from:

> Centers for Disease Control & Prevention
> Attn: Berta Biltz
> 2920 Brandywine Road, Room 3000
> Atlanta, GA 30341-5539

b.   The copy of any protest shall be received in the office designated above within one day of filing a protest with the GAO.

**E.4**   **INSTRUCTIONS FOR SUBMISSION OF  OFFERS:**

a.   Offerors shall submit their offers on the basis of Firm-Fixed Price by **Midnight, February 11, 2013.**

b.   Offers shall be submitted electronically (via e-mail) in MS Word or MS Excel files to Bbiltz@cdc.gov.  The following format is required as e-mail subject:  The RFP No: **2013-N-14972.KT.doc or .xls**  (Where "**2013-N-14972**" is the respective RFP No. and "KT" are the first two letters of the respective Contractor's name; and ".doc" and ".xls" are the format extensions.)

c.   In the event there are electronic transmission problems, the following steps shall be taken:

i.   CDC receives the electronic file timely, but cannot access it.  The offeror will be contacted and may be allowed to fax in the portions that cannot be accessed.

ii.   Facsimile quotes are not authorized. Technical inquiries shall be e-mailed to Bbiltz@cdc.gov . Telephone inquiries will not be honored.

iii.   Contractor sends electronic file, but receives error message indicating e-mail problems at CDC. Fax in a cover sheet indicating transmission difficulties, and the Contract Specialist will contact the Contractor to arrange an alternate method of submission. Quoters are requested not to fax entire proposals to PGO. Facsimile submission shall only be used after contacting the Contract Specialist.

e.   Contractors are responsible for providing accurate and complete information for evaluation. (Failure to do so may rule the quote unacceptable.) Thus, the proposal shall include the following information for evaluation:

i.   The Technical Proposal:  Offerors other than vaccine manufacturers shall provide documentation that clearly demonstrates their ability to:

1.   meet the provisions of the Federal Excise Tax Credit contract clause;

2.   provide vaccine maximum quantities specified within each Contract Line Item Number; and

**Appx8036**

Solicitation No. 2013-N-14972

    3.  meet the vaccine Shelf Life provision.

    4.  produce and deliver vaccines under a current establishment and product license issued by the U.S. Food and Drug Administration.

  ii.  <u>Past Performance</u>:  Past performance is one indicator of the offeror's ability to perform the contract successfully. The government will evaluate different customers' opinions about *how well* (quality) the offeror has satisfied their requirements.  Offerors shall provide, as part of their proposal, a list of clients or former clients for whom they have performed the same or similar work to the one required by this solicitation during the past five years.

## E.5    Inquiries

Inquiries concerning the solicitation document shall be submitted in writing to the issuing office.  Any additions, deletions, or changes to the solicitation will be made by an amendment.  OFFERORS ARE INSTRUCTED SPECIFICALLY TO CONTACT ONLY THE  SOLICITATION CONTRACTING OFFICE IN CONNECTION WITH ANY ASPECT OF THIS REQUIREMENT PRIOR TO CONTRACT AWARD.  PROPOSALS AND ALL CORRESPONDENCE RELATING TO THE SOLICITATION DOCUMENT SHALL BE SUBMITTED TO THE CONTRACTING OFFICE.  Inquiries shall be received at the Contracting Office no later than **February 5th, 2013** via e-mail ONLY to: bbiltz@cdc.gov .

## E.6    Subcontracting Plan

The offeror, prior to being awarded a contract, shall submit an acceptable subcontracting plan (see FAR 52.219-9) or demonstrate that no subcontracting opportunities exist.  (Note:  This requirement does not apply to small business concerns or to offers which do not exceed $500,000.00 ($1,000,000.00 for construction) or to offers from non-domestic concerns.)

CDC Small Business Goals for 2012* are:

| Business Type | % of Obligations |
|---|---|
| Small Business | 10.00% |
| Small Disadvantaged Business | 5.00% |
| HUBZONE | 3.00% |
| Women-Owned Small Business | 5.00% |
| Service-Disabled Veteran-Owned Small Business | 3.00% |
| Total | 26.00% |

## E. 7  FAR 52.212-3 Offeror Representations and Certifications

An offeror shall complete only paragraph (b) of this provision if the offeror has completed the annual representations and certifications electronically at http://orca.bpn.gov.

(End of Provision)

## E. 8  52.212-2 Evaluation - Commercial Items (Jan 1999)

(a) The Government will award a contract resulting from this solicitation to the responsible offeror whose offer conforming to the solicitation will be most advantageous to the Government, price and other factors considered. The following factors shall be used to evaluate offers:

      (i)   *technical capability of the item offered to meet the Government requirement;*
      (ii)  *price;*

---

*Subject to change.  Goals for 2013 have not been received yet.

Appx8037

Solicitation No. 2013-N-14972

      (iii)   *past performance*

Technical and past performance, when combined, is equal in importance to price.

(b) A written notice of award or acceptance of an offer, mailed or otherwise furnished to the successful offeror within the time for acceptance specified in the offer, shall result in a binding contract without further action by either party. Before the offer's specified expiration time, the Government may accept an offer (or part of an offer), whether or not there are negotiations after its receipt, unless a written notice of withdrawal is received before award.

(c) Past performance will be evaluated for **only those offerors remaining in the competitive range** as follows:

1. Each offeror shall be evaluated on its past performance under current and prior contracts. By past performance, the Government means the offeror's record of conforming to specifications and to standards of good workmanship; the contractor's record of forecasting and controlling costs; the offeror's adherence to contract schedules and terms, including the administrative aspects of performance; the offeror's reputation for reasonable and cooperative behavior and commitment to customer satisfaction; and generally, the offeror's business-like concern for the interest of the customer and the degree of quality of deliverables and performance.

2. Past performance will not be scored, but the Government's conclusions about overall quality of the offeror's past performance will be highly influential in determining the relative merits of the offeror's proposal and in selecting the offeror whose proposal is considered the most advantageous/best value to the Government.

3. Evaluation of past performance will be a subjective assessment based on a consideration of all relevant facts and circumstances. It will not be based on absolute standards of acceptable performance.

4. The assessment of the offerors past performance will be used as a means of evaluating the relative capability of the offeror and the other competitors. Thus, an offeror with an exceptional record of relevant past performance may receive a more favorable evaluation than another whose record is acceptable and/or less relevant, even though both may have acceptable technical and business proposals.

5. An offeror without a record of past performance or for whom information on past performance is not available will not be evaluated favorably or unfavorably.

6. Evaluation of past performance information will be reflected in terms of the following degrees of performance assessment:

**Excellent:** A significant majority of the sources of information are consistently firm in stating that the offeror's performance was superior and that they would unhesitatingly do business with the offeror again. Complaints are negligible or unfounded. The offeror has no record of criminal conduct, civil fraud, or negligence, or the record is old and the offeror has demonstrated by more recent performance that corrective action has made the likelihood of such conduct in the future highly improbably. No doubt exists that the offeror will successfully perform the Government's requirements as stated in the RFP.

**Good:** Most sources of information state that the offeror's performance was good, better than average, etc., and that they would willingly do business with the offeror again. Complaints, though perhaps well-founded, are few and relatively minor. The offeror has no record of criminal conduct, civil fraud, or negligence, or the record is old and the offeror has demonstrated by more recent performance that corrective action has made the likelihood of such conduct in the future highly improbable. Little doubt exists that the offeror will successfully perform the Government's requirements as stated in the RFP.

**Neutral:** Either no past performance history exists for the corporation, predecessor companies, key personnel, or major/critical subcontractors, or the offeror's record of past performance was neither predominantly favorable nor unfavorable. In the latter case, sources of information are roughly divided over the quality of the offeror's performance. While some state that they would do business with the offeror again, others are doubtful or would not. Complaints are

Page 24

Appx8038

balanced by reports of good work.  The offeror has no record of criminal conduct, civil fraud, or negligence, or the record is old.

**Marginal:**  Many sources of information made unfavorable reports about the offeror's performance and either express serious doubts about doing business with the offeror again or state that they would refuse to do so.  However, there are some favorable reports, and some sources of information indicate that they would do business with the offeror again.  There are many significant, serious, and well-founded complaints, but there are some reports of very good performance.  The offeror may have been indicted, pled guilty, or may have been found guilty in matters of criminal conduct, but the issues are either unresolved, relatively minor, or do not reflect a company-wide or managerial pattern of wrongdoing.  The offeror may have lost civil suits for fraud or negligence, but there is no company-wide or managerial pattern of fraudulent, negligent, or criminal conduct.  Some doubt exists that the offeror will successfully perform the Government's requirements as stated in the RFP.

**Poor:**  A significant majority of sources of information are consistently firm in stating that the offeror's performance was entirely unsatisfactory and that they would not do business with the offeror again under any circumstances.  Customer complaints are substantial or numerous and are well-founded.  Or, although not debarred or suspended, the offeror is under indictment or has been convicted of criminal conduct, or has been found civilly liable for fraud or negligence.  The offeror either has presented no persuasive evidence of having taken appropriate corrective action that will guard against such conduct in the foreseeable future, or it appears unlikely that the corrective action will be effective.  Serious doubt exists that the offeror will successfully perform the Government requirements as stated in the RFP.

(End of Provision)

10/25/2019
Declaration of G. Reilly
EXHIBIT 273

# SOLICITATION/CONTRACT/ORDER FOR COMMERCIAL ITEMS
*OFFEROR TO COMPLETE BLOCKS 12, 17, 23, 24, & 30*

| | | |
|---|---|---|
| | 1. REQUISITION NUMBER | PAGE 1 OF 25 |

| 2. CONTRACT NO. | 3. AWARD/EFFECTIVE DATE | 4. ORDER NUMBER | 5. SOLICITATION NUMBER 2014-N-15784 | 6. SOLICITATION ISSUE DATE 01/24/2014 |
|---|---|---|---|---|

| 7. FOR SOLICITATION INFORMATION CALL: ▶ | a. NAME  Berta Biltz | b. TELEPHONE NUMBER *(No collect calls)* (770) 488-2643 | 8. OFFER DUE DATE/ LOCAL TIME |
|---|---|---|---|

**9. ISSUED BY**    CODE   2538

Centers for Disease Control and Prevention (PGO)
Acquisition & Assistance Branch B
2920 Brandywine Road
Atlanta, GA 30341-5539

**10. THIS ACQUISITION IS**

UNRESTRICTED

X SET AS DE:    % FOR

    SMALL BUSINESS

    SMALL DISADV. BUSINESS

    8(A)

SIC:

SIZE STANDARD:

**11. DELIVERY FOR FOB DESTINATION UNLESS BLOCK IS MARKED**

X SEE SCHEDULE

**13a. THIS CONTRACT IS A RATED ORDER UNDER DPAS (15 CFR 700)**

**13b. RATING**

**14. METHOD OF SOLICITATION**

   RFQ    IFB    X RFP

**12. DISCOUNT TERMS**

| 15. DELIVER TO    CODE | 16. ADMINISTERED BY    CODE   2538 |
|---|---|
| To be indicated by the individual delivery orders placed against the contract | Centers for Disease Control and Prevention (PGO) Acquisition & Assistance Branch B 2920 Brandywine Road Atlanta, GA 30341-5539 |

**17a. CONTRACTOR/ OFFEROR**   CODE    FACILITY CODE

TELEPHONE

**17b. CHECK IF REMITTANCE IS DIFFERENT AND PUT SUCH ADDRESS IN OFFER**

**18a. PAYMENT WILL BE MADE BY**    CODE   434

Centers for Disease Control and Prevention (FMO)
PO Box 15580 404-718-8100

Atlanta, GA 30333-0080

**18b. SUBMIT INVOICES TO ADDRESS SHOWN IN BLOCK 18a UNLESS BLOCK BELOW IS CHECKED**    SEE ADDENDUM

| 19. ITEM NO. | 20. SCHEDULE OF SUPPLIES/SERVICES | 21. QUANTITY | 22. UNIT | 23. UNIT PRICE | 24. AMOUNT |
|---|---|---|---|---|---|
| | **VFC 2014** "See Continuation Page" *(Attach Additional Sheets as Necessary)* | | | | |

**25. ACCOUNTING AND APPROPRIATION DATA**

**26. TOTAL AWARD AMOUNT** *(For Govt. Use Only)*

x 27a. SOLICITATION

27b. CONTRACT/PURCHASE ORDER   ARE NOT ATTACHED

INCORPORATES BY REFERENCE FAR 52.212-1, FAR 52.212-5 IS ATTACHED. ADDENDA

| 28. CONTRACTOR IS REQUIRED TO SIGN THIS DOCUMENT AND RETURN ___ COPIES TO ISSUING OFFICE. CONTRACTOR AGREES TO FURNISH AND DELIVER ALL ITEMS SET FORTH OR OTHERWISE IDENTIFIED ABOVE AND ON ANY ADDITIONAL SHEETS SUBJECT TO THE TERMS AND CONDITIONS SPECIFIED HEREIN. | 29. AWARD OF CONTRACT: REFERENCE ___ OFFER DATED ___ . YOUR OFFER ON SOLICITATION (BLOCK 5), INCLUDING ANY ADDITIONS OR CHANGES WHICH ARE SET FORTH HEREIN, IS ACCEPTED AS TO ITEMS. |
|---|---|
| 30a. SIGNATURE OF OFFEROR/CONTRACTOR | 31a. UNITED STATES OF AMERICA *(Signature of Contracting Officer)* |
| 30b. NAME AND TITLE OF SIGNER *(Type or print)*    30c. DATE SIGNED | 31b. NAME OF CONTRACTING OFFICER *(Type or print)*    31c. DATE SIGNED |

| 32a. QUANTITY IN COLUMN 21 HAS BEEN RECEIVED ___ INSPECTED ___ ACCEPTED, AND CONFORMS TO THE CONTRACT, EXCEPT AS NOTED | 33. SHIP NUMBER PARTIAL ___ FINAL | 34. VOUCHER NUMBER | 35. AMOUNT VERIFIED CORRECT FOR |
|---|---|---|---|
| | 36. PAYMENT COMPLETE ___ PARTIAL ___ FINAL | | 37. CHECK NUMBER |
| 32b. SIGNATURE OF AUTHORIZED GOV'T REPRESENTATIVE    32c. DATE | 38. S/R ACCOUNT NUMBER | 39. S/R VOUCHER NUMBER | 40. PAID BY |
| | 42a. RECEIVED BY *(Print)* | | |
| 41a. I CERTIFY THIS AMOUNT IS CORRECT AND PROPER FOR PAYMENT | | | |
| 41b. SIGNATURE AND TITLE OF CERTIFYING OFFICER    41c. DATE | 42b. RECEIVED AT *(Location)* | | |
| | 42c. DATE REC'D | 42d. TOTAL CONTAINERS | |

AUTHORIZED FOR LOCAL REPRODUCTION    SEE REVERSE FOR OMB CONTROL NUMBER AND PAPERWORK BURDEN STATEMENT    STANDARD FORM 1449 (10-95)

**Appx8041**

# TABLE OF CONTENTS

| Section | Document/Clause/Provision | Page No. |
|---------|---------------------------|----------|
| A | Standard Form 1449 | 1 |
| B | Continuation of SF1449 (Block 19 – 24) | 2 |
| C | Contract Clauses | 5 |
| D | Contract Documents, Exhibits or Attachments | 20 |
| E | Solicitation Provisions | 22 |

Appx8042

# SECTION B - CONTINUATION OF SF1449

The National Center for Immunization and Respiratory Diseases (NCIRD) requires the award of multiple indefinite quantity, indefinite delivery contracts for the purchase of standard commercial pediatric vaccines, manufactured under a current establishment and product license issued by the U.S. Food and Drug Administration.  The vaccines awarded under these contracts will be purchased for NCIRD's immunization Awardees to support pediatric immunization programs as provided under Section 317(j) of the Public Health Service Act and Vaccine for Children (VFC) program, established pursuant to Section 13631 of the Omnibus Budget Reconciliation Act of 1993 (OBRA '93).

| ITEM | SUPPLIES / SERVICES | QTY / UNIT | UNIT PRICE | EXTENDED PRICE |
|------|---------------------|------------|------------|----------------|
| 1. | DTaP vaccine:<br><br>Min. Shelf Life: 12 Months<br>Fed. Excise Tax: $2.25 per dose | Maximum: 6.5M Doses<br><br>Minimum: 100 Doses | | |
| 2. | DTaP/Hep B/IPV vaccine:<br><br>Min. Shelf Life: 12 Months<br>Fed. Excise Tax: $3.75 per dose | Maximum: 5.38M Doses<br><br>Minimum: 100 Doses | | |
| 3. | DTaP-IPV Vaccine:<br><br>Min. Shelf Life:  12 months<br>Fed. Excise Tax: $3.00 per dose | Maximum: 3.5M Doses<br><br>Minimum:  100 Doses | | |
| 4. | DTaP-IP-HI Vaccine:<br><br>Min. Shelf Life: 12 months<br>Fed. Excise Tax: $3.75 per dose | Maximum:  7.5M Doses<br><br>Minimum. 100 Doses | | |
| 5. | E-IPV vaccine:<br><br>Min. Shelf Life: 12 Months<br>Fed. Excise Tax: $0.75 | Maximum: 4M Doses<br><br>Minimum: 100 Doses | | |
| 6. | Hepatitis A (pediatric) vaccine<br><br>Min. Shelf Life: 12 Months<br>Fed. Excise Tax: $0.75 per dose | Maximum: 8.5M Doses<br><br>Minimum: 100 Doses | | |
| 7. | Hepatitis A&B (Age 18 only) vaccine<br><br>Min. Shelf Life: 12 Months<br>Fed. Excise Tax: $1.50 per dose | Maximum: 100,000 Doses<br><br>Minimum: 100 Doses | | |
| 8. | Hepatitis B (pediatric/adol.) vaccine<br><br>Min. Shelf Life: 12 Months<br>Fed. Excise Tax: $0.75 per dose | Maximum: 7.7M Doses<br><br>Minimum: 100 Doses | | |
| 9. | Hepatitis B/Hib vaccine<br><br>Min. Shelf Life: 12 Months<br>Fed. Excise Tax: $1.50 per dose | Maximum: 150K Doses<br><br>Minimum: 100 Doses | | |
| 10. | Hib vaccine<br><br>Min. Shelf Life: 12 Months<br>Fed. Excise Tax: $0.75 per dose | Maximum: 8M Doses<br><br>Minimum: 100 Doses | | |

Page 2

`

Appx8043

Solicitation No. 2014-N-15784

| 11. | Human Papillomavirus types Vaccine, Recombinant (HPV) <br><br> Min. Shelf Life: 12 Months <br> Fed. Excise Tax: $0.75 per dos | Maximum: 8.2M Doses <br><br> Minimum: 100 Doses | | |
|---|---|---|---|---|
| 12. | Measles, Mumps & Rubella (MMR) vaccine <br><br> Min. Shelf Life: 12 Months <br> Fed. Excise Tax: $2.25 per dose | Maximum: 8M Doses <br><br> Minimum: 100 Doses | | |
| 13. | Meningococcal Conjugate (MCV4) vaccine <br><br> Min. Shelf Life: 12 Months <br> Fed. Excise Tax: $0.75 per dose | Maximum: 6.5M Doses <br><br> Minimum: 100 Doses | | |
| 14. | Pneumococcal Conjugate vaccine (13 Valent) <br><br> Min. Shelf Life: 12 Months <br> Fed. Excise Tax: $0.75 per dose | Maximum: 13M Doses <br><br> Minimum: 100 Doses | | |
| 15. | Pneumococcal (23 Valent) Polysaccharide Vaccine <br> Min. Shelf Life: 12 Months <br> Minimum Order Size: 10 doses <br> Fed. Excise Tax: N/A | Maximum: 350K Doses <br><br> Minimum.: 100 Doses | | |
| 16. | Rotavirus vaccine <br><br> Min. Shelf Life: 12 Months <br> Fed. Excise Tax: $0.75 per dose | Maximum: 7M Doses <br><br> Minimum: 100 Doses | | |
| 17. | Tetanus and Diphtheria (Td) vaccine <br><br> Min. Shelf Life: 12 Months <br> Fed. Excise Tax: $1.50 per dose | Maximum: 750,000 Doses <br><br> Minimum: 100 Doses | | |
| 18. | Tdap vaccine <br><br> Min. Shelf Life: 12 Months <br> Fed. Excise Tax: $2.25 per dose | Maximum: 5.5M Doses <br><br> Minimum: 100 Doses | | |
| 19. | Varicella vaccine <br> Min. Shelf Life: 12 Months <br> Min. Order Size: 10 Doses <br> Fed. Excise Tax: $0.75 per dose | Maximum: 10M Doses <br><br> Minimum: 10 Doses | | |
| 20. | Measles, Mumps & Rubella (MMR-V) and Varicella vaccine <br> Min. Shelf Life: 12 Months <br> Min. Order Size: 10 Doses <br> Fed. Excise Tax: $3.0 per dose | Maximum: 3.3M Doses <br><br> Guaranteed Min: 100 Doses | | |
| 21. | Meningococcal and Hib Vaccine (HibMenCY) <br> Min. Shelf Life: 12 Months <br> Fed. Excise Tax: $1.50 | Maximum: 50,000 Doses <br> Guaranteed Min: 100 Dose | | |
| Estimated Total based on Maximum Doses | | | | |

`

Appx8044

Solicitation No. 2014-N-15784

**B.1  Background:**  The Centers for Disease Control and Prevention (CDC) awards contracts for the purchase of standard commercial pediatric vaccines.  Vaccines are one of the most cost-effective ways to prevent disease and reduce healthcare costs. The Vaccine for Children (VFC) program, established pursuant to Section 13631 of the Omnibus Budget Reconciliation Act of 1993 (OBRA '93), guarantees federal support for the purchase and supply of sufficient quantities of vaccine to the States to cover a defined group of children.  The program helps assure the implementation of effective immunization practices and proper use of vaccines to achieve higher immunization coverage.  Children (18 years-of-age or younger) who qualify for immunization through the VFC purchase program include those who are (1) Medicaid-eligible, (2) without health insurance, (3) American Indian/Alaska native (as defined in Subsection (h)(3) of the OBRA '93), or (4) children with health insurance, which does not cover the cost of vaccines, if they receive their immunizations at a Federally-qualified health center or rural health clinic (as defined by the Social Security Act).  Health care providers who agree to certain requirements are eligible through the States to receive free vaccine through this VFC purchase program. The establishment of these contracts provides an opportunity to utilize VFC funds and Section 317 vaccine purchase direct assistance (DA) grant funds to obtain vaccines at prices below those available in the commercial market place.  In addition, States may opt to purchase additional quantities of vaccine under any resulting contract to provide immunizations for children who are not federally vaccine-eligible children.

This solicitation will result in firm-fixed price, indefinite delivery/indefinite quantity delivery contracts for the purchase of standard commercial vaccines described herein, manufactured under a current establishment and product license issued by the U.S. Food and Drug Administration (FDA) and as otherwise set forth herein.

**B.2  Definitions:**

        OBRA Orders – Vaccine orders under Section 1928(a) (2)(A) of the Social Security Act.

        317 Orders – Vaccine orders under Section 317(j) of the Public Health Service Act

        State and Local Orders – Vaccine orders placed by authorized immunization programs using state or local funds in accordance with Section 1928(d)(4)(B) of the Social Security Act

        Manufacturer – As defined in Subsection (h) (4) of the Social Security Act, means any corporation, organization, or institution, whether public or private, which Manufacturers, imports, processes, or distributes under its label any pediatric vaccine

        Awardees – Includes State health departments and certain local health agencies authorized to order hereunder.

`

Solicitation No. 2014-N-15784

# SECTION C - CONTRACT CLAUSES

**C.1.**   **52.212-5 Contract Terms and Conditions Required to Implement Statutes or Executive Orders— Commercial Items.** (SEPT 2013)

   (a) The Contractor shall comply with the following Federal Acquisition Regulation (FAR) clauses, which are incorporated in this contract by reference, to implement provisions of law or Executive orders applicable to acquisitions of commercial items:

   (1) 52.222-50, Combating Trafficking in Persons (Feb 2009) (22 U.S.C. 7104(g)).

   ___Alternate I (Aug 2007) of 52.222-50 (22 U.S.C. 7104(g)).

   (2) 52.233-3, Protest After Award (AUG 1996) (31 U.S.C. 3553).

   (3) 52.233-4, Applicable Law for Breach of Contract Claim (OCT 2004) (Pub. L. 108-77, 108-78).

   (b) The Contractor shall comply with the FAR clauses in this paragraph (b) that the Contracting Officer has indicated as being incorporated in this contract by reference to implement provisions of law or Executive orders applicable to acquisitions of commercial items:

   ☒ (1) 52.203-6, Restrictions on Subcontractor Sales to the Government (Sept 2006), with Alternate I (Oct 1995) (41 U.S.C. 253g and 10 U.S.C. 2402).

   ☒ (2) 52.203-13, Contractor Code of Business Ethics and Conduct (Apr 2010) (Pub. L. 110-252, Title VI, Chapter 1 (41 U.S.C. 251 note)).

   __ (3) 52.203-15, Whistleblower Protections under the American Recovery and Reinvestment Act of 2009 (June 2010) (Section 1553 of Pub. L. 111-5). (Applies to contracts funded by the American Recovery and Reinvestment Act of 2009.)

   __ (4) 52.204-10, Reporting Executive Compensation and First-Tier Subcontract Awards (Jul 2013) (Pub. L. 109-282) (31 U.S.C. 6101 note).

   __ (5) 52.204-11, American Recovery and Reinvestment Act—Reporting Requirements (Jul 2010) (Pub. L. 111-5).

   ☒ (6) 52.209-6, Protecting the Government's Interest When Subcontracting with Contractors Debarred, Suspended, or Proposed for Debarment. (Aug 2013) (31 U.S.C. 6101 note).

   __ (7) 52.209-9, Updates of Publicly Available Information Regarding Responsibility Matters (Jul 2013) (41 U.S.C. 2313).

   ☒ (8) 52.209-10, Prohibition on Contracting with Inverted Domestic Corporations (May 2012) (section 738 of Division C of Pub. L. 112-74, section 740 of Division C of Pub. L. 111-117, section 743 of Division D of Pub. L. 111-8, and section 745 of Division D of Pub. L. 110-161).

   __ (9) 52.219-3, Notice of HUBZone Set-Aside or Sole-Source Award (Nov 2011) (15 U.S.C. 657a).

   __ (10) 52.219-4, Notice of Price Evaluation Preference for HUBZone Small Business Concerns (JAN 2011) (if the offeror elects to waive the preference, it shall so indicate in its offer) (15 U.S.C. 657a).

   __ (11) [Reserved]

   __ (12)(i) 52.219-6, Notice of Total Small Business Set-Aside (Nov 2011) (15 U.S.C. 644).

   __ (ii) Alternate I (Nov 2011).

   __ (iii) Alternate II (Nov 2011).

   __ (13)(i) 52.219-7, Notice of Partial Small Business Set-Aside (June 2003) (15 U.S.C. 644).

   __ (ii) Alternate I (Oct 1995) of 52.219-7.

Solicitation No. 2014-N-15784

⬚  (iii) Alternate II (Mar 2004) of 52.219-7.

☒  (14) 52.219-8, Utilization of Small Business Concerns (Jul 2013) (15 U.S.C. 637(d)(2) and (3)).

☒  (15)(i) 52.219-9, Small Business Subcontracting Plan (Jul 2013) (15 U.S.C. 637(d)(4)).

⬚  (ii) Alternate I (Oct 2001) of 52.219-9.

⬚  (iii) Alternate II (Oct 2001) of 52.219-9.

⬚  (iv) Alternate III (Jul 2010) of 52.219-9.

⬚  (16) 52.219-13, Notice of Set-Aside of Orders (Nov 2011)(15 U.S.C. 644(r)).

⬚  (17) 52.219-14, Limitations on Subcontracting (Nov 2011) (15 U.S.C. 637(a)(14)).

⬚  (18) 52.219-16, Liquidated Damages—Subcontracting Plan (Jan 1999) (15 U.S.C. 637(d)(4)(F)(i)).

⬚  (19)(i) 52.219-23, Notice of Price Evaluation Adjustment for Small Disadvantaged Business Concerns (OCT 2008) (10 U.S.C. 2323) (if the offeror elects to waive the adjustment, it shall so indicate in its offer).

⬚  (ii) Alternate I (June 2003) of 52.219-23.

⬚  (20) 52.219-25, Small Disadvantaged Business Participation Program—Disadvantaged Status and Reporting (Jul 2013) (Pub. L. 103-355, section 7102, and 10 U.S.C. 2323).

⬚  (21) 52.219-26, Small Disadvantaged Business Participation Program— Incentive Subcontracting (Oct 2000) (Pub. L. 103-355, section 7102, and 10 U.S.C. 2323).

⬚  (22) 52.219-27, Notice of Service-Disabled Veteran-Owned Small Business Set-Aside (Nov 2011) (15 U.S.C. 657 f).

⬚  (23) 52.219-28, Post Award Small Business Program Representation (Jul 2013) (15 U.S.C. 632(a)(2)).

⬚  (24) 52.219-29, Notice of Set-Aside for Economically Disadvantaged Women-Owned Small Business (EDWOSB) Concerns (Jul 2013) (15 U.S.C. 637(m)).

⬚  (25) 52.219-30, Notice of Set-Aside for Women-Owned Small Business (WOSB) Concerns Eligible Under the WOSB Program (Jul 2013) (15 U.S.C. 637(m)).

⬚  (26) 52.222-3, Convict Labor (June 2003) (E.O. 11755).

⬚  (27) 52.222-19, Child Labor—Cooperation with Authorities and Remedies (Mar 2012) (E.O. 13126).

⬚  (28) 52.222-21, Prohibition of Segregated Facilities (Feb 1999).

⬚  (29) 52.222-26, Equal Opportunity (Mar 2007) (E.O. 11246).

⬚  (30) 52.222-35, Equal Opportunity for Veterans (Sep 2010)(38 U.S.C. 4212).

⬚  (31) 52.222-36, Affirmative Action for Workers with Disabilities (Oct 2010) (29 U.S.C. 793).

⬚  (32) 52.222-37, Employment Reports on Veterans (SEP 2010) (38 U.S.C. 4212).

⬚  (33) 52.222-40, Notification of Employee Rights Under the National Labor Relations Act (Dec 2010) (E.O. 13496).

⬚  (34) 52.222-54, Employment Eligibility Verification (JUL 2012). (Executive Order 12989). (Not applicable to the acquisition of commercially available off-the-shelf items or certain other types of commercial items as prescribed in 22.1803.)

⬚  (35)(i) 52.223-9, Estimate of Percentage of Recovered Material Content for EPA–Designated Items (May 2008) (42 U.S.C. 6962(c)(3)(A)(ii)). (Not applicable to the acquisition of commercially available off-the-shelf items.)

⬚  (ii) Alternate I (May 2008) of 52.223-9 (42 U.S.C. 6962(i)(2)(C)). (Not applicable to the acquisition of commercially available off-the-shelf items.)

⬚  (36) 52.223-15, Energy Efficiency in Energy-Consuming Products (DEC 2007) (42 U.S.C. 8259b).

Solicitation No. 2014-N-15784

___ (37)(i) 52.223-16, IEEE 1680 Standard for the Environmental Assessment of Personal Computer Products (DEC 2007) (E.O. 13423).

___ (ii) Alternate I (DEC 2007) of 52.223-16.

☒ (38) 52.223-18, Encouraging Contractor Policies to Ban Text Messaging While Driving (AUG 2011) (E.O. 13513).

___ (39) 52.225-1, Buy American Act—Supplies (Feb 2009) (41 U.S.C. 10a-10d).

___ (40)(i) 52.225-3, Buy American Act—Free Trade Agreements—Israeli Trade Act (Nov 2012) (41 U.S.C. chapter 83, 19 U.S.C. 3301 note, 19 U.S.C. 2112 note, 19 U.S.C. 3805 note, 19 U.S.C. 4001 note, Pub. L. 103-182, 108-77, 108-78, 108-286, 108-302, 109-53, 109-169, 109-283, 110-138, 112-41, 112-42, and 112-43).

___ (ii) Alternate I (Mar 2012) of 52.225-3.

___ (iii) Alternate II (Mar 2012) of 52.225-3.

___ (iv) Alternate III (Nov 2012) of 52.225-3.

☒ (41) 52.225-5, Trade Agreements (SEPT 2013) (19 U.S.C. 2501, *et seq.*, 19 U.S.C. 3301 note).

☒ (42) 52.225-13, Restrictions on Certain Foreign Purchases (June 2008) (E.O.'s, proclamations, and statutes administered by the Office of Foreign Assets Control of the Department of the Treasury).

___ (43) 52.225-26, Contractors Performing Private Security Functions Outside the United States (Jul 2013) (Section 862, as amended, of the National Defense Authorization Act for Fiscal Year 2008; 10 U.S.C. 2302 Note).

___ (44) 52.226-4, Notice of Disaster or Emergency Area Set-Aside (Nov 2007) (42 U.S.C. 5150).

___ (45) 52.226-5, Restrictions on Subcontracting Outside Disaster or Emergency Area (Nov 2007) (42 U.S.C. 5150).

___ (46) 52.232-29, Terms for Financing of Purchases of Commercial Items (Feb 2002) (41 U.S.C. 255(f), 10 U.S.C. 2307(f)).

___ (47) 52.232-30, Installment Payments for Commercial Items (Oct 1995) (41 U.S.C. 255(f), 10 U.S.C. 2307(f)).

☒ (48) 52.232-33, Payment by Electronic Funds Transfer—System for Award Management (Jul 2013) (31 U.S.C. 3332).

___ (49) 52.232-34, Payment by Electronic Funds Transfer—Other than System for Award Management (Jul 2013) (31 U.S.C. 3332).

___ (50) 52.232-36, Payment by Third Party (Jul 2013) (31 U.S.C. 3332).

___ (51) 52.239-1, Privacy or Security Safeguards (Aug 1996) (5 U.S.C. 552a).

___ (52)(i) 52.247-64, Preference for Privately Owned U.S.-Flag Commercial Vessels (Feb 2006) (46 U.S.C. Appx. 1241(b) and 10 U.S.C. 2631).

___ (ii) Alternate I (Apr 2003) of 52.247-64.

(c) The Contractor shall comply with the FAR clauses in this paragraph (c), applicable to commercial services, that the Contracting Officer has indicated as being incorporated in this contract by reference to implement provisions of law or Executive orders applicable to acquisitions of commercial items:

[*Contracting Officer check as appropriate.*]

___ (1) 52.222-41, Service Contract Act of 1965 (Nov 2007) (41 U.S.C. 351, *et seq.*).

___ (2) 52.222-42, Statement of Equivalent Rates for Federal Hires (May 1989) (29 U.S.C. 206 and 41 U.S.C. 351, *et seq.*).

`

Solicitation No. 2014-N-15784

__ (3) 52.222-43, Fair Labor Standards Act and Service Contract Act—Price Adjustment (Multiple Year and Option Contracts) (Sep 2009) (29 U.S.C. 206 and 41 U.S.C. 351, *et seq.*).

__ (4) 52.222-44, Fair Labor Standards Act and Service Contract Act—Price Adjustment (Sep 2009) (29 U.S.C. 206 and 41 U.S.C. 351, *et seq.*).

__ (5) 52.222-51, Exemption from Application of the Service Contract Act to Contracts for Maintenance, Calibration, or Repair of Certain Equipment—Requirements (Nov 2007) (41 351, *et seq.*).

__ (6) 52.222-53, Exemption from Application of the Service Contract Act to Contracts for Certain Services—Requirements (Feb 2009) (41 U.S.C. 351, *et seq.*).

__ (7) 52.222-17, Nondisplacement of Qualified Workers (JAN 2013) (E.O.13495).

__ (8) 52.226-6, Promoting Excess Food Donation to Nonprofit Organizations (Mar 2009) (Pub. L. 110-247).

__ (9) 52.237-11, Accepting and Dispensing of $1 Coin (Sept 2008) (31 U.S.C. 5112(p)(1)).

(d) *Comptroller General Examination of Record*. The Contractor shall comply with the provisions of this paragraph (d) if this contract was awarded using other than sealed bid, is in excess of the simplified acquisition threshold, and does not contain the clause at 52.215-2, Audit and Records—Negotiation.

(1) The Comptroller General of the United States, or an authorized representative of the Comptroller General, shall have access to and right to examine any of the Contractor's directly pertinent records involving transactions related to this contract.

(2) The Contractor shall make available at its offices at all reasonable times the records, materials, and other evidence for examination, audit, or reproduction, until 3 years after final payment under this contract or for any shorter period specified in FAR Subpart 4.7, Contractor Records Retention, of the other clauses of this contract. If this contract is completely or partially terminated, the records relating to the work terminated shall be made available for 3 years after any resulting final termination settlement. Records relating to appeals under the disputes clause or to litigation or the settlement of claims arising under or relating to this contract shall be made available until such appeals, litigation, or claims are finally resolved.

(3) As used in this clause, records include books, documents, accounting procedures and practices, and other data, regardless of type and regardless of form. This does not require the Contractor to create or maintain any record that the Contractor does not maintain in the ordinary course of business or pursuant to a provision of law.

(e)(1) Notwithstanding the requirements of the clauses in paragraphs (a), (b), (c), and (d) of this clause, the Contractor is not required to flow down any FAR clause, other than those in this paragraph (e)(1) in a subcontract for commercial items. Unless otherwise indicated below, the extent of the flow down shall be as required by the clause—

(i) 52.203-13, Contractor Code of Business Ethics and Conduct (Apr 2010) (Pub. L. 110-252, Title VI, Chapter 1 (41 U.S.C. 251 note)).

(ii) 52.219-8, Utilization of Small Business Concerns (Jul 2013) (15 U.S.C. 637(d)(2) and (3)), in all subcontracts that offer further subcontracting opportunities. If the subcontract (except subcontracts to small business concerns) exceeds $650,000 ($1.5 million for construction of any public facility), the subcontractor must include 52.219-8 in lower tier subcontracts that offer subcontracting opportunities.

(iii) 52.222-17, Nondisplacement of Qualified Workers (JAN 2013) (E.O. 13495). Flow down required in accordance with paragraph (l) of FAR clause 52.222-17.

(iv) 52.222-26, Equal Opportunity (Mar 2007) (E.O. 11246).

`

Appx8049

Solicitation No. 2014-N-15784

(v) 52.222-35, Equal Opportunity for Veterans (Sep 2010) (38 U.S.C. 4212).

(vi) 52.222-36, Affirmative Action for Workers with Disabilities (Oct 2010) (29 U.S.C. 793).

(vii) 52.222-40, Notification of Employee Rights Under the National Labor Relations Act (Dec 2010) (E.O. 13496). Flow down required in accordance with paragraph (f) of FAR clause 52.222-40.

(viii) 52.222-41, Service Contract Act of 1965 (Nov 2007) (41 U.S.C. 351, *et seq.*).

(ix) 52.222-50, Combating Trafficking in Persons (Feb 2009) (22 U.S.C. 7104(g)).

___Alternate I (Aug 2007) of 52.222-50 (22 U.S.C. 7104(g)).

(x) 52.222-51, Exemption from Application of the Service Contract Act to Contracts for Maintenance, Calibration, or Repair of Certain Equipment-Requirements (Nov 2007) (41 U.S.C. 351, *et seq.*).

(xi) 52.222-53, Exemption from Application of the Service Contract Act to Contracts for Certain Services-Requirements (Feb 2009) (41 U.S.C. 351, *et seq.*).

(xii) 52.222-54, Employment Eligibility Verification (JUL 2012).

(xiii) 52.225-26, Contractors Performing Private Security Functions Outside the United States (Jul 2013) (Section 862, as amended, of the National Defense Authorization Act for Fiscal Year 2008; 10 U.S.C. 2302 Note).

(xiv) 52.226-6, Promoting Excess Food Donation to Nonprofit Organizations (Mar 2009) (Pub. L. 110-247). Flow down required in accordance with paragraph (e) of FAR clause 52.226-6.

(xv) 52.247-64, Preference for Privately Owned U.S.-Flag Commercial Vessels (Feb 2006) (46 U.S.C. Appx. 1241(b) and 10 U.S.C. 2631). Flow down required in accordance with paragraph (d) of FAR clause 52.247-64.

(2) While not required, the contractor may include in its subcontracts for commercial items a minimal number of additional clauses necessary to satisfy its contractual obligations.

(End of clause)

*Alternate I (Feb 2000)*. As prescribed in 12.301(b)(4)(i), delete paragraph (d) from the basic clause, redesignate paragraph (e) as paragraph (d), and revise the reference to "paragraphs (a), (b), (c), or (d) of this clause" in the redesignated paragraph (d) to read "paragraphs (a), (b), and (c) of this clause."

*Alternate II (Jul 2012)*. As prescribed in 12.301(b)(4)(ii), substitute the following paragraphs (d)(1) and (e)(1) for paragraphs (d)(1) and (e)(1) of the basic clause as follows:

(d)(1) The Comptroller General of the United States, an appropriate Inspector General appointed under section 3 or 8G of the Inspector General Act of 1978 (5 U.S.C. App.), or an authorized representative of either of the foregoing officials shall have access to and right to—

(i) Examine any of the Contractor's or any subcontractors' records that pertain to, and involve transactions relating to, this contract; and

(ii) Interview any officer or employee regarding such transactions.

(e)(1) Notwithstanding the requirements of the clauses in paragraphs (a), (b), and (c), of this clause, the Contractor is not required to flow down any FAR clause in a subcontract for commercial items, other than—

(i) *Paragraph (d) of this clause*. This paragraph flows down to all subcontracts, except the authority of the Inspector General under paragraph (d)(1)(ii) does not flow down; and

(ii) *Those clauses listed in this paragraph (e)(1)*. Unless otherwise indicated below, the extent of the flow down shall be as required by the clause—

`

Appx8050

Solicitation No. 2014-N-15784

(A) 52.203-13, Contractor Code of Business Ethics and Conduct (Apr 2010) (Pub. L. 110-252, Title VI, Chapter 1 (41 U.S.C. 251 note)).

(B) 52.203-15, Whistleblower Protections Under the American Recovery and Reinvestment Act of 2009 (June 2010) (Section 1553 of Pub. L. 111-5).

(C) 52.219-8, Utilization of Small Business Concerns (Jul 2013) (15 U.S.C. 637(d)(2) and (3)), in all subcontracts that offer further subcontracting opportunities. If the subcontract (except subcontracts to small business concerns) exceeds $650,000 ($1.5 million for construction of any public facility), the subcontractor must include 52.219-8 in lower tier subcontracts that offer subcontracting opportunities.

(D) 52.222-26, Equal Opportunity (Mar 2007) (E.O. 11246).

(E) 52.222-35, Equal Opportunity for Veterans (Sep 2010) (38 U.S.C. 4212).

(F) 52.222-36, Affirmative Action for Workers with Disabilities (Oct 2010) (29 U.S.C. 793).

(G) 52.222-40, Notification of Employee Rights Under the National Labor Relations Act (Dec 2010) (E.O. 13496). Flow down required in accordance with paragraph (f) of FAR clause 52.222-40.

(H) 52.222-41, Service Contract Act of 1965 (Nov 2007) (41 U.S.C. 351, *et seq.*).

(I) 52.222-50, Combating Trafficking in Persons (Feb 2009) (22 U.S.C. 7104(g)).

(J) 52.222-51, Exemption from Application of the Service Contract Act to Contracts for Maintenance, Calibration, or Repair of Certain Equipment—Requirements (Nov 2007) (41 U.S.C. 351, *et seq.*).

(K) 52.222-53, Exemption from Application of the Service Contract Act to Contracts for Certain Services—Requirements (Feb 2009) (41 U.S.C. 351, *et seq.*).

(L) 52.222-54, Employment Eligibility Verification (Jul 2012).

(M) 52.226-6, Promoting Excess Food Donation to Nonprofit Organizations. (Mar 2009) (Pub. L. 110-247). Flow down required in accordance with paragraph (e) of FAR clause 52.226-6.

(N) 52.247-64, Preference for Privately Owned U.S.-Flag Commercial Vessels (Feb 2006) (46 U.S.C. Appx. 1241(b) and 10 U.S.C. 2631). Flow down required in accordance with paragraph (d) of FAR clause 52.247-64.

**C.2   The following  FAR Clause is incorporated by reference:**

| **FAR SOURCE** | **TITLE AND DATE** |
| --- | --- |
| 52.212-4 | Contract Terms and Conditions—Commercial Items (Jul 2013) |

**C.3      SPECIAL CLAUSES**

**C.3.1.     Shelf Life**

Vaccine provided under this contract shall have a minimum 12 month shelf life remaining upon delivery to the consignee, or as specified within each Contract Line Item Number (See Section B, Continuation of SF 1449).

**C.3.2.     Packaging and Packing Requirements**

1. Packaging:   All items shall be packaged in standard commercial manner.

Appx8051

Solicitation No.  2014-N-15784

2.  Packing:

a.  Product shall be packed to ensure maintenance of FDA recommended temperature during transit and safe arrival at destination.  An electronic temperature monitoring device is required with each shipment unless Contractor has obtained prior approval from CDC to use an alternative monitoring method.

b.  Contractor will provide the Contracting Officer Representative (COR) with documentation that explains the cause of each temperature excursion and stability data used by the contractor to determine if the cold chain was adversely affected by temperature variance.  Upon review of data provided, CDC will notify appropriate parties if the vaccine is accepted or rejected

### C.3.3.    Contract Period of Performance

The contract period of performance shall begin on the date of award and shall end 12 months, later (CDC will provide Contractor with official end date at time of award.)

### C.3.4.    Time of Delivery

Delivery is required to be made at destination within 15 working days after receipt of electronic, written, or telephonic order (telephone orders to be confirmed in writing).

### C.3.5.    Place of Delivery

The Contractor shall be required to deliver vaccines F.O.B. Destination, as directed by delivery orders to the CDC centralized distribution locations currently in Aurora, CO and Memphis, TN.  The Contractor shall be required to deliver frozen vaccines F.O.B. destination as directed by delivery orders.

### C.3.6.    Amendment to OBRA Statue

In the event of an amendment of 42 U.S.C. Section 1396(s), any terms of the contract affected by such an amendment will be modified in accordance with the revised statute.  The Contracting Officer and the Contractor shall meet to discuss such modifications to the contract before finalization of any changes to the contract.

### C.3.7.    Product Licensure

a.  The vaccines produced and delivered under this contract shall be manufactured under a current establishment and product license issued by the Food and Drug Administration as indicated below:

____  _____

b.  The Current Good Manufacturing Practice Regulations (CGMPR's) (21CFR Parts 210 211) will be the standard to be applied for manufacturing, processing and packing of drugs, chemicals, biologicals, and reagents.

c.  The Contractor shall advise the Contracting Officer immediately of any relocation of his prime manufacturing facility or the relocation of any subcontractor's facility, and if at any time during the life of the contract, the item listed under this contract fails to meet CGMPR's and/or a negative Food and Drug Administration Quality Assurance Evaluation is received; the contract may be terminated, in whole or in part, without further liability to the Government.

`

**Appx8052**

Solicitation  No.  2014-N-15784

## C.3.8.  Placement of Orders

a.    All vaccine under this contract will be ordered by delivery orders.  Orders shall be placed by the Health and Human Services (HHS), the Centers for Disease Control and Prevention (CDC), on behalf of eligible awardees or by Awardees. Orders may be placed by CDC by telephone (confirmed in writing) or by electronic transfer. Contractors should be able to interface with the CDC Electronic Vaccine Ordering System.

b.    Orders shall be submitted to the Ordering Address specified in Contract Clauses Paragraph C.1.12; Contractor's Ordering/Payment Address and shall contain the following minimum information:

1.  Date of order
2.  Contract number and order number;
3.  Item description, quantity and unit price
4.  Delivery or performance date;
5.  Place of delivery or performance (including consignee);
6.  Packaging, packing and shipping instruction, if any;
7.  Accounting and appropriation data;
8.  Statement to indicate if partial deliveries are not acceptable; (lack of a statement shall be construed to mean partial deliveries are acceptable and payment shall be made as required elsewhere herein)
9.  Any other pertinent data.

## C.3.9.  Delivery Order Limitations

a.  <u>Minimum Order Size</u>: Individual delivery orders issued under this contract must meet the minimum order size as specified within each Contract Line Item Number (See    Section B, Continuation of SF 1449).  When the Government requires supplies covered by this contract in amounts less than stated above, the Government is not obligated to purchase, nor is the Contractor obligated to furnish those supplies under this contract.

b   <u>Maximum Order:</u> The maximum quantity specified within each Contract Line Item Number (See Section B, Continuation of SF1449) is the maximum number of doses that may be ordered during the contract period of performance.  Contractors are advised that the maximum quantity represents their commitment to the Government under their contract.

c.   Delivery Orders shipments:

1.  The Government reserves the right to reject vaccine doses that exceed delivery order requirements.  The Government shall notify the Contractor when excess doses have been delivered to distribution sites.  The Contractor is responsible for contacting the distribution site to make arrangement for the return of the excess doses and will be responsible for shipping cost associated with their return.

2.  Bulk order shipments, when possible, shall consist of

a. One NDC per skid

b. Full skid quantities with same lot number

c. Full case quantities (when total order size allows)

Appx8053

Solicitation No. 2014-N-15784

**C.3.10.   FAR 52.216-18. Ordering (Oct 1995)**

    a.  Any supplies and services to be furnished under this contract shall be ordered by issuance of delivery orders or task orders by the individuals or activities designated in the Schedule. Such orders may be issued from the effective date of the contract through the expiration date of the contract.

    b.  All delivery orders or task orders are subject to the terms and conditions of this contract. In the event of conflict between a delivery order or task order and this contract, the contract shall control.

    c.  If mailed, a delivery order or task order is considered "issued" when the Government deposits the order in the mail. Orders may be issued orally or by written telecommunications only if authorized in the Schedule.

**C.3.11.   FAR 52.216-22 Indefinite Quantity (Oct 1995)**

    a.  This is an indefinite quantity contract for the supplies specified and effective for the period stated, in the Schedule. The quantities of supplies and services specified in the Schedule are estimates only and are not purchased by this contract.

    b.  Delivery or performance shall be made only as authorized by orders issued in accordance with the Ordering clause. The Contractor shall furnish to the Government, when and if ordered, the supplies specified in the Schedule up to and including the quantity designated in the Schedule as the "maximum." The Government shall order at least the quantity of supplies designated in the Schedule as the "minimum."

    c.  Except for any limitations on quantities in the Delivery Order Limitations clause or in the Schedule, there is no limit on the number of orders that may be issued. The Government may issue orders requiring delivery to multiple destinations or performance at multiple locations.

    d.  Any order issued during the effective period of this contract and not completed within that period shall be completed by the Contractor within the time specified in the order. The contract shall govern the Contractor's and Government's rights and obligations with respect to that order to the same extent as if the order were completed during the contract's effective period; provided, that the Contractor shall not be required to make any deliveries under this contract after fifteen (15) working days beyond the expiration date of the contract.

**C.3.12.  Contractor's Ordering/Payment Address**

Submission of all orders for Contractor's vaccines and payment of invoices shall be addressed as referenced below:

    ORDERING ADRESS        PAYMENT ADDRESS

    _____    _____

    _____    _____

    _____    _____

`

Appx8054

## C.3.13.   Invoice Submission

1. Invoice submission under this contract will be made as follows:

    a. Federal Government: The Contractor shall submit invoices via Electronic Data Interchange (EDI) in a format to be mutually agreed upon between CDC and the Contractor.

    b. Awardees: The Contractor shall submit one hard copy of its invoice(s) to the address specified on the delivery order.

    c. The Contractor agrees to include the following information on each invoice:

      1. Contractor's name and invoice date;

      2. Contract number, or other authorization for delivery of property and/or services;

      3. Description, cost or price, and quantity of property and/or services actually delivered or rendered;

      4. Shipping and payment terms;

      5. Other substantiating documentation or information as required by the contract;

      6. Name where practicable, title, phone number, and complete mailing address of responsible official to whom payment is to be sent.

      7. NDC and Lot number of vaccine vials shipped;

      8. CDC accounting and appropriation data as described on the delivery order.

      9. Electronic Funds Transfer (EFT) and Taxpayer Identification Number (TIN)

## C.3.14.   Method of Payment

    a. Federal Government:  The Government will use electronic funds transfer to the maximum extent possible when making payment under this contract IAW/FAR Clause 52.232-33, payment by Electronic Funds Transfer - Central Contractor Registration.

    b. Awardees:  By check

## C.3.15.   Contract Officer Representative (COR)

A COR will be designated in writing by the Contracting Officer to serve during the period of performance of the contract. The COR shall be responsible for guidance in regard to the technical aspect of the contract, provide a point for liaison between the Contractor and other Government agencies and be the general focal point to address technical and logistical problems relating to the performance under the contract. The COR shall not have the

`

**Appx8055**

authority to make any commitments or authorize any changes which affect the contract price, terms and/or conditions; any such changes shall be referred to the Contracting Officer for action.

## C.3.16.  Return Privileges

Return privileges for credit, reimbursement or exchange do not apply to this contract except vaccines not conforming to the specifications set forth herein, which are limited to credit or exchange only.

## C.3.17.  Restrictions on Use of Vaccines

Vaccines obtained under this contract shall be used only in children 18 years of age and younger as authorized under Section 1928 of the Social Security Act.   Sale of such vaccine to any person or entity or reimbursement of vaccine costs is strictly prohibited.  Free distribution of such vaccine is also prohibited, except where such vaccine is administered in the context of Federal and Awardee immunization program activities.

## C.3.18.  Federal Excise Tax Credit

Negotiated prices for the vaccines included in this Contract may include a Federal Excise Tax (See Continuation of SF 1449 for applicable Contract Line Item Numbers).  If for any reason the vaccine is returned (other than for resale) or destroyed, the Contractor shall within 6 months following the date the vaccine is returned or destroyed, file a claim for credit or refund relative to any tax previously paid on such vaccine.  The Contractor agrees to credit or refund the amount of such excise tax to the purchaser to the extent that the Contractor receives a credit or refund from the Federal Government.  Any such credit or refund to the purchaser is expressly conditioned upon the authorized purchaser providing a written summary of events leading to the request for credit or refund.  The purchaser shall return all undistributed vaccine to the Contractor for proper disposal, unless destruction of the vaccine renders return impossible.  If destruction of the vaccine renders return impossible and is therefore destroyed by the purchaser, the authorized purchaser must provide a written summary of events to the Contractor within 30 days of said destruction.  If a contract is in place with the Contractor at the time when a credit or refund is due; the purchaser may elect to receive vaccine which will be purchased at the current contract price in lieu of a cash payment.  Otherwise, the Contractor shall refund the amount due to the purchaser's account.  If a credit or refund is issued by the Contractor for state or local funds, it shall be submitted to the state or local public health entity identified in the request for FET credit. If a credit or refund is issued by the Contractor to the Federal Funds account, it shall contain the Contractor's DUNS and TIN/EIN and shall be submitted either via EDI (credit) or to the following address (check):

> Centers for Disease Control and Prevention
>
> Financial Management Office
>
> Attn: Debt Management Branch
>
> P.O. Box 15580
>
> Atlanta, GA 30333

## C.3.19.  Delinquent Delivery Report

The Contractor shall provide CDC with a weekly electronic listing of all CDC orders that have not been shipped within the agreed upon delivery schedule. The report shall include the following information: project name, order number, date of order, and status of order in number of pending/undelivered doses.  The report shall also provide an explanation as to the cause for the delinquent delivery as well as when the vaccine will be delivered.  This notification shall not relieve the contractor from meeting its obligations under the contract and shall not limit the

Government's right to seek relief for any breach of contract for failure to perform, including termination for cause.

## C.3.20.   Biological Surveillance Data Reports

The Contractor shall submit a monthly report of historical sales data for the United States by month specifying the name of the vaccine, NDC #, and the total number of doses sold (segregated by CDC and non-CDC sales), in a standardized format acceptable to the Contractor and the CDC.  The report shall be submitted electronically to the COR by the 15th of the month. Information related to vaccine sales through CDC contracts is not considered proprietary.  CDC acknowledges that those reports pertaining to private sales unrelated to this contract are confidential and proprietary information of the Contractor, and shall not use reports for any purpose other than CDC's internal tracking and reporting purposes and shall not further disclose such reports without the Contractor's prior written consent unless required by the law or other Federal authority; provided that, no Contractor authorization shall be required for the CDC to include the data from the Contractor's report in a report in which aggregated data from multiple Contractors is summarized, so long as, with respect to multi-sourced products, the CDC's aggregated report does not include any data which could be individually identified as the Contractor's.  In the event that CDC is required by law or other Federal authority to disclose such reports required to be held confidential hereunder, CDC shall notify the Contractor prior to making such disclosure in accordance with law or other Federal authority.

### Data Reports to Manufacturers

The Government will submit monthly reports of all vaccine data specifying doses by project, zip code, and NDC # in a standardized format.  For all vaccines except direct ship vaccines, the Government shall provide distribution data.  Because the Government does not distribute direct ship vaccines, purchase data will be provided.  The reports shall be submitted electronically to the Contractor by the 15th of the month for the previous month.  The Government shall also provide the Contractor with an annual Vaccine Ordering Forecasting Application (VOFA)/Vaccine Tracking System (VTrckS) spend plan for each grantee and an annual VFC providers list during the first quarter of the fiscal year.

## C.3.21.   Prohibitions on Inducements

The Contractor is expressly prohibited from offering, providing or arranging inducements of any kind to providers or authorized purchasers ordering vaccine under this contract for the purpose of obtaining orders for vaccine.  Examples of such inducements include, but are not limited to: entertainment, meals, and free or reduced prices for syringes, vaccines, or other medical products or supplies.  If the Contractor has entered into similar agreements with the authorized purchasers which offer inducements relative to its commercial business, these agreements must be clear that they do not apply to purchases made under the CDC Federal contracts.

## C.3.22.   Contract Changes

Notwithstanding FAR Clause 52.212-4(c), Changes, the parties hereby agree that modifications for incremental funding and other administrative changes (e.g., changes to CDC accounting data) that do not affect the terms and conditions of the contract may be made unilaterally by the CDC.

## C.3.23.   Vaccine images

Upon contract award, the Contractor agrees to provide via email camera-ready vaccine product images in .pdf format and written authorization for CDC to use the images to the COR.  CDC will use the images to illustrate the Contractor's products on the CDC vaccine ordering system.  The Contractor agrees to provide CDC

Solicitation No. 2014-N-15784

with updated product images if there is a change in packaging and vaccine images for new NDCs added to the contract during the period of performance.

## C.3.24.  Advance Notice of Supply Issues

The Contractor agrees to provide advance notification to COR and the CDC Contracting Officer of any supply issue which will result in the Contractor's failure to deliver vaccine within the agreed upon delivery schedule specified in the contract.  This notification shall be given as soon as the Contractor becomes aware of the scope of the problem that will impede the timely delivery of vaccine.  This notification shall not relieve the contractor from meeting its obligations under the contract and shall not limit the Government's right to seek relief for any breach of contract for failure to perform, including termination for cause.  Furthermore, any deviation from the delivery schedule due to a vaccine supply issue will demonstrate reasonably equal treatment with respect to the fulfillment of orders between CDC and the contracting non-government customers.

## C.3.25.  Authorized Distribution of Record (ADR) Agreements

In accordance with the Prescription Drug Marketing Act (PDMA) of 1998, it is requested that all suppliers provide a written statement included as an attachment in Section D of this solicitation, which designates the CDC as the ADR for all vaccines subject to distribution under this contract.

## C.3.26  Use of VFC Provider Lists and Distribution of Material

a.  Contractors are prohibited from utilizing VFC providers' lists obtained from any source for any mailing or other communication with VFC providers, except as approved in writing by the CDC COR. In addition, contractors are prohibited from otherwise communicating with VFC providers regarding the VFC program, except as approved in writing by the CDC COR.  To the extent that Contractors have established relationships with VFC providers or authorized purchasers under this contract that are independent from the VFC program, communications related to such independent relationships are not covered by this provision and do not require CDC consent.

b.  Contractors are prohibited from providing names and/or addresses of VFC providers to any third party, except as needed to comply with the terms of this contract, in which cases the CDC COR shall be notified in writing.

c.  Any Contractor that ships vaccine directly to VFC providers is prohibited from inserting any promotional or other material that is promotional in nature for any product that the Contractor produces, into shipping containers for vaccine purchased under this contract, except for material related to use of the vaccine as approved in writing by the CDC COR.  Additionally any shipping container inserts that are required, such as handling instructions or educational materials, should not contain any promotional material as part of its content.

## C.3.27.  New FDA Product License

Manufacturers who receive a new FDA product license for a vaccine already included with the scope of a VFC resolution may have the new product added to its contract by modification if it is determined that adding the product is in the best interest of the Government.  Such new products must be consistent with VFC formulary schedules (regarding periodicity and dosage regimens) as established for the vaccines by the Advisory Committee on Immunization Practices (ACIP). New FDA licensed product added to this contract must comply with Price Changes clause.

Solicitation No. 2014-N-15784

### C.3.28.   ACIP Approved Product

When a new vaccine product is approved by the ACIP for inclusion in the VFC Formulary, the Manufacturer of such product may have the new product added to its contract by modification if it is determined that adding the product is in the best interest of the Government.  This would include new vaccines, new indications or new formulations for existing products or new dosing regimens for an existing product.  New products must comply with Price Changes clause.

### C.3.29.   Price Changes

All price change effective dates shall be approved by the CDC Contracting Officer and shall occur on the first day of the month.

### C.3.21   52.215-20   Requirements for Certified Cost or Pricing Data and Data Other Than Certified Cost or Pricing Data. (Oct 2010)

(a) Exceptions from certified cost or pricing data.
(1) In lieu of submitting certified cost or pricing data, offerors may submit a written request for exception by submitting the information described in the following paragraphs.The Contracting Officer may require additional supporting information, but only to the extent necessary to determine whether an exception should be granted, and whether the price is fair and reasonable.
(i) *Identification of the law or regulation establishing the price offered*. If the price is controlled under law by periodic rulings, reviews, or similar actions of a governmental body, attach a copy of the controlling document, unless it was previously submitted to the contracting office.
(ii) *Commercial item exception*. For a commercial item exception, the offeror shall submit, at a minimum, information on prices at which the same item or similar items have previously been sold in the commercial market that is adequate for evaluating the reasonableness of the price for this acquisition. Such information may include—
(A) For catalog items, a copy of or identification of the catalog and its date, or the appropriate pages for the offered items, or a statement that the catalog is on file in the buying office to which the proposal is being submitted. Provide a copy or describe current discount policies and price lists (published or unpublished), *e.g.,* wholesale, original equipment manufacturer, or reseller. Also explain the basis of each offered price and its relationship to the established catalog price, including how the proposed price relates to the price of recent sales in quantities similar to the proposed quantities;
(B) For market-priced items, the source and date or period of the market quotation or other basis for market price, the base amount, and applicable discounts. In addition, describe the nature of the market;
(C) For items included on an active Federal Supply Service Multiple Award Schedule contract, proof that an exception has been granted for the schedule item.
(2) The offeror grants the Contracting Officer or an authorized representative the right to examine, at any time before award, books, records, documents, or other directly pertinent records to verify any request for an exception under this provision, and the reasonableness of price. For items priced using catalog or market prices, or law or regulation, access does not extend to cost or profit information or other data relevant solely to the offeror's determination of the prices to be offered in the catalog or marketplace.
(b) *Requirements for certified cost or pricing data*. If the offeror is not granted an exception from the requirement to submit certified cost or pricing data, the following applies:
(1) The offeror shall prepare and submit certified cost or pricing data, data other than certified cost or pricing data, and supporting attachments in accordance with the instructions contained in Table 15-2 of FAR 15.408, which is incorporated by reference with the same force and effect as though it were inserted here in full text. The

Solicitation No. 2014-N-15784

instructions in Table 15-2 are incorporated as a mandatory format to be used in this contract, unless the Contracting Officer and the Contractor agree to a different format and change this clause to use Alternate I.
(2) As soon as practicable after agreement on price, but before contract award (except for unpriced actions such as letter contracts), the offeror shall submit a Certificate of Current Cost or Pricing Data, as prescribed by FAR 15.406-2.
(End of provision)

*Alternate I (Oct 2010).* As prescribed in 15.408(l) (and see 15.403-5(b)(1)), substitute the following paragraph (b)(1) for paragraph (b)(1) of the basic provision:

(b)(1) The offeror shall submit certified cost or pricing data, data other than certified cost or pricing data, and supporting attachments in the following format: [Insert description of the data and format that are required, and include access to records necessary to permit an adequate evaluation of the proposed price in accordance with 15.408, Table 15-2, Note 2. The description may be inserted at the time of issuing the solicitation, or the Contracting Officer may specify that the offeror's format will be acceptable, or the description may be inserted as the result of negotiations.]:

   (a)  Submit the cost portion of the proposal via the following electronic media: [*electronic spreadsheet*]

## I.3    FAR 52.215-21 Alternate III Requirements for Cost or Pricing Data or Information Other Than Cost or Pricing Data - Modifications - Alternate III (Oct 1997)

(c) Submit the cost portion of the proposal via the following electronic media: [*electronic spreadsheet*]

`

**Appx8060**

# SECTION D - CONTRACT DOCUMENTS, EXHIBITS OR ATTACHMENTS

**D.1    Websites.** Additional information can be found at www.fob.gov, www.cdc.gov/vaccines; and http://csrc.nist.gov/publications/nistpubs/

**D.2    Attachment A -   Authorized Distributor of Record (ADR) Agreement:**  Offerors shall complete and return the following agreement with their proposals.

Appx8061

***AUTHORIZED DISTRIBUTOR OF RECORD (ADR) AGREEMENT***

This Agreement hereby represents the ongoing relationship between the supplier named below ("MANUFACTURER / SUPPLIER") and the Centers for Disease Control and Prevention , herein after referred to as CDC, to establish and designate CDC as an Authorized Distributor of Record (ADR) as set forth in the Prescription Drug Marketing Act (PDMA) of 1988 as well as in the implementing federal regulations found at 21 CFR Part 203. CDC here after agrees to comply with all applicable state and federal laws to ensure continued status of this relationship. To further meet the requirements of the PDMA, please forward with the signed agreement an attachment with a list of the specific products that CDC is authorized to distribute or a statement that the CDC is an ADR for the manufacturer's entire product line. Specific products should be identified by the pharmaceutical / vaccine name, dosage form, and strength of the drug and the NDC number.

Check the box that applies:

__ The Distributor is the ADR for Supplier's entire product line.

__ The Distributor is the ADR for the products listed on the attachment 1-A.

This agreement shall be valid from the date of dual execution until termination by either party on ninety (90) days written notice. This agreement shall not abridge, supplant, modify, or in any way alter any other pre-existing distribution agreement or any future agreements that may, from time to time, be executed in the furtherance of the business relationship between Manufacturer/ Supplier and the CDC.

This agreement confers no rights upon CDC other than to designate CDC as an Authorized Distributor of Record for Manufacturer/ Supplier. This agreement is not intended to be, nor shall it be, interpreted as a sales agreement or any other type of agreement other than to represent an "ongoing relationship" within the meaning set forth in 21 CFR Part 203.3(u).

*By affixing my signature below, I do hereby acknowledge and represent that I have read this Agreement in its entirety, that I understand its terms, that I am duly authorized to bind my organization to the requirements detailed in the above Agreement and that I agree to ensure that my organization will adhere to such requirement for the duration herein stated.*

Authorized Distributor of Record: **Centers for Disease Control and Prevention (CDC)**

Authorized Signature:_____

Print Name:  _Alan W. Sims, U.S. Government Contracting Officer_

Date: _____

--------------------------------------------------------------------------------------------------------

Manufacturer / Supplier: _____

Authorized Signature: _____

Print Name: _____

Date: _____

Page 21

`

**Appx8062**

# SECTION E - SOLICITATION PROVISIONS

**E.1    The following provisions are added by reference:**

| FAR SOURCE | TITLE AND DATE |
|---|---|
| 52.212-1 | Instructions to Offerors - Commercial Items (Jul 2013) |
| 52.212-3 | Offeror Representations and Certifications - Commercial Items (Aug 2013) |
| 52.232-18 | Availability of Funds (Apr 1984) |

**E.2    Paragraph ( c) of 52.212-1, Period for acceptance of offers, is deleted in its entirety and the following is substituted therefore:**

( c) *Period for acceptance of offers*.  The offeror agrees to hold the prices in its offer firm for 60 calendar days from the date specified for receipt of offers, unless another time period is specified in an addendum to the solicitation.

**E.3    FAR  52.233-2  Service of Protest (AUG 1996)**

a.    Protests, as defined in section 33.101 of the Federal Acquisition Regulation, that are filed directly with the agency, and copies of any protests that are filed with the General Accounting Office (GAO), shall be served on the Contracting Officer (addressed as follows) by obtaining written and dated acknowledgment of receipt from:

> Centers for Disease Control & Prevention
> Attn: Berta Biltz
> 2920 Brandywine Road, Room 3000
> Atlanta, GA 30341-5539

b.    The copy of any protest shall be received in the office designated above within one day of filing a protest with the GAO.

**E.4    INSTRUCTIONS FOR SUBMISSION OF  OFFERS:**

a.    Offerors shall submit their offers on the basis of Firm-Fixed Price by **Midnight, February 10, 2014.**

b.    Offers shall be submitted electronically (via e-mail) in MS Word or MS Excel files to Bbiltz@cdc.gov and auy0@cdc.gov.  The following format is required as e-mail subject:  The RFP No: **2014-N-15784.KT.doc or .xls**  (Where "**2014-N-15784**" is the respective RFP No. and "KT" are the first two letters of the respective Contractor's name; and ".doc" and ".xls" are the format extensions.)

c.    In the event there are electronic transmission problems, the following steps shall be taken:

> i.    CDC receives the electronic file timely, but cannot access it.  The offeror will be contacted and may be allowed to fax in the portions that cannot be accessed.
>
> ii.    Facsimile quotes are not authorized. Technical inquiries shall be e-mailed to Bbiltz@cdc.gov and auy0@cdc.gov . Telephone inquiries will not be honored.
>
> iii.    Contractor sends electronic file, but receives error message indicating e-mail problems at CDC. Fax in a cover sheet indicating transmission difficulties, and the Contract Specialist will contact the Contractor to arrange an alternate method of submission. Offeorors are requested not to fax entire proposals to PGO.  Facsimile submission shall only be used after contacting the Contract Specialist.

e.    Contractors are responsible for providing accurate and complete information for evaluation. (Failure to do so may rule the quote unacceptable.) Thus, the proposal shall include the following information for evaluation:

> i.    The Technical Proposal:  Offerors other than vaccine manufacturers shall provide documentation that clearly demonstrates their ability to:
>
>> 1.    meet the provisions of the Federal Excise Tax Credit contract clause;
>>
>> 2.    provide vaccine maximum quantities specified within each Contract Line Item Number; and
>>
>> 3.    meet the vaccine Shelf Life provision.
>>
>> 4.    produce and deliver vaccines under a current establishment and product license issued by the U.S. Food

Appx8063

and Drug Administration.

    .ii. <u>Past Performance</u>:  Past performance is one indicator of the offeror's ability to perform the contract successfully.  The government will evaluate different customers' opinions about *how well* (quality) the offeror has satisfied their requirements.   Offerors shall provide, as part of their proposal, a list of clients or former clients for whom they have performed the same or similar work to the one required by this solicitation during the past five years.

**E.5    Inquiries**

Inquiries concerning the solicitation document shall be submitted in writing to the issuing office.  Any additions, deletions, or changes to the solicitation will be made by an amendment.  OFFERORS ARE INSTRUCTED SPECIFICALLY TO CONTACT ONLY THE  SOLICITATION CONTRACTING OFFICE IN CONNECTION WITH ANY ASPECT OF THIS REQUIREMENT PRIOR TO CONTRACT AWARD.  PROPOSALS AND ALL CORRESPONDENCE RELATING TO THE SOLICITATION DOCUMENT SHALL BE SUBMITTED TO THE CONTRACTING OFFICE.  Inquiries shall be received at the Contracting Office no later than **February 4,  2014** via e-mail to: bbiltz@cdc.gov and auy0@cdc.gov .

**E.6    Subcontracting Plan**

The offeror, prior to being awarded a contract, shall submit an acceptable subcontracting plan (see FAR 52.219-9) or demonstrate that no subcontracting opportunities exist.  (Note:  This requirement does not apply to small business concerns or to offers which do not exceed $500,000.00 ($1,000,000.00 for construction) or to offers from non-domestic concerns.)

CDC Small Business Goals for 2013[*] are:

| Business Type | CDC's 2013 Goals |
|---|---|
| Small Business | 9.00% |
| Small Disadvantaged Business | 5.00% |
| HUBZONE | 3.00% |
| Women-Owned Small Business | 5.00% |
| Service-Disabled Veteran-Owned Small Business Subcontracting (SDVOSB) | 3.00% |
| Veteran-Owned (VOSB) | 3.00% |
| **Total** | **28.00%** |

**E. 7  FAR 52.212-3 Offeror Representations and Certifications**

An offeror shall complete only paragraph (b) of this provision if the offeror has completed the annual representations and certifications electronically at http://orca.bpn.gov.

(End of Provision)

**E. 8  52.212-2 Evaluation - Commercial Items (Jan 1999)**

(a) The Government will award a contract resulting from this solicitation to the responsible offeror whose offer conforming to the solicitation will be most advantageous to the Government, price and other factors considered. The following factors shall be used to evaluate offers:

        *(i)  technical capability of the item offered to meet the Government requirement;*
        (ii)  *price;*
        (iii)   *past performance*

Technical and past performance, when combined, is equal in importance to price.

---

*Subject to change.  Goals for 2014 have not been received yet.

**Appx8064**

(b) A written notice of award or acceptance of an offer, mailed or otherwise furnished to the successful offeror within the time for acceptance specified in the offer, shall result in a binding contract without further action by either party. Before the offer's specified expiration time, the Government may accept an offer (or part of an offer), whether or not there are negotiations after its receipt, unless a written notice of withdrawal is received before award.

(c) Past performance will be evaluated for **only those offerors remaining in the competitive range** as follows:

1. Each offeror shall be evaluated on its past performance under current and prior contracts. By past performance, the Government means the offeror's record of conforming to specifications and to standards of good workmanship; the contractor's record of forecasting and controlling costs; the offeror's adherence to contract schedules and terms, including the administrative aspects of performance; the offeror's reputation for reasonable and cooperative behavior and commitment to customer satisfaction; and generally, the offeror's business-like concern for the interest of the customer and the degree of quality of deliverables and performance.

2. Past performance will not be scored, but the Government's conclusions about overall quality of the offeror's past performance will be highly influential in determining the relative merits of the offeror's proposal and in selecting the offeror whose proposal is considered the most advantageous/best value to the Government.

3. Evaluation of past performance will be a subjective assessment based on a consideration of all relevant facts and circumstances. It will not be based on absolute standards of acceptable performance.

4. The assessment of the offerors past performance will be used as a means of evaluating the relative capability of the offeror and the other competitors. Thus, an offeror with an exceptional record of relevant past performance may receive a more favorable evaluation than another whose record is acceptable and/or less relevant, even though both may have acceptable technical and business proposals.

5. An offeror without a record of past performance or for whom information on past performance is not available will not be evaluated favorably or unfavorably.

6. Evaluation of past performance information will be reflected in terms of the following degrees of performance assessment:

**Excellent:** A significant majority of the sources of information are consistently firm in stating that the offeror's performance was superior and that they would unhesitatingly do business with the offeror again. Complaints are negligible or unfounded. The offeror has no record of criminal conduct, civil fraud, or negligence, or the record is old and the offeror has demonstrated by more recent performance that corrective action has made the likelihood of such conduct in the future highly improbably. No doubt exists that the offeror will successfully perform the Government's requirements as stated in the RFP.

**Good:** Most sources of information state that the offeror's performance was good, better than average, etc., and that they would willingly do business with the offeror again. Complaints, though perhaps well-founded, are few and relatively minor. The offeror has no record of criminal conduct, civil fraud, or negligence, or the record is old and the offeror has demonstrated by more recent performance that corrective action has made the likelihood of such conduct in the future highly improbable. Little doubt exists that the offeror will successfully perform the Government's requirements as stated in the RFP.

**Neutral:** Either no past performance history exists for the corporation, predecessor companies, key personnel, or major/critical subcontractors, or the offeror's record of past performance was neither predominantly favorable nor unfavorable. In the latter case, sources of information are roughly divided over the quality of the offeror's performance. While some state that they would do business with the offeror again, others are doubtful or would not. Complaints are

balanced by reports of good work. The offeror has no record of criminal conduct, civil fraud, or negligence, or the record is old.

Solicitation No. 2014-N-15784

**Marginal:**  Many sources of information made unfavorable reports about the offeror's performance and either express serious doubts about doing business with the offeror again or state that they would refuse to do so.  However, there are some favorable reports, and some sources of information indicate that they would do business with the offeror again.  There are many significant, serious, and well-founded complaints, but there are some reports of very good performance.  The offeror may have been indicted, pled guilty, or may have been found guilty in matters of criminal conduct, but the issues are either unresolved, relatively minor, or do not reflect a company-wide or managerial pattern of wrongdoing.  The offeror may have lost civil suits for fraud or negligence, but there is no company-wide or managerial pattern of fraudulent, negligent, or criminal conduct.  Some doubt exists that the offeror will successfully perform the Government's requirements as stated in the RFP.

**Poor:**  A significant majority of sources of information are consistently firm in stating that the offeror's performance was entirely unsatisfactory and that they would not do business with the offeror again under any circumstances.  Customer complaints are substantial or numerous and are well-founded.  Or, although not debarred or suspended, the offeror is under indictment or has been convicted of criminal conduct, or has been found civilly liable for fraud or negligence.  The offeror either has presented no persuasive evidence of having taken appropriate corrective action that will guard against such conduct in the foreseeable future, or it appears unlikely that the corrective action will be effective.  Serious doubt exists that the offeror will successfully perform the Government requirements as stated in the RFP.

**(**End of Provision**)**

Appx8066

10/25/2019
Declaration of G. Reilly
EXHIBIT 274

| SOLICITATION/CONTRACT/ORDER FOR COMMERCIAL ITEMS<br>*OFFEROR TO COMPLETE BLOCKS 12, 17, 23, 24, & 30* | 1. REQUISITION NUMBER | | PAGE 1 OF<br>30 |
|---|---|---|---|

| 2. CONTRACT NO. | 3. AWARD/EFFECTIVE<br>DATE | 4. ORDER NUMBER | 5. SOLICITATION NUMBER<br>2015-N-16850 | 6. SOLICITATION<br>ISSUE DATE<br>01/16/2015 |
|---|---|---|---|---|

| 7. FOR SOLICITATION<br>INFORMATION CALL: ▶ | a. NAME<br>Berta Biltz | b. TELEPHONE NUMBER *(No collect calls)*<br>(770) 488-2643 | 8. OFFER DUE DATE/<br>LOCAL TIME<br>02/05/2015 |
|---|---|---|---|

| 9. ISSUED BY                          CODE   2538 | 10. THIS ACQUISITION IS | 11. DELIVERY FOR FOB<br>DESTINATION UNLESS<br>BLOCK IS MARKED | 12. DISCOUNT TERMS |
|---|---|---|---|

Centers for Disease Control and Prevention
Acquisition & Assistance Branch B
2920 Brandywine Road
Atlanta, GA 30341-5539

X UNRESTRICTED

SET ASIDE:          % FOR

SMALL BUSNESS

SMALL DISADV. BUSINESS

8(A)

SIC: 325412

SIZE STANDARD:

X SEE SCHEDULE

13a. THIS CONTRACT IS A RATED ORDER
UNDER DPAS (15 CFR 700)

13b. RATING

14. METHOD OF SOLICITATION

RFQ       IFB       X RFP

| 15. DELIVER TO                        CODE | 16. ADMINISTERED BY                       CODE   2538 |
|---|---|

To be indicated by the individual delivery
orders placed against the contract.

Centers for Disease Control and Prevention
Acquisition & Assistance Branch B
2920 Brandywine Road
Atlanta, GA 30341-5539

| 17a. CONTRACTOR/     CODE         FACILITY<br>OFFEROR                     CODE | 18a. PAYMENT WILL BE MADE BY              CODE   434 |
|---|---|

Centers for Disease Control and Prevention (FMO)
PO Box 15580 404-718-8100

Atlanta, GA 30333-0080

TELEPHONE NO.

17b. CHECK IF REMITTANCE IS DIFFERENT AND PUT SUCH ADDRESS IN OFFER

18b. SUBMIT INVOICES TO ADDRESS SHOWN N BLOCK 18a UNLESS BLOCK BELOW
IS CHECKED                                    SEE ADDENDUM

| 19.<br>ITEM NO. | 20.<br>SCHEDULE OF SUPPL ES/SERVICES | 21.<br>QUANTITY | 22.<br>UNIT | 23.<br>UNIT PRICE | 24.<br>AMOUNT |
|---|---|---|---|---|---|
| | **VFC 2015**<br><br>"See Continuation Page"<br><br>*(Attach Additional Sheets as Necessary)* | | | | |

| 25. ACCOUNT NG AND APPROPRIATION DATA | 26. TOTAL AWARD AMOUNT *(For Govt. Use Only)* |
|---|---|

X 27a. SOLICITATION INCORPORATES BY REFERENCE FAR 52.212-1, 52 212-4.  FAR 52.212-3 AND 52.212-5 ARE ATTACHED.  ADDENDA     X ARE      ARE NOT ATTACHED.
27b. CONTRACT/PURCHASE ORDER NCORPORATES BY REFERENCE FAR 52.212-4.  FAR 52 212-5 IS ATTACHED.  ADDENDA          ARE      ARE NOT ATTACHED.

| 28.     CONTRACTOR IS REQUIRED TO SIGN THIS DOCUMENT AND RETURN              COPIES<br>TO ISSUING OFFICE. CONTRACTOR AGREES TO FURNISH AND DELIVER ALL ITEMS SET<br>FORTH OR OTHERWISE IDENTIFIED ABOVE AND ON ANY ADDITIONAL SHEETS SUBJECT<br>TO THE TERMS AND CONDITIONS SPECIFIED HEREIN. | 29.  AWARD OF CONTRACT: REFERENCE                          OFFER<br>DATED          . YOUR OFFER ON SOLICITATION (BLOCK 5),<br>INCLUDING ANY ADDITIONS OR CHANGES WHICH ARE SET FORTH<br>HEREIN, IS ACCEPTED AS TO ITEMS: |
|---|---|
| 30a. SIGNATURE OF OFFEROR/CONTRACTOR | 31a. UNITED STATES OF AMERICA *(Signature of Contracting Officer)* |
| 30b. NAME AND TITLE OF SIGNER *(Type or print)*     30c. DATE SIGNED | 31b. NAME OF CONTRACTING OFFICER *(Type or print)*     31c. DATE SIGNED |

| 32a. QUANTITY IN COLUMN 21 HAS BEEN<br><br>RECEIVED     INSPECTED     ACCEPTED, AND CONFORMS TO THE<br>CONTRACT, EXCEPT AS NOTED | 33. SHIP NUMBER<br><br>PARTIAL     FINAL | 34. VOUCHER NUMBER | 35. AMOUNT VERIFIED<br>CORRECT FOR |
|---|---|---|---|
| 32b. SIGNATURE OF AUTHORIZED GOV'T REPRESENTATIVE     32c. DATE | 36. PAYMENT<br>COMPLETE     PARTIAL     FINAL | | 37. CHECK NUMBER |
| | 38. S/R ACCOUNT NUMBER | 39. S/R VOUCHER NUMBER | 40. PAID BY |
| | 42a. RECEIVED BY *(Print)* | | |
| 41a. I CERTIFY THIS AMOUNT IS CORRECT AND PROPER FOR PAYMENT | | | |
| 41b. SIGNATURE AND TITLE OF CERTIFYING OFFICER     41c. DATE | 42b. RECEIVED AT *(Location)* | | |
| | 42c. DATE REC'D | 42d. TOTAL CONTAINERS | |

AUTHORIZED FOR LOCAL REPRODUCTION          SEE REVERSE FOR OMB CONTROL NUMBER AND PAPERWORK BURDEN STATEMENT          STANDARD FORM 1449  (10-95)

Appx8068

# TABLE OF CONTENTS

| **Section** | **Document/Clause/Provision** | **Page No.** |
|---|---|---|
| A | Standard Form 1449 | 1 |
| B | Continuation of SF1449 (Block 19 – 24) | 2 |
| C | Contract Clauses | 5 |
| D | Contract Documents, Exhibits or Attachments | 22 |
| E | Solicitation Provisions | 24 |

Appx8069

## SECTION B - CONTINUATION OF SF1449

The National Center for Immunization and Respiratory Diseases (NCIRD) requires the award of multiple indefinite quantity, indefinite delivery contracts for the purchase of standard commercial pediatric vaccines, manufactured under a current establishment and product license issued by the U.S. Food and Drug Administration. The vaccines awarded under these contracts will be purchased for NCIRD's immunization Awardees to support pediatric immunization programs as provided under Section 317(j) of the Public Health Service Act and Vaccine for Children (VFC) program, established pursuant to Section 13631 of the Omnibus Budget Reconciliation Act of 1993 (OBRA '93).

| ITEM | SUPPLIES / SERVICES | QTY / UNIT | UNIT PRICE | EXTENDED |
|------|---------------------|------------|------------|----------|
| 1. | DTaP vaccine:<br><br>Min. Shelf Life: 12 Months<br>Fed. Excise Tax: $2.25 per dose | Maximum: 6.5M Doses<br><br>Minimum: 100 Doses | | |
| 2. | DTaP/Hep B/IPV vaccine:<br><br>Min. Shelf Life: 12 Months<br>Fed. Excise Tax: $3.75 per dose | Maximum: 5.38M Doses<br><br>Minimum: 100 Doses | | |
| 3. | DTaP-IPV Vaccine:<br><br>Min. Shelf Life: 12 months<br>Fed. Excise Tax: $3.00 per dose | Maximum: 3.5M Doses<br><br>Minimum: 100 Doses | | |
| 4. | DTaP-IP-HI Vaccine:<br><br>Min. Shelf Life: 12 months<br>Fed. Excise Tax: $3.75 per dose | Maximum: 7.5M Doses<br><br>Minimum. 100 Doses | | |
| 5. | E-IPV vaccine:<br><br>Min. Shelf Life: 12 Months<br>Fed. Excise Tax: $0.75 | Maximum: 4M Doses<br><br>Minimum: 100 Doses | | |
| 6. | Hepatitis A (pediatric) vaccine<br><br>Min. Shelf Life: 12 Months<br>Fed. Excise Tax: $0.75 per dose | Maximum: 8.5M Doses<br><br>Minimum: 100 Doses | | |
| 7. | Hepatitis A&B (Age 18 only) vaccine<br><br>Min. Shelf Life: 12 Months<br>Fed. Excise Tax: $1.50 per dose | Maximum: 100,000 Doses<br><br>Minimum: 100 Doses | | |
| 8. | Hepatitis B (pediatric/adol.) vaccine<br><br>Min. Shelf Life: 12 Months<br>Fed. Excise Tax: $0.75 per dose | Maximum: 7.7M Doses<br><br>Minimum: 100 Doses | | |
| 9. | Hib vaccine<br><br>Min. Shelf Life: 12 Months<br>Fed. Excise Tax: $0.75 per dose | Maximum: 8M Doses<br><br>Minimum: 100 Doses | | |
| 10. | Human Papillomavirus types Vaccine, Recombinant (HPV) | Maximum: 9M Doses | | |

Appx8070

**Solicitation No. 2015-N-16850**

| | | | | |
|---|---|---|---|---|
| | Min. Shelf Life: 12 Months<br>Fed. Excise Tax: $0.75 per dose | Minimum: 100 Doses | | |
| 11. | Measles, Mumps & Rubella (MMR) vaccine<br><br>Min. Shelf Life: 12 Months<br>Fed. Excise Tax: $2.25 per dose | Maximum: 8M Doses<br><br>Minimum: 100 Doses | | |
| 12. | Meningococcal Conjugate (MCV4) vaccine<br><br>Min. Shelf Life: 12 Months<br>Fed. Excise Tax: $0.75 per dose | Maximum: 6.5M Doses<br><br>Minimum: 100 Doses | | |
| 13. | Pneumococcal Conjugate vaccine (13 Valent)<br><br>Min. Shelf Life: 12 Months<br>Fed. Excise Tax: $0.75 per dose | Maximum: 13M Doses<br><br>Minimum: 100 Doses | | |
| 14. | Pneumococcal (23 Valent) Polysaccharide Vaccine<br>Min. Shelf Life: 12 Months<br>Minimum Order Size: 10 doses<br>Fed. Excise Tax: N/A | Maximum: 350K Doses<br><br>Minimum: 100 Doses | | |
| 15. | Rotavirus vaccine<br><br>Min. Shelf Life: 12 Months<br>Fed. Excise Tax: $0.75 per dose | Maximum: 7M Doses<br><br>Minimum: 100 Doses | | |
| 16. | Tetanus and Diphtheria (Td) vaccine<br><br>Min. Shelf Life: 12 Months<br>Fed. Excise Tax: $1.50 per dose | Maximum: 750,000 Doses<br><br>Minimum: 100 Doses | | |
| 17. | Tdap vaccine<br><br>Min. Shelf Life: 12 Months<br>Fed. Excise Tax: $2.25 per dose | Maximum: 5.5M Doses<br><br>Minimum: 100 Doses | | |
| 18. | Varicella vaccine<br>Min. Shelf Life: 12 Months<br>Min. Order Size: 10 Doses<br>Fed. Excise Tax: $0.75 per dose | Maximum: 10M Doses<br><br>Minimum: 10 Doses | | |
| 19. | Measles, Mumps & Rubella (MMR-V) and Varicella vaccine<br>Min. Shelf Life: 12 Months<br>Min. Order Size: 10 Doses<br>Fed. Excise Tax: $3.00 per dose | Maximum: 3.3M Doses<br><br>Minimum: 10 Doses | | |
| 20. | Meningococcal and Hib Vaccine (HibMenCY)<br>Min. Shelf Life: 12 Months<br>Fed. Excise Tax: $1.50 | Maximum: 50,000 Doses<br><br>Minimum: 100 Doses | | |
| **TOTAL** | | | | |

Appx8071

Solicitation No. 2015-N-16850

## Notes:

**B.1    Background:**    The Centers for Disease Control and Prevention (CDC) awards contracts for the purchase of standard commercial pediatric vaccines.  Vaccines are one of the most cost-effective ways to prevent disease and reduce healthcare costs. The Vaccines for Children (VFC) program, established pursuant to Section 13631 of the Omnibus Budget Reconciliation Act of 1993 (OBRA '93), guarantees federal support for the purchase and supply of sufficient quantities of vaccine to the States to cover a defined group of children.  The program helps assure the implementation of effective immunization practices and proper use of vaccines to achieve higher immunization coverage.  Children (18 years-of-age or younger) who qualify for immunization through the VFC purchase program include those who are (1) Medicaid-eligible, (2) without health insurance, (3) American Indian/Alaska native (as defined in Subsection (h)(3) of the OBRA '93), or (4) children with health insurance, which does not cover the cost of vaccines, if they receive their immunizations at a Federally Qualified Health Center or rural health clinic (as defined by the Social Security Act).  Health care providers who agree to certain requirements are eligible through the States to receive free vaccine through this VFC purchase program.  The establishment of these contracts provides an opportunity to utilize VFC funds and Section 317 vaccine purchase direct assistance (DA) grant funds to obtain vaccines at prices below those available in the commercial market place.  In addition, States may opt to purchase additional quantities of vaccine under any resulting contract to provide immunizations for children who are not federally vaccine-eligible children.

**B.2    Definitions:**

OBRA Orders – Vaccine orders under Section 1928(a) (2)(A) of the Social Security Act.

317 Orders – Vaccine orders under Section 317(j) of the Public Health Service Act.

State and Local Orders – Vaccine orders placed by authorized immunization programs using state or local funds in accordance with Section 1928(d)(4)(B) of the Social Security Act.

Manufacturer – As defined in Subsection (h) (4) of the Social Security Act, means any corporation, organization, or institution, whether public or private, which Manufacturers, imports, processes, or distributes under its label any pediatric vaccine.

Awardees – Includes State health departments and certain local health agencies authorized to order hereunder.

Appx8072

# SECTION C - CONTRACT CLAUSES

**C.1.0    Contract Terms and Conditions Required to Implement Statutes or Executive Orders - Commercial Items (Dec 2014)**

(a) The Contractor shall comply with the following Federal Acquisition Regulation (FAR) clauses, which are incorporated in this contract by reference, to implement provisions of law or Executive orders applicable to acquisitions of commercial items:

(1) 52.209-10, Prohibition on Contracting with Inverted Domestic Corporations (Dec 2014)

(2) 52.222-50, Combating Trafficking in Persons (FEB 2009) (22 U.S.C. 7104(g)).

_____ Alternate I (AUG 2007) of 52.222-50 (22 U.S.C. 7104(g)).

(3)  52.233-3, Protest After Award (AUG 1996) (31 U.S.C. 3553).

(4) 52.233-4, Applicable Law for Breach of Contract Claim (OCT 2004) (Public Laws 108-77, 108-78 (19 U.S.C. 3805 note)).

(b) The Contractor shall comply with the FAR clauses in this paragraph (b) that the contracting officer has indicated as being incorporated in this contract by reference to implement provisions of law or Executive orders applicable to acquisitions of commercial items

☒   (1) 52.203-6, Restrictions on Subcontractor Sales to the Government (Sept 2006), with Alternate I (Oct 1995) (41 U.S.C. 4704 and 10 U.S.C. 2402).

☒   (2) 52.203-13, Contractor Code of Business Ethics and Conduct (Apr 2010) (41 U.S.C. 3509).

___ (3) 52.203-15, Whistleblower Protections under the American Recovery and Reinvestment Act of 2009 (Jun 2010) (Section 1553 of Pub L. 111-5) (Applies to contracts funded by the American Recovery and Reinvestment Act of 2009).

___ (4) 52.204-10, Reporting Executive compensation and First-Tier Subcontract Awards (Jul 2013) (Pub. L. 109-282) (31 U.S.C. 6101 note).

___ (5) [Reserved]

___ (6) 52.204-14, Service Contract Reporting Requirements (Jan 2014) (Pub. L. 111-117, section 743 of Div. C).

___ (7) 52.204-15, Service Contract Reporting Requirements for Indefinite-Delivery Contracts (Jan 2014) (Pub. L. 111-117, section 743 of Div. C).

☒ (8) 52.209-6, Protecting the Government's Interest When Subcontracting with Contractors Debarred, Suspended, or Proposed for Debarment (Aug 2013) (31 U.S.C. 6101 note).

___ (9) 52.209-9, Updates of Publicly Available Information Regarding Responsibility Matters (Jul 2013) (41 U.S.C. 2313).

☒ (10) 52.209-10, Prohibition on Contracting with Inverted Domestic Corporations (May 2012) (section 738 of Division C of Public Law 112-74, section 740 of Division C of Pub. L. 111-117, section 743 of Division D of Pub. L. 111-8, and section 745 of Division D of Pub. L. 110-161).

___ (11) (i) 52.219-3, Notice of HUBZone Set-Aside or Sole-Source Award (Nov 2011) (15 U.S.C. 657a).

___ (ii) Alternate I (Nov 2011) of 52.219-3.

___ (12) (i) 52.219-4, Notice of Price Evaluation Preference for HUBZone Small Business Concerns (Oct 2011) (if the offeror elects to waive the preference, it shall so indicate in its offer)(15 U.S.C. 657a).

___ (ii) Alternate I (Jan 2011) of 52.219-4.

___ (13) [Reserved]

___ (14) (i) 52.219-6, Notice of Total Small Business Aside (Nov 2011) (15 U.S.C. 644).

___ (ii) Alternate I (Nov 2011).

___ (iii) Alternate II (Nov 2011).

___ (15) (i) 52.219-7, Notice of Partial Small Business Set-Aside (June 2003) (15 U.S.C. 644).

___ (ii) Alternate I (Oct 1995) of 52.219-7.

___ (iii) Alternate II (Mar 2004) of 52.219-7.

☒ (16) 52.219-8, Utilization of Small Business Concerns (Oct 2014) (15 U.S.C. 637(d)(2) and (3)).

☒ (17) (i) 52.219-9, Small Business Subcontracting Plan (Oct 2014) (15 U.S.C. 637 (d)(4)).

___ (ii) Alternate I (Oct 2001) of 52.219-9.

___ (iii) Alternate II (Oct 2001) of 52.219-9.

___ (iv) Alternate III (Oct 2014) of 52.219-9.

___ (18) 52.219-13, Notice of Set-Aside of Orders (Nov 2011) (15 U.S.C. 644(r)).

___ (19) 52.219-14, Limitations on Subcontracting (Nov 2011) (15 U.S.C. 637(a)(14)).

___ (20) 52.219-16, Liquidated Damages—Subcontracting Plan (Jan 1999) (15 U.S.C. 637(d)(4)(F)(i)).

___ (21) 52.219-27, Notice of Service-Disabled Veteran-Owned Small Business Set-Aside (Nov 2011) (15 U.S.C. 657f).

Solicitation No. 2015-N-16850

___ (22) 52.219-28, Post Award Small Business Program Representation (Jul 2013) (15 U.S.C. 632(a)(2)).

___ (23) 52.219-29, Notice of Set-Aside for Economically Disadvantaged Women-Owned Small Business (EDWOSB) Concerns (Jul 2013) (15 U.S.C. 637(m)).

___ (24) 52.219-30, Notice of Set-Aside for Women-Owned Small Business (WOSB) Concerns Eligible Under the WOSB Program (Jul 2013) (15 U.S.C. 637(m)).

___ (25) 52.222-3, Convict Labor (June 2003) (E.O. 11755).

___ (26) 52.222-19, Child Labor—Cooperation with Authorities and Remedies (Jan 2014) (E.O. 13126).

___ (27) 52.222-21, Prohibition of Segregated Facilities (Feb 1999).

___ (28) 52.222-26, Equal Opportunity (Mar 2007) (E.O. 11246).

___ (29) 52.222-35, Equal Opportunity for Veterans (Jul 2014) (38 U.S.C. 4212).

___ (30) 52.222-36, Equal Opportunity for Workers with Disabilities (Jul 2014) (29 U.S.C. 793).

___ (31) 52.222-37, Employment Reports on Veterans (Jul 2014) (38 U.S.C. 4212).

___ (32) 52.222-40, Notification of Employee Rights Under the National Labor Relations Act (Dec 2010) (E.O. 13496).

___ (33) 52.222-54, Employment Eligibility Verification (Aug 2013). (Executive Order 12989). (Not applicable to the acquisition of commercially available off-the-shelf items or certain other types of commercial items as prescribed in 22.1803.)

___ (34) (i) 52.223-9, Estimate of Percentage of Recovered Material Content for EPA-Designated Items (May 2008) (42 U.S.C. 6962(c)(3)(A)(ii)). (Not applicable to the acquisition of commercially available off-the-shelf items.)

___ (ii) Alternate I (May 2008) of 52.223-9 (42 U.S.C. 6962(i)(2)(C)). (Not applicable to the acquisition of commercially available off-the-shelf items.)

___ (35) (i) 52.223-13, Acquisition of EPEAT® -Registered Imaging Equipment (Jun 2014) (E.O.s 13423 and 13514

___ (ii) Alternate I (Jun 2014) of 52.223-13.

___ (36) (i) 52.223-14, Acquisition of EPEAT® -Registered Television (Jun 2014) (E.O.s 13423 and 13514).

___ (ii) Alternate I (Jun 2014) of 52.223-14.

___ (37) 52.223-15, Energy Efficiency in Energy-Consuming Products (Dec 2007) (42 U.S.C. 8259b).

Appx8075

___ (38) (i) 52.223-16, Acquisition of EPEAT® -Registered Personal Computer Products (Jun 2014) (E.O.s 13423 and 13514).

___ (ii) Alternate I (Jun 2014) of 52.223-16.

☒ (39) 52.223-18, Encouraging Contractor Policies to Ban Text Messaging while Driving (Aug 2011) (E.O. 13513).

___ (40) 52.225-1, Buy American--Supplies (May 2014) (41 U.S.C. chapter 83).

___ (41) (i) 52.225-3, Buy American--Free Trade Agreements--Israeli Trade Act (May 2014) (41 U.S.C. chapter 83, 19 U.S.C. 3301 note, 19 U.S.C. 2112 note, 19 U.S.C. 3805 note, 19 U.S.C. 4001 note, Pub. L. 103-182, 108-77, 108-78, 108-286, 108-302, 109-53, 109-169, 109-283, 110-138, 112-41, 112-42, and 112-43).

___ (ii) Alternate I (May 2014) of 52.225-3.

___ (iii) Alternate II (May 2014) of 52.225-3.

___ (iv) Alternate III (May 2014) of 52.225-3.

☒ (42) 52.225-5, Trade Agreements (Nov 2013) (19 U.S.C. 2501, *et seq.*, 19 U.S.C. 3301 note).

☒ (43) 52.225-13, Restrictions on Certain Foreign Purchases (Jun 2008) (E.O.'s, proclamations, and statutes administered by the Office of Foreign Assets Control of the Department of the Treasury).

___ (44) 52.225-26, Contractors Performing Private Security Functions Outside the United States (Jul 2013) (Section 862, as amended, of the National Defense Authorization Act for Fiscal Year 2008; 10 U.S.C. 2302 Note).

___ (45) 52.226-4, Notice of Disaster or Emergency Area Set-Aside (Nov 2007) (42 U.S.C. 5150).

___ (46) 52.226-5, Restrictions on Subcontracting Outside Disaster or Emergency Area (Nov 2007) (42 U.S.C. 5150).

___ (47) 52.232-29, Terms for Financing of Purchases of Commercial Items (Feb 2002) (41 U.S.C. 4505), 10 U.S.C. 2307(f)).

___ (48) 52.232-30, Installment Payments for Commercial Items (Oct 1995) (41 U.S.C. 4505, 10 U.S.C. 2307(f)).

☒ (49) 52.232-33, Payment by Electronic Funds Transfer— System for Award Management (Jul 2013) (31 U.S.C. 3332).

___ (50) 52.232-34, Payment by Electronic Funds Transfer—Other Than System for Award Management (Jul 2013) (31 U.S.C. 3332).

___ (51) 52.232-36, Payment by Third Party (May 2014) (31 U.S.C. 3332).

___ (52) 52.239-1, Privacy or Security Safeguards (Aug 1996) (5 U.S.C. 552a).

___ (53) (i) 52.247-64, Preference for Privately Owned U.S.-Flag Commercial Vessels (Feb 2006) (46 U.S.C. Appx 1241(b) and 10 U.S.C. 2631).

___ (ii) Alternate I (Apr 2003) of 52.247-64.

(c) The Contractor shall comply with the FAR clauses in this paragraph (c), applicable to commercial services, that the Contracting Officer has indicated as being incorporated in this contract by reference to implement provisions of law or executive orders applicable to acquisitions of commercial items:

[*Contracting Officer check as appropriate.*]

___ (1) 52.222-41, Service Contract Labor Standards (May 2014) (41 U.S.C. chapter 67.).

___ (2) 52.222-42, Statement of Equivalent Rates for Federal Hires (May 2014) (29 U.S.C. 206 and 41 U.S.C. chapter 67).

___ (3) 52.222-43, Fair Labor Standards Act and Service Contract Labor Standards -- Price Adjustment (Multiple Year and Option Contracts) (May 2014) (29 U.S.C.206 and 41 U.S.C. chapter 67).

___ (4) 52.222-44, Fair Labor Standards Act and Service Contract Labor Standards -- Price Adjustment (May 2014) (29 U.S.C. 206 and 41 U.S.C. chapter 67).

___ (5) 52.222-51, Exemption from Application of the Service Contract Labor Standards to Contracts for Maintenance, Calibration, or Repair of Certain Equipment--Requirements (May 2014) (41 U.S.C. chapter 67).

___ (6) 52.222-53, Exemption from Application of the Service Contract Labor Standards to Contracts for Certain Services--Requirements (May 2014) (41 U.S.C. chapter 67).

___ (7) 52.222-17, Nondisplacement of Qualified Workers (May 2014) (E.O. 13495).

___ (8) 52.226-6, Promoting Excess Food Donation to Nonprofit Organizations. (May 2014) (42 U.S.C. 1792).

___ (9) 52.237-11, Accepting and Dispensing of $1 Coin (Sep 2008) (31 U.S.C. 5112(p)(1)).

___ (10) 52.222-55, Minimum Wages Under Executive Order 13658 Dec 2014)(Executive Order 13658).

(d) *Comptroller General Examination of Record* The Contractor shall comply with the provisions of this paragraph (d) if this contract was awarded using other than sealed bid, is in excess of the simplified acquisition threshold, and does not contain the clause at 52.215-2, Audit and Records -- Negotiation.

   (1) The Comptroller General of the United States, or an authorized representative of the Comptroller General, shall have access to and right to examine any of the Contractor's directly pertinent records involving transactions related to this contract.

Solicitation No. 2015-N-16850

(2) The Contractor shall make available at its offices at all reasonable times the records, materials, and other evidence for examination, audit, or reproduction, until 3 years after final payment under this contract or for any shorter period specified in FAR Subpart 4.7, Contractor Records Retention, of the other clauses of this contract. If this contract is completely or partially terminated, the records relating to the work terminated shall be made available for 3 years after any resulting final termination settlement. Records relating to appeals under the disputes clause or to litigation or the settlement of claims arising under or relating to this contract shall be made available until such appeals, litigation, or claims are finally resolved.

(3) As used in this clause, records include books, documents, accounting procedures and practices, and other data, regardless of type and regardless of form. This does not require the Contractor to create or maintain any record that the Contractor does not maintain in the ordinary course of business or pursuant to a provision of law.

(e) `

(1) Notwithstanding the requirements of the clauses in paragraphs (a), (b), (c) and (d) of this clause, the Contractor is not required to flow down any FAR clause, other than those in this paragraph (e)(1) in a subcontract for commercial items. Unless otherwise indicated below, the extent of the flow down shall be as required by the clause—

    (i) 52.203-13, Contractor Code of Business Ethics and Conduct (Apr 2010) (41 U.S.C. 3509).

    (ii) 52.219-8, Utilization of Small Business Concerns (Oct 2014) (15 U.S.C. 637(d)(2) and (3)), in all subcontracts that offer further subcontracting opportunities. If the subcontract (except subcontracts to small business concerns) exceeds $650,000 ($1.5 million for construction of any public facility), the subcontractor must include 52.219-8 in lower tier subcontracts that offer subcontracting opportunities.

    (iii) 52.222-17, Nondisplacement of Qualified Workers (May 2014) (E.O. 13495). Flow down required in accordance with paragraph (1) of FAR clause 52.222-17.

    (iv) 52.222-26, Equal Opportunity (Mar 2007) (E.O. 11246).

    (v) 52.222-35, Equal Opportunity for Veterans (Jul 2014) (38 U.S.C. 4212).

    (vi) 52.222-36, Equal Opportunity for Workers with Disabilities (Jul 2014) (29 U.S.C. 793).

    (vii) 52.222-37, Employment Reports on Veterans (Jul 2014) (38 U.S.C. 4212).

    (viii) 52.222-40, Notification of Employee Rights Under the National Labor Relations Act (Dec 2010) (E.O. 13496). Flow down required in accordance with paragraph (f) of FAR clause 52.222-40.

    (ix) 52.222-41, Service Contract Labor Standards (May 2014), (41 U.S.C. chapter 67).

    (x) 52.222-50, Combating Trafficking in Persons (Feb 2009) (22 U.S.C. 7104(g)).

_____ Alternate I (Aug 2007) of 52.222-50 (22 U.S.C. 7104(g)).

(xi)  52.222-51, Exemption from Application of the Service Contract Labor Standards to Contracts for Maintenance, Calibration, or Repair of Certain Equipment--Requirements (May 2014) (41 U.S.C. chapter 67.)

(xii)  52.222-53, Exemption from Application of the Service Contract Labor Standards to Contracts for Certain Services--Requirements (May 2014) (41 U.S.C. chapter 67)

(xiii)  52.222-54, Employment Eligibility Verification (Aug 2013).

(xiv)  52.225-26, Contractors Performing Private Security Functions Outside the United States (Jul 2013) (Section 862, as amended, of the National Defense Authorization Act for Fiscal Year 2008; 10 U.S.C. 2302 Note).

(xv)  52.226-6, Promoting Excess Food Donation to Nonprofit Organizations. (May 2014) (42 U.S.C. 1792). Flow down required in accordance with paragraph (e) of FAR clause 52.226-6.

(xvi)  52.247-64, Preference for Privately-Owned U.S. Flag Commercial Vessels (Feb 2006) (46 U.S.C. Appx 1241(b) and 10 U.S.C. 2631). Flow down required in accordance with paragraph (d) of FAR clause 52.247-64.

(xvii)  52.222-55, Minimum Wages Under Executive Order 13658 (Dec 2014)(Executive Order 13658).

(2) While not required, the contractor may include in its subcontracts for commercial items a minimal number of additional clauses necessary to satisfy its contractual obligations.

(End of Clause)

**C.2**       **The following  FAR Clause is incorporated by reference:**

| FAR SOURCE | TITLE AND DATE |
|---|---|
| **52.212-4** | **Contract Terms and Conditions—Commercial Items (Dec 2014)** |

**C.3.0    SPECIAL CLAUSES**

**C.3**.1    **Shelf Life**

Vaccine provided under this contract shall have a minimum 12 month shelf life remaining upon delivery to the consignee, or as specified within each Contract Line Item Number (See Section B, Continuation of SF 1449).

## C.3.2.    Packaging and Packing Requirements

1.  Packaging:

    All items shall be packaged in standard commercial manner.

2.  Packing:

    a.  Product shall be packed to ensure maintenance of FDA recommended temperature during transit and safe arrival at destination. An electronic temperature monitoring device is required with each shipment unless Contractor has obtained prior approval from CDC to use an alternative monitoring method.

    b.  Contractor will provide the Contracting Officer Representative (COR) with documentation that explains the cause of each temperature excursion and stability data used by the contractor to determine if the cold chain was adversely affected by temperature variance.  Upon review of data provided, CDC will notify appropriate parties if the vaccine is accepted or rejected.

## C.3.3.    Contract Period of Performance

The contract period of performance shall begin on the date of award and shall end 12 months later (CDC will provide Contractor with official end date at time of award.)

## C.3.4.    Time of Delivery

Delivery is required to be made at destination within 15 working days after receipt of electronic, written, or telephonic order (telephone orders to be confirmed in writing).

## C.3.5.    Place of Delivery

The Contractor shall be required to deliver vaccines F.O.B. Destination, as directed by delivery orders to the CDC centralized distribution locations currently in Aurora, CO and Memphis, TN.

The Contractor shall be required to deliver frozen vaccines F.O.B. destination as directed by delivery orders.

## C.3.6.    Amendment to OBRA Statue

In the event of an amendment of 42 U.S.C. Section 1396(s), any terms of the contract affected by such an amendment will be modified in accordance with   the revised statute.  The Contracting Officer and the Contractor shall meet to discuss such modifications to the contract before finalization of any changes to the contract.

## C.3.7.    Product Licensure

a.  The vaccines produced and delivered under this contract shall be manufactured under a current establishment and product license issued by the Food and Drug Administration as indicated below:

_____

**Appx8080**

b.   The Current Good Manufacturing Practice Regulations (CGMPR's) (21CFR Parts 210 211) will be the standard to be applied for manufacturing, processing and packing of drugs, chemicals, biologicals, and reagents.

c.   The Contractor shall advise the Contracting Officer immediately of any relocation of his prime manufacturing facility or the relocation of any subcontractor's facility, and if at any time during the life of the contract, the item listed under this contract fails to meet CGMPR's and/or a negative Food and Drug Administration Quality Assurance Evaluation is received; the contract may be terminated, in whole or in part, without further liability to the Government.

## C.3. 8.   Placement of Orders

a.   All vaccine under this contract will be ordered by delivery orders.  Orders shall be placed by Health and Human Services (HHS), the Centers for Disease Control and Prevention (CDC), on behalf of eligible awardees or by the awardees.  Orders shall be placed by electronic transfer. In the event of an emergency, orders may be placed by CDC by telephone (confirmed in writing). Contractors shall be able to interface with the CDC Electronic Vaccine Ordering System.  If unable to interface at the time of award, the vendor shall complete interface implementation by the end of the period of performance of the contract.

b.   Orders shall be submitted to the Ordering Address specified in Contract Clauses Paragraph C.3.12; Contractor's Ordering/Payment Address and shall contain the following minimum information:

1.   Date of order

2.   Contract number and order number;

3.   Item description, quantity and unit price

4.   Delivery or performance date;

5.   Place of delivery or performance (including consignee);

6.   Packaging, packing and shipping instruction, if any;

7.   Accounting and appropriation data;

8.   Statement to indicate if partial deliveries are not acceptable; (lack of a statement shall be construed to mean partial deliveries are acceptable and payment shall be made as required elsewhere herein)

9.   Any other pertinent data.

## C.3. 9.  Delivery Order Limitations

a.   Minimum Order Size: Individual delivery orders issued under this contract must meet the minimum order size as specified within each Contract Line Item Number (See Section B, Continuation of SF 1449).  When the Government requires supplies covered by this contract in amounts less than stated above, the Government is not obligated to purchase, nor is the Contractor obligated to furnish those supplies under this contract.

Appx8081

b.  Maximum Order: The maximum quantity specified within each Contract Line Item Number (See Section B, Continuation of SF1449) is the maximum number of doses that may be ordered during the contract period of performance. Contractors are advised that the maximum quantity represents their commitment to the CDC under their contract.

c.  Delivery Orders shipments:

1.  Shipments shall be sent with all transaction information necessary to be compliant with applicable Drug Supply Chain Security Act requirements regarding Transaction Information (TI), Transaction History (TH), Transaction Statement (TS).  Initially, paper documentation or portal access will be acceptable, but EDI messaging between Contractors and CDC will transition to allow electronic transmission of information

2.  Bulk order shipments, when possible, shall consist of

   a.  One NDC per skid

   b.  Full skid quantities with same lot number

   c.   Full case quantities (when total order size allows)

## C.3.10.   FAR 52.216-18. Ordering (Oct 1995)

a.  Any supplies and services to be furnished under this contract shall be ordered by issuance of delivery orders or task orders by the individuals or activities designated in the Schedule.  Such orders may be issued from the effective date of the contract through the expiration date of the contract.

b.  All delivery orders or task orders are subject to the terms and conditions of this contract.  In the event of conflict between a delivery order or task order and this contract, the contract shall control.

c.  If mailed, a delivery order or task order is considered "issued" when the   Government deposits the order in the mail.  Orders may be issued orally or by written telecommunications only if authorized in the Schedule.

## C.3.11.   FAR 52.216-22 Indefinite Quantity (Oct 1995)

a.  This is an indefinite quantity contract for the supplies specified and effective for the period stated, in the Schedule.  The quantities of supplies and services specified in the Schedule are estimates only and are not purchased by this contract.

b.  Delivery or performance shall be made only as authorized by orders issued in accordance with the Ordering clause.  The Contractor shall furnish to the Government, when and if ordered, the supplies specified in the Schedule up to and including the quantity designated in the Schedule as the "maximum."  The Government shall order at least the quantity of supplies designated in the Schedule as the "minimum."

Solicitation No. 2015-N-16850

c.  Except for any limitations on quantities in the Delivery Order Limitations clause or in the Schedule, there is no limit on the number of orders that may be issued.  The Government may issue orders requiring delivery to multiple destinations or performance at multiple locations.

d.  Any order issued during the effective period of this contract and not completed within that period shall be completed by the Contractor within the time specified in the order.  The contract shall govern the Contractor's and Government's rights and obligations with respect to that order to the same extent as if the order were completed during the contract's effective period; provided, that the Contractor shall not be required to make any deliveries under this contract after fifteen (15) working days beyond the expiration date of the contract.

## C.3.12.   Contractor's Ordering/Payment Address

Submission of all orders for Contractor's vaccines and payment of invoices shall be addressed as referenced below:

Ordering Address           Payments Address

_____          _____
_____          _____
_____          _____

## C.3.13.   Invoice Submission

1.  Invoice submission under this contract will be made as follows:

a.  Federal Government: The Contractor shall submit invoices via Electronic Data Interchange (EDI) in a format to be mutually agreed upon between CDC and the Contractor.

b.  Awardees: The Contractor shall submit one hard copy of its invoice(s) to the address specified on the delivery order.

c.  The Contractor agrees to include the following information on each invoice:

1.  Contractor's name and invoice date;

2.  Contract number, or other authorization for delivery of property and/or services;

3.  Description, cost or price, and quantity of property and/or services actually

 delivered or rendered;

4.  Shipping and payment terms;

5.  Other substantiating documentation or information as required by the contract;

6.  Name where practicable, title, phone number, and complete mailing address of responsible official to whom payment is to be sent;

7.  NDC and Lot number of vaccine vials shipped;

Appx8083

    8.  CDC accounting and appropriation data as described on the delivery order; and

    9.  Electronic Funds Transfer (EFT) and Taxpayer Identification Number (TIN).

## C.3.14.  Method of Payment

a.  Federal Government:  The Government will use electronic funds transfer when making payment under this contract IAW/FAR Clause 52.232-33, payment by Electronic Funds Transfer - Central Contractor Registration.

b.  Awardees:  By check

## C.3.15.  Contract Officer Representative (COR)

A COR will be designated in writing by the Contracting Officer to serve during the period of performance of the contract. The COR shall be responsible for guidance in regard to the technical aspect of the contract, provide a point for liaison between the Contractor and other Government agencies and be the general focal point to address technical and logistical problems relating to the performance under the contract. The COR shall not have the authority to make any commitments or authorize any changes which affect the contract price, terms and/or conditions; any such changes shall be referred to the Contracting Officer for action.

## C.3.16.  Return Privileges

Return privileges for credit, reimbursement or exchange do not apply to this contract except vaccines not conforming to the specifications set forth herein.

## C.3.17.  Restrictions on Use of Vaccines

Vaccines obtained under this contract shall be used only in children 18 years of age and younger as authorized under Section 1928 of the Social Security Act.  Sale of such vaccine to any person or entity or reimbursement of vaccine costs is strictly prohibited.  Free distribution of such vaccine is also prohibited, except where such vaccine is administered in the context of Federal and Awardee immunization program activities.

## C.3.18.  Federal Excise Tax Credit

Negotiated prices for the vaccines included in this Contract may include a Federal Excise Tax (See Continuation of SF 1449 for applicable Contract Line Item Numbers).  If for any reason the vaccine is returned (other than for resale) or destroyed, the Contractor shall within 6 months following the date the vaccine is returned or destroyed, file a claim for credit or refund relative to any tax previously paid on such vaccine.  The Contractor agrees to credit or refund the amount of such excise tax to the purchaser to the extent that the Contractor receives a credit or refund from the Federal Government.  Any such credit or refund to the purchaser is expressly conditioned upon the authorized purchaser providing a written summary of events leading to the request for credit or refund.  The purchaser shall return all undistributed vaccine to the Contractor for proper disposal, unless destruction of the vaccine renders return impossible.  If destruction of the vaccine renders return impossible and is therefore destroyed by the purchaser, the authorized purchaser must provide a written summary of events to the Contractor within 30 days of said destruction.  If a contract is in place with the Contractor at the time when a credit or refund is due; the

Appx8084

Solicitation No. 2015-N-16850

purchaser may elect to receive vaccine which will be purchased at the current contract price in lieu of a cash payment. Otherwise, the Contractor shall refund the amount due to the purchaser's account. If a credit or refund is issued by the Contractor for state or local funds, it shall be submitted to the state or local public health entity identified in the request for FET credit. If a credit or refund is issued by the Contractor to the Federal Funds account, it shall contain the Contractor's DUNS and TIN/EIN and shall be submitted to:

Centers for Disease Control and Prevention
Office of the Chief Financial Officer (OCFO)
Attn: Debt Management Branch
P.O. Box 15580
Atlanta, GA 30333

## C.3.19. Delinquent Delivery Report

The Contractor shall provide CDC with a weekly electronic listing of all CDC orders that have not been shipped within the agreed upon delivery schedule. The report shall include the following information: order number, date of order, and status of order in number of pending/undelivered doses. The report shall also provide an explanation as to the cause for the delinquent delivery as well as when the vaccine will be delivered. This notification shall not relieve the contractor from meeting its obligations under the contract and shall not limit the Government's right to seek relief for any breach of contract for failure to perform, including termination for cause.

## C.3.20.    Biological Surveillance Data Reports

a.  The Contractor shall submit a monthly report of historical sales data for the United States by month and state, specifying the name of the vaccine, NDC #, and the total number of doses sold (segregated by CDC and non-CDC sales), in a standardized format acceptable to the Contractor and the CDC. The report shall be submitted electronically to the COR by the 15th of the month. Information related to vaccine sales through CDC contracts is not considered proprietary. CDC acknowledges that those reports pertaining to private sales unrelated to this contract are confidential and proprietary information of the Contractor, and shall not use reports for any purpose other than CDC's internal tracking and reporting purposes and shall not further disclose such reports without the Contractor's prior written consent unless required by the law or other Federal authority; provided that, no Contractor authorization shall be required for the CDC to include the data from the Contractor's report in a report in which aggregated data from multiple Contractors is summarized, so long as, with respect to multi-sourced products, the CDC's aggregated report does not include any data which could be individually identified as the Contractor's. In the event that CDC is required by law or other Federal authority to disclose such reports required to be held confidential hereunder, CDC shall notify the Contractor prior to making such disclosure in accordance with law or other Federal authority.

b.  Data Reports to Manufacturers
The Government will submit monthly reports of all vaccine data specifying doses by project, zip code, and NDC # in a standardized format. For all vaccines except direct ship vaccines, the Government shall provide distribution data. Because the Government does not distribute direct ship vaccines, purchase data will be provided. The reports shall be submitted electronically to the Contractor by the 15th of the month for the previous month. The Government shall also provide the Contractor with an annual Vaccine Tracking System (VTrckS) spend plan for each Awardee and an annual VFC providers list during the first quarter of the fiscal year.

## C.3.21.    Prohibitions on Inducements

Solicitation No. 2015-N-16850

The Contractor is expressly prohibited from offering, providing or arranging inducements of any kind to providers or authorized purchasers ordering vaccine under this contract for the purpose of obtaining orders for vaccine.  Examples of such inducements include, but are not limited to: entertainment, meals, and free or reduced prices for syringes, vaccines, or other medical products or supplies.  If the Contractor has entered into similar agreements with the authorized purchasers which offer inducements relative to its commercial business, these agreements must be clear that they do not apply to purchases made under the CDC Federal contracts.

## C.3.22.   Contract Changes

Notwithstanding FAR Clause 52.212-4(c), Changes, the parties hereby agree that modifications for incremental funding and other administrative changes (e.g., changes to CDC accounting data) that do not affect the terms and conditions of the contract may be made unilaterally by the CDC.

## C.3.23.   Vaccine images

Upon contract award, the Contractor agrees to provide via email camera-ready vaccine product images in .pdf format and written authorization for CDC to use the images to the COR.  CDC will use the images to illustrate the Contractor's products on the CDC vaccine ordering system.  The Contractor agrees to provide CDC with updated product images if there is a change in packaging and vaccine images for new NDCs added to the contract during the period of performance.

## C.3.24.   Advance Notice of Supply Issues

The Contractor agrees to provide advance notification to COR and the CDC Contracting Officer of any supply issue which may result in the Contractor's failure to deliver vaccine within the agreed upon delivery schedule specified in the contract.  This notification shall be given as soon as the Contractor becomes aware of the scope of the problem that will impede the timely delivery of vaccine.  This notification shall not relieve the contractor from meeting its obligations under the contract and shall not limit the Government's right to seek relief for any breach of contract for failure to perform, including termination for cause.  Furthermore, any deviation from the delivery schedule due to a vaccine supply issue will demonstrate reasonably equal treatment with respect to the fulfillment of orders between CDC and the contracting non-government customers.

## C.3.25.      Authorized Distribution of Record (ADR) Agreements

In accordance with the Prescription Drug Marketing Act (PDMA) of 1998, it is requested that all suppliers provide a written statement included as an attachment in Section D of this solicitation, which designates the CDC as the ADR for all vaccines subject to distribution under this contract.

## C.3.26.       Use of VFC Provider Lists and Distribution of Material

a.   Contractors are prohibited from utilizing VFC providers' lists obtained from any source for any mailing or other communication with VFC providers, except as approved in writing by the CDC COR. In addition, contractors are prohibited from otherwise communicating with VFC providers regarding the VFC program, except as approved in writing by the CDC COR.  To the extent that Contractors have established relationships with VFC providers or authorized purchasers under this contract that are independent from the VFC program, communications related to such independent relationships are not covered by this provision and do not require CDC consent.

Appx8086

b.  Contractors are prohibited from providing names and/or addresses of VFC providers to any third party, except as needed to comply with the terms of this contract, in which cases the CDC COR shall be notified in writing.

c.  Any Contractor that ships vaccine directly to VFC providers is prohibited from inserting any promotional or other material that is promotional in nature for any product that the Contractor produces, into shipping containers for vaccine purchased under this contract, except for material related to use of the vaccine as approved in writing by the CDC COR.  Additionally any shipping container inserts that are required, such as handling instructions or educational materials, should not contain any promotional material as part of its content.

## C.3.27.     New FDA Product License

Manufacturers who receive a new FDA product license for a vaccine already included within the scope of a VFC resolution may have the new product added to its contract by modification if it is determined that adding the product is in the best interest of the Government.  Such new products must be consistent with VFC formulary schedules (regarding periodicity and dosage regimens) as established for the vaccines by the Advisory Committee on Immunization Practices (ACIP).  New FDA licensed products added to this contract must comply with Clause C.3.29., *Price Changes,* below.

## C.3.28.   ACIP Approved Product

When a new vaccine product is approved by the ACIP for inclusion in the VFC Formulary, the Manufacturer of such product may have the new product added to its contract by modification if it is determined that adding the product is in the best interest of the Government.  This would include new vaccines, new indications or new formulations for existing products or new dosing regimens for an existing product.  New FDA licensed products added to this contract must comply with Clause C.3.29., *Price Changes,* below.

## C.3.29   Price Changes

All price change effective dates shall be approved by the CDC Contracting Officer and shall occur on the first day of the following month.

## C.3.30   Contract Officer Representative (COR)

A COR will be designated in writing by the Contracting Officer to serve during the period of performance of the contract. The COR shall be responsible for guidance in regard to the technical aspect of the contract, provide a point for liaison between the Contractor and other Government agencies and be the general focal point to address technical and logistical problems relating to the performance under the contract. The COR shall not have the authority to make any commitments or authorize any changes which affect the contract price, terms and/or conditions; any such changes shall be referred to the Contracting Officer for action.

Solicitation No. 2015-N-16850

## C.3.31  Needle Exchange

No funds appropriated in the FY15 Appropriations Act and obligated to this contract may be used to carry out any program of distributing sterile needles or syringes for the hypodermic injection of any illegal drug.

## C.3.32    Evaluation of Contractor Performance Utilizing CPARS (April 2013)

In accordance with FAR 42.15, the Centers for Disease Control and Prevention (CDC) will review and evaluate contract performance.  FAR 42.1502 and 42.1503 requires agencies to prepare evaluations of contractor performance and submit them to the Past Performance Information Retrieval System (PPIRS).  The CDC utilizes the Department of Defense (DOD) web-based Contractor Performance Assessment Reporting System (CPARS) to prepare and report these contractor performance evaluations.  All information contained in these assessments may be used by the Government, within the limitations of FAR 42.15, for future source selections in accordance with FAR 15.304 where past performance is an evaluation factor.

The CPARS system requires a contractor representative to be assigned so that the contractor has appropriate input into the performance evaluation process.  The CPARS contractor representative will be given access to CPARS and will be given the opportunity to concur or not-concur with performance evaluations before the evaluations are complete.  The CPARS contractor representative will also have the opportunity to add comments to performance evaluations.

The assessment is not subject to the Disputes clause of the contract, nor is it subject to appeal beyond the review and comment procedures described in the guides on the CPARS website.  Refer to: www.cpars.gov for details and additional information related to CPARS, CPARS user access, how contract performance assessments are conducted, and how Contractors participate.  Access and training for all persons responsible for the preparation and review of performance assessments is also available at the CPARS website.

The contractor must provide the CDC contracting office with the name, e-mail address, and phone number of their designated CPARS representative who will be responsible for logging into CPARS and reviewing and commenting on performance evaluations.  The contractor must maintain a current representative to serve as the contractor representative in CPARS.  It is the contractor's responsibility to notify the CDC contracting office, in writing (letter or email), when their CPARS representative information needs to be changed or updated.  Failure to maintain current CPARS contractor representative information will result in the loss of an opportunity to review and comment on performance evaluations.

[End of Clause]

## C.3.33  HHSAR 352.203-70 Anti-Lobbying (Mar 2012)

Pursuant to the current HHS annual appropriations act, Public Law 112-74, except for normal and recognized executive-legislative relationships, the Contractor shall not use any HHS contract funds for:

(a)   Publicity or propaganda purposes;

Solicitation No. 2015-N-16850

(b)  the preparation, distribution, or use of any kit, pamphlet, booklet, publication, electronic communication, radio, television or video presentation designed to support or defeat the enactment of legislation before the Congress or any State or local legislature or legislative body, except in presentation to the Congress or any State or local legislature itself; or designed to support or defeat any proposed or pending regulation, administrative action, or order issued by the executive branch of any State or local ·government, except in presentation to the executive branch of any State or local government itself; or

(c)  Payment of salary or expenses of the Contractor, or any agent acting for the Contractor, related to any activity designed to influence the enactment of legislation, appropriations, regulation, administrative action, or Executive order proposed or pending before the Congress or any State government, State  legislature or local legislature or legislative body, other than for normal and recognized executive-legislative relationships or participation by an agency or officer of a State, local or tribal government in policymaking and administrative processes within the executive branch of that government.

The prohibitions in subsections (a), (b) and (c) above shall include any activity to advocate or promote any proposed, pending or future Federal, State or local tax increase, or any proposed, pending, or future requirement for, or restriction on, any legal consumer product, including its sale or marketing, including, but not limited to, the advocacy or promotion of gun control.

(End of clause)

Appx8089

# SECTION D - CONTRACT DOCUMENTS, EXHIBITS OR ATTACHMENTS

**D.1    Websites.** Additional information can be found at www.fob.gov, www.cdc.gov/vaccines; and http://csrc.nist.gov/publications/nistpubs/

**D.2    Attachment A -   Authorized Distributor of Record (ADR) Agreement:**
Offerors shall complete and return the following agreement with their proposals:

*AUTHORIZED DISTRIBUTOR OF RECORD (ADR) AGREEMENT*

This Agreement hereby represents the ongoing relationship between the supplier named below ("MANUFACTURER / SUPPLIER") and the Centers for Disease Control and Prevention , herein after referred to as CDC, to establish and designate CDC as an Authorized Distributor of Record (ADR) as set forth in the Prescription Drug Marketing Act (PDMA) of 1988 as well as in the implementing federal regulations found at 21 CFR Part 203. CDC here after agrees to comply with all applicable state and federal laws to ensure continued status of this relationship. To further meet the requirements of the PDMA, please forward with the signed agreement an attachment with a list of the specific products that CDC is authorized to distribute or a statement that the CDC is an ADR for the manufacturer's entire product line. Specific products should be identified by the pharmaceutical / vaccine name, dosage form, and strength of the drug and the NDC number.

Solicitation No. 2015-N-16850

Check the box that applies:

__ The Distributor is the ADR for Supplier's entire product line.

__ The Distributor is the ADR for the products listed on the Attachment A-1.

This agreement shall be valid from the date of dual execution until termination by either party on ninety (90) days written notice. This agreement shall not abridge, supplant, modify, or in any way alter any other pre-existing distribution agreement or any future agreements that may, from time to time, be executed in the furtherance of the business relationship between Manufacturer/ Supplier and the CDC.

This agreement confers no rights upon CDC other than to designate CDC as an Authorized Distributor of Record for Manufacturer/ Supplier. This agreement is not intended to be, nor shall it be, interpreted as a sales agreement or any other type of agreement other than to represent an "ongoing relationship" within the meaning set forth in 21 CFR Part 203.3(u).

*By affixing my signature below, I do hereby acknowledge and represent that I have read this Agreement in its entirety, that I understand its terms, that I am duly authorized to bind my organization to the requirements detailed in the above Agreement and that I agree to ensure that my organization will adhere to such requirement for the duration herein stated.*

Authorized Distributor of Record: **Centers for Disease Control and Prevention (CDC)**

Authorized Signature:_____

Print Name:   Alan W. Sims, U.S. Government Contracting Officer

Date: _____

----------------------------------------------------------------------------------------------------------------

Manufacturer / Supplier: _____

Authorized Signature: _____

Print Name: _____

Date: _____

ATTACHMENT A-1

## LIST OF PRODUCTS

| Item No. | Product/Brand Name | NDC |
|----------|--------------------|-----|
| 1. | Vaccine | xxxxx-xxxx-xx |
| 2. | Vaccine | xxxxx-xxxx-xx |
| 3. | Vaccine | xxxxx-xxxx-xx |

Appx8091

# SECTION E - SOLICITATION PROVISIONS

**E.1    The following provisions are added by reference:**

| FAR SOURCE | TITLE AND DATE |
|---|---|
| 52.212-1 | Instructions to Offerors - Commercial Items (Apr 2014) |
| 52.212-3 | Offeror Representations and Certifications - Commercial Items  (Dec 2014) |
| 52.232-18 | Availability of Funds (Apr 1984) |

**E.2    Paragraph ( c) of 52.212-1, Period for acceptance of offers, is deleted in its entirety and the following is substituted therefore:**

( c) *Period for acceptance of offers*.  The offeror agrees to hold the prices in its offer firm for 60 calendar days from the date specified for receipt of offers, unless another time period is specified in an addendum to the solicitation.

**E.3    FAR   52.233-2  Service of Protest (Sept 2006)**

a.   Protests, as defined in section 33.101 of the Federal Acquisition Regulation, that are filed directly with the agency, and copies of any protests that are filed with the General Accounting Office (GAO), shall be served on the Contracting Officer (addressed as follows) by obtaining written and dated acknowledgment of receipt from:

> Centers for Disease Control & Prevention
> Attn: Berta Biltz
> 2920 Brandywine Road, Room 3000
> Atlanta, GA 30341-5539

b.   The copy of any protest shall be received in the office designated above within one day of filing a protest with the GAO.

**E.4    52.215-20  Requirements for Certified Cost or Pricing Data and Data Other Than Certified Cost or Pricing Data. (Oct 2010)**

(a) Exceptions from certified cost or pricing data.
(1) In lieu of submitting certified cost or pricing data, offerors may submit a written request for exception by submitting the information described in the following paragraphs. The Contracting Officer may require additional supporting information, but only to the extent necessary to determine whether an exception should be granted, and whether the price is fair and reasonable.
(i) *Identification of the law or regulation establishing the price offered*. If the price is controlled under law by periodic rulings, reviews, or similar actions of a governmental body, attach a copy of the controlling document, unless it was previously submitted to the contracting office.
(ii) *Commercial item exception*. For a commercial item exception, the offeror shall submit, at minimum, information on prices at which the same item or similar items have previously been sold in the commercial market that is adequate for evaluating the reasonableness of the price for this acquisition. Such information may include—
(A) For catalog items, a copy of or identification of the catalog and its date, or the appropriate pages for the offered items, or a statement that the catalog is on file in the buying office to which the proposal is being submitted. Provide a copy or describe current discount policies and price lists (published or unpublished),

*e.g.,* wholesale, original equipment manufacturer, or reseller. Also explain the basis of each offered price and its relationship to the established catalog price, including how the proposed price relates to the price of recent sales in quantities similar to the proposed quantities;

(B) For market-priced items, the source and date or period of the market quotation or other basis for market price, the base amount, and applicable discounts. In addition, describe the nature of the market;

(C) For items included on an active Federal Supply Service Multiple Award Schedule contract, proof that an exception has been granted for the schedule item.

(2) The offeror grants the Contracting Officer or an authorized representative the right to examine, at any time before award, books, records, documents, or other directly pertinent records to verify any request for an exception under this provision, and the reasonableness of price. For items priced using catalog or market prices, or law or regulation, access does not extend to cost or profit information or other data relevant solely to the offeror's determination of the prices to be offered in the catalog or marketplace.

(b) *Requirements for certified cost or pricing data.* If the offeror is not granted an exception from the requirement to submit certified cost or pricing data, the following applies:

(1) The offeror shall prepare and submit certified cost or pricing data, data other than certified cost or pricing data, and supporting attachments in accordance with the instructions contained in Table 15-2 of FAR 15.408, which is incorporated by reference with the same force and effect as though it were inserted here in full text. The instructions in Table 15-2 are incorporated as a mandatory format to be used in this contract, unless the Contracting Officer and the Contractor agree to a different format and change this clause to use Alternate I.

(2) As soon as practicable after agreement on price, but before contract award (except for unpriced actions such as letter contracts), the offeror shall submit a Certificate of Current Cost or Pricing Data, as prescribed by FAR 15.406-2.

(End of provision)

*Alternate I (Oct 2010).* As prescribed in 15.408(l) (and see 15.403-5(b)(1)), substitute the following paragraph (b)(1) for paragraph (b)(1) of the basic provision:

(b)( 1) The offeror shall submit certified cost or pricing data, data other than certified cost or pricing data, and supporting attachments in the following format: [Insert description of the data and format that are required, and include access to records necessary to permit an adequate evaluation of the proposed price in accordance with 15.408, Table 15-2, Note 2. The description may be inserted at the time of issuing the solicitation, or the Contracting Officer may specify that the offeror's format will be acceptable, or the description may be inserted as the result of negotiations.]:

(a)     Submit the cost portion of the proposal via the following electronic media: [*electronic spreadsheet*]

## E.5     FAR 52.215-21 Alternate III Requirements for Cost or Pricing Data or Information Other Than Cost or Pricing Data - Modifications - Alternate III (Oct 1997)

(c) Submit the cost portion of the proposal via the following electronic media: *electronic spreadsheet*

## E.6     INSTRUCTIONS FOR SUBMISSION OF OFFERS:

a.   Offerors shall submit their offers on the basis of Firm-Fixed Price by **Midnight, February 5, 2015.**

b.   Offers shall be submitted electronically (via e-mail) in MS Word or MS Excel files to Boh9@cdc.gov and auy0@cdc.gov.  The following format is required as e-mail subject:  The RFP No: **2015-N-16850.KT.doc or .xls**  (Where "**2015-N-16850** is the respective RFP No. and "KT" are the first two letters of the respective Contractor's name; and ".doc" and ".xls" are the format extensions.)

c.   In the event there are electronic transmission problems, the following steps shall be taken:

      i.  CDC receives the electronic file timely, but cannot access it.  The offeror will be contacted and may be allowed to fax in the portions that cannot be accessed.

     ii.  Facsimile quotes are not authorized. Technical inquiries shall be e-mailed to Boh9@cdc.gov and auy0@cdc.gov . Telephone inquiries will not be honored.

    iii.  Contractor sends electronic file, but receives error message indicating e-mail problems at CDC. Fax in a cover sheet indicating transmission difficulties, and the Contract Specialist will contact the Contractor to arrange an alternate method of submission. Offerors are requested not to fax entire proposals to PGO. Facsimile submission shall only be used after contacting the Contract Specialist.

d.  2D Barcodes:  Include a plan outlining the Offeror's approach and timeline to implement 2D barcodes on vaccine unit of  use.

e.  Electronic Data Interchanges (EDI):  Based on CDC experience with its Vaccine Order Management System (VTrckS), including the transition of a number of manufacturer vendors to EDI communications with VTrckS, the estimated level of effort needed by the manufacturer/distributor to implement all six messages required for communications with VTrckS ranges from 1000-2000 hours.  This estimate covers all steps, including requirement analysis, design, mapping, development, unit/integration testing and deployment.  Factors that are likely to impact the actual number of hours include available resources, technical solution chosen, existing vendor infrastructure, and complexity of existing vendor infrastructure. Note that the government will not reimburse contractors for any expenses associated with the EDI implementation.

f.  Contractors are responsible for providing accurate and complete information for evaluation. (Failure to do so may rule the quote unacceptable.) Thus, the proposal shall include the following information for evaluation:

g.  Contractors are responsible for providing accurate and complete information for evaluation. (Failure to do so may rule the quote unacceptable.) Thus, the proposal shall include the following information for evaluation:

      i.  <u>The Technical Proposal</u>:  Offerors other than vaccine manufacturers shall provide documentation that clearly demonstrates their ability to:

        1.  meet the provisions of the Federal Excise Tax Credit contract clause;

        2.  provide vaccine maximum quantities specified within each Contract Line Item Number; and

        3.  meet the vaccine Shelf Life provision.

        4.  produce and deliver vaccines under a current establishment and product license issued by the U.S. Food and Drug Administration.

     ii.  <u>Past Performance</u>:  Past performance is one indicator of the offeror's ability to perform the contract successfully. The government will evaluate different customers' opinions about ***how well*** (quality) the offeror has satisfied their requirements.   Offerors shall provide, as part of their proposal, a list of clients or former clients for whom they have performed the same or similar work to the one required by this solicitation during the past five years.

## E.7   Inquiries

Inquiries concerning the solicitation document shall be submitted in writing to the issuing office.  Any additions, deletions, or changes to the solicitation will be made by an amendment.  OFFERORS ARE INSTRUCTED SPECIFICALLY TO CONTACT ONLY THE  SOLICITATION CONTRACTING OFFICE

IN CONNECTION WITH ANY ASPECT OF THIS REQUIREMENT PRIOR TO CONTRACT AWARD. PROPOSALS AND ALL CORRESPONDENCE RELATING TO THE SOLICITATION DOCUMENT SHALL BE SUBMITTED TO THE CONTRACTING OFFICE.  Inquiries shall be received at the Contracting Office no later than **January 30,  2015**  via e-mail to: boh9@cdc.gov and auy0@cdc.gov .

**E.8      Subcontracting Plan**

The offeror, prior to being awarded a contract, shall submit an acceptable subcontracting plan (see FAR 52.219-9) or demonstrate that no subcontracting opportunities exist.  (Note:  This requirement does not apply to small business concerns or to offers which do not exceed $500,000.00 ($1,000,000.00 for construction) or to offers from non-domestic concerns.)

CDC Small Business Goals for 2015 are:

| Business Type | CDC's 2015 Goals |
|---|---|
| Small Business | 10.0% |
| Small Disadvantaged Business | 5.00% |
| HUBZONE | 5.00% |
| Women-Owned Small Business | 3.00% |
| Service-Disabled Veteran-Owned Business Subcontracting (SDVOSB) | 3.00% |
| Veteran-Owned (VOSB) | 0.00% |
| Total | 26.00% |

**E. 9    FAR 52.212-3 Offeror Representations and Certifications**

An offeror shall complete only paragraph (b) of this provision if the offeror has completed the annual representations and certifications electronically at http://orca.bpn.gov.

(End of Provision)

**E. 10   52.212-2 Evaluation - Commercial Items (Oct 2014)**

(a) The Government will award a contract resulting from this solicitation to the responsible offeror whose offer conforming to the solicitation will be most advantageous to the Government, price and other factors considered. The following factors shall be used to evaluate offers:

> *(i)    technical capability of the item offered to meet the Government requirement;*
> (ii)   *price;*
> (iii)  *past performance*

Technical and past performance, when combined, is equal in importance to price.

(b) A written notice of award or acceptance of an offer, mailed or otherwise furnished to the successful offeror within the time for acceptance specified in the offer, shall result in a binding contract without further action by either party. Before the offer's specified expiration time, the Government may accept an offer (or part of an offer), whether or not there are negotiations after its receipt, unless a written notice of withdrawal is received before award.

(c)  Past performance will be evaluated for **only those offerors remaining in the competitive range** as follows:

1. Each offeror shall be evaluated on its past performance under current and prior contracts.  By past performance, the Government means the offeror's record of conforming to specifications and to standards of good

Appx8095

workmanship; the contractor's record of forecasting and controlling costs; the offeror's adherence to contract schedules and terms, including the administrative aspects of performance; the offeror's reputation for reasonable and cooperative behavior and commitment to customer satisfaction; and generally, the offeror's business-like concern for the interest of the customer and the degree of quality of deliverables and performance.

2. Past performance will not be scored, but the Government's conclusions about overall quality of the offeror's past performance will be highly influential in determining the relative merits of the offeror's proposal and in selecting the offeror whose proposal is considered the most advantageous/best value to the Government.

3. Evaluation of past performance will be a subjective assessment based on a consideration of all relevant facts and circumstances. It will not be based on absolute standards of acceptable performance.

4. The assessment of the offerors past performance will be used as a means of evaluating the relative capability of the offeror and the other competitors. Thus, an offeror with an exceptional record of relevant past performance may receive a more favorable evaluation than another whose record is acceptable and/or less relevant, even though both may have acceptable technical and business proposals.

5. An offeror without a record of past performance or for whom information on past performance is not available will not be evaluated favorably or unfavorably.

6. Evaluation of past performance information will be reflected in terms of the following degrees of performance assessment:

**Excellent:** A significant majority of the sources of information are consistently firm in stating that the offeror's performance was superior and that they would unhesitatingly do business with the offeror again. Complaints are negligible or unfounded. The offeror has no record of criminal conduct, civil fraud, or negligence, or the record is old and the offeror has demonstrated by more recent performance that corrective action has made the likelihood of such conduct in the future highly improbably. No doubt exists that the offeror will successfully perform the Government's requirements as stated in the RFP.

**Good:** Most sources of information state that the offeror's performance was good, better than average, etc., and that they would willingly do business with the offeror again. Complaints, though perhaps well-founded, are few and relatively minor. The offeror has no record of criminal conduct, civil fraud, or negligence, or the record is old and the offeror has demonstrated by more recent performance that corrective action has made the likelihood of such conduct in the future highly improbable. Little doubt exists that the offeror will successfully perform the Government's requirements as stated in the RFP.

**Neutral:** Either no past performance history exists for the corporation, predecessor companies, key personnel, or major/critical subcontractors, or the offeror's record of past performance was neither predominantly favorable nor unfavorable. In the latter case, sources of information are roughly divided over the quality of the offeror's performance. While some state that they would do business with the offeror again, others are doubtful or would not. Complaints are balanced by reports of good work. The offeror has no record of criminal conduct, civil fraud, or negligence, or the record is old.

**Marginal:** Many sources of information made unfavorable reports about the offeror's performance and either express serious doubts about doing business with the offeror again or state that they would refuse to do so. However, there are some favorable reports, and some sources of information indicate that they would do business with the offeror again. There are many significant, serious, and well-founded complaints, but there are some reports of very good performance. The offeror may have been indicted, pled guilty, or may have been found guilty in matters of criminal conduct, but the issues are either unresolved, relatively minor, or do not reflect a company-wide or managerial pattern of wrongdoing. The offeror may have lost civil suits for fraud or negligence, but there is no company-wide or managerial pattern of fraudulent, negligent, or

Solicitation No. 2015-N-16850

criminal conduct.  Some doubt exists that the offeror will successfully perform the Government's requirements as stated in the RFP.

**Poor:**  A significant majority of sources of information are consistently firm in stating that the offeror's performance was entirely unsatisfactory and that they would not do business with the offeror again under any circumstances.  Customer complaints are substantial or numerous and are well-founded.  Or, although not debarred or suspended, the offeror is under indictment or has been convicted of criminal conduct, or has been found civilly liable for fraud or negligence.  The offeror either has presented no persuasive evidence of having taken appropriate corrective action that will guard against such conduct in the foreseeable future, or it appears unlikely that the corrective action will be effective.  Serious doubt exists that the offeror will successfully perform the Government requirements as stated in the RFP.

**(**End of Provision**)**

10/25/2019
Declaration of G. Reilly
EXHIBIT 275

# SOLICITATION/CONTRACT/ORDER FOR COMMERCIAL ITEMS
*OFFEROR TO COMPLETE BLOCKS 12, 17, 23, 24, & 30*

| | |
|---|---|
| 1. REQUISITION NUMBER | PAGE 1 OF 27 |

| 2. CONTRACT NO. | 3. AWARD/EFFECTIVE DATE | 4. ORDER NUMBER | 5. SOLICITATION NUMBER 2016-N-17693 | 6. SOLICITATION ISSUE DATE 01/04/2015 |
|---|---|---|---|---|

| 7. FOR SOLICITATION INFORMATION CALL: ▶ | a. NAME David Dombeck | b. TELEPHONE NUMBER *(No collect calls)* (770) 488-2695 | 8. OFFER DUE DATE/ LOCAL TIME 01/20/2016 |
|---|---|---|---|

| 9. ISSUED BY | CODE | 8219 | 10. THIS ACQUISITION IS | 11. DELIVERY FOR FOB DESTINATION UNLESS BLOCK IS MARKED | 12. DISCOUNT TERMS |
|---|---|---|---|---|---|

9. ISSUED BY CODE 8219

Centers for Disease Control and Prevention (CDC)
Office of Acquisition Services (OAS)
2920 Brandywine Road
Atlanta, GA 30341-5539

10. THIS ACQUISITION IS
X UNRESTRICTED
SET ASIDE: ____ % FOR
SMALL BUSINESS
SMALL DISADV. BUSINESS
8(A)
SIC: 325412
SIZE STANDARD:

11. DELIVERY FOR FOB DESTINATION UNLESS BLOCK IS MARKED
X SEE SCHEDULE

13a. THIS CONTRACT IS A RATED ORDER UNDER DPAS (15 CFR 700)

13b. RATING

14. METHOD OF SOLICITATION
RFQ    IFB    X RFP

| 15. DELIVER TO | CODE | 16. ADMINISTERED BY | CODE |
|---|---|---|---|

15. DELIVER TO CODE
To be indicated by the individual delivery orders placed against the contract.

16. ADMINISTERED BY
Centers for Disease Control and Prevention (CDC)
Office of Acquisition Services (OAS)
2920 Brandywine Road
Atlanta, GA 30341-5539

| 17a. CONTRACTOR/OFFEROR CODE     FACILITY CODE | 18a. PAYMENT WILL BE MADE BY | CODE | 434 |
|---|---|---|---|

18a. PAYMENT WILL BE MADE BY CODE 434
Centers for Disease Control and Prevention (FMO)
PO Box 15580 404-718-8100

Atlanta, GA 30333-0080

TELEPHONE NO.

17b. CHECK IF REMITTANCE IS DIFFERENT AND PUT SUCH ADDRESS IN OFFER

18b. SUBMIT INVOICES TO ADDRESS SHOWN IN BLOCK 18a UNLESS BLOCK BELOW IS CHECKED    SEE ADDENDUM

| 19. ITEM NO. | 20. SCHEDULE OF SUPPLIES/SERVICES | 21. QUANTITY | 22. UNIT | 23. UNIT PRICE | 24. AMOUNT |
|---|---|---|---|---|---|
| | **VFC 2015**<br><br>"See Continuation Page" | | | | |

25. ACCOUNTING AND APPROPRIATION DATA

26. TOTAL AWARD AMOUNT *(For Govt. Use Only)*

X 27a. SOLICITATION INCORPORATES BY REFERENCE FAR 52.212-1, 52.212-4. FAR 52.212-3 AND 52.212-5 ARE ATTACHED. ADDENDA    X ARE    ARE NOT ATTACHED.
27b. CONTRACT/PURCHASE ORDER INCORPORATES BY REFERENCE FAR 52.212-4. FAR 52.212-5 IS ATTACHED. ADDENDA    ARE    ARE NOT ATTACHED.

| 28. CONTRACTOR IS REQUIRED TO SIGN THIS DOCUMENT AND RETURN ____ COPIES TO ISSUING OFFICE. CONTRACTOR AGREES TO FURNISH AND DELIVER ALL ITEMS SET FORTH OR OTHERWISE IDENTIFIED ABOVE AND ON ANY ADDITIONAL SHEETS SUBJECT TO THE TERMS AND CONDITIONS SPECIFIED HEREIN. | 29. AWARD OF CONTRACT: REFERENCE ____ OFFER DATED ____ . YOUR OFFER ON SOLICITATION (BLOCK 5), INCLUDING ANY ADDITIONS OR CHANGES WHICH ARE SET FORTH HEREIN, IS ACCEPTED AS TO ITEMS: |
|---|---|
| 30a. SIGNATURE OF OFFEROR/CONTRACTOR | 31a. UNITED STATES OF AMERICA *(Signature of Contracting Officer)* |
| 30b. NAME AND TITLE OF SIGNER *(Type or print)* | 30c. DATE SIGNED | 31b. NAME OF CONTRACTING OFFICER *(Type or print)* | 31c. DATE SIGNED |

| 32a. QUANTITY IN COLUMN 21 HAS BEEN<br>RECEIVED    INSPECTED    ACCEPTED, AND CONFORMS TO THE CONTRACT, EXCEPT AS NOTED | 33. SHIP NUMBER<br>PARTIAL    FINAL | 34. VOUCHER NUMBER | 35. AMOUNT VERIFIED CORRECT FOR |
|---|---|---|---|
| 32b. SIGNATURE OF AUTHORIZED GOV'T REPRESENTATIVE    32c. DATE | 36. PAYMENT<br>COMPLETE    PARTIAL    FINAL | | 37. CHECK NUMBER |
| | 38. S/R ACCOUNT NUMBER | 39. S/R VOUCHER NUMBER | 40. PAID BY |
| 41a. I CERTIFY THIS AMOUNT IS CORRECT AND PROPER FOR PAYMENT | 42a. RECEIVED BY *(Print)* | | |
| 41b. SIGNATURE AND TITLE OF CERTIFYING OFFICER    41c. DATE | 42b. RECEIVED AT *(Location)* | | |
| | 42c. DATE REC'D    42d. TOTAL CONTAINERS | | |

| | |
|---|---|
| AUTHORIZED FOR LOCAL REPRODUCTION    SEE REVERSE FOR OMB CONTROL NUMBER AND PAPERWORK BURDEN STATEMENT | STANDARD FORM 1449    (10-95) |

Appx8099

# TABLE OF CONTENTS

| Section | Document/Clause/Provision | Page No. |
|---|---|---|
| A | Standard Form 1449 | |
| B | Continuation of SF1449 (Block 19 – 24) | 2 |
| C | Contract Clauses | 6 |
| D | Contract Documents, Exhibits or Attachments | 21 |
| E | Solicitation Provisions | 24 |

Appx8100

Contract No. 2016-N-17693

# SECTION B - CONTINUATION OF SF1449

The National Center for Immunization and Respiratory Diseases (NCIRD) requires the award of multiple indefinite quantity, indefinite delivery contracts for the purchase of standard commercial pediatric vaccines, manufactured under a current establishment and product license issued by the U.S. Food and Drug Administration.  The vaccines awarded under these contracts will be purchased for NCIRD's immunization Awardees to support pediatric immunization programs as provided under Section 317(j) of the Public Health Service Act and Vaccine for Children (VFC) program, established pursuant to Section 13631 of the Omnibus Budget Reconciliation Act of 1993 (OBRA '93).

| ITEM | SUPPLIES / SERVICES | QTY / UNIT | UNIT PRICE | EXTENDED |
|------|---------------------|------------|-----------|----------|
| 1. | DTaP vaccine:<br><br>Min. Shelf Life: 12 Months<br>Fed. Excise Tax: $2.25 per dose | Maximum: 6.5M Doses<br><br>Minimum: 100 Doses | | |
| 2. | DTaP/Hep B/IPV vaccine:<br><br>Min. Shelf Life: 12 Months<br>Fed. Excise Tax: $3.75 per dose | Maximum: 5.38M Doses<br><br>Minimum: 100 Doses | | |
| 3. | DTaP-IPV Vaccine:<br><br>Min. Shelf Life:  12 months<br>Fed. Excise Tax: $3.00 per dose | Maximum: 3.5M Doses<br><br>Minimum:  100 Doses | | |
| 4. | DTaP-IP-HI Vaccine:<br><br>Min. Shelf Life: 12 months<br>Fed. Excise Tax: $3.75 per dose | Maximum:  7.5M Doses<br><br>Minimum. 100 Doses | | |
| 5. | E-IPV vaccine:<br><br>Min. Shelf Life: 12 Months<br>Fed. Excise Tax: $0.75 | Maximum: 4M Doses<br><br>Minimum: 100 Doses | | |
| 6. | Hepatitis A (pediatric) vaccine<br><br>Min. Shelf Life: 12 Months<br>Fed. Excise Tax: $0.75 per dose | Maximum: 8.5M Doses<br><br>Minimum: 100 Doses | | |
| 7. | Hepatitis A&B (Age 18 only) vaccine<br><br>Min. Shelf Life: 12 Months<br>Fed. Excise Tax: $1.50 per dose | Maximum: 100,000 Doses<br><br>Minimum: 100 Doses | | |
| 8. | Hepatitis B (pediatric/adol.) vaccine<br><br>Min. Shelf Life: 12 Months<br>Fed. Excise Tax: $0.75 per dose | Maximum: 7.7M Doses<br><br>Minimum: 100 Doses | | |
| 9. | Hib vaccine<br><br>Min. Shelf Life: 12 Months | Maximum: 8M Doses<br><br>Minimum: 100 Doses | | |

Appx8101

**Contract No. 2016-N-17693**

| | | | | |
|---|---|---|---|---|
| | Fed. Excise Tax: $0.75 per dose | | | |
| 10. | Human Papillomavirus types Vaccine, Recombinant (Incl. HPV2, HPV4, HPV9)<br><br>Min. Shelf Life: 12 Months<br>Fed. Excise Tax: $0.75 per dose | Maximum: 9M Doses<br><br>Minimum: 100 Doses | | |
| 11. | Measles, Mumps & Rubella (MMR) vaccine<br><br>Min. Shelf Life: 12 Months<br>Fed. Excise Tax: $2.25 per dose | Maximum: 8M Doses<br><br>Minimum: 100 Doses | | |
| 12. | Meningococcal Conjugate (MCV4) vaccine<br><br>Min. Shelf Life: 12 Months<br>Fed. Excise Tax: $0.75 per dose | Maximum: 6.5M Doses<br><br>Minimum: 100 Doses | | |
| 13. | Pneumococcal Conjugate vaccine (13 Valent)<br><br>Min. Shelf Life: 12 Months<br>Fed. Excise Tax: $0.75 per dose | Maximum: 13M Doses<br><br>Minimum: 100 Doses | | |
| 14. | Pneumococcal (23 Valent) Polysaccharide Vaccine<br><br>Min. Shelf Life:  12 Months<br>Fed. Excise Tax:  N/A | Maximum: 350K Doses<br><br>Minimum: 100 Doses | | |
| 15. | Rotavirus vaccine<br><br>Min. Shelf Life: 12 Months<br>Fed. Excise Tax: $0.75 per dose | Maximum: 7M Doses<br><br>Minimum: 100 Doses | | |
| 16. | Tetanus and Diphtheria (Td) vaccine<br><br>Min. Shelf Life: 12 Months<br>Fed. Excise Tax: $1.50 per dose | Maximum: 750,000 Doses<br><br>Minimum: 100 Doses | | |
| 17. | Tdap vaccine<br><br>Min. Shelf Life: 12 Months<br>Fed. Excise Tax: $2.25 per dose | Maximum: 5.5M Doses<br><br>Minimum: 100 Doses | | |
| 18. | Varicella vaccine<br><br>Min. Shelf Life: 12 Months<br>Min. Order Size: 10 Doses<br>Fed. Excise Tax: $0.75 per dose | Maximum: 10M Doses<br><br>Minimum: 10 Doses | | |

Appx8102

Contract No. 2016-N-17693

| | | | | |
|---|---|---|---|---|
| 19. | Measles, Mumps & Rubella (MMR-V) and Varicella vaccine<br>Min. Shelf Life: 12 Months<br>Min. Order Size: 10 Doses<br>Fed. Excise Tax: $3.00 per dose | Maximum: 3.3M Doses<br><br>Minimum: 10 Doses | | |
| 20. | Meningococcal and Hib Vaccine (HibMenCY)<br>Min. Shelf Life: 12 Months<br>Fed. Excise Tax: $1.50 | Maximum: 50,000 Doses<br>Minimum: 100 Doses | | |
| 21. | Serogroup B Meningococcal<br><br><br>Min. Shelf Life: 12 Months<br>Fed. Excise Tax: $0.75 | Maximum: 1M Doses<br><br>Minimum: 100 Doses | | |
| **TOTAL** | | | | |

## Notes:

**B.1 Background:** The Centers for Disease Control and Prevention (CDC) awards contracts to manufacturers for the purchase of standard commercial pediatric vaccines. Vaccines are one of the most cost-effective ways to prevent disease and reduce healthcare costs. The Vaccines for Children (VFC) program, established pursuant to Section 13631 of the Omnibus Budget Reconciliation Act of 1993 (OBRA '93), guarantees federal support for the purchase and supply of sufficient quantities of vaccine to the States to cover a defined group of children. The program helps assure the implementation of effective immunization practices and proper use of vaccines to achieve higher immunization coverage. Children (18 years-of-age or younger) who qualify for immunization through the VFC purchase program include those who are (1) Medicaid-eligible, (2) without health insurance, (3) American Indian/Alaska native (as defined in Subsection (h)(3) of the OBRA '93), or (4) children with health insurance, which does not cover the cost of vaccines, if they receive their immunizations at a Federally Qualified Health Center or rural health clinic (as defined by the Social Security Act). Health care providers who agree to certain requirements are eligible through the States to receive free vaccine through this VFC purchase program. The establishment of these contracts provides an opportunity to utilize VFC funds and Section 317 vaccine purchase direct assistance (DA) cooperative agreement funds to obtain vaccines at prices below those available in the commercial market place. In addition, States may opt to purchase additional quantities of vaccine under any resulting contract to provide immunizations for children who are not federally vaccine-eligible children.

Appx8103

Contract No. 2016-N-17693

**B.2   Definitions:**

<u>OBRA Orders</u> – Vaccine orders under Section 1928(a) (2)(A) of the Social Security Act.

<u>317 Orders</u> – Vaccine orders under Section 317(j) of the Public Health Service Act.

<u>State and Local Orders</u> – Vaccine orders placed by authorized immunization programs using state or local funds in accordance with Section 1928(d)(4)(B) of the Social Security Act.

<u>Manufacturer</u> – As defined in Subsection (h) (4) of the Social Security Act, means any corporation, organization, or institution, whether public or private, which manufactures, imports, processes, or distributes under its label any pediatric vaccine.

<u>Awardees</u> – Includes State health departments and certain local health agencies authorized to order hereunder.

**B.3 Type of Contract:** Firm-Fixed Price

Appx8104

Contract No. 2016-N-17693

# SECTION C - CONTRACT CLAUSES

**C.1.      52.212-5 Contract Terms and Conditions Required to Implement Statutes or Executive Orders—Commercial Items.(MAR 2015)**

(a) The Contractor shall comply with the following Federal Acquisition Regulation (FAR) clauses, which are incorporated in this contract by reference, to implement provisions of law or Executive orders applicable to acquisitions of commercial items:

(1) 52.209-10, Prohibition on Contracting with Inverted Domestic Corporations (Dec 2014)

(2) 52.233-3, Protest After Award (AUG 1996) (31 U.S.C. 3553).

(3) 52.233-4, Applicable Law for Breach of Contract Claim (OCT 2004) (Public Laws 108-77, 108-78 (19 U.S.C. 3805 note)).

(b) The Contractor shall comply with the FAR clauses in this paragraph (b) that the contracting officer has indicated as being incorporated in this contract by reference to implement provisions of law or Executive orders applicable to acquisitions of commercial items:

_X_ (1) 52.203-6, Restrictions on Subcontractor Sales to the Government (Sept 2006), with Alternate I (Oct 1995) (41 U.S.C. 4704 and 10 U.S.C. 2402).

_X_ (2) 52.203-13, Contractor Code of Business Ethics and Conduct (Apr 2010) (41 U.S.C. 3509).

___ (3) 52.203-15, Whistleblower Protections under the American Recovery and Reinvestment Act of 2009 (Jun 2010) (Section 1553 of Pub L. 111-5) (Applies to contracts funded by the American Recovery and Reinvestment Act of 2009).

_X_ (4) 52.204-10, Reporting Executive compensation and First-Tier Subcontract Awards (Jul 2013) (Pub. L. 109-282) (31 U.S.C. 6101 note).

___ (5) [Reserved]

___ (6) 52.204-14, Service Contract Reporting Requirements (Jan 2014) (Pub. L. 111-117, section 743 of Div. C).

___ (7) 52.204-15, Service Contract Reporting Requirements for Indefinite-Delivery Contracts (Jan 2014) (Pub. L. 111-117, section 743 of Div. C).

_X_ (8) 52.209-6, Protecting the Government's Interest When Subcontracting with Contractors Debarred, Suspended, or Proposed for Debarment (Aug 2013) (31 U.S.C. 6101 note).

_X_ (9) 52.209-9, Updates of Publicly Available Information Regarding Responsibility Matters (Jul 2013) (41 U.S.C. 2313).

_X_ (10) 52.209-10, Prohibition on Contracting with Inverted Domestic Corporations (May 2012) (section 738 of Division C of Public Law 112-74, section 740 of Division C of Pub. L. 111-117, section 743 of Division D of Pub. L. 111-8, and section 745 of Division D of Pub. L. 110-161).

___ (11) (i) 52.219-3, Notice of HUBZone Set-Aside or Sole-Source Award (Nov 2011) (15 U.S.C. 657a).

___ (ii) Alternate I (Nov 2011) of 52.219-3.

_X_ (12) (i) 52.219-4, Notice of Price Evaluation Preference for HUBZone Small Business Concerns (Oct 2011) (if the offeror elects to waive the preference, it shall so indicate in its offer)(15 U.S.C. 657a).

___ (ii) Alternate I (Jan 2011) of 52.219-4.

___ (13) [Reserved]

___ (14) (i) 52.219-6, Notice of Total Small Business Aside (Nov 2011) (15 U.S.C. 644).

___ (ii) Alternate I (Nov 2011).

___ (iii) Alternate II (Nov 2011).

___ (15) (i) 52.219-7, Notice of Partial Small Business Set-Aside (June 2003) (15 U.S.C. 644).

___ (ii) Alternate I (Oct 1995) of 52.219-7.

___ (iii) Alternate II (Mar 2004) of 52.219-7.

_X_ (16) 52.219-8, Utilization of Small Business Concerns (Oct 2014) (15 U.S.C. 637(d)(2) and (3)).

_X_ (17) (i) 52.219-9, Small Business Subcontracting Plan (Oct 2014) (15 U.S.C. 637 (d)(4)).

___ (ii) Alternate I (Oct 2001) of 52.219-9.

___ (iii) Alternate II (Oct 2001) of 52.219-9.

___ (iv) Alternate III (Oct 2014) of 52.219-9.

___ (18) 52.219-13, Notice of Set-Aside of Orders (Nov 2011) (15 U.S.C. 644(r)).

___ (19) 52.219-14, Limitations on Subcontracting (Nov 2011) (15 U.S.C. 637(a)(14)).

_X_ (20) 52.219-16, Liquidated Damages—Subcontracting Plan (Jan 1999) (15 U.S.C. 637(d)(4)(F)(i)).

___ (21) 52.219-27, Notice of Service-Disabled Veteran-Owned Small Business Set-Aside (Nov 2011) (15 U.S.C. 657f).

_X_ (22) 52.219-28, Post Award Small Business Program Rerepresentation (Jul 2013) (15 U.S.C. 632(a)(2)).

___ (23) 52.219-29, Notice of Set-Aside for Economically Disadvantaged Women-Owned Small Business (EDWOSB) Concerns (Jul 2013) (15 U.S.C. 637(m)).

___ (24) 52.219-30, Notice of Set-Aside for Women-Owned Small Business (WOSB) Concerns Eligible Under the WOSB Program (Jul 2013) (15 U.S.C. 637(m)).

___ (25) 52.222-3, Convict Labor (June 2003) (E.O. 11755).

_X-__ (26) 52.222-19, Child Labor—Cooperation with Authorities and Remedies (Jan 2014) (E.O. 13126).

_X_ (27) 52.222-21, Prohibition of Segregated Facilities (Feb 1999).

_X_ (28) 52.222-26, Equal Opportunity (Mar 2007) (E.O. 11246).

_X_ (29) 52.222-35, Equal Opportunity for Veterans (Jul 2014) (38 U.S.C. 4212).

_X_ (30) 52.222-36, Equal Opportunity for Workers with Disabilities (Jul 2014) (29 U.S.C. 793).

_X_ (31) 52.222-37, Employment Reports on Veterans (Jul 2014) (38 U.S.C. 4212).

Appx8106

_X_ (32) 52.222-40, Notification of Employee Rights Under the National Labor Relations Act (Dec 2010) (E.O. 13496).

_X_ (33) (i) 52.222-50, Combating Trafficking in Persons (Mar 2015) (22 U.S.C. chapter 78 and E.O. 13627).

___ (ii) Alternate I (Mar 2015) of 52.222-50, (22 U.S.C. chapter 78 and E.O. 13627).

___ (34) 52.222-54, Employment Eligibility Verification (Aug 2013). (Executive Order 12989). (Not applicable to the acquisition of commercially available off-the-shelf items or certain other types of commercial items as prescribed in 22.1803.)

___ (35) (i) 52.223-9, Estimate of Percentage of Recovered Material Content for EPA-Designated Items (May 2008) (42 U.S.C. 6962(c)(3)(A)(ii)). (Not applicable to the acquisition of commercially available off-the-shelf items.)

___ (ii) Alternate I (May 2008) of 52.223-9 (42 U.S.C. 6962(i)(2)(C)). (Not applicable to the acquisition of commercially available off-the-shelf items.)

___ (36) (i) 52.223-13, Acquisition of EPEAT® -Registered Imaging Equipment (Jun 2014) (E.O.s 13423 and 13514

___ (ii) Alternate I (Jun 2014) of 52.223-13.

___ (37) (i) 52.223-14, Acquisition of EPEAT® -Registered Television (Jun 2014) (E.O.s 13423 and 13514).

___ (ii) Alternate I (Jun 2014) of 52.223-14.

___ (38) 52.223-15, Energy Efficiency in Energy-Consuming Products (Dec 2007) (42 U.S.C. 8259b).

___ (39) (i) 52.223-16, Acquisition of EPEAT® -Registered Personal Computer Products (Jun 2014) (E.O.s 13423 and 13514).

___ (ii) Alternate I (Jun 2014) of 52.223-16.

_X_ (40) 52.223-18, Encouraging Contractor Policies to Ban Text Messaging while Driving (Aug 2011) (E.O. 13513).

___ (41) 52.225-1, Buy American--Supplies (May 2014) (41 U.S.C. chapter 83).

___ (42) (i) 52.225-3, Buy American--Free Trade Agreements--Israeli Trade Act (May 2014) (41 U.S.C. chapter 83, 19 U.S.C. 3301 note, 19 U.S.C. 2112 note, 19 U.S.C. 3805 note, 19 U.S.C. 4001 note, Pub. L. 103-182, 108-77, 108-78, 108-286, 108-302, 109-53, 109-169, 109-283, 110-138, 112-41, 112-42, and 112-43).

___ (ii) Alternate I (May 2014) of 52.225-3.

___ (iii) Alternate II (May 2014) of 52.225-3.

___ (iv) Alternate III (May 2014) of 52.225-3.

___ (43) 52.225-5, Trade Agreements (Nov 2013) (19 U.S.C. 2501, *et seq.*, 19 U.S.C. 3301 note).

_X_ (44) 52.225-13, Restrictions on Certain Foreign Purchases (Jun 2008) (E.O.'s, proclamations, and statutes administered by the Office of Foreign Assets Control of the Department of the Treasury).

Contract No. 2016-N-17693

___ (45) 52.225-26, Contractors Performing Private Security Functions Outside the United States (Jul 2013) (Section 862, as amended, of the National Defense Authorization Act for Fiscal Year 2008; 10 U.S.C. 2302 Note).

___ (46) 52.226-4, Notice of Disaster or Emergency Area Set-Aside (Nov 2007) (42 U.S.C. 5150).

___ (47) 52.226-5, Restrictions on Subcontracting Outside Disaster or Emergency Area (Nov 2007) (42 U.S.C. 5150).

_X_ (48) 52.232-29, Terms for Financing of Purchases of Commercial Items (Feb 2002) (41 U.S.C. 4505), 10 U.S.C. 2307(f)).

___ (49) 52.232-30, Installment Payments for Commercial Items (Oct 1995) (41 U.S.C. 4505, 10 U.S.C. 2307(f)).

___ (50) 52.232-33, Payment by Electronic Funds Transfer— System for Award Management (Jul 2013) (31 U.S.C. 3332).

___ (51) 52.232-34, Payment by Electronic Funds Transfer—Other Than System for Award Management (Jul 2013) (31 U.S.C. 3332).

___ (52) 52.232-36, Payment by Third Party (May 2014) (31 U.S.C. 3332).

___ (53) 52.239-1, Privacy or Security Safeguards (Aug 1996) (5 U.S.C. 552a).

___ (54) (i) 52.247-64, Preference for Privately Owned U.S.-Flag Commercial Vessels (Feb 2006) (46 U.S.C. Appx 1241(b) and 10 U.S.C. 2631).

___ (ii) Alternate I (Apr 2003) of 52.247-64.

(c) The Contractor shall comply with the FAR clauses in this paragraph (c), applicable to commercial services, that the Contracting Officer has indicated as being incorporated in this contract by reference to implement provisions of law or executive orders applicable to acquisitions of commercial items:

___ (1) 52.222-41, Service Contract Labor Standards (May 2014) (41 U.S.C. chapter 67.).

___ (2) 52.222-42, Statement of Equivalent Rates for Federal Hires (May 2014) (29 U.S.C. 206 and 41 U.S.C. chapter 67).

___ (3) 52.222-43, Fair Labor Standards Act and Service Contract Labor Standards -- Price Adjustment (Multiple Year and Option Contracts) (May 2014) (29 U.S.C.206 and 41 U.S.C. chapter 67).

___ (4) 52.222-44, Fair Labor Standards Act and Service Contract Labor Standards -- Price Adjustment (May 2014) (29 U.S.C. 206 and 41 U.S.C. chapter 67).

___ (5) 52.222-51, Exemption from Application of the Service Contract Labor Standards to Contracts for Maintenance, Calibration, or Repair of Certain Equipment--Requirements (May 2014) (41 U.S.C. chapter 67).

___ (6) 52.222-53, Exemption from Application of the Service Contract Labor Standards to Contracts for Certain Services--Requirements (May 2014) (41 U.S.C. chapter 67).

___ (7) 52.222-17, Nondisplacement of Qualified Workers (May 2014) (E.O. 13495).

___ (8) 52.226-6, Promoting Excess Food Donation to Nonprofit Organizations. (May 2014) (42 U.S.C. 1792).

___ (9) 52.237-11, Accepting and Dispensing of $1 Coin (Sep 2008) (31 U.S.C. 5112(p)(1)).

Appx8108

Contract No. 2016-N-17693

_____ (10) 52.222-55, Minimum Wages Under Executive Order 13658 Dec 2014)(Executive Order 13658).

(d) *Comptroller General Examination of Record* The Contractor shall comply with the provisions of this paragraph (d) if this contract was awarded using other than sealed bid, is in excess of the simplified acquisition threshold, and does not contain the clause at 52.215-2, Audit and Records -- Negotiation.

    (1) The Comptroller General of the United States, or an authorized representative of the Comptroller General, shall have access to and right to examine any of the Contractor's directly pertinent records involving transactions related to this contract.

    (2) The Contractor shall make available at its offices at all reasonable times the records, materials, and other evidence for examination, audit, or reproduction, until 3 years after final payment under this contract or for any shorter period specified in FAR Subpart 4.7, Contractor Records Retention, of the other clauses of this contract. If this contract is completely or partially terminated, the records relating to the work terminated shall be made available for 3 years after any resulting final termination settlement. Records relating to appeals under the disputes clause or to litigation or the settlement of claims arising under or relating to this contract shall be made available until such appeals, litigation, or claims are finally resolved.

    (3) As used in this clause, records include books, documents, accounting procedures and practices, and other data, regardless of type and regardless of form. This does not require the Contractor to create or maintain any record that the Contractor does not maintain in the ordinary course of business or pursuant to a provision of law.

(e)

    (1) Notwithstanding the requirements of the clauses in paragraphs (a), (b), (c) and (d) of this clause, the Contractor is not required to flow down any FAR clause, other than those in this paragraph (e)(1) in a subcontract for commercial items. Unless otherwise indicated below, the extent of the flow down shall be as required by the clause—

        (i) 52.203-13, Contractor Code of Business Ethics and Conduct (Apr 2010) (41 U.S.C. 3509).

        (ii) 52.219-8, Utilization of Small Business Concerns (Oct 2014) (15 U.S.C. 637(d)(2) and (3)), in all subcontracts that offer further subcontracting opportunities. If the subcontract (except subcontracts to small business concerns) exceeds $650,000 ($1.5 million for construction of any public facility), the subcontractor must include 52.219-8 in lower tier subcontracts that offer subcontracting opportunities.

        (iii) 52.222-17, Nondisplacement of Qualified Workers (May 2014) (E.O. 13495). Flow down required in accordance with paragraph (1) of FAR clause 52.222-17.

        (iv) 52.222-26, Equal Opportunity (Mar 2007) (E.O. 11246).

        (v) 52.222-35, Equal Opportunity for Veterans (Jul 2014) (38 U.S.C. 4212).

        (vi) 52.222-36, Equal Opportunity for Workers with Disabilities (Jul 2014) (29 U.S.C. 793).

        (vii) 52.222-37, Employment Reports on Veterans (Jul 2014) (38 U.S.C. 4212).

        (viii) 52.222-40, Notification of Employee Rights Under the National Labor Relations Act (Dec 2010) (E.O. 13496). Flow down required in accordance with paragraph (f) of FAR clause 52.222-40.

        (ix) 52.222-41, Service Contract Labor Standards (May 2014), (41 U.S.C. chapter 67).

        (x) __X_ (A) 52.222-50, Combating Trafficking in Persons (Mar 2015) (22 U.S.C. chapter 78 and E.O. 13627).

Appx8109

Contract No. 2016-N-17693

   (B) Alternate I (Mar 2015) of 52.222-50 (22 U.S.C. chapter 78 E.O. 13627).

(xi) 52.222-51, Exemption from Application of the Service Contract Labor Standards to Contracts for Maintenance, Calibration, or Repair of Certain Equipment--Requirements (May 2014) (41 U.S.C. chapter 67.)

(xii) 52.222-53, Exemption from Application of the Service Contract Labor Standards to Contracts for Certain Services--Requirements (May 2014) (41 U.S.C. chapter 67)

(xiii) 52.222-54, Employment Eligibility Verification (Aug 2013).

(xiv) 52.225-26, Contractors Performing Private Security Functions Outside the United States (Jul 2013) (Section 862, as amended, of the National Defense Authorization Act for Fiscal Year 2008; 10 U.S.C. 2302 Note).

(xv) 52.226-6, Promoting Excess Food Donation to Nonprofit Organizations. (May 2014) (42 U.S.C. 1792). Flow down required in accordance with paragraph (e) of FAR clause 52.226-6.

(xvi) 52.247-64, Preference for Privately-Owned U.S. Flag Commercial Vessels (Feb 2006) (46 U.S.C. Appx 1241(b) and 10 U.S.C. 2631). Flow down required in accordance with paragraph (d) of FAR clause 52.247-64.

(xvii) 52.222-55, Minimum Wages Under Executive Order 13658 (Dec 2014)(Executive Order 13658).

(2) While not required, the contractor may include in its subcontracts for commercial items a minimal number of additional clauses necessary to satisfy its contractual obligations.

**C.2      The following  FAR Clause is incorporated by reference:**

| FAR SOURCE | TITLE AND DATE |
|---|---|
| 52.212-4 | Contract Terms and Conditions—Commercial Items (Dec 2014) |
| 52.232-1 | Payments |

**C.3   Special Clauses**

**C.3.1. Shelf Life**

Vaccine provided under this contract shall have a minimum 12 month shelf life remaining upon delivery to the consignee, or as specified within each Contract Line Item Number (See Section B, Continuation of SF 1449).

**C.3.2. Packaging and Packing Requirements**

1. Packaging:

All items shall be packaged in standard commercial manner.

2. Packing:
     a. Product shall be packed to ensure maintenance of FDA recommended temperature during transit and safe arrival at destination. An electronic temperature monitoring device is required with each shipment unless Contractor has obtained prior approval from CDC to use an alternative monitoring method.

     b. Contractor will provide the Contracting Officer Representative (COR) with documentation that explains the cause of each temperature excursion and stability data used by the contractor to determine if the cold chain was adversely affected by temperature variance.  Upon review of data provided, CDC will notify appropriate parties if the vaccine is accepted or rejected.

Appx8110

Contract No. 2016-N-17693

**C.3.3. Contract Period of Performance**

The contract period of performance shall begin on the date of award and shall end 12 months later (CDC will provide Contractor with official end date at time of award.)

**C.3.4. Time of Delivery**

Delivery is required to be made at destination within 15 working days after receipt of electronic, written, or telephonic order (telephone orders to be confirmed in writing).

**C.3.5. Place of Delivery**

The Contractor shall be required to deliver vaccines F.O.B. Destination, as directed by delivery orders to the CDC centralized distribution locations currently in Aurora, CO and Memphis, TN.

The Contractor shall be required to deliver frozen vaccines F.O.B. destination as directed by delivery orders.

**C.3.6. Amendment to OBRA Statute**

In the event of an amendment of 42 U.S.C. Section 1396(s), any terms of the contract affected by such an amendment will be modified in accordance with the revised statute. The Contracting Officer and the Contractor shall meet to discuss such modifications to the contract before finalization of any changes to the contract.

**C.3.7. Product Licensure**

    a. The vaccines produced and delivered under this contract shall be manufactured under a current establishment and product license issued by the Food and Drug Administration as indicated below:

    ————————

    b. The Current Good Manufacturing Practice Regulations (CGMPR's) (21CFR Parts 210, 211) will be the standard to be applied for manufacturing, processing and packing of drugs, chemicals, biologicals, and reagents.

    c. The Contractor shall advise the Contracting Officer immediately of any relocation of his prime manufacturing facility or the relocation of any subcontractor's facility, and if at any time during the life of the contract, the item listed under this contract fails to meet CGMPR's and/or a negative Food and Drug Administration Quality Assurance Evaluation is received; the contract may be terminated, in whole or in part, without further liability to the Government.

**C.3.8. Placement of Orders**

    a. All vaccine under this contract will be ordered by delivery orders. Orders shall be placed by Health and Human Services (HHS), the Centers for Disease Control and Prevention (CDC) on behalf of eligible awardees or by the awardees. Orders shall be placed by electronic transfer. In the event of an emergency, orders may be placed by CDC by telephone (confirmed in writing). Contractors shall be able to interface with the CDC Electronic Vaccine Ordering System. If unable to interface at the time of award, the vendor shall complete interface implementation by the end of the period of performance of the contract.

    b. Orders shall be submitted to the Ordering Address specified in Contract Clauses Paragraph C.3.12, Contractor's Ordering/Payment Address, and shall contain the following minimum information:

        1. Date of order;

        2. Contract number and order number;

Appx8111

     3.  Item description, quantity and unit price;

     4.  Delivery or performance date;

     5.  Place of delivery or performance (including consignee);

     6.  Packaging, packing and shipping instruction, if any;

     7.  Accounting and appropriation data;

     8.  Statement to indicate if partial deliveries are not acceptable; (lack of a statement shall be construed to mean partial deliveries are acceptable and payment shall be made as required elsewhere herein)

     9.  Any other pertinent data.

## C.3.9. Delivery Order Limitations

a. Minimum Order Size: Individual delivery orders issued under this contract must meet the minimum order size as specified within each Contract Line Item Number (See Section B, Continuation of SF 1449). When the Government requires supplies covered by this contract in amounts less than stated above, the Government is not obligated to purchase, nor is the Contractor obligated to furnish those supplies under this contract.

b. Maximum Order: The maximum quantity specified within each Contract Line Item Number (See Section B, Continuation of SF1449) is the maximum number of doses that may be ordered during the contract period of performance. Contractors are advised that the maximum quantity represents their commitment to the CDC under their contract.

c.   Delivery Orders shipments:

     1.  Shipments shall be sent with all transaction information necessary to be compliant with applicable Drug Supply Chain Security Act requirements regarding Transaction Information (TI), Transaction History (TH), and Transaction Statement (TS). Initially paper documentation or portal access will be acceptable, but EDI messaging between contractors and CDC will transition to allow electronic transmission of information.

     2.  The Government reserves the right to reject vaccine doses that exceed delivery order requirements. The Government shall notify the Contractor when excess doses have been delivered to distribution sites. The Contractor is responsible for contacting the distribution site to make arrangement for the return of the excess doses and will be responsible for shipping cost associated with their return.

     3.  Bulk order shipments, when possible, shall consist of

        a. One NDC per skid

        b. Full skid quantities with same lot number

        c. Full case quantities (when total order size allows)

## C.3.10. FAR 52.216-18. Ordering (Oct 1995)

a. Any supplies and services to be furnished under this contract shall be ordered by issuance of delivery orders or task orders by the individuals or activities designated in the Schedule. Such orders may be issued from the effective date of the contract through the expiration date of the contract.

Contract No. 2016-N-17693

    b.  All delivery orders or task orders are subject to the terms and conditions of this contract.  In the event of conflict between a delivery order or task order and this contract, the contract shall control.

    c.  If mailed, a delivery order or task order is considered "issued" when the Government deposits the order in the mail.  Orders may be issued orally or by written telecommunications only if authorized in the Schedule.

## C.3.11. FAR 52.216-22 Indefinite Quantity (Oct 1995)

    a.  This is an indefinite quantity contract for the supplies specified and effective for the period stated in the Schedule.  The quantities of supplies and services specified in the Schedule are estimates only and are not purchased by this contract.

    b.  Delivery or performance shall be made only as authorized by orders issued in accordance with the Ordering clause.  The Contractor shall furnish to the Government, when and if ordered, the supplies specified in the Schedule up to and including the quantity designated in the Schedule as the "maximum."  The Government shall order at least the quantity of supplies designated in the Schedule as the "minimum."

    c.  Except for any limitations on quantities in the Delivery Order Limitations clause or in the Schedule, there is no limit on the number of orders that may be issued.  The Government may issue orders requiring delivery to multiple destinations or performance at multiple locations.

    d.  Any order issued during the effective period of this contract and not completed within that period shall be completed by the Contractor within the time specified in the order.  The contract shall govern the Contractor's and Government's rights and obligations with respect to that order to the same extent as if the order were completed during the contract's effective period; provided, that the Contractor shall not be required to make any deliveries under this contract after fifteen (15) working days beyond the expiration date of the contract.

## C.3.12. Contractor's Ordering/Payment Address

Submission of all orders for Contractor's vaccines and payment of invoices shall be addressed as referenced below:

    Ordering Address        Payments Address

    _____    _____
    _____    _____
    _____    _____

## C.3.13. Invoice Submission

1. Invoice submission under this contract will be made as follows:

    a. Federal Government: The Contractor shall submit invoices via Electronic Data Interchange (EDI).

    b. Awardees: The Contractor shall submit one hard copy of its invoice(s) to the address specified on the delivery order.

    c. The Contractor agrees to include the following information on each invoice:

        1.  Contractor's name and invoice date;

        2.  Contract number, or other authorization for delivery of property and/or services;

Appx8113

Contract No. 2016-N-17693

    3.  Description, cost or price, and quantity of property and/or services actually delivered or rendered;

    4.  Shipping and payment terms;

    5.  Other substantiating documentation or information as required by the contract;

    6.  Name where practicable, title, phone number, and complete mailing address of responsible official to whom payment is to be sent;

    7.  NDC and Lot number of vaccine shipped;

    8.  CDC accounting and appropriation data as described on the delivery order; and

    9.  Electronic Funds Transfer (EFT) and Taxpayer Identification Number (TIN).

## C.3.14. Method of Payment

a. Federal Government:  The Government will use electronic funds transfer when making payment under this contract IAW/FAR Clause 52.232-33, payment by Electronic Funds Transfer - Central Contractor Registration.

b. Awardees:  By check

## C.3.15. Contract Officer Representative (COR)

A COR will be designated in writing by the Contracting Officer to serve during the period of performance of the contract. The COR shall be responsible for guidance in regard to the technical aspect of the contract, provide a point for liaison between the Contractor and other Government agencies and be the general focal point to address technical and logistical problems relating to the performance under the contract. The COR shall not have the authority to make any commitments or authorize any changes which affect the contract price, terms and/or conditions; any such changes shall be referred to the Contracting Officer for action.

## C.3.16. Return Privileges

Return privileges for credit, reimbursement or exchange do not apply to this contract except vaccines not conforming to the specifications set forth herein.

## C.3.17. Restrictions on Use of Vaccines

Vaccines obtained under this contract shall be used only in children 18 years of age and younger as authorized under Section 1928 of the Social Security Act.  Sale of such vaccine to any person or entity or reimbursement of vaccine costs is strictly prohibited.  Free distribution of such vaccine is also prohibited, except where such vaccine is administered in the context of Federal and Awardee immunization program activities.

## C.3.18. Federal Excise Tax Credit

Negotiated prices for the vaccines included in this Contract may include a Federal Excise Tax (See Continuation of SF 1449 for applicable Contract Line Item Numbers).  If for any reason the vaccine is returned (other than for resale) or destroyed, the Contractor shall within 6 months following the date the vaccine is returned or destroyed, file a claim for credit or refund relative to any tax previously paid on such vaccine.  The Contractor agrees to credit or refund the amount of such excise tax to the purchaser to the extent that the Contractor receives a credit or refund from the Federal Government.  Any such credit or refund to the purchaser is expressly conditioned upon the authorized purchaser providing a written summary of events leading to the request for credit or refund.  The

Appx8114

Contract No. 2016-N-17693

purchaser shall return all undistributed vaccine to the Contractor for proper disposal, unless destruction of the vaccine renders return impossible. If destruction of the vaccine renders return impossible and is therefore destroyed by the purchaser, the authorized purchaser must provide a written summary of events to the Contractor within 30 days of said destruction. If a contract is in place with the Contractor at the time when a credit or refund is due; the purchaser may elect to receive vaccine which will be purchased at the current contract price in lieu of a cash payment. Otherwise, the Contractor shall refund the amount due to the purchaser's account. If a credit or refund is issued by the Contractor for state or local funds, it shall be submitted to the state or local public health entity identified in the request for FET credit. If a credit or refund is issued by the Contractor to the Federal Funds account, it shall contain the Contractor's DUNS and TIN/EIN and shall be submitted either via EDI (for credit) or to the following address (for check):

Centers for Disease Control and Prevention
Office of Financial Resources (OFR)
Attn: Debt Management Branch
P.O. Box 15580
Atlanta, GA 30329-4027

**C.3.19. Delinquent Delivery Report**

The Contractor shall provide CDC with a weekly electronic listing of all CDC orders that have not been shipped within the agreed upon delivery schedule. The report shall include the following information: order number, date of order, and status of order in number of pending/undelivered doses. The report shall also provide an explanation as to the cause for the delinquent delivery as well as when the vaccine will be delivered. This notification shall not relieve the contractor from meeting its obligations under the contract and shall not limit the Government's right to seek relief for any breach of contract for failure to perform, including termination for cause.

**C.3.20. Biological Surveillance Data Reports**

    a. The Contractor shall submit a monthly report of historical sales data for the United States by month and state, specifying the name of the vaccine, NDC #, and the total number of doses sold (segregated by CDC and non-CDC sales), in a standardized format acceptable to the Contractor and the CDC. The report shall be submitted electronically to the COR by the 15th of the month. Information related to vaccine sales through CDC contracts is not considered proprietary. CDC acknowledges that those reports pertaining to private sales unrelated to this contract are confidential and proprietary information of the Contractor, and shall not use reports for any purpose other than CDC's internal tracking and reporting purposes and shall not further disclose such reports without the Contractor's prior written consent unless required by the law or other Federal authority; provided that, no Contractor authorization shall be required for the CDC to include the data from the Contractor's report in a report in which aggregated data from multiple Contractors is summarized, so long as, with respect to multi-sourced products, the CDC's aggregated report does not include any data which could be individually identified as the Contractor's. In the event that CDC is required by law or other Federal authority to disclose such reports required to be held confidential hereunder, CDC shall notify the Contractor prior to making such disclosure in accordance with law or other Federal authority.

    b. Data Reports to Manufacturers
The Government will submit monthly reports of all vaccine data specifying doses by project, zip code, and NDC # in a standardized format. For all vaccines except direct ship vaccines, the Government shall provide distribution data. Because the Government does not distribute direct ship vaccines, purchase data will be provided. The reports shall be submitted electronically to the Contractor by the 15th of the month for the previous month. The Government shall also provide the Contractor with an annual Vaccine Tracking System (VTrckS) spend plan for each Awardee and an annual providers list during the first quarter of the fiscal year.

**C.3.21. Prohibitions on Inducements**

Appx8115

Contract No. 2016-N-17693

The Contractor is expressly prohibited from offering, providing or arranging inducements of any kind to providers or authorized purchasers ordering vaccine under this contract for the purpose of obtaining orders for vaccine. Examples of such inducements include, but are not limited to: entertainment, meals, and free or reduced prices for syringes, vaccines, or other medical products or supplies. If the Contractor has entered into similar agreements with the authorized purchasers which offer inducements relative to its commercial business, these agreements must be clear that they do not apply to purchases made under the CDC Federal contracts.

## C.3.22. Contract Changes

Notwithstanding FAR Clause 52.212-4(c), Changes, the parties hereby agree that modifications for incremental funding and other administrative changes (e.g., changes to CDC accounting data) that do not affect the terms and conditions of the contract may be made unilaterally by the CDC.

## C.3.23. Vaccine images

Upon contract award, the Contractor agrees to provide via email camera-ready vaccine product images in .pdf format and written authorization for CDC to use the images to the COR. CDC will use the images to illustrate the Contractor's products on the CDC vaccine ordering system. The Contractor agrees to provide CDC with updated product images if there is a change in packaging and vaccine images for new NDCs added to the contract during the period of performance.

For each vaccine furnished under this contract, complete the information in the template below, including the NDC numbers for the unit of sale and unit(s) of use in the first and last columns. If there is more than one component/NDC within the unit of use, list each NDC separately along with component name.

| Unit of Sale (Box/Carton) | | | Unit of Use (Vial/Syringe) |
|---|---|---|---|
| NDC | Brandname/ Tradename | Description/Presentation | NDC |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

## C.3.24. Advance Notice of Supply Issues

The Contractor agrees to provide advance notification to COR and the CDC Contracting Officer of any supply issue which may result in the Contractor's failure to deliver vaccine within the agreed upon delivery schedule specified in the contract. This notification shall be given as soon as the Contractor becomes aware of the scope of the problem that will impede the timely delivery of vaccine. This notification shall not relieve the contractor from meeting its obligations under the contract and shall not limit the Government's right to seek relief for any breach of contract for failure to perform, including termination for cause. Furthermore, any deviation from the delivery schedule due to a vaccine supply issue will demonstrate reasonably equal treatment with respect to the fulfillment of orders between CDC and the contracting non-government customers.

## C.3.25. Authorized Distribution of Record (ADR) Agreements

In accordance with the Prescription Drug Marketing Act (PDMA) of 1998, it is requested that all suppliers provide a written statement included as an attachment in Section D of this solicitation, which designates the CDC as the ADR for all vaccines subject to distribution under this contract.

## C.3.26. Use of VFC Provider Lists and Distribution of Material

Appx8116

Contract No. 2016-N-17693

    a. Contractors are prohibited from utilizing VFC providers lists obtained from any source for any mailing or other communication with VFC providers, except as approved in writing by the CDC COR. In addition, contractors are prohibited from otherwise communicating with VFC providers regarding the VFC program, except as approved in writing by the CDC COR. To the extent that Contractors have established relationships with VFC providers or authorized purchasers under this contract that are independent from the VFC program, communications related to such independent relationships are not covered by this provision and do not require CDC consent.

    b. Contractors are prohibited from providing names and/or addresses of VFC providers to any third party, except as needed to comply with the terms of this contract, in which cases the CDC COR shall be notified in writing.

    c. Any Contractor that ships vaccine directly to VFC providers is prohibited from inserting any promotional or other material that is promotional in nature for any product that the Contractor produces, into shipping containers for vaccine purchased under this contract, except for material related to use of the vaccine as approved in writing by the CDC COR. Additionally any shipping container inserts that are required, such as handling instructions or educational materials, should not contain any promotional material as part of its content.

## C.3.27. New FDA Product License

Manufacturers who receive a new FDA product license for a vaccine already included within the scope of a VFC resolution may have the new product added to its contract by modification if it is determined that adding the product is in the best interest of the Government. Such new products must be consistent with VFC formulary schedules (regarding periodicity and dosage regimens) as established for the vaccines by the Advisory Committee on Immunization Practices (ACIP). New FDA licensed products added to this contract must comply with Clause C.3.29., *Price Changes,* below.

## C.3.28. ACIP Approved Product

When a new vaccine product is approved by the ACIP for inclusion in the VFC Formulary, the Manufacturer of such product may have the new product added to its contract by modification if it is determined that adding the product is in the best interest of the Government. This would include new vaccines, new indications or new formulations for existing products or new dosing regimens for an existing product. New FDA licensed products added to this contract must comply with Clause C.3.29., *Price Changes,* below.

## C.3.29. Price Changes

All price change effective dates shall be approved by the CDC Contracting Officer and shall occur on the first day of the following month.

## C.3.30. Evaluation of Contractor Performance Utilizing CPARS (April 2013)

In accordance with FAR 42.15, the Centers for Disease Control and Prevention (CDC) will review and evaluate contract performance. FAR 42.1502 and 42.1503 requires agencies to prepare evaluations of contractor performance and submit them to the Past Performance Information Retrieval System (PPIRS). The CDC utilizes the Department of Defense (DOD) web-based Contractor Performance Assessment Reporting System (CPARS) to prepare and report these contractor performance evaluations. All information contained in these assessments may be used by the Government, within the limitations of FAR 42.15, for future source selections in accordance with FAR 15.304 where past performance is an evaluation factor.

The CPARS system requires a contractor representative to be assigned so that the contractor has appropriate input into the performance evaluation process. The CPARS contractor representative will be given access to CPARS and will be given the opportunity to concur or not-concur with performance evaluations before the evaluations are

Appx8117

Contract No. 2016-N-17693

complete. The CPARS contractor representative will also have the opportunity to add comments to performance evaluations.

The assessment is not subject to the Disputes clause of the contract, nor is it subject to appeal beyond the review and comment procedures described in the guides on the CPARS website. Refer to: www.cpars.gov for details and additional information related to CPARS, CPARS user access, how contract performance assessments are conducted, and how Contractors participate. Access and training for all persons responsible for the preparation and review of performance assessments is also available at the CPARS website.

The contractor must provide the CDC contracting office with the name, e-mail address, and phone number of their designated CPARS representative who will be responsible for logging into CPARS and reviewing and commenting on performance evaluations. The contractor must maintain a current representative to serve as the contractor representative in CPARS. It is the contractor's responsibility to notify the CDC contracting office, in writing (letter or email), when their CPARS representative information needs to be changed or updated. Failure to maintain current CPARS contractor representative information will result in the loss of an opportunity to review and comment on performance evaluations.

**C.3.31. 52.215-20 Requirements for Certified Cost or Pricing Data and Data Other Than Certified Cost of Pricing Data**

    a. Exceptions from certified cost or pricing data.

        1. In lieu of submitting certified cost or pricing data, offerors may submit a written request for exception by submitting the information described in the following paragraphs.The Contracting Officer may require additional supporting information, but only to the extent necessary to determine whether an exception should be granted, and whether the price is fair and reasonable.

            i. Identification of the law or regulation establishing the price offered. If the price is controlled under law by periodic rulings, reviews, or similar actions of a governmental body, attach a copy of the controlling document, unless it was previously submitted to the contracting office.

            ii. Commercial item exception. For a commercial item exception, the offeror shall submit, at a minimum, information on prices at which the same item or similar items have previously been sold in the commercial market that is adequate for evaluating the reasonableness of the price for this acquisition. Such information may include-

                A. For catalog items, a copy of or identification of the catalog and its date, or the appropriate pages for the offered items, or a statement that the catalog is on file in the buying office to which the proposal is being submitted. Provide a copy or describe current discount policies and price lists (published or unpublished), e.g., wholesale, original equipment manufacturer, or reseller. Also explain the basis of each offered price and its relationship to the established catalog price, including how the proposed price relates to the price of recent sales in quantities similar to the proposed quantities;

                B. For market-priced items, the source and date or period of the market quotation or other basis for market price, the base amount, and applicable discounts. In addition, describe the nature of the market;

                C. For items included on an active Federal Supply Service Multiple Award Schedule contract, proof that an exception has been granted for the schedule item.

        2. The offeror grants the Contracting Officer or an authorized representative the right to examine, at any time before award, books, records, documents, or other directly pertinent records to verify any request for an exception under this provision, and the reasonableness of price. For items priced using catalog or market prices, or law or regulation, access does not extend to cost or profit information or other

Contract No. 2016-N-17693

data relevant solely to the offeror's determination of the prices to be offered in the catalog or marketplace.

b. Requirements for certified cost or pricing data. If the offeror is not granted an exception from the requirement to submit certified cost or pricing data, the following applies:

1. The offeror shall prepare and submit certified cost or pricing data, data other than certified cost or pricing data, and supporting attachments in accordance with the instructions contained in Table 15-2 of FAR 15.408, which is incorporated by reference with the same force and effect as though it were inserted here in full text. The instructions in Table 15-2 are incorporated as a mandatory format to be used in this contract, unless the Contracting Officer and the Contractor agree to a different format and change this clause to use Alternate I.

2. As soon as practicable after agreement on price, but before contract award (except for unpriced actions such as letter contracts), the offeror shall submit a Certificate of Current Cost or Pricing Data, as prescribed by FAR 15.406-2.

c. Submit the cost portion of the proposal via the following electronic media: [electronic spreadsheet]

## C.3.32.  Needle Exchange

No funds appropriated and obligated to this contract may be used to carry out any program of distributing sterile needles or syringes for the hypodermic injection of any illegal drug.

## C.3.33.  HHSAR 352.203-70 Anti-Lobbying (Mar 2012)

Pursuant to the current HHS annual appropriations act, Public Law 112-74, except for normal and recognized executive-legislative relationships, the Contractor shall not use any HHS contract funds for:

(a)  Publicity or propaganda purposes;

(b)  the preparation, distribution, or use of any kit, pamphlet, booklet, publication, electronic communication, radio, television or video presentation designed to support or defeat the enactment of legislation before the Congress or any State or local legislature or legislative body, except in presentation to the Congress or any State or local legislature itself; or designed to support or defeat any proposed or pending regulation, administrative action, or order issued by the executive branch of any State or local ·government, except in presentation to the executive branch of any State or local government itself; or

(c)  Payment of salary or expenses of the Contractor, or any agent acting for the Contractor, related to any activity designed to influence the enactment of legislation, appropriations, regulation, administrative action, or Executive order proposed or pending before the Congress or any State government, State  legislature or local legislature or legislative body, other than for normal and recognized executive-legislative relationships or participation by an agency or officer of a State, local or tribal government in policymaking and administrative processes within the executive branch of that government.

The prohibitions in subsections (a), (b) and (c) above shall include any activity to advocate or promote any proposed, pending or future Federal, State or local tax increase, or any proposed, pending, or future requirement for, or restriction on, any legal consumer product, including its sale or marketing, including, but not limited to, the advocacy or promotion of gun control.

Contract No. 2016-N-17693

## SECTION D - CONTRACT DOCUMENTS, EXHIBITS OR ATTACHMENTS

**D.1**    **Websites.** Additional information can be found at <u>www.fbo.gov</u>, <u>www.cdc.gov/vaccines</u>; and <u>http://csrc.nist.gov/publications/nistpubs/</u>

**D.2**    **Attachment A -    Authorized Distributor of Record (ADR) Agreement:**  Offerors shall complete and return the following agreement with their proposals.

Appx8120

**Contract No. 2016-N-17693**

Attachment A: Authorized Distributor of Record (ADR) Agreement

### *AUTHORIZED DISTRIBUTOR OF RECORD (ADR) AGREEMENT*

This Agreement hereby represents the ongoing relationship between the supplier named below ("MANUFACTURER / SUPPLIER") and the Centers for Disease Control and Prevention, herein after referred to as CDC, to establish and designate CDC as an Authorized Distributor of Record (ADR) as set forth in the Prescription Drug Marketing Act (PDMA) of 1988 as well as in the implementing federal regulations found at 21 CFR Part 203. CDC hereafter agrees to comply with all applicable state and federal laws to ensure continued status of this relationship. To further meet the requirements of the PDMA, please forward with the signed agreement an attachment with a list of the specific products that CDC is authorized to distribute or a statement that the CDC is an ADR for the manufacturer's entire product line. Specific products should be identified by the pharmaceutical / vaccine name, dosage form, and strength of the drug and the NDC number.

Check the box that applies:

__ The Distributor is the ADR for Supplier's entire product line.

__ The Distributor is the ADR for the products listed on the attachment A-1.

This agreement shall be valid from the date of dual execution until termination by either party on ninety (90) days written notice. This agreement shall not abridge, supplant, modify, or in any way alter any other pre-existing distribution agreement or any future agreements that may, from time to time, be executed in the furtherance of the business relationship between Manufacturer/ Supplier and the CDC.
This agreement confers no rights upon CDC other than to designate CDC as an Authorized Distributor of Record for Manufacturer / Supplier. This agreement is not intended to be, nor shall it be, interpreted as a sales agreement or any other type of agreement other than to represent an "ongoing relationship" within the meaning set forth in 21 CFR Part 203.3(u).

*By affixing my signature below, I do hereby acknowledge and represent that I have read this Agreement in its entirety, that I understand its terms, that I am duly authorized to bind my organization to the requirements detailed in the above Agreement and that I agree to ensure that my organization will adhere to such requirement for the duration herein stated.*

Authorized Distributor of Record: **Centers for Disease Control and Prevention (CDC)**

Authorized Signature:_____

Print Name: _____, U.S. Government Contracting Officer

Date: _____

-------------------------------------------------------------------------------------------------

Manufacturer / Supplier: _____

Authorized Signature: _____

Print Name: _____

Date: _____

Appx8121

**Contract No. 2016-N-17693**

ATTACHMENT A-1

**LIST OF PRODUCTS**

| Item No. | Product/Brand Name | NDC |
|----------|--------------------|-----|
| 1. | Vaccine | xxxxx-xxxx-xx |
| 2. | Vaccine | xxxxx-xxxx-xx |
| 3. | Vaccine | xxxxx-xxxx-xx |

**Appx8122**

# SECTION E - SOLICITATION PROVISIONS

**E.1    The following provisions are added by reference:**

| FAR SOURCE | TITLE AND DATE |
|---|---|
| 52.212-1 | Instructions to Offerors - Commercial Items (Apr 2014) |
| 52.212-3 | Offeror Representations and Certifications - Commercial Items (Mar 2015) |
| 52.232-18 | Availability of Funds (Apr 1984) |

**E.2    Paragraph ( c) of 52.212-1, Period for acceptance of offers, is deleted in its entirety and the following is substituted therefore:**

( c)  Period for acceptance of offers.  The offeror agrees to hold the prices in its offer firm for 60 calendar days from the date specified for receipt of offers, unless another time period is specified in an addendum to the solicitation.

**E.3    FAR  52.233-2  Service of Protest (Sep 2006)**

Protests, as defined in section 33.101 of the Federal Acquisition Regulation, that are filed directly with an agency, and copies of any protests that are filed with the Government Accountability Office (GAO), shall be served on the Contracting Officer (addressed as follows) by obtaining written and dated acknowledgment of receipt from:

<div align="center">

Centers for Disease Control & Prevention
Attn: Alan Sims
MS: K-14
2920 Brandywine Road
Atlanta, GA 30341-5539

</div>

The copy of any protest shall be received in the office designated above within one day of filing a protest with the GAO.

(End of Provision)

**E.4    INSTRUCTIONS FOR SUBMISSION OF  OFFERS:**

a.  Offerors shall submit their offers on the basis of Firm-Fixed Price by 11:59pm on January 20th, 2016.

b.  Offers shall be submitted electronically (via e-mail) in MS Word or MS Excel files to vwj8@cdc.gov and auy0@cdc.gov.  The following format is required as e-mail subject:  The RFP No: 2016-N-17693.KT.doc or .xls  (Where "2016-N-17693 is the respective RFP No. and "KT" are the first two letters of the respective Contractor's name; and ".doc" and ".xls" are the format extensions.)

c.  In the event there are electronic transmission problems, the following steps shall be taken:

   i.   CDC receives the electronic file timely, but cannot access it.  The offeror will be contacted and may be allowed to fax in the portions that cannot be accessed.

   ii.  Facsimile quotes are not authorized. Technical inquiries shall be e-mailed to vwj8@cdc.gov and auy0@cdc.gov . Telephone inquiries will not be honored.

   iii. Contractor sends electronic file, but receives error message indicating e-mail problems at CDC. Fax in a cover sheet indicating transmission difficulties, and the Contract Specialist will contact the Contractor to arrange an alternate method of submission. Offerors are requested not to fax entire proposals to PGO. Facsimile submission shall only be used after contacting the Contract Specialist.

e.  Contractors are responsible for providing accurate and complete information for evaluation. (Failure to do so may rule the quote unacceptable.) Thus, the proposal shall include the following information for evaluation:

   i.   The Technical Proposal:  Shall provide documentation that clearly demonstrates their ability to:

Appx8123

1. meet the provisions of the Federal Excise Tax Credit contract clause;
2. provide vaccine maximum quantities specified within each Contract Line Item Number; and
3. meet the vaccine Shelf Life provision.
4. produce and deliver vaccines under a current establishment and product license issued by the U.S. Food and Drug Administration.

ii. Past Performance:  Past performance is one indicator of the offeror's ability to perform the contract successfully. The government will evaluate different customers' opinions about how well (quality) the offeror has satisfied their requirements.  Offerors shall provide, as part of their proposal, a list of clients or former clients for whom they have performed the same or similar work to the one required by this solicitation during the past five years.

f. Electronic Data Interchanges (EDI):  Based on CDC experience with its Vaccine Order Management System (VTrckS), including the transition of a number of manufacturer vendors to EDI communications with VTrckS, the estimated level of effort needed by the manufacturer/distributor to implement all six messages required for communications with VTrckS ranges from 1000-2000 hours. This estimate covers all steps, including requirement analysis, design, mapping, development, unit/integration testing and deployment.  Factors that are likely to impact the actual number of hours include available resources, technical solution chosen, existing vendor infrastructure, and complexity of existing vendor infrastructure.  Note that the government will not reimburse contractors for any expenses associated with the EDI implementation.

## E.5   Inquiries

Inquiries concerning the solicitation document shall be submitted in writing to the issuing office.  Any additions, deletions, or changes to the solicitation will be made by an amendment.  OFFERORS ARE INSTRUCTED SPECIFICALLY TO CONTACT ONLY THE  SOLICITATION CONTRACTING OFFICE IN CONNECTION WITH ANY ASPECT OF THIS REQUIREMENT PRIOR TO CONTRACT AWARD. PROPOSALS AND ALL CORRESPONDENCE RELATING TO THE SOLICITATION DOCUMENT SHALL BE SUBMITTED TO THE CONTRACTING OFFICE.  Inquiries shall be received at the Contracting Office no later than January 8th, 2016 via e-mail to: vwj8@cdc.gov and auy0@cdc.gov .

## E.6   Subcontracting Plan

The offeror, prior to being awarded a contract, shall submit an acceptable subcontracting plan (see FAR 52.219-9) or demonstrate that no subcontracting opportunities exist.  (Note:  This requirement does not apply to small business concerns or to offers which do not exceed $500,000.00 ($1,000,000.00 for construction) or to offers from non-domestic concerns.)

CDC Small Business Goals for 2014* are:

| Business Type | CDC's 2013 Goals |
|---|---|
| Small Business | 10% |
| Small Disadvantaged Business | 5% |
| HUBZONE | 3% |
| Women-Owned Small Business | 5% |
| Service-Disabled Veteran-Owned Small Business Subcontracting (SDVOSB) | 3% |
| Veteran-Owned (VOSB) | 3% |
| Total | 29% |

---

*Subject to change.  Goals for 2016 have not been received yet.

Appx8124

## E. 7   FAR 52.212-3 Offeror Representations and Certifications

An offeror shall complete only paragraph (b) of this provision if the offeror has completed the annual representations and certifications electronically at http://orca.bpn.gov.

(End of Provision)

## E. 8   52.212-2 Evaluation - Commercial Items (Oct 2014)

(a) The Government will award a contract resulting from this solicitation to the responsible offeror whose offer conforming to the solicitation will be most advantageous to the Government, price and other factors considered. The following factors shall be used to evaluate offers:

     (i)  technical capability of the item offered to meet the Government requirement;
     (ii)  price;
     (iii)  past performance (see FAR 15.304)

Technical and past performance, when combined, are equal in imprtance to price.
(b) Options. The Government will evaluate offers for award purposes by adding the total price for all options to the total price for the basic requirement. The Government may determine that an offer is unacceptable if the option prices are significantly unbalanced. Evaluation of options shall not obligate the Government to exercise the option(s).
(c) A written notice of award or acceptance of an offer, mailed or otherwise furnished to the successful offeror within the time for acceptance specified in the offer, shall result in a binding contract without further action by either party. Before the offer's specified expiration time, the Government may accept an offer (or part of an offer), whether or not there are negotiations after its receipt, unless a written notice of withdrawal is received before award.

Technical and past performance, when combined, is equal in importance to price.

(d) Past performance will be evaluated for only those offerors remaining in the **competitive range** as follows:

1. Each offeror shall be evaluated on its past performance under current and prior contracts. By past performance, the Government means the offeror's record of conforming to specifications and to standards of good workmanship; the contractor's record of forecasting and controlling costs; the offeror's adherence to contract schedules and terms, including the administrative aspects of performance; the offeror's reputation for reasonable and cooperative behavior and commitment to customer satisfaction; and generally, the offeror's business-like concern for the interest of the customer and the degree of quality of deliverables and performance.

2. Past performance will not be scored, but the Government's conclusions about overall quality of the offeror's past performance will be highly influential in determining the relative merits of the offeror's proposal and in selecting the offeror whose proposal is considered the most advantageous/best value to the Government.

3. Evaluation of past performance will be a subjective assessment based on a consideration of all relevant facts and circumstances. It will not be based on absolute standards of acceptable performance.

4. The assessment of the offerors past performance will be used as a means of evaluating the relative capability of the offeror and the other competitors. Thus, an offeror with an exceptional record of relevant past performance may receive a more favorable evaluation than another whose record is acceptable and/or less relevant, even though both may have acceptable technical and business proposals.

5. An offeror without a record of past performance or for whom information on past performance is not available will not be evaluated favorably or unfavorably.

6. Evaluation of past performance information will be reflected in terms of the following degrees of performance assessment:

Appx8125

**Excellent:**  A significant majority of the sources of information are consistently firm in stating that the offeror's performance was superior and that they would unhesitatingly do business with the offeror again. Complaints are negligible or unfounded.  The offeror has no record of criminal conduct, civil fraud, or negligence, or the record is old and the offeror has demonstrated by more recent performance that corrective action has made the likelihood of such conduct in the future highly improbably.  No doubt exists that the offeror will successfully perform the Government's requirements as stated in the RFP.

**Good:**  Most sources of information state that the offeror's performance was good, better than average, etc., and that they would willingly do business with the offeror again.  Complaints, though perhaps well-founded, are few and relatively minor.  The offeror has no record of criminal conduct, civil fraud, or negligence, or the record is old and the offeror has demonstrated by more recent performance that corrective action has made the likelihood of such conduct in the future highly improbable.  Little doubt exists that the offeror will successfully perform the Government's requirements as stated in the RFP.

**Neutral:**  Either no past performance history exists for the corporation, predecessor companies, key personnel, or major/critical subcontractors, or the offeror's record of past performance was neither predominantly favorable nor unfavorable.  In the latter case, sources of information are roughly divided over the quality of the offeror's performance.  While some state that they would do business with the offeror again, others are doubtful or would not.  Complaints are balanced by reports of good work.  The offeror has no record of criminal conduct, civil fraud, or negligence, or the record is old.

**Marginal:**  Many sources of information made unfavorable reports about the offeror's performance and either express serious doubts about doing business with the offeror again or state that they would refuse to do so.  However, there are some favorable reports, and some sources of information indicate that they would do business with the offeror again.  There are many significant, serious, and well-founded complaints, but there are some reports of very good performance.  The offeror may have been indicted, pled guilty, or may have been found guilty in matters of criminal conduct, but the issues are either unresolved, relatively minor, or do not reflect a company-wide or managerial pattern of wrongdoing.  The offeror may have lost civil suits for fraud or negligence, but there is no company-wide or managerial pattern of fraudulent, negligent, or criminal conduct.  Some doubt exists that the offeror will successfully perform the Government's requirements as stated in the RFP.

**Poor:**  A significant majority of sources of information are consistently firm in stating that the offeror's performance was entirely unsatisfactory and that they would not do business with the offeror again under any circumstances.  Customer complaints are substantial or numerous and are well-founded.  Or, although not debarred or suspended, the offeror is under indictment or has been convicted of criminal conduct, or has been found civilly liable for fraud or negligence.  The offeror either has presented no persuasive evidence of having taken appropriate corrective action that will guard against such conduct in the foreseeable future, or it appears unlikely that the corrective action will be effective.  Serious doubt exists that the offeror will successfully perform the Government requirements as stated in the RFP.

(End of Provision)

10/25/2019
Declaration of G. Reilly
EXHIBIT 276

# SOLICITATION/CONTRACT/ORDER FOR COMMERCIAL ITEMS
*OFFEROR TO COMPLETE BLOCKS 12, 17, 23, 24, & 30*

| | |
|---|---|
| 1. REQUISITION NUMBER | PAGE 1 OF 26 |

| 2. CONTRACT NO. | 3. AWARD/EFFECTIVE DATE | 4. ORDER NUMBER | 5. SOLICITATION NUMBER 2017-N-18099 | 6. SOLICITATION ISSUE DATE 01/21/2017 |
|---|---|---|---|---|

| 7. FOR SOLICITATION INFORMATION CALL: ▶ | a. NAME Thaddeus Rollins | b. TELEPHONE NUMBER *(No collect calls)* (770) 488-1971 | 8. OFFER DUE DATE/ LOCAL TIME 02/02/2017 |
|---|---|---|---|

| 9. ISSUED BY | CODE | 2536 |
|---|---|---|

Centers for Disease Control and Prevention
Acquisition and Assistance Branch 1
2920 Brandywine Road, MS E-15
Atlanta, GA 30341-5539

**10. THIS ACQUISITION IS**

X UNRESTRICTED

SET ASIDE: ___ % FOR

SMALL BUSINESS

SMALL DISADV. BUSINESS

8(A)

SIC: 325412

SIZE STANDARD:

**11. DELIVERY FOR FOB DESTINATION UNLESS BLOCK IS MARKED**

X SEE SCHEDULE

**13a. THIS CONTRACT IS A RATED ORDER UNDER DPAS (15 CFR 700)**

13b. RATING

**14. METHOD OF SOLICITATION**

RFQ    IFB    X RFP

**12. DISCOUNT TERMS**

| 15. DELIVER TO | CODE |
|---|---|

To be indicated by the individual delivery orders placed against the contract.

| 16. ADMINISTERED BY | CODE | 2536 |
|---|---|---|

Centers for Disease Control and Prevention
Acquisition and Assistance Branch 1
2920 Brandywine Road, MS E-15
Atlanta, GA 30341-5539

| 17a. CONTRACTOR/ OFFEROR | CODE | FACILITY CODE |
|---|---|---|

TELEPHONE NO.

17b. CHECK IF REMITTANCE IS DIFFERENT AND PUT SUCH ADDRESS IN OFFER

| 18a. PAYMENT WILL BE MADE BY | CODE | 434 |
|---|---|---|

Centers for Disease Control and Prevention (FMO)
PO Box 15580 404-718-8100

Atlanta, GA 30333-0080

18b. SUBMIT INVOICES TO ADDRESS SHOWN IN BLOCK 18a UNLESS BLOCK BELOW IS CHECKED   SEE ADDENDUM

| 19. ITEM NO. | 20. SCHEDULE OF SUPPLIES/SERVICES | 21. QUANTITY | 22. UNIT | 23. UNIT PRICE | 24. AMOUNT |
|---|---|---|---|---|---|
| | **2017 Vaccines For Children (VFC)** "See Continuation Page" *(Attach Additional Sheets as Necessary)* | | | | |

| 25. ACCOUNTING AND APPROPRIATION DATA | 26. TOTAL AWARD AMOUNT *(For Govt. Use Only)* |
|---|---|

27a. SOLICITATION INCORPORATES BY REFERENCE FAR 52.212-1, 52.212-4.  FAR 52.212-3 AND 52.212-5 ARE ATTACHED.  ADDENDA ___ ARE ___ ARE NOT ATTACHED.
27b. CONTRACT/PURCHASE ORDER INCORPORATES BY REFERENCE FAR 52.212-4.  FAR 52.212-5 IS ATTACHED.  ADDENDA ___ ARE ___ ARE NOT ATTACHED.

| 28. CONTRACTOR IS REQUIRED TO SIGN THIS DOCUMENT AND RETURN ___ COPIES TO ISSUING OFFICE. CONTRACTOR AGREES TO FURNISH AND DELIVER ALL ITEMS SET FORTH OR OTHERWISE IDENTIFIED ABOVE AND ON ANY ADDITIONAL SHEETS SUBJECT TO THE TERMS AND CONDITIONS SPECIFIED HEREIN. | 29. AWARD OF CONTRACT: REFERENCE ___ OFFER DATED ___ . YOUR OFFER ON SOLICITATION (BLOCK 5), INCLUDING ANY ADDITIONS OR CHANGES WHICH ARE SET FORTH HEREIN, IS ACCEPTED AS TO ITEMS: |
|---|---|
| 30a. SIGNATURE OF OFFEROR/CONTRACTOR | 31a. UNITED STATES OF AMERICA *(Signature of Contracting Officer)* |
| 30b. NAME AND TITLE OF SIGNER *(Type or print)* | 30c. DATE SIGNED | 31b. NAME OF CONTRACTING OFFICER *(Type or print)* Alan W Sims | 31c. DATE SIGNED |

| 32a. QUANTITY IN COLUMN 21 HAS BEEN RECEIVED ___ INSPECTED ___ ACCEPTED, AND CONFORMS TO THE CONTRACT, EXCEPT AS NOTED | 33. SHIP NUMBER PARTIAL ___ FINAL | 34. VOUCHER NUMBER | 35. AMOUNT VERIFIED CORRECT FOR |
|---|---|---|---|
| 32b. SIGNATURE OF AUTHORIZED GOV'T REPRESENTATIVE | 32c. DATE | 36. PAYMENT COMPLETE ___ PARTIAL ___ FINAL | 37. CHECK NUMBER |
| | | 38. S/R ACCOUNT NUMBER | 39. S/R VOUCHER NUMBER | 40. PAID BY |
| | | 42a. RECEIVED BY *(Print)* | | |
| 41a. I CERTIFY THIS AMOUNT IS CORRECT AND PROPER FOR PAYMENT | | | |
| 41b. SIGNATURE AND TITLE OF CERTIFYING OFFICER | 41c. DATE | 42b. RECEIVED AT *(Location)* | |
| | | 42c. DATE REC'D | 42d. TOTAL CONTAINERS |

AUTHORIZED FOR LOCAL REPRODUCTION        SEE REVERSE FOR OMB CONTROL NUMBER AND PAPERWORK BURDEN STATEMENT        STANDARD FORM 1449 (10-95)

# Appx8128

# TABLE OF CONTENTS

| Section | Document/Clause/Provision | Page No. |
|---------|---------------------------|----------|
| A | Standard Form 1449 | |
| B | Continuation of SF1449 (Block 19 – 24) | 1 |
| C | Contract Clauses | 5 |
| D | Contract Documents, Exhibits or Attachments | 20 |
| E | Solicitation Provisions | 23 |

Appx8129

## SECTION B - CONTINUATION CONTINUATION OF SF1449

**Period of Performance: 04/01/17 – 03/31/18**

| ITEM | SUPPLIES / SERVICES | QTY / UNIT | UNIT PRICE | EXTENDED PRICE |
|------|---------------------|------------|------------|----------------|
| 0001 | VFC<br><br>*This solicitation is subject to the availability of funds* | | | |

The National Center for Immunization and Respiratory Diseases (NCIRD) requires the award of multiple indefinite quantity, indefinite delivery contracts for the purchase of standard commercial pediatric vaccines, manufactured under a current establishment and product license issued by the U.S. Food and Drug Administration. The vaccines awarded under these contracts will be purchased for NCIRD's immunization Awardees to support pediatric immunization programs as provided under Section 317(j) of the Public Health Service Act and Vaccine for Children (VFC) program, established pursuant to Section 13631 of the Omnibus Budget Reconciliation Act of 1993 (OBRA '93).

| Item # | Item Description | Quantity | Per Dose Price (Including FET) | Extended Price (Including FET) |
|--------|------------------|----------|-------------------------------|-------------------------------|
| 1 | DTaP vaccine:<br><br>Min. Shelf Life: 12 Months<br>Fed. Excise Tax: $2.25 per dose | Maximum Doses<br>6,500,000<br>Minimum Doses<br>100 | | |
| 2 | DTaP-Hep B-IPV vaccine:<br><br>Min. Shelf Life: 12 Months<br>Fed. Excise Tax: $3.75 per dose | Maximum Doses<br>5,380,000<br>Minimum Doses<br>100 | | |
| 3 | DTaP-IPV Vaccine:<br><br>Min. Shelf Life: 12 months<br>Fed. Excise Tax: $3.00 per dose | Maximum: 3.5M Doses<br>3,500,000<br>Minimum Doses<br>100 | | |
| 4 | DTaP-IP-HI Vaccine:<br><br>Min. Shelf Life: 12 months<br>Fed. Excise Tax: $3.75 per dose | Maximum Doses<br>7,500,000<br>Minimum Doses<br>100 | | |

Appx8130

| 5 | E-IPV vaccine:<br><br>Min. Shelf Life: 12 Months<br>Fed. Excise Tax: $0.75 | Maximum Doses<br>4,000,000<br>Minimum Doses<br>100 | | |
|---|---|---|---|---|
| 6 | Hepatitis A (pediatric) vaccine<br><br>Min. Shelf Life: 12 Months<br>Fed. Excise Tax: $0.75 per dose | Maximum Doses<br>8,500,000<br>Minimum Doses<br>100 | | |
| 7 | Hepatitis A&B (Age 18 only) vaccine<br><br>Min. Shelf Life: 12 Months<br>Fed. Excise Tax: $1.50 per dose | Maximum Doses<br>100,000<br>Minimum Doses<br>100 | | |
| 8 | Hepatitis B (pediatric/adol.) vaccine<br><br>Min. Shelf Life: 12 Months<br>Fed. Excise Tax: $0.75 per dose | Maximum Doses<br>7,700,000<br>Minimum Doses<br>100 | | |
| 9 | Hib vaccine<br><br>Min. Shelf Life: 12 Months<br>Fed. Excise Tax: $0.75 per dose | Maximum Doses<br>8,000,000<br>Minimum Doses<br>100 | | |
| 10 | Human Papillomavirus types Vaccine, Recombinant (Incl. HPV9)<br>Min. Shelf Life: 12 Months<br>Fed. Excise Tax: $0.75 per dose | Maximum Doses<br>9,000,000<br>Minimum Doses<br>100 | | |
| 11 | Measles, Mumps & Rubella (MMR) vaccine<br><br>Min. Shelf Life: 12 Months<br>Fed. Excise Tax: $2.25 per dose | Maximum Doses<br>8,000,000<br>Minimum Doses<br>100 | | |
| 12 | Meningococcal Conjugate (MCV4) vaccine<br><br>Min. Shelf Life: 12 Months<br>Fed. Excise Tax: $0.75 per dose | Maximum Doses<br>6,500,000<br>Minimum Doses<br>100 | | |

Appx8131

| | | | |
|---|---|---|---|
| 13 | Pneumococcal Conjugate vaccine (13 Valent)<br><br>Min. Shelf Life: 12 Months<br>Fed. Excise Tax: $0.75 per dose | Maximum Doses 13,000,000<br>Minimum Doses 100 | | |
| 14 | Pneumococcal (23 Valent) Polysaccharide Vaccine<br><br>Min. Shelf Life: 12 Months<br>Fed. Excise Tax: N/A | Maximum Doses 350,000<br>Minimum Doses 100 | | |
| 15 | Rotavirus vaccine<br><br>Min. Shelf Life: 12 Months<br>Fed. Excise Tax: $0.75 per dose | Maximum Doses 7,000,000<br>Minimum Doses 100 | | |
| 16 | Tetanus and Diphtheria (Td) vaccine<br><br>Min. Shelf Life: 12 Months<br>Fed. Excise Tax: $1.50 per dose | Maximum Doses 750,000<br>Minimum Doses 100 | | |
| 17 | Tdap vaccine<br><br>Min. Shelf Life: 12 Months<br>Fed. Excise Tax: $2.25 per dose | Maximum Doses 5,500,000<br>Minimum: 100 Doses 100 | | |
| 18 | Varicella vaccine<br><br>Min. Shelf Life: 12 Months<br>Fed. Excise Tax: $0.75 per dose | Maximum Doses 10,000,000<br>Minimum Doses 10 | | |
| 19 | Measles, Mumps & Rubella (MMR-V) and Varicella vaccine<br><br>Min. Shelf Life: 12 Months<br>Fed. Excise Tax: $3.00 per dose | Maximum Doses 3,300,000<br>Minimum Doses 10 | | |
| 20 | Meningococcal and Hib Vaccine (HibMenCY)<br><br>Min. Shelf Life: 12 Months<br>Fed. Excise Tax: $1.50 | Maximum Doses 50,000<br>Minimum Doses 100 | | |

Appx8132

| 21 | Serogroup B Meningococcal<br><br>Min. Shelf Life: 12 Months<br>Fed. Excise Tax: $0.75 | Maximum Doses<br>2,000,000<br>Minimum Doses<br>100 | | |
|---|---|---|---|---|
| **Total Contract Value** | | | | |

**Notes**:

**B.1   Background:**   The Centers for Disease Control and Prevention (CDC) awards contracts to manufacturers for the purchase of standard commercial pediatric vaccines.  Vaccines are one of the most cost-effective ways to prevent disease and reduce healthcare costs. The Vaccines for Children (VFC) program, established pursuant to Section 13631 of the Omnibus Budget Reconciliation Act of 1993 (OBRA '93), guarantees federal support for the purchase and supply of sufficient quantities of vaccine to the States to cover a defined group of children.   The program helps assure the implementation of effective immunization practices and proper use of vaccines to achieve higher immunization coverage.  Children (18 years-of-age or younger) who qualify for immunization through the VFC purchase program include those who are (1) Medicaid-eligible, (2) without health insurance, (3) American Indian/Alaska native (as defined in Subsection (h)(3) of the OBRA '93), or (4) children with health insurance, which does not cover the cost of vaccines, if they receive their immunizations at a Federally Qualified Health Center or rural health clinic (as defined by the Social Security Act).   Health care providers who agree to certain requirements are eligible through the States to receive free vaccine through this VFC purchase program.   The establishment of these contracts provides an opportunity to utilize VFC funds and Section 317 vaccine purchase direct assistance (DA) cooperative agreement funds to obtain vaccines at prices below those available in the commercial market place.   In addition, States may opt to purchase additional quantities of vaccine under any resulting contract to provide immunizations for children who are not federally vaccine-eligible children.

**B.2   Definitions:**

OBRA Orders – Vaccine orders under Section 1928(a) (2)(A) of the Social Security Act.

317 Orders – Vaccine orders under Section 317(j) of the Public Health Service Act.

State and Local Orders – Vaccine orders placed by authorized immunization programs using state or local funds in accordance with Section 1928(d)(4)(B) of the Social Security Act.

Manufacturer – As defined in Subsection (h) (4) of the Social Security Act, means any corporation, organization, or institution, whether public or private, which manufactures, imports, processes, or distributes under its label any pediatric vaccine.

Awardees – Includes State health departments and certain local health agencies authorized to order hereunder.

**B.3 Type of Contract:** Firm-Fixed Price

Appx8133

# SECTION C - CONTRACT CLAUSES

**C.1.**     **52.212-5 Contract Terms and Conditions Required to Implement Statutes or Executive Orders— Commercial Items.(MAR 2015)**

(a) The Contractor shall comply with the following Federal Acquisition Regulation (FAR) clauses, which are incorporated in this contract by reference, to implement provisions of law or Executive orders applicable to acquisitions of commercial items:

   (1) 52.209-10, Prohibition on Contracting with Inverted Domestic Corporations (Dec 2014)

   (2) 52.233-3, Protest After Award (AUG 1996) (31 U.S.C. 3553).

   (3) 52.233-4, Applicable Law for Breach of Contract Claim (OCT 2004) (Public Laws 108-77, 108-78 (19 U.S.C. 3805 note)).

(b) The Contractor shall comply with the FAR clauses in this paragraph (b) that the contracting officer has indicated as being incorporated in this contract by reference to implement provisions of law or Executive orders applicable to acquisitions of commercial items:

   _X_ (1) 52.203-6, Restrictions on Subcontractor Sales to the Government (Sept 2006), with Alternate I (Oct 1995) (41 U.S.C. 4704 and 10 U.S.C. 2402).

   _X_ (2) 52.203-13, Contractor Code of Business Ethics and Conduct (Apr 2010) (41 U.S.C. 3509).

   ___ (3) 52.203-15, Whistleblower Protections under the American Recovery and Reinvestment Act of 2009 (Jun 2010) (Section 1553 of Pub L. 111-5) (Applies to contracts funded by the American Recovery and Reinvestment Act of 2009).

   _X_ (4) 52.204-10, Reporting Executive compensation and First-Tier Subcontract Awards (Jul 2013) (Pub. L. 109-282) (31 U.S.C. 6101 note).

   ___ (5) [Reserved]

   ___ (6) 52.204-14, Service Contract Reporting Requirements (Jan 2014) (Pub. L. 111-117, section 743 of Div. C).

   ___ (7) 52.204-15, Service Contract Reporting Requirements for Indefinite-Delivery Contracts (Jan 2014) (Pub. L. 111-117, section 743 of Div. C).

   _X_ (8) 52.209-6, Protecting the Government's Interest When Subcontracting with Contractors Debarred, Suspended, or Proposed for Debarment (Aug 2013) (31 U.S.C. 6101 note).

   _X_ (9) 52.209-9, Updates of Publicly Available Information Regarding Responsibility Matters (Jul 2013) (41 U.S.C. 2313).

   _X_ (10) 52.209-10, Prohibition on Contracting with Inverted Domestic Corporations (May 2012) (section 738 of Division C of Public Law 112-74, section 740 of Division C of Pub. L. 111-117, section 743 of Division D of Pub. L. 111-8, and section 745 of Division D of Pub. L. 110-161).

   ___ (11) (i) 52.219-3, Notice of HUBZone Set-Aside or Sole-Source Award (Nov 2011) (15 U.S.C. 657a).

   ___ (ii) Alternate I (Nov 2011) of 52.219-3.

   _X_ (12) (i) 52.219-4, Notice of Price Evaluation Preference for HUBZone Small Business Concerns (Oct 2011) (if the offeror elects to waive the preference, it shall so indicate in its offer)(15 U.S.C. 657a).

   ___ (ii) Alternate I (Jan 2011) of 52.219-4.

Appx8134

___ (13) [Reserved]

___ (14) (i) 52.219-6, Notice of Total Small Business Aside (Nov 2011) (15 U.S.C. 644).

___ (ii) Alternate I (Nov 2011).

___ (iii) Alternate II (Nov 2011).

___ (15) (i) 52.219-7, Notice of Partial Small Business Set-Aside (June 2003) (15 U.S.C. 644).

___ (ii) Alternate I (Oct 1995) of 52.219-7.

___ (iii) Alternate II (Mar 2004) of 52.219-7.

_X_ (16) 52.219-8, Utilization of Small Business Concerns (Oct 2014) (15 U.S.C. 637(d)(2) and (3)).

_X_ (17) (i) 52.219-9, Small Business Subcontracting Plan (Oct 2014) (15 U.S.C. 637 (d)(4)).

___ (ii) Alternate I (Oct 2001) of 52.219-9.

___ (iii) Alternate II (Oct 2001) of 52.219-9.

___ (iv) Alternate III (Oct 2014) of 52.219-9.

___ (18) 52.219-13, Notice of Set-Aside of Orders (Nov 2011) (15 U.S.C. 644(r)).

___ (19) 52.219-14, Limitations on Subcontracting (Nov 2011) (15 U.S.C. 637(a)(14)).

_X_ (20) 52.219-16, Liquidated Damages—Subcontracting Plan (Jan 1999) (15 U.S.C. 637(d)(4)(F)(i)).

___ (21) 52.219-27, Notice of Service-Disabled Veteran-Owned Small Business Set-Aside (Nov 2011) (15 U.S.C. 657f).

_X_ (22) 52.219-28, Post Award Small Business Program Representation (Jul 2013) (15 U.S.C. 632(a)(2)).

___ (23) 52.219-29, Notice of Set-Aside for Economically Disadvantaged Women-Owned Small Business (EDWOSB) Concerns (Jul 2013) (15 U.S.C. 637(m)).

___ (24) 52.219-30, Notice of Set-Aside for Women-Owned Small Business (WOSB) Concerns Eligible Under the WOSB Program (Jul 2013) (15 U.S.C. 637(m)).

___ (25) 52.222-3, Convict Labor (June 2003) (E.O. 11755).

_X-__ (26) 52.222-19, Child Labor—Cooperation with Authorities and Remedies (Jan 2014) (E.O. 13126).

_X_ (27) 52.222-21, Prohibition of Segregated Facilities (Feb 1999).

_X_ (28) 52.222-26, Equal Opportunity (Mar 2007) (E.O. 11246).

_X_ (29) 52.222-35, Equal Opportunity for Veterans (Jul 2014) (38 U.S.C. 4212).

_X_ (30) 52.222-36, Equal Opportunity for Workers with Disabilities (Jul 2014) (29 U.S.C. 793).

_X_ (31) 52.222-37, Employment Reports on Veterans (Jul 2014) (38 U.S.C. 4212).

_X_ (32) 52.222-40, Notification of Employee Rights Under the National Labor Relations Act (Dec 2010) (E.O. 13496).

Appx8135

_X_ (33) (i) 52.222-50, Combating Trafficking in Persons (Mar 2015) (22 U.S.C. chapter 78 and E.O. 13627).

___ (ii) Alternate I (Mar 2015) of 52.222-50, (22 U.S.C. chapter 78 and E.O. 13627).

___ (34) 52.222-54, Employment Eligibility Verification (Aug 2013). (Executive Order 12989). (Not applicable to the acquisition of commercially available off-the-shelf items or certain other types of commercial items as prescribed in 22.1803.)

___ (35) (i) 52.223-9, Estimate of Percentage of Recovered Material Content for EPA-Designated Items (May 2008) (42 U.S.C. 6962(c)(3)(A)(ii)). (Not applicable to the acquisition of commercially available off-the-shelf items.)

___ (ii) Alternate I (May 2008) of 52.223-9 (42 U.S.C. 6962(i)(2)(C)). (Not applicable to the acquisition of commercially available off-the-shelf items.)

___ (36) (i) 52.223-13, Acquisition of EPEAT® -Registered Imaging Equipment (Jun 2014) (E.O.s 13423 and 13514

___ (ii) Alternate I (Jun 2014) of 52.223-13.

___ (37) (i) 52.223-14, Acquisition of EPEAT® -Registered Television (Jun 2014) (E.O.s 13423 and 13514).

___ (ii) Alternate I (Jun 2014) of 52.223-14.

___ (38) 52.223-15, Energy Efficiency in Energy-Consuming Products (Dec 2007) (42 U.S.C. 8259b).

___ (39) (i) 52.223-16, Acquisition of EPEAT® -Registered Personal Computer Products (Jun 2014) (E.O.s 13423 and 13514).

___ (ii) Alternate I (Jun 2014) of 52.223-16.

_X_ (40) 52.223-18, Encouraging Contractor Policies to Ban Text Messaging while Driving (Aug 2011) (E.O. 13513).

___ (41) 52.225-1, Buy American--Supplies (May 2014) (41 U.S.C. chapter 83).

___ (42) (i) 52.225-3, Buy American--Free Trade Agreements--Israeli Trade Act (May 2014) (41 U.S.C. chapter 83, 19 U.S.C. 3301 note, 19 U.S.C. 2112 note, 19 U.S.C. 3805 note, 19 U.S.C. 4001 note, Pub. L. 103-182, 108-77, 108-78, 108-286, 108-302, 109-53, 109-169, 109-283, 110-138, 112-41, 112-42, and 112-43).

___ (ii) Alternate I (May 2014) of 52.225-3.

___ (iii) Alternate II (May 2014) of 52.225-3.

___ (iv) Alternate III (May 2014) of 52.225-3.

___ (43) 52.225-5, Trade Agreements (Nov 2013) (19 U.S.C. 2501, *et seq.*, 19 U.S.C. 3301 note).

_X_ (44) 52.225-13, Restrictions on Certain Foreign Purchases (Jun 2008) (E.O.'s, proclamations, and statutes administered by the Office of Foreign Assets Control of the Department of the Treasury).

___ (45) 52.225-26, Contractors Performing Private Security Functions Outside the United States (Jul 2013) (Section 862, as amended, of the National Defense Authorization Act for Fiscal Year 2008; 10 U.S.C. 2302 Note).

___ (46) 52.226-4, Notice of Disaster or Emergency Area Set-Aside (Nov 2007) (42 U.S.C. 5150).

___ (47) 52.226-5, Restrictions on Subcontracting Outside Disaster or Emergency Area (Nov 2007) (42 U.S.C. 5150).

_X_ (48) 52.232-29, Terms for Financing of Purchases of Commercial Items (Feb 2002) (41 U.S.C. 4505), 10 U.S.C. 2307(f)).

___ (49) 52.232-30, Installment Payments for Commercial Items (Oct 1995) (41 U.S.C. 4505, 10 U.S.C. 2307(f)).

___ (50) 52.232-33, Payment by Electronic Funds Transfer— System for Award Management (Jul 2013) (31 U.S.C. 3332).

___ (51) 52.232-34, Payment by Electronic Funds Transfer—Other Than System for Award Management (Jul 2013) (31 U.S.C. 3332).

___ (52) 52.232-36, Payment by Third Party (May 2014) (31 U.S.C. 3332).

___ (53) 52.239-1, Privacy or Security Safeguards (Aug 1996) (5 U.S.C. 552a).

___ (54) (i) 52.247-64, Preference for Privately Owned U.S.-Flag Commercial Vessels (Feb 2006) (46 U.S.C. Appx 1241(b) and 10 U.S.C. 2631).

___ (ii) Alternate I (Apr 2003) of 52.247-64.

(c) The Contractor shall comply with the FAR clauses in this paragraph (c), applicable to commercial services, that the Contracting Officer has indicated as being incorporated in this contract by reference to implement provisions of law or executive orders applicable to acquisitions of commercial items:

___ (1) 52.222-41, Service Contract Labor Standards (May 2014) (41 U.S.C. chapter 67.).

___ (2) 52.222-42, Statement of Equivalent Rates for Federal Hires (May 2014) (29 U.S.C. 206 and 41 U.S.C. chapter 67).

___ (3) 52.222-43, Fair Labor Standards Act and Service Contract Labor Standards -- Price Adjustment (Multiple Year and Option Contracts) (May 2014) (29 U.S.C.206 and 41 U.S.C. chapter 67).

___ (4) 52.222-44, Fair Labor Standards Act and Service Contract Labor Standards -- Price Adjustment (May 2014) (29 U.S.C. 206 and 41 U.S.C. chapter 67).

___ (5) 52.222-51, Exemption from Application of the Service Contract Labor Standards to Contracts for Maintenance, Calibration, or Repair of Certain Equipment--Requirements (May 2014) (41 U.S.C. chapter 67).

___ (6) 52.222-53, Exemption from Application of the Service Contract Labor Standards to Contracts for Certain Services--Requirements (May 2014) (41 U.S.C. chapter 67).

___ (7) 52.222-17, Nondisplacement of Qualified Workers (May 2014) (E.O. 13495).

___ (8) 52.226-6, Promoting Excess Food Donation to Nonprofit Organizations. (May 2014) (42 U.S.C. 1792).

___ (9) 52.237-11, Accepting and Dispensing of $1 Coin (Sep 2008) (31 U.S.C. 5112(p)(1)).

___ (10) 52.222-55, Minimum Wages Under Executive Order 13658 Dec 2014)(Executive Order 13658).

(d) *Comptroller General Examination of Record* The Contractor shall comply with the provisions of this paragraph (d) if this contract was awarded using other than sealed bid, is in excess of the simplified acquisition threshold, and does not contain the clause at 52.215-2, Audit and Records -- Negotiation.

Appx8137

(1) The Comptroller General of the United States, or an authorized representative of the Comptroller General, shall have access to and right to examine any of the Contractor's directly pertinent records involving transactions related to this contract.

(2) The Contractor shall make available at its offices at all reasonable times the records, materials, and other evidence for examination, audit, or reproduction, until 3 years after final payment under this contract or for any shorter period specified in FAR Subpart 4.7, Contractor Records Retention, of the other clauses of this contract. If this contract is completely or partially terminated, the records relating to the work terminated shall be made available for 3 years after any resulting final termination settlement. Records relating to appeals under the disputes clause or to litigation or the settlement of claims arising under or relating to this contract shall be made available until such appeals, litigation, or claims are finally resolved.

(3) As used in this clause, records include books, documents, accounting procedures and practices, and other data, regardless of type and regardless of form. This does not require the Contractor to create or maintain any record that the Contractor does not maintain in the ordinary course of business or pursuant to a provision of law.

(e)

(1) Notwithstanding the requirements of the clauses in paragraphs (a), (b), (c) and (d) of this clause, the Contractor is not required to flow down any FAR clause, other than those in this paragraph (e)(1) in a subcontract for commercial items. Unless otherwise indicated below, the extent of the flow down shall be as required by the clause—

   (i) 52.203-13, Contractor Code of Business Ethics and Conduct (Apr 2010) (41 U.S.C. 3509).

   (ii) 52.219-8, Utilization of Small Business Concerns (Oct 2014) (15 U.S.C. 637(d)(2) and (3)), in all subcontracts that offer further subcontracting opportunities. If the subcontract (except subcontracts to small business concerns) exceeds $650,000 ($1.5 million for construction of any public facility), the subcontractor must include 52.219-8 in lower tier subcontracts that offer subcontracting opportunities.

   (iii) 52.222-17, Nondisplacement of Qualified Workers (May 2014) (E.O. 13495). Flow down required in accordance with paragraph (1) of FAR clause 52.222-17.

   (iv) 52.222-26, Equal Opportunity (Mar 2007) (E.O. 11246).

   (v) 52.222-35, Equal Opportunity for Veterans (Jul 2014) (38 U.S.C. 4212).

   (vi) 52.222-36, Equal Opportunity for Workers with Disabilities (Jul 2014) (29 U.S.C. 793).

   (vii) 52.222-37, Employment Reports on Veterans (Jul 2014) (38 U.S.C. 4212).

   (viii) 52.222-40, Notification of Employee Rights Under the National Labor Relations Act (Dec 2010) (E.O. 13496). Flow down required in accordance with paragraph (f) of FAR clause 52.222-40.

   (ix) 52.222-41, Service Contract Labor Standards (May 2014), (41 U.S.C. chapter 67).

   (x) __X_ (A) 52.222-50, Combating Trafficking in Persons (Mar 2015) (22 U.S.C. chapter 78 and E.O. 13627).

       ___ (B) Alternate I (Mar 2015) of 52.222-50 (22 U.S.C. chapter 78 E.O. 13627).

   (xi) 52.222-51, Exemption from Application of the Service Contract Labor Standards to Contracts for Maintenance, Calibration, or Repair of Certain Equipment--Requirements (May 2014) (41 U.S.C. chapter 67.)

(xii) 52.222-53, Exemption from Application of the Service Contract Labor Standards to Contracts for Certain Services--Requirements (May 2014) (41 U.S.C. chapter 67)

(xiii) 52.222-54, Employment Eligibility Verification (Aug 2013).

(xiv) 52.225-26, Contractors Performing Private Security Functions Outside the United States (Jul 2013) (Section 862, as amended, of the National Defense Authorization Act for Fiscal Year 2008; 10 U.S.C. 2302 Note).

(xv) 52.226-6, Promoting Excess Food Donation to Nonprofit Organizations. (May 2014) (42 U.S.C. 1792). Flow down required in accordance with paragraph (e) of FAR clause 52.226-6.

(xvi) 52.247-64, Preference for Privately-Owned U.S. Flag Commercial Vessels (Feb 2006) (46 U.S.C. Appx 1241(b) and 10 U.S.C. 2631). Flow down required in accordance with paragraph (d) of FAR clause 52.247-64.

(xvii) 52.222-55, Minimum Wages Under Executive Order 13658 (Dec 2014)(Executive Order 13658).

(2) While not required, the contractor may include in its subcontracts for commercial items a minimal number of additional clauses necessary to satisfy its contractual obligations.

**C.2      The following FAR Clause is incorporated by reference:**

| FAR SOURCE | TITLE AND DATE |
|------------|----------------|
| 52.212-4 | Contract Terms and Conditions—Commercial Items (Jan 2017) |
| 52.232-1 | Payments |

## C.3      Special Clauses

**C.3.1      Shelf Life**
Vaccine provided under this contract shall have a minimum 12 month shelf life remaining upon delivery to the consignee, or as specified within each Contract Line Item Number (See Section B, Continuation of SF 1449).

**C.3.2      Packaging and Packing Requirements**
1. Packaging:
All items shall be packaged in standard commercial manner.
2. Packing:
      a. Product shall be packed to ensure maintenance of FDA recommended temperature during transit and safe arrival at destination. An electronic temperature monitoring device is required with each shipment unless Contractor has obtained prior approval from CDC to use an alternative monitoring method.
      b. Contractor will provide the Contracting Officer Representative (COR) with documentation that explains the cause of each temperature excursion and stability data used by the contractor to determine if the cold chain was adversely affected by temperature variance.  Upon review of data provided, CDC will notify appropriate parties if the vaccine is accepted or rejected.

**C.3.3      Contract Period of Performance**
The contract period of performance shall begin on the date of award and shall end 12 months later (CDC will provide Contractor with official end date at time of award.)

**C.3.4      Time of Delivery**
Delivery is required to be made at destination within 15 working days after receipt of electronic, written, or telephonic order (telephone orders to be confirmed in writing).

Appx8139

**C.3.5**   **Place of Delivery**
a. The Contractor shall be required to deliver vaccines F.O.B. Destination, as directed by delivery orders to the CDC centralized distribution locations currently in Aurora, CO and Memphis, TN.
b. The Contractor shall be required to deliver frozen vaccines F.O.B. destination as directed by delivery orders.

**C.3.6**   **Amendment to OBRA Statue**
In the event of an amendment of 42 U.S.C. Section 1396(s), any terms of the contract affected by such an amendment will be modified in accordance with the revised statute.  The Contracting Officer and the Contractor shall meet to discuss such modifications to the contract before finalization of any changes to the contract.

**C.3.7**   **Product Licensure**
a. The vaccines produced and delivered under this contract shall be manufactured under a current establishment and product license issued by the Food and Drug Administration as indicated below:
_____
b. The Current Good Manufacturing Practice Regulations (CGMPR's) (21CFR Parts 210, 211) will be the standard to be applied for manufacturing, processing and packing of drugs, chemicals, biologicals, and reagents.
c. The Contractor shall advise the Contracting Officer immediately of any relocation of his prime manufacturing facility or the relocation of any subcontractor's facility, and if at any time during the life of the contract, the item listed under this contract fails to meet CGMPR's and/or a negative Food and Drug Administration Quality Assurance Evaluation is received; the contract may be terminated, in whole or in part, without further liability to the Government.

**C.3.8**   **Placement of Orders**
a. All vaccine under this contract will be ordered by delivery orders.  Orders shall be placed by Health and Human Services (HHS), the Centers for Disease Control and Prevention (CDC) on behalf of eligible awardees, or by the awardees.  Orders shall be placed by electronic transfer. In the event of an emergency, orders may be placed by CDC by telephone (confirmed in writing). Contractors shall be able to interface with the CDC Electronic Vaccine Ordering System.  If unable to interface at the time of award, the vendor shall complete interface implementation by the end of the period of performance of the contract.
b. Orders shall be submitted to the Ordering Address specified in Contract Clauses Paragraph C.3.12, Contractor's Ordering/Payment Address and shall contain the following minimum information:
    1.  Date of order;
    2.  Contract number and order number;
    3.  Item description, quantity and unit price;
    4.  Delivery or performance date;
    5. Place of delivery or performance (including consignee);
    6. Packaging, packing and shipping instruction, if any;
    7. Accounting and appropriation data;
    8.  Statement to indicate if partial deliveries are not acceptable; (lack of a statement shall be construed to mean partial deliveries are acceptable and payment shall be made as required elsewhere herein)
    9.  Any other pertinent data.

**C.3.9**   **Delivery Order Limitations**
a. Minimum Order Size: Individual delivery orders issued under this contract must meet the minimum order size as specified within each Contract Line Item Number (See Section B, Continuation of SF 1449). When the Government requires supplies covered by this contract in amounts less than stated above, the Government is not obligated to purchase, nor is the Contractor obligated to furnish those supplies under this contract.
b. Maximum Order: The maximum quantity specified within each Contract Line Item Number (See Section B, Continuation of SF1449) is the maximum number of doses that may be ordered during the contract

**Appx8140**

period of performance. Contractors are advised that the maximum quantity represents their commitment to the CDC under their contract.

c. Delivery Orders shipments:

    1. Shipments shall be sent with all transaction information necessary to be compliant with applicable Drug Supply Chain Security Act requirements regarding Transaction Information (TI), Transaction History (TH), and Transaction Statement (TS). Initially, paper documentation or portal access will be acceptable, but EDI messaging between contractors and CDC will transition to allow electronic transmission of information.

    2. The Government reserves the right to reject vaccine doses that exceed delivery order requirements. The Government shall notify the Contractor when excess doses have been delivered to distribution sites. The Contractor is responsible for contacting the distribution site to make arrangement for the return of the excess doses and will be responsible for shipping cost associated with their return.

    3. Bulk order shipments, when possible, shall consist of:

      a. One NDC per skid;

      b. Full skid quantities with same lot number;

      c. Full case quantities (when total order size allows).

**C.3.10**      **FAR 52.216-18. Ordering (Oct 1995)**

    a. Any supplies and services to be furnished under this contract shall be ordered by issuance of delivery orders or task orders by the individuals or activities designated in the Schedule. Such orders may be issued from the effective date of the contract through the expiration date of the contract.

    b. All delivery orders or task orders are subject to the terms and conditions of this contract. In the event of conflict between a delivery order or task order and this contract, the contract shall control.

    c. If mailed, a delivery order or task order is considered "issued" when the Government deposits the order in the mail. Orders may be issued orally or by written telecommunications only if authorized in the Schedule.

**C.3.11**      **FAR 52.216-22 Indefinite Quantity (Oct 1995)**

a. This is an indefinite quantity contract for the supplies specified and effective for the period stated in the Schedule. The quantities of supplies and services specified in the Schedule are estimates only and are not purchased by this contract.

b. Delivery or performance shall be made only as authorized by orders issued in accordance with the Ordering clause. The Contractor shall furnish to the Government, when and if ordered, the supplies specified in the Schedule up to and including the quantity designated in the Schedule as the "maximum." The Government shall order at least the quantity of supplies designated in the Schedule as the "minimum."

c. Except for any limitations on quantities in the Delivery Order Limitations clause or in the Schedule, there is no limit on the number of orders that may be issued. The Government may issue orders requiring delivery to multiple destinations or performance at multiple locations.

d. Any order issued during the effective period of this contract and not completed within that period shall be completed by the Contractor within the time specified in the order. The contract shall govern the Contractor's and Government's rights and obligations with respect to that order to the same extent as if the order were completed during the contract's effective period; provided, that the Contractor shall not be required to make any deliveries under this contract after fifteen (15) working days beyond the expiration date of the contract.

**C.3.12   Contractor's Ordering/Payment Address**

Submission of all orders for Contractor's vaccines and payment of invoices shall be addressed as referenced below:

| Ordering Address | Payment Address |
|---|---|
|  |  |
|  |  |
|  |  |

**C.3.13   Invoice Submission**

1. Invoice submission under this contract will be made as follows:

a. Federal Government: The Contractor shall submit invoices via Electronic Data Interchange (EDI).

b. Awardees: The Contractor shall submit one hard copy of its invoice(s) to the address specified on the delivery order.

c. The Contractor agrees to include the following information on each invoice:

1. Contractor's name and invoice date;
2. Contract number, or other authorization for delivery of property and/or services;
3. Description, cost or price, and quantity of property and/or services actually delivered or rendered;
4. Shipping and payment terms;
5. Other substantiating documentation or information as required by the contract;
6. Name where practicable, title, phone number, and complete mailing address of responsible official to whom payment is to be sent;
7. NDC and Lot number of vaccine vials shipped;
8. CDC accounting and appropriation data as described on the delivery order; and
9. Electronic Funds Transfer (EFT) and Taxpayer Identification Number (TIN); and
10. Purchase Order (PO) number and PO line item number.

**C.3.14   Method of Payment**

a. Federal Government:

1. The Government will use electronic funds transfer when making payment under this contract IAW FAR Clause 52.232-33, payment by Electronic Funds Transfer - Central Contractor Registration.
2. The Government is not liable for payments related to orders submitted by states, cities, or territories.

b. Awardees: By check

**C.3.15   Contract Officer Representative (COR)**

A COR will be designated in writing by the Contracting Officer to serve during the period of performance of the contract. The COR shall be responsible for guidance in regard to the technical aspect of the contract, provide a point for liaison between the Contractor and other Government agencies and be the general focal point to address technical and logistical problems relating to the performance under the contract. The COR shall not have the authority to make any commitments or authorize any changes which affect the contract price, terms and/or conditions; any such changes shall be referred to the Contracting Officer for action.

**C.3.16   Return Privileges**

Return privileges for credit, reimbursement or exchange do not apply to this contract except vaccines not conforming to the specifications set forth herein.

**C.3.17   Restrictions on Use of Vaccines**

Vaccines obtained under this contract shall be used only in children 18 years of age and younger as authorized under Section 1928 of the Social Security Act. Sale of such vaccine to any person or entity or reimbursement of vaccine costs is strictly prohibited. Free distribution of such vaccine is also prohibited,

Appx8142

except where such vaccine is administered in the context of Federal and Awardee immunization program activities.

**C.3.18    Federal Excise Tax Credit**

Negotiated prices for the vaccines included in this Contract may include a Federal Excise Tax (See Continuation of SF 1449 for applicable Contract Line Item Numbers). If for any reason the vaccine is returned (other than for resale) or destroyed, the Contractor shall within 6 months following the date the vaccine is returned or destroyed, file a claim for credit or refund relative to any tax previously paid on such vaccine. The Contractor agrees to credit or refund the amount of such excise tax to the purchaser to the extent that the Contractor receives a credit or refund from the Federal Government. Any such credit or refund to the purchaser is expressly conditioned upon the authorized purchaser providing a written summary of events leading to the request for credit or refund. The purchaser shall return all undistributed vaccine to the Contractor for proper disposal, unless destruction of the vaccine renders return impossible. If destruction of the vaccine renders return impossible and is therefore destroyed by the purchaser, the authorized purchaser must provide a written summary of events to the Contractor within 30 days of said destruction. If a contract is in place with the Contractor at the time when a credit or refund is due; the purchaser may elect to receive vaccine which will be purchased at the current contract price in lieu of a cash payment. Otherwise, the Contractor shall refund the amount due to the purchaser's account. If a credit or refund is issued by the Contractor for state or local funds, it shall be submitted to the state or local public health entity identified in the request for FET credit. For all Federal Excise Tax refund and other checks sent to the government, each shall reference the Purchase Order number(s) and line item(s) of origin. In the event that the Purchase Order number and line item of origin information cannot be printed on the check, accompanying documentation shall be sent with the check. If a credit or refund is issued by the Contractor to the Federal Funds account, it shall contain the Contractor's DUNS and TIN/EIN and shall be submitted either via EDI (for credit) or to the following address (for check):

Centers for Disease Control and Prevention
Office of the Financial Resources (OFR)
Attn: Debt Management Branch
P.O. Box 15580
Atlanta, GA 30329-4027

**C.3.19    Delinquent Delivery Report**

The Contractor shall provide CDC with a weekly electronic listing of all CDC orders that have not been shipped within the agreed upon delivery schedule. The report shall include the following information: order number, date of order, and status of order in number of pending/undelivered doses. The report shall also provide an explanation as to the cause for the delinquent delivery as well as when the vaccine will be delivered. This notification shall not relieve the contractor from meeting its obligations under the contract and shall not limit the Government's right to seek relief for any breach of contract for failure to perform, including termination for cause.

**C.3.20    Biological Surveillance Data Reports**

a. The Contractor shall submit a monthly report of historical sales data for the United States by month and state specifying the name of the vaccine, NDC #, and the total number of doses sold (segregated by CDC and non-CDC sales), in a standardized format acceptable to the Contractor and the CDC. The report shall be submitted electronically to the COR by the 15th of the month. Information related to vaccine sales through CDC contracts is not considered proprietary. CDC acknowledges that those reports pertaining to private sales unrelated to this contract are confidential and proprietary information of the Contractor, and shall not use reports for any purpose other than CDC's internal tracking and reporting purposes and shall not further disclose such reports without the Contractor's prior written consent unless required by the law or other Federal authority; provided that, no Contractor authorization shall be required for the CDC to include the data from the Contractor's report in a report in which aggregated data from multiple Contractors is summarized, so long as, with respect to multi-sourced products, the CDC's aggregated report does not include any data which could be individually identified as the Contractor's. In the event that CDC is required by law or other Federal authority to disclose such reports required to be held

Appx8143

confidential hereunder, CDC shall notify the Contractor prior to making such disclosure in accordance with law or other Federal authority.

b. Data Reports to Manufacturers

The Government will submit monthly reports of all vaccine data specifying doses by project, zip code, and NDC # in a standardized format.  For all vaccines except direct ship vaccines, the Government shall provide distribution data.  Because the Government does not distribute direct ship vaccines, purchase data will be provided.  The reports shall be submitted electronically to the Contractor by the 15th of the month for the previous month.  The Government shall also provide the Contractor with an annual Vaccine Tracking System (VTrckS) spend plan for each Awardee and an annual providers list during the first quarter of the fiscal year.

**C.3.21   Prohibitions on Inducements**

The Contractor is expressly prohibited from offering, providing or arranging inducements of any kind to providers or authorized purchasers ordering vaccine under this contract for the purpose of obtaining orders for vaccine.  Examples of such inducements include, but are not limited to: entertainment, meals, and free or reduced prices for syringes, vaccines, or other medical products or supplies.  If the Contractor has entered into similar agreements with the authorized purchasers which offer inducements relative to its commercial business, these agreements must be clear that they do not apply to purchases made under the CDC Federal contracts.

**C.3.22   Contract Changes**

Notwithstanding FAR Clause 52.212-4(c), Changes, the parties hereby agree that modifications for incremental funding and other administrative changes (e.g., changes to CDC accounting data) that do not affect the terms and conditions of the contract may be made unilaterally by the CDC.

**C.3.23   Vaccine images**

Upon contract award, the Contractor agrees to provide via email camera-ready vaccine product images in .pdf format and written authorization for CDC to use the images to the COR.  CDC will use the images to illustrate the Contractor's products on the CDC vaccine ordering system.  The Contractor agrees to provide CDC with updated product images if there is a change in packaging and vaccine images for new NDCs added to the contract during the period of performance.

For each vaccine furnished under this contract, complete the information in the template below.  If there is more than one component/NDC within the unit of use, list each NDC separately along with component name.

| Unit of Sale (Box/Carton) | | | Unit of Use (Vial/Syringe) |
|---|---|---|---|
| NDC | Brand Name/Trade Name | Description/Presentation | NDC |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

**C.3.24   Advance Notice of Supply Issues**

The Contractor agrees to provide advance notification to COR and the CDC Contracting Officer of any supply issue which may result in the Contractor's failure to deliver vaccine within the agreed upon delivery schedule specified in the contract.  This notification shall be given as soon as the Contractor becomes aware of the scope of the problem that may impede the timely delivery of vaccine.  This notification shall not relieve the contractor from meeting its obligations under the contract and shall not limit the Government's right to seek relief for any breach of contract for failure to perform, including termination for cause.  Furthermore, any deviation from the delivery schedule due to a vaccine supply

Appx8144

issue will demonstrate reasonably equal treatment with respect to the fulfillment of orders between CDC and the non-government customers.

**C.3.25     Authorized Distributor of Record (ADR) Agreements**
In accordance with the Prescription Drug Marketing Act (PDMA) of 1998, it is requested that all suppliers provide a written statement included as an attachment in Section D of this solicitation, which designates the CDC as the ADR for all vaccines subject to distribution under this contract.

**C.3.26     Use of VFC Provider Lists and Distribution of Material**
a. Contractors are prohibited from utilizing VFC providers' lists obtained from any source for any mailing or other communication with VFC providers, except as approved in writing by the CDC COR. In addition, contractors are prohibited from otherwise communicating with VFC providers regarding the VFC program, except as approved in writing by the CDC COR.  To the extent that Contractors have established relationships with VFC providers or authorized purchasers under this contract that are independent from the VFC program, communications related to such independent relationships are not covered by this provision and do not require CDC consent.

b. Contractors are prohibited from providing names and/or addresses of VFC providers to any third party, except as needed to comply with the terms of this contract, in which cases the CDC COR shall be notified in writing.

c. Any Contractor that ships vaccine directly to VFC providers is prohibited from inserting any promotional or other material that is promotional in nature for any product that the Contractor produces, into shipping containers for vaccine purchased under this contract, except for material related to use of the vaccine as approved in writing by the CDC COR.  Additionally any shipping container inserts that are required, such as handling instructions or educational materials, should not contain any promotional material as part of its content.

**C.3.27     New FDA Product License**
Manufacturers who receive a new FDA product license for a vaccine already included with the scope of a VFC resolution may have the new product added to its contract by modification if it is determined that adding the product is in the best interest of the Government.  Such new products must be consistent with VFC formulary schedules (regarding periodicity and dosage regimens) as established for the vaccines by the Advisory Committee on Immunization Practices (ACIP).  New FDA licensed products added to this contract must comply with Clause C.29., *Price Changes,* below.

**C.3.28     ACIP Approved Product**
When a new vaccine product is approved by the ACIP for inclusion in the VFC Formulary, the Manufacturer of such product may have the new product added to its contract by modification if it is determined that adding the product is in the best interest of the Government.  This would include new vaccines, new indications or new formulations for existing products or new dosing regimens for an existing product.  New ACIP Approved Products added to this contract must comply with Clause C.29., *Price Changes,* below.

**C.3.29     Price Changes**
All price change effective dates shall be approved by the CDC Contracting Officer and shall occur on the first day of the following month in VTrckS.

**C.4       Evaluation of Contractor Performance Utilizing CPARS (April 2013)**
In accordance with FAR 42.15, the Centers for Disease Control and Prevention (CDC) will review and evaluate contract performance.  FAR 42.1502 and 42.1503 requires agencies to prepare evaluations of contractor performance and submit them to the Past Performance Information Retrieval System (PPIRS). The CDC utilizes the Department of Defense (DOD) web-based Contractor Performance Assessment Reporting System (CPARS) to prepare and report these contractor performance evaluations.  All information contained in these assessments may be used by the Government, within the limitations of

**Appx8145**

FAR 42.15, for future source selections in accordance with FAR 15.304 where past performance is an evaluation factor.

The CPARS system requires a contractor representative to be assigned so that the contractor has appropriate input into the performance evaluation process.  The CPARS contractor representative will be given access to CPARS and will be given the opportunity to concur or not-concur with performance evaluations before the evaluations are complete.  The CPARS contractor representative will also have the opportunity to add comments to performance evaluations.

The assessment is not subject to the Disputes clause of the contract, nor is it subject to appeal beyond the review and comment procedures described in the guides on the CPARS website.  Refer to: www.cpars.gov for details and additional information related to CPARS, CPARS user access, how contract performance assessments are conducted, and how Contractors participate.  Access and training for all persons responsible for the preparation and review of performance assessments is also available at the CPARS website.

The contractor must provide the CDC contracting office with the name, e-mail address, and phone number of their designated CPARS representative who will be responsible for logging into CPARS and reviewing and commenting on performance evaluations.  The contractor must maintain a current representative to serve as the contractor representative in CPARS.  It is the contractor's responsibility to notify the CDC contracting office, in writing (letter or email), when their CPARS representative information needs to be changed or updated.  Failure to maintain current CPARS contractor representative information will result in the loss of an opportunity to review and comment on performance evaluations.

[End of Clause]

**C.5**     **52.215-20 Requirements for Certified Cost or Pricing Data and Data Other Than Certified Cost of Pricing Data (Oct 2010)**
(a) Exceptions from certified cost or pricing data.
(1) In lieu of submitting certified cost or pricing data, offerors may submit a written request for exception by submitting the information described in the following paragraphs. The Contracting Officer may require additional supporting information, but only to the extent necessary to determine whether an exception should be granted, and whether the price is fair and reasonable.
(i) Identification of the law or regulation establishing the price offered. If the price is controlled under law by periodic rulings, reviews, or similar actions of a governmental body, attach a copy of the controlling document, unless it was previously submitted to the contracting office.
(ii) Commercial item exception. For a commercial item exception, the offeror shall submit, at minimum, information on prices at which the same item or similar items have previously been sold in the commercial market that is adequate for evaluating the reasonableness of the price for this acquisition. Such information may include—
(A) For catalog items, a copy of or identification of the catalog and its date, or the appropriate pages for the offered items, or a statement that the catalog is on file in the buying office to which the proposal is being submitted. Provide a copy or describe current discount policies and price lists (published or unpublished), e.g., wholesale, original equipment manufacturer, or reseller. Also explain the basis of each offered price and its relationship to the established catalog price, including how the proposed price relates to the price of recent sales in quantities similar to the proposed quantities;
(B) For market-priced items, the source and date or period of the market quotation or other basis for market price, the base amount, and applicable discounts. In addition, describe the nature of the market;
(C) For items included on an active Federal Supply Service Multiple Award Schedule contract, proof that an exception has been granted for the schedule item.
(2) The offeror grants the Contracting Officer or an authorized representative the right to examine, at any time before award, books, records, documents, or other directly pertinent records to verify

Appx8146

any request for an exception under this provision, and the reasonableness of price. For items priced using catalog or market prices, or law or regulation, access does not extend to cost or profit information or other data relevant solely to the offeror's determination of the prices to be offered in the catalog or marketplace.

(b) Requirements for certified cost or pricing data. If the offeror is not granted an exception from the requirement to submit certified cost or pricing data, the following applies:

(1) The offeror shall prepare and submit certified cost or pricing data, data other than certified cost or pricing data, and supporting attachments in accordance with the instructions contained in Table 15-2 of FAR 15.408, which is incorporated by reference with the same force and effect as though it were inserted here in full text. The instructions in Table 15-2 are incorporated as a mandatory format to be used in this contract, unless the Contracting Officer and the Contractor agree to a different format and change this clause to use Alternate I.

(2) As soon as practicable after agreement on price, but before contract award (except for unpriced actions such as letter contracts), the offeror shall submit a Certificate of Current Cost or Pricing Data, as prescribed by FAR 15.406-2.

(End of provision)

Alternate I (Oct 2010). As prescribed in 15.408(l) (and see 15.403-5(b)(1)), substitute the following paragraph (b)(1) for paragraph (b)(1) of the basic provision:

(b)(1) The offeror shall submit certified cost or pricing data, data other than certified cost or pricing data, and supporting attachments in the following format: [Insert description of the data and format that are required, and include access to records necessary to permit an adequate evaluation of the proposed price in accordance with 15.408, Table 15-2, Note 2. The description may be inserted at the time of issuing the solicitation, or the Contracting Officer may specify that the offeror's format will be acceptable, or the description may be inserted as the result of negotiations.]:

(a) Submit the cost portion of the proposal via the following electronic media: [electronic spreadsheet]

**FAR 52.215-21 Alternate III Requirements for Cost or Pricing Data or Information Other Than Cost or Pricing Data - Modifications - Alternate III (Oct 1997)**

(c) Submit the cost portion of the proposal via the following electronic media: [electronic spreadsheet]

**C.6     52.232-40 – Providing Accelerated Payments to Small Business Subcontractors (Dec 2013)**

(a) Upon receipt of accelerated payments from the Government, the Contractor shall make accelerated payments to its small business subcontractors under this contract, to the maximum extent practicable and prior to when such payment is otherwise required under the applicable contract or subcontract, after receipt of a proper invoice and all other required documentation from the small business subcontractor.

(b) The acceleration of payments under this clause does not provide any new rights under the Prompt Payment Act.

(c) Include the substance of this clause, including this paragraph (c), in all subcontracts with small business concerns, including subcontracts with small business concerns for the acquisition of commercial items.

(End of clause)

**C.7     352.203-70 Anti-Lobbying (December 18, 2015)**

Pursuant to the HHS annual appropriations acts, except for normal and recognized executive-legislative relationships, the Contractor shall not use any HHS contract funds for:

(a) Publicity or propaganda purposes;

(b) The preparation, distribution, or use of any kit, pamphlet, booklet, publication, electronic communication, radio, television, or video presentation designed to support or defeat the enactment of legislation before the Congress or any State or local legislature or legislative body, except in presentation to the Congress or any state or local legislature itself; or designed to support or defeat any proposed or pending regulation, administrative action, or order issued by the executive branch of any state or local government, except in presentation to the executive branch of any state or local government itself; or

(c) Payment of salary or expenses of the Contractor, or any agent acting for the Contractor, related to any activity designed to influence the enactment of legislation, appropriations, regulation, administrative action, or Executive order proposed or pending before the Congress or any state government, state legislature or local legislature or legislative body, other than for normal and recognized executive-legislative relationships or participation by an agency or officer of a state, local, or tribal government in policymaking and administrative processes within the executive branch of that government.

(d) The prohibitions in subsections (a), (b), and (c) above shall include any activity to advocate or promote any proposed, pending, or future federal, state, or local tax increase, or any proposed, pending, or future requirement for, or restriction on, any legal consumer product, including its sale or marketing, including, but not limited to, the advocacy or promotion of gun control.

(End of clause)

# SECTION D - CONTRACT DOCUMENTS, EXHIBITS OR ATTACHMENTS

**D.1**   **Websites.** Additional information can be found at www.fbo.gov, www.cdc.gov/vaccines; and http://csrc.nist.gov/publications/nistpubs/

**D.2**   **Attachment A -   Authorized Distributor of Record (ADR) Agreement:**  Offerors shall complete and return the following agreement with their proposals.

Appx8149

**Attachment A: Authorized Distributor of Record (ADR) Agreement**

*AUTHORIZED DISTRIBUTOR OF RECORD (ADR) AGREEMENT*

This Agreement hereby represents the ongoing relationship between the supplier named below ("MANUFACTURER / SUPPLIER") and the Centers for Disease Control and Prevention, herein after referred to as CDC, to establish and designate CDC as an Authorized Distributor of Record (ADR) as set forth in the Prescription Drug Marketing Act (PDMA) of 1988 as well as in the implementing federal regulations found at 21 CFR Part 203. CDC hereafter agrees to comply with all applicable state and federal laws to ensure continued status of this relationship. To further meet the requirements of the PDMA, please forward with the signed agreement an attachment with a list of the specific products that CDC is authorized to distribute or a statement that the CDC is an ADR for the manufacturer's entire product line. Specific products should be identified by the pharmaceutical / vaccine name, dosage form, and strength of the drug and the NDC number.

Check the box that applies:

__ The Distributor is the ADR for Supplier's entire product line.

__ The Distributor is the ADR for the products listed on the attachment 1-A.

This agreement shall be valid from the date of dual execution until termination by either party on ninety (90) days written notice. This agreement shall not abridge, supplant, modify, or in any way alter any other pre-existing distribution agreement or any future agreements that may, from time to time, be executed in the furtherance of the business relationship between Manufacturer/ Supplier and the CDC.
This agreement confers no rights upon CDC other than to designate CDC as an Authorized Distributor of Record for Manufacturer / Supplier. This agreement is not intended to be, nor shall it be, interpreted as a sales agreement or any other type of agreement other than to represent an "ongoing relationship" within the meaning set forth in 21 CFR Part 203.3(u).

*By affixing my signature below, I do hereby acknowledge and represent that I have read this Agreement in its entirety, that I understand its terms, that I am duly authorized to bind my organization to the requirements detailed in the above Agreement and that I agree to ensure that my organization will adhere to such requirement for the duration herein stated.*

Authorized Distributor of Record: **Centers for Disease Control and Prevention (CDC)**

Authorized Signature:_____

Print Name: _____, U.S. Government Contracting Officer

Date: _____

-------------------------------------------------------------------------------------------------------

Manufacturer / Supplier: _____

Authorized Signature: _____

Print Name: _____

Date: _____

Appx8150

Attachment A-1

## LIST OF PRODUCTS

| Item No. | Product/Brand Name | NDC |
|----------|--------------------|-----|
| 1. | Vaccine | xxxxx-xxxx-xx |
| 2. | Vaccine | xxxxx-xxxx-xx |
| 3. | Vaccine | xxxxx-xxxx-xx |

Appx8151

# SECTION E - SOLICITATION PROVISIONS

**E.1**     **The following provisions are added by reference:**

| FAR SOURCE | TITLE AND DATE |
|---|---|
| 52.212-1 | Instructions to Offerors - Commercial Items (Jan 2017) |
| 52.212-3 | Offeror Representations and Certifications - Commercial Items (Mar 2015) |
| 52.232-18 | Availability of Funds (Apr 1984) |

**E.2**     **Paragraph ( c) of 52.212-1, Period for acceptance of offers, is deleted in its entirety and the following is substituted therefore:**

( c)  Period for acceptance of offers.  The offeror agrees to hold the prices in its offer firm for 60 calendar days from the date specified for receipt of offers, unless another time period is specified in an addendum to the solicitation.

**E.3**     **FAR   52.233-2  Service of Protest (Sep 2006)**

Protests, as defined in section 33.101 of the Federal Acquisition Regulation, that are filed directly with an agency, and copies of any protests that are filed with the Government Accountability Office (GAO), shall be served on the Contracting Officer (addressed as follows) by obtaining written and dated acknowledgment of receipt from:

<div align="center">

Centers for Disease Control & Prevention
Attn: Alan Sims
MS: K-14
2920 Brandywine Road
Atlanta, GA 30341-5539

</div>

The copy of any protest shall be received in the office designated above within one day of filing a protest with the GAO.

(End of Provision)

**E.4**     **INSTRUCTIONS FOR SUBMISSION OF  OFFERS:**

a.   Offerors shall submit their offers on the basis of Firm-Fixed Price by 11:59pm EST on February 02, 2017.

b.   Offers shall be submitted electronically (via e-mail) in MS Word or MS Excel files to tnr6@cdc.gov. The following format is required as e-mail subject:  The RFP No: 2017-N-18099.KT.doc or .xls (Where "2017-N-18099" is the respective RFP No. and "KT" are the first two letters of the respective Contractor's name; and ".doc" and ".xls" are the format extensions.)

c.   In the event there are electronic transmission problems, the following steps shall be taken:

   i.   CDC receives the electronic file timely, but cannot access it.  The offeror will be contacted and may be allowed to fax in the portions that cannot be accessed.

   ii.   Facsimile quotes are not authorized. Technical inquiries shall be e-mailed to tnr6@cdc.gov. Telephone inquiries will not be honored.

   iii.   Contractor sends electronic file, but receives error message indicating e-mail problems at CDC. Fax in a cover sheet indicating transmission difficulties, and the Contract Specialist will contact the Contractor to arrange an alternate method of submission. Offerors are requested not to fax entire proposals to PGO. Facsimile submission shall only be used after contacting the Contract Specialist.

e.   Contractors are responsible for providing accurate and complete information for evaluation. (Failure to do so may rule the quote unacceptable.) Thus, the proposal shall include the following information for evaluation:

Appx8152

    i.   The Technical Proposal:  Shall provide documentation that clearly demonstrates their ability to:

        1.  meet the provisions of the Federal Excise Tax Credit contract clause;
        2.  provide vaccine maximum quantities specified within each Contract Line Item Number; and
        3.  meet the vaccine Shelf Life provision.
        4.  produce and deliver vaccines under a current establishment and product license issued by the U.S. Food and Drug Administration.

    ii.  Past Performance:  Past performance is one indicator of the offeror's ability to perform the contract successfully. The government will evaluate different customers' opinions about how well (quality) the offeror has satisfied their requirements.  Offerors shall provide, as part of their proposal, a list of clients or former clients for whom they have performed the same or similar work to the one required by this solicitation during the past five years.

f.  Electronic Data Interchanges (EDI):  Based on CDC experience with its Vaccine Order Management System (VTrckS), including the transition of a number of manufacturer vendors to EDI communications with VTrckS, the estimated level of effort needed by the manufacturer/distributor to implement all six messages required for communications with VTrckS ranges from 1000-2000 hours. This estimate covers all steps, including requirement analysis, design, mapping, development, unit/integration testing and deployment.  Factors that are likely to impact the actual number of hours include available resources, technical solution chosen, existing vendor infrastructure, and complexity of existing vendor infrastructure.  Note that the government will not reimburse contractors for any expenses associated with the EDI implementation.

## E.5    Inquiries

Inquiries concerning the solicitation document shall be submitted in writing to the issuing office.  Any additions, deletions, or changes to the solicitation will be made by an amendment.  OFFERORS ARE INSTRUCTED SPECIFICALLY TO CONTACT ONLY THE SOLICITATION CONTRACTING OFFICE IN CONNECTION WITH ANY ASPECT OF THIS REQUIREMENT PRIOR TO CONTRACT AWARD. PROPOSALS AND ALL CORRESPONDENCE RELATING TO THE SOLICITATION DOCUMENT SHALL BE SUBMITTED TO THE CONTRACTING OFFICE.  Inquiries shall be received at the Contracting Office no later than January 26, 2017 via e-mail to: tnr6@cdc.gov.

## E.6    Subcontracting Plan

The offeror, prior to being awarded a contract, shall submit an acceptable subcontracting plan (see FAR 52.219-9) or demonstrate that no subcontracting opportunities exist.  (Note:  This requirement does not apply to small business concerns or to offers which do not exceed $500,000.00 ($1,000,000.00 for construction) or to offers from non-domestic concerns.)

CDC Small Business Goals for 2016* are:

| Business Type | CDC's 2016 Goals |
|---|---|
| Small Business | 10% |
| Small Disadvantaged Business | 5% |
| HUBZONE | 3% |
| Women-Owned Small Business | 5% |
| Service-Disabled Veteran-Owned Small Business Subcontracting (SDVOSB) | 3% |
| Total | 26% |

*2017 SBA goals are not yet available and could change from the listed 2016 goals.

## E. 7    FAR 52.212-3 Offeror Representations and Certifications (Jan 2017)

An offeror shall complete only paragraph (b) of this provision if the offeror has completed the annual representations and certifications electronically at http://orca.bpn.gov.

(End of Provision)

**E. 8  52.212-2 Evaluation - Commercial Items (Oct 2014)**

(a) The Government will award a contract resulting from this solicitation to the responsible offeror whose offer conforming to the solicitation will be most advantageous to the Government, price and other factors considered. The following factors shall be used to evaluate offers:

> (i)   technical capability of the item offered to meet the Government requirement;
> (ii)  price;
> (iii) past performance (see FAR 15.304)

Technical and past performance, when combined, are equal in importance to price.
(b) A written notice of award or acceptance of an offer, mailed or otherwise furnished to the successful offeror within the time for acceptance specified in the offer, shall result in a binding contract without further action by either party. Before the offer's specified expiration time, the Government may accept an offer (or part of an offer), whether or not there are negotiations after its receipt, unless a written notice of withdrawal is received before award.

Technical and past performance, when combined, is equal in importance to price.

(d)  Past performance will be evaluated for only those offerors remaining in the **competitive range** as follows:

1. Each offeror shall be evaluated on its past performance under current and prior contracts.  By past performance, the Government means the offeror's record of conforming to specifications and to standards of good workmanship; the contractor's record of forecasting and controlling costs; the offeror's adherence to contract schedules and terms, including the administrative aspects of performance; the offeror's reputation for reasonable and cooperative behavior and commitment to customer satisfaction; and generally, the offeror's business-like concern for the interest of the customer and the degree of quality of deliverables and performance.

2. Past performance will not be scored, but the Government's conclusions about overall quality of the offeror's past performance will be highly influential in determining the relative merits of the offeror's proposal and in selecting the offeror whose proposal is considered the most advantageous/best value to the Government.

3. Evaluation of past performance will be a subjective assessment based on a consideration of all relevant facts and circumstances.  It will not be based on absolute standards of acceptable performance.

4. The assessment of the offerors past performance will be used as a means of evaluating the relative capability of the offeror and the other competitors. Thus, an offeror with an exceptional record of relevant past performance may receive a more favorable evaluation than another whose record is acceptable and/or less relevant, even though both may have acceptable technical and business proposals.

5. An offeror without a record of past performance or for whom information on past performance is not available will not be evaluated favorably or unfavorably.

6. Evaluation of past performance information will be reflected in terms of the following degrees of performance assessment:

**Excellent:**  A significant majority of the sources of information are consistently firm in stating that the offeror's performance was superior and that they would unhesitatingly do business with the offeror again.

Appx8154

Complaints are negligible or unfounded.  The offeror has no record of criminal conduct, civil fraud, or negligence, or the record is old and the offeror has demonstrated by more recent performance that corrective action has made the likelihood of such conduct in the future highly improbably.  No doubt exists that the offeror will successfully perform the Government's requirements as stated in the RFP.

**Good:**  Most sources of information state that the offeror's performance was good, better than average, etc., and that they would willingly do business with the offeror again.  Complaints, though perhaps well-founded, are few and relatively minor.  The offeror has no record of criminal conduct, civil fraud, or negligence, or the record is old and the offeror has demonstrated by more recent performance that corrective action has made the likelihood of such conduct in the future highly improbable.  Little doubt exists that the offeror will successfully perform the Government's requirements as stated in the RFP.

**Neutral:**  Either no past performance history exists for the corporation, predecessor companies, key personnel, or major/critical subcontractors, or the offeror's record of past performance was neither predominantly favorable nor unfavorable.  In the latter case, sources of information are roughly divided over the quality of the offeror's performance.  While some state that they would do business with the offeror again, others are doubtful or would not.  Complaints are balanced by reports of good work.  The offeror has no record of criminal conduct, civil fraud, or negligence, or the record is old.

**Marginal:**  Many sources of information made unfavorable reports about the offeror's performance and either express serious doubts about doing business with the offeror again or state that they would refuse to do so.  However, there are some favorable reports, and some sources of information indicate that they would do business with the offeror again.  There are many significant, serious, and well-founded complaints, but there are some reports of very good performance.  The offeror may have been indicted, pled guilty, or may have been found guilty in matters of criminal conduct, but the issues are either unresolved, relatively minor, or do not reflect a company-wide or managerial pattern of wrongdoing.  The offeror may have lost civil suits for fraud or negligence, but there is no company-wide or managerial pattern of fraudulent, negligent, or criminal conduct.  Some doubt exists that the offeror will successfully perform the Government's requirements as stated in the RFP.

**Poor:**  A significant majority of sources of information are consistently firm in stating that the offeror's performance was entirely unsatisfactory and that they would not do business with the offeror again under any circumstances.  Customer complaints are substantial or numerous and are well-founded.  Or, although not debarred or suspended, the offeror is under indictment or has been convicted of criminal conduct, or has been found civilly liable for fraud or negligence.  The offeror either has presented no persuasive evidence of having taken appropriate corrective action that will guard against such conduct in the foreseeable future, or it appears unlikely that the corrective action will be effective.  Serious doubt exists that the offeror will successfully perform the Government requirements as stated in the RFP.

(End of Provision)

10/25/2019
Declaration of G. Reilly
EXHIBIT 277

Appx8156

# SOLICITATION/CONTRACT/ORDER FOR COMMERCIAL ITEMS
*OFFEROR TO COMPLETE BLOCKS 12, 17, 23, 24, & 30*

| 1. REQUISITION NUMBER | | PAGE 1 OF 26 |
|---|---|---|

| 2. CONTRACT NO. | 3. AWARD/EFFECTIVE DATE | 4. ORDER NUMBER | 5. SOLICITATION NUMBER 2018-N-67769 | 6. SOLICITATION ISSUE DATE 01/10/2018 |
|---|---|---|---|---|

| 7. FOR SOLICITATION INFORMATION CALL: ▶ | a. NAME Thaddeus Rollins | b. TELEPHONE NUMBER *(No collect calls)* (770) 488-1971 | 8. OFFER DUE DATE/ LOCAL TIME 01/22/2018 |
|---|---|---|---|

| 9. ISSUED BY | CODE | 2536 |
|---|---|---|

Centers for Disease Control and Prevention
Acquisition and Assistance Branch 1
2920 Brandywine Road, MS E-15
Atlanta, GA 30341-5539

**10. THIS ACQUISITION IS**

X UNRESTRICTED

SET ASIDE:          % FOR

SMALL BUSNESS

SMALL DISADV. BUSINESS

8(A)

SIC: 325412

SIZE STANDARD:

**11. DELIVERY FOR FOB DESTINATION UNLESS BLOCK IS MARKED**

X SEE SCHEDULE

**12. DISCOUNT TERMS**

**13a. THIS CONTRACT IS A RATED ORDER UNDER DPAS (15 CFR 700)**

**13b. RATING**

**14. METHOD OF SOLICITATION**

| RFQ | IFB | X RFP |
|---|---|---|

| 15. DELIVER TO | CODE |
|---|---|

To be indicated by the individual delivery
orders placed against the contract.

| 16. ADMINISTERED BY | CODE | 2536 |
|---|---|---|

Centers for Disease Control and Prevention
Acquisition and Assistance Branch 1
2920 Brandywine Road, MS E-15
Atlanta, GA 30341-5539

| 17a. CONTRACTOR/ OFFEROR | CODE | FACILITY CODE |
|---|---|---|

TELEPHONE NO.

17b. CHECK IF REMITTANCE IS DIFFERENT AND PUT SUCH ADDRESS IN OFFER

| 18a. PAYMENT WILL BE MADE BY | CODE | 434 |
|---|---|---|

Centers for Disease Control and Prevention (FMO)
PO Box 15580 404-718-8100

Atlanta, GA 30333-0080

18b. SUBMIT INVOICES TO ADDRESS SHOWN N BLOCK 18a UNLESS BLOCK BELOW IS CHECKED          SEE ADDENDUM

| 19. ITEM NO. | 20. SCHEDULE OF SUPPL ES/SERVICES | 21. QUANTITY | 22. UNIT | 23. UNIT PRICE | 24. AMOUNT |
|---|---|---|---|---|---|
| | **2018 Vaccines For Children (VFC)** "See Continuation Page" *(Attach Additional Sheets as Necessary)* | | | | |

| 25. ACCOUNT NG AND APPROPRIATION DATA | 26. TOTAL AWARD AMOUNT *(For Govt. Use Only)* |
|---|---|

27a. SOLICITATION INCORPORATES BY REFERENCE FAR 52 212-1, 52.212-4.  FAR 52.212-3 AND 52.212-5 ARE ATTACHED.  ADDENDA          ARE      ARE NOT ATTACHED.
27b. CONTRACT/PURCHASE ORDER NCORPORATES BY REFERENCE FAR 52.212-4.  FAR 52 212-5 IS ATTACHED. ADDENDA          ARE      ARE NOT ATTACHED.

| 28. CONTRACTOR IS REQUIRED TO SIGN THIS DOCUMENT AND RETURN          COPIES TO ISSUING OFFICE. CONTRACTOR AGREES TO FURNISH AND DELIVER ALL ITEMS SET FORTH OR OTHERWISE IDENTIFIED ABOVE AND ON ANY ADDITIONAL SHEETS SUBJECT TO THE TERMS AND CONDITIONS SPECIFIED HEREIN. | 29. AWARD OF CONTRACT: REFERENCE          OFFER DATED          . YOUR OFFER ON SOLICITATION (BLOCK 5), INCLUDING ANY ADDITIONS OR CHANGES WHICH ARE SET FORTH HEREIN, IS ACCEPTED AS TO ITEMS: |
|---|---|
| 30a. SIGNATURE OF OFFEROR/CONTRACTOR | 31a. UNITED STATES OF AMERICA *(Signature of Contracting Officer)* |
| 30b. NAME AND TITLE OF SIGNER *(Type or print)*          30c. DATE SIGNED | 31b. NAME OF CONTRACTING OFFICER *(Type or print)* Alan W Sims          31c. DATE SIGNED |

| 32a. QUANTITY IN COLUMN 21 HAS BEEN RECEIVED      INSPECTED      ACCEPTED, AND CONFORMS TO THE CONTRACT, EXCEPT AS NOTED | 33. SHIP NUMBER PARTIAL      FINAL | 34. VOUCHER NUMBER | 35. AMOUNT VERIFIED CORRECT FOR |
|---|---|---|---|
| 32b. SIGNATURE OF AUTHORIZED GOV'T REPRESENTATIVE          32c. DATE | 36. PAYMENT COMPLETE      PARTIAL      FINAL | | 37. CHECK NUMBER |
| | 38. S/R ACCOUNT NUMBER | 39. S/R VOUCHER NUMBER | 40. PAID BY |
| | 42a. RECEIVED BY *(Print)* | | |
| 41a. I CERTIFY THIS AMOUNT IS CORRECT AND PROPER FOR PAYMENT | | | |
| 41b. SIGNATURE AND TITLE OF CERTIFYING OFFICER          41c. DATE | 42b. RECEIVED AT *(Location)* | | |
| | 42c. DATE REC'D | 42d. TOTAL CONTAINERS | |

AUTHORIZED FOR LOCAL REPRODUCTION          SEE REVERSE FOR OMB CONTROL NUMBER AND PAPERWORK BURDEN STATEMENT          STANDARD FORM 1449      (10-95)

Appx8157

# SECTION B - CONTINUATION OF SF1449

**Period of Performance: 04/01/18 – 03/31/19**

| ITEM | SUPPLIES / SERVICES | QTY / UNIT | UNIT PRICE | EXTENDED PRICE |
|------|---------------------|------------|------------|----------------|
| 0001 | VFC<br><br>*This solicitation is subject to the availability of funds* | | | |

The National Center for Immunization and Respiratory Diseases (NCIRD) requires the award of multiple indefinite quantity, indefinite delivery contracts for the purchase of standard commercial pediatric vaccines, manufactured under a current establishment and product license issued by the U.S. Food and Drug Administration.  The vaccines awarded under these contracts will be purchased for NCIRD's immunization Awardees to support pediatric immunization programs as provided under Section 317(j) of the Public Health Service Act and Vaccine for Children (VFC) program, established pursuant to Section 13631 of the Omnibus Budget Reconciliation Act of 1993 (OBRA '93).

| ITEM | SUPPLIES / SERVICES | QTY / UNIT | Per Dose Price (Including FET) | Extended Price (Including FET) |
|------|---------------------|------------|-------------------------------|--------------------------------|
| 1. | DTaP vaccine:<br><br>Min. Shelf Life: 12 Months<br>Fed. Excise Tax: $2.25 per dose | Maximum: 6.5M Doses<br><br>Minimum: 100 Doses | | |
| 2. | DTaP/Hep B/IPV vaccine:<br><br>Min. Shelf Life: 12 Months<br>Fed. Excise Tax: $3.75 per dose | Maximum: 5.38M Doses<br><br>Minimum: 100 Doses | | |
| 3. | DTaP-IPV Vaccine:<br><br>Min. Shelf Life:  12 months<br>Fed. Excise Tax: $3.00 per dose | Maximum: 3.5M Doses<br><br>Minimum:  100 Doses | | |
| 4. | DTaP-IP-HI Vaccine:<br><br>Min. Shelf Life: 12 months<br>Fed. Excise Tax: $3.75 per dose | Maximum:  7.5M Doses<br><br>Minimum. 100 Doses | | |
| 5. | E-IPV vaccine:<br><br>Min. Shelf Life: 12 Months<br>Fed. Excise Tax: $0.75 per dose | Maximum: 4M Doses<br><br>Minimum: 100 Doses | | |
| 6. | Hepatitis A (pediatric) vaccine<br><br>Min. Shelf Life: 12 Months<br>Fed. Excise Tax: $0.75 per dose | Maximum: 8.5M Doses<br><br>Minimum: 100 Doses | | |
| 7. | Hepatitis A&B (Age 18 only) vaccine<br><br>Min. Shelf Life: 12 Months | Maximum: 100,000 Doses | | |

Appx8158

| | | | | |
|---|---|---|---|---|
| | Fed. Excise Tax: $1.50 per dose | Minimum: 100 Doses | | |
| 8. | Hepatitis B (pediatric/adol.) vaccine<br><br>Min. Shelf Life: 12 Months<br>Fed. Excise Tax: $0.75 per dose | Maximum: 7.7M Doses<br><br>Minimum: 100 Doses | | |
| 9. | Hib vaccine<br><br>Min. Shelf Life: 12 Months<br>Fed. Excise Tax: $0.75 per dose | Maximum: 8M Doses<br><br>Minimum: 100 Doses | | |
| 10. | Human Papillomavirus types Vaccine, Recombinant<br><br>Min. Shelf Life: 12 Months<br>Fed. Excise Tax: $0.75 per dose | Maximum: 9M Doses<br><br>Minimum: 100 Doses | | |
| 11. | Measles, Mumps & Rubella (MMR) vaccine<br><br>Min. Shelf Life: 12 Months<br>Fed. Excise Tax: $2.25 per dose | Maximum: 8M Doses<br><br>Minimum: 100 Doses | | |
| 12. | Meningococcal Conjugate (MCV4) vaccine<br><br>Min. Shelf Life: 12 Months<br>Fed. Excise Tax: $0.75 per dose | Maximum: 6.5M Doses<br><br>Minimum: 100 Doses | | |
| 13. | Pneumococcal Conjugate vaccine (13 Valent)<br><br>Min. Shelf Life: 12 Months<br>Fed. Excise Tax: $0.75 per dose | Maximum: 13M Doses<br><br>Minimum: 100 Doses | | |
| 14. | Pneumococcal (23 Valent) Polysaccharide Vaccine<br><br>Min. Shelf Life: 12 Months<br>Fed. Excise Tax: N/A | Maximum: 350K Doses<br><br>Minimum: 100 Doses | | |
| 15. | Rotavirus vaccine<br><br>Min. Shelf Life: 12 Months<br>Fed. Excise Tax: $0.75 per dose | Maximum: 7M Doses<br><br>Minimum: 100 Doses | | |
| 16. | Tetanus and Diphtheria (Td) vaccine<br><br>Min. Shelf Life: 12 Months<br>Fed. Excise Tax: $1.50 per dose | Maximum: 750,000 Doses<br><br>Minimum: 100 Doses | | |
| 17. | Tdap vaccine<br><br>Min. Shelf Life: 12 Months<br>Fed. Excise Tax: $2.25 per dose | Maximum: 5.5M Doses<br><br>Minimum: 100 Doses | | |
| 18. | Varicella vaccine<br><br>Min. Shelf Life: 12 Months<br>Fed. Excise Tax: $0.75 per dose | Maximum: 10M Doses<br><br>Minimum: 10 Doses | | |
| 19. | Measles, Mumps & Rubella (MMR-V) and Varicella vaccine<br><br>Min. Shelf Life: 12 Months<br>Fed. Excise Tax: $3.00 per dose | Maximum: 3.3M Doses<br><br>Minimum: 10 Doses | | |

Appx8159

| 20. | Serogroup B Meningococcal<br><br>Min. Shelf Life:  12 Months<br>Fed. Excise Tax:  $0.75 per dose | Maximum:  2M Doses<br><br>Minimum:  100 Doses | | |

**Total Contract Value**

**Notes:**

**B.1   Background:** The Centers for Disease Control and Prevention (CDC) awards contracts to manufacturers for the purchase of standard commercial pediatric vaccines.  Vaccines are one of the most cost-effective ways to prevent disease and reduce healthcare costs. The Vaccines for Children (VFC) program, established pursuant to Section 13631 of the Omnibus Budget Reconciliation Act of 1993 (OBRA '93), guarantees federal support for the purchase and supply of sufficient quantities of vaccine to the States to cover a defined group of children.  The program helps assure the implementation of effective immunization practices and proper use of vaccines to achieve higher immunization coverage.   Children (18 years-of-age or younger) who qualify for immunization through the VFC purchase program include those who are (1) Medicaid-eligible, (2) without health insurance, (3) American Indian/Alaska native (as defined in Subsection (h)(3) of the OBRA '93), or (4) children with health insurance, which does not cover the cost of vaccines, if they receive their immunizations at a Federally Qualified Health Center or rural health clinic (as defined by the Social Security Act).  Health care providers who agree to certain requirements are eligible through the States to receive free vaccine through this VFC purchase program.  The establishment of these contracts provides an opportunity to utilize VFC funds and Section 317 vaccine purchase direct assistance (DA) cooperative agreement funds to obtain vaccines at prices below those available in the commercial market place.  In addition, States may opt to purchase additional quantities of vaccine under any resulting contract to provide immunizations for children who are not federally vaccine-eligible children using state and local funds.

**B.2   Definitions:**

OBRA Orders – Vaccine orders under Section 1928(a) (2)(A) of the Social Security Act.

317 Orders – Vaccine orders under Section 317(j) of the Public Health Service Act.

State and Local Orders – Vaccine orders placed by authorized immunization programs using state or local funds in accordance with Section 1928(d)(4)(B) of the Social Security Act.

Manufacturer – As defined in Subsection (h) (4) of the Social Security Act, means any corporation, organization, or institution, whether public or private, which manufactures, imports, processes, or distributes under its label any pediatric vaccine.

Awardees – Includes State health departments and certain local health agencies authorized to order hereunder.

**B.3 Type of Contract:** Firm-Fixed Price

Appx8160

# SECTION C - CONTRACT CLAUSES

**C.1.** **52.212-5 Contract Terms and Conditions Required to Implement Statutes or Executive Orders—Commercial Items.(MAR 2015)**

(a) The Contractor shall comply with the following Federal Acquisition Regulation (FAR) clauses, which are incorporated in this contract by reference, to implement provisions of law or Executive orders applicable to acquisitions of commercial items:

(1) 52.209-10, Prohibition on Contracting with Inverted Domestic Corporations (Dec 2014)

(2) 52.233-3, Protest After Award (AUG 1996) (31 U.S.C. 3553).

(3) 52.233-4, Applicable Law for Breach of Contract Claim (OCT 2004) (Public Laws 108-77, 108-78 (19 U.S.C. 3805 note)).

(b) The Contractor shall comply with the FAR clauses in this paragraph (b) that the contracting officer has indicated as being incorporated in this contract by reference to implement provisions of law or Executive orders applicable to acquisitions of commercial items:

_X_ (1) 52.203-6, Restrictions on Subcontractor Sales to the Government (Sept 2006), with Alternate I (Oct 1995) (41 U.S.C. 4704 and 10 U.S.C. 2402).

_X_ (2) 52.203-13, Contractor Code of Business Ethics and Conduct (Apr 2010) (41 U.S.C. 3509).

___ (3) 52.203-15, Whistleblower Protections under the American Recovery and Reinvestment Act of 2009 (Jun 2010) (Section 1553 of Pub L. 111-5) (Applies to contracts funded by the American Recovery and Reinvestment Act of 2009).

_X_ (4) 52.204-10, Reporting Executive compensation and First-Tier Subcontract Awards (Jul 2013) (Pub. L. 109-282) (31 U.S.C. 6101 note).

___ (5) [Reserved]

___ (6) 52.204-14, Service Contract Reporting Requirements (Jan 2014) (Pub. L. 111-117, section 743 of Div. C).

___ (7) 52.204-15, Service Contract Reporting Requirements for Indefinite-Delivery Contracts (Jan 2014) (Pub. L. 111-117, section 743 of Div. C).

_X_ (8) 52.209-6, Protecting the Government's Interest When Subcontracting with Contractors Debarred, Suspended, or Proposed for Debarment (Aug 2013) (31 U.S.C. 6101 note).

_X_ (9) 52.209-9, Updates of Publicly Available Information Regarding Responsibility Matters (Jul 2013) (41 U.S.C. 2313).

_X_ (10) 52.209-10, Prohibition on Contracting with Inverted Domestic Corporations (May 2012) (section 738 of Division C of Public Law 112-74, section 740 of Division C of Pub. L. 111-117, section 743 of Division D of Pub. L. 111-8, and section 745 of Division D of Pub. L. 110-161).

___ (11) (i) 52.219-3, Notice of HUBZone Set-Aside or Sole-Source Award (Nov 2011) (15 U.S.C. 657a).

___ (ii) Alternate I (Nov 2011) of 52.219-3.

_X_ (12) (i) 52.219-4, Notice of Price Evaluation Preference for HUBZone Small Business Concerns (Oct 2011) (if the offeror elects to waive the preference, it shall so indicate in its offer)(15 U.S.C. 657a).

Appx8161

___ (ii) Alternate I (Jan 2011) of 52.219-4.

___ (13) [Reserved]

___ (14) (i) 52.219-6, Notice of Total Small Business Aside (Nov 2011) (15 U.S.C. 644).

___ (ii) Alternate I (Nov 2011).

___ (iii) Alternate II (Nov 2011).

___ (15) (i) 52.219-7, Notice of Partial Small Business Set-Aside (June 2003) (15 U.S.C. 644).

___ (ii) Alternate I (Oct 1995) of 52.219-7.

___ (iii) Alternate II (Mar 2004) of 52.219-7.

_X_ (16) 52.219-8, Utilization of Small Business Concerns (Oct 2014) (15 U.S.C. 637(d)(2) and (3)).

_X_ (17) (i) 52.219-9, Small Business Subcontracting Plan (Oct 2014) (15 U.S.C. 637 (d)(4)).

___ (ii) Alternate I (Oct 2001) of 52.219-9.

___ (iii) Alternate II (Oct 2001) of 52.219-9.

___ (iv) Alternate III (Oct 2014) of 52.219-9.

___ (18) 52.219-13, Notice of Set-Aside of Orders (Nov 2011) (15 U.S.C. 644(r)).

___ (19) 52.219-14, Limitations on Subcontracting (Nov 2011) (15 U.S.C. 637(a)(14)).

_X_ (20) 52.219-16, Liquidated Damages—Subcontracting Plan (Jan 1999) (15 U.S.C. 637(d)(4)(F)(i)).

___ (21) 52.219-27, Notice of Service-Disabled Veteran-Owned Small Business Set-Aside (Nov 2011) (15 U.S.C. 657f).

_X_ (22) 52.219-28, Post Award Small Business Program Representation (Jul 2013) (15 U.S.C. 632(a)(2)).

___ (23) 52.219-29, Notice of Set-Aside for Economically Disadvantaged Women-Owned Small Business (EDWOSB) Concerns (Jul 2013) (15 U.S.C. 637(m)).

____ (24) 52.219-30, Notice of Set-Aside for Women-Owned Small Business (WOSB) Concerns Eligible Under the WOSB Program (Jul 2013) (15 U.S.C. 637(m)).

____ (25) 52.222-3, Convict Labor (June 2003) (E.O. 11755).

_X-__ (26) 52.222-19, Child Labor—Cooperation with Authorities and Remedies (Jan 2014) (E.O. 13126).

_X_ (27) 52.222-21, Prohibition of Segregated Facilities (Feb 1999).

_X_ (28) 52.222-26, Equal Opportunity (Mar 2007) (E.O. 11246).

_X_ (29) 52.222-35, Equal Opportunity for Veterans (Jul 2014) (38 U.S.C. 4212).

_X_ (30) 52.222-36, Equal Opportunity for Workers with Disabilities (Jul 2014) (29 U.S.C. 793).

_X_ (31) 52.222-37, Employment Reports on Veterans (Jul 2014) (38 U.S.C. 4212).

_X_ (32) 52.222-40, Notification of Employee Rights Under the National Labor Relations Act (Dec 2010) (E.O. 13496).

_X_ (33) (i) 52.222-50, Combating Trafficking in Persons (Mar 2015) (22 U.S.C. chapter 78 and E.O. 13627).

___ (ii) Alternate I (Mar 2015) of 52.222-50, (22 U.S.C. chapter 78 and E.O. 13627).

___ (34) 52.222-54, Employment Eligibility Verification (Aug 2013). (Executive Order 12989). (Not applicable to the acquisition of commercially available off-the-shelf items or certain other types of commercial items as prescribed in 22.1803.)

___ (35) (i) 52.223-9, Estimate of Percentage of Recovered Material Content for EPA-Designated Items (May 2008) (42 U.S.C. 6962(c)(3)(A)(ii)). (Not applicable to the acquisition of commercially available off-the-shelf items.)

___ (ii) Alternate I (May 2008) of 52.223-9 (42 U.S.C. 6962(i)(2)(C)). (Not applicable to the acquisition of commercially available off-the-shelf items.)

___ (36) (i) 52.223-13, Acquisition of EPEAT® -Registered Imaging Equipment (Jun 2014) (E.O.s 13423 and 13514

___ (ii) Alternate I (Jun 2014) of 52.223-13.

___ (37) (i) 52.223-14, Acquisition of EPEAT® -Registered Television (Jun 2014) (E.O.s 13423 and 13514).

___ (ii) Alternate I (Jun 2014) of 52.223-14.

___ (38) 52.223-15, Energy Efficiency in Energy-Consuming Products (Dec 2007) (42 U.S.C. 8259b).

___ (39) (i) 52.223-16, Acquisition of EPEAT® -Registered Personal Computer Products (Jun 2014) (E.O.s 13423 and 13514).

___ (ii) Alternate I (Jun 2014) of 52.223-16.

_X_ (40) 52.223-18, Encouraging Contractor Policies to Ban Text Messaging while Driving (Aug 2011) (E.O. 13513).

___ (41) 52.225-1, Buy American--Supplies (May 2014) (41 U.S.C. chapter 83).

___ (42) (i) 52.225-3, Buy American--Free Trade Agreements--Israeli Trade Act (May 2014) (41 U.S.C. chapter 83, 19 U.S.C. 3301 note, 19 U.S.C. 2112 note, 19 U.S.C. 3805 note, 19 U.S.C. 4001 note, Pub. L. 103-182, 108-77, 108-78, 108-286, 108-302, 109-53, 109-169, 109-283, 110-138, 112-41, 112-42, and 112-43).

___ (ii) Alternate I (May 2014) of 52.225-3.

___ (iii) Alternate II (May 2014) of 52.225-3.

___ (iv) Alternate III (May 2014) of 52.225-3.

___ (43) 52.225-5, Trade Agreements (Nov 2013) (19 U.S.C. 2501, *et seq.*, 19 U.S.C. 3301 note).

_X_ (44) 52.225-13, Restrictions on Certain Foreign Purchases (Jun 2008) (E.O.'s, proclamations, and statutes administered by the Office of Foreign Assets Control of the Department of the Treasury).

___ (45) 52.225-26, Contractors Performing Private Security Functions Outside the United States (Jul 2013) (Section 862, as amended, of the National Defense Authorization Act for Fiscal Year 2008; 10 U.S.C. 2302 Note).

___ (46) 52.226-4, Notice of Disaster or Emergency Area Set-Aside (Nov 2007) (42 U.S.C. 5150).

Appx8163

___ (47) 52.226-5, Restrictions on Subcontracting Outside Disaster or Emergency Area (Nov 2007) (42 U.S.C. 5150).

_X_ (48) 52.232-29, Terms for Financing of Purchases of Commercial Items (Feb 2002) (41 U.S.C. 4505), 10 U.S.C. 2307(f)).

___ (49) 52.232-30, Installment Payments for Commercial Items (Oct 1995) (41 U.S.C. 4505, 10 U.S.C. 2307(f)).

_X__ (50) 52.232-33, Payment by Electronic Funds Transfer— System for Award Management (Jul 2013) (31 U.S.C. 3332).

___ (51) 52.232-34, Payment by Electronic Funds Transfer—Other Than System for Award Management (Jul 2013) (31 U.S.C. 3332).

___ (52) 52.232-36, Payment by Third Party (May 2014) (31 U.S.C. 3332).

___ (53) 52.239-1, Privacy or Security Safeguards (Aug 1996) (5 U.S.C. 552a).

___ (54) (i) 52.247-64, Preference for Privately Owned U.S.-Flag Commercial Vessels (Feb 2006) (46 U.S.C. Appx 1241(b) and 10 U.S.C. 2631).

___ (ii) Alternate I (Apr 2003) of 52.247-64.

(c) The Contractor shall comply with the FAR clauses in this paragraph (c), applicable to commercial services, that the Contracting Officer has indicated as being incorporated in this contract by reference to implement provisions of law or executive orders applicable to acquisitions of commercial items:

___ (1) 52.222-41, Service Contract Labor Standards (May 2014) (41 U.S.C. chapter 67.).

___ (2) 52.222-42, Statement of Equivalent Rates for Federal Hires (May 2014) (29 U.S.C. 206 and 41 U.S.C. chapter 67).

___ (3) 52.222-43, Fair Labor Standards Act and Service Contract Labor Standards -- Price Adjustment (Multiple Year and Option Contracts) (May 2014) (29 U.S.C.206 and 41 U.S.C. chapter 67).

___ (4) 52.222-44, Fair Labor Standards Act and Service Contract Labor Standards -- Price Adjustment (May 2014) (29 U.S.C. 206 and 41 U.S.C. chapter 67).

___ (5) 52.222-51, Exemption from Application of the Service Contract Labor Standards to Contracts for Maintenance, Calibration, or Repair of Certain Equipment--Requirements (May 2014) (41 U.S.C. chapter 67).

___ (6) 52.222-53, Exemption from Application of the Service Contract Labor Standards to Contracts for Certain Services--Requirements (May 2014) (41 U.S.C. chapter 67).

___ (7) 52.222-17, Nondisplacement of Qualified Workers (May 2014) (E.O. 13495).

___ (8) 52.226-6, Promoting Excess Food Donation to Nonprofit Organizations. (May 2014) (42 U.S.C. 1792).

___ (9) 52.237-11, Accepting and Dispensing of $1 Coin (Sep 2008) (31 U.S.C. 5112(p)(1)).

___ (10) 52.222-55, Minimum Wages Under Executive Order 13658 Dec 2014)(Executive Order 13658).

(d) *Comptroller General Examination of Record* The Contractor shall comply with the provisions of this paragraph (d) if this contract was awarded using other than sealed bid, is in excess of the simplified acquisition threshold, and does not contain the clause at 52.215-2, Audit and Records -- Negotiation.

(1) The Comptroller General of the United States, or an authorized representative of the Comptroller General, shall have access to and right to examine any of the Contractor's directly pertinent records involving transactions related to this contract.

(2) The Contractor shall make available at its offices at all reasonable times the records, materials, and other evidence for examination, audit, or reproduction, until 3 years after final payment under this contract or for any shorter period specified in FAR Subpart 4.7, Contractor Records Retention, of the other clauses of this contract. If this contract is completely or partially terminated, the records relating to the work terminated shall be made available for 3 years after any resulting final termination settlement. Records relating to appeals under the disputes clause or to litigation or the settlement of claims arising under or relating to this contract shall be made available until such appeals, litigation, or claims are finally resolved.

(3) As used in this clause, records include books, documents, accounting procedures and practices, and other data, regardless of type and regardless of form. This does not require the Contractor to create or maintain any record that the Contractor does not maintain in the ordinary course of business or pursuant to a provision of law.

(e)

(1) Notwithstanding the requirements of the clauses in paragraphs (a), (b), (c) and (d) of this clause, the Contractor is not required to flow down any FAR clause, other than those in this paragraph (e)(1) in a subcontract for commercial items. Unless otherwise indicated below, the extent of the flow down shall be as required by the clause—

    (i) 52.203-13, Contractor Code of Business Ethics and Conduct (Apr 2010) (41 U.S.C. 3509).

    (ii) 52.219-8, Utilization of Small Business Concerns (Oct 2014) (15 U.S.C. 637(d)(2) and (3)), in all subcontracts that offer further subcontracting opportunities. If the subcontract (except subcontracts to small business concerns) exceeds $650,000 ($1.5 million for construction of any public facility), the subcontractor must include 52.219-8 in lower tier subcontracts that offer subcontracting opportunities.

    (iii) 52.222-17, Nondisplacement of Qualified Workers (May 2014) (E.O. 13495). Flow down required in accordance with paragraph (1) of FAR clause 52.222-17.

    (iv) 52.222-26, Equal Opportunity (Mar 2007) (E.O. 11246).

    (v) 52.222-35, Equal Opportunity for Veterans (Jul 2014) (38 U.S.C. 4212).

    (vi) 52.222-36, Equal Opportunity for Workers with Disabilities (Jul 2014) (29 U.S.C. 793).

    (vii) 52.222-37, Employment Reports on Veterans (Jul 2014) (38 U.S.C. 4212).

    (viii) 52.222-40, Notification of Employee Rights Under the National Labor Relations Act (Dec 2010) (E.O. 13496). Flow down required in accordance with paragraph (f) of FAR clause 52.222-40.

    (ix) 52.222-41, Service Contract Labor Standards (May 2014), (41 U.S.C. chapter 67).

    (x) __X_ (A) 52.222-50, Combating Trafficking in Persons (Mar 2015) (22 U.S.C. chapter 78 and E.O. 13627).

       ___ (B) Alternate I (Mar 2015) of 52.222-50 (22 U.S.C. chapter 78 E.O. 13627).

    (xi) 52.222-51, Exemption from Application of the Service Contract Labor Standards to Contracts for Maintenance, Calibration, or Repair of Certain Equipment--Requirements (May 2014) (41 U.S.C. chapter 67.)

(xii) 52.222-53, Exemption from Application of the Service Contract Labor Standards to Contracts for Certain Services--Requirements (May 2014) (41 U.S.C. chapter 67)

(xiii) 52.222-54, Employment Eligibility Verification (Aug 2013).

(xiv) 52.225-26, Contractors Performing Private Security Functions Outside the United States (Jul 2013) (Section 862, as amended, of the National Defense Authorization Act for Fiscal Year 2008; 10 U.S.C. 2302 Note).

(xv) 52.226-6, Promoting Excess Food Donation to Nonprofit Organizations. (May 2014) (42 U.S.C. 1792). Flow down required in accordance with paragraph (e) of FAR clause 52.226-6.

(xvi) 52.247-64, Preference for Privately-Owned U.S. Flag Commercial Vessels (Feb 2006) (46 U.S.C. Appx 1241(b) and 10 U.S.C. 2631). Flow down required in accordance with paragraph (d) of FAR clause 52.247-64.

(xvii) 52.222-55, Minimum Wages Under Executive Order 13658 (Dec 2014)(Executive Order 13658).

(2) While not required, the contractor may include in its subcontracts for commercial items a minimal number of additional clauses necessary to satisfy its contractual obligations.

**C.2      The following FAR Clause is incorporated by reference:**

| FAR SOURCE | TITLE AND DATE |
|------------|----------------|
| 52.212-4 | Contract Terms and Conditions—Commercial Items (Jan 2017) |

**C.3      Special Clauses**

**C.3.1      Shelf Life**
Vaccine provided under this contract shall have a minimum 12 month shelf life remaining upon delivery to the consignee, or as specified within each Contract Line Item Number (See Section B, Continuation of SF 1449).

**C.3.2      Packaging and Packing Requirements**
1. Packaging:
All items shall be packaged in standard commercial manner.
2. Packing:
    a. Product shall be packed to ensure maintenance of FDA recommended temperature during transit and safe arrival at destination. An electronic temperature monitoring device is required with each shipment unless Contractor has obtained prior approval from CDC to use an alternative monitoring method.
    b. Contractor will provide the Contracting Officer Representative (COR) with documentation that explains the cause of each temperature excursion and stability data used by the contractor to determine if the cold chain was adversely affected by temperature variance.  Upon review of data provided, CDC will notify appropriate parties if the vaccine is accepted or rejected.

**C.3.3      Contract Period of Performance**
The contract period of performance shall begin on April 01, 2018 and end March 31, 2019. There will be no option periods.

**C.3.4      Time of Delivery**
Delivery is required to be made at destination within 15 working days after receipt of electronic, written, or telephonic order (telephone orders to be confirmed in writing).

**C.3.5    Place of Delivery**

a. The Contractor shall be required to deliver vaccines F.O.B. Destination, as directed by delivery orders to the CDC centralized distribution locations currently in Aurora, CO and Memphis, TN.

b. The Contractor shall be required to deliver frozen vaccines F.O.B. destination as directed by delivery orders.

**C.3.6    Amendment to OBRA Statue**

In the event of an amendment of 42 U.S.C. Section 1396(s), any terms of the contract affected by such an amendment will be modified in accordance with the revised statute.  The Contracting Officer and the Contractor shall meet to discuss such modifications to the contract before finalization of any changes to the contract.

**C.3.7    Product Licensure**

a. The vaccines produced and delivered under this contract shall be manufactured under a current establishment and product license issued by the Food and Drug Administration as indicated below:

_____

b. The Current Good Manufacturing Practice Regulations (CGMPR's) (21CFR Parts 210, 211) will be the standard to be applied for manufacturing, processing and packing of drugs, chemicals, biologicals, and reagents.

c. The Contractor shall advise the Contracting Officer immediately of any relocation of his prime manufacturing facility or the relocation of any subcontractor's facility, and if at any time during the life of the contract, the item listed under this contract fails to meet CGMPR's and/or a negative Food and Drug Administration Quality Assurance Evaluation is received; the contract may be terminated, in whole or in part, without further liability to the Government.

**C.3.8    Placement of Orders**

a. All vaccine under this contract will be ordered by delivery orders.  Orders shall be placed by Health and Human Services (HHS), the Centers for Disease Control and Prevention (CDC) on behalf of eligible awardees, or by the awardees.  Orders shall be placed by electronic transfer. In the event of an emergency, orders may be placed by CDC by telephone (confirmed in writing). Contractors shall be able to interface with the CDC Electronic Vaccine Ordering System.  If unable to interface at the time of award, the vendor shall complete interface implementation by the end of the period of performance of the contract. No orders will be placed by CDC until contractors are able to interface with the CDC electronic Vaccine Ordering System.

b. Orders shall be submitted to the Ordering Address specified in Contract Clauses Paragraph C.3.12, Contractor's Ordering/Payment Address and shall contain the following minimum information:

1.  Date of order;
2.  Contract number and order number;
3.  Item description, quantity and unit price;
4.  Delivery or performance date;
5.  Place of delivery or performance (including consignee);
6.  Packaging, packing and shipping instruction, if any;
7.  Accounting and appropriation data;
8.  Statement to indicate if partial deliveries are not acceptable; (lack of a statement shall be construed to mean partial deliveries are acceptable and payment shall be made as required elsewhere herein)
9.  Any other pertinent data.

**C.3.9    Delivery Order Limitations**

a. Minimum Order Size: Individual delivery orders issued under this contract must meet the minimum order size as specified within each Contract Line Item Number (See Section B, Continuation of SF 1449). When the Government requires supplies covered by this contract in amounts less than stated above, the Government is not obligated to purchase, nor is the Contractor obligated to furnish those supplies under this contract.

Appx8167

b. Maximum Order: The maximum quantity specified within each Contract Line Item Number (See Section B, Continuation of SF1449) is the maximum number of doses that may be ordered during the contract period of performance. Contractors are advised that the maximum quantity represents their commitment to the CDC under their contract.

c. Delivery Orders shipments:

   1.  Shipments shall be sent with all transaction information necessary to be compliant with applicable Drug Supply Chain Security Act requirements regarding Transaction Information (TI), Transaction History (TH), and Transaction Statement (TS).  Initially, paper documentation or portal access will be acceptable, but EDI messaging between contractors and CDC will transition to allow electronic transmission of information.

   2.  The Government reserves the right to reject vaccine doses that exceed delivery order requirements. The Government shall notify the Contractor when excess doses have been delivered to distribution sites.  The Contractor is responsible for contacting the distribution site to make arrangement for the return of the excess doses and will be responsible for shipping cost associated with their return.

   3.  Bulk order shipments, when possible, shall consist of:
      a. One NDC per skid;
      b. Full skid quantities with same lot number;
      c. Full case quantities (when total order size allows).

## C.3.10      FAR 52.216-18. Ordering (Oct 1995)

   a. Any supplies and services to be furnished under this contract shall be ordered by issuance of delivery orders or task orders by the individuals or activities designated in the Schedule.  Such orders may be issued from the effective date of the contract through the expiration date of the contract.

   b. All delivery orders or task orders are subject to the terms and conditions of this contract.  In the event of conflict between a delivery order or task order and this contract, the contract shall control.

   c. If mailed, a delivery order or task order is considered "issued" when the Government deposits the order in the mail.  Orders may be issued orally or by written telecommunications only if authorized in the Schedule.

## C.3.11      FAR 52.216-22 Indefinite Quantity (Oct 1995)

   a. This is an indefinite quantity contract for the supplies specified and effective for the period stated in the Schedule.  The quantities of supplies and services specified in the Schedule are estimates only and are not purchased by this contract.

   b. Delivery or performance shall be made only as authorized by orders issued in accordance with the Ordering clause.  The Contractor shall furnish to the Government, when and if ordered, the supplies specified in the Schedule up to and including the quantity designated in the Schedule as the "maximum." The Government shall order at least the quantity of supplies designated in the Schedule as the "minimum."

   c. Except for any limitations on quantities in the Delivery Order Limitations clause or in the Schedule, there is no limit on the number of orders that may be issued.  The Government may issue orders requiring delivery to multiple destinations or performance at multiple locations.

   d. Any order issued during the effective period of this contract and not completed within that period shall be completed by the Contractor within the time specified in the order.  The contract shall govern the Contractor's and Government's rights and obligations with respect to that order to the same extent as if the order were completed during the contract's effective period; provided, that the Contractor shall not be required to make any deliveries under this contract after fifteen (15) working days beyond the expiration date of the contract.

Appx8168

**C.3.12 Contractor's Ordering/Payment Address**
Submission of all orders for Contractor's vaccines and payment of invoices shall be addressed as referenced below:

| Ordering Address | Payment Address |
|---|---|
| | |
| | |
| | |

**C.3.13 Invoice Submission**
1. Invoice submission under this contract will be made as follows:
   a. Federal Government: The Contractor shall submit invoices via Electronic Data Interchange (EDI).
   b. Awardees: The Contractor shall submit one hard copy of its invoice(s) to the address specified on the delivery order.
   c. The Contractor agrees to include the following information on each invoice:
   1. Contractor's name and invoice date;
   2. Contract number, or other authorization for delivery of property and/or services;
   3. Description, cost or price, and quantity of property and/or services actually delivered or rendered;
   4. Shipping and payment terms;
   5. Other substantiating documentation or information as required by the contract;
   6. Name where practicable, title, phone number, and complete mailing address of responsible official to whom payment is to be sent;
   7. NDC and Lot number of vaccine vials shipped;
   8. CDC accounting and appropriation data as described on the delivery order;
   9. Electronic Funds Transfer (EFT) and Taxpayer Identification Number (TIN); and
   10. Purchase Order (PO) number and PO line item number.

**C.3.14 Method of Payment**
   a. Federal Government:
   1. The Government will use electronic funds transfer when making payment under this contract IAW FAR Clause 52.232-33, payment by Electronic Funds Transfer - Central Contractor Registration.
   2. The Government is not liable for payments related to orders submitted by states, cities, or territories.
   b. Awardees: By check

**C.3.15 Contract Officer Representative (COR)**
A COR will be designated in writing by the Contracting Officer to serve during the period of performance of the contract. The COR shall be responsible for guidance in regard to the technical aspect of the contract, provide a point for liaison between the Contractor and other Government agencies and be the general focal point to address technical and logistical problems relating to the performance under the contract. The COR shall not have the authority to make any commitments or authorize any changes which affect the contract price, terms and/or conditions; any such changes shall be referred to the Contracting Officer for action.

**C.3.16 Return Privileges**
Return privileges for credit, reimbursement or exchange do not apply to this contract except vaccines not conforming to the specifications set forth herein.

**C.3.17 Restrictions on Use of Vaccines**

Appx8169

Vaccines obtained under this contract shall be used only in children 18 years of age and younger as authorized under Section 1928 of the Social Security Act.  Sale of such vaccine to any person or entity or reimbursement of vaccine costs is strictly prohibited.  Free distribution of such vaccine is also prohibited, except where such vaccine is administered in the context of Federal and Awardee immunization program activities.

**C.3.18**    **Federal Excise Tax Credit**

Negotiated prices for the vaccines included in this Contract may include a Federal Excise Tax (See Continuation of SF 1449 for applicable Contract Line Item Numbers).  If for any reason the vaccine is returned (other than for resale) or destroyed, the Contractor shall within 6 months following the date the vaccine is returned or destroyed, file a claim for credit or refund relative to any tax previously paid on such vaccine.  The Contractor agrees to credit or refund the amount of such excise tax to the purchaser to the extent that the Contractor receives a credit or refund from the Federal Government.  Any such credit or refund to the purchaser is expressly conditioned upon the authorized purchaser providing a written summary of events leading to the request for credit or refund.  The purchaser shall return all undistributed vaccine to the Contractor for proper disposal, unless destruction of the vaccine renders return impossible. If destruction of the vaccine renders return impossible and is therefore destroyed by the purchaser, the authorized purchaser must provide a written summary of events to the Contractor within 30 days of said destruction.  If a contract is in place with the Contractor at the time when a credit or refund is due; the purchaser may elect to receive vaccine which will be purchased at the current contract price in lieu of a cash payment.  Otherwise, the Contractor shall refund the amount due to the purchaser's account.  If a credit or refund is issued by the Contractor for state or local funds, it shall be submitted to the state or local public health entity identified in the request for FET credit. For all Federal Excise Tax refund and other checks sent to the government, each shall reference the Purchase Order number(s) and line item(s) of origin.

Whenever a check is sent to CDC in response to a return PO, the following documentation shall be included with the check and sent to the COR.  This documentation shall include a mapping between the check number and the return PO numbers and associated PO line item numbers that are covered by the check.  If a credit or refund is issued by the Contractor to the Federal Funds account, it shall contain the Contractor's DUNS and TIN/EIN and shall be submitted either via EDI (for credit) or to the following address (for check):

Centers for Disease Control and Prevention
Office of the Financial Resources (OFR)
Attn: Debt Management Branch
P.O. Box 15580
Atlanta, GA 30329-4027

**C.3.19**    **Delinquent Delivery Report**

The Contractor shall provide CDC with a weekly electronic listing of all CDC orders that have not been shipped within the agreed upon delivery schedule. The report shall include the following information: order number, date of order, and status of order in number of pending/undelivered doses.  The report shall also provide an explanation as to the cause for the delinquent delivery as well as when the vaccine will be delivered.  This notification shall not relieve the contractor from meeting its obligations under the contract and shall not limit the Government's right to seek relief for any breach of contract for failure to perform, including termination for cause.

**C.3.20**    **Biological Surveillance Data Reports**

a. The Contractor shall submit a monthly report of historical sales data for the United States by month and state specifying the name of the vaccine, NDC #, and the total number of doses sold (segregated by CDC and non-CDC sales), in a standardized format acceptable to the Contractor and the CDC. The report shall be submitted electronically to the COR by the 15th of the month. Information related to vaccine sales through CDC contracts is not considered proprietary.  CDC acknowledges that those reports pertaining to private sales unrelated to this contract are confidential and proprietary information of the Contractor, and shall not use reports for any purpose other than CDC's internal tracking and reporting purposes and shall not further disclose such reports without the Contractor's prior written consent unless required by the law

Appx8170

or other Federal authority; provided that, no Contractor authorization shall be required for the CDC to include the data from the Contractor's report in a report in which aggregated data from multiple Contractors is summarized, so long as, with respect to multi-sourced products, the CDC's aggregated report does not include any data which could be individually identified as the Contractor's. In the event that CDC is required by law or other Federal authority to disclose such reports required to be held confidential hereunder, CDC shall notify the Contractor prior to making such disclosure in accordance with law or other Federal authority.

b. Data Reports to Manufacturers
The Government will submit monthly reports of all vaccine data specifying doses by project, zip code, and NDC # in a standardized format. For all vaccines except direct ship vaccines, the Government shall provide distribution data. Because the Government does not distribute direct ship vaccines, purchase data will be provided. The reports shall be submitted electronically to the Contractor by the 15th of the month for the previous month. The Government shall also provide the Contractor with an annual Vaccine Tracking System (VTrckS) spend plan for each Awardee and an annual providers list during the first quarter of the fiscal year.

**C.3.21    Prohibitions on Inducements**
The Contractor is expressly prohibited from offering, providing or arranging inducements of any kind to providers or authorized purchasers ordering vaccine under this contract for the purpose of obtaining orders for vaccine. Examples of such inducements include, but are not limited to: entertainment, meals, and free or reduced prices for syringes, vaccines, or other medical products or supplies. If the Contractor has entered into similar agreements with the authorized purchasers which offer inducements relative to its commercial business, these agreements must be clear that they do not apply to purchases made under the CDC Federal contracts.

**C.3.22    Contract Changes**
Notwithstanding FAR Clause 52.212-4(c), Changes, the parties hereby agree that modifications for incremental funding and other administrative changes (e.g., changes to CDC accounting data) that do not affect the terms and conditions of the contract may be made unilaterally by the CDC.

**C.3.23    Vaccine images**
Upon contract award, the Contractor agrees to provide via email camera-ready vaccine product images in .pdf format and written authorization for CDC to use the images to the COR. CDC will use the images to illustrate the Contractor's products on the CDC vaccine ordering system. The Contractor agrees to provide CDC with updated product images if there is a change in packaging and vaccine images for new NDCs added to the contract during the period of performance.

For each vaccine furnished under this contract, complete the information in the template below. If there is more than one component/NDC within the unit of use, list each NDC separately along with component name.

| Unit of Sale (Box/Carton) | | | Unit of Use (Vial/Syringe) |
|---|---|---|---|
| NDC | Brand Name/Trade Name | Description/Presentation | NDC |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

**C.3.24    Advance Notice of Supply Issues**
The Contractor agrees to provide advance notification to COR and the CDC Contracting Officer of any supply issue which may result in the Contractor's failure to deliver vaccine within the agreed upon

Appx8171

delivery schedule specified in the contract.  This notification shall be given as soon as the Contractor becomes aware of the scope of the problem that may impede the timely delivery of vaccine.  This notification shall not relieve the contractor from meeting its obligations under the contract and shall not limit the Government's right to seek relief for any breach of contract for failure to perform, including termination for cause.  Furthermore, any deviation from the delivery schedule due to a vaccine supply issue will demonstrate reasonably equal treatment with respect to the fulfillment of orders between CDC and the non-government customers.

**C.3.25   Authorized Distributor of Record (ADR) Agreements**
In accordance with the Prescription Drug Marketing Act (PDMA) of 1998, it is requested that all suppliers provide a written statement included as an attachment in Section D of this solicitation, which designates the CDC as the ADR for all vaccines subject to distribution under this contract.

**C.3.26   Use of VFC Provider Lists and Distribution of Material**
a. Contractors are prohibited from utilizing VFC providers' lists obtained from any source for any mailing or other communication with VFC providers, except as approved in writing by the CDC COR. In addition, contractors are prohibited from otherwise communicating with VFC providers regarding the VFC program, except as approved in writing by the CDC COR.  To the extent that Contractors have established relationships with VFC providers or authorized purchasers under this contract that are independent from the VFC program, communications related to such independent relationships are not covered by this provision and do not require CDC consent.

b. Contractors are prohibited from providing names and/or addresses of VFC providers to any third party, except as needed to comply with the terms of this contract, in which cases the CDC COR shall be notified in writing.

c. Any Contractor that ships vaccine directly to VFC providers is prohibited from inserting any promotional or other material that is promotional in nature for any product that the Contractor produces, into shipping containers for vaccine purchased under this contract, except for material related to use of the vaccine as approved in writing by the CDC COR.  Additionally any shipping container inserts that are required, such as handling instructions or educational materials, should not contain any promotional material as part of its content.

**C.3.27   New FDA Product License**
Manufacturers who receive a new FDA product license for a vaccine already included with the scope of a VFC resolution may have the new product added to its contract by modification if it is determined that adding the product is in the best interest of the Government.  Such new products must be consistent with VFC formulary schedules (regarding periodicity and dosage regimens) as established for the vaccines by the Advisory Committee on Immunization Practices (ACIP).  New FDA licensed products added to this contract must comply with Clause C.29., *Price Changes,* below.

**C.3.28   ACIP Approved Product**
When a new vaccine product is approved by the ACIP for inclusion in the VFC Formulary, the Manufacturer of such product may have the new product added to its contract by modification if it is determined that adding the product is in the best interest of the Government.  This would include new vaccines, new indications or new formulations for existing products or new dosing regimens for an existing product.  New ACIP Approved Products added to this contract must comply with Clause C.29., *Price Changes,* below.

**C.3.29   Price Changes**
All price change effective dates shall be approved by the CDC Contracting Officer and shall occur on the first day of the following month in VTrckS.

**C.4   Evaluation of Contractor Performance Utilizing CPARS (April 2013)**
In accordance with FAR 42.15, the Centers for Disease Control and Prevention (CDC) will review and evaluate contract performance.  FAR 42.1502 and 42.1503 requires agencies to prepare evaluations of

Appx8172

contractor performance and submit them to the Past Performance Information Retrieval System (PPIRS). The CDC utilizes the Department of Defense (DOD) web-based Contractor Performance Assessment Reporting System (CPARS) to prepare and report these contractor performance evaluations. All information contained in these assessments may be used by the Government, within the limitations of FAR 42.15, for future source selections in accordance with FAR 15.304 where past performance is an evaluation factor.

The CPARS system requires a contractor representative to be assigned so that the contractor has appropriate input into the performance evaluation process. The CPARS contractor representative will be given access to CPARS and will be given the opportunity to concur or not-concur with performance evaluations before the evaluations are complete. The CPARS contractor representative will also have the opportunity to add comments to performance evaluations.

The assessment is not subject to the Disputes clause of the contract, nor is it subject to appeal beyond the review and comment procedures described in the guides on the CPARS website. Refer to: www.cpars.gov for details and additional information related to CPARS, CPARS user access, how contract performance assessments are conducted, and how Contractors participate. Access and training for all persons responsible for the preparation and review of performance assessments is also available at the CPARS website.

The contractor must provide the CDC contracting office with the name, e-mail address, and phone number of their designated CPARS representative who will be responsible for logging into CPARS and reviewing and commenting on performance evaluations. The contractor must maintain a current representative to serve as the contractor representative in CPARS. It is the contractor's responsibility to notify the CDC contracting office, in writing (letter or email), when their CPARS representative information needs to be changed or updated. Failure to maintain current CPARS contractor representative information will result in the loss of an opportunity to review and comment on performance evaluations.

[End of Clause]

**C.5**  **52.215-20 Requirements for Certified Cost or Pricing Data and Data Other Than Certified Cost of Pricing Data (Oct 2010)**
(a) Exceptions from certified cost or pricing data.
   (1) In lieu of submitting certified cost or pricing data, offerors may submit a written request for exception by submitting the information described in the following paragraphs. The Contracting Officer may require additional supporting information, but only to the extent necessary to determine whether an exception should be granted, and whether the price is fair and reasonable.
      (i) Identification of the law or regulation establishing the price offered. If the price is controlled under law by periodic rulings, reviews, or similar actions of a governmental body, attach a copy of the controlling document, unless it was previously submitted to the contracting office.
      (ii) Commercial item exception. For a commercial item exception, the offeror shall submit, at minimum, information on prices at which the same item or similar items have previously been sold in the commercial market that is adequate for evaluating the reasonableness of the price for this acquisition. Such information may include—
         (A) For catalog items, a copy of or identification of the catalog and its date, or the appropriate pages for the offered items, or a statement that the catalog is on file in the buying office to which the proposal is being submitted. Provide a copy or describe current discount policies and price lists (published or unpublished), e.g., wholesale, original equipment manufacturer, or reseller. Also explain the basis of each offered price and its relationship to the established catalog price, including how the proposed price relates to the price of recent sales in quantities similar to the proposed quantities;
         (B) For market-priced items, the source and date or period of the market quotation or other basis for market price, the base amount, and applicable discounts. In addition, describe the nature of the market;

Appx8173

(C) For items included on an active Federal Supply Service Multiple Award Schedule contract, proof that an exception has been granted for the schedule item.

(2) The offeror grants the Contracting Officer or an authorized representative the right to examine, at any time before award, books, records, documents, or other directly pertinent records to verify any request for an exception under this provision, and the reasonableness of price. For items priced using catalog or market prices, or law or regulation, access does not extend to cost or profit information or other data relevant solely to the offeror's determination of the prices to be offered in the catalog or marketplace.

(b) Requirements for certified cost or pricing data. If the offeror is not granted an exception from the requirement to submit certified cost or pricing data, the following applies:

(1) The offeror shall prepare and submit certified cost or pricing data, data other than certified cost or pricing data, and supporting attachments in accordance with the instructions contained in Table 15-2 of FAR 15.408, which is incorporated by reference with the same force and effect as though it were inserted here in full text. The instructions in Table 15-2 are incorporated as a mandatory format to be used in this contract, unless the Contracting Officer and the Contractor agree to a different format and change this clause to use Alternate I.

(2) As soon as practicable after agreement on price, but before contract award (except for unpriced actions such as letter contracts), the offeror shall submit a Certificate of Current Cost or Pricing Data, as prescribed by FAR 15.406-2.

(End of provision)

Alternate I (Oct 2010). As prescribed in 15.408(l) (and see 15.403-5(b)(1)), substitute the following paragraph (b)(1) for paragraph (b)(1) of the basic provision:

(b)(1) The offeror shall submit certified cost or pricing data, data other than certified cost or pricing data, and supporting attachments in the following format: [Insert description of the data and format that are required, and include access to records necessary to permit an adequate evaluation of the proposed price in accordance with 15.408, Table 15-2, Note 2. The description may be inserted at the time of issuing the solicitation, or the Contracting Officer may specify that the offeror's format will be acceptable, or the description may be inserted as the result of negotiations.]:

(a) Submit the cost portion of the proposal via the following electronic media: [electronic spreadsheet]

**FAR 52.215-21 Alternate III Requirements for Cost or Pricing Data or Information Other Than Cost or Pricing Data - Modifications - Alternate III (Oct 1997)**

(c) Submit the cost portion of the proposal via the following electronic media: [electronic spreadsheet]

C.6    **52.232-40 – Providing Accelerated Payments to Small Business Subcontractors (Dec 2013)**
(a) Upon receipt of accelerated payments from the Government, the Contractor shall make accelerated payments to its small business subcontractors under this contract, to the maximum extent practicable and prior to when such payment is otherwise required under the applicable contract or subcontract, after receipt of a proper invoice and all other required documentation from the small business subcontractor.

(b) The acceleration of payments under this clause does not provide any new rights under the Prompt Payment Act.

(c) Include the substance of this clause, including this paragraph (c), in all subcontracts with small business concerns, including subcontracts with small business concerns for the acquisition of commercial items.

(End of clause)

C.7    **352.203-70 Anti-Lobbying (December 18, 2015)**

**Appx8174**

Pursuant to the HHS annual appropriations acts, except for normal and recognized executive-legislative relationships, the Contractor shall not use any HHS contract funds for:

(a) Publicity or propaganda purposes;

(b) The preparation, distribution, or use of any kit, pamphlet, booklet, publication, electronic communication, radio, television, or video presentation designed to support or defeat the enactment of legislation before the Congress or any State or local legislature or legislative body, except in presentation to the Congress or any state or local legislature itself; or designed to support or defeat any proposed or pending regulation, administrative action, or order issued by the executive branch of any state or local government, except in presentation to the executive branch of any state or local government itself; or

(c) Payment of salary or expenses of the Contractor, or any agent acting for the Contractor, related to any activity designed to influence the enactment of legislation, appropriations, regulation, administrative action, or Executive order proposed or pending before the Congress or any state government, state legislature or local legislature or legislative body, other than for normal and recognized executive-legislative relationships or participation by an agency or officer of a state, local, or tribal government in policymaking and administrative processes within the executive branch of that government.

(d) The prohibitions in subsections (a), (b), and (c) above shall include any activity to advocate or promote any proposed, pending, or future federal, state, or local tax increase, or any proposed, pending, or future requirement for, or restriction on, any legal consumer product, including its sale or marketing, including, but not limited to, the advocacy or promotion of gun control.

(End of clause)

# SECTION D - CONTRACT DOCUMENTS, EXHIBITS OR ATTACHMENTS

**D.1**   **Websites.** Additional information can be found at www.fbo.gov, www.cdc.gov/vaccines; and http://csrc.nist.gov/publications/nistpubs/

**D.2**   **Attachment A –   Authorized Distributor of Record (ADR) Agreement:** Offerors shall complete and return the following agreement with their proposals.

Attachment A:  Authorized Distributor of Record (ADR) Agreement

*AUTHORIZED DISTRIBUTOR OF RECORD (ADR) AGREEMENT*

This Agreement hereby represents the ongoing relationship between the supplier named below ("MANUFACTURER / SUPPLIER") and the Centers for Disease Control and Prevention, herein after referred to as CDC, to establish and designate CDC as an Authorized Distributor of Record (ADR) as set forth in the Prescription Drug Marketing Act (PDMA) of 1988 as well as in the implementing federal regulations found at 21 CFR Part 203. CDC hereafter agrees to comply with all applicable state and federal laws to ensure continued status of this relationship. To further meet the requirements of the PDMA, please forward with the signed agreement an attachment with a list of the specific products that CDC is authorized to distribute or a statement that the CDC is an ADR for the manufacturer's entire product line. Specific products should be identified by the pharmaceutical / vaccine name, dosage form, and strength of the drug and the NDC number.

Check the box that applies:

    __ The Distributor is the ADR for Supplier's entire product line.

    __ The Distributor is the ADR for the products listed on the attachment 1-A.

This agreement shall be valid from the date of dual execution until termination by either party on ninety (90) days written notice. This agreement shall not abridge, supplant, modify, or in any way alter any other pre-existing distribution agreement or any future agreements that may, from time to time, be executed in the furtherance of the business relationship between Manufacturer/ Supplier and the CDC.
This agreement confers no rights upon CDC other than to designate CDC as an Authorized Distributor of Record for Manufacturer / Supplier. This agreement is not intended to be, nor shall it be, interpreted as a sales agreement or any other type of agreement other than to represent an "ongoing relationship" within the meaning set forth in 21 CFR Part 203.3(u).

*By affixing my signature below, I do hereby acknowledge and represent that I have read this Agreement in its entirety, that I understand its terms, that I am duly authorized to bind my organization to the requirements detailed in the above Agreement and that I agree to ensure that my organization will adhere to such requirement for the duration herein stated.*

Authorized Distributor of Record: **Centers for Disease Control and Prevention (CDC)**

Authorized Signature:_____

Print Name:  _____, U.S. Government Contracting Officer

Date: _____

-------------------------------------------------------------------------------------------------------

Manufacturer / Supplier: _____

Authorized Signature: _____

Print Name: _____

Date: _____

Attachment A-1

## LIST OF PRODUCTS

| Item No. | Product/Brand Name | NDC |
|---|---|---|
| 1. | Vaccine | xxxxx-xxxx-xx |
| 2. | Vaccine | xxxxx-xxxx-xx |
| 3. | Vaccine | xxxxx-xxxx-xx |

Appx8178

# SECTION E - SOLICITATION PROVISIONS

**E.1**     **The following provisions are added by reference:**

| FAR SOURCE | TITLE AND DATE |
|---|---|
| 52.212-1 | Instructions to Offerors - Commercial Items (Jan 2017) |
| 52.212-3 | Offeror Representations and Certifications - Commercial Items (Mar 2015) |
| 52.232-18 | Availability of Funds (Apr 1984) |

**E.2**     **Paragraph ( c) of 52.212-1, Period for acceptance of offers, is deleted in its entirety and the following is substituted therefore:**

( c) Period for acceptance of offers. The offeror agrees to hold the prices in its offer firm for 60 calendar days from the date specified for receipt of offers, unless another time period is specified in an addendum to the solicitation.

**E.3**     **FAR  52.233-2  Service of Protest (Sep 2006)**

Protests, as defined in section 33.101 of the Federal Acquisition Regulation, that are filed directly with an agency, and copies of any protests that are filed with the Government Accountability Office (GAO), shall be served on the Contracting Officer (addressed as follows) by obtaining written and dated acknowledgment of receipt from:

<div align="center">

Centers for Disease Control & Prevention
Attn: Alan Sims
MS: K-14
2920 Brandywine Road
Atlanta, GA 30341-5539

</div>

The copy of any protest shall be received in the office designated above within one day of filing a protest with the GAO.

(End of Provision)

**E.4**     **INSTRUCTIONS FOR SUBMISSION OF OFFERS:**

    **a.**   Offerors shall submit their offers on the basis of Firm-Fixed Price by **11:59pm EST on January 22, 2018.**

    b.   Offers shall be submitted electronically (via e-mail) in MS Word or MS Excel files **to tnr6@cdc.gov**. The following format is required as e-mail subject: The RFP No: 2018-N- 67769 .KT.doc or .xls (Where "2018-N-67769  " is the respective RFP No. and "KT" are the first two letters of the respective Contractor's name; and ".doc" and ".xls" are the format extensions.)

    c.   In the event there are electronic transmission problems, the following steps shall be taken:

        i.   CDC receives the electronic file timely, but cannot access it. The offeror will be contacted and may be allowed to fax in the portions that cannot be accessed.

        ii.   Facsimile quotes are not authorized. Technical inquiries shall be e-mailed to **tnr6@cdc.gov.** Telephone inquiries will not be honored.

        iii.   Contractor sends electronic file, but receives error message indicating e-mail problems at CDC. Fax in a cover sheet indicating transmission difficulties, and the Contract Specialist will contact the Contractor to arrange an alternate method of submission. Offerors are requested not to fax entire proposals to PGO. Facsimile submission shall only be used after contacting the Contract Specialist.

    e.   Contractors are responsible for providing accurate and complete information for evaluation. (Failure to do so may rule the quote unacceptable.) Thus, the proposal shall include the following information for evaluation:

Appx8179

i. The Technical Proposal:  Shall provide documentation that clearly demonstrates their ability to:

1. meet the provisions of the Federal Excise Tax Credit contract clause;
2. provide vaccine maximum quantities specified within each Contract Line Item Number; and
3. meet the vaccine Shelf Life provision.
4. produce and deliver vaccines under a current establishment and product license issued by the U.S. Food and Drug Administration.

ii. Past Performance:  Past performance is one indicator of the offeror's ability to perform the contract successfully. The government will evaluate different customers' opinions about how well (quality) the offeror has satisfied their requirements.  Offerors shall provide, as part of their proposal, a list of clients or former clients for whom they have performed the same or similar work to the one required by this solicitation during the past five years.

f. Electronic Data Interchanges (EDI):  Based on CDC experience with its Vaccine Order Management System (VTrckS), including the transition of a number of manufacturer vendors to EDI communications with VTrckS, the estimated level of effort needed by the manufacturer/distributor to implement all six messages required for communications with VTrckS ranges from 1000-2000 hours.  This estimate covers all steps, including requirement analysis, design, mapping, development, unit/integration testing and deployment.  Factors that are likely to impact the actual number of hours include available resources, technical solution chosen, existing vendor infrastructure, and complexity of existing vendor infrastructure.  Note that the government will not reimburse contractors for any expenses associated with the EDI implementation.

## E.5    Inquiries

Inquiries concerning the solicitation document shall be submitted in writing to the issuing office.  Any additions, deletions, or changes to the solicitation will be made by an amendment.  OFFERORS ARE INSTRUCTED SPECIFICALLY TO CONTACT ONLY THE SOLICITATION CONTRACTING OFFICE IN CONNECTION WITH ANY ASPECT OF THIS REQUIREMENT PRIOR TO CONTRACT AWARD.  PROPOSALS AND ALL CORRESPONDENCE RELATING TO THE SOLICITATION DOCUMENT SHALL BE SUBMITTED TO THE CONTRACTING OFFICE.  Inquiries shall be received at the Contracting Office no later than **January 17, 2018** via e-mail to: **tnr6@cdc.gov.**

## E.6    Subcontracting Plan

The offeror, prior to being awarded a contract, shall submit an acceptable subcontracting plan (see FAR 52.219-9) or demonstrate that no subcontracting opportunities exist.  (Note:  This requirement does not apply to small business concerns or to offers which do not exceed $500,000.00 ($1,000,000.00 for construction) or to offers from non-domestic concerns.)

CDC Small Business Goals for 2016* are:

| Business Type | CDC's 2016 Goals |
|---|---|
| Small Business | 10% |
| Small Disadvantaged Business | 5% |
| HUBZONE | 3% |
| Women-Owned Small Business | 5% |
| Service-Disabled Veteran-Owned Small Business Subcontracting (SDVOSB) | 3% |
| **Total** | **26%** |

*2017 SBA goals are not yet available and could change from the listed 2016 goals.

## E. 7    FAR 52.212-3 Offeror Representations and Certifications (Nov 2017)

Appx8180

The Offeror shall complete only paragraph (b) of this provision if the Offeror has completed the annual representations and certification electronically via the System for Award Management (SAM) website located at https://www.sam.gov/portal. If the Offeror has not completed the annual representations and certifications electronically, the Offeror shall complete only paragraphs (c) through (u) of this provision.
.

  (End of Provision)

**E. 8  52.212-2 Evaluation - Commercial Items (Oct 2014)**

  (a) The Government will award a contract resulting from this solicitation to the responsible offeror whose offer conforming to the solicitation will be most advantageous to the Government, price and other factors considered. The following factors shall be used to evaluate offers:

  (i)   technical capability of the item offered to meet the Government requirement;
  (ii)  price;
  (iii) past performance (see FAR 15.304)

  Technical and past performance, when combined, are equal in importance to price.
(b) A written notice of award or acceptance of an offer, mailed or otherwise furnished to the successful offeror within the time for acceptance specified in the offer, shall result in a binding contract without further action by either party. Before the offer's specified expiration time, the Government may accept an offer (or part of an offer), whether or not there are negotiations after its receipt, unless a written notice of withdrawal is received before award.

Technical and past performance, when combined, is equal in importance to price.

  (d)  Past performance will be evaluated for only those offerors remaining in the **competitive range** as follows:

1. Each offeror shall be evaluated on its past performance under current and prior contracts.  By past performance, the Government means the offeror's record of conforming to specifications and to standards of good workmanship; the contractor's record of forecasting and controlling costs; the offeror's adherence to contract schedules and terms, including the administrative aspects of performance; the offeror's reputation for reasonable and cooperative behavior and commitment to customer satisfaction; and generally, the offeror's business-like concern for the interest of the customer and the degree of quality of deliverables and performance.

2. Past performance will not be scored, but the Government's conclusions about overall quality of the offeror's past performance will be highly influential in determining the relative merits of the offeror's proposal and in selecting the offeror whose proposal is considered the most advantageous/best value to the Government.

3. Evaluation of past performance will be a subjective assessment based on a consideration of all relevant facts and circumstances.  It will not be based on absolute standards of acceptable performance.

4. The assessment of the offerors past performance will be used as a means of evaluating the relative capability of the offeror and the other competitors.  Thus, an offeror with an exceptional record of relevant past performance may receive a more favorable evaluation than another whose record is acceptable and/or less relevant, even though both may have acceptable technical and business proposals.

5. An offeror without a record of past performance or for whom information on past performance is not available will not be evaluated favorably or unfavorably.

6. Evaluation of past performance information will be reflected in terms of the following degrees of performance assessment:

Appx8181

**Excellent:** A significant majority of the sources of information are consistently firm in stating that the offeror's performance was superior and that they would unhesitatingly do business with the offeror again. Complaints are negligible or unfounded. The offeror has no record of criminal conduct, civil fraud, or negligence, or the record is old and the offeror has demonstrated by more recent performance that corrective action has made the likelihood of such conduct in the future highly improbably. No doubt exists that the offeror will successfully perform the Government's requirements as stated in the RFP.

**Good:** Most sources of information state that the offeror's performance was good, better than average, etc., and that they would willingly do business with the offeror again. Complaints, though perhaps well-founded, are few and relatively minor. The offeror has no record of criminal conduct, civil fraud, or negligence, or the record is old and the offeror has demonstrated by more recent performance that corrective action has made the likelihood of such conduct in the future highly improbable. Little doubt exists that the offeror will successfully perform the Government's requirements as stated in the RFP.

**Neutral:** Either no past performance history exists for the corporation, predecessor companies, key personnel, or major/critical subcontractors, or the offeror's record of past performance was neither predominantly favorable nor unfavorable. In the latter case, sources of information are roughly divided over the quality of the offeror's performance. While some state that they would do business with the offeror again, others are doubtful or would not. Complaints are balanced by reports of good work. The offeror has no record of criminal conduct, civil fraud, or negligence, or the record is old.

**Marginal:** Many sources of information made unfavorable reports about the offeror's performance and either express serious doubts about doing business with the offeror again or state that they would refuse to do so. However, there are some favorable reports, and some sources of information indicate that they would do business with the offeror again. There are many significant, serious, and well-founded complaints, but there are some reports of very good performance. The offeror may have been indicted, pled guilty, or may have been found guilty in matters of criminal conduct, but the issues are either unresolved, relatively minor, or do not reflect a company-wide or managerial pattern of wrongdoing. The offeror may have lost civil suits for fraud or negligence, but there is no company-wide or managerial pattern of fraudulent, negligent, or criminal conduct. Some doubt exists that the offeror will successfully perform the Government's requirements as stated in the RFP.

**Poor:** A significant majority of sources of information are consistently firm in stating that the offeror's performance was entirely unsatisfactory and that they would not do business with the offeror again under any circumstances. Customer complaints are substantial or numerous and are well-founded. Or, although not debarred or suspended, the offeror is under indictment or has been convicted of criminal conduct, or has been found civilly liable for fraud or negligence. The offeror either has presented no persuasive evidence of having taken appropriate corrective action that will guard against such conduct in the foreseeable future, or it appears unlikely that the corrective action will be effective. Serious doubt exists that the offeror will successfully perform the Government requirements as stated in the RFP.

(End of Provision)

10/25/2019
Declaration of G. Reilly
EXHIBIT 278

Appx8183

# SOLICITATION/CONTRACT/ORDER FOR COMMERCIAL ITEMS
*OFFEROR TO COMPLETE BLOCKS 12, 17, 23, 24, & 30*

| | |
|---|---|
| 1. REQUISITION NUMBER | PAGE 1 OF 25 |

| 2. CONTRACT NO. | 3. AWARD/EFFECTIVE DATE | 4. ORDER NUMBER | 5. SOLICITATION NUMBER 75D301-19-R-67848 | 6. SOLICITATION ISSUE DATE 1/7/2019 |
|---|---|---|---|---|

| 7. FOR SOLICITATION INFORMATION CALL: | a. NAME Christina McMichael | b. TELEPHONE NUMBER (No collect calls) (770) 488-2697 | 8. OFFER DUE DATE/ LOCAL TIME 1/21/2019 |
|---|---|---|---|

| 9. ISSUED BY CODE 8219 | 10. THIS ACQUISITION IS | 11. DELIVERY FOR FOB DESTINATION UNLESS BLOCK IS MARKED | 12. DISCOUNT TERMS |
|---|---|---|---|

Centers for Disease Control and Prevention (CDC)
Office of Acquisition Services (OAS)
2920 Brandywine Road
Atlanta, GA 30341-5539

X UNRESTRICTED
SET ASIDE: % FOR
SMALL BUSINESS
SMALL DISADV. BUSINESS
8(A)
SIC:
SIZE STANDARD:

X SEE SCHEDULE

13a. THIS CONTRACT IS A RATED ORDER UNDER DPAS (15 CFR 700)
13b. RATING

14. METHOD OF SOLICITATION
RFQ   IFB   X RFP

| 15. DELIVER TO CODE | 16. ADMINISTERED BY CODE 8219 |
|---|---|

To be indicated by the individual delivery orders placed against the contract.

Centers for Disease Control and Prevention (CDC)
Office of Acquisition Services (OAS)
2920 Brandywine Road
Atlanta, GA 30341-5539

| 17a. CONTRACTOR/OFFEROR CODE FACILITY CODE | 18a. PAYMENT WILL BE MADE BY CODE 434 |
|---|---|

Centers for Disease Control and Prevention (FMO)
PO Box 15580 404-718-8100

Atlanta, GA 30333-0080

TELEPHONE NO.

17b. CHECK IF REMITTANCE IS DIFFERENT AND PUT SUCH ADDRESS IN OFFER

18b. SUBMIT INVOICES TO ADDRESS SHOWN IN BLOCK 18a UNLESS BLOCK BELOW IS CHECKED SEE ADDENDUM

| 19. ITEM NO. | 20. SCHEDULE OF SUPPLIES/SERVICES | 21. QUANTITY | 22. UNIT | 23. UNIT PRICE | 24. AMOUNT |
|---|---|---|---|---|---|
| | **2019 Vaccines For Children (VFC)** *"See Continuation Page" (Attach Additional Sheets as Necessary)* | | | | |

25. ACCOUNTING AND APPROPRIATION DATA

26. TOTAL AWARD AMOUNT (For Govt. Use Only)

27a. SOLICITATION INCORPORATES BY REFERENCE FAR 52.212-1, 52.212-4. FAR 52.212-3 AND 52.212-5 ARE ATTACHED. ADDENDA ARE ARE NOT ATTACHED.
27b. CONTRACT/PURCHASE ORDER INCORPORATES BY REFERENCE FAR 52.212-4. FAR 52.212-5 IS ATTACHED. ADDENDA ARE ARE NOT ATTACHED.

28. CONTRACTOR IS REQUIRED TO SIGN THIS DOCUMENT AND RETURN ___ COPIES TO ISSUING OFFICE. CONTRACTOR AGREES TO FURNISH AND DELIVER ALL ITEMS SET FORTH OR OTHERWISE IDENTIFIED ABOVE AND ON ANY ADDITIONAL SHEETS SUBJECT TO THE TERMS AND CONDITIONS SPECIFIED HEREIN.

29. AWARD OF CONTRACT: REFERENCE ___ OFFER DATED ___ . YOUR OFFER ON SOLICITATION (BLOCK 5), INCLUDING ANY ADDITIONS OR CHANGES WHICH ARE SET FORTH HEREIN, IS ACCEPTED AS TO ITEMS:

| 30a. SIGNATURE OF OFFEROR/CONTRACTOR | 31a. UNITED STATES OF AMERICA (Signature of Contracting Officer) |
|---|---|

| 30b. NAME AND TITLE OF SIGNER (Type or print) | 30c. DATE SIGNED | 31b. NAME OF CONTRACTING OFFICER (Type or print) Pellumbeshe Hoxhaj | 31c. DATE SIGNED |
|---|---|---|---|

| 32a. QUANTITY IN COLUMN 21 HAS BEEN RECEIVED INSPECTED ACCEPTED, AND CONFORMS TO THE CONTRACT, EXCEPT AS NOTED | 33. SHIP NUMBER PARTIAL FINAL | 34. VOUCHER NUMBER | 35. AMOUNT VERIFIED CORRECT FOR |
|---|---|---|---|

| 32b. SIGNATURE OF AUTHORIZED GOV'T REPRESENTATIVE | 32c. DATE | 36. PAYMENT COMPLETE PARTIAL FINAL | 37. CHECK NUMBER |
|---|---|---|---|

| | | 38. S/R ACCOUNT NUMBER | 39. S/R VOUCHER NUMBER | 40. PAID BY |
|---|---|---|---|---|

42a. RECEIVED BY (Print)

41a. I CERTIFY THIS AMOUNT IS CORRECT AND PROPER FOR PAYMENT

| 41b. SIGNATURE AND TITLE OF CERTIFYING OFFICER | 41c. DATE | 42b. RECEIVED AT (Location) |
|---|---|---|

| | | 42c. DATE REC'D | 42d. TOTAL CONTAINERS |

AUTHORIZED FOR LOCAL REPRODUCTION   SEE REVERSE FOR OMB CONTROL NUMBER AND PAPERWORK BURDEN STATEMENT   STANDARD FORM 1449 (10-95)

Appx8184

# TABLE OF CONTENTS

| Section | Document/Clause/Provision | Page No. |
|---|---|---|
| A | Standard Form 1449 | |
| B | Continuation of SF1449 (Block 19 – 24) | 1 |
| C | Contract Clauses | 4 |
| D | Contract Documents, Exhibits or Attachments | 18 |
| E | Solicitation Provisions | 21 |

Appx8185

Contract No.

## SECTION B - CONTINUATION OF SF1449

| ITEM | SUPPLIES / SERVICES | QTY / UNIT | UNIT PRICE | EXTENDED PRICE |
|------|---------------------|------------|------------|----------------|
| 0001 | VFC | Maximum Quantity | $_____ | $_____ |

The National Center for Immunization and Respiratory Diseases (NCIRD) requires the award of multiple indefinite quantity, indefinite delivery contracts for the purchase of standard commercial pediatric vaccines, manufactured under a current establishment and product license issued by the U.S. Food and Drug Administration.  The vaccines awarded under these contracts will be purchased for NCIRD's immunization Awardees to support pediatric immunization programs as provided under Section 317(j) of the Public Health Service Act and Vaccine for Children (VFC) program, established pursuant to Section 13631 of the Omnibus Budget Reconciliation Act of 1993 (OBRA '93).

| ITEM | SUPPLIES / SERVICES | QTY / UNIT | Per Dose Price (Including FET) | Extending Price (Including FET) |
|------|---------------------|------------|-------------------------------|--------------------------------|
| 1. | DTaP vaccine:<br><br>Min. Shelf Life: 12 Months<br>Fed. Excise Tax: $2.25 per dose | Maximum: 6.5M Doses<br><br>Minimum: 100 Doses | $_____ | MAXIMUM VALUE<br>$_____ |
| 2. | DTaP/Hep B/IPV vaccine:<br><br>Min. Shelf Life: 12 Months<br>Fed. Excise Tax: $3.75 per dose | Maximum: 5.38M Doses<br><br>Minimum: 100 Doses | $_____ | MAXIMUM VALUE<br>$_____ |
| 3. | DTaP-IPV Vaccine:<br><br>Min. Shelf Life:  12 months<br>Fed. Excise Tax: $3.00 per dose | Maximum: 3.5M Doses<br><br>Minimum:  100 Doses | $_____ | MAXIMUM VALUE<br>$_____ |
| 4. | DTaP-IP-HI Vaccine:<br><br>Min. Shelf Life: 12 months<br>Fed. Excise Tax: $3.75 per dose | Maximum:  7.5M Doses<br><br>Minimum: 100 Doses | $_____ | MAXIMUM VALUE<br>$_____ |
| 5. | E-IPV vaccine:<br><br>Min. Shelf Life: 12 Months<br>Fed. Excise Tax: $0.75 per dose | Maximum: 4M Doses<br><br>Minimum: 100 Doses | $_____ | MAXIMUM VALUE<br>$_____ |
| 6. | Hepatitis A (pediatric) vaccine<br><br>Min. Shelf Life: 12 Months<br>Fed. Excise Tax: $0.75 per dose | Maximum: 8.5M Doses<br><br>Minimum: 100 Doses | $_____ | MAXIMUM VALUE<br>$_____ |
| 7. | Hepatitis A&B (Age 18 only) vaccine<br><br>Min. Shelf Life: 12 Months<br>Fed. Excise Tax: $1.50 per dose | Maximum: 100,000 Doses<br><br>Minimum: 100 Doses | $_____ | MAXIMUM VALUE<br>$_____ |
| 8. | Hepatitis B (pediatric/adol.) vaccine<br><br>Min. Shelf Life: 12 Months<br>Fed. Excise Tax: $0.75 per dose | Maximum: 7.7M Doses<br><br>Minimum: 100 Doses | $_____ | MAXIMUM VALUE<br>$_____ |
| 9. | Hib vaccine<br><br>Min. Shelf Life: 12 Months<br>Fed. Excise Tax: $0.75 per dose | Maximum: 8M Doses<br><br>Minimum: 100 Doses | $_____ | MAXIMUM VALUE<br>$_____ |
| 10. | Human Papillomavirus types Vaccine, | Maximum: 9M Doses | $_____ | MAXIMUM VALUE |

Appx8186

**Contract No.**

| | | | | |
|---|---|---|---|---|
| | Recombinant<br><br>Min. Shelf Life: 12 Months<br>Fed. Excise Tax: $0.75 per dose | | | $_____ |
| 11. | Measles, Mumps & Rubella (MMR) vaccine<br><br>Min. Shelf Life: 12 Months<br>Fed. Excise Tax: $2.25 per dose | Maximum: 8M Doses<br><br>Minimum: 100 Doses | $_____ | MAXIMUM VALUE<br>$_____ |
| 12. | Meningococcal Conjugate (MCV4) vaccine<br><br>Min. Shelf Life: 12 Months<br>Fed. Excise Tax: $0.75 per dose | Maximum: 6.5M Doses<br><br>Minimum: 100 Doses | $_____ | MAXIMUM VALUE<br>$_____ |
| 13. | Pneumococcal Conjugate vaccine (13 Valent)<br><br>Min. Shelf Life: 12 Months<br>Fed. Excise Tax: $0.75 per dose | Maximum: 13M Doses<br><br>Minimum: 100 Doses | $_____ | MAXIMUM VALUE<br>$_____ |
| 14. | Pneumococcal (23 Valent) Polysaccharide Vaccine<br><br>Min. Shelf Life: 12 Months<br>Fed. Excise Tax: N/A | Maximum: 350K Doses<br><br>Minimum: 100 Doses | $_____ | MAXIMUM VALUE<br>$_____ |
| 15. | Rotavirus vaccine<br><br>Min. Shelf Life: 12 Months<br>Fed. Excise Tax: $0.75 per dose | Maximum: 7M Doses<br><br>Minimum: 100 Doses | $_____ | MAXIMUM VALUE<br>$_____ |
| 16. | Tetanus and Diphtheria (Td) vaccine<br><br>Min. Shelf Life: 12 Months<br>Fed. Excise Tax: $1.50 per dose | Maximum: 750,000 Doses<br><br>Minimum: 100 Doses | $_____ | MAXIMUM VALUE<br>$_____ |
| 17. | Tdap vaccine<br><br>Min. Shelf Life: 12 Months<br>Fed. Excise Tax: $2.25 per dose | Maximum: 5.5M Doses<br><br>Minimum: 100 Doses | $_____ | MAXIMUM VALUE<br>$_____ |
| 18. | Varicella vaccine<br><br>Min. Shelf Life: 12 Months<br>Fed. Excise Tax: $0.75 per dose | Maximum: 10M Doses<br><br>Minimum: 10 Doses | $_____ | MAXIMUM VALUE<br>$_____ |
| 19. | Measles, Mumps & Rubella (MMR-V) and Varicella vaccine<br><br>Min. Shelf Life: 12 Months<br>Fed. Excise Tax: $3.00 per dose | Maximum: 3.3M Doses<br><br>Minimum: 10 Doses | $_____ | MAXIMUM VALUE<br>$_____ |
| 20. | Serogroup B Meningococcal<br><br>Min. Shelf Life: 12 Months<br>Fed. Excise Tax: $0.75 per dose | Maximum: 2M Doses<br><br>Minimum: 100 Doses | $_____ | MAXIMUM VALUE<br>$_____ |

**Total Contract Value: $_____**

**Note: The delivery date is to be determined and the delivery location will be shown on delivery orders.**

**B.1   Background:** The Centers for Disease Control and Prevention (CDC) awards contracts to manufacturers for the purchase of standard commercial pediatric vaccines. Vaccines are one of the

Appx8187

Contract No.

most cost-effective ways to prevent disease and reduce healthcare costs. The Vaccines for Children (VFC) program, established pursuant to Section 13631 of the Omnibus Budget Reconciliation Act of 1993 (OBRA '93), guarantees federal support for the purchase and supply of sufficient quantities of vaccine to the States to cover a defined group of children.  The program helps assure the implementation of effective immunization practices and proper use of vaccines to achieve higher immunization coverage.  Children (18 years-of-age or younger) who qualify for immunization through the VFC purchase program include those who are (1) Medicaid-eligible, (2) without health insurance, (3) American Indian/Alaska native (as defined in Subsection (h)(3) of the OBRA '93), or (4) children with health insurance, which does not cover the cost of vaccines, if they receive their immunizations at a Federally Qualified Health Center or rural health clinic (as defined by the Social Security Act).  Health care providers who agree to certain requirements are eligible through the States to receive free vaccine through this VFC purchase program.  The establishment of these contracts provides an opportunity to utilize VFC funds and Section 317 vaccine purchase funds to obtain vaccines at prices below those available in the commercial market place.  In addition, Awardees may opt to purchase additional quantities of vaccine under any resulting contract to provide immunizations for children who are not federally vaccine-eligible children using state and local funds.

**B.2   Definitions:**

OBRA Orders – Vaccine orders under Section 1928(a) (2)(A) of the Social Security Act.

317 Orders – Vaccine orders under Section 317(j) of the Public Health Service Act.

State and Local Orders – Vaccine orders placed by authorized immunization programs using state or local funds in accordance with Section 1928(d)(4)(B) of the Social Security Act.

Manufacturer – As defined in Subsection (h) (4) of the Social Security Act, means any corporation, organization, or institution, whether public or private, which manufactures, imports, processes, or distributes under its label any pediatric vaccine.

Awardees – Includes State health departments and certain local health agencies authorized to order hereunder.

**B.3 Type of Contract:** Indefinite Delivery Indefinite Quantity contract with Firm Fixed Price delivery orders.

Appx8188

Contract No.

# SECTION C - CONTRACT CLAUSES

**C.1.** **52.212-5 Contract Terms and Conditions Required to Implement Statutes or Executive Orders— Commercial Items. (Oct 2018)**

   (a) The Contractor shall comply with the following Federal Acquisition Regulation (FAR) clauses, which are incorporated in this contract by reference, to implement provisions of law or Executive orders applicable to acquisitions of commercial items:

     (1) 52.203-19, Prohibition on Requiring Certain Internal Confidentiality Agreements or Statements (Jan 2017) (section 743 of Division E, Title VII, of the Consolidated and Further Continuing Appropriations Act, 2015 (Pub. L. 113-235) and its successor provisions in subsequent appropriations acts (and as extended in continuing resolutions)).

     (2) 52.204-23, Prohibition on Contracting for Hardware, Software, and Services Developed or Provided by Kaspersky Lab and Other Covered Entities (Jul 2018) (Section 1634 of Pub. L. 115-91).

     (3) 52.209-10, Prohibition on Contracting with Inverted Domestic Corporations (Nov 2015).

     (4) 52.233-3, Protest After Award (Aug 1996) (31 U.S.C. 3553).

     (5) 52.233-4, Applicable Law for Breach of Contract Claim (Oct 2004)(Public Laws 108-77 and 108-78 (19 U.S.C. 3805 note)).

   (b) The Contractor shall comply with the FAR clauses in this paragraph (b) that the Contracting Officer has indicated as being incorporated in this contract by reference to implement provisions of law or Executive orders applicable to acquisitions of commercial items:

   _X_ (1) 52.203-6, Restrictions on Subcontractor Sales to the Government (Sept 2006), with Alternate I (Oct 1995) (41 U.S.C. 4704 and 10 U.S.C. 2402).

   _X_ (2) 52.203-13, Contractor Code of Business Ethics and Conduct (Oct 2015) (41 U.S.C. 3509)).

   __ (3) 52.203-15, Whistleblower Protections under the American Recovery and Reinvestment Act of 2009 (June 2010) (Section 1553 of Pub. L. 111-5). (Applies to contracts funded by the American Recovery and Reinvestment Act of 2009.)

   _X_ (4) 52.204-10, Reporting Executive Compensation and First-Tier Subcontract Awards (Oct 2018) (Pub. L. 109-282) (31 U.S.C. 6101 note).

   __ (5) [Reserved].

   __ (6) 52.204-14, Service Contract Reporting Requirements (Oct 2016) (Pub. L. 111-117, section 743 of Div. C).

   __ (7) 52.204-15, Service Contract Reporting Requirements for Indefinite-Delivery Contracts (Oct 2016) (Pub. L. 111-117, section 743 of Div. C).

   _X_ (8) 52.209-6, Protecting the Government's Interest When Subcontracting with Contractors Debarred, Suspended, or Proposed for Debarment. (Oct 2015) (31 U.S.C. 6101 note).

   _X_ (9) 52.209-9, Updates of Publicly Available Information Regarding Responsibility Matters (Oct 2018) (41 U.S.C. 2313).

   __ (10) [Reserved].

   __ (11)(i) 52.219-3, Notice of HUBZone Set-Aside or Sole-Source Award (Nov 2011) (15 U.S.C. 657a).

     __ (ii) Alternate I (Nov 2011) of 52.219-3.

   _X_ (12)(i) 52.219-4, Notice of Price Evaluation Preference for HUBZone Small Business Concerns (Oct 2014) (if the offeror elects to waive the preference, it shall so indicate in its offer) (15 U.S.C. 657a).

     __ (ii) Alternate I (Jan 2011) of 52.219-4.

   __ (13) [Reserved]

   __ (14)(i) 52.219-6, Notice of Total Small Business Set-Aside (Nov 2011) (15 U.S.C. 644).

     __ (ii) Alternate I (Nov 2011).

     __ (iii) Alternate II (Nov 2011).

   __ (15)(i) 52.219-7, Notice of Partial Small Business Set-Aside (June 2003) (15 U.S.C. 644).

Appx8189

**Contract No.**

   __ (ii) Alternate I (Oct 1995) of 52.219-7.

   __ (iii) Alternate II (Mar 2004) of 52.219-7.

_X_ (16) 52.219-8, Utilization of Small Business Concerns (Oct 2018) (15 U.S.C. 637(d)(2) and (3)).

_X_ (17)(i) 52.219-9, Small Business Subcontracting Plan (Aug 2018) (15 U.S.C. 637(d)(4)).

   __ (ii) Alternate I (Nov 2016) of 52.219-9.

   __ (iii) Alternate II (Nov 2016) of 52.219-9.

   __ (iv) Alternate III (Nov 2016) of 52.219-9.

   __ (v) Alternate IV (Aug 2018) of 52.219-9.

   __ (18) 52.219-13, Notice of Set-Aside of Orders (Nov 2011) (15 U.S.C. 644(r)).

   __ (19) 52.219-14, Limitations on Subcontracting (Jan 2017) (15 U.S.C. 637(a)(14)).

_X_ (20) 52.219-16, Liquidated Damages—Subcon-tracting Plan (Jan 1999) (15 U.S.C. 637(d)(4)(F)(i)).

   __ (21) 52.219-27, Notice of Service-Disabled Veteran-Owned Small Business Set-Aside (Nov 2011) (15 U.S.C. 657 f).

_X_ (22) 52.219-28, Post Award Small Business Program Rerepresentation (Jul 2013) (15 U.S.C. 632(a)(2)).

   __ (23) 52.219-29, Notice of Set-Aside for, or Sole Source Award to, Economically Disadvantaged Women-Owned Small Business Concerns (Dec 2015) (15 U.S.C. 637(m)).

   __ (24) 52.219-30, Notice of Set-Aside for, or Sole Source Award to, Women-Owned Small Business Concerns Eligible Under the Women-Owned Small Business Program (Dec 2015) (15 U.S.C. 637(m)).

_X_ (25) 52.222-3, Convict Labor (June 2003) (E.O. 11755).

_X_ (26) 52.222-19, Child Labor—Cooperation with Authorities and Remedies (Jan 2018) (E.O. 13126).

_X_ (27) 52.222-21, Prohibition of Segregated Facilities (Apr 2015).

_X_ (28)(i) 52.222-26, Equal Opportunity (Sept 2016) (E.O. 11246).

   (ii) Alternate I (FEB 1999) of 52.222-26.

_X_ (29)(i) 52.222-35, Equal Opportunity for Veterans (Oct 2015)(38 U.S.C. 4212).

   (ii) Alternate I (JULY 2014) of 52.222-35.

_X_ (30)(i) 52.222-36, Equal Opportunity for Workers with Disabilities (July 2014) (29 U.S.C. 793).

   (ii) Alternate I (JULY 2014) of 52.222-36.

_X_ (31) 52.222-37, Employment Reports on Veterans (FEB 2016) (38 U.S.C. 4212).

_X_ (32) 52.222-40, Notification of Employee Rights Under the National Labor Relations Act (Dec 2010) (E.O. 13496).

_X_ (33)(i) 52.222-50, Combating Trafficking in Persons (Mar 2015) (22 U.S.C. chapter 78 and E.O. 13627).

   __ (ii) Alternate I (Mar 2015) of 52.222-50 (22 U.S.C. chapter 78 and E.O. 13627).

   __ (34) 52.222-54, Employment Eligibility Verification (OCT 2015). (Executive Order 12989. (Not applicable to the acquisition of commercially available off-the-shelf items or certain other types of commercial items as prescribed in 22.1803.)

   __ (35)(i) 52.223-9, Estimate of Percentage of Recovered Material Content for EPA–Designated Items (May 2008) (42 U.S.C. 6962(c)(3)(A)(ii)). (Not applicable to the acquisition of commercially available off-the-shelf items.)

     __ (ii) Alternate I (May 2008) of 52.223-9 (42 U.S.C. 6962(i)(2)(C)). (Not applicable to the acquisition of commercially available off-the-shelf items.)

   __ (36) 52.223-11, Ozone-Depleting Substances and High Global Warming Potential Hydrofluorocarbons (JUN 2016) (E.O. 13693).

   __ (37) 52.223-12, Maintenance, Service, Repair, or Disposal of Refrigeration Equipment and Air Conditioners (JUN 2016) (E.O. 13693).

   __ (38)(i) 52.223-13, Acquisition of EPEAT®-Registered Imaging Equipment (JUN 2014) (E.O.s 13423 and 13514).

     __ (ii) Alternate I (Oct 2015) of 52.223-13.

**Contract No.**

__ (39)(i) 52.223-14, Acquisition of EPEAT®-Registered Televisions (JUN 2014) (E.O.s 13423 and 13514).

__ (ii) Alternate I (Jun 2014) of 52.223-14.

__ (40) 52.223-15, Energy Efficiency in Energy-Consuming Products (DEC 2007) (42 U.S.C. 8259b).

__ (41)(i) 52.223-16, Acquisition of EPEAT®-Registered Personal Computer Products (OCT 2015) (E.O.s 13423 and 13514).

__ (ii) Alternate I (Jun 2014) of 52.223-16.

_X_ (42) 52.223-18, Encouraging Contractor Policies to Ban Text Messaging While Driving (AUG 2011) (E.O. 13513).

__ (43) 52.223-20, Aerosols (JUN 2016) (E.O. 13693).

__ (44) 52.223-21, Foams (JUN 2016) (E.O. 13693).

__ (45)(i) 52.224-3, Privacy Training (JAN 2017) (5 U.S.C. 552a).

__ (ii) Alternate I (JAN 2017) of 52.224-3.

__ (46) 52.225-1, Buy American—Supplies (May 2014) (41 U.S.C. chapter 83).

__ (47)(i) 52.225-3, Buy American—Free Trade Agreements—Israeli Trade Act (May 2014) (41 U.S.C. chapter 83, 19 U.S.C. 3301 note, 19 U.S.C. 2112 note, 19 U.S.C. 3805 note, 19 U.S.C. 4001 note, Pub. L. 103-182, 108-77, 108-78, 108-286, 108-302, 109-53, 109-169, 109-283, 110-138, 112-41, 112-42, and 112-43.

__ (ii) Alternate I (May 2014) of 52.225-3.

__ (iii) Alternate II (May 2014) of 52.225-3.

__ (iv) Alternate III (May 2014) of 52.225-3.

__ (48) 52.225-5, Trade Agreements (AUG 2018) (19 U.S.C. 2501, *et seq.*, 19 U.S.C. 3301 note).

_X_ (49) 52.225-13, Restrictions on Certain Foreign Purchases (June 2008) (E.O.'s, proclamations, and statutes administered by the Office of Foreign Assets Control of the Department of the Treasury).

__ (50) 52.225-26, Contractors Performing Private Security Functions Outside the United States (Oct 2016) (Section 862, as amended, of the National Defense Authorization Act for Fiscal Year 2008; 10 U.S.C. 2302 Note).

__ (51) 52.226-4, Notice of Disaster or Emergency Area Set-Aside (Nov 2007) (42 U.S.C. 5150).

__ (52) 52.226-5, Restrictions on Subcontracting Outside Disaster or Emergency Area (Nov 2007) (42 U.S.C. 5150).

__ (53) 52.232-29, Terms for Financing of Purchases of Commercial Items (Feb 2002) (41 U.S.C. 4505, 10 U.S.C. 2307(f)).

__ (54) 52.232-30, Installment Payments for Commercial Items (Jan 2017) (41 U.S.C. 4505, 10 U.S.C. 2307(f)).

_X_ (55) 52.232-33, Payment by Electronic Funds Transfer—System for Award Management (Oct 2018) (31 U.S.C. 3332).

__ (56) 52.232-34, Payment by Electronic Funds Transfer—Other than System for Award Management (Jul 2013) (31 U.S.C. 3332).

__ (57) 52.232-36, Payment by Third Party (May 2014) (31 U.S.C. 3332).

__ (58) 52.239-1, Privacy or Security Safeguards (Aug 1996) (5 U.S.C. 552a).

__ (59) 52.242-5, Payments to Small Business Subcontractors (JAN 2017)(15 U.S.C. 637(d)(12)).

__ (60)(i) 52.247-64, Preference for Privately Owned U.S.-Flag Commercial Vessels (Feb 2006) (46 U.S.C. Appx. 1241(b) and 10 U.S.C. 2631).

__ (ii) Alternate I (APR 2003) of 52.247-64.

__ (iii) Alternate II (FEB 2006) of 52.247-64.

(c) The Contractor shall comply with the FAR clauses in this paragraph (c), applicable to commercial services, that the Contracting Officer has indicated as being incorporated in this contract by reference to implement provisions of law or Executive orders applicable to acquisitions of commercial items:

__ (1) 52.222-17, Nondisplacement of Qualified Workers (May 2014)(E.O. 13495).

__ (2) 52.222-41, Service Contract Labor Standards (AUG 2018) (41 U.S.C. chapter 67).

**Contract No.**

___ (3) 52.222-42, Statement of Equivalent Rates for Federal Hires (May 2014) (29 U.S.C. 206 and 41 U.S.C. chapter 67).

___ (4) 52.222-43, Fair Labor Standards Act and Service Contract Labor Standards-Price Adjustment (Multiple Year and Option Contracts) (Aug 2018) (29 U.S.C. 206 and 41 U.S.C. chapter 67).

___ (5) 52.222-44, Fair Labor Standards Act and Service Contract Labor Standards—Price Adjustment (May 2014) (29 U.S.C. 206 and 41 U.S.C. chapter 67).

___ (6) 52.222-51, Exemption from Application of the Service Contract Labor Standards to Contracts for Maintenance, Calibration, or Repair of Certain Equipment—Requirements (May 2014) (41 U.S.C. chapter 67).

___ (7) 52.222-53, Exemption from Application of the Service Contract Labor Standards to Contracts for Certain Services—Requirements (May 2014) (41 U.S.C. chapter 67).

___ (8) 52.222-55, Minimum Wages Under Executive Order 13658 (Dec 2015).

___ (9) 52.222-62, Paid Sick Leave Under Executive Order 13706 (JAN 2017) (E.O. 13706).

___ (10) 52.226-6, Promoting Excess Food Donation to Nonprofit Organizations (May 2014) (42 U.S.C. 1792).

(d) *Comptroller General Examination of Record.* The Contractor shall comply with the provisions of this paragraph (d) if this contract was awarded using other than sealed bid, is in excess of the simplified acquisition threshold, and does not contain the clause at 52.215-2, Audit and Records—Negotiation.

(1) The Comptroller General of the United States, or an authorized representative of the Comptroller General, shall have access to and right to examine any of the Contractor's directly pertinent records involving transactions related to this contract.

(2) The Contractor shall make available at its offices at all reasonable times the records, materials, and other evidence for examination, audit, or reproduction, until 3 years after final payment under this contract or for any shorter period specified in FAR subpart 4.7, Contractor Records Retention, of the other clauses of this contract. If this contract is completely or partially terminated, the records relating to the work terminated shall be made available for 3 years after any resulting final termination settlement. Records relating to appeals under the disputes clause or to litigation or the settlement of claims arising under or relating to this contract shall be made available until such appeals, litigation, or claims are finally resolved.

(3) As used in this clause, records include books, documents, accounting procedures and practices, and other data, regardless of type and regardless of form. This does not require the Contractor to create or maintain any record that the Contractor does not maintain in the ordinary course of business or pursuant to a provision of law.

(e)(1) Notwithstanding the requirements of the clauses in paragraphs (a), (b), (c), and (d) of this clause, the Contractor is not required to flow down any FAR clause, other than those in this paragraph (e)(1) in a subcontract for commercial items. Unless otherwise indicated below, the extent of the flow down shall be as required by the clause—

(i) 52.203-13, Contractor Code of Business Ethics and Conduct (Oct 2015) (41 U.S.C. 3509).

(ii) 52.203-19, Prohibition on Requiring Certain Internal Confidentiality Agreements or Statements (Jan 2017) (section 743 of Division E, Title VII, of the Consolidated and Further Continuing Appropriations Act, 2015 (Pub. L. 113-235) and its successor provisions in subsequent appropriations acts (and as extended in continuing resolutions)).

(iii) 52.204-23, Prohibition on Contracting for Hardware, Software, and Services Developed or Provided by Kaspersky Lab and Other Covered Entities (JUL 2018) (Section 1634 of Pub. L. 115-91).

(iv) 52.219-8, Utilization of Small Business Concerns (Oct 2018) (15 U.S.C. 637(d)(2) and (3)), in all subcontracts that offer further subcontracting opportunities. If the subcontract (except subcontracts to small business concerns) exceeds $700,000 ($1.5 million for construction of any public facility), the subcontractor must include 52.219-8 in lower tier subcontracts that offer subcontracting opportunities.

(v) 52.222-17, Nondisplacement of Qualified Workers (May 2014) (E.O. 13495). Flow down required in accordance with paragraph (l) of FAR clause 52.222-17.

(vi) 52.222-21, Prohibition of Segregated Facilities (Apr 2015)

**Contract No.**

(vii) 52.222-26, Equal Opportunity (Sept 2016) (E.O. 11246).

(viii) 52.222-35, Equal Opportunity for Veterans (Oct 2015) (38 U.S.C. 4212).

(ix) 52.222-36, Equal Opportunity for Workers with Disabilities (Jul 2014) (29 U.S.C. 793).

(x) 52.222-37, Employment Reports on Veterans (Feb 2016) (38 U.S.C. 4212)

(xi) 52.222-40, Notification of Employee Rights Under the National Labor Relations Act (Dec 2010) (E.O. 13496). Flow down required in accordance with paragraph (f) of FAR clause 52.222-40.

(xii) 52.222-41, Service Contract Labor Standards (Aug 2018) (41 U.S.C. chapter 67).

(xiii) 52.222-50, Combating Trafficking in Persons (Mar 2015) (22 U.S.C. chapter 78 and E.O 13627). Alternate I (Mar 2015) of 52.222-50 (22 U.S.C. chapter 78 and E.O 13627).

(xiv) 52.222-51, Exemption from Application of the Service Contract Labor Standards to Contracts for Maintenance, Calibration, or Repair of Certain Equipment-Requirements (May 2014) (41 U.S.C. chapter 67).

(xv) 52.222-53, Exemption from Application of the Service Contract Labor Standards to Contracts for Certain Services-Requirements (May 2014) (41 U.S.C. chapter 67).

(xvi) 52.222-54, Employment Eligibility Verification (OCT 2015) (E.O. 12989).

(xvii) 52.222-55, Minimum Wages Under Executive Order 13658 (Dec 2015).

(xviii) 52.222-62, Paid Sick Leave Under Executive Order 13706 (JAN 2017) (E.O. 13706).

(xix)(A) 52.224-3, Privacy Training (JAN 2017) (5 U.S.C. 552a).

(B) Alternate I (JAN 2017) of 52.224-3.

(xx) 52.225-26, Contractors Performing Private Security Functions Outside the United States (Oct 2016) (Section 862, as amended, of the National Defense Authorization Act for Fiscal Year 2008; 10 U.S.C. 2302 Note).

(xxi) 52.226-6, Promoting Excess Food Donation to Nonprofit Organizations (May 2014) (42 U.S.C. 1792). Flow down required in accordance with paragraph (e) of FAR clause 52.226-6.

(xxii) 52.247-64, Preference for Privately Owned U.S.-Flag Commercial Vessels (Feb 2006) (46 U.S.C. Appx. 1241(b) and 10 U.S.C. 2631). Flow down required in accordance with paragraph (d) of FAR clause 52.247-64.

(2) While not required, the Contractor may include in its subcontracts for commercial items a minimal number of additional clauses necessary to satisfy its contractual obligations.

(End of clause)

**C.2     The following FAR Clause is incorporated by reference:**

| FAR SOURCE | TITLE AND DATE |
|---|---|
| 52.212-4 | Contract Terms and Conditions—Commercial Items (Oct 2018) |
| 52.252-1 | Solicitation Provisions Incorporated by Reference (Feb 1998) |
| 52.204-13 | System for Award Management Maintenance (Oct 2018) |
| 52.204-18 | Commercial and Government Entity Code Maintenance (Jul 2016) |
| 52.232-39 | Unenforceability of Unauthorized Obligations (Jun 2013) |

**C.3  Special Clauses**

**C.3.1. Shelf Life**

Vaccine provided under this contract shall have a minimum 12 month shelf life remaining upon delivery to the consignee, or as specified within each Contract Line Item Number (See Section B, Continuation of SF 1449).

**C.3.2. Packaging and Packing Requirements**

1. Packaging:

Appx8193

**Contract No.**

All items shall be packaged in standard commercial manner.

2. Packing:
   a. Product shall be packed to ensure maintenance of FDA recommended temperature during transit and safe arrival at destination. An electronic temperature monitoring device is required with each shipment unless Contractor has obtained prior approval from CDC to use an alternative monitoring method.
   b. Contractor will provide the Contracting Officer Representative (COR) with documentation that explains the cause of each temperature excursion and stability data used by the contractor to determine if the cold chain was adversely affected by temperature variance.  Upon review of data provided, CDC will notify appropriate parties if the vaccine is accepted or rejected.

**C.3.3. Contract Period of Performance**

The contract period of performance shall be from April 1, 2019 – March 31, 2020.

**C.3.4. Time of Delivery**

Delivery is required to be made at destination within 15 working days after receipt of electronic, written, or telephonic order (telephone orders to be confirmed in writing).

**C.3.5. Place of Delivery**

The Contractor shall be required to deliver vaccines F.O.B. Destination, as directed by delivery orders to the CDC centralized distribution locations currently in Aurora, CO and Memphis, TN.

The Contractor shall be required to deliver frozen vaccines F.O.B. destination as directed by delivery orders.

**C.3.6. Amendment to OBRA Statute**

In the event of an amendment of 42 U.S.C. Section 1396(s), any terms of the contract affected by such an amendment will be modified in accordance with the revised statute.  The Contracting Officer and the Contractor shall meet to discuss such modifications to the contract before finalization of any changes to the contract.

**C.3.7. Product Licensure**

   a. The vaccines produced and delivered under this contract shall be manufactured under a current establishment and product license issued by the Food and Drug Administration as indicated below:

   _____

   b. The Current Good Manufacturing Practice Regulations (CGMPR's) (21CFR Parts 210, 211) will be the standard to be applied for manufacturing, processing and packing of drugs, chemicals, biologicals, and reagents.

   c. The Contractor shall advise the Contracting Officer immediately of any relocation of his prime manufacturing facility or the relocation of any subcontractor's facility, and if at any time during the life of the contract, the item listed under this contract fails to meet CGMPR's and/or a negative Food and Drug Administration Quality Assurance Evaluation is received; the contract may be terminated, in whole or in part, without further liability to the Government.

**C.3.8. Placement of Orders**

   a. Vaccine under this contract will be ordered by delivery orders in the Vaccine Tracking System (VTrckS). Orders shall be placed by Health and Human Services (HHS), the Centers for Disease Control and Prevention (CDC) on behalf of eligible awardees, or by the awardees.  The CDC will provide the contractor with a list of awardees. Each awardee will be identified with a unique identification number in the vaccine ordering system. Orders shall be placed by electronic transfer. In the event of  an emergency (i.e. temporary loss of the IT system) should an order be communicated outside of VTrckS via email or orally, an actual purchase order will be created in VTrckS and transmitted via electronic data interface as soon as possible,

Appx8194

**Contract No.**

thereafter. Contractors shall be able to interface with the CDC Electronic Vaccine Ordering System. If unable to interface at the time of award, the vendor shall complete interface implementation by the end of the period of performance of the contract. No orders will be placed by CDC until contractors are able to interface with the CDC Electronic Vaccine Ordering System.

b. Orders shall be submitted to the Ordering Address specified in Contract Clauses Paragraph **C.3.12**, Contractor's Ordering/Payment Address, and shall contain the following minimum information:

    1. Date of order;

    2. Contract number and order number;

    3. Item description, quantity and unit price;

    4. Delivery or performance date;

    5. Place of delivery or performance (including consignee);

    6. Packaging, packing and shipping instruction, if any;

    7. Accounting and appropriation data;

    8. Statement to indicate if partial deliveries are not acceptable; (lack of a statement shall be construed to mean partial deliveries are acceptable and payment shall be made as required elsewhere herein); and

    9. Any other pertinent data.

**C.3.9. Delivery Order Limitations**

a. Minimum Order Size: Individual delivery orders issued under this contract must meet the minimum order size as specified within each Contract Line Item Number (See Section B, Continuation of SF 1449). When the Government requires supplies covered by this contract in amounts less than stated above, the Government is not obligated to purchase, nor is the Contractor obligated to furnish those supplies under this contract.

b. Maximum Order: The maximum quantity specified within each Contract Line Item Number (See Section B, Continuation of SF1449) is the maximum number of doses that may be ordered during the contract period of performance. Contractors are advised that the maximum quantity represents their commitment to the CDC under their contract.

c. Delivery Orders shipments:

    1. Shipments shall be sent with all transaction information necessary to be compliant with applicable Drug Supply Chain Security Act requirements regarding Transaction Information (TI), Transaction History (TH), and Transaction Statement (TS). Initially paper documentation or portal access will be acceptable, but EDI messaging between contractors and CDC will transition to allow electronic transmission of information.

    2. The Government reserves the right to reject vaccine doses that exceed delivery order requirements. The Government shall notify the Contractor when excess doses have been delivered to distribution sites. The Contractor is responsible for contacting the distribution site to make arrangement for the return of the excess doses and will be responsible for shipping cost associated with their return.

    3. Bulk order shipments, when possible, shall consist of

Appx8195

Contract No.

      a. One NDC per skid;

      b. Full skid quantities with same lot number;

      c. Full case quantities (when total order size allows).

## C.3.10. FAR 52.216-18 Ordering (Oct 1995)

A.  Any supplies and services to be furnished under this contract shall be ordered by issuance of delivery orders or task orders by the individuals or activities designated in the Schedule.  Such orders may be issued from the effective date of the contract through the expiration date of the contract.

B.  All delivery orders or task orders are subject to the terms and conditions of this contract.  In the event of conflict between a delivery order or task order and this contract, the contract shall control.

C.  If mailed, a delivery order or task order is considered "issued" when the Government deposits the order in the mail.  Orders may be issued orally or by written telecommunications only if authorized in the Schedule.

## C.3.11. FAR 52.216-22 Indefinite Quantity (Oct 1995)

A.  This is an indefinite quantity contract for the supplies specified and effective for the period stated in the Schedule.  The quantities of supplies and services specified in the Schedule are estimates only and are not purchased by this contract.

B.   Delivery or performance shall be made only as authorized by orders issued in accordance with the Ordering clause.  The Contractor shall furnish to the Government, when and if ordered, the supplies specified in the Schedule up to and including the quantity designated in the Schedule as the "maximum."  The Government shall order at least the quantity of supplies designated in the Schedule as the "minimum."

C.  Except for any limitations on quantities in the Delivery Order Limitations clause or in the Schedule, there is no limit on the number of orders that may be issued.  The Government may issue orders requiring delivery to multiple destinations or performance at multiple locations.

D.  Any order issued during the effective period of this contract and not completed within that period shall be completed by the Contractor within the time specified in the order.  The contract shall govern the Contractor's and Government's rights and obligations with respect to that order to the same extent as if the order were completed during the contract's effective period; provided, that the Contractor shall not be required to make any deliveries under this contract after fifteen (15) working days beyond the expiration date of the contract.

## C.3.12. Contractor's Ordering/Payment Address

Submission of all orders for Contractor's vaccines and payment of invoices shall be addressed as referenced below:

| Ordering Address | Payment Address |
|---|---|
|  |  |
|  |  |
|  |  |

## C.3.13. Invoice Submission

1. Invoice submission under this contract will be made as follows:

Appx8196

**Contract No.**

    a. Federal Government: The Contractor shall submit invoices via Electronic Data Interchange (EDI).
b. Awardees: The Contractor shall submit one hard copy of its invoice(s) to the address specified on the delivery order.
c. In accordance with 5 CFR part 1315 (Prompt Payment), CDC's Office of Financial Resources is the designated billing office for the purpose of determining the payment due date under FAR 32.904.

    d. The Contractor agrees to include the following information on each invoice:

        1.  Contractor's name, invoice number and invoice date;

        2.  Contract number, or other authorization for delivery of property and/or services;

        3.  Description, cost or price, and quantity of property and/or services actually delivered or rendered;

        4.  Shipping and payment terms;

        5.  Other substantiating documentation or information as required by the contract;

        6.  Name where practicable, title, phone number, and complete mailing address of responsible official to whom payment is to be sent;

        7.  NDC and Lot number of vaccine vials/syringes shipped;

        8.  CDC accounting and appropriation data as described on the delivery order;

        9.  Electronic Funds Transfer (EFT) and Taxpayer Identification Number (TIN); and

       10. Purchase Order (PO) Number and PO Line Item Number.

## C.3.14. Method of Payment

    a. Federal Government:
        1.  The Government will use electronic funds transfer when making payment under this contract IAW FAR Clause 52.232-33, payment by Electronic Funds Transfer – System for Award Management (Oct 2018).
        2.  Payments for vaccine purchases will be tracked in the CDC vaccine ordering system.
        3.  The Government is not liable for payments related to orders submitted by states, cities, or territories.

    b.  Awardees: By check

## C.3.15. Contract Officer Representative (COR)

A COR will be designated in writing by the Contracting Officer to serve during the period of performance of the contract. The COR shall be responsible for guidance in regard to the technical aspect of the contract, provide a point for liaison between the Contractor and other Government agencies and be the general focal point to address technical and logistical problems relating to the performance under the contract. The COR shall not have the authority to make any commitments or authorize any changes which affect the contract price, terms and/or conditions; any such changes shall be referred to the Contracting Officer for action.

## C.3.16. Return Privileges

Return privileges for credit, reimbursement or exchange do not apply to this contract except vaccines not conforming to the specifications set forth herein.

## C.3.17. Restrictions on Use of Vaccines

**Appx8197**

Contract No.

Vaccines obtained under this contract shall be used only in children 18 years of age and younger as authorized under Section 1928 of the Social Security Act. Sale of such vaccine to any person or entity or reimbursement of vaccine costs is strictly prohibited. Free distribution of such vaccine is also prohibited, except where such vaccine is administered in the context of Federal and Awardee immunization program activities.

## C.3.18. Federal Excise Tax Credit

Negotiated prices for the vaccines included in this Contract may include a Federal Excise Tax (See Continuation of SF 1449 for applicable Contract Line Item Numbers). If for any reason the vaccine is returned (other than for resale) or destroyed, the Contractor shall within 6 months following the date the vaccine is returned or destroyed, file a claim for credit or refund relative to any tax previously paid on such vaccine. The Contractor agrees to credit or refund the amount of such excise tax to the purchaser to the extent that the Contractor receives a credit or refund from the Federal Government. Any such credit or refund to the purchaser is expressly conditioned upon the authorized purchaser providing a written summary of events leading to the request for credit or refund. The purchaser shall return all undistributed vaccine to the Contractor for proper disposal, unless destruction of the vaccine renders return impossible. If destruction of the vaccine renders return impossible and is therefore destroyed by the purchaser, the authorized purchaser must provide a written summary of events to the Contractor within 30 days of said destruction. If a contract is in place with the Contractor at the time when a credit or refund is due; the purchaser may elect to receive vaccine which will be purchased at the current contract price in lieu of a cash payment. Otherwise, the Contractor shall refund the amount due to the purchaser's account. If a credit or refund is issued by the Contractor for state or local funds, it shall be submitted to the state or local public health entity identified in the request for FET credit. For all Federal Excise Tax refund and other checks sent to the government, each shall reference the Purchase Order number(s) and line item(s) of origin. Whenever a check is sent to CDC in response to a return PO, the following documentation shall be included with the check and sent to the COR. This documentation shall include a mapping between the check number and the return PO numbers and associated PO line item numbers that are covered by the check. If a credit or refund is issued by the Contractor to the Federal Funds account, it shall contain the Contractor's DUNS and TIN/EIN and shall be submitted either via EDI (for credit) or to the following address (for check):

Centers for Disease Control and Prevention
Office of Financial Resources **(OFR)**
Attn: Debt Management Branch (Martha Seay)
P.O. Box 15580
Atlanta, GA 30333

## C.3.19. Delinquent Delivery Reports

The Contractor shall provide CDC with a weekly electronic listing of all CDC orders that have not been shipped within the agreed upon delivery schedule. The report shall include the following information: order number, date of order, and status of order in number of pending/undelivered doses. The report shall also provide an explanation as to the cause for the delinquent delivery as well as when the vaccine will be delivered. This notification shall not relieve the contractor from meeting its obligations under the contract and shall not limit the Government's right to seek relief for any breach of contract for failure to perform, including termination for cause.

## C.3.20. Biological Surveillance Data Reports

A. The Contractor shall submit a monthly report of historical sales data for the United States by month and state specifying the name of the vaccine, NDC #, and the total number of doses sold (segregated by CDC and non-CDC sales), in a standardized format acceptable to the Contractor and the CDC. The report shall be submitted electronically to the COR by the 15th of the month. Information related to vaccine sales through CDC contracts is not considered proprietary. CDC acknowledges that those reports pertaining to private sales unrelated to this contract are confidential and proprietary information of the Contractor, and shall not use reports for any purpose other than CDC's internal tracking and reporting purposes and shall not further disclose such reports without the Contractor's prior written consent unless required by the law or other Federal authority; provided that, no Contractor authorization shall be required for the CDC to include the data from the Contractor's report in a report in which aggregated data from multiple

**Appx8198**

Contract No.

Contractors is summarized, so long as, with respect to multi-sourced products, the CDC's aggregated report does not include any data which could be individually identified as the Contractor's. In the event that CDC is required by law or other Federal authority to disclose such reports required to be held confidential hereunder, CDC shall notify the Contractor prior to making such disclosure in accordance with law or other Federal authority.

B. Data Reports to Manufacturers
The Government will submit monthly reports of all vaccine data specifying doses by project, zip code, and NDC # in a standardized format. For all vaccines except direct ship vaccines, the Government shall provide distribution data. Because the Government does not distribute direct ship vaccines, purchase data will be provided. The reports shall be submitted electronically to the Contractor by the 15th of the month for the previous month. The Government shall also provide the Contractor with an annual Vaccine Tracking System (VTrckS) spend plan for each Awardee and an annual providers list during the first quarter of the fiscal year.

## C.3.21. Prohibitions on Inducements

The Contractor is expressly prohibited from offering, providing or arranging inducements of any kind to providers or authorized purchasers ordering vaccine under this contract for the purpose of obtaining orders for vaccine. Examples of such inducements include, but are not limited to: entertainment, meals, and free or reduced prices for syringes, vaccines, or other medical products or supplies. If the Contractor has entered into similar agreements with the authorized purchasers which offer inducements relative to its commercial business, these agreements must be clear that they do not apply to purchases made under the CDC Federal contracts.

## C.3.22. Contract Changes

Notwithstanding FAR Clause 52.212-4(c), Changes, the parties hereby agree that modifications for funding and other administrative changes (e.g., changes to CDC accounting data) that do not affect the terms and conditions of the contract may be made unilaterally by the CDC.

## C.3.23. Vaccine Images

Upon contract award, the Contractor agrees to provide via email camera-ready vaccine product images in .pdf format and written authorization for CDC to use the images to the COR. CDC will use the images to illustrate the Contractor's products on the CDC vaccine ordering system. The Contractor agrees to provide CDC with updated product images if there is a change in packaging and vaccine images for new NDCs added to the contract during the period of performance.

For each vaccine furnished under this contract, complete the information in the template below. If there is more than one component/NDC within the unit of use, list each NDC separately along with component name.

| Unit of Sale (Box/Carton) | | | Unit of Use (Vial/Syringe) |
|---|---|---|---|
| NDC (5-4-2 format) | Brand Name/Trade Name | Description/Presentation | NDC (5-4-2 format) |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

## C.3.24. Advance Notice of Supply Issues

The Contractor agrees to provide advance notification to COR and the CDC Contracting Officer of any supply issue which may result in the Contractor's failure to deliver vaccine within the agreed upon delivery schedule specified in

Appx8199

Contract No.

the contract.  This notification shall be given as soon as the Contractor becomes aware of the scope of the problem that may impede the timely delivery of vaccine.  This notification shall not relieve the Contractor from meeting its obligations under the contract and shall not limit the Government's right to seek relief for any breach of contract for failure to perform, including termination for cause.  Furthermore, any deviation from the delivery schedule due to a vaccine supply issue will demonstrate reasonably equal treatment with respect to the fulfillment of orders between CDC and the non-government customers.

## C.3.25. Authorized Distributor of Record (ADR) Agreements

In accordance with the Prescription Drug Marketing Act (PDMA) of 1998, it is requested that all suppliers provide a written statement included as an attachment in Section D of this solicitation, which designates the CDC as the ADR for all vaccines subject to distribution under this contract.

## C.3.26. Use of VFC Provider Lists and Distribution of Material

a.  Contractors are prohibited from utilizing VFC providers lists obtained from any source for any mailing or other communication with VFC providers, except as approved in writing by the CDC COR. In addition, contractors are prohibited from otherwise communicating with VFC providers regarding the VFC program, except as approved in writing by the CDC COR.  To the extent that Contractors have established relationships with VFC providers or authorized purchasers under this contract that are independent from the VFC program, communications related to such independent relationships are not covered by this provision and do not require CDC consent.

b.  Contractors are prohibited from providing names and/or addresses of VFC providers to any third party, except as needed to comply with the terms of this contract, in which cases the CDC COR shall be notified in writing.

c.  Any Contractor that ships vaccine directly to VFC providers is prohibited from inserting any promotional or other material that is promotional in nature for any product that the Contractor produces, into shipping containers for vaccine purchased under this contract, except for material related to use of the vaccine as approved in writing by the CDC COR.  Additionally any shipping container inserts that are required, such as handling instructions or educational materials, should not contain any promotional material as part of its content.

## C.3.27.  New FDA Product License

Manufacturers who receive a new FDA product license for a vaccine already included with the scope of a VFC resolution may have the new product added to its contract by modification if it is determined that adding the product is in the best interest of the Government.  Such new products must be consistent with VFC formulary schedules (regarding periodicity and dosage regimens) as established for the vaccines by the Advisory Committee on Immunization Practices (ACIP).  New FDA licensed products added to this contract must comply with Clause C.29, Price Changes, below.

## C.3.28. ACIP Approved Product

When a new vaccine product is approved by the ACIP for inclusion in the VFC Formulary, the Manufacturer of such product may have the new product added to its contract by modification if it is determined that adding the product is in the best interest of the Government.  This would include new vaccines, new indications or new formulations for existing products or new dosing regimens for an existing product.  New ACIP Approved Products added to this contract must comply with Clause C.3.29., *Price Changes*, below.

## C.3.29. Price Changes

All price change effective dates shall be approved by the CDC Contracting Officer and shall occur on the first day of the following month in VTrckS.

## C.4. Evaluation of Contractor Performance Utilizing CPARS (April 2015)

**Appx8200**

**Contract No.**

In accordance with FAR 42.15, the Centers for Disease Control and Prevention (CDC) will review and evaluate contract performance. FAR 42.1502 and 42.1503 requires agencies to prepare evaluations of contractor performance and submit them to the Past Performance Information Retrieval System (PPIRS). The CDC utilizes the Department of Defense (DOD) web-based Contractor Performance Assessment Reporting System (CPARS) to prepare and report these contractor performance evaluations. All information contained in these assessments may be used by the Government, within the limitations of FAR 42.15, for future source selections in accordance with FAR 15.304 where past performance is an evaluation factor.

The CPARS system requires a contractor representative to be assigned so that the contractor has appropriate input into the performance evaluation process. The CPARS contractor representative will be given access to CPARS and will be given the opportunity to concur or not-concur with performance evaluations before the evaluations are complete. The CPARS contractor representative will also have the opportunity to add comments to performance evaluations.

The assessment is not subject to the Disputes clause of the contract, nor is it subject to appeal beyond the review and comment procedures described in the guides on the CPARS website. Refer to: www.cpars.gov for details and additional information related to CPARS, CPARS user access, how contract performance assessments are conducted, and how Contractors participate. Access and training for all persons responsible for the preparation and review of performance assessments is also available at the CPARS website.

The contractor must provide the CDC contracting office with the name, e-mail address, and phone number of their designated CPARS representative who will be responsible for logging into CPARS and reviewing and commenting on performance evaluations. The contractor must maintain a current representative to serve as the contractor representative in CPARS. It is the contractor's responsibility to notify the CDC contracting office, in writing (letter or email), when their CPARS representative information needs to be changed or updated. Failure to maintain current CPARS contractor representative information will result in the loss of an opportunity to review and comment on performance evaluations.

(End of Clause)

## C.5. FAR 52.232-40   Providing Accelerated Payments to Small Business Subcontractors (Dec 2013)

(a) Upon receipt of accelerated payments from the Government, the Contractor shall make accelerated payments to its small business subcontractors under this contract, to the maximum extent practicable and prior to when such payment is otherwise required under the applicable contract or subcontract, after receipt of a proper invoice and all other required documentation from the small business subcontractor.

(b) The acceleration of payments under this clause does not provide any new rights under the Prompt Payment Act.

(c) Include the substance of this clause, including this paragraph (c), in all subcontracts with small business concerns, including subcontracts with small business concerns for the acquisition of commercial items.

(End of clause)

## C.6   HHSAR 352.203-70 Anti-Lobbying (December 18, 2015)

Pursuant to the HHS annual appropriations acts, except for normal and recognized executive-legislative relationships, the Contractor shall not use any HHS contract funds for:

(a) Publicity or propaganda purposes;

(b) The preparation, distribution, or use of any kit, pamphlet, booklet, publication, electronic communication, radio, television, or video presentation designed to support or defeat the enactment of legislation before the Congress or any State or local legislature or legislative body, except in presentation to the Congress or any state or local legislature itself; or designed to support or defeat any proposed or pending regulation, administrative action, or order

Appx8201

**Contract No.**

issued by the executive branch of any state or local government, except in presentation to the executive branch of any state or local government itself; or

(c) Payment of salary or expenses of the Contractor, or any agent acting for the Contractor, related to any activity designed to influence the enactment of legislation, appropriations, regulation, administrative action, or Executive order proposed or pending before the Congress or any state government, state legislature or local legislature or legislative body, other than for normal and recognized executive-legislative relationships or participation by an agency or officer of a state, local, or tribal government in policymaking and administrative processes within the executive branch of that government.

(d) The prohibitions in subsections (a), (b), and (c) above shall include any activity to advocate or promote any proposed, pending, or future federal, state, or local tax increase, or any proposed, pending, or future requirement for, or restriction on, any legal consumer product, including its sale or marketing, including, but not limited to, the advocacy or promotion of gun control.

<div align="center">(End of clause)</div>

Contract No.

# SECTION D - CONTRACT DOCUMENTS, EXHIBITS OR ATTACHMENTS

**D.1**    **Websites.** Additional information can be found at www.fbo.gov, www.cdc.gov/vaccines; and http://csrc.nist.gov/publications/nistpubs/

**D.2**    **Attachment A -    Authorized Distributor of Record (ADR) Agreement:**  Offerors shall complete and return the following agreement with their proposals.

**Appx8203**

**Contract No.**

**Attachment A-1:  Authorized Distributor of Record (ADR) Agreement**

*AUTHORIZED DISTRIBUTOR OF RECORD (ADR) AGREEMENT*

This Agreement hereby represents the ongoing relationship between the supplier named below ("MANUFACTURER / SUPPLIER") and the Centers for Disease Control and Prevention, herein after referred to as CDC, to establish and designate CDC as an Authorized Distributor of Record (ADR) as set forth in the Prescription Drug Marketing Act (PDMA) of 1988 as well as in the implementing federal regulations found at 21 CFR Part 203. CDC hereafter agrees to comply with all applicable state and federal laws to ensure continued status of this relationship. To further meet the requirements of the PDMA, please forward with the signed agreement an attachment with a list of the specific products that CDC is authorized to distribute or a statement that the CDC is an ADR for the manufacturer's entire product line. Specific products should be identified by the pharmaceutical / vaccine name, dosage form, and strength of the drug and the NDC number.

Check the box that applies:

＿ The Distributor is the ADR for Supplier's entire product line.

＿ The Distributor is the ADR for the products listed on the attachment 2-A.

This agreement shall be valid from the date of dual execution until termination by either party on ninety (90) days written notice. This agreement shall not abridge, supplant, modify, or in any way alter any other pre-existing distribution agreement or any future agreements that may, from time to time, be executed in the furtherance of the business relationship between Manufacturer/ Supplier and the CDC.
This agreement confers no rights upon CDC other than to designate CDC as an Authorized Distributor of Record for Manufacturer / Supplier. This agreement is not intended to be, nor shall it be, interpreted as a sales agreement or any other type of agreement other than to represent an  "ongoing relationship" within the meaning set forth in 21 CFR Part 203.3(u).

*By affixing my signature below, I do hereby acknowledge and represent that I have read this Agreement in its entirety, that I understand its terms, that I am duly authorized to bind my organization to the requirements detailed in the above Agreement and that I agree to ensure that my organization will adhere to such requirement for the duration herein stated.*

Authorized Distributor of Record: **Centers for Disease Control and Prevention (CDC)**

Authorized Signature:_____

Print Name:  _____, U.S. Government Contracting Officer

Date: _____

--------------------------------------------------------------------------------------------------------------

Manufacturer / Supplier: _____

Authorized Signature: _____

Print Name: _____

Date: _____

Appx8204

**Contract No.**

*AUTHORIZED DISTRIBUTOR OF RECORD (ADR) AGREEMENT*
Attachment 2-A

## LIST OF PRODUCTS

| Item No. | Product/Brand Name | NDC |
|----------|--------------------|-----|
| 1. | Vaccine | xxxxx-xxxx-xx |
| 2. | Vaccine | xxxxx-xxxx-xx |
| 3. | Vaccine | xxxxx-xxxx-xx |

Appx8205

Contract No.

# SECTION E - SOLICITATION PROVISIONS

**E.1     The following provisions are added by reference:**

| FAR SOURCE | TITLE AND DATE |
|---|---|
| 52.212-1 | Instructions to Offerors - Commercial Items (Oct 2018) |
| 52.212-3 | Offeror Representations and Certifications - Commercial Items (Oct 2018) |
| 52.204-7 | System for Award Management (Oct 2018) |
| 52.204-16 | Commercial and Government Entity Code Reporting (Jul 2016) |
| 52.204-17 | Ownership or Control of Offeror (Jul 2016) |
| 52.209-7 | Information Regarding Responsibility Matters (Oct 2018) |
| 52.225-25 | Prohibition on Contracting with Entities Engaging in Certain Activities or Transactions Relating to Iran – Representation and Certifications (Aug 2018) |

**E.2     Paragraph ( c) of 52.212-1, Period for acceptance of offers, is deleted in its entirety and the following is substituted therefore:**

( c)  Period for acceptance of offers.  The offeror agrees to hold the prices in its offer firm for 60 calendar days from the date specified for receipt of offers, unless another time period is specified in an addendum to the solicitation.

**E.3     FAR  52.233-2  Service of Protest (Sep 2006)**

Protests, as defined in section 33.101 of the Federal Acquisition Regulation, that are filed directly with an agency, and copies of any protests that are filed with the Government Accountability Office (GAO), shall be served on the Contracting Officer (addressed as follows) by obtaining written and dated acknowledgment of receipt from:

<div align="center">

Centers for Disease Control & Prevention
Attn: Pellumbeshe Hoxhaj
MS: K-14
2920 Brandywine Road
Atlanta, GA 30341-5539

</div>

The copy of any protest shall be received in the office designated above within one day of filing a protest with the GAO.

(End of Provision)

**E.4     INSTRUCTIONS FOR SUBMISSION OF  OFFERS:**

a.  Offerors shall submit their offers on the basis of Firm-Fixed Price by **5:00 PM EST on January 21, 2019.**

b.  Offers shall be submitted electronically (via e-mail) in MS Word or MS Excel files **to wpn6@cdc.gov**. The following format is required as e-mail subject:  The RFP No: 75D301-19-R-67848.KT.doc or .xls (Where "75D301-19-R-67848" is the respective RFP No. and "KT" are the first two letters of the respective Contractor's name; and ".doc" and ".xls" are the format extensions.)

c.  In the event there are electronic transmission problems, the following steps shall be taken:

   i.   CDC receives the electronic file timely, but cannot access it.  The offeror will be contacted and may be allowed to fax in the portions that cannot be accessed.

   ii.   Facsimile quotes are not authorized. Technical inquiries shall be e-mailed to **wpn6@cdc.gov.** Telephone inquiries will not be honored.

   iii.   Contractor sends electronic file, but receives error message indicating e-mail problems at CDC. Fax in a cover sheet indicating transmission difficulties, and the Contract Specialist will contact

Appx8206

Contract No.

      the Contractor to arrange an alternate method of submission. Offerors are requested not to fax entire proposals to PGO. Facsimile submission shall only be used after contacting the Contract Specialist.

e. Contractors are responsible for providing accurate and complete information for evaluation. (Failure to do so may rule the quote unacceptable.) Thus, the proposal shall include the following information for evaluation:

    i. The Technical Proposal: Shall provide documentation that clearly demonstrates their ability to:

        1. meet the provisions of the Federal Excise Tax Credit contract clause;
        2. provide vaccine maximum quantities specified within each Contract Line Item Number; and
        3. meet the vaccine Shelf Life provision.
        4. produce and deliver vaccines under a current establishment and product license issued by the U.S. Food and Drug Administration.

    ii. Past Performance: Past performance is one indicator of the offeror's ability to perform the contract successfully. The government will evaluate different customers' opinions about how well (quality) the offeror has satisfied their requirements. Offerors shall provide, as part of their proposal, a list of clients or former clients for whom they have performed the same or similar work to the one required by this solicitation during the past five years.

f. Electronic Data Interchanges (EDI): Based on CDC experience with its Vaccine Order Management System (VTrckS), including the transition of a number of manufacturer vendors to EDI communications with VTrckS, the estimated level of effort needed by the manufacturer/distributor to implement all six messages required for communications with VTrckS ranges from 1000-2000 hours. This estimate covers all steps, including requirement analysis, design, mapping, development, unit/integration testing and deployment. Factors that are likely to impact the actual number of hours include available resources, technical solution chosen, existing vendor infrastructure, and complexity of existing vendor infrastructure. Note that the government will not reimburse contractors for any expenses associated with the EDI implementation.

## E.5  Inquiries

Inquiries concerning the solicitation document shall be submitted in writing to the issuing office. Any additions, deletions, or changes to the solicitation will be made by an amendment. OFFERORS ARE INSTRUCTED SPECIFICALLY TO CONTACT ONLY THE SOLICITATION CONTRACTING OFFICE IN CONNECTION WITH ANY ASPECT OF THIS REQUIREMENT PRIOR TO CONTRACT AWARD. PROPOSALS AND ALL CORRESPONDENCE RELATING TO THE SOLICITATION DOCUMENT SHALL BE SUBMITTED TO THE CONTRACTING OFFICE. Inquiries shall be received at the Contracting Office no later than **January 14, 2019 at 5:00 PM EST** via e-mail to: wpn6@cdc.gov.

## E.6  Subcontracting Plan

The offeror, prior to being awarded a contract, shall submit an acceptable subcontracting plan (see FAR 52.219-9) or demonstrate that no subcontracting opportunities exist. (Note: This requirement does not apply to small business concerns or to offers which do not exceed $750,000.00 ($1,500,000.00 for construction) or to offers from non-domestic concerns.)

    CDC Small Business Goals for 2019 are:

| Business Type | CDC's 2019 Goals |
|---|---|
| Small Business | 10% |
| Small Disadvantaged Business | 5% |
| HUBZONE | 3% |
| Women-Owned Small Business | 5% |
| Service-Disabled Veteran-Owned Small Business | 3% |

Appx8207

**Contract No.**

| Subcontracting (SDVOSB) | |
|---|---|
| **Total** | **26%** |

## E. 7   FAR 52.212-3 Offeror Representations and Certifications (Oct 2018)

An offeror shall complete only paragraph (b) of this provision if the offeror has completed the annual representations and certifications electronically at http://orca.bpn.gov.

(End of Provision)

## E. 8  52.212-2 Evaluation - Commercial Items (Oct 2014)

(a) The Government will award a contract resulting from this solicitation to the responsible offeror whose offer conforming to the solicitation will be most advantageous to the Government, price and other factors considered. The following factors shall be used to evaluate offers:

(i)   technical capability of the item offered to meet the Government requirement;
(ii)  price;
(iii) past performance (see FAR 15.304)

Technical and past performance, when combined, are equal in importance to price.
(b) A written notice of award or acceptance of an offer, mailed or otherwise furnished to the successful offeror within the time for acceptance specified in the offer, shall result in a binding contract without further action by either party. Before the offer's specified expiration time, the Government may accept an offer (or part of an offer), whether or not there are negotiations after its receipt, unless a written notice of withdrawal is received before award.

Technical and past performance, when combined, is equal in importance to price.

(d)   Past performance will be evaluated for only those offerors remaining in the **competitive range** as follows:

1. Each offeror shall be evaluated on its past performance under current and prior contracts.  By past performance, the Government means the offeror's record of conforming to specifications and to standards of good workmanship; the contractor's record of forecasting and controlling costs; the offeror's adherence to contract schedules and terms, including the administrative aspects of performance; the offeror's reputation for reasonable and cooperative behavior and commitment to customer satisfaction; and generally, the offeror's business-like concern for the interest of the customer and the degree of quality of deliverables and performance.

2. Past performance will not be scored, but the Government's conclusions about overall quality of the offeror's past performance will be highly influential in determining the relative merits of the offeror's proposal and in selecting the offeror whose proposal is considered the most advantageous/best value to the Government.

3. Evaluation of past performance will be a subjective assessment based on a consideration of all relevant facts and circumstances.  It will not be based on absolute standards of acceptable performance.

4. The assessment of the offerors past performance will be used as a means of evaluating the relative capability of the offeror and the other competitors. Thus, an offeror with an exceptional record of relevant past performance may receive a more favorable evaluation than another whose record is acceptable and/or less relevant, even though both may have acceptable technical and business proposals.

5. An offeror without a record of past performance or for whom information on past performance is not available will not be evaluated favorably or unfavorably.

**Appx8208**

Contract No.

    6. Evaluation of past performance information will be reflected in terms of the following degrees of performance assessment:

    **Excellent:**  A significant majority of the sources of information are consistently firm in stating that the offeror's performance was superior and that they would unhesitatingly do business with the offeror again. Complaints are negligible or unfounded.  The offeror has no record of criminal conduct, civil fraud, or negligence, or the record is old and the offeror has demonstrated by more recent performance that corrective action has made the likelihood of such conduct in the future highly improbably.  No doubt exists that the offeror will successfully perform the Government's requirements as stated in the RFP.

    **Good:**  Most sources of information state that the offeror's performance was good, better than average, etc., and that they would willingly do business with the offeror again.  Complaints, though perhaps well-founded, are few and relatively minor.  The offeror has no record of criminal conduct, civil fraud, or negligence, or the record is old and the offeror has demonstrated by more recent performance that corrective action has made the likelihood of such conduct in the future highly improbable.  Little doubt exists that the offeror will successfully perform the Government's requirements as stated in the RFP.

    **Neutral:**  Either no past performance history exists for the corporation, predecessor companies, key personnel, or major/critical subcontractors, or the offeror's record of past performance was neither predominantly favorable nor unfavorable.  In the latter case, sources of information are roughly divided over the quality of the offeror's performance.  While some state that they would do business with the offeror again, others are doubtful or would not.  Complaints are balanced by reports of good work.  The offeror has no record of criminal conduct, civil fraud, or negligence, or the record is old.

    **Marginal:**  Many sources of information made unfavorable reports about the offeror's performance and either express serious doubts about doing business with the offeror again or state that they would refuse to do so.  However, there are some favorable reports, and some sources of information indicate that they would do business with the offeror again.  There are many significant, serious, and well-founded complaints, but there are some reports of very good performance.  The offeror may have been indicted, pled guilty, or may have been found guilty in matters of criminal conduct, but the issues are either unresolved, relatively minor, or do not reflect a company-wide or managerial pattern of wrongdoing.  The offeror may have lost civil suits for fraud or negligence, but there is no company-wide or managerial pattern of fraudulent, negligent, or criminal conduct.  Some doubt exists that the offeror will successfully perform the Government's requirements as stated in the RFP.

    **Poor:**  A significant majority of sources of information are consistently firm in stating that the offeror's performance was entirely unsatisfactory and that they would not do business with the offeror again under any circumstances.  Customer complaints are substantial or numerous and are well-founded.  Or, although not debarred or suspended, the offeror is under indictment or has been convicted of criminal conduct, or has been found civilly liable for fraud or negligence.  The offeror either has presented no persuasive evidence of having taken appropriate corrective action that will guard against such conduct in the foreseeable future, or it appears unlikely that the corrective action will be effective.  Serious doubt exists that the offeror will successfully perform the Government requirements as stated in the RFP.

    (End of Provision)

## E. 9  CDC 42-0002   Evaluation of Contractor Performance Utilizing CPARS (APR 2015)

In accordance with FAR 42.15, the Centers for Disease Control and Prevention (CDC) will review and evaluate contract performance.  FAR 42.1502 and 42.1503 requires agencies to prepare evaluations of contractor performance and submit them to the Past Performance Information Retrieval System (PPIRS).  The CDC utilizes the Department of Defense (DOD) web-based Contractor Performance Assessment Reporting System (CPARS) to prepare and report these contractor performance evaluations.  All information contained in these assessments may be used by the Government, within the limitations of FAR 42.15, for future source selections in accordance with FAR 15.304 where past performance is an evaluation factor.

**Contract No.**

The CPARS system requires a contractor representative to be assigned so that the contractor has appropriate input into the performance evaluation process.  The CPARS contractor representative will be given access to CPARS and will be given the opportunity to concur or not-concur with performance evaluations before the evaluations are complete.  The CPARS contractor representative will also have the opportunity to add comments to performance evaluations.

The assessment is not subject to the Disputes clause of the contract, nor is it subject to appeal beyond the review and comment procedures described in the guides on the CPARS website.  Refer to: www.cpars.gov for details and additional information related to CPARS, CPARS user access, how contract performance assessments are conducted, and how Contractors participate.  Access and training for all persons responsible for the preparation and review of performance assessments is also available at the CPARS website.

The contractor must provide the CDC contracting office with the name, e-mail address, and phone number of their designated CPARS representative who will be responsible for logging into CPARS and reviewing and commenting on performance evaluations.  The contractor must maintain a current representative to serve as the contractor representative in CPARS.  It is the contractor's responsibility to notify the CDC contracting office, in writing (letter or email), when their CPARS representative information needs to be changed or updated.  Failure to maintain current CPARS contractor representative information will result in the loss of an opportunity to review and comment on performance evaluations.

[End of Clause]

**Appx8210**

**Contract No.**

Appx8211

10/25/2019
Declaration of G. Reilly
EXHIBIT 279



CONFIDENTIAL

GSK-MMR-0030570

**Appx8213**



CONFIDENTIAL

GSK-MMR-0030571

**Appx8214**



CONFIDENTIAL

GSK-MMR-0030572

**Appx8215**

10/25/2019
Declaration of G. Reilly
EXHIBIT 280

Appx8216



U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES

Public Health Service

Centers for Disease Control
and Prevention (CDC)
Atlanta GA 30329-4027

# CHARTER
of the
## ADVISORY COMMITTEE ON IMMUNIZATION PRACTICES

### Authority

The Advisory Committee on Immunization Practices was established under Section 222 of the Public Health Service Act (42 U.S.C. §217a), as amended.  The committee is governed by the provisions of the Federal Advisory Committee Act, as amended, 5 U.S.C. App., which sets forth standards for the formation and use of advisory committees.

The Advisory Committee on Immunization Practices has been given statutory roles under subsections 1928(c)(2)(B)(i) and 1928(e) of the Social Security Act (42 U.S.C. § 1396s(c)(2)(B)(i) and 1396s(e)) and subsection 2713(a)(2) of the Public Health Service Act (42 U.S.C. § 300gg-13(a)(2)).

### Objective and Scope of Activities

The Secretary, Department of Health and Human Services (HHS), and by delegation the Director, Centers for Disease Control and Prevention (CDC), are authorized under Section 311 and Section 317 of the Public Health Service Act [42 U.S.C. §243 and 42 U.S.C. §247b], as amended, to assist states and their political subdivisions in the prevention and control of communicable diseases; to advise the states on matters relating to the preservation and improvement of the public's health; and to make grants to states and, in consultation with the state health authorities, to agencies and political subdivisions of states to assist in meeting the costs of communicable disease control programs.

### Description of Duties

The Advisory Committee on Immunization Practices shall provide advice and guidance to the Director of the CDC regarding use of vaccines and related agents for effective control of vaccine-preventable diseases in the civilian population of the United States.  Recommendations made by the ACIP are reviewed by the CDC Director, and if adopted, are published as official CDC/HHS recommendations in the Morbidity and Mortality Weekly Report (MMWR).  The CDC Director informs the Secretary, HHS, and the Assistant Secretary for Health, of immunization recommendations.

Upon the licensure of any vaccine or any new indication for a vaccine, the committee shall, as appropriate, consider the use of the vaccine at its next regularly scheduled meeting.  If the

**Appx8217**

-2-

committee does not make a recommendation at the committee's first regularly scheduled meeting, the committee shall provide an update on the status of such committee's review.

The committee shall provide advice for the control of diseases for which a vaccine is licensed in the U.S. The guidance will address use of vaccines and may include recommendations for administration of immune globulin preparations and/or antimicrobial therapy shown to be effective in controlling a disease for which a vaccine is available. Guidance for use of unlicensed vaccines may be developed if circumstances warrant. For each vaccine, the committee advises on population groups and/or circumstances in which a vaccine or related agent is recommended. The committee also provides recommendations on contraindications and precautions for use of the vaccine and related agents and provides information on recognized adverse events. The committee also may provide recommendations that address the general use of vaccines and immune globulin preparations as a class of biologic agents as well as special situations or populations that may warrant modification of the routine recommendations.

Committee deliberations on use of vaccines to control disease in the U.S. shall include consideration of disease epidemiology and burden of disease, vaccine efficacy and effectiveness, vaccine safety, the quality of evidence reviewed, economic analyses and implementation issues. The committee may revise or withdraw their recommendation(s) regarding a particular vaccine as new information on disease epidemiology, vaccine effectiveness or safety, economic considerations or other data become available.

In accordance with Section 1928 of the Social Security Act, the ACIP also shall establish and periodically review and, as appropriate, revise the list of vaccines for administration to children and adolescents eligible to receive vaccines through the Vaccines for Children Program, along with schedules regarding the appropriate dose and dosing interval, and contraindications to administration of the pediatric vaccines. The Secretary, and as delegated the CDC Director, shall use the list established by the ACIP for the purpose of the purchase, delivery, and administration of pediatric vaccines in the Vaccines for Children Program.

Further, under provisions of the Affordable Care Act (Section 2713 of the Public Health Service Act, as amended), immunization recommendations of the committee that have been adopted by the Director of the Centers for Disease Control and Prevention must be covered by applicable health plans.

## Agency or Official to Whom the Committee Reports

The committee reports to the Director, CDC. The CDC Director informs the Secretary, HHS and the Assistant Secretary for Health, HHS, of immunization recommendations.

## Support

Management and support services shall be provided by the Office of the Director, National Center for Immunization and Respiratory Diseases, Office of Infectious Diseases, CDC.

-3-

## Estimated Annual Operating Costs and Staff Years

Estimated annual cost for operating the committee, including compensation and travel expenses for members, but excluding staff support, is $130,963. Estimate of annual person-years of staff support required is 2.5, at an estimated annual cost of $343,823.

## Designated Federal Officer

CDC will select a full-time or permanent part-time Federal employee to serve as the Designated Federal Officer (DFO) to attend each committee meeting and ensure that all procedures are within applicable statutory, regulatory, and HHS General Administration Manual directives. The DFO will approve and prepare all meeting policies and agendas, call all of the committee and subcommittee meetings, adjourn any meeting when the DFO deems adjournment to be in the public interest, and chair meetings when directed to do so by the official to whom the committee reports. The DFO or his/her designee shall be present at all meetings of the full committee and subcommittees.

## Estimated Number and Frequency of Meetings

Meetings shall be held approximately three times per year at the call of the DFO, in consultation with the Chair.

Meetings shall be open to the public except as determined otherwise by the Director, CDC, or other official, to whom the authority has been delegated, in accordance with the Government in the Sunshine Act (5 U.S.C. § 552b(c)) and Section 10(d) of the Federal Advisory Committee Act. Notice of all meetings shall be given to the public.

## Duration

Continuing.

## Termination

Unless renewed by appropriate action, the Advisory Committee on Immunization Practices will terminate two years from the date this charter is filed.

## Membership and Designation

The committee shall consist of 15 members, including the Chair. Members and the Chair shall be selected by the Secretary, HHS, from authorities who are knowledgeable in the fields of immunization practices and public health, have expertise in the use of vaccines and other immunobiologic agents in clinical practice or preventive medicine, have expertise with clinical or laboratory vaccine research, or have expertise in assessment of vaccine efficacy and safety. The committee shall include a person or persons knowledgeable about consumer perspectives and/or social and community aspects of immunization programs. Members shall be deemed Special Government Employees.

**Appx8219**

The committee also shall consist of eight nonvoting ex-officio members: the Director, Division of Injury Compensation Programs, Healthcare Systems Bureau, Health Resources and Services Administration; the Deputy Director for Scientific Activities, Office of the Assistant Secretary of Defense for Health Affairs, Department of Defense; the Under Secretary for Health, Department of Veterans Affairs; the Director, Center for Biologics Evaluation and Research, Food and Drug Administration; the Director, Center for Medicaid and CHIP Services, Centers for Medicare and Medicaid Services; the Director, Division of Microbiology and Infectious Diseases, National Institute of Allergy and Infectious Diseases, National Institutes of Health; the Director, Indian Health Service; and the Director, National Vaccine Program Office, HHS; or their designees.

If fewer than eight ACIP members are eligible to vote due to absence or a financial or other conflict of interest, the DFO, or designee, shall have the authority to temporarily designate the ex-officio members as voting members.

There also shall be non-voting liaison representatives from the American Academy of Family Physicians; American Academy of Pediatrics; American Academy of Physician Assistants; American College Health Association; American College of Nurse Midwives , American College of Obstetricians and Gynecologists; American College of Physicians; American Geriatrics Society; America's Health Insurance Plans; American Immunization Registry Association; American Medical Association; American Nurses Association; American Osteopathic Association; American Pharmacists Association; Association of Immunization Managers; Association for Prevention Teaching and Research; Association of State and Territorial Health Officials; Biotechnology Industry Organization; Council of State and Territorial Epidemiologists; Canadian National Advisory Committee on Immunization; Infectious Diseases Society of America; National Association of County and City Health Officials; National Association for Pediatric Nurse Practitioners; National Foundation for Infectious Diseases; National Immunization Council and Child Health Program, Mexico; National Medical Association; National Vaccine Advisory Committee; Pediatric Infectious Diseases Society; Pharmaceutical Research Manufacturers of America; Society for Adolescent Health and Medicine; Society for Healthcare Epidemiology of America and such other nonvoting liaison representatives as the Secretary deems necessary to effectively carry out the functions of the committee. Liaisons shall be deemed representatives.

The Chair shall be appointed for a 3-year term. The Chair is selected from among ACIP members who have had at least one year experience as a voting member and have demonstrated ability both to lead the work of similar bodies and to work effectively in partnership with Federal agencies and partner organizations.

Members shall be invited to serve for overlapping terms of up to four years, except that any member appointed to fill a vacancy for an unexpired term shall be appointed for the remainder of that term. Terms of more than two years are contingent upon the renewal of the committee by appropriate action prior to its termination. A member may serve 180 days after the expiration of that member's term if a successor has not taken office.

-5-

## Subcommittees

Subcommittees composed of members of the parent committee and other subject matter experts may be established with the approval of the Secretary, HHS, or his/her designee. The subcommittees must report back to the parent committee and do not provide advice or work products directly to the agency. The Department Committee Management Officer will be notified upon establishment of each subcommittee and will be provided information on its name, membership, function, and estimated frequency of meetings.

## Recordkeeping

The records of the committee, established subcommittees, or other subgroups of the committee, shall be managed in accordance with General Records Schedule 6.2, Federal Advisory Committee Records, or other approved agency records disposition schedule. These records shall be available for public inspection and copying, subject to the Freedom of Information Act, 5 U.S.C. §552.

## Filing Date

April 1, 2018

Approved:

3/27/18
Date

_____
Director
Management Analysis and Services Office

10/25/2019
Declaration of G. Reilly
EXHIBIT 281

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA ex rel., STEPHEN A. KRAHLING and JOAN WLOCHOWSKI, <br><br> Plaintiffs, <br><br> v. <br><br> MERCK & CO., INC., <br><br> Defendant. | Civil Action No. 10-4374 (CDJ) |
| IN RE: MERCK MUMPS VACCINE ANTITRUST LITIGATION | Master File No. 2:12-cv-03555 (CDJ) |

## EXPERT REPORT OF THOMAS G. MCGUIRE, PH.D.

# I.   EXECUTIVE SUMMARY

1.      I have been retained by Relators and Class Plaintiffs and their attorneys in this matter.[1]

2.      I have been asked by counsel for Private Plaintiffs to conduct an economic analysis of the effect of Merck's alleged misrepresentations and omissions related to Merck's Mumps Vaccine[2] and Merck's testing of its Mumps Vaccine on pricing and sales in the Mumps Vaccine market.[3] I have been asked to assess Merck's market power in the Mumps Vaccine market.  I have also been asked, under the assumption that Plaintiffs' allegations of misrepresentations and omissions are proven, to opine on whether the proposed Class (which I refer to as direct purchasers) would have suffered a common economic impact due to the alleged behavior.  I have been asked to create a damages model for the private purchasers that allows for the measurement of damages under a range of likely alternative competitive scenarios had the alleged misrepresentations and omissions not occurred.  Separately, I have been asked by counsel for Relators to calculate the sum of all payments and the sum of the mumps portion of all payments made to Merck for Merck's Mumps Vaccine under its contracts with the Centers for Disease Control and Prevention (CDC), as well as associated penalties if applied to each invoice or claim.

3.      I have reached the following opinions to a reasonable degree of certainty based on my review of relevant materials in this matter and my education, training and experience in the areas of applied microeconomics and health economics:

- Merck had market power with respect to the pricing of the Mumps Vaccine. Merck has been the sole supplier of the Mumps Vaccine to the U.S. since it was first licensed for sale in 1967.  Merck exercised market power by setting a price

---

[1] My understanding is that Private Plaintiffs' and Relators' cases are coordinated for purposes of discovery, but are distinct for purposes of liability and damages.  My damages opinions and calculations in this Report were conducted on behalf of Private Plaintiffs.  For Relators, I simply performed calculations at their direction and am not opining on their damages theories or conducting any type of damages analysis.

[2] "Mumps Vaccine" refers to any mumps-containing vaccine, including Merck's MMR II and ProQuad vaccines.

[3] The Mumps Vaccine is one component of Merck's trivalent vaccine, MMR-II for measles, mumps and rubella, and Merck's quadrivalent vaccine, ProQuad for measles, mumps, rubella, and varicella.

well above cost to the direct purchasers of MMR-II, its trivalent vaccine against measles, mumps and rubella (MMR) and ProQuad, its quadrivalent vaccine against measles, mumps, rubella and varicella (MMRV).

- My understanding is that the allegations in these actions include, among other things, that Merck's misrepresentations and omissions relating to the efficacy of its Mumps Vaccine and Merck's testing of its Mumps Vaccine created artificial barriers to entry into the Mumps Vaccine market discouraging competitors from entering the market in the U.S.  Assuming these allegations to be true, direct purchasers paid more for Merck's Mumps Vaccine products than they would have had Merck not made the alleged misrepresentations and omissions related to its Mumps Vaccine and the market was served by competition instead of a monopoly seller.  All Class members suffered a common economic impact as the result of Merck's alleged misrepresentations and omissions in the form of paying higher prices for Mumps Vaccine.

- I estimate damages for the direct purchasers caused by Merck's alleged misrepresentations and omissions related to its Mumps Vaccine.  Counsel for the private purchasers has instructed me to calculate damages under the assumption that, had Merck not made the alleged misrepresentations and omissions related to its Mumps Vaccine, Merck would have faced competition in supply of an MMR vaccine.  This assumption is consistent with the economic evidence regarding the demand and supply of vaccines which also points to the likelihood of entry by a competitor had Merck not made the alleged misrepresentations and omissions related to its Mumps Vaccine.

- In the presence of a competitor, making the market for MMR vaccines a duopoly instead of a monopoly, Merck's prices would have been lower and its sales volume reduced.  Private purchasers would have paid lower prices for MMR vaccines.

---

- I quantify how much lower MMR prices to private purchasers would have been, had Merck faced competition from another seller of MMR vaccines. To do so, I rely on the experience of three other vaccine markets in which Merck competed as a duopolist with GlaxoSmithKline (GSK): Vaccines against hepatitis A, hepatitis B and rotavirus. Based on these close comparables, I calculate aggregate damages for two possible entry dates provided by counsel for the direct purchasers, March 2009 and January 2014. Had entry by a competitor occurred in March 2009, aggregate damages related to private purchases of MMR-II would be $225.2 million, and had entry instead occurred in January 2014, these damages would be $43.4 million.

- Counsel for private purchasers have also instructed me to assume that if Merck had not made the alleged misrepresentations and omissions related to its Mumps Vaccine, ProQuad never would have been approved. Thus, I also calculate aggregate damages based on how much less private purchasers would have paid for separate MMR-II and varicella vaccines compared to ProQuad. Aggregate damages related to private purchases of ProQuad total $101.3 million if competitive entry for MMR-II had occurred in March 2009, and $58.1 million if competitive entry for MMR-II had occurred in January 2014.

- My methodology equips me, if required by the Court, to estimate damages to private purchasers in circumstances in which the entry of a competitor for Merck takes the form of a probability of entry in one or more years.

- Based on instructions from Relators' counsel, I calculated the sum of all payments made to Merck for MMR-II and ProQuad under its contracts with the Centers for Disease Control and Prevention (CDC). For the 2004-2017 time period, the sum is $2.6 billion. I also calculated the sum of the mumps portion of all payments made to Merck for MMR-II and ProQuad under its contracts with the CDC. For the 2004-2017 time period, the sum is $560.1 million.

- Based on instructions from Relators' counsel, I also calculated penalties. Using the respective minimum and maximum penalty amounts per claim under the False Claims Act (FCA), total public penalties from 2004 through 2017 range from $3.1 billion to $6.2 billion.

4.      The remainder of this Report proceeds as follows: Section II presents my qualifications. Section III summarizes some of the factual background about the allegations of Merck's misrepresentations and omissions related to its Mumps Vaccine. Section IV discusses the demand and supply of vaccines in the U.S. as well as the relevant features of the regulatory environment in which vaccines are produced and distributed. Section V assesses Merck's market power in the market for the Mumps Vaccine. Section VI calculates damages to private purchasers due to the effect of Merck's alleged misrepresentations and omissions, which discouraged entry by a competitor. Section VII contains my calculations of payments the government made to Merck for Mumps Vaccine under CDC contracts and penalties for associated false claims.

5.      Attachment A contains my CV and a list of my recent testimony. Attachment B lists the materials I reviewed for this Report. Other attachments contain supplementary material as explained in the body of this Report. I understand that discovery is ongoing and reserve the right to update my analysis based on additional information.

## II.    QUALIFICATIONS

6.      I am a Professor of Health Economics in the Department of Health Care Policy at Harvard Medical School. For the past 40 years I have conducted research on the economics of managed care, public and private health insurance, health care payment systems, drug pricing and procurement, the economics of health care disparities by race and ethnicity, and the economics of mental health policy. I teach health economics in Harvard University's Ph.D. Program in Health Policy.

7.      I was the 1981 recipient of the Elizur Wright Award from the American Association of Risk and Insurance recognizing an "outstanding contribution to the literature on risk and

insurance" for my book *Financing Psychotherapy*.  In 1991, I received the Carl Taube Award from the American Public Health Association for "outstanding contributions to public health."  I am a member of the National Academy of Medicine—formally, the Institute of Medicine (IOM)—a Research Associate at the National Bureau of Economic Research, and served for ten years as an editor of the leading journal in the field of health economics, the *Journal of Health Economics*.  I co-edited the *Handbook of Health Economics*, Volume II, and I authored the chapter on "Demand for Health Insurance" in that volume.  I have been a research referee for a variety of academic journals and am the author of more than 150 refereed journal articles, books and monographs.  My research is currently supported by competitive research grants funded by the National Institute of Aging and private foundations.

8.      Two of my jointly authored papers received "Best Paper of the Year" awards in 2008, one from Academy Health for research on physician-patient interaction and one from the National Institute for Health Care Management for work on incentives in managed care plans.  My paper on designing payment systems for private health insurance markets received the best paper of the year award in 2014 from the National Institute for Health Care Management.  In 2015, a jointly authored paper on reverse payment settlements in the drug industry received the Article of the Year Award from the *International Journal of the Economics of Business*.  I received the Everett Mendelsohn Excellence in Mentoring Award from Harvard's Graduate School of Arts and Sciences in 2008.

9.      I co-chaired three conferences on the Industrial Organization of Health Care.  Industrial organization is the field of economics concerned with competition, monopoly, pricing and antitrust and regulation.  I edited special sections of economic journals in which the conference papers were published.[4]

---

[4] T.G. McGuire and M.H. Riordan (guest editors), "The Industrial Organization of Health Care," *Journal of Economics & Management Strategy*, 3(1), 1994; A. Ma, T.G. McGuire, and M.H. Riordan (guest editors), "The Industrial Organization of Health Care, II" *Journal of Economics & Management Strategy*, 1997; A. Ma and T.G. McGuire (guest editors), "The Industrial Organization of Health Care, III," *Journal of Economics & Management Strategy*, 8(3), Fall 1999.

10.     I have recently authored a series of published papers on the economics of drug procurement, insurance coverage for drugs and competition between branded and generic drug products.[5]  In addition, I have authored or coauthored papers on vaccines, including one commissioned by the IOM.[6]

11.     I received an AB degree from Princeton University and a PhD degree in economics from Yale University.  My rate of compensation in this matter is $750 per hour.  My compensation does not depend on the outcome of this litigation.

## III.     FACTUAL BACKGROUND

### A.     Mumps and the Mumps Vaccine

12.     Mumps is a contagious viral disease that causes fever, a headache, muscle aches, tiredness, the loss of appetite, and swollen salivary glands.  Mumps can also cause complications including deafness and inflammation of the testicles, ovaries, brain, and tissue covering the brain and spinal cord.  Mumps can be fatal.  People with mumps can infect others by coughing,

---

[5]  T.G. McGuire and S. Bauhoff, "Adoption of a Cost-Saving Innovation: Germany, UK and Simvastatin," in N. Klusen, F. Verheyen, and C. Wagner, eds., *England and Germany in Europe – What Lessons Can We Learn from Each Other?* Baden-Baden, Germany: Nomos, 2011, pp. 11-26; E.R. Berndt, T.G. McGuire, and J.P. Newhouse, "A Primer on the Economics of Prescription Pharmaceutical Pricing in Health Insurance Markets," *Forum for Health Economics & Policy*, 14(2), 2011, Article 10; J. Glazer and T.G. McGuire, "A Welfare Measure of 'Offset Effects' in Health Insurance," *Journal of Public Economics,* 96, 2012, pp. 520-523; J. Glazer, H. Huskamp, and T.G. McGuire, "A Prescription for Drug Formulary Evaluation: An Application of Price Indexes," *Forum for Health Economics and Policy*, 15(2), 2012, Article 3;  K. Drake, M. Starr, and T. McGuire, "Do 'Reverse Payment' Settlements Constitute an Anticompetitive Pay-for-Delay?" *International Journal of the Economics of Business,* 22(2), 2015, pp. 173-200; T. McGuire, K. Drake, E. Elhauge, R. Hartman, and M. Starr, "Resolving Reverse-Payment Settlements with the Smoking Gun of Stock Price Movements," *Iowa Law Review*, 101(4), 2016, pp. 1581-1599; and K. Drake and T. McGuire, "Stock-Price Evidence for Anticompetitive Effects in the Nexium 'Reverse-Payment' Settlement," *Journal of Competition Law & Economics*, 12(4), 2016, pp. 735-747.

[6]  T.G. McGuire, "Setting Prices for New Vaccines (in Advance)," *International Journal of Health Care Finance and Economics*, 3, 2003, pp. 207-224 and T. Lieu, T.G. McGuire, and A.R. Hinman, "Overcoming Economic Barriers To The Optimal Use Of Vaccines," *Health Affairs,* 24(3), 2005, pp. 666-679.  The 2003 paper was commissioned by the Institute of Medicine in connection with the report:  IOM, "Financing Vaccines in the 21st Century:  Assuring Access and Availability," National Academies Press, Washington DC, 2004 (hereafter "IOM 2004 Report").

---

EXPERT REPORT OF THOMAS G. MCGUIRE, PH.D.

sneezing, or talking around others.  People can also spread mumps by sharing cups or other dishware or by touching surfaces with unwashed hands.[7]

13.     The Jeryl Lynn strain of the Mumps Vaccine was first licensed in the U.S. in 1967 and is still used by Merck today.  Merck's Maurice Hilleman and colleagues conducted field studies of children vaccinated with Merck's Mumps Vaccine and concluded that "[t]he protective efficacy of the vaccine was of the order of 95 per cent on challenge with natural mumps . . . ."[8]

14.     In 1971, Merck obtained Federal Drug Administration (FDA) approval of a combination measles, mumps, and rubella vaccine,[9] and in 1977, the CDC recommended that all children in the U.S. (12 months or older) receive it.[10]  In 1978, Merck released an updated version of the MMR vaccine, containing a different strain of rubella virus, called MMR-II.[11]  In 2005, Merck released ProQuad, which is a combination MMRV vaccine that also uses the Jeryl Lynn strain of mumps.[12]  Merck's sales of ProQuad were limited from 2007-2012 because of manufacturing

---

[7] Centers for Disease Control and Prevention (CDC), "Transmission of Mumps," available at https://www.cdc.gov/mumps/about/transmission html and CDC, "Signs & Symptoms of Mumps," available at https://www.cdc.gov/mumps/about/signs-symptoms.html.

[8] See MRK-CHA00224982-6529, at 5556 (Merck's Protocol 007 Clinical Study Report, attaching M.R. Hilleman, E.B. Buynak, R.E. Weibel, and J. Stokes, "Live, Attenuated Mumps-Virus Vaccine," *New England Journal of Medicine*, 278(5), February 1968, pp. 227-32).  See also MRK-CHA00224982-6529, at 5517 (Merck's Protocol 007 Clinical Study Report, attaching E.B. Buynak, M.R. Hilleman, M.B. Leagus, J.E. Whitman, R.E. Weibel, J. Stokes, "Jeryl Lynn Strain Live Attenuated Mumps Virus Vaccine:  Influence of Age, Virus Dose, Lot, and γ-Globulin Administration on Response," *Journal of the American Medical Association*, 203(1), January 1968, pp. 9–13: "The [Jeryl Lynn strain live attenuated mumps virus vaccine] induced antibody in 98% of initially seronegative recipients and afforded protection against natural mumps in 97% of children in a large-scale field study which was carried out during 1965-1966" (footnote omitted).

[9] MRK-CHA00224982-6529, at 5009 (Merck's Protocol 007 Clinical Study Report, citing "introduction of M-M-R[TM] in 1971 and M-M-R[TM]II in 1978") (footnote omitted).

[10] CDC, "Epidemiology and Prevention of Vaccine-Preventable Diseases: Mumps," available at http://www.cdc.gov/vaccines/pubs/pinkbook/mumps.html.

[11] See MRK-CHA00224982-6529, at 5009 (Merck's Protocol 007 Clinical Study Report, citing "introduction of M-M-R[TM] in 1971 and M-M-R[TM]II in 1978") (footnote omitted).

[12] See MRK-CHA00761865 (September 6, 2005 Letter from FDA to Merck stating FDA has "approved [Merck's] biologics license application (BLA) for Measles, Mumps, Rubella and Varicella Virus Vaccine Live effective this date" and that Merck "may label [its] product with the proprietary name ProQuad®").  Varicella is also known as chicken pox.

---

constraints.[13] Merck's concern with potential competition from GSK is evident from documents discussing the decision to relaunch ProQuad. Writing in 2012, one Merck employee wrote, "[the] key driver for re-launch in the US is pending competition from GSK, with the goal of re-launching ProQuad sufficiently in advance of competition…"[14]

15. The CDC currently recommends the first dose of the MMR vaccine be given to children between 12 and 15 months of age. A second dose is recommended at age four or older. The MMR vaccine is just one of many vaccines recommended for children by the CDC. The CDC's 2016 recommendations for childhood vaccines are contained in Table 1.[15] Later, I consider these other childhood vaccines as potential models (yardsticks) of pricing in the absence of Merck's alleged misrepresentations and omissions related to its Mumps Vaccine.

---

[13] For example, see M. Marin *et al.*, "Use of Combination Measles, Mumps, Rubella, and Varicella Vaccine: Recommendations of the Advisory Committee on Immunization Practices (ACIP)," *Morbidity and Mortality Weekly Report*, 59(RR-3), May 7, 2010, pp. 1-12 at pp. 1-2. Data on Merck's sales are shown in Attachment D.4.a and Attachment E.1, which are described in more detail below.

[14] MRK-CHA00873631.

[15] CDC, "2016 Recommended Immunizations for Children from Birth Through 6 Years Old," available at https://www.cdc.gov/vaccines/schedules/. Table 1 is a simplified version of the CDC's table with the same name. In Table 1, HepB = hepatitis B; RV = rotavirus; DTaP = diptheria, tetanus, and pertussis; Hib = *Haemophilus influenzae* type b; PCV = pneumococcus; IPV = polio; and HepA = hepatitis A.

TABLE 1
2016 RECOMMENDED IMMUNIZATIONS FOR CHILDREN
FROM BIRTH THROUGH SIX YEARS OLD

| Vaccine | Birth | 1 Month | 2 Months | 4 Months | 6 Months | 12 Months | 15 Months | 18 Months | 19-23 Months | 2-3 Years | 4-6 Years |
|---|---|---|---|---|---|---|---|---|---|---|---|
| HepB | HepB | HepB | HepB | | HepB | HepB | HepB | HepB | | | |
| RV | | RV | RV | RV | | | | | | | |
| DTaP | | | DTaP | DTaP | DTaP | | DTaP | DTaP | | | DTaP |
| Hib | | | Hib | Hib | Hib | Hib | Hib | | | | |
| PCV | | | PCV | PCV | PCV | PCV | PCV | | | | |
| IPV | | | IPV | IPV | IPV | IPV | IPV | IPV | | | IPV |
| Influenza | | | | | Influenza (Yearly)* | Influenza (Yearly)* | Influenza (Yearly)* | Influenza (Yearly)* | Influenza (Yearly)* | Influenza (Yearly)* | Influenza (Yearly)* |
| MMR | | | | | | MMR | MMR | | | | MMR |
| Varicella | | | | | | Varicella | Varicella | | | | Varicella |
| HepA | | | | | | HepA § | HepA § | HepA § | HepA § | | |

* Two doses given at least four weeks apart are recommended for children aged 6 months through 8 years of age who are getting an influenza (flu) vaccine for the first time and for some other children in this age group.

§ Two doses of HepA vaccine are needed for lasting protection. The first dose of HepA vaccine should be given between 12 months and 23 months of age. The second dose should be given 6 to 18 months later. HepA vaccination may be given to any child 12 months and older who did not receive the HepA vaccine and are at high-risk, should be vaccinated against HepA. Children and adolescents who did not receive the HepA vaccine and are at high-risk, should be vaccinated against HepA.

[yellow box] ----> Shaded boxes indicate the vaccine can be given during shown age range.

## B.  Merck's Alleged Misrepresentations and Omissions Related to Its Mumps Vaccine

16.    I understand Relators and Plaintiffs allege that Merck secured various mumps-related licenses by misrepresenting and omitting information about Merck's testing of its Mumps Vaccine and about how well the Mumps Vaccine protects against disease.  For the purposes of my economic analysis, counsel for private Plaintiffs has instructed me to assume that the allegations of Merck's misrepresentations and omissions are true and will be proven at trial.

17.    Private Plaintiffs bring this class action on their own behalf and "as representatives of the following class of persons and entities ('the Class'):  All persons or entities that purchased Mumps Vaccine directly from Defendant at any time between January 1, 1999 and the present (the 'Class Period')."[16]

---

[16]  Consolidated Amended Class Action Complaint, in this matter, September 20, 2012, ¶ 128.

18.     Relators bring this case on behalf of the U.S. to recover the funds that the government spent on the Mumps Vaccine and for associated penalties.

## C.     Class Plaintiffs and Relators

19.     Named Class Plaintiffs include: Chatom Primary Care, P.C., an Alabama corporation; Andrew Klein, M.D., a resident of the State of New York; and John I. Sutter, M.D., a resident of the state of New Jersey.[17]  All Class Plaintiffs purchased the Mumps Vaccine from Merck during the Class Period.

20.     Relators include Stephen A. Krahling and Joan Wlochowski, former Merck employees, who filed a *qui tam* action on behalf of the U.S. Government.

## IV.     DEMAND AND SUPPLY OF VACCINES IN THE U.S.

## A.     Importance of Childhood Vaccines

21.     In addition to protecting the recipient, vaccination protects other members of society from contracting a contagious disease.  In economic terms, vaccination creates a positive externality for others.  Each person vaccinated reduces the probability that others will get the disease.  Governments in all industrialized countries require and often subsidize childhood vaccinations to ensure wide coverage in a population.[18]

22.     Combination vaccines have convenience and health advantages over a separate regime for each vaccine for pediatric immunization.  One injection rather than many reduces the pain and discomfort experienced by children, and potentially increases vaccination coverage in populations.[19]

---

[17] *Ibid.*, ¶¶ 12-14.

[18] P.M. Danzon and N.S. Pereira, "Vaccine Supply: Effects of Regulation and Competition," *International Journal of the Economics of Business*, 18(2), 2011, pp. 239-271 at p. 243.

[19] CDC, "Combination Vaccines for Childhood Immunization: Recommendations of the Advisory Committee on Immunization Practices (ACIP), the American Academy of Pediatrics (AAP), and the American Academy of Family Physicians (AAFP)," *Morbidity and Mortality Weekly Report*, 48(RR-5), 1999, pp. 1–15 at p. 2.

---

23.     In the U.S., vaccines are typically administered in a pediatrician's office or a clinic.

B.     **Regulatory Framework**

24.     In the U.S., the FDA is responsible for licensing the vaccine itself as well as the production facility.[20]  A sponsor proposing to develop a vaccine must first conduct preclinical trials (generally on animals) to test for potential safety and efficacy.  If these preclinical trials are promising, the sponsor files an Investigational New Drug (IND) application with the FDA describing the vaccine, the results of the preclinical trials, and the proposed protocols for clinical (human) trials.  Clinical trials occur in three phases, culminating in Phase III trials which usually involve thousands of subjects with the purpose of providing definitive data on safety and efficacy of the vaccine.  At or near the close of a successful Phase III trial, the sponsor seeks approval to manufacture and distribute the vaccine with a pair of applications:  A biologics license application (BLA), which licenses the vaccine itself, and an establishment license application (ELA), which licenses the manufacturing facility.  The FDA conducts on-site reviews of production facilities.

25.     The FDA has not standardized the clinical testing methodology required for new vaccines.  Because of the variety in vaccine types and target populations, the FDA does not believe this would be "practical or useful."  Instead, the FDA "routinely meet[s] with manufacturers before the initiation of clinical studies" and will "discuss the study and will comment on proposed protocols for efficacy studies."  The FDA intends "to continue to allow flexibility in selecting appropriate tests, procedures, and study populations for a clinical study while assuring that the necessary data are generated to fulfill the intended objectives of the study."[21]

26.     One factor taken into account by the FDA in considering approval of a new vaccine is the efficacy or the ability to protect vaccine recipients against disease of any existing vaccine for the

---

[20]  This paragraph is based on IOM 2004 Report, p. 115.

[21]  21 CFR Part 610, "Biological Products; Bacterial Vaccines and Toxoids; Implementation of Efficacy Review," *Federal Register*, 70(242), December 19, 2005, pp. 75018-75028 at 75024.

---

same indication.[22]  According to officials at Merck, "CBER [Center of Biologics Evaluation and Research] has repeatedly emphasized need to be consistent with other manufacturers in this area."[23]  In effect, the efficacy of an existing vaccine sets the "height of the bar" a potential competitor must reach in order to be a viable candidate for FDA approval.[24]  Representatives of GSK met with representatives from the FDA to discuss the possibility GSK would seek approval for an MMR vaccine in the U.S., and ran up against the perception of a high bar for the efficacy and protective levels of Merck's Mumps Vaccine.[25]

27.    The Advisory Committee on Immunization Practices (ACIP), an advisory body for the CDC comprised of medical experts, recommends vaccination schedules for the U.S.  Authority over vaccine requirements rests with the states.[26]  All states require children be vaccinated prior to entering kindergarten, but there is some state-to-state variation in the set required for school.[27]

---

[22]  A non-inferiority test is one type of adequate and well-controlled study (21 CFR 314.126) used "to show that the difference between the new and active control treatment is small—small enough to allow the known effectiveness of the active control, based on its performance in past studies and the assumed effectiveness of the active control in the current study, to support the conclusion that the new test drug is also effective."  FDA, "Non-Inferiority Clinical Trials to Establish Effectiveness: Guidance for Industry," November 2016, at p. 2, available at https://www.fda.gov/downloads/drugs/guidancecomplianceregulatoryinformation/guidances/ucm202140.pdf. According to FDA guidance, "The intent of an NI trial, however, is not to show that the new drug is equivalent, but rather that it is not materially worse than the control."  *Ibid*.  An NI test is "intended to show that a new treatment that demonstrates non-inferiority is effective, not that it is as effective as the active comparator.  A new treatment may meet the standard of effectiveness (that it is superior to placebo) without justifying a conclusion that it is as effective or even nearly as effective as the active comparator."  *Ibid*. at p. 7.

[23]  Merck Memo from Dr. Keith Chirgwin to Dr. Henrietta Ukwu with subject "Options and proposed path forward for the Mumps Expiry Trial," MRK-CHA00086292-93 at 92.

[24]  For example, see "Program Review of M-M-R®II: TPAC Background Package Prepared by M-M-R®II Project Team," January 2000, MRK-CHA00575892-906.

[25]  GSK was discouraged from seeking approval because of the perceived "high bar" of Merck's claimed efficacy and claimed ability to assess protection from disease.  According to an internal Merck e-mail from May 28, 2004, "[GSK representatives] went to CBER several years ago, for what they thought was a pre-BLA meeting. Unfortunately for [GSK], CBER informed them that they considered it an end-of-phase II meeting. He admitted that because of [MMRII], the bar had been set very high. The [GSK] folks apparently went back home and decided it wasn't worth it."  See MRK-CHA00553400.

[26]  J. Bylander, "The United States' Piecemeal Approach to Vaccine Policy," *Health Affairs*, 35(2), February 2016, pp. 195-198 at p. 196.

[27]  K.M. Malone and A.R. Hinman, "Vaccination Mandates:  The Public Health Imperative and Individual Rights," Chapter 13 in Law Public Health Practice, edited by R.A. Goodman *et al.*, Oxford University Press: New York, 2003, pp. 262-284.

---

28.     Overall, about 90-92% of children in the U.S. received at least one dose of MMR vaccine in the years 1995-2013.  Children from higher-income families were more frequently vaccinated: 95.2% of children in families in the top third of the income distribution were vaccinated (with at least one dose) in 2005-07 and 91.2% of those from the lowest third were vaccinated during the same period.[28]  One in five children aged 19-35 months in the U.S. miss at least one recommended vaccine dose, and this rate of under-immunization is also higher among families with lower socioeconomic status.[29]

29.     Manufacturers may have proprietary rights to virus strains used for vaccines, and in addition, may have patents on some aspects of the production process.[30]  Generally, however, in comparison to other drugs, patents play less of a role in restricting entry into the market for vaccines.[31]  Vaccines are biologics, and new entrants, even if relying on the same strain of attenuated virus, must undertake clinical trials to demonstrate safety and efficacy.  There is no Abbreviated New Drug Application process for vaccines, which in the case of other drugs, allows generic competitors to rely on evidence for clinical safety and efficacy from the original drug.

## C.     Cost Structure

30.     The cost structure of vaccine development and production is an important determinant of the pricing that will emerge in monopoly markets in comparison to those with competitors.

---

[28]  B. Walsh, E. Doherty and C. O'Neill, "Since the Start of the Vaccines for Children Program, Uptake has Increased, and Most Disparities Have Decreased," *Health Affairs*, 35(2), February 2016, pp. 356-364 at p. 358.

[29]  See Lieu, McGuire, and Hinman, *op. cit.,* pp. 669-670, citing the following studies: "National, State, and Urban Area Vaccination Coverage among Children Aged 19-35 Months – United States, 2003," *Morbidity and Mortality Weekly Report*, 53(29), 2004, pp. 658-661; and J.M. Santoli *et al.*, "Insurance Status and Vaccination Coverage among U.S. Preschool Children," *Pediatrics,* 113, no. 6 Supp., 2004, pp. 1959-1964.

[30]  Danzon and Pereira, *op. cit.*, p. 245.

[31]  "A number of individuals we interviewed stressed that nonpatent barriers to market entry, such as complex manufacturing know-how, substantial scale economies, and understanding of U.S. Food and Drug Administration (FDA) regulatory process, are just as important – if not more important – than patent protection for vaccine developers."  E.R. Berndt, R.N. Denoncourt and A.C. Warner, "U.S. Markets for Vaccines: Characteristics, Case Studies and Controversies," AEI Press, Washington, DC, 2009, p. 13.

---

EXPERT REPORT OF THOMAS G. MCGUIRE, PH.D.

**Appx8236**

Independent decisions by two competitors producing a highly substitutable product with high fixed relative to marginal costs leads to a very different market outcome than a monopolist.

31.    Developing a new vaccine requires substantial investment in research and development (R&D) years before any production and marketing can begin.[32]  When costs of research failures and interest costs are taken into account, investments in R&D per successful new vaccine can be in the tens or even hundreds of millions of dollars by the time of product launch.[33]  R&D costs cannot later be recovered and are sometimes referred to as "sunk costs."

32.    Production of vaccines also requires fixed and variable costs.  The term fixed cost refers to costs that are independent of the scale of production, whereas variable costs are those that change (or vary) with the scale of production.  An IOM report from 2003 explains the nature of fixed and variable costs in the vaccine industry:

> "Once a vaccine has been approved, the production process involves high fixed costs relative to variable costs.  Fixed production costs, exclusive of up-front R&D and sales labor, represent 60 percent of total production costs for vaccines [citation in original].  These fixed costs are not affected by changes in production volume.  They are associated primarily with quality assurance activities, administrative labor, depreciation, and other manufacturing overhead.  Industry representatives have indicated that increased regulatory requirements have resulted in increased costs for quality assurance employees relative to production employees.  Semivariable costs make up 25 percent of total costs, excluding R&D and sales labor.  Semivariable costs are batch costs that are constant per batch regardless of the number of batches [citation in original].  Specific examples of batch costs are test animals and labor for production and testing.  The remaining, variable, costs, account for only 15 percent of total costs; examples of such costs are vials, stoppers, labels, packaging and in-source components." [34]

---

[32]  Danzon and Pereira, *op. cit.*, pp. 244-245.

[33]  IOM 2004 Report, p. 111.  H.G. Grabowski and J.M. Vernon, "The Search for New Vaccines: The Effects of the Vaccines for Children Program," The AEI Press, Washington, D.C., 1997, contains data on R&D costs for vaccines, discussed below.

[34]  IOM 2004 Report, p 114.

---

33.     Similar depictions of the fixed and variable cost structure of vaccine production are contained in other research reports.[35]

34.     In June 1995, Mercer Management Consulting published a "Report on the United States Vaccine Industry," commissioned by the U.S. Department of Health and Human Services.[36]  The purpose was to report on "the economics of vaccine production, distribution and sales and marketing."[37]  The Mercer 1995 Report indicated that the marketing, distribution and production costs of the MMR vaccine totaled $4.31 per dose, with the following breakdown:[38]

- Admin:  $0.69

- Sales & Mktg:  $0.97

- Returns:  $0.13

- Distribution:  $0.80

- Production:  $1.72

    i. Other (Materials, Utilities):  $0.30

    ii. Labor and Depreciation:  $1.42

---

[35]  Berndt, Denoncourt, and Warner, *op. cit.*, pp. 26-29 discuss the cost structure using the same sunk, fixed and variable cost terminology.  They also refer to the IOM allocation of costs quoted here.  See also, Danzon and Pereira, *op. cit.*, pp. 244-245.  Grabowski and Vernon, *op. cit.*, p.31, present data from L.B. Hackett and J.J. Tofflen, "Report on the United States Vaccine Industry," Prepared by Mercer Management Consulting, Commissioned by the Department of Health and Human Services, June 14, 1995, pp. 1-33 at p. 33 (hereafter "Mercer 1995 Report"), available at https://quod.lib.umich.edu/c/cohenaids/5571095.0504.060, showing that the cost of goods sold (COGS) is higher as a share of revenue for vaccines, but "selling general and administrative" are higher for regular drugs, leaving the margins about the same for the two forms of product.

[36]  Mercer 1995 Report.

[37]  Mercer 1995 Report, p. 1.  The study was built on a "fact base consist[ing] of studies previously conducted, data received from CDC and other sources on market volumes and prices, cost data gathered through scores of interviews and careful review of public data sources (company reports, newspapers and journals, Wall Street analyst reports, etc.), and research and development investment data gathered from public sources and interviews."  Although none of the major suppliers shared confidential information, the report indicates that three "suppliers reviewed our analysis of their revenues and costs and advised us on the accuracy of this analysis, allowing us to refine the analysis and correct any errors."  See Mercer 1995 Report, p. 5.

[38]  Mercer 1995 Report, p. 27 (lists production costs) and pp. 30 (lists other costs; returns are calculated as the overall cost, $4.31, less the sum of the admin, sales & mktg., distribution and production costs).

---

35.     Mercer Management Consulting released a second report in June 2002 more focused on the global vaccine market.[39]  The report indicates that there has not been "a significant increase in the costs of vaccine production since 1992, after making allowance for the effects of inflation."  It also provides a range of the cost of producing a vaccine:  "$0.05 per dose up to $3-$4 per dose."

36.     Discovery materials confirm that the cost of manufacturing MMR-II has been in the range of $1-$6 for years:

- A May 2001 document titled "Project Scope Template: M-M-R®II" indicates that the "endpoint/success criteria" for product cost is $1.125/dose.[40]

- A November 2006 slide titled "Merck M-M-R™II Finish Cost Detail" indicates the "Finished Standard Cost" is 1.27 and the "Finished Fixed Cost" is 2.17, adding up to a "Total Finished Cost" of 3.44.[41]

- An untitled document indicates the "Fully Absorbed Cost" is $2.364 and the "2007 Standard Cost" is $0.844.  Corresponding "Diluent" costs are listed as $1.075 and $0.426.[42]  These appear to be costs per dose although it is unclear.

- A February 2008 slideshow titled "M-M-R™II Developing World Strategy" indicates that Merck's "Estimated Economic Mfg Cost" is $1.47-$2.42 (presumably per dose), depending on the albumin source and "may be lower."[43]

- A slide titled "Vaccine Standard Cost Changes by Product" depicts standard costs from 2010-2015.  The standard cost of MMR increased from approximately $5 in 2010 to approximately $6 in 2012.[44]

---

[39]  Mercer Management Consulting, "Lessons Learned: New Procurement Strategies for Vaccines, Final Report to the GAVI Board," June 28, 2002.

[40]  MRK-CHA00201319-21 at 20.  The metadata for this document indicates it was last modified on May 24, 2001.

[41]  MRK-CHA00264224-25.  The metadata for the folder containing this document is dated November 2006.

[42]  MRK-CHA00100948.

[43]  MRK-CHA00484168 at slide 17.  The metadata for this document provides the date.

37.     In 2001, when production costs were little more than $1 per dose, the public price was $15.53, and the private list price was $28.19.[45]  In 2012, when production costs had increased to approximately $6, the public price was $19.33 and the private list price was $52.07.[46]

38.     Detailing and other marketing expenses appear to be lower for vaccines than for other pharmaceutical products.  Berndt and colleagues write:

> "Although data are not readily available, interviews we conducted indicated that, as a proportion of sales revenues, expenditures on visits to physicians' offices by vaccine sales representatives ('detailing expenditures') are much less on average than those for pharmaceuticals.  Moreover, while dropping off free samples to physicians' offices is common for pharmaceuticals, virtually no such sampling occurs for vaccines."[47]

## D.     Private Purchasing

39.     For privately insured patients, physicians, hospitals and other providers first purchase vaccines from manufacturers or wholesalers and later are reimbursed by insurers after the administration of the vaccine.  The patient's insurer reimburses the physician for both the cost of the vaccine and an administration fee.  Provider reimbursement for the drug and administration fee varies across payers, including Medicare and private managed care companies.  Physicians and other health care providers can increase the margin between revenue and their cost (or reduce their losses if revenue is less than their cost) by procuring vaccines from lower-priced sources when multiple sources are available.  Physicians can buy through pharmaceutical buying groups (PBG) or independently.  Thus, direct purchasers have an incentive to buy from the cheapest source which would impact pricing in a competitive environment.

---

[44]  MRK-CHA00640706.  It is unclear which of two lines corresponds to MMR.  The two lines are similar from 2010 to 2012, but one line drops to around $4 from 2013 to 2015 while the other increases up over $7.

[45]  CDC, "CDC Vaccine Price List," prices last updated December 4, 2001.

[46]  Attachment C.1 lists MMR-II prices reported by the CDC between December 2005 and January 2016.  These include the excise tax of $0.75 per vaccine—because MMR-II contains three vaccines, its excise tax is $2.25.

[47]  Berndt, Denoncourt, and Warner, *op. cit.*, p. 50.

---

40.     The majority of private health insurance plans follow ACIP's recommendations on which vaccines to cover.[48]  In 2008, while only 16.7% of private insurance enrollees were in plans that covered all vaccines recommended by ACIP, 99.0% of enrollees were in plans that covered at least 75% of all products.[49]  Most private plans cover vaccines as part of their drug formularies.[50] When a vaccine is available from more than one source, formularies typically place alternatives on the same tier.[51]  As part of its emphasis on prevention, the Affordable Care Act (2010) requires new employer-group and individual health insurance plans to cover all vaccinations recommended by ACIP at no cost to the beneficiary.[52]

## E.     Public Purchasing

41.     In 1993, Congress established the Vaccines for Children (VFC) program to pay for vaccines for some children age 18 and below.  Children are eligible for VFC purchased vaccines if they are covered by Medicaid, are uninsured or underinsured, or are American Indian or Alaskan Native.[53]

---

[48]  J. Hunsaker, G. Veselovskiy, and J.A. Gazmararian, "Health Insurance Plans and Immunization: Assessment of Practices and Policies, 2005-2008," *Pediatrics*, 124(5), 2009, pp. S532-S539 at p. S535.

[49]  *Ibid*.  Child enrollees in plans that do not cover all vaccines recommended by ACIP are considered "underinsured," and thus eligible for coverage under VFC for the non-covered vaccines.  See M.C. Lindley *et al.*, "Financing the Delivery of Vaccines to Children and Adolescents: Challenges to the Current System," *Pediatrics*, 124(5), December 2009, pp. S548-S557 at p. S552.

[50]  For example, see BlueCross BlueShield of South Carolina's "2009 Comprehensive Formulary: List of Covered Drugs" for MedBlueRx, pp. 1-59 at pp. 32-33, indicating the copay for all but one vaccine is $41 (the copay for diphtheria/tetanus is $8).  Also see Wellcare's "Comprehensive Formulary (List of Covered Drugs)" for Signature/Classic Prescription Drug Plans in New York, pp. I-50 at pp. VI and 29-30, indicating the copay for almost every vaccine is $39 or $42, depending on the plan.

[51]  *Ibid*.

[52]  H.K. Koh and K.G. Sebelius, "Promoting Prevention through the Affordable Care Act," *New England Journal of Medicine*, 363(14), September 2010, pp. 1296-1299.  For example, see FirstCare's "2017 Prescription Drug Formulary," pp. 1-150, in which vaccines have the "special code": "Affordable Care Act" and do not require a copay.

[53]  CDC, "The VFC Program: At a Glance," February 14, 2014, available at https://www.cdc.gov/vaccines/programs/vfc/about/.

---

42.     Federal "317 funds" are also available to purchase vaccines (but are not intended to pay for vaccines for well-insured individuals).[54]  State funding of vaccines is highly variable, ranging from none to enhanced-VFC and universal purchase programs that use a combination of state and federal funds.[55]

43.     The CDC contracts with manufacturers on behalf of public purchasers, and in total, CDC contracting accounts for about 50% of all childhood vaccines.[56]  For vaccines available from multiple sources, state and local recipients of VFC funds can choose among multiple suppliers of a vaccine at CDC prices.  States supplementing federal funding for vaccines may also buy at CDC prices.[57]

44.     Prior to 1994, the CDC awarded its contract for vaccines based on a "winner-take-all" strategy, with all sales going to the lowest bidder.[58]  Vaccines with federal contracts in effect in 1993 were subject to a cap on price increases.[59]  The price caps held "vaccines to their price on May 1, 1993, plus an annual inflation adjustment" (equal to the Consumer Price Index).[60]  In 1994, the CDC introduced a multi-supplier contract.[61]

45.     In 1998, the CDC introduced the current approach, under which state and local recipients of federal funds for purchasing vaccines can choose which of the approved vaccine

---

[54] Section 317 predates the VFC program and pays for vaccines and other program costs. IOM 2004 Report, pp. 67-68.

[55] IOM 2004 Report, pp. 68-69; Universal purchase applies to all children in a state:  "In universal purchase states, health insurance plans usually provide coverage for vaccines but do not bear their costs because the state provides the vaccines free of charge to providers,"  IOM 2004 Report, p. 73.

[56] Danzon and Pereira, *op. cit.*, p. 243.

[57] Danzon and Pereira, *op. cit.*, p. 244.

[58] L.E. Rodewald, W.A. Orenstein, D.D. Mason, and S.L. Cochi, "Vaccine Supply Problems: A Perspective of the Centers for Disease Control and Prevention," *Clinical Infectious Diseases*, Supplement Article, Vol. 42, 2006, pp. S104-S110 at p. S107.

[59] M.S. Coleman, N. Sangrujee, F. Zhou, and S. Chu, "Factors Affecting U.S. Manufacturers' Decisions to Produce Vaccines," *Health Affairs*, Vol. 24, No. 3, 2005, pp. 635-642 at p. 638.  See also, Danzon and Pereira, *op. cit.*, p. 247.

[60] IOM 2004 Report, p. 138 and Coleman, Sangrujee, Zhou, and Chu, *op. cit.*, p. 638.

[61] IOM 2004 Report, p. 139 and Rodewald, Orenstein, Mason, and Cochi, *op. cit.*, p. S108.

---

manufacturers to use.[62]  The current approach involves one-year contracts between the CDC and all licensed manufacturers for each product.  Manufacturers can lower (not raise) prices during the one-year contract period.[63]  Price increases are permitted in new contracts.[64]  Providers place orders through the Vaccine Tracking System and take delivery from a wholesaler.[65]

46.    The CDC price cap (for vaccines with federal contracts in 1993) applies to Merck's MMR vaccine.[66]  The price cap is a maximum.  Writing in 2004, the IOM noted, "Merck has always bid the maximum for MMR…." (citation omitted).[67]

## F.    Market Structure:  Monopoly and Duopoly in Vaccine Supply

47.    In the U.S. in 1980 there were 17 manufacturers across all vaccine products.[68]  As of September 2017, there were only four selling more than one vaccine product (Merck, Sanofi Pasteur, GSK (which purchased a plant from Wyeth[69]), and Pfizer), and two selling only one vaccine (Grifols, and Sequirus).[70]

48.    Vaccines against one illness are not substitutes for vaccines against a different illness. Each vaccine indication constitutes a separate market.  As Arnould and DeBrock put it, the "product market for the 'vaccine industry' is really a collection of a number of different markets,

---

[62]  IOM 2004 Report, p. 139.

[63]  Rodewald, Orenstein, Mason, and Cochi, *op. cit.*, p. S108.

[64]  CDC, "VFC CDC Vaccine Price List Archives," available at http://www.cdc.gov/vaccines/programs/vfc/awardees/vaccine-management/price-list/archive html.

[65]  CDC, "Vaccine Tracking System (VTrckS)," available at https://www.cdc.gov/vaccines/programs/vtrcks/index.html.

[66]  IOM 2004 Report, pp. 138-139.

[67]  IOM 2004 Report, p. 139.

[68]  Berndt, Denoncourt, and Warner, *op. cit.*, p. 55.

[69]  W.L. Chu, "GSK purchases Wyeth's vaccine facility," September 1, 2005, available at https://www.outsourcing-pharma.com/Article/2005/09/02/GSK-purchases-Wyeth-s-vaccine-facility.

[70]  CDC, "VFC CDC Vaccine Price List Archives," https://www.cdc.gov/vaccines/programs/vfc/awardees/vaccine-management/price-list/index.html.

---

each representing a different product (vaccine) aimed at a different indication.  For example, the MMR vaccine certainly is not in competition with the Polio vaccine."[71]

49.     Duopoly (two sellers) is the most common market structure in childhood vaccine supply in the U.S., currently characterizing six of the ten childhood vaccine markets, as shown in the right-hand column of Table 2.[72]  Two markets had three sellers, and two markets were monopolies, both Merck:  MMR and Varicella.  The left-hand column from 2008 shows that market structure has changed little in the past ten years.[73]

---

[71]  R.J. Arnould and L. DeBrock, "An Overview of the Market for Vaccines in the United States," Background Paper Prepared for the Committee on the Evaluation of Vaccine Purchase Financing in the United States, August 2002, p. 6.

[72]  See Table 1 above and CDC, "Archived CDC Vaccine Price List as of September 1, 2017," available at https://www.cdc.gov/vaccines/programs/vfc/awardees/vaccine-management/price-list/2017/2017-09-01.html#modalIdString_CDCTable_0.

[73]  CDC, "Archived CDC Vaccine Price List as of September 23, 2008," available at https://www.cdc.gov/vaccines/programs/vfc/awardees/vaccine-management/price-list/2008/2008-09-23.html#f5.

**TABLE 2**
**NUMBER OF VACCINE MANUFACTURERS IN THE US 2008 AND 2017**

| Vaccine | 2008 | 2017 | Manufacturers in 2017 |
|---------|------|------|------------------------|
| DTaP | 2 | 2 | GSK, Sanofi Pasteur |
| Hepatitis A | 2 | 2 | GSK, Merck |
| Hepatitis B | 2 | 2 | GSK, Merck |
| Hib[74] | 2 | 3 | GSK, Merck, Sanofi Pasteur |
| PCV[75] | 1 | 2 | Merck, Pfizer |
| Polio | 2 | 2 | GSK, Sanofi Pasteur |
| Influenza[76] | 4 | 3 | GSK, Sanofi Pasteur, Seqirus |
| MMR | 1 | 1 | Merck |
| Varicella | 1 | 1 | Merck |
| Rotavirus | 2 | 2 | GSK, Merck |

50.     Merck competes with GSK in duopoly markets in markets for hepatitis A and B vaccines, and in the market for the rotavirus vaccine.  These markets are highlighted in Table 2A because I use them as yardsticks later in this report.  As described below, Merck and GSK have competed in the market for hepatitis A and B vaccines since 1996 and 1989, respectively.  Merck and GSK have competed in the market for rotavirus vaccines since 2008.  Merck and GSK also compete in the market for hib vaccines along with Sanofi Pasteur.  Merck's pricing in duopoly markets in which it competes with GSK will be used as a guide to estimate how Merck would have priced

---

[74]  GSK released a new vaccine.  See "FDA Approves GlaxoSmithKline (GSK)'s Hib Vaccine, Hiberix(R)," *FierceBiotech*, August 20, 2009, available at http://www.fiercebiotech.com/biotech/fda-approves-glaxosmithkline-gsk-s-hib-vaccine-hiberix-r.

[75]  Merck released a new vaccine.  Pfizer acquired the first producer, Wyeth.  See N. Singer, "In Wyeth, Pfizer Sees a Drug Pipeline," *The New York Times*, January 26, 2009 available at http://www.nytimes.com/2009/01/27/business/27wyeth html.

[76]  Novartis sold the rights to its flu vaccine to Seqirus.  See "Seqirus now shipping its complete portfolio of seasonal influenza vaccines to US market for the 2016-2017 season," available at http://www.seqirus-us.com/news-room/Seqirus-shipping-complete-portfolio-of-seasonal-vaccines-to-US-market.

Medimmune's nasal spray, FluMist, was removed from ACIP's list because of data showing relatively lower effectiveness compared to other flu vaccines.  See CDC, "ACIP votes down use of LAIV for 2016-2017 flu season," available at https://www.cdc.gov/media/releases/2016/s0622-laiv-flu.html.

---

had there been competition from GSK, or some other manufacturer, in the market for vaccines against MMR. The three childhood vaccine markets used as yardsticks are listed in Table 2A.

**TABLE 2A**
**NUMBER OF VACCINE MANUFACTURERS**
**OF MMR AND YARDSTICK VACCINES**

| Vaccine | 2008 | 2017 | Manufacturers in 2017 |
|---|---|---|---|
| Hepatitis A | 2 | 2 | GSK, Merck |
| Hepatitis B | 2 | 2 | GSK, Merck |
| MMR | 1 | 1 | Merck |
| Rotavirus | 2 | 2 | GSK, Merck |

## G. Pricing in Vaccine Markets

51. In the case of single-source vaccines, the seller is a monopolist. A vaccine monopolist benefits from government vaccine mandates which in effect require vaccine purchase and by coverage in health insurance which decreases the out-of-pocket price of vaccines to patients at the time of use. In economic terms, a monopolist vaccine seller faces an inelastic demand, meaning that quantity purchased declines little when the price is raised. The profit-maximizing monopolist raises price above marginal cost to a degree inversely related to the elasticity of demand.

52. The economics of vaccine pricing changes profoundly when the number of sellers goes from one to two, as a consequence of features of demand for vaccines and of the cost structure of vaccine production. In terms of demand, if there are multiple sources of a vaccine against the same illness, "the cross-price elasticity of demand between substitutable [vaccine] products is high,"[77] meaning buyers will readily substitute one product for another based on price. A buyer (*e.g.*, a pediatrician or a buying group representing a block of physicians) needs only one additional source of vaccine against a given illness in order to play sellers off against one another

---

[77] Danzon and Pereira, *op. cit.*, p. 241.

in seeking lower prices. Competition between two sellers increases the elasticity of demand each faces, leading to lower prices with duopoly in supply compared with monopoly.

53.    Michelle Taylor, Merck's 30(b)(6) designee on pricing,[78] testified in deposition about how the presence of a competitor affected Merck's pricing decisions. For both public and private purchasers, the presence of a competitor pressured Merck to match a competitor's lower price.[79]

54.    A vaccine manufacturer sets a list price for its product to private purchasers. For example, Merck's list price for its MMR-II vaccine was $40.37 in December 2005, $50.16 in December 2010, and $62.79 in December 2015.[80] Merck's list price for its ProQuad vaccine was $117.60 in December 2005, $133.93 in December 2010, and $180.05 in December 2015.[81] Discounts off the list price may be made available to some buyers, reducing the buyer's net price for the vaccine. Discounts can be due to differences in distribution costs (*e.g.*, volume discounts) or due to a buyer's buying power. According to the Mercer 1995 Report, discounts off the list price of Merck's MMR product averaged 5%.[82] Merck sales data indicate the average discount off MMR-II increased in later years.[83]

---

[78]  Deposition of Michele Taylor, in this matter, May 9, 2017, pp. 15-16 and Taylor Deposition, Exhibit 1.

[79]  Taylor Deposition, pp. 81-82: "And secondarily, that in cases like RotaTeq versus Rotarix, if there is a much greater delta between the two products, that there is the potential that it could put market share at risk. Q. Okay. And when you say being more responsive to the CDC, you testified that if other competitors are being more responsive, by more responsive you mean if they reduce their prices in response to a request by the CDC -- A. Yes. Q. -- then Merck may do the same? A. We may be forced. It may be more difficult for us not to do the same. Q. No, but my question is, in dealing with private customers, if competitors reduced their prices by being more responsive to the private purchasers, would Merck do the same? A. To the extent that we need to to maintain similar value across the portfolio, yes." Also see p. 242-244.

[80]  Attachment C.1 (described in more detail below).

[81]  Attachment C.2 (described in more detail below).

[82]  Mercer 1995 Report, p. 19.

[83]  Attachment D.3.a Column 3 (described in more detail below).

---

55.     In addition to lower prices, manufacturers may offer higher discounts when in competition with another seller.  The Mercer 1995 Report indicates discounts off list prices of vaccines facing competition averaged 7% or more.[84]

56.     From April to December 2007, Freed *et al.* surveyed a sample of private practices regarding their vaccine purchases.[85]   Results indicate that discounts off list price were much higher for vaccines facing competition.  For example, the average discount off MMR-II was 5.8% and the average discount off Merck's hepatitis B vaccine, Recombivax (which faced competition from GSK), was 47.3%.[86]

57.     Discovery materials also indicate that discounts off list price are higher for vaccines facing competition.  For example:

- The "Fair Advantage Consortium Membership Agreement," effective in February 2015, indicates the discount for MMR-II is 5%, whereas the discount for RotaTeq is 9%.[87]

- Merck slides titled "Key Financial Metrics: 5Y Plan 2014-18" indicate that: "Total discounts (cash, managed care, etc.) Increase 2% for MMR®II after competition entry."[88]

- Merck slides titled "MMRV Vaccines 2012 Budget / 5 Year Plan Finance slides" indicate: "Increased private discounts with competitor entry" and "Add'l 2% all products, due to competition."[89]

---

[84]  Mercer 1995 Report, p. 19.  The weighted averaged for "DTP-Hib/DTaP/Hep B" is listed as 7%.  The weighted averaged for "DTaP/Hib" is listed as 11%.

[85]  G.L. Freed *et al.*, "Variation in Provider Vaccine Purchase Prices and Payer Reimbursement," *Pediatrics*, 122(6), December 2008, pp. 1325-1331 at p. 1327.

[86]  *Ibid.*  For MMR-II: ($44.84 – $42.23) / $44.84 = 5.8%.  For Recombivax: ($23.20 - $12.23)/$23.20 = 47.3%.

[87]  CPC001726-29 at 28.

[88]  MRK-CHA00477250-60 at 53.

[89]  MRK-CHA01035435-48 at 35-36.

---

- Merck May 23, 2007 slides titled "Private Sector Contract Strategy" include an "illustrative" slide showing a 5% additional "Competitive response discount."[90] The slides also describe potential "pre-competition discounts" of 1%-2%.[91]

- Describing Merck's profit plan from 2011, employee Michele Taylor explained: "… they were just acknowledging that if we have competition in the marketplace that there may be an expectation from our customers that we would increase our discounts. There is the assumption that our competitor will enter with additional discounts. And so we just want to be prepared in our planning that if we have to - - again, we're looking at the full portfolio. We may or may not have to make any adjustments, but that if we do, we would have planned for it."[92]

58. Merck employee Michele Taylor explained the advantages, when facing competition, of increasing the discount rather than changing the catalog price:

> "It's subtle, but I think if we lowered the catalog price, it would probably have more of an impact on their reimbursement from managed care. But that isn't what drives what we're doing. We just -- generally, it's easier, because it's a lot of work to change the catalog price, but we can very easily change discounts. And there's a perception, too, from providers that they're getting more. If we lowered the catalog and left their discount at 2 percent, they may not feel like -- you know, there would still be 2 percent. But, you know, the expectation is, when you have a competitor come to market that as manufacturer, you're going to recognize that and provide some additional discounts."[93]

59. Discounts a manufacturer offers to physicians or buying groups may depend on the buyer committing to using a portfolio of the manufacturer's products.[94] For example, as shown in

---

[90] MRK-CHA00933190-254 at 203.

[91] *Ibid.*, at 205.

[92] Taylor Deposition, pp. 242-243.

[93] Taylor Deposition, pp. 243-244.

[94] See Deposition of April Cohen, in this matter, January 4, 2018, pp. 84-86 (" ▮▮▮▮ ") and p. 176 ( ▮▮▮ )

---

Table 2 above, both Merck and GSK sell a majority of the required childhood vaccines. If a pediatrician commits to purchasing the full range of Merck or GSK products, the pediatrician may benefit from a larger discount on the products. It may also be more convenient for the pediatrician to contract with one rather than multiple suppliers and to set one vaccine schedule for all children in the practice.[95]

60.  Economists characterizing competition in vaccine markets emphasize the role of the cost structure in explaining the intensity of competition even among two competitors. When variable (or marginal) costs are low relative to sunk and fixed costs, competition can push sellers to offer prices much below the levels that would have prevailed in a monopoly market. "Bertrand competition" is the economic term used to refer to this form of price competition between two sellers.[96] In Bertrand competition sellers set prices regarding the prices of competitors as given. When products are very close substitutes, as they would be in the case of vaccines against the same condition offered by competing manufacturers, Bertrand competition, even with only two sellers, leads to prices bid down to marginal costs.[97]

61.  Bertrand competition is the consensus form of competition among economists writing on vaccine pricing:

> "These economics [related to the cost structure] define a Bertrand price-competition framework, and, therefore we expect prices to be low and close to

---

██████████████████████████████████████ "). Ms. Cohen has been the director of US new product strategy at GSK since 2012 (pp. 14-15).

[95]  Cohen Deposition, pp. 113-114 ("██████████████████████████████████████████████████████████████████████████████████████████████████ ").

[96]  In a review of drug pricing generally, Berndt, McGuire, and Newhouse, *op. cit.*, p. 10, characterize competition between two manufacturers of substitute products as "Bertrand competition."

[97]  For a textbook treatment of Bertrand competition, see R. Pindyck and D. Rubinfeld, *Microeconomics*, 8th Edition, Prentice Hall, 2013, Chapter 12. Non-cooperative price competition can take place between two drug sellers when goods are partial substitutes as analyzed in Berndt, McGuire, Newhouse, *op. cit.*

---

marginal cost and to one another.  This pricing structure is, in fact, what we observe."[98]

  "[Vaccine manufacturers] adopt non-cooperative, Bertrand pricing strategies.  If multiple firms enter the market with close substitutable products and each faces low and non-increasing marginal cost up to the scale of the market, non-cooperative pricing implies that prices could potentially fall to marginal cost."[99]

Michelle Taylor's description of Merck matching prices of competitors, described above, puts Merck practices in line with the Bertrand model of vaccine pricing.

62.     In sum, the demand and cost structure of vaccines implies there will be a big difference in pricing between markets with one and two sellers.  A monopolist selling a required vaccine can take advantage of consumer willingness to pay and the inelasticity of demand.  In a duopoly market, high cross price elasticity of demand between vaccines for the same indication and low marginal costs in relation to fixed costs implies independent decisions by two competing vaccine sellers will reduce price substantially below the monopoly price.

## H.     Research and Development and New Vaccines

63.     Research on new vaccines is funded by public and private sources.  The National Institute of Allergy and Infectious Diseases, part of the National Institutes of Health, is the federal agency responsible for establishing priorities and for funding basic research on development of vaccines.[100]  Private firms also invest in vaccine R&D.  The standard economic approach to firm decisions about spending on R&D regards R&D as an investment driven by expected profitability.  A review in the *Handbook of Health Economics* refers to the "canonical" theory of innovation in which "investments into the discovery of innovation rise with the profits expected

---

[98]  Berndt, Denoncourt, and Warner, *op. cit.*, pp. 44-45.  The authors regard pricing in several vaccine markets as conforming to the Bertrand model, discussing hepatitis A (two suppliers, Merck and GSK), hepatitis B (again, two suppliers, Merck and (GSK), and the Hib vaccine (two suppliers, Sanofi Pasteur and Merck).

[99]  Danzon and Pereira, *op. cit.*, p. 241.

[100]  IOM 2004 Report, p. 56.

---

from successful discovery,"[101] an approach that has been applied empirically to the vaccine industry.[102]

64.    Profitability of investment in R&D for a particular vaccine can be affected by a number of factors including expected costs of production, expected prices, and expected volume of sales. Regulated prices, such as apply to CDC-managed purchases of MMR vaccines, encourage investment in product differentiation to create "new products" to avoid public price limits.[103] The bargaining power of a large public buyer can lower average prices and depress investment incentives.[104]

65.    In terms of sales volumes, higher expected sales at profitable margins increase attractiveness of an investment in a new or improved vaccine.  New federal sales-increasing policies – the 1991 CDC recommendation that all infants be vaccinated against hepatitis B, and the 1993 Medicare decision for the influenza vaccination – stimulated vaccine research in these specific disease areas.[105]

66.    Changes in the underlying scientific understanding of disease or mechanisms of vaccine action, sometimes referred to as "knowledge shocks," also stimulate vaccine development.[106]  A knowledge shock can take several forms, such as when a discovery opens up potential lines of application.  A knowledge shock could take the form of "bad news" and still stimulate new research, as when a previously well-regarded drug product is discovered to have severe adverse

---

[101]  D. Goldman and D. Lakdawalla, "Intellectual Property, Information Technology, Biomedical Research, and Marketing of Patented Products," Chapter 13 in M. Pauly, T, McGuire and P. Barros (eds.) *Handbook of Health Economics,* Volume 2, Elsevier Publishing, 2012, pp. 825-872 at p. 833.

[102]  A. Finkelstein, "Static and Dynamic Effects of Health Policy:  Evidence from the Vaccine Industry," *Quarterly Journal of Economics*, 119(2), 2004, pp. 527-564 at p. 531 and Grabowski and Vernon, *op. cit.*, pp. 37-40.

[103]  Berndt, Denoncourt, and Warner, *op. cit.*, p. 44.

[104]  Grabowski and Vernon, *op. cit.*, pp. 36-40 and McGuire (2003), *op. cit*.

[105]  Finkelstein, *op. cit.*, p. 535.  Finkelstein also studied a cost reducing policy, the 1986 Vaccine Injury Compensation Fund which reduced expected liability costs of manufacturers for some vaccines (including MMR) but not others.

[106]  Danzon and Pereira, *op. cit.*, p. 241.

side effects and researchers seek to discover new products to fill the treatment need.[107] "Discovery" that a drug is less effective than it had been previously thought to be also constitutes a knowledge shock that can stimulate new research in response to a new market opening.

67.     The pace of research to develop new vaccines has been steadily increasing since 1990, with small and medium-sized companies doing the bulk of early (Phase I) trials whereas later (Phase III) trials tend to be done primarily by the largest companies.[108]  Expected profitability of new products is one of the factors stimulating investment, and vaccines on average are a profitable line of business.  The operating margin for the vaccine divisions of the largest four manufacturers (GSK, Merck, Pfizer, and Sanofi) has been found to be comparable to the margins for other pharmaceutical products.[109]

68.     Grabowski and Vernon compared information on drug development costs for vaccines and pharmaceuticals.  While the direct costs of drug development were roughly the same, in the $20-50 million range in the 1990s, success rates were higher and development times were shorter for vaccines, indicating that the discounted cost for bringing the average vaccine to market would be less than for the average pharmaceutical drug.[110]  Berndt, Denoncourt, and Warner refer to a presentation by GSK vaccine officials "which stated that clinical development of vaccines was increasingly complex but 'still somewhat more economical compared to Pharma' and with a 'high success rate post 'proof of concept' of 70 percent."[111]

---

[107]  For example, after Wyeth's rotavirus vaccine was withdrawn because of safety concerns, Merck and GSK obtained FDA approval for separate rotavirus vaccines, each with a lower risk of side effects.  See J.L. Schwartz, "The First Rotavirus Vaccine and the Politics of Acceptable Risk," *The Milbank Quarterly*, 90(2), June 2012, pp. 278-310 at p. 300.

[108]  T.J. Hwang and A.S. Kesselheim, "Vaccine Pipeline has Grown During the Past Two Decades with More Early-Stage Trials from Small and Medium-Sized Companies," *Health Affairs*, 35(2) 2016, pp. 219-226 at p. 219.

[109]  *Ibid.*, p. 221.

[110]  "… there are some indications that the probability of success is higher and development times are lower for vaccines." Grabowski and Vernon, *op. cit.*, p. 20.

[111]  Berndt, Denoncourt, and Warner, *op. cit.*, p. 25.

---

## V.   MERCK'S U.S. MARKET POWER IN THE MARKET FOR THE MUMPS VACCINE

### A.   Relevant Geographic and Product Market

69.   Merck sells the MMR vaccine throughout the U.S.  Any seller of a vaccine product requires approval by the U.S. FDA to sell within the U.S.  FDA approval applies only to the U.S. The relevant geographic market is the entire U.S. and its associated territories.

70.   The relevant product market includes vaccines against MMR.  The CDC recommends and states require children (for school entry and other activities, with some exceptions) be vaccinated against MMR.  No other product, including any other vaccine product against different conditions, satisfies these regulatory requirements.  A vaccination against another illness does not protect a child against MMR.  In the U.S., there have been and currently are no alternatives to the Merck MMR-vaccine product either from a regulatory or from a medical standpoint.

### B.   Merck has 100% of the U.S. Market Share for the MMR Vaccine

71.   In the U.S., Merck is the only seller of vaccines against mumps, and has been for many years.  Indeed, since MMR was first licensed in the U.S. in 1971, there has been no other seller of vaccines against measles, mumps or rubella.[112]

### C.   Merck's Monopoly is Maintained by Alleged Misrepresentations and Omissions Related to Merck's Mumps Vaccine

72.   The Mercer 1995 Report attributed Merck's monopoly to its reputation:[113]

> "In most cases, the technology for making the product is well known and there are multiple suppliers of the vaccine.  The exception is MMR.  Although not patent protected, Merck's mumps vaccine is widely recognized as the most safe and effective in the world.  Consequently, Merck enjoys a monopoly on MMR in the U.S. and has built a strong market share around the world."

---

[112]  In their research study, Danzon and Pereira, *op. cit.*, p. 248, define competitors as "direct" when offering the same product as in the case of multivalent vaccines and as "indirect" when a seller produces at least one of the vaccines in a multivalent product.  Applying this definition to the Merck's MMR vaccine would lead to designation of Merck as having no direct or indirect competitors in the U.S. since Merck was first licensed to sell MMR in 1971.

[113]  Mercer 1995 Report, *op. cit*., p. 7.

---

73.     Relators and Plaintiffs allege that Merck made misrepresentations and omissions related to its Mumps Vaccine to protect its monopoly on MMR vaccines in the U.S.

74.     Merck was aware that a high perceived efficacy and perceived ability to demonstrate that the vaccine protects against disease discourages entry by competitors. As Merck saw it, the high perceived efficacy and perceived ability to demonstrate protection against disease "may have played a key role in keeping other competitors out of the U.S. market," and "[r]elaxing the criteria for success would lower the bar for the competition."[114]

## D.     Merck Sets the Private Price for MMR Well Above Marginal Cost

75.     A firm with market power can set price above marginal cost. The degree to which a firm sets price above marginal cost is an indication of demand inelasticity – ability to raise price without losing buyers -- and market power. A well-known measure of a firm's elevation of price is the Lerner Index $= \frac{p-c}{p}$ where c is marginal cost and p is price.[115] The Lerner Index ranges between 0 and 1, with higher values implying more market power. For example, if a firm set a price equal to two times marginal cost, the Lerner Index would be 0.5 ($= \frac{2c-c}{2c}$).[116]

76.     The Mercer 1995 Report referred to above estimates that the average cost of production of MMR-II per dose was $4.31. Average cost includes fixed costs (such as costs of administration mentioned in the Mercer 1995 Report). Marginal costs of production would have

---

[114] M. Morsy, "M-M-R®II: Mumps End Expiry study status & Regulatory implications," GRSRC, October 11, 2002, MRK-CHA00040705 at slides 4 and 26.

[115] A.P. Lerner, "The Concept of Monopoly and the Measurement of Monopoly Power," *The Review of Economic Studies*, 1(3), June 1934, pp. 157-175 at p. 169. In profit maximization a firm marks up cost such that $\frac{p-c}{p} = -\frac{1}{\varepsilon}$, where ε is the price elasticity of demand. Thus a firm with a low price elasticity (a negative number since quantity falls in response to a price rise, sets p such that the p – c difference is a large part of the price p.

[116] In the Department of Justice (DOJ)/Federal Trade Commission (FTC) Merger Guidelines, raising price 5% above the competitive price cost triggers concern about the exercise of market power. When price is 5% above marginal cost, the value of the Lerner Index is 0.05 ($= \frac{(1.05-1)}{1.05}$). Thus, even relatively low values of the Lerner Index can indicate market power. U.S. Department of Justice and the Federal Trade Commission, "Horizontal Merger Guidelines," August 19, 2010, pp. 1-34 at p. 10, available at https://www.ftc.gov/sites/default/files/attachments/merger-review/100819hmg.pdf.

---

been less than \$4.31; production costs were only \$1.72 per dose.  In 1995, the public contract price was \$16.00 and the list price to private purchasers was \$25.87.[117]  During this year both the public and private prices were large multiples of average cost.  The private price of MMR-II exceeded average cost by a factor of approximately six, implying the private price would have been an even higher multiple of marginal cost.

77.    A private list price of \$25.87 combined with a marginal cost less than \$4.31 implies a Lerner Index of 0.83 $\left(=\frac{25.87-4.31}{25.87}\right)$.  Figure 1 shows the public and private prices for MMR-II from 2000-2016 in relation to the estimated average cost of \$4.31 from 1995.  Over this period, public prices for MMR-II were going up at the maximum rate permitted by regulation of the cap.[118]  Private list prices were rising even faster.  By 2016, the private list price for a dose of MMR-II had risen to \$60.54, more than twice the price in 1995.[119]

---

[117]  See CDC, "Vaccine Prices," effective date October 1, 1995.

[118]  Attachment C.1 includes MMR-II prices reported by the CDC between December 2005 and January 2016.  Other prices are from CDC, "CDC Vaccine Price List," prices last updated September 27, 2000; CDC, "CDC Vaccine Price List," prices last updated December 4, 2001; CDC, "CDC Vaccine Price List," prices last updated November 2, 2002; CDC, "CDC Vaccine Price List," prices last updated November 21, 2003; and CDC, "CDC Vaccine Price List," prices last updated December 1, 2004.

[119]  See Attachment C.1, showing a public list price of \$62.79 per dose in January 1, 2016.  This price includes a \$2.25 excise tax, which indicates the price is \$60.54 when the tax is excluded.

**FIGURE 1**
**MMR VACCINE PUBLIC AND PRIVATE LIST PRICES BY YEAR**



### E. Class-Wide Impact of Merck's Conduct

78. As a result of Merck's alleged conduct, prices paid for the MMR-II vaccine were kept at supra-competitive levels. Without entry by GSK (or another manufacturer), prices were higher by the artificially elevated willingness to pay caused by Merck's alleged misrepresentations and omissions related to its Mumps Vaccine. Actual prices were elevated in relation to what purchasers would have paid had there been two sellers competing rather than Merck selling as a monopolist. Analysis of the economic impact of Merck's alleged actions can and should be conducted on a Class-wide basis using Class-wide economic data and standard economic methodologies. As described in more detail below, my calculation of damages for direct purchasers will use Class-wide data and information on prices, quantities, entry conditions and other relevant economic factors to assess the relationship between Merck's conduct and overcharges paid by members of the Class.

79. Economic theory and empirical evidence indicate that overcharges were common to members of the Class who, but for Merck's alleged wrongdoing, would have paid lower prices

---

for the MMR-II vaccine.  This opinion is based on my expertise as an economist and my review of the relevant scientific literature, discovery materials, and data obtained for this matter.

## VI.    CALCULATION OF OVERCHARGE DAMAGES TO PRIVATE DIRECT PURCHASERS

80.    Overcharge damages to private direct purchasers (hereinafter, "buyers" or "purchasers") are measured as the difference between what they actually paid for the MMR-II vaccine and what they would have paid in a counterfactual or but-for world in which Merck did not make the alleged misrepresentations or omissions related to its Mumps Vaccine.

81.    The formula by which total aggregate overcharge damages for purchasers for a given time period will be calculated is:

$$D_t = \Delta p_t q_t \qquad (1)$$

where $\Delta p_t$ is the increase in price of the MMR product due to Merck's alleged misrepresentations and omissions at time t, $q_t$ is the quantity of sales to private purchasers during time t, and the product, $D_t$ is the measure of damages for time t.  The damage formula (1) makes the assumption that the quantity purchased in year t is the same in the but-for as in the actual world.

82.    The $\Delta p_t$ is an average increment in price to private purchasers due to Merck's alleged misrepresentations or omissions.  An average yields an accurate estimate of total aggregate damages even if the level of prices differs among members of a class (*e.g.*, if larger buyers were to receive higher discounts off list price).[120]

83.    From the standpoint of economics, Merck's alleged misrepresentations and omissions concerning its Mumps Vaccine elevated the price and harmed private purchasers in two main

---

[120] Mathematically, this is because the quantities from different segments associated with price changes are the same in the but-for as in the real world.  Suppose there are two sets of buyers with quantities purchased $q_1$ and $q_2$. Let $\Delta p_1$ be the increased price to the first set of buyers due to monopoly power and $\Delta p_2$ be the increased prices to the second set of buyers.  Total damages are $\Delta p_1 q_1 + \Delta p_2 q_2$.  Since the average price increase $\overline{\Delta p} = \frac{\Delta p_1 q_1 + \Delta p_2 q_2}{q_1 + q_2}$, it can easily be seen that $\overline{\Delta p}(q_1 + q_2) = \Delta p_1 q_1 + \Delta p_2 q_2$.  Total damages can be measured by using the average prices.

ways. First, had Merck not misrepresented its ability to demonstrate protection against disease, buyers would have put a lower value on the vaccine. This decrease in willingness-to-pay or demand would reduce the price Merck could charge.

84. There is not, in my view, sufficient evidence to estimate how much lower demand from buyers would have been, and correspondingly the private price for MMR would have been had Merck not made the alleged misrepresentations or omissions related to its Mumps Vaccine. To be conservative, I attribute no damages to private purchasers because of a decrease in perceived value of the vaccine.

85. Second, accurate information about Merck's inability to demonstrate protection from disease would have reduced the cost of entry of potential competitors, making it less expensive to develop and manufacture a vaccine to compete with the Merck product. I understand that Merck's potential competitors in the MMR vaccine market would have been required to conduct non-inferiority tests.[121] A "lower bar" on efficacy or the ability to demonstrate protection from disease would lower entry costs for a potential competitor. A lower cost of entry would increase the likelihood that another vaccine manufacturer would enter the U.S. market, which would change the market structure in supply of a MMR vaccine from a monopoly to a duopoly. Merck's maintenance of a monopoly rather than a duopoly price harmed buyers by forcing them to pay more for the vaccine.

86. In the absence of the misperception of Merck's ability to demonstrate protection from disease, it would have been more likely that the U.S. market would have been served by at least two manufacturers, not Merck alone.

87. I understand from counsel that an expert for the Plaintiffs concludes that GSK likely would have entered with its MMR vaccine, Priorix, as early as 2009. I understand the expert concludes that GSK's Priorix was and is a viable competitor to Merck's MMR-II vaccine, an opinion consistent with the economic evidence and Merck's own materials in this matter. Priorix

---

[121] See description of non-inferiority tests in footnote 22 above.

uses the same Jeryl Lynn strain of Mumps virus as MMR-II.[122]  Furthermore, compared to MMR-II vaccination with Priorix imposes less stinging pain on the infant.  Merck was aware of Priorix's superior tolerability, referring to it as a "major competitive difference," which caused it to lose sales in markets where the two MMR vaccines were both available.[123]  Merck was also aware that GSK used Priorix's superior tolerability to obtain a competitive advantage over MMR-II.[124]

88.     GSK's Priorix has competed successfully with Merck's MMR-II and other MMR vaccines in markets outside the U.S.  Danzon and Pereira's Table 5 lists international licenses for vaccines for several countries.[125]  Merck was active in Canada from 1979, and GSK since 1998.[126]  In addition to Canada, GSK was licensed to sell an MMR vaccine in the United Kingdom (1997), France (1999) and Portugal (1998).[127]

## A.     Choice of a Yardstick to Characterize Pricing in a Merck-GSK Duopoly in the MMR Vaccine

89.     To estimate what the private prices of the MMR-II vaccine would have been after entry by a competitor, I examined other U.S. vaccine markets that could serve as a model or yardstick for how competition and pricing would have played out in the MMR market had there been two

---

[122]  For example, see K. Wellington and K.L. Goa, "Measles, Mumps, Rubella Vaccine (Priorix™; GSK-MMR): A Review of its Use in the Prevention of Measles, Mumps and Rubella," *Drugs*, 63(19), 2003, pp. 2107-2126 at p. 2109.

[123]  See June 2002 draft of a document titled "Proposed New Stabilizer for M-M-R®II" referring to Priorix's superior tolerability as a "major competitive difference" and noting resulting "lost sales" in Europe (MRK-CHA00207859-99 at 62-63).  Also see an August 2002 document titled "Proposed New Stabilizer for M-M-R®II" noting "competitive advantage" of Priorix and its "impact on market share" (MRK-CHA00207690-735 at 696).

[124]  *Ibid.*, at 730 noting that "GSK exploits the real/perceived tolerability advantage of Priorix versus [MMRII] that is impacting market share."  Also see a June 1999 document titled "M-M-R®II Defense Action Plan" indicating that: "Concerns about the immediate local tolerability of [MMRII] have been raised for years. The issue has been of particular concern in Europe where SmithKline Beecham has capitalized on it . . . with Priorix" (MRK-CHA00285276-296, at 283).

[125]  Danzon and Pereira, *op. cit.*, p. 258.

[126]  *Ibid.*

[127]  *Ibid.*

---

sellers.  Ideally, this yardstick market would share features important to pricing with the MMR vaccine market but-for the entry of GSK as a competitor.

90.    Merck and GSK compete as duopolists in markets for three childhood vaccines:  hepatitis B, hepatitis A, and rotavirus.  All three vaccines are good candidates for choice of a yardstick for Merck MMR-II counterfactual pricing.  As shown in Table 3, all of these vaccines have had similar levels of sales in the hundreds of millions of dollars per year.  In my overcharge damages analysis, I will make use of all three vaccines where Merck and GSK competed as duopolists; specifically, using the average price experience of these three vaccines to estimate the counterfactual price of MMR-II had GSK been in the market.

TABLE 3
COMPARISON OF MMR, ROTAVIRUS, HEPATITIS A, AND HEPATITIS B, VACCINES

| Conditions | MMR | Hepatitis B | Hepatitis A | Rotavirus |
|---|---|---|---|---|
| Names | Merck: MMR-II | Merck: Recombivax GSK: Engerix | GSK: Havrix Merck: Vaqta | Merck: RotaTeq GSK: Rotarix |
| Recommended Age for First Dose | One-Year | Infancy | One-Year | 2 Months |
| FDA Approval | Merck (1971) | Merck (1986) GSK (1989) | GSK (1995) Merck (1996) | Merck (2006) GSK (2008) |
| Sales ($ millions)[128] | | | | |
| 2000 | $144 | $259 | $85 | |
| 2005 | $217 | $251 | $140 | |
| 2010 | $185 | $232 | $199 | $258 |
| 2015 | $233 | $253 | $185 | $311 |

---

[128]  IMS NSP Data.

EXPERT REPORT OF THOMAS G. MCGUIRE, PH.D.

91.     Merck received FDA approval for the recombinant version of its hepatitis B vaccine in 1986, Recombivax, which is still used today.[129]  ACIP recommended all healthy infants receive the hepatitis B vaccine in 1991.[130]  GSK received initial approval for its recombinant vaccine in 1989, Engerix.

92.     In the case of the hepatitis A vaccine, GSK received FDA approval for Havrix in 1995, and one year later Merck received approval for Vaqta in 1996.[131]

93.     In 2001, GSK received approval of Twinrix, a combination vaccine that included hepatitis A and hepatitis B.[132]  It is only recommended for patients 18 years and older so cannot be substituted for the pediatric versions of the monovalent vaccines.[133]  Two other combination vaccines were released that included hepatitis B:  Merck's Comvax (in 1996) and GSK's Pediarix (in 2002).[134]  Because Comvax and Pediarix cannot be administered before 6 weeks of age,[135] neither of these combination vaccines have replaced the monovalent vaccines.

94.     Merck received FDA approval for its rotavirus vaccine RotaTeq in 2006 and GSK received FDA approval for Rotarix in 2008.[136]  RotaTeq is first included in the April 14, 2006

---

[129]  See "Vaccine Timeline: Historic Dates and Events Related to Vaccines and Immunization," Immunization Action Coalition, available at http://www.immunize.org/timeline/.

[130]  *Ibid*.

[131]  *Ibid*.

[132]  *Ibid*.

[133]  "Combination Vaccine for Hepatitis A and B," available at http://www.webmd.com/hepatitis/combination-vaccine-for-hepatitis-a-and-b.

[134]  "Vaccine Timeline: Historic Dates and Events Related to Vaccines and Immunization," Immunization Action Coalition, available at http://www.immunize.org/timeline/.

[135]  CDC, "A Comprehensive Immunization Strategy to Eliminate Transmission of Hepatitis B Virus Infection in the United States: Recommendations of the Advisory Committee on Immunization Practices (ACIP) Part 1: Immunization of Infants, Children and Adolescents," *Morbidity and Mortality Weekly Report*, 54(RR-16), December 23, 2005, p. 9, available at https://www.cdc.gov/mmwr/PDF/rr/rr5416.pdf.

[136]  See "Vaccine Timeline: Historic Dates and Events Related to Vaccines and Immunization," Immunization Action Coalition, available at http://www.immunize.org/timeline/.

---

CDC price list and Rotarix is first included by the September 23, 2008 list.[137] RotaTeq is administered in a three-dose series whereas Rotarix is only administered in two doses.[138]

## B.     Data

95.     I used two datasets to conduct my overcharge damages analysis.  The CDC's vaccine price lists include the public and private price per dose for each vaccine.[139]  As described above, the public price is negotiated annually by the CDC.  The private price is a catalog or list price and does not include chargebacks, rebates, and other discounts.[140]  Discounts are likely to be larger for vaccines marketed by two sellers rather than one.[141]  The CDC's vaccine price lists do not contain information about the number of doses sold.

96.     I also used Merck's sales data for MMR-II and ProQuad.[142]  These transaction-level data provide more detailed information on Merck's sales, including all returns and discounts, by customer and contract.  These data include the number of doses sold (or returned) for each transaction.

---

[137] For RotaTeq, see Attachment C.5.  For Rotarix, see CDC, "Archived CDC Vaccine Price List as of September 23, 2008," available at https://www.cdc.gov/vaccines/programs/vfc/awardees/vaccine-management/price-list/2008/2008-09-23 html.

[138] RotaTeq Package Insert, available at https://www.fda.gov/downloads/biologicsbloodvaccines/vaccines/approvedproducts/ucm142288.pdf and Rotarix Package Insert, available at https://www.fda.gov/downloads/BiologicsBloodVaccines/Vaccines/ApprovedProducts/UCM133539.pdf.

[139] CDC, "VFC CDC Vaccine Price List Archives," available at https://www.cdc.gov/vaccines/programs/vfc/awardees/vaccine-management/price-list/archive html.   Attachment C contains data downloaded from this website.

[140] Berndt, Denoncourt, and Warner, *op. cit.*, p. 76.

[141] *Ibid.* ("Such discounts off the private-catalog list price are likely to occur only in cases where the vaccines can be substituted for another…")  Also see the Mercer 1995 Report, p. 19, showing that volume discounts are larger for vaccines facing competition.

[142] Merck's sales data are available in: MRK-CHA00757038, MRK-CHA00757039, MRK-CHA00757040, MRK-CHA00757041, MRK-CHA00757042, MRK-CHA00757043, MRK-CHA00757044, MRK-CHA00757045, MRK-CHA00757046, MRK-CHA00757047, MRK-CHA00757048, MRK-CHA00757049, MRK-CHA00757050, MRK-CHA00757051, MRK-CHA00757052, MRK-CHA00757053, MRK-CHA00757054, and MRK-CHA00757055.

---

## C.     Private But-For Prices and Damages

97.     The economic assumption behind applying the experience of the yardstick markets to MMR-II is that *the growth in Merck's list prices for MMR-II in the presence of competition from GSK entry would be the same as the growth of Merck's list prices for the yardstick vaccines where Merck experienced competition from GSK.*  A competitor, changing a childhood vaccine market from a monopoly to a duopoly, puts downward pressure on prices.  The quantitative measure of what this downward pressure would have looked like for the MMR-II product is based on what happened to the yardstick vaccines' prices where GSK competition was present.

98.     Introduction of competition could lead to a one-time drop in the level of prices as well as slower growth in prices.  As described by Michele Taylor above, a price drop is often achieved by additional discounts off list prices that are expected by customers after a competitor enters.

99.     Discounts off list price were available for MMR-II in the data I could use, but discounts for the yardstick vaccines were unavailable to me.  As described above, the Mercer 1995 Report indicates that, on average, purchasers receive at least a 2% additional discount off list price on vaccines with competition.[143]  In a sample of private practices in 2008, Freed *et al.* found that Merck's discount off list price for Recombivax and Vaqta was approximately 30% percentage points higher (32.8% versus 3.6%) than its discounts for drugs not facing competition (see Attachment D.1).[144]  Discovery materials show that customers receive bigger discounts on vaccines with competition.  For example, the February 2015 "Fair Advantage Consortium Membership Agreement," includes a 5% discount off list price for MMR-II and a 9% discount off list price for RotaTeq (indicating the extra discount for the vaccine with competition is 4%).[145]  In the same agreement, the discount off list price was 62% for Recombivax and 28% for

---

[143]  The Mercer 1995 Report, p. 19, shows that discounts for competitive vaccine markets were at least 2% higher in 1994.

[144]  See Freed *et al.*, *op. cit.*, p. 1327.  Merck's rotavirus vaccine, RotaTeq, was not facing competition at the time of the survey.

[145]  CPC001726-29 at 28.

Vaqta.[146]  As indicated by the larger discounts for Recombivax and Vaqta (which have had
competition for decades) compared to RotaTeq (which first faced a competitor in 2008),
discounts off list price may increase over time after competition begins.  Discovery materials
also indicate Merck planned to increase its discount to private purchasers of MMR-II by 2%
"due to competition."[147]

100.    I calculate damages to private purchasers using a 2% estimate of the additional discount
purchasers receive after competition is introduced.  Although the material described above
indicates the additional discount likely would have been larger, especially years after
competition began, I chose 2% as a conservative lower bound on competition-driven discounts
for purposes of a damage calculation.

101.    Counsel for private Plaintiffs has instructed me to calculate damages assuming entry by
GSK would have occurred in March 2009, and alternatively, January 2014.  As noted earlier, my
overcharge model could be applied to alternative entry dates.  Attachment D.2 shows the
monthly private list price of Merck's yardstick products, Recombivax, Vaqta, and RotaTeq.
Attachment D.2 also shows the month-to-month rate of growth and the average growth for the
list prices of the yardstick products.  In the counterfactual analysis, once GSK has appeared as a
competitor, MMR-II but-for list prices will be figured by using the yardstick average growth rate

---

[146] CPC001726-29 at 28 indicates the price of Recombivax is $8.98 per dose and the price of Vaqta is $21.95 per
dose, and an additional 1% rebate is provided for both vaccines.  The list price of Recombivax is $23.204 per dose
and the list price of Vaqta is $30.369 (see CDC, "Archived CDC Vaccine Price List as of February 24, 2015,"
available at https://www.cdc.gov/vaccines/programs/vfc/awardees/vaccine-management/price-list/2015/2015-02-
24.html#modalIdString_CDCTable_0).  Thus, the discount off the list price of Recombivax is 100% - $8.98
*(100%-1%) / $23.204 = 62%.  And the discount off the list price of Vaqta is 100% - $21.95 * (100%-1%) / $30.369
= 28%.

As Merck employee Michele Taylor explained: "For products where the catalog price is not a competitive price, it's
not relevant in the marketplace, we establish a contract base price that is more similar to what the price is in the
marketplace, and then the discounts are off of that base price."  Taylor Deposition, p. 27.  Also see Taylor
Deposition, p. 147, explaining that Merck's Hep A and Hep B vaccines' "catalog prices really are not relevant in the
marketplace."

[147] See Merck slides titled "Key Financial Metrics: 5Y Plan 2014-18" (MRK-CHA00477250-60 at 53) indicating
that: "Total discounts (cash, managed care, etc.) Increase 2% for MMR®II after competition entry."  Also see
Merck slides titled "MMRV Vaccines 2012 Budget / 5 Year Plan Finance slides" (MRK-CHA01035435-48), which
indicates that Merck expected: "Increased private discounts with competitor entry" (at 35) and "Add'l 2% all
products, due to competition" (at 36).

---

(where GSK competition was present) for the relevant time period.

102.     In Attachment D.3.a and Attachment D.3.b, I calculate overcharges of MMR-II for the respective March 2009 entry and January 2014 GSK entry dates.  I first list the monthly total number of doses of MMR-II sold to private purchasers by Merck, as well as the corresponding list price, percentage discount off the list price, and net price during that month.[148] Counterfactual MMR-II list prices are calculated by applying the average growth rate of the yardsticks to the list price of MMR-II in the month before competitive entry.  Counterfactual MMR-II net prices are estimated by applying the actual discount on MMR-II and the additional discount rate of 2%.  I then calculate overcharges per dose as the actual MMR-II net price less the counterfactual net price.  Finally, total overcharges are calculated as doses sold multiplied by the per dose overcharge.

103.     Private purchasers would have paid lower prices for the MMR-II vaccine if GSK had been competing with Merck.  The magnitude of the overcharge per dose grows over time as depicted in Figure 2.  By January 2015, for example, the actual private price for MMR-II was $41.62 and the counterfactual price (assuming GSK entry in March 2009) was $34.21.

---

[148]  Attachment D.3.a and D.3.b use list prices as posted by the CDC.  MMR-II's net prices are calculated as the list price from the CDC's website multiplied by the percentage discount for that month from Merck's transactions data. Comparing the CDC's posted list prices to Merck's sales data indicates that the CDC's price lists are not always updated promptly, especially for earlier years.  However, I do not have Merck's sales and price data for the yardsticks.  My calculation of overcharges would be larger if I used Merck's transactional data for MMR-II and the CDC price lists for the yardsticks, so, in order to be conservative, I use the CDC's listed prices for all vaccines.



**FIGURE 2**
**MMR-II PRIVATE NET PRICE AND COUNTERFACTUAL NET PRICE ASSUMING COMPETITION BEGINS IN MARCH 2009**

104.     Based on instructions from counsel for private Plaintiffs, I also calculate overcharges from ProQuad sales assuming ProQuad would not have been approved by the FDA in Attachment D.4.a (assuming March 2009 entry by GSK's MMR product) and D.4.b (assuming January 2014 entry by GSK's MMR product).  The attachments contain the number of doses of ProQuad Merck sold, its list price and its net price, as well as the list price of MMR-II and Varivax.  I determine the combined counterfactual net price of MMR-II and Varivax as the counterfactual list price of MMR-II (from Attachment D.3.a or Attachment D.3.b) plus the list price of Varivax both multiplied by the discount off list price for ProQuad.[149]  I then calculate overcharges per dose as the net price of ProQuad less the counterfactual combined net price of MMR-II and Varivax.  Finally, total overcharges are calculated as doses sold multiplied by the per dose overcharge.

-------

[149] The combined discounts off the list prices of MMR-II and Varivax likely would have been larger than the discount off ProQuad after MMR-II began to face competition.  However, discounts off the list price of Varivax were not available to me, so I conservatively assume the discounts are equivalent.

105.    Table 4 presents total private overcharges on MMR-II and ProQuad sales.  Merck sales data were only available to me through 2015, however I understand that damages are ongoing, thus I extrapolate damages through 2017.  The extrapolation is based on the assumption that overcharges in relation to sales is the same for each product in 2016 and 2017 as it was in 2015.[150]

**TABLE 4**
**OVERCHARGES OF MMR-II AND PROQUAD PRIVATE PURCHASER SALES**

| Year | Competitive Entry in March 2009 | | | Competitive Entry in January 2014 | | |
|------|--------|---------|-------|--------|---------|-------|
|      | MMR-II | ProQuad | Total | MMR-II | ProQuad | Total |
| 2005 | $0 | $502,794 | $502,794 | $0 | $502,794 | $502,794 |
| 2006 | $0 | $7,721,512 | $7,721,512 | $0 | $7,721,512 | $7,721,512 |
| 2007 | $0 | $7,283,677 | $7,283,677 | $0 | $7,283,677 | $7,283,677 |
| 2008 | $0 | $281,461 | $281,461 | $0 | $281,461 | $281,461 |
| 2009 | $7,746,874 | -$7,949 | $7,738,925 | $0 | -$1,591 | -$1,591 |
| 2010 | $10,178,384 | $1,121,389 | $11,299,774 | $0 | $4,541 | $4,541 |
| 2011 | $15,911,124 | $593,469 | $16,504,592 | $0 | $0 | $0 |
| 2012 | $20,882,414 | $771,630 | $21,654,043 | $0 | $303,040 | $303,040 |
| 2013 | $22,191,759 | $6,112,904 | $28,304,663 | $0 | $337,770 | $337,770 |
| 2014 | $38,741,174 | $18,384,414 | $57,125,588 | $5,518,602 | $8,389,813 | $13,908,416 |
| 2015 | $37,339,966 | $18,552,172 | $55,892,138 | $12,916,106 | $10,635,185 | $23,551,291 |
| 2016 | $36,112,351 | $20,227,588 | $56,339,939 | $12,491,467 | $11,595,631 | $24,087,098 |
| 2017 | $36,112,351 | $20,227,588 | $56,339,939 | $12,491,467 | $11,595,631 | $24,087,098 |
| Total | $225,216,396 | $101,269,856 | $326,486,252 | $43,417,642 | $58,146,671 | $101,564,312 |

---

[150]  With this assumption, 2016 overcharges = 2015 overcharges * 2016 sales / 2015 sales.  ProQuad sales in 2015 and 2016 were $454 million and $495 million, respectively.  MMR-II sales in 2015 and 2016 were $365 million and $353 million, respectively.  See Merck & Co., Inc., Form 10-K, for the Fiscal Year ended December 31, 2016, p. 43.

2017 overcharges = 2016 overcharges.  Although ProQuad and MMR-II sales increased from 2016 to 2017 (for the first nine months of each year), Merck attributed the growth primarily to sales outside of the U.S. so I conservatively assumed no growth in the U.S. between 2016 and 2017.  See Merck & Co., Inc., Form 10-Q, for the quarterly period ended September 30, 2017, p. 35.

If provided with Merck sales data for the years 2016-2017, I could refine these calculations.

106.    As shown in Table 2 above, Merck and GSK have a similar portfolio of child vaccines; both sell hepatitis A, hepatitis B, hib, and rotavirus vaccines.  The portfolios differ in that GSK sells DTaP, polio, and influenza vaccines and Merck sells pneumococcus, MMR, and varicella vaccines.  For older adults and children, both companies sell a vaccine for zoster virus[151] (also known as shingles); GSK sells meningococcal vaccines; and Merck sells a human papillomavirus vaccine.[152]  MMR was one of the few vaccines Merck had, but GSK did not.  If GSK improved its portfolio by receiving approval of its MMR vaccine, it might put additional pressure on Merck to reduce the price of not just MMR, but other vaccines in its portfolio.  For example, Merck might increase discounts provided for purchasing its bundle of vaccines.  To be conservative, I have not included this type of price competition in my calculations.

## VII.    CALCULATION OF PAYMENTS BY PUBLIC PURCHASES

107.    Based on instructions from Relators' counsel, I have performed two calculations relating to the purchases of MMR-II and ProQuad under Merck's public contracts with the CDC:  1) total payments the CDC made to Merck for MMR-II and ProQuad from 2004-2017 and 2) total payments the CDC made to Merck attributeable to just the mumps portion of MMR-II and ProQuad from 2004-2017.  In addition, Relators' counsel has instructed me to calculate penalties for each claim for payment or invoice Merck submitted to the CDC for purchase of MMR-II and ProQuad from 2004 through 2017, assuming a penalty would be applied for each such claim or invoice.

---

[151] GSK recently obtained FDA approval for a shingles vaccine.  See "Shingrix approved in the US for prevention of shingles in adults aged 50 and over," October 23, 2017, available at https://www.gsk.com/en-gb/media/press-releases/shingrix-approved-in-the-us-for-prevention-of-shingles-in-adults-aged-50-and-over/.

[152]  CDC, "Archived CDC Vaccine Price List as of January 1, 2018," available at https://www.cdc.gov/vaccines/programs/vfc/awardees/vaccine-management/price-list/2018/2018-01-01.html.

GSK had an approved human papillomavirus vaccine, but exited the U.S. market in 2016 because of "very low market demand."  See E. Sagonowsky, "GSK exits U.S. market with its HPV vaccine Cervarix," October 21, 2016, available at https://www fiercepharma.com/pharma/gsk-exits-u-s-market-its-hpv-vaccine-cervarix.

---

108.    First, I summed all payments to Merck under its public contract with the CDC for Mumps Vaccine.[153]  Total payments for MMR-II and ProQuad are summed by quarter for the period 2004Q1 to 2015Q4 in Attachment E.1.  Table 5 provides the annual totals for the period 2004-2017, where I again calculate extrapolated values for the years 2016 and 2017 (using the technique described above).

**TABLE 5**
**SUMMARY OF ALL PAYMENTS TO MERCK**
**UNDER THE CDC PUBLIC CONTRACT 2004-2017**

| Year | MMR-II | ProQuad | Total |
|------|--------|---------|-------|
| 2004 | $83,016,886 | $0 | $83,016,886 |
| 2005 | $79,769,849 | $0 | $79,769,849 |
| 2006 | $73,030,406 | $132,196,168 | $205,226,575 |
| 2007 | $56,619,814 | $132,723,565 | $189,343,379 |
| 2008 | $94,141,840 | $8,911 | $94,150,750 |
| 2009 | $90,363,782 | $0 | $90,363,782 |
| 2010 | $90,284,984 | $51,570,537 | $141,855,521 |
| 2011 | $87,949,141 | $8,759,009 | $96,708,151 |
| 2012 | $91,118,045 | $21,123,172 | $112,241,218 |
| 2013 | $62,243,788 | $167,905,880 | $230,149,668 |
| 2014 | $68,394,565 | $296,267,050 | $364,661,615 |
| 2015 | $58,762,548 | $243,173,376 | $301,935,924 |
| 2016 | $56,830,628 | $265,133,967 | $321,964,595 |
| 2017 | $56,830,628 | $265,133,967 | $321,964,595 |
| Total | $1,049,356,905 | $1,583,995,602 | $2,633,352,507 |

---

[153]  I total payments from Merck's sales data, described above.  Payments made under all other public contracts, such as those with the Department of Defense, are omitted from these calculations.  The estimates here are conservative for this reason.

EXPERT REPORT OF THOMAS G. MCGUIRE, PH.D.

109.    Second, I calculate the mumps portion of payments for MMR-II and ProQuad.  In
Attachment E.2.a, I calculate the mumps portion of MMR-II as the price of the monovalent
Mumps Vaccine divided by the combined prices of the monovalent mumps, measles, and rubella
vaccines.[154]  I calculate the mumps portion of ProQuad as the the price of MMR-II divided by
the combined price of MMR-II and Varivax, multiplied by the mumps portion of MMR-II.
Totals by quarter for the period 2004Q1 to 2015Q4 are included in Attachment E.2.b.  Table 6
provides the annual totals for the period 2004-2017.  I again calculate extrapolated values for the
years 2016 and 2017 (using the technique described above).

**TABLE 6**
**SUMMARY OF THE MUMPS PORTION OF PAYMENTS TO MERCK**
**UNDER THE CDC PUBLIC CONTRACT 2004-2017**

| Year | MMR-II | ProQuad | Total |
|------|--------|---------|-------|
| 2004 | $34,566,619 | $0 | $34,566,619 |
| 2005 | $33,214,616 | $0 | $33,214,616 |
| 2006 | $30,408,443 | $11,655,725 | $42,064,167 |
| 2007 | $23,575,391 | $11,573,174 | $35,148,565 |
| 2008 | $39,198,834 | $772 | $39,199,606 |
| 2009 | $37,625,724 | $0 | $37,625,724 |
| 2010 | $37,592,914 | $4,253,942 | $41,846,856 |
| 2011 | $36,620,314 | $722,512 | $37,342,826 |
| 2012 | $37,939,784 | $1,691,324 | $39,631,108 |
| 2013 | $25,917,105 | $13,319,459 | $39,236,563 |
| 2014 | $28,478,168 | $22,937,746 | $51,415,914 |
| 2015 | $24,467,584 | $17,929,055 | $42,396,639 |
| 2016 | $23,663,170 | $19,548,199 | $43,211,369 |
| 2017 | $23,663,170 | $19,548,199 | $43,211,369 |
| Total | $436,931,835 | $123,180,106 | $560,111,941 |

---

[154] The last public contract for the monovalent vaccines ended in March 2002, so I use prices from that contract.

110.    Finally, Relators' counsel instructed me to calculate penalties using a minimum and separately a maximum penalty per claim.[155]  I multiplied the penalty amounts of $5,500 and $11,000 from 2004 to November 1, 2015 and $11,181 and $22,363 from November 2, 2015 to the present by the number of invoices Merck submitted to the CDC.  Attachment F provides the totals, summed on a quarterly basis, over the period 2004Q1 through 2015Q4.  Table 7 provides the annual totals for the minimum penalties and Table 8 provides the annual totals for the maximum penalties.  I again calculate extrapolated values for the years 2016 and 2017 (using the technique described above).

**TABLE 7**
**SUMMARY OF MINIMUM PENALTIES 2004-2017**

| Year | MMR-II | ProQuad | Total |
|---|---|---|---|
| 2004 | $4,631,000 | $0 | $4,631,000 |
| 2005 | $4,526,500 | $0 | $4,526,500 |
| 2006 | $5,010,500 | $277,425,500 | $282,436,000 |
| 2007 | $3,212,000 | $239,470,000 | $242,682,000 |
| 2008 | $1,716,000 | $0 | $1,716,000 |
| 2009 | $1,116,500 | $0 | $1,116,500 |
| 2010 | $1,523,500 | $72,814,500 | $74,338,000 |
| 2011 | $1,408,000 | $13,293,500 | $14,701,500 |
| 2012 | $2,029,500 | $34,826,000 | $36,855,500 |
| 2013 | $1,716,000 | $334,367,000 | $336,083,000 |
| 2014 | $1,875,500 | $527,714,000 | $529,589,500 |
| 2015 (pre Nov 2) | $1,243,000 | $372,691,000 | $373,934,000 |
| Total | $30,008,000 | $1,872,601,500 | $1,902,609,500 |
|  |  |  |  |
| 2015 (Nov 2 on) | $313,068 | $113,744,313 | $114,057,381 |
| 2016 | $1,504,910 | $530,364,493 | $531,869,403 |
| 2017 | $1,504,910 | $530,364,493 | $531,869,403 |
| Total | $3,322,887 | $1,174,473,299 | $1,177,796,187 |
|  |  |  |  |
| Total (2004-2017) | $33,330,887 | $3,047,074,799 | $3,080,405,687 |

---

[155] Counsel instructed me to use minimum and maximum penalties of $5,500 and $11,000 before November 2, 2015, and $11,181 and $22,363 afterwards.

**TABLE 8**
**SUMMARY OF MAXIMUM PENALTIES 2004-2017**

| Year | MMR-II | ProQuad | Total |
|---|---|---|---|
| 2004 | $9,262,000 | $0 | $9,262,000 |
| 2005 | $9,053,000 | $0 | $9,053,000 |
| 2006 | $10,021,000 | $554,851,000 | $564,872,000 |
| 2007 | $6,424,000 | $478,940,000 | $485,364,000 |
| 2008 | $3,432,000 | $0 | $3,432,000 |
| 2009 | $2,233,000 | $0 | $2,233,000 |
| 2010 | $3,047,000 | $145,629,000 | $148,676,000 |
| 2011 | $2,816,000 | $26,587,000 | $29,403,000 |
| 2012 | $4,059,000 | $69,652,000 | $73,711,000 |
| 2013 | $3,432,000 | $668,734,000 | $672,166,000 |
| 2014 | $3,751,000 | $1,055,428,000 | $1,059,179,000 |
| 2015 (pre Nov 2) | $2,486,000 | $745,382,000 | $747,868,000 |
| Total | $60,016,000 | $3,745,203,000 | $3,805,219,000 |
| | | | |
| 2015 (Nov 2 on) | $626,164 | $227,498,799 | $228,124,963 |
| 2016 | $3,009,846 | $1,060,740,078 | $1,063,749,924 |
| 2017 | $3,009,846 | $1,060,740,078 | $1,063,749,924 |
| Total | $6,645,857 | $2,348,978,955 | $2,355,624,812 |
| | | | |
| Total (2004-2017) | $66,661,857 | $6,094,181,955 | $6,160,843,812 |

111.    The dollar figures for all the calculations in this report are expressed in current dollars. That is, I applied no discount rate to bring the values forward to the value in 2018 dollars and added no prejudgment interest. I am able to do so if instructed by the Court.

Thomas G. McGuire, Ph.D.
March 13, 2018

**Attachment A**

January 27, 2018

Thomas G. McGuire

Department of Health Care Policy
Harvard Medical School
180 Longwood Ave.
Boston, MA 02115-5899

**TEL:** (617) 432-3536

mcguire@hcp.med.harvard.edu

http://www.hcp.med.harvard.edu/people/hcp_core_faculty/thomas_mcguire

**Education**:

| Year | Degree | Institution | Field |
|------|--------|-------------|-------|
| 1971 | B.A.  Summa Cum Laude | Princeton University | Economics |
| 1976 | Ph.D. | Yale University | Economics |

**Academic Appointments:**

| Year | Academic Title | Institution |
|------|----------------|-------------|
| 2001-present | Professor | Harvard Medical School |
| 1987-2001 | Professor | Boston University |
| 1981-1996 | Visiting Professor | Brandeis University |
| 1983-1987 | Associate Professor | Boston University |
| 1980-81 | Postdoctoral Fellow | Yale University |
| 1976-1983 | Assistant Professor | Boston University |

**Other Professional Positions:**

| Year | Position/Title | Institution |
|------|----------------|-------------|
| 2012-present | Research Associate | National Bureau of Economic Research |

**Major Committee and Association Memberships:**

| Year | Position/Title | Institution |
|------|----------------|-------------|
| 2003-2007 | Member | NIH/ National Center for Research Resources, Council |
| 1994-1998 | Member | National Institute of Mental Health Services Research Review Committee |
| 1980-84 | Member | National Institute of Mental Health Epidemiologic and Services Research Review Committee |
| 2000-present | Member | National Academies of Science, Education and Medicine/Institute of Medicine |
| 2003-2009 | Board of Directors | International Health Economics Association |

Appx8275

**Major Editorial Positions**:

| | | |
|---|---|---|
| 2001-2011 | Editor | *Journal of Health Economics* |

**Awards and Honors:**

| Year | Name of Award |
|---|---|
| 2016 | Article of the Year, *International Journal of the Economics of Business* |
| 2014 | National Institute for Health Care Management Paper of the Year |
| 2008 | National Institute for Health Care Management Paper of the Year |
| 2008 | AcademyHealth Article of the Year Award |
| 2008 | Everett Mendelsohn Excellence in Mentoring Award |
| 2006 | Emily Mumford Medal for Distinguished Contributions to Social Science In Medicine |
| 1997 | Kenneth J. Arrow Award for Best Paper published in Health Economics |
| 1994-1996 | Investigator Award in Health Policy, Robert Wood Johnson Foundation |
| 1991 | Carl A. Taube Award for outstanding contributions to mental health services research, American Public Health Association |
| 1989-1994, 1994-1999 | Research Scientist Award, National Institute for Mental Health |
| 1983 | Elizur Wright Award for an outstanding contribution to the literature on risk and insurance (Financing Psychotherapy), American Risk and Insurance Association |
| 1979 | Abt Prize for Research on National Policy Issues |

**BOOKS AND MONOGRAPHS:**

Thomas G. McGuire. *Financing Psychotherapy: Costs, Effects and Public Policy*, Cambridge: Ballinger, 1981.

Thomas G. McGuire and Burton Weisbrod (Eds.). *Economics and Mental Health*, National Institute of Mental Health, Series EN No. 1, DHHS Publication No. (ADM) 81-114, Superintendent of Documents, USGPO, Washington, D.C., 1981.

Thomas G. McGuire and Richard Scheffler (Eds.). *Research Issues in Economics and Mental Health*, JAI Press, Vol. 8, 1987.

Thomas G. McGuire (guest editor). "Economics and Mental Health," special issue of *Administration and Policy in Mental Health*, 1990.

Thomas G. McGuire and Michael H. Riordan (guest editors). "The Industrial Organization of Health Care," *Journal of Economics & Management Strategy*, 3(1), 1994.

Albert Ma, Thomas G. McGuire, and Michael H. Riordan (guest editors) "The Industrial Organization of Health Care, II" *Journal of Economics & Management Strategy*, 1997.

Frank, Richard G. and McGuire, T.G. (guest editors) "Mental Health Economics," *Administration and Policy in Mental Health*, 24(4) (March 1997).

Albert Ma and Thomas G. McGuire (guest editors) "The Industrial Organization of Health Care, III," *Journal of Economics & Management Strategy*, 8(3), Fall 1999.

Mark V. Pauly, Thomas G. McGuire. and Pedro Pitta Barros. (eds) (2012) *Handbook of Health Economics*, Vol.2, Elsevier.

Jacob Glazer and Thomas G. McGuire, (2017) *Models of Health Plan Payment and Quality Reporting*, World Scientific Press.

Thomas G. McGuire and Richard van Kleef, (eds.) "Health Plan Payment in Regulated Competition," Special Section of the *Journal of Health Economics*, Volume 56, December, 2017.

Appx8276

Thomas G. McGuire and Richard van Kleef, (eds.) *Risk Adjustment, Risk Sharing and Premium Regulation in Health Insurance Markets: Theory and Practice*, Elsevier, forthcoming 2018.

**PAPERS:**

**Thomas G. McGuire**. A Note on Lindahl's Voluntary Exchange Theory. *Public Finance*, 28(1):94-97, (1973).

Geoffrey Brennan and **Thomas G. McGuire**. Optimal Policy Choice under Uncertainty. *Journal of Public Economics*, 4(2):204-209, 1975.

Richard Nelson, **Thomas G. McGuire** and Thomas Spavins. Comment on Sam Peltzman's 'An Evaluation of Consumer Protection Legislation: The 1962 Drug Amendments'. *Journal of Political Economy*, 83(3), 1975.

**Thomas G. McGuire**, Michael Coiner and Larry Spancake. Budget-Maximizing Agencies and Efficiency in Government. *Public Choice*, 34:333-357, 1979.

**Thomas G. McGuire**. Some Simple Projections of the Cost of National Health Insurance for the Private Practice of Psychiatry. Egdahl, Walsh and Goldbeck (Eds.) *Mental Wellness Programs for Employees*, Springer-Verlag, 1980.

**Thomas G. McGuire**. Markets for Psychotherapy in G. VandenBos (Ed.) *Psychotherapy: From Theory to Research to Policy*, Sage Publishing, 1980.

Wayne Dorris and **Thomas G. McGuire**. Community Mental Health Centers and Competition in Mental Health Services. Altman and Sapolsky (Eds.) *Federal Health Programs: Improving the Health Care Systems*, Lexington Books, 1980.

**Thomas G. McGuire** and Burton Weisbrod. Perspectives on the Economics of Mental Health. *Journal of Human Resources*, 16(4):494-500, 1981.

**Thomas G. McGuire**. Compulsory Insurance for Psychotherapy? *The Clinical Psychologist* 34(4):13-14, 1981.

**Thomas G. McGuire**. Financing and Demand for Mental Health Services. *Journal of Human Resources*, 16(4):501-522, 1981.

**Thomas G. McGuire**. National Health Insurance for Private Psychiatric Care: A Study in the Distribution of Income. *Public Finance Quarterly*, 9(2):183-196, 1981.

**Thomas G. McGuire**. Price and Demand for Membership in a Prepaid Group Medical Practice. *Medical Care*, 19(2):172-183, 1981.

**Thomas G. McGuire**. Budget-Maximizing Governmental Agencies: An Empirical Test. *Public Choice*, 36:313-322, (1981).

**Thomas G. McGuire** and John Montgomery. Mandated Mental Health Benefits in Private Health Insurance Policies. *Journal of Health Politics, Policy and Law*, 7(2):380-406, 1982.

**Thomas G. McGuire** and Sylvia Moore. Private Regulation in Mental Health: The JCAH and Psychologists in Hospitals. *Journal of Law and Human Behavior*, 7(2/3):235-249, 1983.

**Thomas G. McGuire** and Linda K. Frisman. Reimbursement Policy and Cost-Effective Mental Health Care. *American Psychologist*, 38(8):935-940, August, 1983.

Charles A. Kiesler, **Thomas G. McGuire** (and others). Federal Mental Health Policy Making: An Assessment of Deinstitutionalization. *American Psychologist*, 38(12):1292-1293, 1983.

**Thomas G. McGuire** and Kyle Grazier. Markets and Bureaucracies in Mental Health Services: Implications for Management Information Systems. Bennett and Trute (Eds.) *Mental Health Information Systems: Problems and Prospects*, Edwin Mellon Press, 1983, pp. 283-302.

**Thomas G. McGuire**. Patients' Trust and the Quality of Physicians. *Economic Inquiry*, 21(2):203-222, 1983.

3

Appx8277

**Thomas G. McGuire**.  Economic Assessment of Treatment Programs for the Chronically Mentally Ill.  Cronholm and VonKnorring (Eds.) *Evaluation of Mental Health Services Programs*, Swedish Medical Research Council, pp. 148-160, 1984.

**Thomas G. McGuire**, Arnold Gurin, Linda K. Frisman, Victor L. Kane and Barbara F. Shatkin.  Vendorship and Social Work in Massachusetts. *Social Service Review*, 373-383, 1984.

Randall P. Ellis and **Thomas G. McGuire**.  Cost Sharing and the Demand for Ambulatory Mental Health Services: A Comment on the Rand Health Insurance Study.  *American Psychologist*, 39:1195-1197, 1984.

**Thomas G. McGuire**.  Economics of Mental Health.  Cavenar (Ed.) *Psychiatry, Vol. 3*, Lippicott and Co., 1985.

Nancy Cannon, **Thomas G. McGuire** and Barbara Dickey.  Capital Costs in Economic Program Evaluation: The Case of Mental Health Services.  J. S. Catterall (Ed.) *Economic Evaluation of Public Programs*, San Francisco: Jossey-Bass, 1985.

**Thomas G. McGuire** and Barbara Dickey.  Payment for Mental Health Care: Economic Issues. S. Sharfstein and A. Beigel (Eds.) *The New Economics and Psychiatric Care*, American Psychiatric Association Press, 1985.

Steve Jencks, Howard Goldman, and **Thomas G. McGuire**.  Challenges in Bringing Exempt Psychiatric Services Under a Prospective Payment System. *Hospital and Community Psychiatry*, 36(7):764-769, 1985.

Linda K. Frisman, **Thomas G. McGuire** and Margo L. Rosenbach.  Costs of Mandates for Outpatient Mental Health Care in Private Health Insurance.  *Archives of General Psychiatry*, 42:558-561, 1985.

**Thomas G. McGuire**.  Prospective, Cost-Based and Mixed Reimbursement Systems:  An Economic Evaluation.  DiBlasi, Kline and Strickney (Eds.) *Pursuing Excellence in a Time of Declining Resources: The Role of Automated Information Systems*, Nathan Kline Institute, 1985.

Randall P. Ellis and **Thomas G. McGuire**.  Provider Behavior Under Prospective Reimbursement: Cost Sharing and Supply. *Journal of Health Economics*, 129-151, 1986.

Richard G. Frank and **Thomas G. McGuire**.  A Review of Studies of Demand and Utilization of Specialty Mental Health Services.  *Health Services Research*, 21(2) (Part II):241-265, 1986.

**Thomas G. McGuire**.  Financing Psychotherapy. *The Journal of Risk and Insurance*, 53(3):484-491, 1986.

Barbara Dickey, Nancy L. Cannon, **Thomas G. McGuire**, and Jon Gudeman.  The Quarterway House:  A Two-Year Cost Study of an Experimental Residential Program.  *Hospital and Community Psychiatry*, 37(11):136-143, 1986.

Barbara Dickey, Nancy Cannon, and **Thomas G. McGuire**.  Mental Health Cost Models: Refinements and Applications, *Medical Care*, 24(9):857-867, 1986.

Barbara Dickey, Nancy Cannon, and **Thomas G. McGuire**.  Mental Health Cost Studies: Some Observations on Methodology. *Administration in Mental Health*, 13(3):189-201, 1986.

**Thomas G. McGuire** and Richard Scheffler.  Summary of Issues in Research in Economics and Mental Health.  *Journal of Human Resources*, 21(3):289-292, 1986.

Barbara F. Shatkin, Linda K. Frisman and **Thomas G. McGuire**.  The Effect of Vendorship on the Distribution of Clinical Social Work Services.  *Social Services Review*, 60(3):437-448, 1986.

Randall P. Ellis and **Thomas G. McGuire**.  Cost Sharing and Patterns of Mental Health Care Utilization.  *Journal of Human Resources*, 21(3):359-380, 1986.

Alvin K. Klevorick and **Thomas G. McGuire**.  Monopolistic Competition and Pricing in Psychologists' Services. In McGuire and Scheffler (Eds.) *Research Issues in Economics and Mental Health*, JAI Press, 1987.

**Appx8278**

Sarah Hall and **Thomas G. McGuire**.  Ownership and Performance: The Case of Outpatient Mental Health Clinics.  *Medical Care*, 25(11):179-1183, 1987.

Kyle L. Grazier and **Thomas G. McGuire**.  Payment Systems and Hospital Resource Use:  A Comparative Analysis of Psychiatric, Medical and Obstetric Services.  McGuire and Scheffler (Eds.) *Research Issues in Economics and Mental Health*, JAI Press, 1987.

**Thomas G. McGuire**, Barbara Dickey, Gerald Shively, and Ira Strumwasser.  DRGs and Private Health Insurance: Implications for Design of Prospective Payment Systems.  *American Journal of Psychiatry*, 144(5):616-620, 1987.

Randall P. Ellis and **Thomas G. McGuire**.  Setting Capitation Payments in Markets for Health Services. *Health Care Financing Review*, 8(4):55-64, 1987.

Randall P. Ellis and **Thomas G. McGuire**.  Insurance Principles and Design of Prospective Payment Systems.  *Journal of Health Economics*, 7:215-237, 1988.

**Thomas G. McGuire** and Alan Fairbank. Patterns of Mental Health: Utilization over Time: Evidence from the Fee-For-Service Sector.  *American Journal of Public Health*, 78(2):134-136, 1988.

Alice Liberman, Barbara Shatkin, and **Thomas G. McGuire**. Assessing the Effect of Vendorship: A One-State Case Study.  *Journal of Independent Social Work Practice*, 2(4):59-74, 1988.

Lois Camberg and **Thomas G. McGuire**. Inpatient Psychiatric Units in General Hospitals: Response to Mental Health Policy or Hospital Economics?  *Medical Care*, 27(2): 130-139, 1989.

**Thomas G. McGuire**.  Financing and Reimbursement of Mental Health Services. Taube and Mechanic (Eds.) *The Future of Mental Health Services Research, National Institute of Mental Health*, 1989.

**Thomas G. McGuire**. Outpatient Benefits for Mental Health Services in Medicare: Alignment with the Private Sector? *American Psychologist*, 44(5):818-824, 1989.

Marc Friedman, Randall P. Ellis, and **Thomas G. McGuire**.  Provider response to Medicare's PPS: Reductions in Length of Stay for Psychiatric Patients Treated in Scatter Beds. *Inquiry*, 26 (2): 192-201, 1989.

**Thomas G. McGuire.** Combining Demand and Supply Side Cost Sharing: the Case of Inpatient Mental Health Care.  *Inquiry*, 26(2) 192-201, 1989.

Sara Bachman, **Thomas G. McGuire,** et al. Preferred Provider Organizations: Options for Medicare. *Inquiry*, 26(1):24-34, 1989.

Linda K. Frisman and **Thomas G. McGuire**.  The Economics of Long-Term Care for the Mentally Ill.  *The Journal of Social Issues*, 45(3):119-130, 1989.

Randall P. Ellis, Cynthia Gallup, and **Thomas G. McGuire**.  Should Medical Professional Liability Insurance be Experience Rated? *Journal of Risk and Insurance*, 57(1):66-78, 1990.

Randall P. Ellis and Thomas G McGuire.  Optimal Payment Systems for Health Services. *Journal of Health Economics*, 9:375-936, 1990.

David A. Lambert and **Thomas G. McGuire**.  Political and Economic Determinants of Insurance Regulation in Mental Health.  *Journal of Health Politics, Policy, and Law*, 15(1): 169-190, 1990.

**Thomas G. McGuire**. Growth of a Field of Policy Research: The Economics of Mental Health.  *Journal of Administration and Policy in Mental Health.*

Richard G. Frank and **Thomas G. McGuire**.  Mandating Employer Coverage of Mental Health Care.  *Health Affairs*, 9(1):32-42, 1990.

**Thomas G. McGuire**, William S. Mosakowski, and Linda S. Radigan.  Designing a State-Level Prospective Payment System for Inpatient Psychiatric Services in Medicaid: New Hampshire's Peer Group Approach.  *Administration and Policy in Mental Health*, 19(1):43-54, 1990.

Appx8279

**Thomas G. McGuire** and Barbara Shatkin. Forecasting the Cost of Drug Abuse Treatment Coverage in Private Health Insurance. In Cartwright and Kaple (Eds.) *Economic Costs, Cost Effectiveness, Financing and Community-Based Drug Treatment*, National Institute on Drug Abuse Research Monograph #113, 1991.

Richard G. Frank, **Thomas G. McGuire**, and David Salkever Benefit Flexibility, Cost Shifting, and Mandated Mental Health Coverage. *Journal of Mental Health Administration*, 18(3): 264-271, 1991.

**Thomas G. McGuire**. Measuring the Economic Cost of Schizophrenia. *Schizophrenia Bulletin*, 17(3):375-388, 1991.

Jerry Cromwell, Brooke Harrow, **Thomas G. McGuire**, and Randall P. Ellis. Medicare Payment to Psychiatric Facilities: Unfair and Insufficient? *Health Affairs*, 10(2): 124-134, 1991.

Diana C. Walsh, Ralph W. Hingston, and **Thomas G. McGuire**. A Randomized Trial of Treatment Options for Alcohol-Abusing Workers. *New England Journal of Medicine*, 325:775-782, 1991.

David A. Lambert and **Thomas G. McGuire**. Determinants of Stringency of Psychologist Licensure. *International Journal of Law and Psychiatry*, 14:315-329, 1991.

**Thomas G. McGuire**. Paralyzing Medicare's Demand-Side Policies. In H.E. Frech III (Eds.) Setting Physicians' Fees, *American Institute Enterprise*, 1991.

**Thomas G. McGuire** and Mark V. Pauly. Physician Response to Fee Schedules with Multiple Payers. *Journal of Health Economics*, 10:385-410, 1991.

Marc Cohen, Nanda Kumar, **Thomas G. McGuire**, and Stanley S. Wallack. Response to Weiner et al. *Journal of Health Politics, Policy, and Law*, 17(3):435-438, 1992.

Marc Cohen, Nanda Kumar, **Thomas G. McGuire**, and Stanley S. Wallack. Financing Long-Term Care: A Practical Mix of Public and Private. *Journal of Health Politics, Policy, and Law*, 17(3):403-424, 1992.

**Thomas G. McGuire**, Christopher Ruhm, and Barbara Shatkin. Defining the Public Interest in Workplace Drug Abuse Policy. *National Institute on Drug Abuse Research Monograph*, 1992.

**Thomas G. McGuire**. Research on Economics in Mental Health: The Past and Future Prospects. In Frank and Manning (Eds.) *Economics and Mental Health*, Johns Hopkins University Press, 1992.

**Thomas G. McGuire**. Estimating Cost of a Mental Health Benefit: A Small-Employer Mandate in Connecticut. In Frank and Manning (Eds.) *Economics and Mental Health*, Johns Hopkins University Press, 1992.

Jerry Cromwell, Randall P. Ellis, Brooke Harrow, and **Thomas G. McGuire**. A Modified TEFRA System for Medicare Discharges from Psychiatric Facilities. In Frank and Manning (Eds.) *Economics and Mental Health*, Johns Hopkins University Press, 1992.

Constance Horgan and **Thomas G. McGuire**. Financing Child and Adolescent Inpatient Mental Health Care Through Private Insurance. In the *Financing of Mental Health Services for Children and Adolescents*, National Center for Education in Maternal and Child Health: Washington, DC, 1992.

**Thomas G. McGuire**, Richard G. Frank, and Howard H. Goldman. Designing a Benefit Plan for Child and Adolescent Mental Health Services. *Administration and Policy in Mental Health*, 1(3):151-157, 1992.

Richard G. Frank, Howard H. Goldman, and **Thomas G. McGuire**. A Model Mental Health Bbenefit in Private Insurance. *Health Affairs*, 11(3):98-117, 1992.

**Thomas G. McGuire** and Christopher Ruhm. Workplace Drug Abuse Policy. *Journal of Health Economics,* 12:19-38, 1993.

**Thomas G. McGuire**. Outcomes, Costs, and Design of Health Insurance for Depression. In B. Jonsson and J. Rosembaum (Eds.) *Health Economics of Depression*, John Wiley & Sons, 1993.

John Schneider, Jerry Cromwell, and **Thomas G. McGuire**.  Excluded Facility Financial Status and Options for Payment System Modification. *Health Care Financing Review*, 15(2)7-30, 1993.

**Thomas G. McGuire** and Michael H. Riordan.  Contracting for Community-Based Public Mental Health Services. In Hu and Rupp (Eds.), *Economics and Mental Health*, Advances in Health Economics and Health Services Research, 14:55-69, 1993.

Randall P. Ellis and **Thomas G. McGuire**.  Supply-Side and Demand-Side Cost Sharing in Health Care.  *Journal of Economic Perspectives*, 7(4):135-151, 1993.

Jacob Glazer and **Thomas G. McGuire**.  Should Physicians be Permitted to "Balance Bill" Patients?  *Journal of Health Economics*, 12(3):239-258, 1993.

Albert Ma and **Thomas G. McGuire**. Paying for Joint Costs in Health Care. *Journal of Economics and Management Strategy*, 2(1):71-95, 1993.

Randall P. Ellis and **Thomas G. McGuire**. Reparto de costs en atencion sanitaria por el lado de la oferta y por ewl lado de la demanda. Pere Ibern (Ed.), Springer-Vaerlag Iberica, 1999, 127-146 translated from Supply-Side Demand and Demand-Side Cost Sharing in Health Care.  *Journal of Economic Perspectives*, Fall 1993).

Dominic Hodgkin and **Thomas G. McGuire**.  Hospital response to Prospective Payment. *Journal of Health Economics*, 13:1-29, 1994.

Jacob Glazer and **Thomas G. McGuire**.  Payer Competition and Cost Shifting in Health Care. *Journal of Economics and Management Strategy*, 3(1):71-92, 1994.

**Thomas G. McGuire**.  Predicting the Costs of Mental Health Benefits.  Milbank Memorial Fund Quarterly: *Health and Society*, 72(1):3-23, 1994.

Richard G. Frank, **Thomas G. McGuire**, Darrel A Regier, Ronald Manderscheid, and Albert Woodward.  Paying for Mental Health and Substance Abuse Care. *Health Affairs*, 13(1):337-342, 1994.

Bernard S. Arons, Richard G. Frank, Howard H. Goldman, **Thomas G. McGuire**, and Sharman Stephens.  Mental Health and Substance Abuse Coverage Under Health Reform.  *Health Affairs*, 13(1):337-342, 1994.

Margaret Commons, Dominic Hodgkin, **Thomas G. McGuire**, and Michael Riordan. Summaries of State Programs. In G. Denmead and B. Rouse (Eds.) *Financing Drug Treatment Through State Programs*, Services Research Monograph No. 1, National Institute on Drug Abuse, 1994.

Margaret Commons, Dominic Hodgkin, **Thomas G. McGuire**, and Michael Riordan.  Paying For Drug Abuse Services in the Six New England States.  In G. Denmead and B. Rouse (Eds.) *Financing Drug Treatment Through State Programs*, Services Research Monograph No. 1, National Institute on Drug Abuse, 1994.

Howard H. Goldman, Richard G. Frank, and **Thomas G. McGuire**.  Mental Health Care.  In E. Ginzburg (Eds.) *Critical Issues in U.S. Health Reform*, 1994.

Richard G. Frank and **Thomas G. McGuire**.  Health Care Reform and Financing of Mental Health Services: Distributional Consequences.  In R. Manderscheid (Eds.) *Mental Health*, 1994.

Richard G. Frank and **Thomas G. McGuire**.  Establishing a Capitation Policy for Mental health and Substance Abuse Services in Health Care Reform.  *Behavioral Healthcare Tomorrow*, 3(4):36-39, 1994.

Richard G. Frank, Howard H. Goldman, and **Thomas G. McGuire**.  Who Will Pay For Health Reform?  Consequences of Redistribution of Funding for Mental Health Care. *Hospital and Community Psychiatry*, 45(9):906-910, 1994.

**Thomas G. McGuire** and Michael H. Riordan.  Incomplete Information and Optimal Market Structure: Public Purchases from Private Providers.  *Journal of Public Economics*, 56:125-141, 1995.

Appx8281

**Thomas G. McGuire**, Dominic Hodgkin, and Donald Shumway. Managing Medicaid Mental Health Costs: The Case of New Hampshire. *Administration and Policy in Mental Health*, 23(2)98-117, 1992.

**Thomas G. McGuire** and Beverly Porter. State Mental Health Agency Spending, 1986-1990. *Journal of Mental Health Administration*, 22(3):301-319, 1995.

**Thomas G. McGuire**. Effectiveness, Patient Matching, and Insurance Coverage for Depression. *Social Psychiatry and Psychiatric Epidemiology*, 30:240-243, 1995.

Richard G. Frank and **Thomas G. McGuire**. Estimating the Costs of Mental Health and Substance Abuse Coverage for Public Policy. *Health Affairs*, 14(3):102-115, 1995.

Richard G. Frank, **Thomas G. McGuire**, and Joseph P. Newhouse. Risk Contacts in Managed Mental Health Care. *Health Affairs*, 14(3):102-115, 1995.

Karen Jacobsen, **Thomas G. McGuire**, and Elizabeth Notman. Organizational Structure and State Mental Health Expenditures. 23(6):475-492, 1996.

Richard G. Frank and **Thomas G. McGuire**. Health Care Financing Reform and State Mental Health Systems. In Rich White (Eds.) *Health Policy*, Federalism and the American States, 1996.

Richard G. Frank, Howard Goldman, and **Thomas G. McGuire**. Insuring Severe Mental Disorders: A Comparison of Approaches. Massimo Moscarelli, Agnes Rupp, and Norman Sartorius (Eds.) *Vol 1 Schizophrenia of Handbook of Mental Health Economics and Policy*, 411-422, 1996.

Karen Jacobsen and **Thomas G. McGuire**. Federal Block Grants and State Spending: The ADM Block Grant and State Agency Behavior. *Journal of Health Politics, Policy, and Law*, 21(4):753-770, 1996.

Richard G. Frank, Haiden Huskamp, **Thomas G. McGuire**, and Joseph P. Newhouse. Some Economics of a Mental Health Carve Out. *Archives of General Psychiatry*, 53:933-957, 1996.

Richard G. Frank and **Thomas G. McGuire**. Managed Care for People with Disabilities: Individuals with Severe Mental Illnesses. In S. Altman and U. Reinhardt (Eds.) *Strategic Choices for a Changing Health Care System*, 1996.

Richard G. Frank and **Thomas G. McGuire**. Introduction to the Economics of Mental Health. In Levin and Petrila (Eds.) *Mental Health Services: A Public Health Perspective*, 1996.

Christine Spencer, Richard G. Frank, and **Thomas G. McGuire**. How Should the Profit Motive be Used in Managed Care? In Lazarus (Eds.) *Controversies in Managed Care*, 1996.

Randall P. Ellis and **Thomas G. McGuire**. Hospital Responses to Prospective Payment: Moral Hazard, Selection, and Practice-Style Effects. *Journal of Health Economics*, 15:257-277, 1996.

**Thomas G. McGuire**. Commentary on Rizzo and Blumenthal. Is the Target Income Hypothesis an Economic Heresy? *Medical Care Research and Review*, 53(3):267-277, 1996.

Ching-To Albert Ma and **Thomas G. McGuire**. Optimal Health Insurance and Provider Payment. *American Economic Review,* 87(4): 685-704, 1997.

Ernst R. Berndt, Richard G. Frank, and **Thomas G. McGuire**. Alternative Insurance Arrangements and the Treatment of Depression: What Are the Facts? The American *Journal of Managed Care*, 3(2): 243-250, 1997.

Richard G. Frank, Chris Koyangi, and **Thomas G. McGuire**. The Politics and Economics of Mental Health Parity Laws. *Health Affairs*, 16(4): 108-119, 1997.

Margaret Commons, Thomas G. McGuire and Michael H. Riordan. Performance Contracting for Substance Abuse Treatment, Health Services Research 32(5): 631-650. 1997.

Margaret Commons and **Thomas G. McGuire**. Some Economics of Performance-Based Contracting for Substance-Abuse Services. In Egertson, Fox, and Leshner (Eds.) *Treating Drug Abusers*, 223-249, 1997.

Richard G. Frank, **Thomas G. McGuire**, Jay Bae, and Agnes Rupp. Carve-Outs, Risk Adjustment, and Risk Sharing as Solutions for Adverse Selection in Behavioral Health Care. *Health Care Financing Review*, 18(3): 109-122, 1997.

Richard G. Frank and **Thomas G. McGuire**. Savings From a Medicaid Carve-Out for Mental Health and Substance Abuse Services in Massachusetts. *Psychiatric Services*, 48(9): 1147-1152, 1997.

Robin E. Clark, Gregory B. Teague, **Thomas G. McGuire**, et al. Cost-Effectiveness of Assertive Community Treatment versus Standard Care Management for Persons with Co-Occurring Severe Mental Illness and Substance Use Disorders. *Health Services Research*, 33(5): 1285-1308, 1998.

Ching-To Albert Ma and **Thomas G. McGuire**. Cost and Incentives in a Behavioral Health Carve Out. *Health Affairs*, 17(2):53-69, 1998.

Richard G. Frank and **Thomas G. McGuire**. The Economic Function of Carve Outs in Managed Care. *American Journal of Managed Care*, 6(4): Sp31-Sp39, 1998.

Susan L. Ettner, Richard G. Frank, **Thomas G. McGuire**, Joseph P. Newhouse, and Elizabeth Nutman. Risk Adjustment of Mental Health and Substance Abuse Payments. *Inquiry*, 35: 223-239, 1998.

Richard G. Frank and **Thomas G. McGuire**. Parity for Mental Health and Substance Abuse Care Under Managed Care. *The Journal of Mental Health Policy and Economics*, 1: 153-159, 1998.

Richard G. Frank, **Thomas G. McGuire**, Sharon-Lise T. Normand, and Howard H. Goldman. The Value of Mental Health Services at the System Level: The Case of Treatment for Depression. *Health Affairs*, 18(5): 71-86, 1999.

Elaine Fleming, Ching-To Albert Ma, and **Thomas G. McGuire**. Behavioral Health Expenditures and State Organizational Structure. *Administration and Policy in Mental Health*, 27(3): 91-111, 2000.

Richard G. Frank and **Thomas G. McGuire**. Economics for Mental Health. In Culyer and Newhouse (Eds.) *Handbook of Health Economics,* 2000.

**Thomas G. McGuire**. Physician Agency. In Culyer and Newhouse (Eds.) *Handbook of Health Economics,* 2000.

Jacob Glazer and **Thomas G. McGuire**. Optimal Risk Adjustment of Health Insurance Premiums: An Application to Managed Care. *American Economic Review*, 90(4): 1055-1071, 2000.

**Thomas G. McGuire** and Richard G. Frank. The Mental Health Economy and Mental Health Economics. *Mental Health*, 2001.

Richard G. Frank, Jacob Glazer, and **Thomas G. McGuire**. Adverse Selection in Managed Health Care. *Journal of Health Economics*, 19(6): 829-854, 2001.

Jacob Glazer and **Thomas G. McGuire**. Why Don't Private Employers Use Formal Risk Adjustment? Conference Overview. *Inquiry*, 38(3): 242—244, 2001.

Jacob Glazer and **Thomas G. McGuire**. Private Employers Don't Need Formal Risk Adjustment. *Inquiry*, 38(3): 260-69, 2001.

Patricia S. Keenan, Melinda J. Beeuwkes Buntin, **Thomas G. McGuire**, and Joseph P. Newhouse. The Prevalence of Formal Risk Adjustment. *Inquiry*, 38(3): 245-259, 2001.

Susan L Ettner, Richard G. Frank, **Thomas G. McGuire**, and Richard C. Hermann. Risk Adjustment Alternatives in Paying for Behavioral Health Care Under Medicaid. *Health Services Research*, 36(4): 793-811, 2001.

Margarita Alegria, **Thomas G. McGuire**, Mildred Vera, Glorisa Canino, Daniel Freeman, Leida Matias, Carmen Albizu, Heriberto Marin, and Jose Calderon. The Impact of Managed Care on the Use of Outpatient Mental Health and Substance Abuse Services in Puerto Rico. *Inquiry*, 38(4): 381-965, 2001.

**Appx8283**

Margarita Alegria, **Thomas G. McGuire**, Mildred Vera, Glorisa Canino, Carmen Albizu, Heriberto Marin, and Leida Matias.  Does Managed Mental Health Care Reallocate Resources to Those with Greater Need for Services?  *The Journal of Behavioral Health Services and Research*, 28(4): 439-455, 2001.

Margarita Alegria, **Thomas G. McGuire**, Mildred Vera, Glorisa Canino, Leida Matias, Carmen Albizu, and Jose Calderon.  Changes in Access to Mental Health Care for the Poor and the Non-Poor with Managed Care: Results from the Health Care Reform in Puerto Rico.  *American Journal of Public Health,* 91(9):1431-1434, 2001.

Richard G. Frank, Howard H. Goldman, and **Thomas G. McGuire**.  Will Parity Coverage Result in Better Mental Health Care? *New England Journal of Medicine*, 345(23): 1701-1704, 2001.

Ann Balsa and **Thomas G. McGuire**.  Statistical Discrimination in Health Care. *Journal of Health Economics,* 20:881-907, 2001.

Mingshan Lu and **Thomas G. McGuire**.  The Productivity of Outpatient Treatment for Substance Abuse.  *Journal of Human Resources*, 38(2): 309-335, 2002.

Sharon-Lise T. Normand, Richard G. Frank, and **Thomas G. McGuire**.  Using Elicitation Techniques to Estimate the Value of Ambulatory Treatments for Major Depression. *Medical Decision Making*, 22(3): 245-260, 2002.

**Thomas G. McGuire**, Kenneth B. Wells, Martha L. Bruce, Jeanne Miranda, Richard Scheffler, Mary Durham, Dan Ford, and Lydia Lewis.  Burden of Illness.  *Mental Health Services Research*, 4(4): 179-185, 2002.

Kenneth B. Wells, Jeanne Miranda, Mark S. Bauer, Martha L. Bruce, Mary Durham, Javier Escobar, Daniel Ford, Junius Gonzalez, Kimberly Hoagwood, Sarah M. Horowitz, William Lawson, Lydia Lewis, **Thomas G. McGuire**, Harold Pincus, Richard Scheffer, William A. Smith, and Jurgen Unutzer.  Overcoming Barriers to Reducing the Burden of Affective Disorders.  *Biological Psychiatry*, 52: 655-675, 2002.

Jacob Glazer and **Thomas G. McGuire**.  Setting Health Plan Premiums to Ensure Efficient Quality in Health Care: Minimum Variance Optimal Risk Adjustment.  *Journal of Public Economics.*  84(2): 153-173, 2002.

Ching-To Albert Ma and **Thomas G. McGuire**.  Network Incentives for Managed Health Care.  *Journal of Economics and Management Strategy.* 11(1): 1-35, 2002.

Jacob Glazer and **Thomas G. McGuire**.  Multiple Payers, Commonality, and Free-Riding in Health Care Medicare and Private Payers.  *Journal of Health Economics*, 21: 1049-1069, 2002.

Ching-To Albert Ma, **Thomas G. McGuire**, and Yong Weng. Monitoring and Enforcement in Federal Alcohol and Drug Abuse Block Grants.  The Economics of Health Care in Asia-Pacific Countries, *Institute of Economics*, 2002.

**Thomas G. McGuire**.  Setting prices for New Vaccines (in Advance).  *International Journal of Health Care Finance and Economics*, 3: 207-224, 2003.

Zhun Cao and **Thomas G. McGuire**.  Service-Level Selection by HMOs in Medicare.  *Journal of Health Economics*, 22: 915-931, 2003.

Richard G. Frank and **Thomas G. McGuire**.  Setting Payments in the Ticket to Work Program: Applying Experience from Capitation Payments in Health Insurance.  Paying for Results in Vocational Rehabilitation: Will Provider Incentives Work for Ticket to Work? *The Urban Institute,* 155-176, 2003.

Elaine Flemming, Hsien-Ming Lien, Ching-To Albert Ma, and **Thomas G. McGuire**.  Managed Care and Trends in Hospital Care for Mental health and Substance Abuse Treatment in Massachusetts: 1994-1997.  *The Journal of Mental Health Policy and Economics*, 6: 3-12, 2003.

Appx8284

Susan M. Essock, Robert E. Drake, Richard G. Frank, and **Thomas G. McGuire**. Randomized Controlled Trials in Evidence-Based Mental Health Care: Getting the Right Answer to the Right Question. *Schizophrenia Bulletin*, 29(1): 115-123, 2003.

Margarita Alegria and **Thomas G. McGuire**. Rethinking a Universal Framework in Psychiatric Symptom-Disease Relationship. *Journal of Health and Social Behavior*, 44: 257-274, 2003.

Ana I. Balsa and **Thomas G. McGuire**. Prejudice, Clinical Uncertainty, and Stereotypes as Sources of Health Disparities. *Journal of Health Economics*, 22(1) 89-116, 2003.

Jose J. Escarce and **Thomas G. McGuire**. Methods for Using Medicare Data to Compare Procedure Rates Among Asians, Blacks, Hispanics, Native Americans, and Whites. *Health Services Research*, 38(5):1303-1319, 2003.

Ana I. Balsa, Naomi Seiler, **Thomas G. McGuire**, and Gregg Bloche. Clinical Uncertainty and Healthcare Disparities. *American Journal of Law and Medicine*, 29: 203-219, 2003.

Jose J. Escarce and **Thomas G. McGuire**. Changes in Racial Differences in Use of Medical procedures and Diagnostic Test Among Elder Persons: 1986-1997. *American Journal of Public Health*, 94(10): 1795-1799, 2004.

Rena Conti, Richard G. Frank, and **Thomas G. McGuire**. Insuring Mental Health Care in the Age of Managed Care. In Levin Petrila and Hennessy (Eds), *Mental Health Services*, 15-41, 2004.

Hsien-Ming Lien, Ching-To Albert Ma, and **Thomas G. McGuire**. Provider-Client Interactions and Quantity of Health Care Use. *Journal of Health Economics,* 23(6): 1261-1283, 2004.

**Thomas G. McGuire**. DRG-Based Payment for Hospital Care: Observations from the US Experience. *Activity Based Funding for Hospitals: English Policy International Experience*, 2004.

Tracy Lieu, **Thomas G. McGuire**, and Alan R. Hinman. Overcoming Economic Barriers to the Optimal Use of Vaccines. *Health Affairs,* 24(3): 666-679. 2005.

Margarita Alegria, Richard G. Frank, and **Thomas G. McGuire**. Managed Care and Systems Cost-Effectiveness: Treatment for Depression. *Medical Care*, 43(12): 1225-1233, 2005.

Richard G. Frank and **Thomas G. McGuire**. Integrating People with Mental Illness into Health Insurance and Social Services. In Mechanic, Rogut, Colby, and Knickman (Eds.), *Policy Challenges in Modern Health Care*. 223-237, 2005.

Ana I. Balsa, **Thomas G. McGuire**, and Lisa S. Meredith. Testing for Statistical Discrimination in Health Care. *Health Services Research*, 40(1): 227-252, 2005.

Margarita Alegria, Zhun Cao, **Thomas G. McGuire**, Victoria Ojeda, Bill Sribney, Megan Woo, and David Takeuchi. Health Insurance Coverage for Vulnerable Populations: Contrasting Asian Americans and Latinos in the United States. *Inquiry*, 43(3): 231-254, 2006.

**Thomas G. McGuire**, Margarita Alegria, Benjamin L. Cook, Kenneth B. Wells, and Alan Zaslavsky. Implementing the IOM Definition of Disparities: An Application to Mental Health Care. *Health Services Research,* 41(5): 1979-2005, 2006.

Victoria Ojeda and **Thomas G. McGuire**. Gender and Racial/Ethnic Differences in Use of Outpatient Mental Health and Substance Use Services by Depressed Adults. *Psychiatric Q*, 77(3): 211-222, 2006.

Anna D. Sinaiko and **Thomas G. McGuire**. Patient Inducement, Provider Priorities, and Resource Allocation in Public Mental Health Systems. *Journal of Health Politics, Policy, and Law*, 31(6): 1075-1106, 2006.

Carla Gomes, **Thomas G. McGuire**, Jameson Foster, Sheila A. Donahue, Chip J. Felton, and Susan M. Essock. Supply of Mental Health Services in the Aftermath of 9/11: Did Project Liberty Displace Community Based Medicaid Services in New York*? Psychiatric Services*, 57(9): 1309-1312, 2006.

Appx8285

Colleen Barry, Richard G. Frank, and **Thomas G. McGuire**.  The Cost of Mental Health Parity: Still an Impediment?  *Health Affairs*, 25(3): 623-634, 2006.

Jacob Glazer and **Thomas G. McGuire**. Optimal Risk Adjustment. In Jones (Eds.)  *The Elgar Companion to Health Economics*, 279-285, 2006.

Jacob Glazer and **Thomas G. McGuire**.  Optimal Quality Reporting in Markets for Health Plans.  *Journal of Health Economics*, 25(2): 295-310, 2006.

Jacob Glazer and **Thomas G. McGuire**.  Contending with Risk Selection in Health Insurance Markets in Germany.  *Perspektiven der Wirtscgaftspolitik*, 7: 75-91, 2006.

**Thomas G. McGuire**.  Paying Doctors to Improve Quality of Care.  In Rosen, Saltman, Shani (Eds.) *Health Systems*, 383-389.  The Israel National Institute for Health Policy and Health Services Research: Jerusalem Conference on Health Policy, 2006.

Randall P. Ellis and **Thomas G. McGuire**.  Predictability and Predictiveness in Health Care Spending. *Journal of Health Economics*, 26(1): 25-48, 2007.

**Thomas G. McGuire**.  Risk Adjustment Systems in Competitive Health Insurance Markets: Lessons from the United States.  In Wille, Ulrich, and Schneider (Eds.) *Wettnewerb und Riskikostrukturausgleich im internartonalen vergleich,* 2007.

**Thomas G. McGuire** and Sebastian Bauhoff.  A Decade of Choice: Tracking the German National Experience with Consumer Choice of Sickness Fund. In P. Oberender and C. Strauss (Eds) *Auf der Suche nach der besseren Losung*, 145-160, 2007.

Ming Tai-Seale, **Thomas G. McGuire**, Christopher Colenda, David Rosen, and Mary Ann Cook.  Two-Minute Mental Health Care for Elderly Patients: Inside Primary Care Visits.  *Journal of the American Geriatrics Society,* 55(12): 1903-1911, 2007.

Ming Tai Seale, **Thomas G. McGuire**, and Weimin Zhang.  Time Allocation in Primary Care Office Visits. *Health Research Services,* 42(5): 1871-1894, 2007.

Ana Balsa, Zhun Cao and **Thomas G. McGuire**.  Does Managed Care Reduce Health Care Disparities Between Minorities and Whites? *Journal of Health Economics* 26: 101-121, 2007.

Jacob Glazer, **Thomas G. McGuire**, and Joseph P. Newhouse.  Using Performance Measures to Motivate Report Averse and Report Loving Agents.  *Journal of Health Economics*, 26(6): 1170-1189, 2007.

Naihua Duan, Margarita Alegria, Glorisa Canino, **Thomas G. McGuire**, and David Takeuchi.  Survey Conditioning in Self-Reported Mental Health Service Use: Randomized Comparison of Alternative Instrument Formats.  *Health Services Research,* 42(2): 890-907, 2007.

Benjamin L. Cook, **Thomas G. McGuire**, and Jeanne Miranda.  Measuring Trends in Mental Health Care Disparities, 2000-2004.  *Psychiatric Services,* 58(12): 1533-1540, 2007.

**Thomas G. McGuire** and Jeanne Miranda.  Racial and Ethnic Disparities in Mental Health Care: Evidence and Policy Implications.  *Health Affairs*, 27(2):393-403, 2008.

**Thomas G. McGuire**, John Z. Ayanian, Daniel, E. Ford, Rachel E.M. Henke, Kathryn M. Rost, and Alan M. Zaslavsky.  Testing for Statistical Discrimination by Race/Ethnicity in Panel Data for Depression Treatment in Primary Care.  *Health Services Research,* 43(2): 531-551, 2008.

Jeanne Miranda, **Thomas G. McGuire**, David R. Williams, and Phillip Wang.  Mental Health in the Context of Health Disparities.  *The American Journal of Psychiatry*, 165(9): 1102-1108, 2008.

Chunlung Lu, Richard G. Frank, and **Thomas G. McGuire**.  Demand Response of Mental Health Services to Cost Sharing under Managed Care. *The Journal of Mental Health Policy and Economics,* 11(3): 113-126, 2008.

Rachel E.M. Henke, **Thomas G. McGuire**, Alan M. Zaslavsky, Daniel E. Ford, and Jose Arbelaez.  Clinician and Organizational Level Factors in the Adoption of Evidence-Based

Appx8286

Care for Depression in Primary Care. *Health Care Management Review,* 33(4): 289-299, 2008.

**Thomas G. McGuire** and Jeanne Miranda. New Evidence Regarding Racial and Ethnic Disparities in Mental Health: Policy Implications. *Health Affairs,* 27(2): 393-403, 2008.

Jacob Glazer and **Thomas G. McGuire**. Inducing Quality from Health Care Providers in the Presence of Adverse Selection. In Lu, Mingshan, and Jonsson (Eds.) *Financing Health Care: New Ideas for a Changing Society*, 9:223-244, 2008.

Jacob Glazer, **Thomas G. McGuire**, and Sharon-Lise T. Normand. Mitigating the Problem of Unmeasured Outcomes in Quality Reports. *The B.E. Journal of Economic Analysis and Policy*, 8(2): 7, 2008.

Jacob Glazer, **Thomas G. McGuire**, Zhun Cao, and Alan M. Zaslavsky. Using Global Ratings of Health Plans to Improve the Quality of Health Care. *Journal of Health Economics*, 27(5): 1182-1195, 2008.

**Thomas G. McGuire**. Physician Fees and Behavior: Implications for Structuring a Fee Schedule. In Sloan and Kasper (Eds.) *Incentives and Choice in Health Care,* 263-288, 2008.

Chunling Lu, Richard G. Frank, and **Thomas G. McGuire**. Demand Response Under Managed Health Care. *Contemporary Economic Policy*, 27(1): 1-15, 2009.

Benjamin L. Cook, **Thomas G. McGuire**, and Samuel H. Zuvekas. Measuring Trends in Racial/Ethnic Health Care Disparities. *Medical Care Research and Review*, 66: 23-48, 2009.

Victoria Ojeda, Richard G. Frank, and **Thomas G. McGuire**. Mental illness, Nativity, Gender and Labor Supply. *Health Economics*, 19(4): 396-421, 2009.

Jeffrey Swanson, Marvin Swartz, Richard A. Van Dorn, John Monahan, **Thomas G. McGuire**, Henry J. Steadman, and Pamela Clark Robbins. Racial Disparities in Involuntary Outpatient Commitment: Are They Real? *Health Affairs*, 28(3): 816-826, 2009.

Benjamin L. Cook, **Thomas G. McGuire**, Ellen Meara, and Alan M. Zaslavsky. Adjusting for Health Status in Non-Linear Models of Health Care Disparities. *Health Services and Outcomes Research Methodology*, 9(1): 1-21, 2009.

Marcela V. Horovitz-Lennon, Richard G. Frank, **Thomas G. McGuire**, and Margarita Alegria. Racial and Ethnic Disparities in the Treatment of a Medicaid Population with Schizophrenia. *Health Services Research*, 44(6): 2106-2122.

David C. Grabowski and **Thomas G. McGuire**. Black-White Disparities in Care in Nursing Homes. *Atlantic Economic Journal*, 37(3): 299-314, 2009.

Alisa B. Busch, Haiden A. Huskamp, Brian Neelon, Tim Manning, Sharon-Lise T. Nomrand, and **Thomas G. McGuire**. Longitudinal Racial/Ethnic Disparities in Antimanic Medication Use in Bipolar-I Disorder. *Medical Care,* 47(12): 1217-1228, 2009.

Richard G. Frank, **Thomas G. McGuire**, and Howard H. Goldman. Trends in Mental Health Cost Growth: An Expanded Role for Management? *Health Affairs,* 28(3): 649-659, 2009.

Catherine Fullerton, David C. Grabowski, **Thomas G. McGuire**, and Vincent Mor. Trends in Mental Health Admissions to Nursing Homes: 1999-2005. *Psychiatric Services*, 60(7): 965-71, 2009.

Rachel Henke and **Thomas G. McGuire**. Clinical Inertia in Depression Treatment. *Medical Care*. 47(9): 959-967, 2009.

Elizabeth L. Merrick, **Thomas G. McGuire**, et al. Integrated Employee Assistance Program/Managed Behavioral Healthcare Benefits: Relationship with Access and Client Characteristics. *Administration and Policy in Mental Health and Mental Health Services Research,* 36(6): 416-423, 2009.

13

**Appx8287**

Hsien-Ming Lien, Mingshan Lu, Ching-To Albert Ma, and **Thomas G. McGuire**.  Progress and Compliance in Alcohol Abuse Treatment.  *Journal of Health Economics*, 29 (2): 213-225, 2009.

Elizabeth L. Merrick, Dominic Hodgkin, Deidre Hiatt, Constance M. Horgan, Vanessa Azzone, Bernard McCann, Grant Ritter, Galima Zolotusky, **Thomas G. McGuire**, and Sharon Reif.  Patterns of Service Use in Two Types of Managed Behavioral Health Care Plans.  *Psychiatric Services*, 61(1): 86-90, 2010.

**Thomas G. McGuire** and Anna Sinaiko.  Regulating a Health Insurance Exchange: Implications for Individuals with Mental Illness.  *Psychiatric Services*, 61(11): 1074-1080, 2010.

**Thomas G. McGuire**.  Introduction to Special Section on Health Reform and Mental Illness.  *Psychiatric Services*, 61(11): 1073, 2010.

Richard G. Frank and **Thomas G. McGuire**.  Mental Health Treatment and Criminal Justice Outcomes.  In Cook, Ludwig, McCrary (Eds*.) Controlling Crime: Strategies and Tradeoffs*, 2010.

Jeffrey W. Swanson, Richard A. Van Dorn, Marvin S. Swartz, Andrew M. Cislo, Christine M. Wilder, Lorna L. Moser, Allison R. Guilbert, and **Thomas G. McGuire**.  Robbing Peter to Pay Paul: Did New York State's Outpatient Commitment Program Crowd Out Voluntary Service Recipients?  *Psychiatric Services*, 61(10): 888-995, 2010.

Dominic Hodgkin, Elizabeth L. Merrick, Deidre Hiatt, Constance M. Horgan, and **Thomas G. McGuire**.  The Effect of Employee Assistance Plan Benefit on the Use of Outpatient Behavioral Health Care.  *Journal of Mental Health Policy and Economics,* 13(4): 167-174, 2010.

Benjamin L. Cook, **Thomas G. McGuire**, Kari Lock, and Alan M. Zaslavsky.  Comparing Methods of Racial and Ethnic Disparities Measurement across Different Settings of Mental Health Care.  *Health Services Research* 45(2): 825-847, 2010.

**Thomas G. McGuire**.  Payment Reform to Finance a Medical Home.  Comment on Achieving Cost Control, Care Coordination, and Quality Improvement Through Incremental Payment System Reform.  *Journal of Ambulatory Care Management*, 33(1): 35-37, 2010.

**Thomas G. McGuire** and Sebastian Bauhoff.  Adoption of a Cost-Saving Innovation: Germany, UK, and Simvastatin.  In Klusen, Verheyen, and Wagner (Eds.) *England and Germany in Europe – What Lessons Can We Learn From Each Other?*  11-26, 2011.

**Thomas G. McGuire**, Anna D. Sinaiko, and Joseph P. Newhouse.  An Economics History of Medicare Part C.  *The Millbank Quarterly*, 2(89), 2011.

David C. Grabowski, Christopher C. Afendulis, and **Thomas G. McGuire**.  Medicare Prospective Payment and the Volume and Intensity of Skilled Nursing Facility Services.  *Journal of Health Economics*, 30(4): 675-684, 2011.

Jacob Glazer and **Thomas G. McGuire**.  Gold and Silver Health Plans:  Accommodating Demand Heterogeneity in Managed Competition.  *Journal of Health Economics*, 30(5):1011, 2011.

John M. McWilliams, Christopher C. Afendulis, and **Thomas G. McGuire**.   Complex Medicare Advantage Choices May Overwhelm Seniors – Especially Those With Impaired Decision Making.  *Health Affairs*, 30(9): 1786-1794, 2011.

Ernst R. Berndt, **Thomas G. McGuire**, and Joseph P. Newhouse.  A Primer on the Economics of Prescription Pharmaceutical Pricing in Health Insurance Markets.  *Forum for Health Economics and Policy*, 14(2), 2011.

Benjamin L. Cook, **Thomas G. McGuire**, Margarita Alegria, and Sharon-Lise T. Normand.  Crowd-out and Exposure Effects of Physical Comorbidities on Mental Health Care Use:  Implications for Racial-Ethnic Disparities in Access.  *Health Services Research*, 46(4): 1259-1280, 2011.

**Appx8288**

Catherine Fullerton, Alisa B. Busch, Sharon-Lise T. Normand, **Thomas G. McGuire**, and Arnold M. Epstein. Ten-Year Trends in Quality of Care and Spending for Depression: 1996-2005. *Archive of General Psychiatry*, 68(12): 1218-1226, 2012.

Catherine Fullerton, Arnold M. Epstein, Richard G. Frank, Sharon-Lise T. Normand, Christina X. Fu, and **Thomas G. McGuire**. Medication Use and Spending Trends Among Children with ADHD in Florida's Medicaid Program. *Psychiatric Services*, 63(2): 115-121, 2012.

Benjamin L. Cook, **Thomas G. McGuire**, and Alan M. Zaslavsky. Measuring Racial/Ethnic Disparities in Health Care: Methods and Practical Issues. *Health Services Research*, 2011, 45(4): 1259-1280, 2012.

Jacob Glazer and **Thomas G. McGuire**. A Welfare Measure of Offset Effects in Health Insurance. *Journal of Public Economics*, 96: 520-523, 2012.

Ming Tai-Seale and **Thomas G. McGuire**. Time is Up: The Increasing Shadow Price of Time in Primary Care Office Visits. *Health Economics*, 21: 457-476, 2012.

Jacob Glazer, Haiden Huskamp, and **Thomas G. McGuire**. A Prescription for Drug Formulary Evaluation: An Application of Price Indices. *Forum for Health Economics and Policy*, 15(2): 1558, 2012.

**Thomas G. McGuire**. Demand for Health Insurance. In Pauly, McGuire, and Barros (Eds.) *Handbook of Health Economics*, Volume 2, 2012.

Jacob Glazer and **Thomas G. McGuire**. Making MA a Middle Class Program. *Journal of Health Economics,* 32(2): 463-473, 2013.

**Thomas G. McGuire**, Jacob Glazer, Joseph P. Newhouse, Sharon-Lise T. Normand, Julie Shi, Anna D. Sinaiko, and Samuel Zuvekas. Integrating Risk Adjustment and Enrollee Premiums in Health Plan Payment. *Journal of Health Economics*, 32(6): 1263-1277, 2013.

Jane M. Zhu, Timothy J. Layton, Anna D. Sinaiko, and **Thomas G. McGuire**. The Power of Reinsurance in Health Insurance Exchanges to Improve the Fit of the Payment System and Reduce Incentives for Adverse Selection. *Inquiry*, 50(4): 255-274, 2013.

Jeffery Swanson, Richard Van Dorn, Marvin Swartz, Pam Robbins, Henry Steadman, **Thomas G. McGuire**, and John Monahan. The Cost of Assisted Outpatient Treatment: Can it Save States Money? *American Journal of Psychiatry*, 170: 1423-1432, 2014.

Joseph P. Newhouse and **Thomas G. McGuire**. How Successful is Medicare Advantage? *Millbank Quarterly*, 92(2): 351-394, 2014.

**Thomas G. McGuire**. A Note on Income Effects and Health Care Cost Growth in Medicare. *Forum for Health Economics and Policy*. 17(1): 1, 2014.

**Thomas G. McGuire**, Joseph P. Newhouse, Sharon-Lise T. Normand, Julie Shi, and Samuel Zuvekas. Assessing Incentives for Service-Level Selection in Private Health Insurance Marketplaces. *Journal of Health Economics*, 35(1): 47-63, 2014.

Jacob Glazer and **Thomas G. McGuire**. Risk Adjustment as Mechanism to Design. In Culyer (Eds.) *Encyclopedia of Health Economics*, 3: 267-271, 2014.

Benjamin L. Cook, Samuel H. Zuvekas, Nicholas Carson, Geoffrey Ferris Wayne, Andrew Vesper and **Thomas G. McGuire**. Assessing Disparities in Treatment Among Racial/Ethnic Groups During Episodes of Mental Health Care. *Health Services Research*, 49(1): 206-229, 2014.

Henry J. Steadman, Lisa Callahan, Pamela Clark Robbins, Roumen Vesselinov, **Thomas G. McGuire**, and Joseph P. Morrissey. Criminal Justice and Behavioral Health Care Costs of Mental Health Court Participants: A Six year Study. *Psychiatric Services*, 1:65(9): 1100-1104, 2014.

Richard Frank Sherry A. Giled, **Thomas G. McGuire**. Paying for Early Interventions in Psychoses: A Three-Part Model. *Psychiatric Services*, 66(7): 677-679, 2014.

Rudy Douven, **Thomas G. McGuire**, and J. Michael McWilliams. Avoiding Unintended Incentives in ACO Payment Models. *Health Affairs*, 34(1): 143-149, 2015.

Appx8289

Sherri Rose, Julie Shi, **Thomas G. McGuire**, and Sharon-Lise T. Normand. Matching and Imputation Methods for Risk Adjustment in the Health Insurance Marketplaces. *Statistics in Biosciences,* 2015 (special issue on big data) Advance online publication. doi:10.1007/s12561-015-9135-7.

Keith M. Drake, Martha A. Starr, and **Thomas G. McGuire**. Do Reverse Payment Settlements Constitute an Anticompetitive Pay-for-Delay? *International Journal of the Economics of Business*, 22(2): 173-200, 2015.

Benjamin L. Cook, Zimin Liu, Anna Sophia Lessios, Stephen Loder, and **Thomas G. McGuire**. The Costs and Benefits of Reducing Racial – Ethnic Disparities in Mental Health. *Psychiatric Services*, 66(4): 389-396, 2015.

Alisa B. Busch, Arnold M. Epstein, **Thomas G. McGuire**, Sharon-Lise T. Normand, and Richard G. Frank. Thirty Day Hospital Readmission for Medicaid Enrollees with Schizophrenia: The Role of Local health Care Systems. *The Journal of Mental Health Policy and Economics*, 18(3): 115-124, 2015.

Ezra Golberstein, Taeho Greg Rhee, and **Thomas G. McGuire**. Geographic Variations in use of Medicaid Mental Health Services. *Psychiatric Services*, 1:66(5): 452-454, 2015.

Joseph P. Newhouse, Mary Price, J. Michael McWilliams, John Hsu, and **Thomas G. McGuire**. How Much Favorable Selection is Left in Medicare Advantage? *American Journal of Health Economics,* 1(1): 1-26, 2015.

Sherry A. Giled, Bradley D. Stein, **Thomas G. McGuire**, Rhonda Robinson Beale, Farifteh Firoozmand Duffy, Samantha Shugarman, and Howard H. Goldman. Measuring Performance in Psychiatry: A Call to Action. *Psychiatric Services*, 1:66(8): 872-878, 2015.

**Thomas G. McGuire**, Keith M. Drake, Einer Elhauge, Raymond Hartman, and Martha A. Starr. Resolving Reverse-Payment Settlements with the Smoking Gun of Stock Price Movements. *Iowa Law Review*, 101(4): 1581-1599, 2016.

Dominic Hodgkin, Elizabeth L. Merrick, Peggy L. O'Brien, **Thomas G. McGuire**, Sue Lee, Thilo Desckersbach, and Andrew A. Nierenberg. Testing for Clinical Inertia in Medication Treatment of Bipolar Disorder. *Journal of Affective Disorders*, 205: 13-19, 2016

Timothy J. Layton, **Thomas G. McGuire**, and Anna D. Sinaiko. Risk Corridors and Reinsurance in Health Insurance Marketplaces: Insurances for Insurers. *American Journal of Health Economics*, 2(1): 66-95, 2016.

Ellen J. Montz, Timothy J. Layton, Alisa B. Busch, Randall P. Ellis, Sherri R. Rose, and **Thomas G. McGuire**. Risk Adjustment Simulation: Health Plans May Have Incentives to Distort Mental Health and Substance Abuse Coverage. *Health Affairs*, 35(6): 1022-1028, 2016.

**Thomas G. McGuire.** Achieving Mental Health Care Parity Might Require Changes in Payments and Competition. *Health Affairs*, 35(6): 1029-1035, 2016.

Michael Geruso and **Thomas G. McGuire**. Tradeoffs in the Design of health plan payment Systems: Fit, Power, and Balance. *Journal of Health Economics*, 47: 1-19, 2016.

Yuhua Bao, **Thomas G. McGuire**, Ya-Fen Chan, Ashley A. Eggman, Andrew M. Ryan, Martha L. Bruce, Harold Alan Pincus, Erin Hafer, and Jurgen Unutzer, Value-Based Payment in Implementing Evidence- Based Care: The Mental Health Integration Program in Washington State. *American Journal of Managed Care*, 23(1):48-53, 2017.

Jacob Glazer, **Thomas G. McGuire**, and Julie Shi. Risk Adjustment of Health Plan Payments to Correct Inefficiencies from Adverse Selection. Ana Aizcorbe, Colin Baker, Ernst Berndt and David Cutler, editors, Measuring and Modeling Health Care Costs, Chicago: University of Chicago Press for the National Bureau of Economic Research, 2017.

Keith M. Drake and **Thomas G. McGuire**, Stock-Price Evidence for Anticompetitive Effects in the Nexium "Reverse-Payment" Settlement," *Journal of Competition Law & Economics*, 12(4): 735-747, 2016.

16

Foo, Patricia, Ming Tai-Seale, **Thomas G. McGuire**, Alan Zaslavsky, Richard Frankel, Jennifer
  Lafata, "Patient and Physician Race and the Allocation of Time and Patient Engagement
  Efforts to Mental Health Discussions in Primary Care: An Observational Study of
  Audiorecorded Periodic Health Exams," *Journal of Ambulatory Care Management*,
  forthcoming.

Timothy J. Layton and **Thomas G. McGuire**, "Options for Dealing with High-Cost Cases in
  Health Insurance Marketplaces," *American Journal of Health Economics,*3(2): 1-27,
  2017.

David C. Grabowski, Nina R. Joyce, **Thomas G. McGuire** and Richard G. Frank, "Passive
  Enrollment of Dual Eligible Beneficiaries into Medicare and Medicaid Managed Care has
  not met Expectations," *Health Affairs* 36(5): 846-854, 2017.

Ming Tai-Seale, Laura Hatfield, **Thomas G. McGuire**, Caroline Wilson, Cheryl Stults, Ashley
  Stone, Lisa Diamond, Richard Frankel, Jennifer Lafata, "Periodic Health Exams and
  Missed Opportunities Among Patients Likely Needing Mental Health Care," *American
  Journal of Managed Care*, forthcoming.

Thomas G. McGuire and Richard C. van Kleef, "Introduction to the Special Section on Regulated
  Competition," *Journal of Health Economics*, (56): 234-236, December, 2017.

Richard van Kleef, **Thomas G. McGuire**, Rene van Vliet and Wynand P. van de Ven,
  "Improving Risk Equalization with Constrained Regression," *The European Journal of
  Health Economics*, 18(9): 1137-1156, 2017.

Jacob Glazer and **Thomas G. McGuire**, "Paying Medicare Advantage Plans: To Level or Tilt
  the Playing Field," *Journal of Health Economics*, (56): 281-291, December, 2017.

Anna Sinaiko, Timothy J. Layton, Sherri Rose and **Thomas G. McGuire**, "Implications of
  Family Risk Pooling for Individual Health Insurance Markets," *Health Services Research
  and Methodology*, 17(3-4), pp 219-236, December, 2017.

Timothy Layton, Randall Ellis, **Thomas G. McGuire** and Richard van Kleef, "Measuring
  Efficiency of Health Plan Payment Systems in Managed Competition Health Insurance
  Markets," *Journal of Health Economics*, (56): 237-255, December, 2017.

Laura A. Hatfield, Melissa M. Fauvreault, **Thomas G. McGuire** and Michael E. Chernew,
  "Modelling Health Care Spending Growth of Older Adults," *Health Services Research*,
  53): 238-255, February 2018.

**Appx8291**

**Thomas McGuire: Litigation Experience, 2012-Present**

*In re: Plasma-Derivative Protein Therapies Antitrust Litigation*, United States District Court for the Northern District of Illinois, Eastern Division, Case Number 09 C 7666, MDL No. 2109

      Consulting expert, 2011, 2012

*Lakeland Regional Medical Center, Inc. v. Astellas US, LLC; and Astellas Pharma US, Inc,* United States District Court for the Middle District of Florida, Civil Action No. 8:10-CV-2008-33TGW

      Expert reports, July 2012 and August 2012

      Deposition, August 2012

*Health Net, Inc. v. Solvay Pharmaceuticals, Inc. and Unimed Pharmaceuticals, Inc,* United States District Court, Northern District of Georgia, Atlanta Division, Civil Action No. 1:11-CV-0334

      Expert report, August 2012

*In re: Actiq Sales and Marketing Practices Litigation,* United States District Court for the Eastern District of Pennsylvania, No. 07-cv-4492

      Expert report, May 2013

      Deposition, June 2013

*Vista HealthPlan Inc., et al., v. Cephalon, Inc., et al.,* United States District Court for the Eastern District of Pennsylvania, CA No. 06-CV-01833

      Consulting expert, 2013

*In re: Nexium (esomeprazole) Antitrust Litigation*, United States District Court for the District of Massachusetts, MDL No. 2409, Civil Action No. 112-cv-11711 and *In re: Nexium (esomeprazole) Antitrust Litigation*, United States District Court for the District of Massachusetts, MDL No. 2409

      Expert reports, August 2013, October 2013, January 2014, September 2014, October 2014, and November 2014

      Depositions, November 2013 and February 2014

      Testimony, November 2014

*United States of America, ex rel. Saldivar v. Fresenius Medical Care Holdings, Inc.;* United States District Court for the Northern District of Georgia, Atlanta Division, Civil Action No. 1:10-cv-01614-AT

     Expert report, November 2014

     Deposition, February 2015

*Monica Barba and Jonathan Reisman, on behalf of themselves and all others similarly situated v. SHIRE U.S., INC., et al.,* United States Southern District Court of Florida, Miami-Dade Division, Civil Action No. 1:13-cv-21158-JAL

     Expert report, June 2015

     Deposition, August 2015

*United States of America, ex rel., Tracey George and Dawn Simmons v. Fresenius Medical Care Holdings, Inc.;* United States District Court for the Northern District of Alabama, Southern Division, Civil Action No. 2:12-cv-877-AKK

     Expert report, October 2015

     Deposition, December 2015

*In re: Cipro Cases I & II,* In the Supreme Court of California, Case No. S198616

     Expert disclosure, April 2016

     Deposition, April 2016

*In re: Solodyn (Minocycline Hydrocholoride) Antitrust Litigation,* United States District Court, District of Massachusetts, MDL No. 14-md-2503-DJC

     Expert reports, May 2017, August 2017, and February 2018

     Deposition, September 2017

*In re: Asacol Antitrust Litigation,* United States District Court, District of Massachusetts, Civil Action No. 1:15-cv-12730-DJC

     Expert reports, June 2017 and August 2017

     Deposition, August 2017

Appx8293

**Attachment B**

**Attachment B: Materials Considered**

**Bates Numbered Documents**

AEO-MRK-CHA01035029
CPC000005
CPC000008
CPC000013
CPC000015
CPC000021
CPC000023
CPC000024
CPC000025
CPC000026
CPC000027
CPC000028
CPC000032
CPC000035
CPC000038
CPC000040
CPC000042
CPC000045
CPC000050
CPC000057
CPC000059
CPC000061
CPC000065
CPC000069
CPC000072
CPC000074
CPC000077
CPC000082
CPC000084
CPC000086
CPC000089
CPC000092
CPC000094
CPC000099
CPC000101
CPC000108
CPC000113
CPC000117
CPC000126
CPC000130

CPC000136
CPC000140
CPC000144
CPC000157
CPC000158
CPC000159
CPC000160
CPC000161
CPC000762
CPC000764
CPC000766
CPC000768
CPC000770
CPC000772
CPC000774
CPC000776
CPC000778
CPC000781
CPC000782
CPC000783
CPC000784
CPC000785
CPC000786
CPC001234
CPC001236
CPC001239
CPC001248
CPC001249
CPC001251
CPC001253
CPC001268
CPC001280
CPC001281
CPC001299
CPC001300
CPC001304
CPC001313
CPC001316
CPC001331
CPC001337
CPC001344
CPC001349
CPC001350
CPC001351
CPC001352

EXPERT REPORT OF THOMAS G. MCGUIRE, PH.D.

CPC001354
CPC001356
CPC001357
CPC001359
CPC001364
CPC001366
CPC001367
CPC001368
CPC001370
CPC001371
CPC001372
CPC001374
CPC001375
CPC001378
CPC001379
CPC001381
CPC001383
CPC001384
CPC001385
CPC001387
CPC001390
CPC001392
CPC001393
CPC001394
CPC001406
CPC001408
CPC001410
CPC001411
CPC001416
CPC001418
CPC001422
CPC001432
CPC001433
CPC001436
CPC001439
CPC001440
CPC001442
CPC001443
CPC001498-99
CPC001715
CPC001721
CPC001726
GSK-MMR-0023422
GSK-MMR-0024042
GSK-MMR-0040288

EXPERT REPORT OF THOMAS G. MCGUIRE, PH.D.

GSK-MMR-0064811 AEO
MRK-CHA00012169
MRK-CHA00014375
MRK-CHA00019225
MRK-CHA00025792
MRK-CHA00040705
MRK-CHA00040705
MRK-CHA00048747
MRK-CHA00061532
MRK-CHA00071459
MRK-CHA00071503
MRK-CHA00071642
MRK-CHA00071883
MRK-CHA00071897
MRK-CHA00072356
MRK-CHA00073408
MRK-CHA00075360
MRK-CHA00077074
MRK-CHA00077086
MRK-CHA00077201
MRK-CHA00080635
MRK-CHA00081345
MRK-CHA00081567
MRK-CHA00084900
MRK-CHA00086292
MRK-CHA00089818
MRK-CHA00091196
MRK-CHA00091778
MRK-CHA00091798
MRK-CHA00095281
MRK-CHA00095301
MRK-CHA00096568
MRK-CHA00096569
MRK-CHA00096633
MRK-CHA00096710
MRK-CHA00096712
MRK-CHA00096713
MRK-CHA00097961
MRK-CHA00097962
MRK-CHA00097965
MRK-CHA00098888
MRK-CHA00099967
MRK-CHA00100948
MRK-CHA00100948
MRK-CHA00109997

EXPERT REPORT OF THOMAS G. MCGUIRE, PH.D.

MRK-CHA00111097
MRK-CHA00115541
MRK-CHA001168156
MRK-CHA00185003
MRK-CHA00186162
MRK-CHA00190337
MRK-CHA00198869
MRK-CHA00201319-21
MRK-CHA00207690
MRK-CHA00207859
MRK-CHA00209458
MRK-CHA00209546
MRK-CHA00209547
MRK-CHA00219871
MRK-CHA00220248
MRK-CHA00220377
MRK-CHA00224982-6529
MRK-CHA00233586
MRK-CHA00235748
MRK-CHA00247555
MRK-CHA00247565
MRK-CHA00254547
MRK-CHA00254572
MRK-CHA00264224-25
MRK-CHA00267731
MRK-CHA00270441
MRK-CHA00272075
MRK-CHA00272885
MRK-CHA00281084
MRK-CHA00285268
MRK-CHA00285276
MRK-CHA00285430
MRK-CHA00286492
MRK-CHA00287193
MRK-CHA00290398
MRK-CHA00290906
MRK-CHA00308190
MRK-CHA00308563
MRK-CHA00311350
MRK-CHA00311385
MRK-CHA00314242
MRK-CHA00317932
MRK-CHA00317956
MRK-CHA00324104
MRK-CHA00332972

EXPERT REPORT OF THOMAS G. MCGUIRE, PH.D.

MRK-CHA00333035
MRK-CHA00333323
MRK-CHA00355971
MRK-CHA00356495
MRK-CHA00422304
MRK-CHA00429533
MRK-CHA00440896
MRK-CHA00450089
MRK-CHA00453347
MRK-CHA00456265
MRK-CHA00458808
MRK-CHA00458809
MRK-CHA00458819
MRK-CHA00461300
MRK-CHA00461487
MRK-CHA00464726
MRK-CHA00464728
MRK-CHA00470480
MRK-CHA00473721
MRK-CHA00473722 AEO
MRK-CHA00473941
MRK-CHA00473942
MRK-CHA00476370
MRK-CHA00477150
MRK-CHA00477214
MRK-CHA00477226
MRK-CHA00477250
MRK-CHA00477375
MRK-CHA00482618
MRK-CHA00482622
MRK-CHA00484168
MRK-CHA00513684
MRK-CHA00513941
MRK-CHA00514009
MRK-CHA00527025
MRK-CHA00553400
MRK-CHA00553400
MRK-CHA00553577
MRK-CHA00553942
MRK-CHA00564419
MRK-CHA00575892
MRK-CHA00582885
MRK-CHA00625629
MRK-CHA00640700
MRK-CHA00640706

EXPERT REPORT OF THOMAS G. MCGUIRE, PH.D.

MRK-CHA00641065
MRK-CHA00671410
MRK-CHA00757038
MRK-CHA00757039
MRK-CHA00757040
MRK-CHA00757041
MRK-CHA00757042
MRK-CHA00757043
MRK-CHA00757044
MRK-CHA00757045
MRK-CHA00757046
MRK-CHA00757047
MRK-CHA00757048
MRK-CHA00757049
MRK-CHA00757050
MRK-CHA00757051
MRK-CHA00757052
MRK-CHA00757053
MRK-CHA00757054
MRK-CHA00757055
MRK-CHA00761865
MRK-CHA00764713
MRK-CHA00789733
MRK-CHA00796367
MRK-CHA00796740
MRK-CHA00797936
MRK-CHA00798685
MRK-CHA00810921
MRK-CHA00812332
MRK-CHA00816881
MRK-CHA00816958
MRK-CHA00817350
MRK-CHA00822460
MRK-CHA00822462
MRK-CHA00868569
MRK-CHA00868948
MRK-CHA00868949
MRK-CHA00870212
MRK-CHA00871047
MRK-CHA00871048
MRK-CHA00873631
MRK-CHA00873631
MRK-CHA00873909
MRK-CHA00876257
MRK-CHA00876386

MRK-CHA00876580
MRK-CHA00877140
MRK-CHA00878134
MRK-CHA00878771
MRK-CHA00879488
MRK-CHA00879633
MRK-CHA00882819
MRK-CHA00884351
MRK-CHA00886031
MRK-CHA00890482
MRK-CHA00893838
MRK-CHA00895103
MRK-CHA00895441
MRK-CHA00895519
MRK-CHA00897965
MRK-CHA00898562
MRK-CHA00899634
MRK-CHA00900151
MRK-CHA00902233
MRK-CHA00902439
MRK-CHA00903810
MRK-CHA00903816
MRK-CHA00903949
MRK-CHA00903977
MRK-CHA00904075
MRK-CHA00904112
MRK-CHA00904140
MRK-CHA00904268
MRK-CHA00904279
MRK-CHA00904299
MRK-CHA00904532
MRK-CHA00905220
MRK-CHA00905248
MRK-CHA00905538
MRK-CHA00905645
MRK-CHA00905656
MRK-CHA00906205
MRK-CHA00907090
MRK-CHA00907099
MRK-CHA00907101
MRK-CHA00908426
MRK-CHA00908429
MRK-CHA00909453
MRK-CHA00911543
MRK-CHA00912420

EXPERT REPORT OF THOMAS G. MCGUIRE, PH.D.

HIGHLY CONFIDENTIAL                                                                ATTACHMENT B: PAGE 8

**Appx8302**

MRK-CHA00915595
MRK-CHA00917017
MRK-CHA00917019
MRK-CHA00918573
MRK-CHA00919619
MRK-CHA00928768
MRK-CHA00928796
MRK-CHA00928813
MRK-CHA00930622
MRK-CHA00930898
MRK-CHA00931216
MRK-CHA00931221
MRK-CHA00931236
MRK-CHA00931559
MRK-CHA00932975
MRK-CHA00933190-254
MRK-CHA00934148
MRK-CHA00934194
MRK-CHA00934195
MRK-CHA00934200
MRK-CHA00934255
MRK-CHA00934310
MRK-CHA00934368
MRK-CHA00934406
MRK-CHA00934501
MRK-CHA00934537
MRK-CHA00934538
MRK-CHA00934689
MRK-CHA00935090
MRK-CHA00941280
MRK-CHA00941287
MRK-CHA00941673
MRK-CHA00941679
MRK-CHA00941692
MRK-CHA00941954
MRK-CHA00943424
MRK-CHA00951342
MRK-CHA00952527-AEO
MRK-CHA00952822
MRK-CHA00952869
MRK-CHA00952888
MRK-CHA00952892
MRK-CHA00952900
MRK-CHA00952903
MRK-CHA00953164

---

EXPERT REPORT OF THOMAS G. MCGUIRE, PH.D.

HIGHLY CONFIDENTIAL

MRK-CHA00953174
MRK-CHA00953175 AEO
MRK-CHA00953209 AEO
MRK-CHA00953308
MRK-CHA00953588
MRK-CHA00955452
MRK-CHA00955457
MRK-CHA00956000
MRK-CHA00956001
MRK-CHA00956275
MRK-CHA00956276
MRK-CHA00956277
MRK-CHA00956278-AEO
MRK-CHA00956279
MRK-CHA00956280
MRK-CHA00956281
MRK-CHA00956282
MRK-CHA00956283
MRK-CHA00956284
MRK-CHA00956285
MRK-CHA00956286
MRK-CHA00956287
MRK-CHA00956288
MRK-CHA00956289
MRK-CHA00956290
MRK-CHA00956291
MRK-CHA00956292
MRK-CHA00956293
MRK-CHA00956301
MRK-CHA00956991-AEO
MRK-CHA00957136-AEO
MRK-CHA00957157
MRK-CHA00957182
MRK-CHA00957234
MRK-CHA00957797
MRK-CHA00957841
MRK-CHA00957850
MRK-CHA00960055
MRK-CHA00961191
MRK-CHA00965809
MRK-CHA00966427
MRK-CHA00967266
MRK-CHA00968652
MRK-CHA00968792
MRK-CHA00969302

MRK-CHA00969386
MRK-CHA00969659
MRK-CHA00969662
MRK-CHA00969668
MRK-CHA00970175
MRK-CHA00970375
MRK-CHA00975917
MRK-CHA00975924
MRK-CHA00978998
MRK-CHA00980684
MRK-CHA00980685
MRK-CHA00980981
MRK-CHA00980982-AEO
MRK-CHA00981033
MRK-CHA00981330
MRK-CHA01011650
MRK-CHA01012490
MRK-CHA01012509
MRK-CHA01013353
MRK-CHA01013676
MRK-CHA01031935
MRK-CHA01031951
MRK-CHA01035280
MRK-CHA01035374
MRK-CHA01035435-AEO
MRK-CHA01035617
MRK-CHA01035633
MRK-CHA01035642
MRK-CHA01036036
MRK-CHA01036318
MRK-CHA01036379
MRK-CHA01036555
MRK-CHA01036568
MRK-CHA01055308
MRK-CHA01061158
MRK-CHA01063381
MRK-CHA01063815
MRK-CHA01067334
MRK-CHA01077770
MRK-CHA01077808
MRK-CHA01077814
MRK-CHA01077825
MRK-CHA01077827
MRK-CHA01077834
MRK-CHA01106249

MRK-CHA01117856
MRK-CHA01121594
MRK-CHA01123137
MRK-CHA01125805
MRK-CHA01129050
MRK-CHA01130974
MRK-CHA01132688
MRK-CHA01133127
MRK-CHA01135114
MRK-CHA01136232
MRK-CHA01140495
MRK-CHA01141487
MRK-CHA01142880
MRK-CHA01142882
MRK-CHA01142957
MRK-CHA01142990
MRK-CHA01143781
MRK-CHA01143785
MRK-CHA01147264
MRK-CHA01147325
MRK-CHA01150637
MRK-CHA01156599
MRK-CHA01156694
MRK-CHA01156996
MRK-CHA01157026
MRK-CHA01157196
MRK-CHA01157518
MRK-CHA01157519
MRK-CHA01157658
MRK-CHA01162386
MRK-CHA01162762
MRK-CHA01168158 AEO
MRK-CHA01169054
MRK-CHA01173173
MRK-CHA01206492
MRK-CHA01224685
MRK-CHA01237963
MRK-CHA01251715
MRK-CHA01291863
MRK-CHA01315901
MRK-CHA01444408
MRK-CHA01508932
MRK-CHA01515760
MRK-CHA01539392
MRK-CHA01548014

EXPERT REPORT OF THOMAS G. MCGUIRE, PH.D.

HIGHLY CONFIDENTIAL                                      ATTACHMENT B: PAGE 12

**Appx8306**

MRK-CHA01589825
MRK-CHA01593194
MRK-CHA01612774
MRK-CHA01614555
MRK-CHA01614561
MRK-CHA01714386
MRK-CHA01714387
MRK-CHA01714391
MRK-CHA02009585
MRK-CHA02143443
MRK-CHA02143444
MRK-CHA02143445
MRK-CHA02143446
MRK-CHA02143447
MRK-CHA02143448
MRK-CHA02143449
MRK-CHA02143450
MRK-CHA02143451
MRK-CHA02143452
MRK-CHA02143453
MRK-CHA02143454
MRK-CHA02143455
MRK-CHA02143456
MRK-CHA02143457
MRK-CHA02143458
MRK-CHA02143459
MRK-CHA02143460
MRK-CHA2140176
PREPD00001065
PREPD00001076
PREPD00001124
PREPD00001144
PRPCT0000020
PRPCT0000030
PRPCT0000050
PRPCT0000056
PRPCT0000058
PRPCT0000068
PRPCT0000079
PRPCT0000085
PRPCT0000095
PRPCT0000096
PRPCT0000102
PRPCT0000113
PRPCT0000115

PRPCT0000117
PRPCT0000122
PRPCT0000127
PRPCT0000133
PRPCT0000138
PRPCT0000146
PRPCT0000160
PRPCT0000198
PRPCT0000313
PRPCT0000313
PRPCT0000477
PRPCT0000488
PRPCT0000491
PRPCT0000500
PRPCT0000502
PRPCT0000518
PRPCT0000542
PRPCT0000545
PRPCT0000554
PRPCT0000571
PRPCT0000572
PRPCT0000576
PRPCT0000603
PRPCT0000605
PRPCT0000614
PRPCT0000617
PRPCT0000626
PRPCT0000627
PRPCT0000632
PRPCT0000634
PRPCT0000635
PRPCT0000677
PRPCT0000679
PRPCT0000682
PRPCT0000688
PRPCT0000754
PRPCT0000759
PRPCT0000760
PRPCT0000764
PRPCT0000765
PRPCT0000766
PRPCT0000772
PRPCT0000790
PRPCT0000791
PRPCT0000862

EXPERT REPORT OF THOMAS G. MCGUIRE, PH.D.

PRPCT0000863
PRPCT0000864
PRPCT0000895
PRPCT0000898
PRPCT0000900
PRPCT0000901
PRPCT0000909
PRPCT0000913
PRPCT0000923
PRPCT0000925
PRPCT0000945
PRPCT0000946
PRPCT0000960
PRPCT0000964
PRPCT0000967
PRPCT0000982
PRPCT0000983
PRPCT0000985
PRPCT0000987
PRPCT0000991
PRPCT0000993
PRPCT0000995
PRPCT0000996
PRPCT0001001
PRPCT0001006
PRPCT0001013
PRPCT0001016
PRPCT0001027
PRPCT0001028
PRPCT0001029
PRPCT0001038
PRPCT0001039
PRPCT0001040
PRPCT0001051
PRPCT0001052
PRPCT0001053
PRPCT0001061
PRPCT0001062
PRPCT0001063
PRPCT0001064
PRPCT0001065
PRPCT0001066
PRPCT0001068
PRPCT0001077
PRPCT0001079

EXPERT REPORT OF THOMAS G. MCGUIRE, PH.D.

PRPCT0001082
PRPCT0001084
PRPCT0001091
PRPCT0001092
PRPCT0001093
PRPCT0001094
PRPCT0001095
PRPCT0001098
PRPCT0001105
PRPCT0001106
PRPCT0001111
PRPCT0001112
PRPCT0001113
PRPCT0001115
PRPCT0001117
PRPCT0001118
PRPCT0001120
PRPCT0001121
PRPCT0001123
PRPCT0001150
PRPCT0001152
PRPCT0001160
PRPCT0001164
PRPCT0001166
PRPCT0001169
PRPCT0001170
PRPCT0001171
PRPCT0001173
PRPCT0001174
PRPCT0001175
PRPCT0001177
PRPCT0001178
PRPCT0001179
PRPCT0001187
PRPCT0001189
PRPCT0001191
PRPCT0001194
PRPCT0001197
PRPCT0001198
PRPCT0001199
PRPCT0001201
PRPCT0001202
PRPCT0001220
PRPCT0001240
PRPCT0001242

EXPERT REPORT OF THOMAS G. MCGUIRE, PH.D.

PRPCT0001244
PRPCT0001353

## Legal Documents

Consolidated Amended Class Action Complaint, *In Re: Merck Mumps Vaccine Antitrust Litigation*, Master File No. 2:12-cv-03555, September 20, 2012.

Deposition of April Cohen, in this matter, January 4, 2018, pp. 1-253.

Deposition of Jorge Troncoso, in this matter, May 16, 2017, pp. 1-301.

Deposition of Michele Taylor, in this matter, May 9, 2017, pp. 1-259.

Taylor Deposition, Exhibits 1-28.

## Other Documents

21 CFR Part 610, "Biological Products; Bacterial Vaccines and Toxoids; Implementation of Efficacy Review," *Federal Register*, 70(242), December 19, 2005, pp. 75018-75028.

Bakalar N., "New Shingles Vaccine is Cost-Effective," *The New York Times,* January 4, 2018, available at https://www.nytimes.com/2018/01/04/well/live/new-shingles-vaccine-is-cost-effective.html?rref=collection%2Fsectioncollection%2Fwell.

Arnould R.J., and L. DeBrock, "An Overview of the Market for Vaccines in the United States," Background Paper Prepared for the Committee on the Evaluation of Vaccine Purchase Financing in the United States, August 2002.

Berndt E.R., R.N. Denoncourt and A.C. Warner, "U.S. Markets for Vaccines: Characteristics, Case Studies and Controversies," AEI Press, Washington, DC, 2009.

Berndt E.R., T.G. McGuire, and J.P. Newhouse, "A Primer on the Economics of Prescription Pharmaceutical Pricing in Health Insurance Markets," *Forum for Health Economics & Policy*, 14(2), 2011, Article 10.

BlueCross BlueShield of South Carolina's "2009 Comprehensive Formulary: List of Covered Drugs" for MedBlueRx, pp. 1-59.

Bylander J., "The United States' Piecemeal Approach to Vaccine Policy," *Health Affairs*, 35(2), February 2016, pp. 195-198.

---

CDC, "2016 Recommended Immunizations for Children from Birth Through 6 Years Old," available at https://www.cdc.gov/vaccines/schedules/.

CDC, "A Comprehensive Immunization Strategy to Eliminate Transmission of Hepatitis B Virus Infection in the United States: Recommendations of the Advisory Committee on Immunization Practices (ACIP) Part 1: Immunization of Infants, Children and Adolescents," *Morbidity and Mortality Weekly Report*, 54(RR-16), December 23, 2005, available at https://www.cdc.gov/mmwr/PDF/rr/rr5416.pdf.

CDC, "ACIP votes down use of LAIV for 2016-2017 flu season," available at https://www.cdc.gov/media/releases/2016/s0622-laiv-flu.html.

CDC, "Archived CDC Vaccine Price List as of February 24, 2015," available at https://www.cdc.gov/vaccines/programs/vfc/awardees/vaccine-management/price-list/2015/2015-02-24.html#modalIdString_CDCTable_0.

CDC, "Archived CDC Vaccine Price List as of January 1, 2018," available at https://www.cdc.gov/vaccines/programs/vfc/awardees/vaccine-management/price-list/2018/2018-01-01.html.

CDC, "Archived CDC Vaccine Price List as of September 1, 2017," available at https://www.cdc.gov/vaccines/programs/vfc/awardees/vaccine-management/price-list/2017/2017-09-01.html#modalIdString_CDCTable_0.

CDC, "Archived CDC Vaccine Price List as of September 23, 2008," available at https://www.cdc.gov/vaccines/programs/vfc/awardees/vaccine-management/price-list/archive.html.

CDC, "CDC Vaccine Price List," prices last updated December 1, 2004.

CDC, "CDC Vaccine Price List," prices last updated December 4, 2001.

CDC, "CDC Vaccine Price List," prices last updated November 2, 2002.

CDC, "CDC Vaccine Price List," prices last updated November 21, 2003.

CDC, "CDC Vaccine Price List," prices last updated September 27, 2000.

CDC, "Combination Vaccines for Childhood Immunization: Recommendations of the Advisory Committee on Immunization Practices (ACIP), the American Academy of Pediatrics (AAP), and the American Academy of Family Physicians (AAFP)," *Morbidity and Mortality Weekly Report*, 48(RR-5), 1999, pp. 1–15.

CDC, "Epidemiology and Prevention of Vaccine-Preventable Diseases: Mumps," available at http://www.cdc.gov/vaccines/pubs/pinkbook/mumps.html.

CDC, "Signs & Symptoms of Mumps," available at https://www.cdc.gov/mumps/about/signs-symptoms.html.

CDC, "The VFC Program: At a Glance," February 14, 2014, available at https://www.cdc.gov/vaccines/programs/vfc/about/.

CDC, "Transmission of Mumps," available at https://www.cdc.gov/mumps/about/transmission.html.

CDC, "Vaccine Prices," effective date October 1, 1995.

CDC, "VFC CDC Vaccine Price List Archives," available at http://www.cdc.gov/vaccines/programs/vfc/awardees/vaccine-management/price-list/archive.html.

CDC, "Vaccine Tracking System (VTrckS)," available at https://www.cdc.gov/vaccines/programs/vtrcks/index.html.

Chu W.L., "GSK purchases Wyeth's vaccine facility," September 1, 2005, available at https://www.outsourcing-pharma.com/Article/2005/09/02/GSK-purchases-Wyeth-s-vaccine-facility.

Coleman M.S., N. Sangrujee, F. Zhou, and S. Chu, "Factors Affecting U.S. Manufacturers' Decisions to Produce Vaccines," *Health Affairs*, Vol. 24, No. 3, 2005, pp. 635-642.

"Combination Vaccine for Hepatitis A and B," available at http://www.webmd.com/hepatitis/combination-vaccine-for-hepatitis-a-and-b.

Danzon P.M., and N.S. Pereira, "Vaccine Supply: Effects of Regulation and Competition," *International Journal of the Economics of Business*, 18(2), 2011, pp. 239-271.

Drake K., and T. McGuire, "Stock-Price Evidence for Anticompetitive Effects in the Nexium 'Reverse-Payment' Settlement," *Journal of Competition Law & Economics*, 12(4), 2016, pp. 735-747.

Drake K., M. Starr, and T. McGuire, "Do 'Reverse Payment' Settlements Constitute an Anticompetitive Pay-for-Delay?" *International Journal of the Economics of Business,* 22(2), 2015, pp. 173-200.

"FDA Approves GlaxoSmithKline (GSK)'s Hib Vaccine, Hiberix(R)," *FierceBiotech*, August 20, 2009, available at http://www.fiercebiotech.com/biotech/fda-approves-glaxosmithkline-gsk-s-hib-vaccine-hiberix-r.

FDA, "Non-Inferiority Clinical Trials to Establish Effectiveness: Guidance for Industry," November 2016, available at https://www.fda.gov/downloads/drugs/guidancecomplianceregulatoryinformation/guidances/ucm202140.pdf.

Finkelstein A., "Static and Dynamic Effects of Health Policy: Evidence from the Vaccine Industry," *Quarterly Journal of Economics*, 119(2), 2004, pp. 527-564.

FirstCare, "2017 Prescription Drug Formulary," pp. 1-150.

Freed G.L., *et al.*, "Variation in Provider Vaccine Purchase Prices and Payer Reimbursement," *Pediatrics*, 122(6), December 2008, pp. 1325-1331.

Glazer J., and T.G. McGuire, "A Welfare Measure of 'Offset Effects' in Health Insurance," *Journal of Public Economics,* 96, 2012, pp. 520-523.

Glazer J., H. Huskamp, and T.G. McGuire, "A Prescription for Drug Formulary Evaluation: An Application of Price Indexes," *Forum for Health Economics and Policy*, 15(2), 2012, Article 3.

Goldman D., and D. Lakdawalla, "Intellectual Property, Information Technology, Biomedical Research, and Marketing of Patented Products," Chapter 13 in M. Pauly, T, McGuire and P. Barros (eds.) *Handbook of Health Economics,* Volume 2, Elsevier Publishing, 2012, pp. 825-872.

Grabowski H.G., and J.M. Vernon, "The Search for New Vaccines: The Effects of the Vaccines for Children Program," The AEI Press, Washington, D.C., 1997.

Hackett L.B., and J.J. Tofflen, "Report on the United States Vaccine Industry," Prepared by Mercer Management Consulting, Commissioned by the Department of Health and Human Services, June 14, 1995, pp. 1-33, available at https://quod.lib.umich.edu/c/cohenaids/5571095.0504.060.

Hunsaker J., G. Veselovskiy, and J.A. Gazmararian, "Health Insurance Plans and Immunization: Assessment of Practices and Policies, 2005-2008," *Pediatrics*, 124(5), 2009, pp. S532-S539.

Hwang T.J., and A.S. Kesselheim, "Vaccine Pipeline has Grown During the Past Two Decades with More Early-Stage Trials from Small and Medium-Sized Companies," *Health Affairs*, 35(2) 2016, pp. 219-226.

IOM, "Financing Vaccines in the 21st Century: Assuring Access and Availability," National Academies Press, Washington DC, 2004.

Koh H.K., and K.G. Sebelius, "Promoting Prevention through the Affordable Care Act," *New England Journal of Medicine*, 363(14), September 2010, pp. 1296-1299.

Le P., and M.B. Rothberg, "Cost-effectiveness of the Adjuvanted Herpes Zoster Subunit Vaccine in Older Adults," JAMA Intern Med., February 2018, available at Fhttps://jamanetwork.com/journals/jamainternalmedicine/article-abstract/2666789.

Lerner A.P., "The Concept of Monopoly and the Measurement of Monopoly Power," *The Review of Economic Studies*, 1(3), June 1934, pp. 157-175.

Lieu T., T.G. McGuire, and A.R. Hinman, "Overcoming Economic Barriers To The Optimal Use Of Vaccines," *Health Affairs,* 24(3), 2005, pp. 666-679.

Lindley M.C., *et al.*, "Financing the Delivery of Vaccines to Children and Adolescents: Challenges to the Current System," *Pediatrics*, 124(5), December 2009, pp. S548-S557.

Ma, A., and T.G. McGuire (guest editors), "The Industrial Organization of Health Care, III," *Journal of Economics & Management Strategy*, 8(3), Fall 1999.

Ma, A., T.G. McGuire, and M.H. Riordan (guest editors), "The Industrial Organization of Health Care, II" *Journal of Economics & Management Strategy*, 1997.

Malone K.M., and A.R. Hinman, "Vaccination Mandates:  The Public Health Imperative and Individual Rights," Chapter 13 in Law Public Health Practice, edited by R.A. Goodman *et al.*, Oxford University Press: New York, 2003, pp. 262-284.

Marin M., *et al*., "Use of Combination Measles, Mumps, Rubella, and Varicella Vaccine: Recommendations of the Advisory Committee on Immunization Practices (ACIP)," *Morbidity and Mortality Weekly Report*, 59(RR-3), May 7, 2010, pp. 1-12.

McGuire T., K. Drake, E. Elhauge, R. Hartman, and M. Starr, "Resolving Reverse-Payment Settlements with the Smoking Gun of Stock Price Movements," *Iowa Law Review*, 101(4), 2016, pp. 1581-1599.

McGuire T.G., "Setting Prices for New Vaccines (in Advance)," *International Journal of Health Care Finance and Economics*, 3, 2003, pp. 207-224.

McGuire, T.G., and M.H. Riordan (guest editors), "The Industrial Organization of Health Care," *Journal of Economics & Management Strategy*, 3(1), 1994.

McGuire, T.G., and S. Bauhoff, "Adoption of a Cost-Saving Innovation: Germany, UK and Simvastatin," in N. Klusen, F. Verheyen, and C. Wagner, eds., *England and Germany in Europe – What Lessons Can We Learn from Each Other?* Baden-Baden, Germany: Nomos, 2011, pp. 11-26.

Mercer Management Consulting, "Lessons Learned: New Procurement Strategies for Vaccines, Final Report to the GAVI Board," June 28, 2002.

Merck & Co., Inc., Form 10-K, for the Fiscal Year ended December 31, 2016.

Merck & Co., Inc., Form 10-Q, for the quarterly period ended September 30, 2017.

"National, State, and Urban Area Vaccination Coverage among Children Aged 19-35 Months – United States, 2003," *Morbidity and Mortality Weekly Report*, 53(29), 2004, pp. 658-661.

Pindyck R., and D. Rubinfeld, *Microeconomics*, 8th Edition, Prentice Hall, 2013, Chapter 12.

Rodewald L.E., W.A. Orenstein, D.D. Mason, and S.L. Cochi, "Vaccine Supply Problems: A Perspective of the Centers for Disease Control and Prevention," *Clinical Infectious Diseases*, Supplement Article, Vol. 42, 2006, pp. S104-S110.

Rotarix Package Insert, available at https://www.fda.gov/downloads/BiologicsBloodVaccines/Vaccines/ApprovedProducts/UCM 133539.pdf.

RotaTeq Package Insert, available at https://www.fda.gov/downloads/biologicsbloodvaccines/vaccines/approvedproducts/ucm142 288.

Sagonowsky E., "GSK exits U.S. market with its HPV vaccine Cervarix," October 21, 2016, available at https://www.fiercepharma.com/pharma/gsk-exits-u-s-market-its-hpv-vaccine-cervarix.

Santoli J.M., *et al.*, "Insurance Status and Vaccination Coverage among U.S. Preschool Children," *Pediatrics,* 113, no. 6 Supp., 2004 pp. 1959-1964.

Schwartz J.L., "The First Rotavirus Vaccine and the Politics of Acceptable Risk," *The Milbank Quarterly*, 90(2), June 2012, pp. 278-310.

"Seqirus now shipping its complete portfolio of seasonal influenza vaccines to US market for the 2016-2017 season," available at http://www.seqirus-us.com/news-room/Seqirus-shipping-complete-portfolio-of-seasonal-vaccines-to-US-market.

"Shingrix approved in the US for prevention of shingles in adults aged 50 and over," October 23, 2017, available at https://www.gsk.com/en-gb/media/press-releases/shingrix-approved-in-the-us-for-prevention-of-shingles-in-adults-aged-50-and-over/.

Singer N., "In Wyeth, Pfizer Sees a Drug Pipeline," *The New York Times*, January 26, 2009 available at http://www.nytimes.com/2009/01/27/business/27wyeth.html

U.S. Department of Justice and the Federal Trade Commission, "Horizontal Merger Guidelines," August 19, 2010, pp. 1-34, available at https://www.ftc.gov/sites/default/files/attachments/merger-review/100819hmg.pdf.

"Vaccine Timeline: Historic Dates and Events Related to Vaccines and Immunization," Immunization Action Coalition, available at http://www.immunize.org/timeline/.

Walsh B., E. Doherty and C. O'Neill, "Since the Start of the Vaccines for Children Program, Uptake has Increased, and Most Disparities Have Decreased," *Health Affairs*, 35(2), February 2016, pp. 356-364.

Wellcare, "Comprehensive Formulary (List of Covered Drugs)" for Signature/Classic Prescription Drug Plans in New York, pp. I-50.

Wellington K., and K.L. Goa, "Measles, Mumps, Rubella Vaccine (Priorix™; GSK-MMR): A Review of its Use in the Prevention of Measles, Mumps and Rubella," *Drugs*, 63(19), 2003, pp. 2107-2126.

**Electronic Data**

IMS National Sales Perspectives (NSP) Data

**Attachment C**

Attachment C.1. CDC Price Lists for MMR-II

| Date Posted | Public | Private | Contract End Date |
|---|---|---|---|
| 12/22/2005 | $16.670 | $40.370 | 3/31/2006 |
| 4/14/2006 | $17.280 | $40.370 | 3/31/2007 |
| 5/24/2007 | $17.600 | $44.840 | 3/31/2008 |
| 9/23/2008 | $18.260 | $46.540 | 3/31/2009 |
| 10/8/2008 | $18.260 | $46.540 | 3/31/2009 |
| 11/5/2008 | $18.260 | $46.540 | 3/31/2009 |
| 11/25/2008 | $18.260 | $46.540 | 3/31/2009 |
| 2/5/2009 | $18.260 | $46.810 | 3/31/2009 |
| 4/6/2009 | $18.300 | $48.310 | 3/31/2010 |
| 4/15/2009 | $18.300 | $48.310 | 3/31/2010 |
| 5/1/2009 | $18.300 | $48.310 | 3/31/2010 |
| 5/26/2009 | $18.300 | $48.310 | 3/31/2010 |
| 7/8/2009 | $18.300 | $48.310 | 3/31/2010 |
| 8/3/2009 | $18.300 | $48.310 | 3/31/2010 |
| 8/7/2009 | $18.300 | $48.310 | 3/31/2010 |
| 8/13/2009 | $18.300 | $48.310 | 3/31/2010 |
| 8/24/2009 | $18.300 | $48.310 | 3/31/2010 |
| 9/2/2009 | $18.300 | $48.310 | 3/31/2010 |
| 9/18/2009 | $18.300 | $48.310 | 3/31/2010 |
| 10/9/2009 | $18.300 | $48.310 | 3/31/2010 |
| 10/14/2009 | $18.300 | $48.310 | 3/31/2010 |
| 10/29/2009 | $18.300 | $48.310 | 3/31/2010 |
| 12/1/2009 | $18.300 | $48.310 | 3/31/2010 |
| 1/12/2010 | $18.300 | $48.310 | 3/31/2010 |
| 1/28/2010 | $18.300 | $48.310 | 3/31/2010 |
| 2/2/2010 | $18.300 | $48.310 | 3/31/2010 |
| 2/5/2010 | $18.300 | $48.310 | 3/31/2010 |
| 2/16/2010 | $18.300 | $48.310 | 3/31/2010 |
| 3/12/2010 | $18.300 | $48.310 | 3/31/2010 |
| 3/31/2010 | $18.300 | $48.310 | 3/31/2010 |
| 4/6/2010 | $18.637 | $48.310 | 3/31/2011 |
| 4/23/2010 | $18.637 | $48.310 | 3/31/2011 |
| 5/14/2010 | $18.637 | $48.310 | 3/31/2011 |
| 6/9/2010 | $18.637 | $48.310 | 3/31/2011 |
| 7/1/2010 | $18.637 | $48.310 | 3/31/2011 |
| 8/3/2010 | $18.637 | $48.310 | 3/31/2011 |
| 8/13/2010 | $18.637 | $48.310 | 3/31/2011 |
| 9/3/2010 | $18.637 | $48.310 | 3/31/2011 |
| 9/28/2010 | $18.637 | $48.310 | 3/31/2011 |
| 10/6/2010 | $18.637 | $50.160 | 3/31/2011 |
| 11/19/2010 | $18.637 | $50.160 | 3/31/2011 |
| 12/3/2010 | $18.637 | $50.160 | 3/31/2011 |
| 12/16/2010 | $18.637 | $50.160 | 3/31/2011 |
| 1/1/2011 | $18.637 | $50.160 | 3/31/2011 |
| 1/31/2011 | $18.637 | $50.160 | 3/31/2011 |
| 2/8/2011 | $18.637 | $50.160 | 3/31/2011 |

Appx8319

Attachment C.1. CDC Price Lists for MMR-II

| Date Posted | Public | Private | Contract End Date |
|---|---|---|---|
| 2/15/2011 | $18.637 | $50.160 | 3/31/2011 |
| 3/1/2011 | $18.637 | $50.160 | 3/31/2011 |
| 3/14/2011 | $18.637 | $50.160 | 3/31/2011 |
| 3/31/2011 | $18.989 | $50.160 | 3/31/2012 |
| 4/8/2011 | $18.989 | $50.160 | 3/31/2012 |
| 4/11/2011 | $18.989 | $50.160 | 3/31/2012 |
| 5/5/2011 | $18.989 | $50.160 | 3/31/2012 |
| 5/17/2011 | $18.989 | $50.160 | 3/31/2012 |
| 6/17/2011 | $18.989 | $50.160 | 3/31/2012 |
| 7/18/2011 | $18.989 | $50.160 | 3/31/2012 |
| 8/29/2011 | $18.989 | $50.160 | 3/31/2012 |
| 12/15/2011 | $18.989 | $50.160 | 3/31/2012 |
| 1/6/2012 | $18.989 | $50.160 | 3/31/2012 |
| 1/24/2012 | $18.989 | $50.160 | 3/31/2012 |
| 2/1/2012 | $18.989 | $52.073 | 3/31/2012 |
| 4/10/2012 | $19.330 | $52.073 | 3/31/2013 |
| 4/24/2012 | $19.330 | $52.073 | 3/31/2013 |
| 7/6/2012 | $19.330 | $52.073 | 3/31/2013 |
| 7/31/2012 | $19.330 | $52.073 | 3/31/2013 |
| 10/15/2012 | $19.330 | $52.073 | 3/31/2013 |
| 11/1/2012 | $19.330 | $52.073 | 3/31/2013 |
| 2/14/2013 | $19.330 | $54.070 | 3/31/2013 |
| 3/7/2013 | $19.330 | $54.070 | 3/31/2013 |
| 4/1/2013 | $19.759 | $54.066 | 3/31/2014 |
| 4/16/2013 | $19.759 | $54.066 | 3/31/2014 |
| 4/29/2013 | $19.759 | $54.066 | 3/31/2014 |
| 7/1/2013 | $19.759 | $54.066 | 3/31/2014 |
| 7/24/2013 | $19.759 | $56.139 | 3/31/2014 |
| 9/30/2013 | $19.759 | $56.139 | 3/31/2014 |
| 11/18/2013 | $19.759 | $56.139 | 3/31/2014 |
| 1/31/2014 | $19.759 | $56.139 | 3/31/2014 |
| 2/18/2014 | $19.759 | $56.139 | 3/31/2014 |
| 3/12/2014 | $19.759 | $56.139 | 3/31/2014 |
| 4/1/2014 | $19.910 | $56.139 | 3/31/2015 |
| 5/1/2014 | $19.910 | $56.139 | 3/31/2015 |
| 6/3/2014 | $19.910 | $56.139 | 3/31/2015 |
| 7/1/2014 | $19.910 | $56.139 | 3/31/2015 |
| 8/1/2014 | $19.910 | $56.139 | 3/31/2015 |
| 1/5/2015 | $19.910 | $56.139 | 3/31/2015 |
| 2/2/2015 | $19.910 | $59.911 | 3/31/2015 |
| 2/24/2015 | $19.910 | $59.911 | 3/31/2015 |
| 4/1/2015 | $19.900 | $59.911 | 3/31/2016 |
| 5/1/2015 | $19.900 | $59.911 | 3/31/2016 |
| 7/1/2015 | $19.900 | $59.911 | 3/31/2016 |
| 8/3/2015 | $19.900 | $59.911 | 3/31/2016 |
| 10/1/2015 | $19.900 | $59.911 | 3/31/2016 |

Attachment C.1. CDC Price Lists for MMR-II

| Date Posted | Public | Private | Contract End Date |
|---|---|---|---|
| 11/5/2015 | $19.900 | $62.790 | 3/31/2016 |
| 1/1/2016 | $19.900 | $62.790 | 3/31/2016 |

CDC, "VFC CDC Vaccine Price List Archives," available at
https://www.cdc.gov/vaccines/programs/vfc/awardees/vaccine-management/price-list/archive.html

Attachment C.2. CDC Price Lists for ProQuad

| Date Posted | Public | Private | Contract End Date |
| --- | --- | --- | --- |
| 12/22/2005 | $74.850 | $117.600 | 3/31/2006 |
| 4/14/2006 | $74.850 | $117.600 | 3/31/2007 |
| 5/24/2007 | $77.750 | $124.370 | 3/31/2008 |
| 9/23/2008 | $80.750 | $124.370 | 3/31/2009 |
| 10/8/2008 | $80.750 | $124.370 | 3/31/2009 |
| 11/5/2008 | $80.750 | $124.370 | 3/31/2009 |
| 11/25/2008 | $80.750 | $124.370 | 3/31/2009 |
| 2/5/2009 | $80.750 | $126.650 | 3/31/2009 |
| 4/6/2009 | $82.670 | $128.900 | 3/31/2010 |
| 4/15/2009 | $82.670 | $128.900 | 3/31/2010 |
| 5/1/2009 | $82.670 | $128.900 | 3/31/2010 |
| 5/26/2009 | $82.670 | $128.900 | 3/31/2010 |
| 7/8/2009 | $82.670 | $128.900 | 3/31/2010 |
| 8/3/2009 | $82.670 | $128.900 | 3/31/2010 |
| 8/7/2009 | $82.670 | $128.900 | 3/31/2010 |
| 8/13/2009 | $82.670 | $128.900 | 3/31/2010 |
| 8/24/2009 | $82.670 | $128.900 | 3/31/2010 |
| 9/2/2009 | $82.670 | $128.900 | 3/31/2010 |
| 9/18/2009 | $82.670 | $128.900 | 3/31/2010 |
| 10/9/2009 | $82.670 | $128.900 | 3/31/2010 |
| 10/14/2009 | $82.670 | $128.900 | 3/31/2010 |
| 10/29/2009 | $82.670 | $128.900 | 3/31/2010 |
| 12/1/2009 | $82.670 | $128.900 | 3/31/2010 |
| 1/12/2010 | $82.670 | $128.900 | 3/31/2010 |
| 1/28/2010 | $82.670 | $128.900 | 3/31/2010 |
| 2/2/2010 | $82.670 | $128.900 | 3/31/2010 |
| 2/5/2010 | $82.670 | $128.900 | 3/31/2010 |
| 2/16/2010 | $82.670 | $128.900 | 3/31/2010 |
| 3/12/2010 | $82.670 | $128.900 | 3/31/2010 |
| 3/31/2010 | $82.670 | $128.900 | 3/31/2010 |
| 4/6/2010 | $85.718 | $128.900 | 3/31/2011 |
| 4/23/2010 | $85.718 | $128.900 | 3/31/2011 |
| 5/14/2010 | $85.718 | $128.900 | 3/31/2011 |
| 6/9/2010 | $85.718 | $128.900 | 3/31/2011 |
| 7/1/2010 | $85.718 | $128.900 | 3/31/2011 |
| 8/3/2010 | $85.718 | $128.900 | 3/31/2011 |
| 8/13/2010 | $85.718 | $128.900 | 3/31/2011 |
| 9/3/2010 | $85.718 | $128.900 | 3/31/2011 |
| 9/28/2010 | $85.718 | $128.900 | 3/31/2011 |
| 10/6/2010 | $85.718 | $133.930 | 3/31/2011 |
| 11/19/2010 | $85.718 | $133.930 | 3/31/2011 |
| 12/3/2010 | $85.718 | $133.930 | 3/31/2011 |
| 12/16/2010 | $85.718 | $133.930 | 3/31/2011 |
| 1/1/2011 | $85.718 | $133.930 | 3/31/2011 |
| 1/31/2011 | $85.718 | $133.930 | 3/31/2011 |
| 2/8/2011 | $85.718 | $133.930 | 3/31/2011 |

Attachment C.2. CDC Price Lists for ProQuad

| Date Posted | Public | Private | Contract End Date |
|---|---|---|---|
| 2/15/2011 | $85.718 | $133.930 | 3/31/2011 |
| 3/1/2011 | $85.718 | $133.930 | 3/31/2011 |
| 3/14/2011 | $85.718 | $133.930 | 3/31/2011 |
| 3/31/2011 | NOT ON LIST | NOT ON LIST | |
| 4/8/2011 | NOT ON LIST | NOT ON LIST | |
| 4/11/2011 | NOT ON LIST | NOT ON LIST | |
| 5/5/2011 | NOT ON LIST | NOT ON LIST | |
| 5/17/2011 | NOT ON LIST | NOT ON LIST | |
| 6/17/2011 | NOT ON LIST | NOT ON LIST | |
| 7/18/2011 | NOT ON LIST | NOT ON LIST | |
| 8/29/2011 | NOT ON LIST | NOT ON LIST | |
| 12/15/2011 | NOT ON LIST | NOT ON LIST | |
| 1/6/2012 | NOT ON LIST | NOT ON LIST | |
| 1/24/2012 | NOT ON LIST | NOT ON LIST | |
| 2/1/2012 | NOT ON LIST | NOT ON LIST | |
| 4/10/2012 | NOT ON LIST | NOT ON LIST | |
| 4/24/2012 | NOT ON LIST | NOT ON LIST | |
| 7/6/2012 | NOT ON LIST | NOT ON LIST | |
| 7/31/2012 | NOT ON LIST | NOT ON LIST | |
| 10/15/2012 | $91.820 | $142.360 | 3/31/2013 |
| 11/1/2012 | $91.820 | $142.360 | 3/31/2013 |
| 2/14/2013 | $91.820 | $144.520 | 3/31/2013 |
| 3/7/2013 | $91.820 | $144.520 | 3/31/2013 |
| 4/1/2013 | $95.117 | $144.615 | 3/31/2014 |
| 4/16/2013 | $95.117 | $144.615 | 3/31/2014 |
| 4/29/2013 | $95.117 | $144.615 | 3/31/2014 |
| 7/1/2013 | $95.117 | $144.615 | 3/31/2014 |
| 7/24/2013 | $95.117 | $150.280 | 3/31/2014 |
| 9/30/2013 | $95.117 | $150.280 | 3/31/2014 |
| 11/18/2013 | $95.117 | $150.280 | 3/31/2014 |
| 1/31/2014 | $95.117 | $157.644 | 3/31/2014 |
| 2/18/2014 | $95.117 | $157.644 | 3/31/2014 |
| 3/12/2014 | $95.117 | $157.644 | 3/31/2014 |
| 4/1/2014 | $103.160 | $157.644 | 3/31/2015 |
| 5/1/2014 | $103.160 | $157.644 | 3/31/2015 |
| 6/3/2014 | $103.160 | $157.644 | 3/31/2015 |
| 7/1/2014 | $103.160 | $157.644 | 3/31/2015 |
| 8/1/2014 | $103.160 | $157.644 | 3/31/2015 |
| 1/5/2015 | $103.160 | $157.644 | 3/31/2015 |
| 2/2/2015 | $103.160 | $168.469 | 3/31/2015 |
| 2/24/2015 | $103.160 | $168.469 | 3/31/2015 |
| 4/1/2015 | $109.010 | $168.469 | 3/31/2016 |
| 5/1/2015 | $109.010 | $168.469 | 3/31/2016 |
| 7/1/2015 | $109.010 | $168.469 | 3/31/2016 |
| 8/3/2015 | $109.010 | $168.469 | 3/31/2016 |
| 10/1/2015 | $109.010 | $168.469 | 3/31/2016 |

Attachment C.2. CDC Price Lists for ProQuad

| Date Posted | Public | Private | Contract End Date |
|---|---|---|---|
| 11/5/2015 | $109.010 | $180.050 | 3/31/2016 |
| 1/1/2016 | $109.010 | $180.050 | 3/31/2016 |

CDC, "VFC CDC Vaccine Price List Archives," available at

https://www.cdc.gov/vaccines/programs/vfc/awardees/vaccine-management/price-list/archive.html

Attachment C.3. CDC Price Lists for Recombivax

| Date Posted | Public | Private | Contract End Date |
|---|---|---|---|
| 12/22/2005 | $9.000 | $23.200 | 3/31/2006 |
| 4/14/2006 | $9.000 | $23.200 | 3/31/2007 |
| 5/24/2007 | $9.500 | $23.200 | 3/31/2008 |
| 9/23/2008 | $9.750 | $23.200 | 3/31/2009 |
| 10/8/2008 | $9.750 | $23.200 | 3/31/2009 |
| 11/5/2008 | $9.750 | $23.200 | 3/31/2009 |
| 11/25/2008 | $9.750 | $23.200 | 3/31/2009 |
| 2/5/2009 | $9.750 | $23.200 | 3/31/2009 |
| 4/6/2009 | $10.000 | $23.200 | 3/31/2010 |
| 4/15/2009 | $10.000 | $23.200 | 3/31/2010 |
| 5/1/2009 | $10.000 | $23.200 | 3/31/2010 |
| 5/26/2009 | $10.000 | $23.200 | 3/31/2010 |
| 7/8/2009 | $10.000 | $23.200 | 3/31/2010 |
| 8/3/2009 | $10.000 | $23.200 | 3/31/2010 |
| 8/7/2009 | $10.000 | $23.200 | 3/31/2010 |
| 8/13/2009 | $10.000 | $23.200 | 3/31/2010 |
| 8/24/2009 | $10.000 | $23.200 | 3/31/2010 |
| 9/2/2009 | $10.000 | $23.200 | 3/31/2010 |
| 9/18/2009 | $10.000 | $23.200 | 3/31/2010 |
| 10/9/2009 | $10.000 | $23.200 | 3/31/2010 |
| 10/14/2009 | $10.000 | $23.200 | 3/31/2010 |
| 10/29/2009 | $10.000 | $23.200 | 3/31/2010 |
| 12/1/2009 | $10.000 | $23.200 | 3/31/2010 |
| 1/12/2010 | $10.000 | $23.200 | 3/31/2010 |
| 1/28/2010 | $10.000 | $23.200 | 3/31/2010 |
| 2/2/2010 | $10.000 | $23.200 | 3/31/2010 |
| 2/5/2010 | $10.000 | $23.200 | 3/31/2010 |
| 2/16/2010 | $10.000 | $23.200 | 3/31/2010 |
| 3/12/2010 | $10.000 | $23.200 | 3/31/2010 |
| 3/31/2010 | $10.000 | $23.200 | 3/31/2010 |
| 4/6/2010 | $10.250 | $23.200 | 3/31/2011 |
| 4/23/2010 | $10.250 | $23.200 | 3/31/2011 |
| 5/14/2010 | $10.250 | $23.200 | 3/31/2011 |
| 6/9/2010 | $10.250 | $23.200 | 3/31/2011 |
| 7/1/2010 | $10.250 | $23.200 | 3/31/2011 |
| 8/3/2010 | $10.250 | $23.200 | 3/31/2011 |
| 8/13/2010 | $10.250 | $23.200 | 3/31/2011 |
| 9/3/2010 | $10.250 | $23.200 | 3/31/2011 |
| 9/28/2010 | $10.250 | $23.200 | 3/31/2011 |
| 10/6/2010 | $10.250 | $23.200 | 3/31/2011 |
| 11/19/2010 | $10.250 | $23.200 | 3/31/2011 |
| 12/3/2010 | $10.250 | $23.200 | 3/31/2011 |
| 12/16/2010 | $10.250 | $23.200 | 3/31/2011 |
| 1/1/2011 | $10.250 | $23.200 | 3/31/2011 |
| 1/31/2011 | $10.250 | $23.200 | 3/31/2011 |
| 2/8/2011 | $10.250 | $23.200 | 3/31/2011 |

Attachment C.3. CDC Price Lists for Recombivax

| Date Posted | Public | Private | Contract End Date |
|---|---|---|---|
| 2/15/2011 | $10.250 | $23.200 | 3/31/2011 |
| 3/1/2011 | $10.250 | $23.200 | 3/31/2011 |
| 3/14/2011 | $10.250 | $23.200 | 3/31/2011 |
| 3/31/2011 | $10.500 | $23.200 | 3/31/2012 |
| 4/8/2011 | $10.500 | $23.200 | 3/31/2012 |
| 4/11/2011 | $10.500 | $23.200 | 3/31/2012 |
| 5/5/2011 | $10.500 | $23.200 | 3/31/2012 |
| 5/17/2011 | $10.500 | $23.200 | 3/31/2012 |
| 6/17/2011 | $10.500 | $23.200 | 3/31/2012 |
| 7/18/2011 | $10.500 | $23.200 | 3/31/2012 |
| 8/29/2011 | $10.500 | $23.200 | 3/31/2012 |
| 12/15/2011 | $10.500 | $23.200 | 3/31/2012 |
| 1/6/2012 | $10.500 | $23.200 | 3/31/2012 |
| 1/24/2012 | $10.500 | $23.200 | 3/31/2012 |
| 2/1/2012 | $10.500 | $23.200 | 3/31/2012 |
| 4/10/2012 | $10.750 | $23.200 | 3/31/2013 |
| 4/24/2012 | $10.750 | $23.200 | 3/31/2013 |
| 7/6/2012 | $10.750 | $23.200 | 3/31/2013 |
| 7/31/2012 | $10.750 | $23.200 | 3/31/2013 |
| 10/15/2012 | $10.750 | $23.200 | 3/31/2013 |
| 11/1/2012 | $10.750 | $23.200 | 3/31/2013 |
| 2/14/2013 | $10.750 | $23.200 | 3/31/2013 |
| 3/7/2013 | $10.750 | $23.200 | 3/31/2013 |
| 4/1/2013 | $11.000 | $23.204 | 3/31/2014 |
| 4/16/2013 | $11.000 | $23.204 | 3/31/2014 |
| 4/29/2013 | $11.000 | $23.204 | 3/31/2014 |
| 7/1/2013 | $11.000 | $23.204 | 3/31/2014 |
| 7/24/2013 | $11.000 | $23.204 | 3/31/2014 |
| 9/30/2013 | $11.000 | $23.204 | 3/31/2014 |
| 11/18/2013 | $11.000 | $23.204 | 3/31/2014 |
| 1/31/2014 | $11.000 | $23.204 | 3/31/2014 |
| 2/18/2014 | $11.000 | $23.204 | 3/31/2014 |
| 3/12/2014 | $11.000 | $23.204 | 3/31/2014 |
| 4/1/2014 | $11.000 | $23.204 | 3/31/2015 |
| 5/1/2014 | $11.000 | $23.204 | 3/31/2015 |
| 6/3/2014 | $11.000 | $23.204 | 3/31/2015 |
| 7/1/2014 | $11.000 | $23.204 | 3/31/2015 |
| 8/1/2014 | $11.000 | $23.204 | 3/31/2015 |
| 1/5/2015 | $11.000 | $23.204 | 3/31/2015 |
| 2/2/2015 | $11.000 | $23.204 | 3/31/2015 |
| 2/24/2015 | $11.000 | $23.204 | 3/31/2015 |
| 4/1/2015 | $11.750 | $23.204 | 3/31/2016 |
| 5/1/2015 | $11.750 | $23.204 | 3/31/2016 |
| 7/1/2015 | $11.750 | $23.204 | 3/31/2016 |
| 8/3/2015 | $11.750 | $23.204 | 3/31/2016 |
| 10/1/2015 | $11.750 | $23.204 | 3/31/2016 |

Appx8326

Attachment C.3. CDC Price Lists for Recombivax

| Date Posted | Public | Private | Contract End Date |
| --- | --- | --- | --- |
| 11/5/2015 | $11.750 | $23.204 | 3/31/2016 |
| 1/1/2016 | $11.750 | $23.204 | 3/31/2016 |

CDC, "VFC CDC Vaccine Price List Archives," available at

https://www.cdc.gov/vaccines/programs/vfc/awardees/vaccine-management/price-list/archive.html

Attachment C.4. CDC Price Lists for Vaqta

| Date Posted | Public | Private | Contract End Date |
|---|---|---|---|
| 12/22/2005 | $12.100 | $30.370 | 3/31/2006 |
| 4/14/2006 | $12.100 | $30.370 | 3/31/2007 |
| 5/24/2007 | $12.250 | $30.370 | 3/31/2008 |
| 9/23/2008 | $12.750 | $30.370 | 3/31/2009 |
| 10/8/2008 | $12.750 | $30.370 | 3/31/2009 |
| 11/5/2008 | $12.750 | $30.370 | 3/31/2009 |
| 11/25/2008 | $12.750 | $30.370 | 3/31/2009 |
| 2/5/2009 | $12.750 | $30.370 | 3/31/2009 |
| 4/6/2009 | $13.000 | $30.370 | 3/31/2010 |
| 4/15/2009 | $13.000 | $30.370 | 3/31/2010 |
| 5/1/2009 | $13.000 | $30.370 | 3/31/2010 |
| 5/26/2009 | $13.000 | $30.370 | 3/31/2010 |
| 7/8/2009 | $13.000 | $30.370 | 3/31/2010 |
| 8/3/2009 | $13.000 | $30.370 | 3/31/2010 |
| 8/7/2009 | $13.000 | $30.370 | 3/31/2010 |
| 8/13/2009 | $13.000 | $30.370 | 3/31/2010 |
| 8/24/2009 | $13.000 | $30.370 | 3/31/2010 |
| 9/2/2009 | $13.000 | $30.370 | 3/31/2010 |
| 9/18/2009 | $13.000 | $30.370 | 3/31/2010 |
| 10/9/2009 | $13.000 | $30.370 | 3/31/2010 |
| 10/14/2009 | $13.000 | $30.370 | 3/31/2010 |
| 10/29/2009 | $13.000 | $30.370 | 3/31/2010 |
| 12/1/2009 | $13.000 | $30.370 | 3/31/2010 |
| 1/12/2010 | $13.000 | $30.370 | 3/31/2010 |
| 1/28/2010 | $13.000 | $30.370 | 3/31/2010 |
| 2/2/2010 | $13.000 | $30.370 | 3/31/2010 |
| 2/5/2010 | $13.000 | $30.370 | 3/31/2010 |
| 2/16/2010 | $13.000 | $30.370 | 3/31/2010 |
| 3/12/2010 | $13.000 | $30.370 | 3/31/2010 |
| 3/31/2010 | $13.000 | $30.370 | 3/31/2010 |
| 4/6/2010 | $13.500 | $30.310 | 3/31/2011 |
| 4/23/2010 | $13.500 | $30.310 | 3/31/2011 |
| 5/14/2010 | $13.500 | $30.310 | 3/31/2011 |
| 6/9/2010 | $13.500 | $30.310 | 3/31/2011 |
| 7/1/2010 | $13.500 | $30.310 | 3/31/2011 |
| 8/3/2010 | $13.500 | $30.310 | 3/31/2011 |
| 8/13/2010 | $13.500 | $30.310 | 3/31/2011 |
| 9/3/2010 | $13.500 | $30.310 | 3/31/2011 |
| 9/28/2010 | $13.500 | $30.310 | 3/31/2011 |
| 10/6/2010 | $13.500 | $30.310 | 3/31/2011 |
| 11/19/2010 | $13.500 | $30.310 | 3/31/2011 |
| 12/3/2010 | $13.500 | $30.310 | 3/31/2011 |
| 12/16/2010 | $13.500 | $30.310 | 3/31/2011 |
| 1/1/2011 | $13.500 | $30.310 | 3/31/2011 |
| 1/31/2011 | $13.500 | $30.310 | 3/31/2011 |
| 2/8/2011 | $13.500 | $30.369 | 3/31/2011 |

Attachment C.4. CDC Price Lists for Vaqta

| Date Posted | Public | Private | Contract End Date |
| --- | --- | --- | --- |
| 2/15/2011 | $13.500 | $30.369 | 3/31/2011 |
| 3/1/2011 | $13.500 | $30.369 | 3/31/2011 |
| 3/14/2011 | $13.500 | $30.369 | 3/31/2011 |
| 3/31/2011 | $14.250 | $30.369 | 3/31/2012 |
| 4/8/2011 | $14.250 | $30.369 | 3/31/2012 |
| 4/11/2011 | $14.250 | $30.369 | 3/31/2012 |
| 5/5/2011 | $14.250 | $30.369 | 3/31/2012 |
| 5/17/2011 | $14.250 | $30.369 | 3/31/2012 |
| 6/17/2011 | $14.250 | $30.369 | 3/31/2012 |
| 7/18/2011 | $14.250 | $30.369 | 3/31/2012 |
| 8/29/2011 | $14.250 | $30.369 | 3/31/2012 |
| 12/15/2011 | $14.250 | $30.369 | 3/31/2012 |
| 1/6/2012 | $14.250 | $30.369 | 3/31/2012 |
| 1/24/2012 | $14.250 | $30.369 | 3/31/2012 |
| 2/1/2012 | $14.250 | $30.369 | 3/31/2012 |
| 4/10/2012 | $14.750 | $30.369 | 3/31/2013 |
| 4/24/2012 | $14.750 | $30.369 | 3/31/2013 |
| 7/6/2012 | $14.750 | $30.369 | 3/31/2013 |
| 7/31/2012 | $14.750 | $30.369 | 3/31/2013 |
| 10/15/2012 | $14.750 | $30.369 | 3/31/2013 |
| 11/1/2012 | $14.750 | $30.369 | 3/31/2013 |
| 2/14/2013 | $14.750 | $30.369 | 3/31/2013 |
| 3/7/2013 | $14.750 | $30.369 | 3/31/2013 |
| 4/1/2013 | $15.250 | $30.369 | 3/31/2014 |
| 4/16/2013 | $15.250 | $30.369 | 3/31/2014 |
| 4/29/2013 | $15.250 | $30.369 | 3/31/2014 |
| 7/1/2013 | $15.250 | $30.369 | 3/31/2014 |
| 7/24/2013 | $15.250 | $30.369 | 3/31/2014 |
| 9/30/2013 | $15.250 | $30.369 | 3/31/2014 |
| 11/18/2013 | $15.250 | $30.369 | 3/31/2014 |
| 1/31/2014 | $15.250 | $30.369 | 3/31/2014 |
| 2/18/2014 | $15.250 | $30.369 | 3/31/2014 |
| 3/12/2014 | $15.250 | $30.369 | 3/31/2014 |
| 4/1/2014 | $16.170 | $30.369 | 3/31/2015 |
| 5/1/2014 | $16.170 | $30.369 | 3/31/2015 |
| 6/3/2014 | $16.170 | $30.369 | 3/31/2015 |
| 7/1/2014 | $16.170 | $30.369 | 3/31/2015 |
| 8/1/2014 | $16.170 | $30.369 | 3/31/2015 |
| 1/5/2015 | $16.170 | $30.369 | 3/31/2015 |
| 2/2/2015 | $16.170 | $30.369 | 3/31/2015 |
| 2/24/2015 | $16.170 | $30.369 | 3/31/2015 |
| 4/1/2015 | $17.400 | $30.369 | 3/31/2016 |
| 5/1/2015 | $17.400 | $30.369 | 3/31/2016 |
| 7/1/2015 | $17.400 | $30.369 | 3/31/2016 |
| 8/3/2015 | $17.400 | $30.369 | 3/31/2016 |
| 10/1/2015 | $17.400 | $30.369 | 3/31/2016 |

Attachment C.4. CDC Price Lists for Vaqta

| Date Posted | Public | Private | Contract End Date |
|---|---|---|---|
| 11/5/2015 | $17.400 | $30.369 | 3/31/2016 |
| 1/1/2016 | $17.400 | $30.369 | 3/31/2016 |

CDC, "VFC CDC Vaccine Price List Archives," available at
https://www.cdc.gov/vaccines/programs/vfc/awardees/vaccine-management/price-list/archive.html

Attachment C.5. CDC Price Lists for RotaTeq

| Date Posted | Public | Private | Contract End Date |
|---|---|---|---|
| 4/14/2006 | $52.000 | $63.250 | 3/31/2007 |
| 5/24/2007 | $55.050 | $66.940 | 3/31/2008 |
| 9/23/2008 | $57.200 | $69.590 | 3/31/2009 |
| 10/8/2008 | $57.200 | $69.590 | 3/31/2009 |
| 11/5/2008 | $57.200 | $69.590 | 3/31/2009 |
| 11/25/2008 | $57.200 | $69.590 | 3/31/2009 |
| 2/5/2009 | $57.200 | $69.590 | 3/31/2009 |
| 4/6/2009 | $57.200 | $69.590 | 3/31/2010 |
| 4/15/2009 | $57.200 | $69.590 | 3/31/2010 |
| 5/1/2009 | $57.200 | $69.590 | 3/31/2010 |
| 5/26/2009 | $57.200 | $69.590 | 3/31/2010 |
| 7/8/2009 | $57.200 | $69.590 | 3/31/2010 |
| 8/3/2009 | $57.200 | $69.590 | 3/31/2010 |
| 8/7/2009 | $57.200 | $69.590 | 3/31/2010 |
| 8/13/2009 | $57.200 | $69.590 | 3/31/2010 |
| 8/24/2009 | $57.200 | $69.590 | 3/31/2010 |
| 9/2/2009 | $57.200 | $69.590 | 3/31/2010 |
| 9/18/2009 | $57.200 | $69.590 | 3/31/2010 |
| 10/9/2009 | $57.200 | $69.590 | 3/31/2010 |
| 10/14/2009 | $57.200 | $69.590 | 3/31/2010 |
| 10/29/2009 | $57.200 | $69.590 | 3/31/2010 |
| 12/1/2009 | $57.200 | $69.590 | 3/31/2010 |
| 1/12/2010 | $57.200 | $69.590 | 3/31/2010 |
| 1/28/2010 | $57.200 | $69.590 | 3/31/2010 |
| 2/2/2010 | $57.200 | $69.590 | 3/31/2010 |
| 2/5/2010 | $57.200 | $69.590 | 3/31/2010 |
| 2/16/2010 | $57.200 | $69.590 | 3/31/2010 |
| 3/12/2010 | $57.200 | $69.590 | 3/31/2010 |
| 3/31/2010 | $57.200 | $69.590 | 3/31/2010 |
| 4/6/2010 | $59.176 | $69.590 | 3/31/2011 |
| 4/23/2010 | $59.176 | $69.590 | 3/31/2011 |
| 5/14/2010 | $59.176 | $69.590 | 3/31/2011 |
| 6/9/2010 | $59.176 | $69.590 | 3/31/2011 |
| 7/1/2010 | $59.176 | $69.590 | 3/31/2011 |
| 8/3/2010 | $59.176 | $69.590 | 3/31/2011 |
| 8/13/2010 | $59.176 | $69.590 | 3/31/2011 |
| 9/3/2010 | $59.176 | $69.590 | 3/31/2011 |
| 9/28/2010 | $59.176 | $69.590 | 3/31/2011 |
| 10/6/2010 | $59.176 | $69.590 | 3/31/2011 |
| 11/19/2010 | $59.176 | $69.590 | 3/31/2011 |
| 12/3/2010 | $59.176 | $69.590 | 3/31/2011 |
| 12/16/2010 | $59.176 | $69.590 | 3/31/2011 |
| 1/1/2011 | $59.176 | $69.590 | 3/31/2011 |
| 1/31/2011 | $59.176 | $69.590 | 3/31/2011 |
| 2/8/2011 | $59.176 | $69.590 | 3/31/2011 |
| 2/15/2011 | $59.176 | $69.590 | 3/31/2011 |

**Appx8331**

Attachment C.5. CDC Price Lists for RotaTeq

| Date Posted | Public | Private | Contract End Date |
|---|---|---|---|
| 3/1/2011 | $59.176 | $69.590 | 3/31/2011 |
| 3/14/2011 | $59.176 | $69.590 | 3/31/2011 |
| 3/31/2011 | $59.760 | $69.590 | 3/31/2012 |
| 4/8/2011 | $59.760 | $69.590 | 3/31/2012 |
| 4/11/2011 | $59.760 | $69.590 | 3/31/2012 |
| 5/5/2011 | $59.760 | $69.590 | 3/31/2012 |
| 5/17/2011 | $59.760 | $69.590 | 3/31/2012 |
| 6/17/2011 | $59.760 | $69.590 | 3/31/2012 |
| 7/18/2011 | $59.760 | $69.590 | 3/31/2012 |
| 8/29/2011 | $59.760 | $69.590 | 3/31/2012 |
| 12/15/2011 | $59.760 | $69.590 | 3/31/2012 |
| 1/6/2012 | $59.760 | $69.590 | 3/31/2012 |
| 1/24/2012 | $59.760 | $69.590 | 3/31/2012 |
| 2/1/2012 | $59.760 | $72.339 | 3/31/2012 |
| 4/10/2012 | $61.530 | $72.339 | 3/31/2013 |
| 4/24/2012 | $61.530 | $72.339 | 3/31/2013 |
| 7/6/2012 | $61.530 | $72.339 | 3/31/2013 |
| 7/31/2012 | $61.530 | $72.339 | 3/31/2013 |
| 10/15/2012 | $61.530 | $72.339 | 3/31/2013 |
| 11/1/2012 | $61.530 | $72.339 | 3/31/2013 |
| 2/14/2013 | $61.530 | $75.200 | 3/31/2013 |
| 3/7/2013 | $61.530 | $75.200 | 3/31/2013 |
| 4/1/2013 | $63.961 | $75.203 | 3/31/2014 |
| 4/16/2013 | $63.961 | $75.203 | 3/31/2014 |
| 4/29/2013 | $63.961 | $75.203 | 3/31/2014 |
| 7/1/2013 | $63.961 | $75.203 | 3/31/2014 |
| 7/24/2013 | $63.961 | $75.203 | 3/31/2014 |
| 9/30/2013 | $63.961 | $75.203 | 3/31/2014 |
| 11/18/2013 | $63.961 | $75.203 | 3/31/2014 |
| 1/31/2014 | $63.961 | $75.203 | 3/31/2014 |
| 2/18/2014 | $63.961 | $75.203 | 3/31/2014 |
| 3/12/2014 | $63.961 | $75.203 | 3/31/2014 |
| 4/1/2014 | $63.960 | $75.203 | 3/31/2015 |
| 5/1/2014 | $63.960 | $75.203 | 3/31/2015 |
| 6/3/2014 | $63.960 | $75.203 | 3/31/2015 |
| 7/1/2014 | $63.960 | $75.203 | 3/31/2015 |
| 8/1/2014 | $63.960 | $75.203 | 3/31/2015 |
| 1/5/2015 | $63.960 | $75.203 | 3/31/2015 |
| 2/2/2015 | $63.960 | $75.203 | 3/31/2015 |
| 2/24/2015 | $63.960 | $75.203 | 3/31/2015 |
| 4/1/2015 | $63.960 | $75.203 | 3/31/2016 |
| 5/1/2015 | $63.960 | $75.203 | 3/31/2016 |
| 7/1/2015 | $63.960 | $75.203 | 3/31/2016 |
| 8/3/2015 | $63.960 | $75.203 | 3/31/2016 |
| 10/1/2015 | $63.960 | $75.203 | 3/31/2016 |
| 11/5/2015 | $63.960 | $78.180 | 3/31/2016 |

Attachment C.5. CDC Price Lists for RotaTeq

| Date Posted | Public | Private | Contract End Date |
|---|---|---|---|
| 1/1/2016 | $63.960 | $78.180 | 3/31/2016 |

CDC, "VFC CDC Vaccine Price List Archives," available at
https://www.cdc.gov/vaccines/programs/vfc/awardees/vaccine-management/price-list/archive.html

Attachment C.6. CDC Price Lists for Varivax

| Date Posted | Public | Private | Contract End Date |
| --- | --- | --- | --- |
| 12/22/2005 | $52.250 | $66.810 | 3/31/2006 |
| 4/14/2006 | $56.900 | $66.810 | 3/31/2007 |
| 5/24/2007 | $59.150 | $74.560 | 3/31/2008 |
| 9/23/2008 | $61.500 | $77.510 | 3/31/2009 |
| 10/8/2008 | $61.500 | $77.510 | 3/31/2009 |
| 11/5/2008 | $61.500 | $77.510 | 3/31/2009 |
| 11/25/2008 | $61.500 | $77.510 | 3/31/2009 |
| 2/5/2009 | $61.500 | $80.580 | 3/31/2009 |
| 4/6/2009 | $64.530 | $80.580 | 3/31/2010 |
| 4/15/2009 | $64.530 | $80.580 | 3/31/2010 |
| 5/1/2009 | $64.530 | $80.580 | 3/31/2010 |
| 5/26/2009 | $64.530 | $80.580 | 3/31/2010 |
| 7/8/2009 | $64.530 | $80.580 | 3/31/2010 |
| 8/3/2009 | $64.530 | $80.580 | 3/31/2010 |
| 8/7/2009 | $64.530 | $80.580 | 3/31/2010 |
| 8/13/2009 | $64.530 | $80.580 | 3/31/2010 |
| 8/24/2009 | $64.530 | $80.580 | 3/31/2010 |
| 9/2/2009 | $64.530 | $80.580 | 3/31/2010 |
| 9/18/2009 | $64.530 | $80.580 | 3/31/2010 |
| 10/9/2009 | $64.530 | $80.580 | 3/31/2010 |
| 10/14/2009 | $64.530 | $80.580 | 3/31/2010 |
| 10/29/2009 | $64.530 | $80.580 | 3/31/2010 |
| 12/1/2009 | $64.530 | $80.580 | 3/31/2010 |
| 1/12/2010 | $64.530 | $80.580 | 3/31/2010 |
| 1/28/2010 | $64.530 | $80.580 | 3/31/2010 |
| 2/2/2010 | $64.530 | $80.580 | 3/31/2010 |
| 2/5/2010 | $64.530 | $80.580 | 3/31/2010 |
| 2/16/2010 | $64.530 | $80.580 | 3/31/2010 |
| 3/12/2010 | $64.530 | $80.580 | 3/31/2010 |
| 3/31/2010 | $64.530 | $80.580 | 3/31/2010 |
| 4/6/2010 | $67.081 | $80.580 | 3/31/2011 |
| 4/23/2010 | $67.081 | $80.580 | 3/31/2011 |
| 5/14/2010 | $67.081 | $80.580 | 3/31/2011 |
| 6/9/2010 | $67.081 | $80.580 | 3/31/2011 |
| 7/1/2010 | $67.081 | $80.580 | 3/31/2011 |
| 8/3/2010 | $67.081 | $80.580 | 3/31/2011 |
| 8/13/2010 | $67.081 | $80.580 | 3/31/2011 |
| 9/3/2010 | $67.081 | $80.580 | 3/31/2011 |
| 9/28/2010 | $67.081 | $80.580 | 3/31/2011 |
| 10/6/2010 | $67.081 | $83.770 | 3/31/2011 |
| 11/19/2010 | $67.081 | $83.770 | 3/31/2011 |
| 12/3/2010 | $67.081 | $83.770 | 3/31/2011 |
| 12/16/2010 | $67.081 | $83.770 | 3/31/2011 |
| 1/1/2011 | $67.081 | $83.770 | 3/31/2011 |
| 1/31/2011 | $67.081 | $83.770 | 3/31/2011 |
| 2/8/2011 | $67.081 | $83.770 | 3/31/2011 |

**Appx8334**

Attachment C.6. CDC Price Lists for Varivax

| Date Posted | Public | Private | Contract End Date |
|---|---|---|---|
| 2/15/2011 | $67.081 | $83.770 | 3/31/2011 |
| 3/1/2011 | $67.081 | $83.770 | 3/31/2011 |
| 3/14/2011 | $67.081 | $83.770 | 3/31/2011 |
| 3/31/2011 | $69.734 | $83.770 | 3/31/2012 |
| 4/8/2011 | $69.734 | $83.770 | 3/31/2012 |
| 4/11/2011 | $69.734 | $83.770 | 3/31/2012 |
| 5/5/2011 | $69.734 | $83.770 | 3/31/2012 |
| 5/17/2011 | $69.734 | $83.770 | 3/31/2012 |
| 6/17/2011 | $69.734 | $83.770 | 3/31/2012 |
| 7/18/2011 | $69.734 | $83.770 | 3/31/2012 |
| 8/29/2011 | $69.734 | $83.770 | 3/31/2012 |
| 12/15/2011 | $69.734 | $83.770 | 3/31/2012 |
| 1/6/2012 | $69.734 | $83.770 | 3/31/2012 |
| 1/24/2012 | $69.734 | $83.770 | 3/31/2012 |
| 2/1/2012 | $69.734 | $87.095 | 3/31/2012 |
| 4/10/2012 | $72.490 | $87.095 | 3/31/2013 |
| 4/24/2012 | $72.490 | $87.095 | 3/31/2013 |
| 7/6/2012 | $72.490 | $87.095 | 3/31/2013 |
| 7/31/2012 | $72.490 | $87.095 | 3/31/2013 |
| 10/15/2012 | $72.490 | $87.095 | 3/31/2013 |
| 11/1/2012 | $72.490 | $87.095 | 3/31/2013 |
| 2/14/2013 | $72.490 | $90.550 | 3/31/2013 |
| 3/7/2013 | $72.490 | $90.550 | 3/31/2013 |
| 4/1/2013 | $75.360 | $90.549 | 3/31/2014 |
| 4/16/2013 | $75.360 | $90.549 | 3/31/2014 |
| 4/29/2013 | $75.360 | $90.549 | 3/31/2014 |
| 7/1/2013 | $75.360 | $90.549 | 3/31/2014 |
| 7/24/2013 | $75.360 | $94.141 | 3/31/2014 |
| 9/30/2013 | $75.360 | $94.141 | 3/31/2014 |
| 11/18/2013 | $75.360 | $94.141 | 3/31/2014 |
| 1/31/2014 | $75.360 | $94.141 | 3/31/2014 |
| 2/18/2014 | $75.360 | $94.141 | 3/31/2014 |
| 3/12/2014 | $75.360 | $94.141 | 3/31/2014 |
| 4/1/2014 | $78.340 | $94.141 | 3/31/2015 |
| 5/1/2014 | $78.340 | $94.141 | 3/31/2015 |
| 6/3/2014 | $78.340 | $94.141 | 3/31/2015 |
| 7/1/2014 | $78.340 | $94.141 | 3/31/2015 |
| 8/1/2014 | $78.340 | $94.141 | 3/31/2015 |
| 1/5/2015 | $78.340 | $94.141 | 3/31/2015 |
| 2/2/2015 | $78.340 | $100.678 | 3/31/2015 |
| 2/24/2015 | $78.340 | $100.678 | 3/31/2015 |
| 4/1/2015 | $83.770 | $100.678 | 3/31/2016 |
| 5/1/2015 | $83.770 | $100.678 | 3/31/2016 |
| 7/1/2015 | $83.770 | $100.678 | 3/31/2016 |
| 8/3/2015 | $83.770 | $100.678 | 3/31/2016 |
| 10/1/2015 | $83.770 | $100.678 | 3/31/2016 |

Attachment C.6. CDC Price Lists for Varivax

| Date Posted | Public | Private | Contract End Date |
|---|---|---|---|
| 11/5/2015 | $83.770 | $107.670 | 3/31/2016 |
| 1/1/2016 | $83.770 | $107.670 | 3/31/2016 |

CDC, "VFC CDC Vaccine Price List Archives," available at
https://www.cdc.gov/vaccines/programs/vfc/awardees/vaccine-management/price-list/archive.html

**Attachment D**

Summary of Overcharges on Private MMR-II and ProQuad Sales

| Year | Competitive Entry in March 2009 | | | Competitive Entry in January 2014 | | |
|------|-------------|-------------|-------------|-------------|-------------|-------------|
| | MMR-II | ProQuad | Total | MMR-II | ProQuad | Total |
| 2005 | $0 | $502,794 | $502,794 | $0 | $502,794 | $502,794 |
| 2006 | $0 | $7,721,512 | $7,721,512 | $0 | $7,721,512 | $7,721,512 |
| 2007 | $0 | $7,283,677 | $7,283,677 | $0 | $7,283,677 | $7,283,677 |
| 2008 | $0 | $281,461 | $281,461 | $0 | $281,461 | $281,461 |
| 2009 | $7,746,874 | -$7,949 | $7,738,925 | $0 | -$1,591 | -$1,591 |
| 2010 | $10,178,384 | $1,121,389 | $11,299,774 | $0 | $4,541 | $4,541 |
| 2011 | $15,911,124 | $593,469 | $16,504,592 | $0 | $0 | $0 |
| 2012 | $20,882,414 | $771,630 | $21,654,043 | $0 | $303,040 | $303,040 |
| 2013 | $22,191,759 | $6,112,904 | $28,304,663 | $0 | $337,770 | $337,770 |
| 2014 | $38,741,174 | $18,384,414 | $57,125,588 | $5,518,602 | $8,389,813 | $13,908,416 |
| 2015 | $37,339,966 | $18,552,172 | $55,892,138 | $12,916,106 | $10,635,185 | $23,551,291 |
| 2016 | $36,112,351 | $20,227,588 | $56,339,939 | $12,491,467 | $11,595,631 | $24,087,098 |
| 2017 | $36,112,351 | $20,227,588 | $56,339,939 | $12,491,467 | $11,595,631 | $24,087,098 |
| Total | $225,216,396 | $101,269,856 | $326,486,252 | $43,417,642 | $58,146,671 | $101,564,312 |

Notes

2016 overcharges = 2015 overcharges * 2016 sales / 2015 sales
MMR-II sales in 2015 and 2016 were $365 million and $353 million, respectively
ProQuad sales in 2015 and 2016 were $454 million and $495 million, respectively
See Merck & Co., Inc., Form 10-K, for the Fiscal Year ended December 31, 2016, p. 43

2017 overcharges = 2016 overcharges
Although MMR-II and ProQuad sales increased from 2016 to 2017 (for the first nine months of each year), the growth was
attributed to international events
See Merck & Co., Inc., Form 10-Q, for the quarterly period ended September 30, 2017, p. 35

Attachment D.1.  Discount off list price estimates from Freed et al. (2008)

|  |  | Private-Practice Price-Per-Dose Mean | List Price | Discount |
|---|---|---|---|---|
| **Merck vaccines with no competition** | | | | |
| MMR | MMR-II | $42.23 | $44.84 | 5.82% |
| Rotavirus | RotaTeq | $66.39 | $66.94 | 0.82% |
| MMR-V | ProQuad | $118.29 | $124.37 | 4.89% |
| Varicella | Varivax | $72.34 | $74.56 | 2.98% |
| Average | | | | 3.63% |
| **Merck Vaccines with competition from GSK vaccines** | | | | |
| Hepatitis B | Recombivax | $12.23 | $23.20 | 47.28% |
| Hepatitis A | Vaqta | $24.79 | $30.37 | 18.37% |
| Average | | | | 32.83% |

Source:
G.L. Freed et al., "Variation in Provider Vaccine Purchase Prices and Payer
Reimbursement," Pediatrics, 122(6), December 2008, pp. 1325-1331 at p. 1327

**Appx8339**

Attachment D.2. Yardstick analysis: average % change in private list price

| Month | Hepatitis B | | Hepatitis A | | Rotavirus | | Average % Change |
|---|---|---|---|---|---|---|---|
| | List Price | % Change | List Price | % Change | List Price | % Change | |
| 2/1/2009 | $22.45 | | $29.62 | | $68.84 | | |
| 3/1/2009 | $22.45 | 0.0% | $29.62 | 0.0% | $68.84 | 0.0% | 0.0% |
| 4/1/2009 | $22.45 | 0.0% | $29.62 | 0.0% | $68.84 | 0.0% | 0.0% |
| 5/1/2009 | $22.45 | 0.0% | $29.62 | 0.0% | $68.84 | 0.0% | 0.0% |
| 6/1/2009 | $22.45 | 0.0% | $29.62 | 0.0% | $68.84 | 0.0% | 0.0% |
| 7/1/2009 | $22.45 | 0.0% | $29.62 | 0.0% | $68.84 | 0.0% | 0.0% |
| 8/1/2009 | $22.45 | 0.0% | $29.62 | 0.0% | $68.84 | 0.0% | 0.0% |
| 9/1/2009 | $22.45 | 0.0% | $29.62 | 0.0% | $68.84 | 0.0% | 0.0% |
| 10/1/2009 | $22.45 | 0.0% | $29.62 | 0.0% | $68.84 | 0.0% | 0.0% |
| 11/1/2009 | $22.45 | 0.0% | $29.62 | 0.0% | $68.84 | 0.0% | 0.0% |
| 12/1/2009 | $22.45 | 0.0% | $29.62 | 0.0% | $68.84 | 0.0% | 0.0% |
| 1/1/2010 | $22.45 | 0.0% | $29.62 | 0.0% | $68.84 | 0.0% | 0.0% |
| 2/1/2010 | $22.45 | 0.0% | $29.62 | 0.0% | $68.84 | 0.0% | 0.0% |
| 3/1/2010 | $22.45 | 0.0% | $29.62 | 0.0% | $68.84 | 0.0% | 0.0% |
| 4/1/2010 | $22.45 | 0.0% | $29.62 | 0.0% | $68.84 | 0.0% | 0.0% |
| 5/1/2010 | $22.45 | 0.0% | $29.56 | -0.2% | $68.84 | 0.0% | -0.1% |
| 6/1/2010 | $22.45 | 0.0% | $29.56 | 0.0% | $68.84 | 0.0% | 0.0% |
| 7/1/2010 | $22.45 | 0.0% | $29.56 | 0.0% | $68.84 | 0.0% | 0.0% |
| 8/1/2010 | $22.45 | 0.0% | $29.56 | 0.0% | $68.84 | 0.0% | 0.0% |
| 9/1/2010 | $22.45 | 0.0% | $29.56 | 0.0% | $68.84 | 0.0% | 0.0% |
| 10/1/2010 | $22.45 | 0.0% | $29.56 | 0.0% | $68.84 | 0.0% | 0.0% |
| 11/1/2010 | $22.45 | 0.0% | $29.56 | 0.0% | $68.84 | 0.0% | 0.0% |
| 12/1/2010 | $22.45 | 0.0% | $29.56 | 0.0% | $68.84 | 0.0% | 0.0% |
| 1/1/2011 | $22.45 | 0.0% | $29.56 | 0.0% | $68.84 | 0.0% | 0.0% |
| 2/1/2011 | $22.45 | 0.0% | $29.56 | 0.0% | $68.84 | 0.0% | 0.0% |
| 3/1/2011 | $22.45 | 0.0% | $29.62 | 0.2% | $68.84 | 0.0% | 0.1% |
| 4/1/2011 | $22.45 | 0.0% | $29.62 | 0.0% | $68.84 | 0.0% | 0.0% |
| 5/1/2011 | $22.45 | 0.0% | $29.62 | 0.0% | $68.84 | 0.0% | 0.0% |
| 6/1/2011 | $22.45 | 0.0% | $29.62 | 0.0% | $68.84 | 0.0% | 0.0% |
| 7/1/2011 | $22.45 | 0.0% | $29.62 | 0.0% | $68.84 | 0.0% | 0.0% |
| 8/1/2011 | $22.45 | 0.0% | $29.62 | 0.0% | $68.84 | 0.0% | 0.0% |
| 9/1/2011 | $22.45 | 0.0% | $29.62 | 0.0% | $68.84 | 0.0% | 0.0% |
| 10/1/2011 | $22.45 | 0.0% | $29.62 | 0.0% | $68.84 | 0.0% | 0.0% |
| 11/1/2011 | $22.45 | 0.0% | $29.62 | 0.0% | $68.84 | 0.0% | 0.0% |
| 12/1/2011 | $22.45 | 0.0% | $29.62 | 0.0% | $68.84 | 0.0% | 0.0% |
| 1/1/2012 | $22.45 | 0.0% | $29.62 | 0.0% | $68.84 | 0.0% | 0.0% |

Attachment D.2. Yardstick analysis: average % change in private list price

| Month | Hepatitis B | | Hepatitis A | | Rotavirus | | Average % Change |
|---|---|---|---|---|---|---|---|
| | List Price | % Change | List Price | % Change | List Price | % Change | |
| 2/1/2012 | $22.45 | 0.0% | $29.62 | 0.0% | $71.59 | 4.0% | 1.3% |
| 3/1/2012 | $22.45 | 0.0% | $29.62 | 0.0% | $71.59 | 0.0% | 0.0% |
| 4/1/2012 | $22.45 | 0.0% | $29.62 | 0.0% | $71.59 | 0.0% | 0.0% |
| 5/1/2012 | $22.45 | 0.0% | $29.62 | 0.0% | $71.59 | 0.0% | 0.0% |
| 6/1/2012 | $22.45 | 0.0% | $29.62 | 0.0% | $71.59 | 0.0% | 0.0% |
| 7/1/2012 | $22.45 | 0.0% | $29.62 | 0.0% | $71.59 | 0.0% | 0.0% |
| 8/1/2012 | $22.45 | 0.0% | $29.62 | 0.0% | $71.59 | 0.0% | 0.0% |
| 9/1/2012 | $22.45 | 0.0% | $29.62 | 0.0% | $71.59 | 0.0% | 0.0% |
| 10/1/2012 | $22.45 | 0.0% | $29.62 | 0.0% | $71.59 | 0.0% | 0.0% |
| 11/1/2012 | $22.45 | 0.0% | $29.62 | 0.0% | $71.59 | 0.0% | 0.0% |
| 12/1/2012 | $22.45 | 0.0% | $29.62 | 0.0% | $71.59 | 0.0% | 0.0% |
| 1/1/2013 | $22.45 | 0.0% | $29.62 | 0.0% | $71.59 | 0.0% | 0.0% |
| 2/1/2013 | $22.45 | 0.0% | $29.62 | 0.0% | $71.59 | 0.0% | 0.0% |
| 3/1/2013 | $22.45 | 0.0% | $29.62 | 0.0% | $74.45 | 4.0% | 1.3% |
| 4/1/2013 | $22.45 | 0.0% | $29.62 | 0.0% | $74.45 | 0.0% | 0.0% |
| 5/1/2013 | $22.45 | 0.0% | $29.62 | 0.0% | $74.45 | 0.0% | 0.0% |
| 6/1/2013 | $22.45 | 0.0% | $29.62 | 0.0% | $74.45 | 0.0% | 0.0% |
| 7/1/2013 | $22.45 | 0.0% | $29.62 | 0.0% | $74.45 | 0.0% | 0.0% |
| 8/1/2013 | $22.45 | 0.0% | $29.62 | 0.0% | $74.45 | 0.0% | 0.0% |
| 9/1/2013 | $22.45 | 0.0% | $29.62 | 0.0% | $74.45 | 0.0% | 0.0% |
| 10/1/2013 | $22.45 | 0.0% | $29.62 | 0.0% | $74.45 | 0.0% | 0.0% |
| 11/1/2013 | $22.45 | 0.0% | $29.62 | 0.0% | $74.45 | 0.0% | 0.0% |
| 12/1/2013 | $22.45 | 0.0% | $29.62 | 0.0% | $74.45 | 0.0% | 0.0% |
| 1/1/2014 | $22.45 | 0.0% | $29.62 | 0.0% | $74.45 | 0.0% | 0.0% |
| 2/1/2014 | $22.45 | 0.0% | $29.62 | 0.0% | $74.45 | 0.0% | 0.0% |
| 3/1/2014 | $22.45 | 0.0% | $29.62 | 0.0% | $74.45 | 0.0% | 0.0% |
| 4/1/2014 | $22.45 | 0.0% | $29.62 | 0.0% | $74.45 | 0.0% | 0.0% |
| 5/1/2014 | $22.45 | 0.0% | $29.62 | 0.0% | $74.45 | 0.0% | 0.0% |
| 6/1/2014 | $22.45 | 0.0% | $29.62 | 0.0% | $74.45 | 0.0% | 0.0% |
| 7/1/2014 | $22.45 | 0.0% | $29.62 | 0.0% | $74.45 | 0.0% | 0.0% |
| 8/1/2014 | $22.45 | 0.0% | $29.62 | 0.0% | $74.45 | 0.0% | 0.0% |
| 9/1/2014 | $22.45 | 0.0% | $29.62 | 0.0% | $74.45 | 0.0% | 0.0% |
| 10/1/2014 | $22.45 | 0.0% | $29.62 | 0.0% | $74.45 | 0.0% | 0.0% |
| 11/1/2014 | $22.45 | 0.0% | $29.62 | 0.0% | $74.45 | 0.0% | 0.0% |
| 12/1/2014 | $22.45 | 0.0% | $29.62 | 0.0% | $74.45 | 0.0% | 0.0% |
| 1/1/2015 | $22.45 | 0.0% | $29.62 | 0.0% | $74.45 | 0.0% | 0.0% |

Attachment D.2. Yardstick analysis: average % change in private list price

| Month | Hepatitis B | | Hepatitis A | | Rotavirus | | Average % |
|---|---|---|---|---|---|---|---|
| | List Price | % Change | List Price | % Change | List Price | % Change | Change |
| 2/1/2015 | $22.45 | 0.0% | $29.62 | 0.0% | $74.45 | 0.0% | 0.0% |
| 3/1/2015 | $22.45 | 0.0% | $29.62 | 0.0% | $74.45 | 0.0% | 0.0% |
| 4/1/2015 | $22.45 | 0.0% | $29.62 | 0.0% | $74.45 | 0.0% | 0.0% |
| 5/1/2015 | $22.45 | 0.0% | $29.62 | 0.0% | $74.45 | 0.0% | 0.0% |
| 6/1/2015 | $22.45 | 0.0% | $29.62 | 0.0% | $74.45 | 0.0% | 0.0% |
| 7/1/2015 | $22.45 | 0.0% | $29.62 | 0.0% | $74.45 | 0.0% | 0.0% |
| 8/1/2015 | $22.45 | 0.0% | $29.62 | 0.0% | $74.45 | 0.0% | 0.0% |
| 9/1/2015 | $22.45 | 0.0% | $29.62 | 0.0% | $74.45 | 0.0% | 0.0% |
| 10/1/2015 | $22.45 | 0.0% | $29.62 | 0.0% | $74.45 | 0.0% | 0.0% |
| 11/1/2015 | $22.45 | 0.0% | $29.62 | 0.0% | $74.45 | 0.0% | 0.0% |
| 12/1/2015 | $22.45 | 0.0% | $29.62 | 0.0% | $77.43 | 4.0% | 1.3% |

Notes

List prices are from the CDC's price lists included in Attachment C.3, C.4, and C.5

**Appx8342**

Attachment D.3.a. Calculation of private overcharges of MMR-II assuming competitive entry in March 2009

| | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 |
|---|---|---|---|---|---|---|---|---|---|---|
| | | MMR-II | | | | Counterfactual | | | Overcharges | |
| Month | Doses | List Price | Discount | Net Price | % Change | MMR-II List Price | Discount | MMR-II Net Price | Per Dose | Total |
| 2/1/2009 | 307,309 | $44.29 | 19.4% | $35.68 | | | | | | |
| 3/1/2009 | 340,661 | $44.56 | 20.1% | $35.61 | 0.0% | $44.29 | 22.1% | $34.51 | $1.10 | $375,267 |
| 4/1/2009 | 427,078 | $44.56 | 15.4% | $37.70 | 0.0% | $44.29 | 17.4% | $36.58 | $1.11 | $475,856 |
| 5/1/2009 | 369,076 | $46.06 | 18.4% | $37.56 | 0.0% | $44.29 | 20.4% | $35.24 | $2.33 | $859,705 |
| 6/1/2009 | 432,232 | $46.06 | 18.0% | $37.76 | 0.0% | $44.29 | 20.0% | $35.42 | $2.34 | $1,010,058 |
| 7/1/2009 | 451,239 | $46.06 | 17.1% | $38.16 | 0.0% | $44.29 | 19.1% | $35.81 | $2.35 | $1,061,437 |
| 8/1/2009 | 524,772 | $46.06 | 19.0% | $37.31 | 0.0% | $44.29 | 21.0% | $34.99 | $2.32 | $1,217,279 |
| 9/1/2009 | 404,334 | $46.06 | 18.8% | $37.42 | 0.0% | $44.29 | 20.8% | $35.09 | $2.32 | $939,549 |
| 10/1/2009 | 300,023 | $46.06 | 21.1% | $36.32 | 0.0% | $44.29 | 23.1% | $34.04 | $2.28 | $684,496 |
| 11/1/2009 | 252,561 | $46.06 | 21.7% | $36.08 | 0.0% | $44.29 | 23.7% | $33.80 | $2.27 | $573,848 |
| 12/1/2009 | 237,791 | $46.06 | 19.5% | $37.07 | 0.0% | $44.29 | 21.5% | $34.76 | $2.31 | $549,378 |
| 1/1/2010 | 268,045 | $46.06 | 18.7% | $37.47 | 0.0% | $44.29 | 20.7% | $35.14 | $2.33 | $623,378 |
| 2/1/2010 | 278,680 | $46.06 | 19.5% | $37.09 | 0.0% | $44.29 | 21.5% | $34.78 | $2.31 | $644,033 |
| 3/1/2010 | 499,067 | $46.06 | 15.3% | $38.99 | 0.0% | $44.29 | 17.3% | $36.61 | $2.38 | $1,189,921 |
| 4/1/2010 | 298,423 | $46.06 | 23.7% | $35.15 | 0.0% | $44.29 | 25.7% | $32.92 | $2.24 | $667,490 |
| 5/1/2010 | 378,686 | $46.06 | 18.4% | $37.57 | 0.0% | $44.29 | 20.4% | $35.22 | $2.35 | $891,235 |
| 6/1/2010 | 321,586 | $46.06 | 23.1% | $35.41 | -0.1% | $44.26 | 25.1% | $33.14 | $2.27 | $729,599 |
| 7/1/2010 | 402,066 | $46.06 | 18.3% | $37.65 | 0.0% | $44.26 | 20.3% | $35.29 | $2.36 | $947,422 |
| 8/1/2010 | 438,291 | $46.06 | 22.3% | $35.79 | 0.0% | $44.26 | 24.3% | $33.51 | $2.28 | $1,000,952 |
| 9/1/2010 | 370,643 | $46.06 | 20.2% | $36.76 | 0.0% | $44.26 | 22.2% | $34.44 | $2.32 | $860,467 |
| 10/1/2010 | 338,225 | $46.06 | 20.8% | $36.49 | 0.0% | $44.26 | 22.8% | $34.18 | $2.31 | $781,683 |
| 11/1/2010 | 282,204 | $47.91 | 26.1% | $35.39 | 0.0% | $44.26 | 28.1% | $31.81 | $3.58 | $1,010,710 |
| 12/1/2010 | 228,616 | $47.91 | 24.6% | $36.12 | 0.0% | $44.26 | 26.6% | $32.48 | $3.64 | $831,493 |
| 1/1/2011 | 225,932 | $47.91 | 26.9% | $35.01 | 0.0% | $44.26 | 28.9% | $31.46 | $3.55 | $802,661 |
| 2/1/2011 | 228,028 | $47.91 | 23.8% | $36.49 | 0.1% | $44.29 | 25.8% | $32.82 | $3.67 | $835,727 |
| 3/1/2011 | 342,106 | $47.91 | 20.6% | $38.03 | 0.0% | $44.29 | 22.6% | $34.27 | $3.76 | $1,286,178 |
| 4/1/2011 | 324,532 | $47.91 | 21.0% | $37.83 | 0.0% | $44.29 | 23.0% | $34.08 | $3.74 | $1,215,199 |
| 5/1/2011 | 380,880 | $47.91 | 19.9% | $38.39 | 0.0% | $44.29 | 21.9% | $34.60 | $3.79 | $1,442,309 |
| 6/1/2011 | 360,032 | $47.91 | 23.3% | $36.74 | 0.0% | $44.29 | 25.3% | $33.08 | $3.66 | $1,318,497 |
| 7/1/2011 | 414,079 | $47.91 | 19.6% | $38.54 | 0.0% | $44.29 | 21.6% | $34.74 | $3.80 | $1,572,597 |
| 8/1/2011 | 620,020 | $47.91 | 18.9% | $38.87 | 0.0% | $44.29 | 20.9% | $35.05 | $3.82 | $2,370,560 |
| 9/1/2011 | 379,545 | $47.91 | 22.9% | $36.93 | 0.0% | $44.29 | 24.9% | $33.25 | $3.68 | $1,395,307 |
| 10/1/2011 | 354,806 | $47.91 | 23.9% | $36.44 | 0.0% | $44.29 | 25.9% | $32.80 | $3.64 | $1,291,207 |
| 11/1/2011 | 339,261 | $47.91 | 24.6% | $36.10 | 0.0% | $44.29 | 26.6% | $32.49 | $3.61 | $1,226,075 |

Attachment D.3.a. Calculation of private overcharges of MMR-II assuming competitive entry in March 2009

| | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 |
|---|---|---|---|---|---|---|---|---|---|---|
| | | MMR-II | | | | Counterfactual | | | Overcharges | |
| Month | Doses | List Price | Discount | Net Price | % Change | MMR-II List Price | Discount | MMR-II Net Price | Per Dose | Total |
| 12/1/2011 | 306,902 | $47.91 | 20.5% | $38.07 | 0.0% | $44.29 | 22.5% | $34.31 | $3.76 | $1,154,808 |
| 1/1/2012 | 286,090 | $47.91 | 21.8% | $37.46 | 0.0% | $44.29 | 23.8% | $33.74 | $3.72 | $1,063,240 |
| 2/1/2012 | 312,704 | $49.82 | 22.2% | $38.77 | 1.3% | $44.88 | 24.2% | $34.02 | $4.74 | $1,483,633 |
| 3/1/2012 | 359,676 | $49.82 | 21.7% | $39.02 | 0.0% | $44.88 | 23.7% | $34.25 | $4.77 | $1,715,525 |
| 4/1/2012 | 434,791 | $49.82 | 18.6% | $40.55 | 0.0% | $44.88 | 20.6% | $35.63 | $4.92 | $2,139,946 |
| 5/1/2012 | 407,701 | $49.82 | 26.7% | $36.50 | 0.0% | $44.88 | 28.7% | $31.98 | $4.52 | $1,842,481 |
| 6/1/2012 | 445,878 | $49.82 | 20.0% | $39.86 | 0.0% | $44.88 | 22.0% | $35.01 | $4.85 | $2,163,739 |
| 7/1/2012 | 512,597 | $49.82 | 21.7% | $39.01 | 0.0% | $44.88 | 23.7% | $34.24 | $4.77 | $2,444,400 |
| 8/1/2012 | 561,568 | $49.82 | 22.5% | $38.60 | 0.0% | $44.88 | 24.5% | $33.87 | $4.73 | $2,654,954 |
| 9/1/2012 | 374,716 | $49.82 | 27.1% | $36.32 | 0.0% | $44.88 | 29.1% | $31.82 | $4.50 | $1,686,762 |
| 10/1/2012 | 380,954 | $49.82 | 27.9% | $35.92 | 0.0% | $44.88 | 29.9% | $31.46 | $4.46 | $1,699,707 |
| 11/1/2012 | 261,757 | $49.82 | 30.8% | $34.50 | 0.0% | $44.88 | 32.8% | $30.17 | $4.32 | $1,130,926 |
| 12/1/2012 | 200,651 | $49.82 | 31.8% | $34.00 | 0.0% | $44.88 | 33.8% | $29.73 | $4.27 | $857,101 |
| 1/1/2013 | 275,822 | $49.82 | 28.0% | $35.88 | 0.0% | $44.88 | 30.0% | $31.42 | $4.46 | $1,229,538 |
| 2/1/2013 | 252,810 | $49.82 | 25.7% | $37.04 | 0.0% | $44.88 | 27.7% | $32.47 | $4.57 | $1,156,073 |
| 3/1/2013 | 276,237 | $51.82 | 24.3% | $39.22 | 1.3% | $45.48 | 26.3% | $33.51 | $5.71 | $1,577,464 |
| 4/1/2013 | 326,454 | $51.82 | 23.8% | $39.47 | 0.0% | $45.48 | 25.8% | $33.73 | $5.74 | $1,872,390 |
| 5/1/2013 | 313,047 | $51.82 | 26.7% | $38.00 | 0.0% | $45.48 | 28.7% | $32.44 | $5.56 | $1,739,188 |
| 6/1/2013 | 335,885 | $51.82 | 26.5% | $38.11 | 0.0% | $45.48 | 28.5% | $32.54 | $5.57 | $1,870,700 |
| 7/1/2013 | 379,703 | $51.82 | 23.3% | $39.73 | 0.0% | $45.48 | 25.3% | $33.97 | $5.77 | $2,190,108 |
| 8/1/2013 | 402,532 | $53.89 | 26.8% | $39.46 | 0.0% | $45.48 | 28.8% | $32.40 | $7.07 | $2,844,824 |
| 9/1/2013 | 301,638 | $53.89 | 25.6% | $40.10 | 0.0% | $45.48 | 27.6% | $32.93 | $7.17 | $2,161,552 |
| 10/1/2013 | 315,660 | $53.89 | 26.9% | $39.41 | 0.0% | $45.48 | 28.9% | $32.35 | $7.06 | $2,228,419 |
| 11/1/2013 | 241,464 | $53.89 | 27.7% | $38.95 | 0.0% | $45.48 | 29.7% | $31.97 | $6.99 | $1,687,352 |
| 12/1/2013 | 226,544 | $53.89 | 25.0% | $40.40 | 0.0% | $45.48 | 27.0% | $33.19 | $7.21 | $1,634,151 |
| 1/1/2014 | 241,237 | $53.89 | 32.0% | $36.62 | 0.0% | $45.48 | 34.0% | $30.00 | $6.62 | $1,597,962 |
| 2/1/2014 | 243,407 | $53.89 | 27.3% | $39.19 | 0.0% | $45.48 | 29.3% | $32.16 | $7.02 | $1,709,699 |
| 3/1/2014 | 275,353 | $53.89 | 27.7% | $38.98 | 0.0% | $45.48 | 29.7% | $31.99 | $6.99 | $1,925,164 |
| 4/1/2014 | 362,901 | $53.89 | 23.9% | $41.00 | 0.0% | $45.48 | 25.9% | $33.70 | $7.31 | $2,651,997 |
| 5/1/2014 | 319,495 | $53.89 | 27.3% | $39.20 | 0.0% | $45.48 | 29.3% | $32.18 | $7.03 | $2,245,036 |
| 6/1/2014 | 348,154 | $53.89 | 29.4% | $38.05 | 0.0% | $45.48 | 31.4% | $31.20 | $6.85 | $2,383,691 |
| 7/1/2014 | 860,334 | $53.89 | 11.7% | $47.60 | 0.0% | $45.48 | 13.7% | $39.27 | $8.34 | $7,173,296 |
| 8/1/2014 | 811,740 | $53.89 | 15.2% | $45.71 | 0.0% | $45.48 | 17.2% | $37.67 | $8.04 | $6,527,953 |
| 9/1/2014 | 622,538 | $53.89 | 16.6% | $44.95 | 0.0% | $45.48 | 18.6% | $37.03 | $7.92 | $4,932,554 |

Attachment D.3.a. Calculation of private overcharges of MMR-II assuming competitive entry in March 2009

| | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 |
| | | MMR-II | | | | Counterfactual | | | Overcharges | |
| Month | Doses | List Price | Discount | Net Price | % Change | MMR-II List Price | Discount | MMR-II Net Price | Per Dose | Total |
|---|---|---|---|---|---|---|---|---|---|---|
| 10/1/2014 | 485,796 | $53.89 | 19.9% | $43.18 | 0.0% | $45.48 | 21.9% | $35.53 | $7.65 | $3,714,762 |
| 11/1/2014 | 245,169 | $53.89 | 29.7% | $37.87 | 0.0% | $45.48 | 31.7% | $31.05 | $6.82 | $1,671,817 |
| 12/1/2014 | 304,219 | $53.89 | 24.5% | $40.67 | 0.0% | $45.48 | 26.5% | $33.41 | $7.26 | $2,207,244 |
| 1/1/2015 | 402,768 | $53.89 | 22.8% | $41.62 | 0.0% | $45.48 | 24.8% | $34.21 | $7.40 | $2,981,892 |
| 2/1/2015 | 679,293 | $53.89 | 19.9% | $43.16 | 0.0% | $45.48 | 21.9% | $35.52 | $7.64 | $5,192,872 |
| 3/1/2015 | 224,312 | $57.66 | 43.1% | $32.82 | 0.0% | $45.48 | 45.1% | $24.97 | $7.84 | $1,759,047 |
| 4/1/2015 | 317,722 | $57.66 | 26.0% | $42.65 | 0.0% | $45.48 | 28.0% | $32.73 | $9.92 | $3,151,451 |
| 5/1/2015 | 289,000 | $57.66 | 28.9% | $41.00 | 0.0% | $45.48 | 30.9% | $31.43 | $9.57 | $2,766,161 |
| 6/1/2015 | 283,186 | $57.66 | 34.8% | $37.61 | 0.0% | $45.48 | 36.8% | $28.75 | $8.85 | $2,507,351 |
| 7/1/2015 | 372,345 | $57.66 | 26.5% | $42.39 | 0.0% | $45.48 | 28.5% | $32.53 | $9.87 | $3,673,301 |
| 8/1/2015 | 420,213 | $57.66 | 28.7% | $41.11 | 0.0% | $45.48 | 30.7% | $31.52 | $9.59 | $4,031,806 |
| 9/1/2015 | 315,717 | $57.66 | 30.0% | $40.34 | 0.0% | $45.48 | 32.0% | $30.91 | $9.43 | $2,977,772 |
| 10/1/2015 | 283,047 | $57.66 | 32.5% | $38.92 | 0.0% | $45.48 | 34.5% | $29.79 | $9.13 | $2,584,699 |
| 11/1/2015 | 315,639 | $57.66 | 32.5% | $38.92 | 0.0% | $45.48 | 34.5% | $29.79 | $9.13 | $2,881,934 |
| 12/1/2015 | 261,895 | $60.54 | 31.6% | $41.43 | 1.3% | $46.09 | 33.6% | $30.62 | $10.81 | $2,831,681 |
| Total | | | | | | | | | | $152,991,694 |

Notes

1 Merck Transactions Data
2 CDC Price Lists
3 = 100% - (sales at net price / sales at list price) - all sales data from Merck Transactions Data
4 = Column 2 * (1 - Column 3)
5 Average % Change from Attachment D.2
6 March 2009 value = previous value of Column 2 * (1 + Column 5); otherwise equal previous value of Column 6 * (1 + Column 5)
7 = Column 3 + additional discount
    2.0% = additional discount
8 = Column 6 * (1 - Column 7)
9 = Column 4 - Column 8
10 = Column 1 * Column 9

Attachment D.3.b. Calculation of private overcharges of MMR-II assuming competitive entry in January 2014

| | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 |
|---|---|---|---|---|---|---|---|---|---|---|
| | | MMR-II | | | | Counterfactual | | | Overcharges | |
| Month | Doses | List Price | Discount | Net Price | % Change | MMR-II List Price | Discount | MMR-II Net Price | Per Dose | Total |
| 12/1/2013 | 226,544 | $53.89 | 25.0% | $40.40 | | | | | | $260,000 |
| 1/1/2014 | 241,237 | $53.89 | 32.0% | $36.62 | 0.0% | $53.89 | 34.0% | $35.54 | $1.08 | $262,339 |
| 2/1/2014 | 243,407 | $53.89 | 27.3% | $39.19 | 0.0% | $53.89 | 29.3% | $38.11 | $1.08 | $262,339 |
| 3/1/2014 | 275,353 | $53.89 | 27.7% | $38.98 | 0.0% | $53.89 | 29.7% | $37.90 | $1.08 | $296,770 |
| 4/1/2014 | 362,901 | $53.89 | 23.9% | $41.00 | 0.0% | $53.89 | 25.9% | $39.93 | $1.08 | $391,127 |
| 5/1/2014 | 319,495 | $53.89 | 27.3% | $39.20 | 0.0% | $53.89 | 29.3% | $38.13 | $1.08 | $344,345 |
| 6/1/2014 | 348,154 | $53.89 | 29.4% | $38.05 | 0.0% | $53.89 | 31.4% | $36.97 | $1.08 | $375,233 |
| 7/1/2014 | 860,334 | $53.89 | 11.7% | $47.60 | 0.0% | $53.89 | 13.7% | $46.53 | $1.08 | $927,251 |
| 8/1/2014 | 811,740 | $53.89 | 15.2% | $45.71 | 0.0% | $53.89 | 17.2% | $44.63 | $1.08 | $874,877 |
| 9/1/2014 | 622,538 | $53.89 | 16.6% | $44.95 | 0.0% | $53.89 | 18.6% | $43.87 | $1.08 | $670,959 |
| 10/1/2014 | 485,796 | $53.89 | 19.9% | $43.18 | 0.0% | $53.89 | 21.9% | $42.10 | $1.08 | $523,581 |
| 11/1/2014 | 245,169 | $53.89 | 29.7% | $37.87 | 0.0% | $53.89 | 31.7% | $36.79 | $1.08 | $264,238 |
| 12/1/2014 | 304,219 | $53.89 | 24.5% | $40.67 | 0.0% | $53.89 | 26.5% | $39.59 | $1.08 | $327,881 |
| 1/1/2015 | 402,768 | $53.89 | 22.8% | $41.62 | 0.0% | $53.89 | 24.8% | $40.54 | $1.08 | $434,095 |
| 2/1/2015 | 679,293 | $53.89 | 19.9% | $43.16 | 0.0% | $53.89 | 21.9% | $42.08 | $1.08 | $732,128 |
| 3/1/2015 | 224,312 | $57.66 | 43.1% | $32.82 | 0.0% | $53.89 | 45.1% | $29.59 | $3.22 | $723,297 |
| 4/1/2015 | 317,722 | $57.66 | 26.0% | $42.65 | 0.0% | $53.89 | 28.0% | $38.78 | $3.87 | $1,228,846 |
| 5/1/2015 | 289,000 | $57.66 | 28.9% | $41.00 | 0.0% | $53.89 | 30.9% | $37.24 | $3.76 | $1,086,668 |
| 6/1/2015 | 283,186 | $57.66 | 34.8% | $37.61 | 0.0% | $53.89 | 36.8% | $34.07 | $3.54 | $1,001,893 |
| 7/1/2015 | 372,345 | $57.66 | 26.5% | $42.39 | 0.0% | $53.89 | 28.5% | $38.54 | $3.85 | $1,433,932 |
| 8/1/2015 | 420,213 | $57.66 | 28.7% | $41.11 | 0.0% | $53.89 | 30.7% | $37.35 | $3.77 | $1,583,057 |
| 9/1/2015 | 315,717 | $57.66 | 30.0% | $40.34 | 0.0% | $53.89 | 32.0% | $36.63 | $3.72 | $1,173,467 |
| 10/1/2015 | 283,047 | $57.66 | 32.5% | $38.92 | 0.0% | $53.89 | 34.5% | $35.30 | $3.62 | $1,025,736 |
| 11/1/2015 | 315,639 | $57.66 | 32.5% | $38.92 | 0.0% | $53.89 | 34.5% | $35.29 | $3.62 | $1,143,727 |
| 12/1/2015 | 261,895 | $60.54 | 31.6% | $41.43 | 1.3% | $54.61 | 33.6% | $36.28 | $5.15 | $1,349,260 |
| Total | | | | | | | | | | $18,434,708 |

Appx8346

Attachment D.3.b. Calculation of private overcharges of MMR-II assuming competitive entry in January 2014

| Month | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 |
|---|---|---|---|---|---|---|---|---|---|---|
| | | MMR-II | | | | Counterfactual | | | Overcharges | |
| | Doses | List Price | Discount | Net Price | % Change | MMR-II List Price | Discount | MMR-II Net Price | Per Dose | Total |

Notes

1 Merck Transactions Data
2 CDC Price Lists
3 = 100% - (sales at net price / sales at list price) - all sales data from Merck Transactions Data
4 = Column 2 * (1 - Column 3)
5 Average % Change from Attachment D.2
6 January 2014 value = previous value of Column 2 * (1 + Column 5); otherwise equal previous value of Column 6 * (1 + Column 5)
7 = Column 3 + additional discount
    2.0% = additional discount
8 = Column 6 * (1 - Column 7)
9 = Column 4 - Column 8
10 = Column 1 * Column 9

**Appx8347**

Attachment D.4.a. Calculation of private overcharges of ProQuad assuming no FDA approval and competitive entry of MMR-II in March 2009

| | 1 | 2 | 3 | ProQuad | | | 7 | Counterfactual | | | Overcharges | |
| | MMR-II List Price | Varivax List Price | | 4 | 5 | 6 | | 8 | 9 | 10 | 11 | 12 |
| Month | MMR-II List Price | Varivax List Price | Doses | List Price | Discount | Net Price | List Price Markup | MMR-II List Price | Varivax List Price | MMR-II and Varivax Net Price | Per Dose | Total |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| 9/1/2005 | $38.12 | $66.06 | 16,209 | $114.60 | 24.8% | $86.19 | 110% | $38.12 | $66.06 | $78.36 | $7.84 | $127,031 |
| 10/1/2005 | $38.12 | $66.06 | 14,405 | $114.60 | 24.8% | $86.19 | 110% | $38.12 | $66.06 | $78.36 | $7.84 | $112,893 |
| 11/1/2005 | $38.12 | $66.06 | 18,654 | $114.60 | 24.8% | $86.19 | 110% | $38.12 | $66.06 | $78.36 | $7.84 | $146,192 |
| 12/1/2005 | $38.12 | $66.06 | 14,888 | $114.60 | 24.8% | $86.19 | 110% | $38.12 | $66.06 | $78.36 | $7.84 | $116,678 |
| 1/1/2006 | $38.12 | $66.06 | 29,739 | $114.60 | 24.8% | $86.19 | 110% | $38.12 | $66.06 | $78.36 | $7.84 | $233,066 |
| 2/1/2006 | $38.12 | $66.06 | 35,455 | $114.60 | 24.8% | $86.19 | 110% | $38.12 | $66.06 | $78.36 | $7.84 | $277,863 |
| 3/1/2006 | $38.12 | $66.06 | 37,037 | $114.60 | 24.8% | $86.19 | 110% | $38.12 | $66.06 | $78.36 | $7.84 | $290,261 |
| 4/1/2006 | $38.12 | $66.06 | 40,285 | $114.60 | 24.8% | $86.19 | 110% | $38.12 | $66.06 | $78.36 | $7.84 | $315,716 |
| 5/1/2006 | $38.12 | $66.06 | 61,327 | $114.60 | 24.8% | $86.19 | 110% | $38.12 | $66.06 | $78.36 | $7.84 | $480,623 |
| 6/1/2006 | $38.12 | $66.06 | 55,741 | $114.60 | 24.8% | $86.19 | 110% | $38.12 | $66.06 | $78.36 | $7.84 | $436,845 |
| 7/1/2006 | $38.12 | $66.06 | 86,935 | $114.60 | 24.8% | $86.19 | 110% | $38.12 | $66.06 | $78.36 | $7.84 | $681,314 |
| 8/1/2006 | $38.12 | $66.06 | 138,859 | $114.60 | 24.8% | $86.19 | 110% | $38.12 | $66.06 | $78.36 | $7.84 | $1,088,245 |
| 9/1/2006 | $38.12 | $66.06 | 122,817 | $114.60 | 24.8% | $86.19 | 110% | $38.12 | $66.06 | $78.36 | $7.84 | $962,523 |
| 10/1/2006 | $38.12 | $66.06 | 87,113 | $114.60 | 24.8% | $86.19 | 110% | $38.12 | $66.06 | $78.36 | $7.84 | $682,709 |
| 11/1/2006 | $38.12 | $66.06 | 38,025 | $114.60 | 24.8% | $86.19 | 110% | $38.12 | $66.06 | $78.36 | $7.84 | $298,004 |
| 12/1/2006 | $38.12 | $66.06 | 251,924 | $114.60 | 24.8% | $86.19 | 110% | $38.12 | $66.06 | $78.36 | $7.84 | $1,974,342 |
| 1/1/2007 | $38.12 | $66.06 | 134,522 | $114.60 | 24.8% | $86.19 | 110% | $38.12 | $66.06 | $78.36 | $7.84 | $1,054,256 |
| 2/1/2007 | $38.12 | $66.06 | 121,212 | $114.60 | 24.8% | $86.19 | 110% | $38.12 | $66.06 | $78.36 | $7.84 | $949,945 |
| 3/1/2007 | $38.12 | $66.06 | 157,350 | $114.60 | 24.8% | $86.19 | 110% | $38.12 | $66.06 | $78.36 | $7.84 | $1,233,160 |
| 4/1/2007 | $38.12 | $66.06 | 193,374 | $114.60 | 24.8% | $86.19 | 110% | $38.12 | $66.06 | $78.36 | $7.84 | $1,515,482 |
| 5/1/2007 | $38.12 | $66.06 | 90,201 | $114.60 | 24.8% | $86.19 | 110% | $38.12 | $66.06 | $78.36 | $7.84 | $706,910 |
| 6/1/2007 | $42.59 | $73.81 | 124,604 | $121.37 | 24.8% | $91.28 | 104% | $42.59 | $73.81 | $87.55 | $3.74 | $465,772 |
| 7/1/2007 | $42.59 | $73.81 | 173,175 | $121.37 | 24.8% | $91.28 | 104% | $42.59 | $73.81 | $87.55 | $3.74 | $647,331 |
| 8/1/2007 | $42.59 | $73.81 | 105,577 | $121.37 | 24.8% | $91.28 | 104% | $42.59 | $73.81 | $87.55 | $3.74 | $394,649 |
| 9/1/2007 | $42.59 | $73.81 | 34,553 | $121.37 | 24.8% | $91.28 | 104% | $42.59 | $73.81 | $87.55 | $3.74 | $129,158 |
| 10/1/2007 | $42.59 | $73.81 | 23,773 | $121.37 | 24.8% | $91.28 | 104% | $42.59 | $73.81 | $87.55 | $3.74 | $88,864 |
| 11/1/2007 | $42.59 | $73.81 | 9,310 | $121.37 | 24.8% | $91.28 | 104% | $42.59 | $73.81 | $87.55 | $3.74 | $34,801 |
| 12/1/2007 | $42.59 | $73.81 | 16,947 | $121.37 | 24.8% | $91.28 | 104% | $42.59 | $73.81 | $87.55 | $3.74 | $63,348 |
| 1/1/2008 | $42.59 | $73.81 | 10,910 | $121.37 | 24.8% | $91.28 | 104% | $42.59 | $73.81 | $87.55 | $3.74 | $40,782 |
| 2/1/2008 | $42.59 | $73.81 | 12,026 | $121.37 | 24.8% | $91.28 | 104% | $42.59 | $73.81 | $87.55 | $3.74 | $44,953 |
| 3/1/2008 | $42.59 | $73.81 | 56,891 | $121.37 | 24.8% | $91.28 | 104% | $42.59 | $73.81 | $87.55 | $3.74 | $212,660 |
| 4/1/2008 | $42.59 | $73.81 | -468 | $121.37 | 24.8% | $91.28 | 104% | $42.59 | $73.81 | $87.55 | $3.74 | -$1,749 |
| 5/1/2008 | $42.59 | $73.81 | -602 | $121.37 | 24.8% | $91.28 | 104% | $42.59 | $73.81 | $87.55 | $3.74 | -$2,250 |
| 6/1/2008 | $42.59 | $73.81 | -688 | $121.37 | 24.8% | $91.28 | 104% | $42.59 | $73.81 | $87.55 | $3.74 | -$2,572 |

Attachment D.4.a. Calculation of private overcharges of ProQuad assuming no FDA approval and competitive entry of MMR-II in March 2009

| | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | ProQuad | | | | | Counterfactual | | Overcharges | |
| Month | MMR-II List Price | Varivax List Price | Doses | List Price | Discount | Net Price | List Price Markup | MMR-II List Price | Varivax List Price | MMR-II and Varivax Net Price | Per Dose | Total |
| 7/1/2008 | $42.59 | $73.81 | -850 | $121.37 | 24.8% | $91.28 | 104% | $42.59 | $73.81 | $87.55 | $3.74 | -$3,177 |
| 8/1/2008 | $42.59 | $73.81 | -740 | $121.37 | 24.8% | $91.28 | 104% | $42.59 | $73.81 | $87.55 | $3.74 | -$2,766 |
| 9/1/2008 | $42.59 | $73.81 | -930 | $121.37 | 24.8% | $91.28 | 104% | $42.59 | $73.81 | $87.55 | $3.74 | -$3,476 |
| 10/1/2008 | $44.29 | $76.76 | -1,094 | $121.37 | 24.8% | $91.28 | 100% | $44.29 | $76.76 | $91.04 | $0.24 | -$263 |
| 11/1/2008 | $44.29 | $76.76 | -1,517 | $121.37 | 24.8% | $91.28 | 100% | $44.29 | $76.76 | $91.04 | $0.24 | -$365 |
| 12/1/2008 | $44.29 | $76.76 | -1,305 | $121.37 | 24.8% | $91.28 | 100% | $44.29 | $76.76 | $91.04 | $0.24 | -$314 |
| 1/1/2009 | $44.29 | $76.76 | -402 | $121.37 | 24.8% | $91.28 | 100% | $44.29 | $76.76 | $91.04 | $0.24 | -$97 |
| 2/1/2009 | $44.29 | $76.76 | -6,059 | $121.37 | 24.8% | $91.28 | 100% | $44.29 | $76.76 | $91.04 | $0.24 | -$1,458 |
| 3/1/2009 | $44.56 | $79.83 | -5,996 | $123.65 | 24.8% | $93.00 | 99% | $44.29 | $79.83 | $93.35 | $0.00 | $0 |
| 4/1/2009 | $44.56 | $79.83 | -2,535 | $123.65 | 24.8% | $93.00 | 99% | $44.29 | $79.83 | $93.35 | $0.00 | $0 |
| 5/1/2009 | $46.06 | $79.83 | -623 | $125.90 | 24.8% | $94.69 | 100% | $44.29 | $79.83 | $93.35 | $1.34 | -$834 |
| 6/1/2009 | $46.06 | $79.83 | -1,053 | $125.90 | 24.8% | $94.69 | 100% | $44.29 | $79.83 | $93.35 | $1.34 | -$1,410 |
| 7/1/2009 | $46.06 | $79.83 | -1,170 | $125.90 | 24.8% | $94.69 | 100% | $44.29 | $79.83 | $93.35 | $1.34 | -$1,566 |
| 8/1/2009 | $46.06 | $79.83 | -593 | $125.90 | 24.8% | $94.69 | 100% | $44.29 | $79.83 | $93.35 | $1.34 | -$794 |
| 9/1/2009 | $46.06 | $79.83 | -662 | $125.90 | 24.8% | $94.69 | 100% | $44.29 | $79.83 | $93.35 | $1.34 | -$886 |
| 10/1/2009 | $46.06 | $79.83 | -16 | $125.90 | 24.8% | $94.69 | 100% | $44.29 | $79.83 | $93.35 | $1.34 | -$21 |
| 11/1/2009 | $46.06 | $79.83 | -631 | $125.90 | 24.8% | $94.69 | 100% | $44.29 | $79.83 | $93.35 | $1.34 | -$845 |
| 12/1/2009 | $46.06 | $79.83 | -28 | $125.90 | 24.8% | $94.69 | 100% | $44.29 | $79.83 | $93.35 | $1.34 | -$37 |
| 1/1/2010 | $46.06 | $79.83 | 0 | $125.90 | 24.8% | $94.69 | 100% | $44.29 | $79.83 | $93.35 | $1.34 | $0 |
| 2/1/2010 | $46.06 | $79.83 | -10 | $125.90 | 24.8% | $94.69 | 100% | $44.29 | $79.83 | $93.35 | $1.34 | -$13 |
| 3/1/2010 | $46.06 | $79.83 | 0 | $125.90 | 24.8% | $94.69 | 100% | $44.29 | $79.83 | $93.35 | $1.34 | $0 |
| 4/1/2010 | $46.06 | $79.83 | 0 | $125.90 | 24.8% | $94.69 | 100% | $44.29 | $79.83 | $93.35 | $1.34 | $0 |
| 5/1/2010 | $46.06 | $79.83 | 190,790 | $125.90 | 24.8% | $94.69 | 100% | $44.26 | $79.83 | $93.33 | $1.36 | $259,715 |
| 6/1/2010 | $46.06 | $79.83 | 87,994 | $125.90 | 24.8% | $94.69 | 100% | $44.26 | $79.83 | $93.33 | $1.36 | $119,783 |
| 7/1/2010 | $46.06 | $79.83 | 80,429 | $125.90 | 24.8% | $94.69 | 100% | $44.26 | $79.83 | $93.33 | $1.36 | $109,485 |
| 8/1/2010 | $46.06 | $79.83 | 95,513 | $125.90 | 24.8% | $94.69 | 100% | $44.26 | $79.83 | $93.33 | $1.36 | $130,018 |
| 9/1/2010 | $46.06 | $79.83 | 76,920 | $125.90 | 24.8% | $94.69 | 100% | $44.26 | $79.83 | $93.33 | $1.36 | $104,708 |
| 10/1/2010 | $46.06 | $79.83 | 72,180 | $125.90 | 24.8% | $94.69 | 100% | $44.26 | $79.83 | $93.33 | $1.36 | $98,256 |
| 11/1/2010 | $47.91 | $83.02 | 54,045 | $130.93 | 24.8% | $98.47 | 100% | $44.26 | $83.02 | $95.73 | $2.75 | $148,362 |
| 12/1/2010 | $47.91 | $83.02 | 55,034 | $130.93 | 24.8% | $98.47 | 100% | $44.26 | $83.02 | $95.73 | $2.75 | $151,077 |
| 1/1/2011 | $47.91 | $83.02 | 65,392 | $130.93 | 24.8% | $98.47 | 100% | $44.26 | $83.02 | $95.73 | $2.75 | $179,511 |
| 2/1/2011 | $47.91 | $83.02 | 107,240 | $130.93 | 24.8% | $98.47 | 100% | $44.26 | $83.02 | $95.73 | $2.75 | $294,390 |
| 3/1/2011 | $47.91 | $83.02 | 54,520 | $130.93 | 24.8% | $98.47 | 100% | $44.29 | $83.02 | $95.75 | $2.72 | $148,458 |
| 4/1/2011 | $47.91 | $83.02 | -110 | $130.93 | 24.8% | $98.47 | 100% | $44.29 | $83.02 | $95.75 | $2.72 | -$300 |

Appx8349

Attachment D.4.a. Calculation of private overcharges of ProQuad assuming no FDA approval and competitive entry of MMR-II in March 2009

| | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | ProQuad | ProQuad | ProQuad | | Counterfactual | Counterfactual | Counterfactual | Overcharges | Overcharges |
| Month | MMR-II List Price | Varivax List Price | Doses | ProQuad List Price | Discount | Net Price | List Price Markup | MMR-II List Price | Varivax List Price | MMR-II and Varivax Net Price | Per Dose | Total |
| 5/1/2011 | $47.91 | $83.02 | -90 | $130.93 | 24.8% | $98.47 | 100% | $44.29 | $83.02 | $95.75 | $2.72 | -$245 |
| 6/1/2011 | $47.91 | $83.02 | -62 | $130.93 | 24.8% | $98.47 | 100% | $44.29 | $83.02 | $95.75 | $2.72 | -$169 |
| 7/1/2011 | $47.91 | $83.02 | 0 | $130.93 | 24.8% | $98.47 | 100% | $44.29 | $83.02 | $95.75 | $2.72 | $0 |
| 8/1/2011 | $47.91 | $83.02 | -2,384 | $130.93 | 24.8% | $98.47 | 100% | $44.29 | $83.02 | $95.75 | $2.72 | -$6,492 |
| 9/1/2011 | $47.91 | $83.02 | -4,237 | $130.93 | 24.8% | $98.47 | 100% | $44.29 | $83.02 | $95.75 | $2.72 | -$11,537 |
| 10/1/2011 | $47.91 | $83.02 | -765 | $130.93 | 24.8% | $98.47 | 100% | $44.29 | $83.02 | $95.75 | $2.72 | -$2,083 |
| 11/1/2011 | $47.91 | $83.02 | -1,416 | $130.93 | 24.8% | $98.47 | 100% | $44.29 | $83.02 | $95.75 | $2.72 | -$3,856 |
| 12/1/2011 | $47.91 | $83.02 | -1,546 | $130.93 | 24.8% | $98.47 | 100% | $44.29 | $83.02 | $95.75 | $2.72 | -$4,210 |
| 1/1/2012 | $47.91 | $83.02 | -284 | $130.93 | 24.8% | $98.47 | 100% | $44.29 | $83.02 | $95.75 | $2.72 | -$773 |
| 2/1/2012 | $49.82 | $86.35 | -1,051 | $130.93 | 24.8% | $98.47 | 96% | $44.88 | $86.35 | $98.70 | $0.00 | $0 |
| 3/1/2012 | $49.82 | $86.35 | -372 | $130.93 | 24.8% | $98.47 | 96% | $44.88 | $86.35 | $98.70 | $0.00 | $0 |
| 4/1/2012 | $49.82 | $86.35 | -133 | $130.93 | 24.8% | $98.47 | 96% | $44.88 | $86.35 | $98.70 | $0.00 | $0 |
| 5/1/2012 | $49.82 | $86.35 | -1,523 | $130.93 | 24.8% | $98.47 | 96% | $44.88 | $86.35 | $98.70 | $0.00 | $0 |
| 6/1/2012 | $49.82 | $86.35 | -3,892 | $130.93 | 24.8% | $98.47 | 96% | $44.88 | $86.35 | $98.70 | $0.00 | $0 |
| 7/1/2012 | $49.82 | $86.35 | -2,236 | $130.93 | 24.8% | $98.47 | 96% | $44.88 | $86.35 | $98.70 | $0.00 | $0 |
| 8/1/2012 | $49.82 | $86.35 | -852 | $130.93 | 24.8% | $98.47 | 96% | $44.88 | $86.35 | $98.70 | $0.00 | $0 |
| 9/1/2012 | $49.82 | $86.35 | -1,085 | $130.93 | 24.8% | $98.47 | 96% | $44.88 | $86.35 | $98.70 | $0.00 | $0 |
| 10/1/2012 | $49.82 | $86.35 | 182,615 | $130.93 | 24.8% | $98.47 | 96% | $44.88 | $86.35 | $98.70 | $0.00 | |
| 11/1/2012 | $49.82 | $86.35 | 76,168 | $139.36 | 24.8% | $104.81 | 102% | $44.88 | $86.35 | $98.70 | $6.12 | $466,084 |
| 12/1/2012 | $49.82 | $86.35 | 50,059 | $139.36 | 24.8% | $104.81 | 102% | $44.88 | $86.35 | $98.70 | $6.12 | $306,319 |
| 1/1/2013 | $51.82 | $89.80 | 74,170 | $139.36 | 24.8% | $104.81 | 102% | $44.88 | $86.35 | $98.70 | $6.12 | $453,858 |
| 2/1/2013 | $51.82 | $89.80 | 66,523 | $139.36 | 24.8% | $104.81 | 102% | $44.88 | $86.35 | $98.70 | $6.12 | $407,065 |
| 3/1/2013 | $51.82 | $89.80 | 75,617 | $141.52 | 24.8% | $106.44 | 100% | $45.48 | $89.80 | $101.74 | $4.70 | $355,061 |
| 4/1/2013 | $51.82 | $89.80 | 99,314 | $141.62 | 24.8% | $106.51 | 100% | $45.48 | $89.80 | $101.75 | $4.77 | $473,253 |
| 5/1/2013 | $51.82 | $89.80 | 95,455 | $141.62 | 24.8% | $106.51 | 100% | $45.48 | $89.80 | $101.75 | $4.77 | $454,864 |
| 6/1/2013 | $51.82 | $89.80 | 106,146 | $141.62 | 24.8% | $106.51 | 100% | $45.48 | $89.80 | $101.75 | $4.77 | $505,810 |
| 7/1/2013 | $51.82 | $89.80 | 114,964 | $141.62 | 24.8% | $106.51 | 100% | $45.48 | $89.80 | $101.75 | $4.77 | $547,829 |
| 8/1/2013 | $53.89 | $93.39 | 134,773 | $147.28 | 24.8% | $110.77 | 100% | $45.48 | $93.39 | $104.45 | $6.32 | $852,353 |
| 9/1/2013 | $53.89 | $93.39 | 96,059 | $147.28 | 24.8% | $110.77 | 100% | $45.48 | $93.39 | $104.45 | $6.32 | $607,512 |
| 10/1/2013 | $53.89 | $93.39 | 94,204 | $147.28 | 24.8% | $110.77 | 100% | $45.48 | $93.39 | $104.45 | $6.32 | $595,780 |
| 11/1/2013 | $53.89 | $93.39 | 71,024 | $147.28 | 24.8% | $110.77 | 100% | $45.48 | $93.39 | $104.45 | $6.32 | $449,181 |
| 12/1/2013 | $53.89 | $93.39 | 64,882 | $147.28 | 24.8% | $110.77 | 100% | $45.48 | $93.39 | $104.45 | $6.32 | $410,337 |
| 1/1/2014 | $53.89 | $93.39 | 65,540 | $147.28 | 24.8% | $110.77 | 100% | $45.48 | $93.39 | $104.45 | $6.32 | $414,499 |
| 2/1/2014 | $53.89 | $93.39 | 69,447 | $154.64 | 24.8% | $116.31 | 105% | $45.48 | $93.39 | $104.45 | $11.86 | $823,846 |

Attachment D.4.a. Calculation of private overcharges of ProQuad assuming no FDA approval and competitive entry of MMR-II in March 2009

| | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | ProQuad | | | | Counterfactual | | Overcharges | |
| Month | MMR-II List Price | Varivax List Price | Doses | List Price | Discount | Net Price | List Price Markup | MMR-II List Price | Varivax List Price | MMR-II and Varivax Net Price | Per Dose | Total |
| 3/1/2014 | $53.89 | $93.39 | 78,777 | $154.64 | 24.8% | $116.31 | 105% | $45.48 | $93.39 | $104.45 | $11.86 | $934,527 |
| 4/1/2014 | $53.89 | $93.39 | 105,127 | $154.64 | 24.8% | $116.31 | 105% | $45.48 | $93.39 | $104.45 | $11.86 | $1,247,116 |
| 5/1/2014 | $53.89 | $93.39 | 95,412 | $154.64 | 24.8% | $116.31 | 105% | $45.48 | $93.39 | $104.45 | $11.86 | $1,131,868 |
| 6/1/2014 | $53.89 | $93.39 | 98,009 | $154.64 | 24.8% | $116.31 | 105% | $45.48 | $93.39 | $104.45 | $11.86 | $1,162,670 |
| 7/1/2014 | $53.89 | $93.39 | 257,330 | $154.64 | 24.8% | $116.31 | 105% | $45.48 | $93.39 | $104.45 | $11.86 | $3,052,692 |
| 8/1/2014 | $53.89 | $93.39 | 285,220 | $154.64 | 24.8% | $116.31 | 105% | $45.48 | $93.39 | $104.45 | $11.86 | $3,383,550 |
| 9/1/2014 | $53.89 | $93.39 | 200,245 | $154.64 | 24.8% | $116.31 | 105% | $45.48 | $93.39 | $104.45 | $11.86 | $2,375,490 |
| 10/1/2014 | $53.89 | $93.39 | 167,479 | $154.64 | 24.8% | $116.31 | 105% | $45.48 | $93.39 | $104.45 | $11.86 | $1,986,789 |
| 11/1/2014 | $53.89 | $93.39 | 77,666 | $154.64 | 24.8% | $116.31 | 105% | $45.48 | $93.39 | $104.45 | $11.86 | $921,348 |
| 12/1/2014 | $53.89 | $93.39 | 80,083 | $154.64 | 24.8% | $116.31 | 105% | $45.48 | $93.39 | $104.45 | $11.86 | $950,020 |
| 1/1/2015 | $53.89 | $93.39 | 74,736 | $154.64 | 24.8% | $116.31 | 105% | $45.48 | $93.39 | $104.45 | $11.86 | $886,589 |
| 2/1/2015 | $53.89 | $93.39 | 94,289 | $154.64 | 24.8% | $116.31 | 105% | $45.48 | $93.39 | $104.45 | $11.86 | $1,118,545 |
| 3/1/2015 | $57.66 | $99.93 | 93,300 | $165.47 | 24.8% | $124.45 | 105% | $45.48 | $99.93 | $109.36 | $15.09 | $1,407,713 |
| 4/1/2015 | $57.66 | $99.93 | 118,853 | $165.47 | 24.8% | $124.45 | 105% | $45.48 | $99.93 | $109.36 | $15.09 | $1,793,257 |
| 5/1/2015 | $57.66 | $99.93 | 95,038 | $165.47 | 24.8% | $124.45 | 105% | $45.48 | $99.93 | $109.36 | $15.09 | $1,433,936 |
| 6/1/2015 | $57.66 | $99.93 | 99,352 | $165.47 | 24.8% | $124.45 | 105% | $45.48 | $99.93 | $109.36 | $15.09 | $1,499,025 |
| 7/1/2015 | $57.66 | $99.93 | 135,679 | $165.47 | 24.8% | $124.45 | 105% | $45.48 | $99.93 | $109.36 | $15.09 | $2,047,120 |
| 8/1/2015 | $57.66 | $99.93 | 152,518 | $165.47 | 24.8% | $124.45 | 105% | $45.48 | $99.93 | $109.36 | $15.09 | $2,301,195 |
| 9/1/2015 | $57.66 | $99.93 | 104,472 | $165.47 | 24.8% | $124.45 | 105% | $45.48 | $99.93 | $109.36 | $15.09 | $1,576,276 |
| 10/1/2015 | $57.66 | $99.93 | 109,200 | $165.47 | 24.8% | $124.45 | 105% | $45.48 | $99.93 | $109.36 | $15.09 | $1,647,612 |
| 11/1/2015 | $57.66 | $99.93 | 98,330 | $165.47 | 24.8% | $124.45 | 105% | $45.48 | $99.93 | $109.36 | $15.09 | $1,483,605 |
| 12/1/2015 | $60.54 | $106.92 | 75,057 | $177.05 | 24.8% | $133.16 | 106% | $46.09 | $106.92 | $115.08 | $18.08 | $1,357,299 |
| Total | | | | | | | | | | | | $61,317,473 |

Attachment D.4.a. Calculation of private overcharges of ProQuad assuming no FDA approval and competitive entry of MMR-II in March 2009

| | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | ProQuad | | | | Counterfactual | | Overcharges | |
| | MMR-II List | Varivax List | | | | | List Price | MMR-II | Varivax | MMR-II and | | |
| Month | Price | Price | Doses | List Price | Discount | Net Price | Markup | List Price | List Price | Varivax Net Price | Per Dose | Total |

Notes

1-2 CDC Price Lists (2005 values are set equal to the first value from 2006)

3 Merck Transactions Data

4 CDC Price Lists (2005 values are set equal to the first value from 2006)

5 = 100% - (sales at net price / sales at list price) - all sales data from Merck Transactions Data

Because ProQuad sales stopped for periods, I calculate a single discount for the full time period using all data

6 = Column 4 * (1 - Column 5)

7 = Column 4 / (Column 1 + Column 2)

8 Before March 2009: Column 1

From March 2009 on: Attachment D.3.a Column 6

9 = Column 2

10 = (Column 8 + Column 9) * (1 - Column 5)

11 = Column 6 - Column 10 (if negative, value is set to $0.00)

12 = Column 3 * Column 11

Attachment D.4.b. Calculation of private overcharges of ProQuad assuming no FDA approval and competitive entry of MMR-II in January 2014

| | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | ProQuad | | | | Counterfactual | | Overcharges | |
| Month | MMR-II List Price | Varivax List Price | Doses | List Price | Discount | Net Price | List Price Markup | MMR-II List Price | Varivax List Price | MMR-II and Varivax Net Price | Per Dose | Total |
| 9/1/2005 | $38.12 | $66.06 | 16,209 | $114.60 | 24.8% | $86.19 | 110% | $38.12 | $66.06 | $78.36 | $7.84 | $127,031 |
| 10/1/2005 | $38.12 | $66.06 | 14,405 | $114.60 | 24.8% | $86.19 | 110% | $38.12 | $66.06 | $78.36 | $7.84 | $112,893 |
| 11/1/2005 | $38.12 | $66.06 | 18,654 | $114.60 | 24.8% | $86.19 | 110% | $38.12 | $66.06 | $78.36 | $7.84 | $146,192 |
| 12/1/2005 | $38.12 | $66.06 | 14,888 | $114.60 | 24.8% | $86.19 | 110% | $38.12 | $66.06 | $78.36 | $7.84 | $116,678 |
| 1/1/2006 | $38.12 | $66.06 | 29,739 | $114.60 | 24.8% | $86.19 | 110% | $38.12 | $66.06 | $78.36 | $7.84 | $233,066 |
| 2/1/2006 | $38.12 | $66.06 | 35,455 | $114.60 | 24.8% | $86.19 | 110% | $38.12 | $66.06 | $78.36 | $7.84 | $277,863 |
| 3/1/2006 | $38.12 | $66.06 | 37,037 | $114.60 | 24.8% | $86.19 | 110% | $38.12 | $66.06 | $78.36 | $7.84 | $290,261 |
| 4/1/2006 | $38.12 | $66.06 | 40,285 | $114.60 | 24.8% | $86.19 | 110% | $38.12 | $66.06 | $78.36 | $7.84 | $315,716 |
| 5/1/2006 | $38.12 | $66.06 | 61,327 | $114.60 | 24.8% | $86.19 | 110% | $38.12 | $66.06 | $78.36 | $7.84 | $480,623 |
| 6/1/2006 | $38.12 | $66.06 | 55,741 | $114.60 | 24.8% | $86.19 | 110% | $38.12 | $66.06 | $78.36 | $7.84 | $436,845 |
| 7/1/2006 | $38.12 | $66.06 | 86,935 | $114.60 | 24.8% | $86.19 | 110% | $38.12 | $66.06 | $78.36 | $7.84 | $681,314 |
| 8/1/2006 | $38.12 | $66.06 | 138,859 | $114.60 | 24.8% | $86.19 | 110% | $38.12 | $66.06 | $78.36 | $7.84 | $1,088,245 |
| 9/1/2006 | $38.12 | $66.06 | 122,817 | $114.60 | 24.8% | $86.19 | 110% | $38.12 | $66.06 | $78.36 | $7.84 | $962,523 |
| 10/1/2006 | $38.12 | $66.06 | 87,113 | $114.60 | 24.8% | $86.19 | 110% | $38.12 | $66.06 | $78.36 | $7.84 | $682,709 |
| 11/1/2006 | $38.12 | $66.06 | 38,025 | $114.60 | 24.8% | $86.19 | 110% | $38.12 | $66.06 | $78.36 | $7.84 | $298,004 |
| 12/1/2006 | $38.12 | $66.06 | 251,924 | $114.60 | 24.8% | $86.19 | 110% | $38.12 | $66.06 | $78.36 | $7.84 | $1,974,342 |
| 1/1/2007 | $38.12 | $66.06 | 134,522 | $114.60 | 24.8% | $86.19 | 110% | $38.12 | $66.06 | $78.36 | $7.84 | $1,054,256 |
| 2/1/2007 | $38.12 | $66.06 | 121,212 | $114.60 | 24.8% | $86.19 | 110% | $38.12 | $66.06 | $78.36 | $7.84 | $949,945 |
| 3/1/2007 | $38.12 | $66.06 | 157,350 | $114.60 | 24.8% | $86.19 | 110% | $38.12 | $66.06 | $78.36 | $7.84 | $1,233,160 |
| 4/1/2007 | $38.12 | $66.06 | 193,374 | $114.60 | 24.8% | $86.19 | 110% | $38.12 | $66.06 | $78.36 | $7.84 | $1,515,482 |
| 5/1/2007 | $38.12 | $66.06 | 90,201 | $114.60 | 24.8% | $86.19 | 110% | $38.12 | $66.06 | $78.36 | $7.84 | $706,910 |
| 6/1/2007 | $42.59 | $73.81 | 124,604 | $121.37 | 24.8% | $91.28 | 104% | $42.59 | $73.81 | $87.55 | $3.74 | $465,772 |
| 7/1/2007 | $42.59 | $73.81 | 173,175 | $121.37 | 24.8% | $91.28 | 104% | $42.59 | $73.81 | $87.55 | $3.74 | $647,331 |
| 8/1/2007 | $42.59 | $73.81 | 105,577 | $121.37 | 24.8% | $91.28 | 104% | $42.59 | $73.81 | $87.55 | $3.74 | $394,649 |
| 9/1/2007 | $42.59 | $73.81 | 34,553 | $121.37 | 24.8% | $91.28 | 104% | $42.59 | $73.81 | $87.55 | $3.74 | $129,158 |
| 10/1/2007 | $42.59 | $73.81 | 23,773 | $121.37 | 24.8% | $91.28 | 104% | $42.59 | $73.81 | $87.55 | $3.74 | $88,864 |
| 11/1/2007 | $42.59 | $73.81 | 9,310 | $121.37 | 24.8% | $91.28 | 104% | $42.59 | $73.81 | $87.55 | $3.74 | $34,801 |
| 12/1/2007 | $42.59 | $73.81 | 16,947 | $121.37 | 24.8% | $91.28 | 104% | $42.59 | $73.81 | $87.55 | $3.74 | $63,348 |
| 1/1/2008 | $42.59 | $73.81 | 10,910 | $121.37 | 24.8% | $91.28 | 104% | $42.59 | $73.81 | $87.55 | $3.74 | $40,782 |
| 2/1/2008 | $42.59 | $73.81 | 12,026 | $121.37 | 24.8% | $91.28 | 104% | $42.59 | $73.81 | $87.55 | $3.74 | $44,953 |
| 3/1/2008 | $42.59 | $73.81 | 56,891 | $121.37 | 24.8% | $91.28 | 104% | $42.59 | $73.81 | $87.55 | $3.74 | $212,660 |
| 4/1/2008 | $42.59 | $73.81 | -468 | $121.37 | 24.8% | $91.28 | 104% | $42.59 | $73.81 | $87.55 | $3.74 | -$1,749 |
| 5/1/2008 | $42.59 | $73.81 | -602 | $121.37 | 24.8% | $91.28 | 104% | $42.59 | $73.81 | $87.55 | $3.74 | -$2,250 |
| 6/1/2008 | $42.59 | $73.81 | -688 | $121.37 | 24.8% | $91.28 | 104% | $42.59 | $73.81 | $87.55 | $3.74 | -$2,572 |

Appx8353

Attachment D.4.b. Calculation of private overcharges of ProQuad assuming no FDA approval and competitive entry of MMR-II in January 2014

| | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | ProQuad | | | | Counterfactual | | | Overcharges | |
| Month | MMR-II List Price | Varivax List Price | Doses | List Price | Discount | Net Price | List Price Markup | MMR-II List Price | Varivax List Price | MMR-II and Varivax Net Price | Per Dose | Total |
| 7/1/2008 | $42.59 | $73.81 | -850 | $121.37 | 24.8% | $91.28 | 104% | $42.59 | $73.81 | $87.55 | $3.74 | -$3,177 |
| 8/1/2008 | $42.59 | $73.81 | -740 | $121.37 | 24.8% | $91.28 | 104% | $42.59 | $73.81 | $87.55 | $3.74 | -$2,766 |
| 9/1/2008 | $42.59 | $73.81 | -930 | $121.37 | 24.8% | $91.28 | 104% | $42.59 | $73.81 | $87.55 | $3.74 | -$3,476 |
| 10/1/2008 | $44.29 | $76.76 | -1,094 | $121.37 | 24.8% | $91.28 | 100% | $44.29 | $76.76 | $91.04 | $0.24 | -$263 |
| 11/1/2008 | $44.29 | $76.76 | -1,517 | $121.37 | 24.8% | $91.28 | 100% | $44.29 | $76.76 | $91.04 | $0.24 | -$365 |
| 12/1/2008 | $44.29 | $76.76 | -1,305 | $121.37 | 24.8% | $91.28 | 100% | $44.29 | $76.76 | $91.04 | $0.24 | -$314 |
| 1/1/2009 | $44.29 | $76.76 | -402 | $121.37 | 24.8% | $91.28 | 100% | $44.29 | $76.76 | $91.04 | $0.24 | -$97 |
| 2/1/2009 | $44.29 | $76.76 | -6,059 | $121.37 | 24.8% | $91.28 | 100% | $44.29 | $76.76 | $91.04 | $0.24 | -$1,458 |
| 3/1/2009 | $44.56 | $79.83 | -5,996 | $123.65 | 24.8% | $93.00 | 99% | $44.56 | $79.83 | $93.56 | $0.00 | $0 |
| 4/1/2009 | $44.56 | $79.83 | -2,535 | $123.65 | 24.8% | $93.00 | 99% | $44.56 | $79.83 | $93.56 | $0.00 | $0 |
| 5/1/2009 | $46.06 | $79.83 | -623 | $125.90 | 24.8% | $94.69 | 100% | $46.06 | $79.83 | $94.68 | $0.01 | -$5 |
| 6/1/2009 | $46.06 | $79.83 | -1,053 | $125.90 | 24.8% | $94.69 | 100% | $46.06 | $79.83 | $94.68 | $0.01 | -$8 |
| 7/1/2009 | $46.06 | $79.83 | -1,170 | $125.90 | 24.8% | $94.69 | 100% | $46.06 | $79.83 | $94.68 | $0.01 | -$9 |
| 8/1/2009 | $46.06 | $79.83 | -593 | $125.90 | 24.8% | $94.69 | 100% | $46.06 | $79.83 | $94.68 | $0.01 | -$4 |
| 9/1/2009 | $46.06 | $79.83 | -662 | $125.90 | 24.8% | $94.69 | 100% | $46.06 | $79.83 | $94.68 | $0.01 | -$5 |
| 10/1/2009 | $46.06 | $79.83 | -16 | $125.90 | 24.8% | $94.69 | 100% | $46.06 | $79.83 | $94.68 | $0.01 | $0 |
| 11/1/2009 | $46.06 | $79.83 | -631 | $125.90 | 24.8% | $94.69 | 100% | $46.06 | $79.83 | $94.68 | $0.01 | -$5 |
| 12/1/2009 | $46.06 | $79.83 | -28 | $125.90 | 24.8% | $94.69 | 100% | $46.06 | $79.83 | $94.68 | $0.01 | $0 |
| 1/1/2010 | $46.06 | $79.83 | 0 | $125.90 | 24.8% | $94.69 | 100% | $46.06 | $79.83 | $94.68 | $0.01 | $0 |
| 2/1/2010 | $46.06 | $79.83 | -10 | $125.90 | 24.8% | $94.69 | 100% | $46.06 | $79.83 | $94.68 | $0.01 | $0 |
| 3/1/2010 | $46.06 | $79.83 | 0 | $125.90 | 24.8% | $94.69 | 100% | $46.06 | $79.83 | $94.68 | $0.01 | $0 |
| 4/1/2010 | $46.06 | $79.83 | 0 | $125.90 | 24.8% | $94.69 | 100% | $46.06 | $79.83 | $94.68 | $0.01 | $0 |
| 5/1/2010 | $46.06 | $79.83 | 190,790 | $125.90 | 24.8% | $94.69 | 100% | $46.06 | $79.83 | $94.68 | $0.01 | $1,435 |
| 6/1/2010 | $46.06 | $79.83 | 87,994 | $125.90 | 24.8% | $94.69 | 100% | $46.06 | $79.83 | $94.68 | $0.01 | $662 |
| 7/1/2010 | $46.06 | $79.83 | 80,429 | $125.90 | 24.8% | $94.69 | 100% | $46.06 | $79.83 | $94.68 | $0.01 | $605 |
| 8/1/2010 | $46.06 | $79.83 | 95,513 | $125.90 | 24.8% | $94.69 | 100% | $46.06 | $79.83 | $94.68 | $0.01 | $718 |
| 9/1/2010 | $46.06 | $79.83 | 76,920 | $125.90 | 24.8% | $94.69 | 100% | $46.06 | $79.83 | $94.68 | $0.01 | $579 |
| 10/1/2010 | $46.06 | $79.83 | 72,180 | $125.90 | 24.8% | $94.69 | 100% | $46.06 | $79.83 | $94.68 | $0.01 | $543 |
| 11/1/2010 | $47.91 | $83.02 | 54,045 | $130.93 | 24.8% | $98.47 | 100% | $47.91 | $83.02 | $98.47 | $0.00 | $0 |
| 12/1/2010 | $47.91 | $83.02 | 55,034 | $130.93 | 24.8% | $98.47 | 100% | $47.91 | $83.02 | $98.47 | $0.00 | $0 |
| 1/1/2011 | $47.91 | $83.02 | 65,392 | $130.93 | 24.8% | $98.47 | 100% | $47.91 | $83.02 | $98.47 | $0.00 | $0 |
| 2/1/2011 | $47.91 | $83.02 | 107,240 | $130.93 | 24.8% | $98.47 | 100% | $47.91 | $83.02 | $98.47 | $0.00 | $0 |
| 3/1/2011 | $47.91 | $83.02 | 54,520 | $130.93 | 24.8% | $98.47 | 100% | $47.91 | $83.02 | $98.47 | $0.00 | $0 |
| 4/1/2011 | $47.91 | $83.02 | -110 | $130.93 | 24.8% | $98.47 | 100% | $47.91 | $83.02 | $98.47 | $0.00 | $0 |

Attachment D.4.b. Calculation of private overcharges of ProQuad assuming no FDA approval and competitive entry of MMR-II in January 2014

| | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | ProQuad | | | | Counterfactual | | | Overcharges | |
| Month | MMR-II List Price | Varivax List Price | Doses | List Price | Discount | Net Price | List Price Markup | MMR-II List Price | Varivax List Price | MMR-II and Varivax Net Price | Per Dose | Total |
| 5/1/2011 | $47.91 | $83.02 | -90 | $130.93 | 24.8% | $98.47 | 100% | $47.91 | $83.02 | $98.47 | $0.00 | $0 |
| 6/1/2011 | $47.91 | $83.02 | -62 | $130.93 | 24.8% | $98.47 | 100% | $47.91 | $83.02 | $98.47 | $0.00 | $0 |
| 7/1/2011 | $47.91 | $83.02 | 0 | $130.93 | 24.8% | $98.47 | 100% | $47.91 | $83.02 | $98.47 | $0.00 | $0 |
| 8/1/2011 | $47.91 | $83.02 | -2,384 | $130.93 | 24.8% | $98.47 | 100% | $47.91 | $83.02 | $98.47 | $0.00 | $0 |
| 9/1/2011 | $47.91 | $83.02 | -4,237 | $130.93 | 24.8% | $98.47 | 100% | $47.91 | $83.02 | $98.47 | $0.00 | $0 |
| 10/1/2011 | $47.91 | $83.02 | -765 | $130.93 | 24.8% | $98.47 | 100% | $47.91 | $83.02 | $98.47 | $0.00 | $0 |
| 11/1/2011 | $47.91 | $83.02 | -1,416 | $130.93 | 24.8% | $98.47 | 100% | $47.91 | $83.02 | $98.47 | $0.00 | $0 |
| 12/1/2011 | $47.91 | $83.02 | -1,546 | $130.93 | 24.8% | $98.47 | 100% | $47.91 | $83.02 | $98.47 | $0.00 | $0 |
| 1/1/2012 | $49.82 | $86.35 | -284 | $130.93 | 24.8% | $98.47 | 100% | $47.91 | $83.02 | $98.47 | $0.00 | $0 |
| 2/1/2012 | $49.82 | $86.35 | -1,051 | $130.93 | 24.8% | $98.47 | 96% | $49.82 | $86.35 | $102.41 | $0.00 | $0 |
| 3/1/2012 | $49.82 | $86.35 | -372 | $130.93 | 24.8% | $98.47 | 96% | $49.82 | $86.35 | $102.41 | $0.00 | $0 |
| 4/1/2012 | $49.82 | $86.35 | -133 | $130.93 | 24.8% | $98.47 | 96% | $49.82 | $86.35 | $102.41 | $0.00 | $0 |
| 5/1/2012 | $49.82 | $86.35 | -1,523 | $130.93 | 24.8% | $98.47 | 96% | $49.82 | $86.35 | $102.41 | $0.00 | $0 |
| 6/1/2012 | $49.82 | $86.35 | -3,892 | $130.93 | 24.8% | $98.47 | 96% | $49.82 | $86.35 | $102.41 | $0.00 | $0 |
| 7/1/2012 | $49.82 | $86.35 | -2,236 | $130.93 | 24.8% | $98.47 | 96% | $49.82 | $86.35 | $102.41 | $0.00 | $0 |
| 8/1/2012 | $49.82 | $86.35 | -852 | $130.93 | 24.8% | $98.47 | 96% | $49.82 | $86.35 | $102.41 | $0.00 | $0 |
| 9/1/2012 | $49.82 | $86.35 | -1,085 | $130.93 | 24.8% | $98.47 | 96% | $49.82 | $86.35 | $102.41 | $0.00 | $0 |
| 10/1/2012 | $49.82 | $86.35 | 182,615 | $130.93 | 24.8% | $98.47 | 96% | $49.82 | $86.35 | $102.41 | $0.00 | $0 |
| 11/1/2012 | $49.82 | $86.35 | 76,168 | $139.36 | 24.8% | $104.81 | 102% | $49.82 | $86.35 | $102.41 | $2.40 | $182,861 |
| 12/1/2012 | $49.82 | $86.35 | 50,059 | $139.36 | 24.8% | $104.81 | 102% | $49.82 | $86.35 | $102.41 | $2.40 | $120,179 |
| 1/1/2013 | $49.82 | $86.35 | 74,170 | $139.36 | 24.8% | $104.81 | 102% | $49.82 | $86.35 | $102.41 | $2.40 | $178,064 |
| 2/1/2013 | $49.82 | $86.35 | 66,523 | $139.36 | 24.8% | $104.81 | 102% | $49.82 | $86.35 | $102.41 | $2.40 | $159,705 |
| 3/1/2013 | $51.82 | $89.80 | 75,617 | $141.52 | 24.8% | $106.44 | 100% | $51.82 | $89.80 | $106.51 | $0.00 | $0 |
| 4/1/2013 | $51.82 | $89.80 | 99,314 | $141.62 | 24.8% | $106.51 | 100% | $51.82 | $89.80 | $106.51 | $0.00 | $0 |
| 5/1/2013 | $51.82 | $89.80 | 95,455 | $141.62 | 24.8% | $106.51 | 100% | $51.82 | $89.80 | $106.51 | $0.00 | $0 |
| 6/1/2013 | $51.82 | $89.80 | 106,146 | $141.62 | 24.8% | $106.51 | 100% | $51.82 | $89.80 | $106.51 | $0.00 | $0 |
| 7/1/2013 | $51.82 | $89.80 | 114,964 | $141.62 | 24.8% | $106.51 | 100% | $51.82 | $89.80 | $106.51 | $0.00 | $0 |
| 8/1/2013 | $53.89 | $93.39 | 134,773 | $147.28 | 24.8% | $110.77 | 100% | $53.89 | $93.39 | $110.77 | $0.00 | $0 |
| 9/1/2013 | $53.89 | $93.39 | 96,059 | $147.28 | 24.8% | $110.77 | 100% | $53.89 | $93.39 | $110.77 | $0.00 | $0 |
| 10/1/2013 | $53.89 | $93.39 | 94,204 | $147.28 | 24.8% | $110.77 | 100% | $53.89 | $93.39 | $110.77 | $0.00 | $0 |
| 11/1/2013 | $53.89 | $93.39 | 71,024 | $147.28 | 24.8% | $110.77 | 100% | $53.89 | $93.39 | $110.77 | $0.00 | $0 |
| 12/1/2013 | $53.89 | $93.39 | 64,882 | $147.28 | 24.8% | $110.77 | 100% | $53.89 | $93.39 | $110.77 | $0.00 | $0 |
| 1/1/2014 | $53.89 | $93.39 | 65,540 | $147.28 | 24.8% | $110.77 | 100% | $53.89 | $93.39 | $110.77 | $0.00 | $0 |
| 2/1/2014 | $53.89 | $93.39 | 69,447 | $154.64 | 24.8% | $116.31 | 105% | $53.89 | $93.39 | $110.77 | $5.54 | $384,638 |

Appx8355

Attachment D.4.b. Calculation of private overcharges of ProQuad assuming no FDA approval and competitive entry of MMR-II in January 2014

| | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | ProQuad | | | | Counterfactual | | | Overcharges | |
| Month | MMR-II List Price | Varivax List Price | Doses | List Price | Discount | Net Price | List Price Markup | MMR-II List Price | Varivax List Price | MMR-II and Varivax Net Price | Per Dose | Total |
| 3/1/2014 | $53.89 | $93.39 | 78,777 | $154.64 | 24.8% | $116.31 | 105% | $53.89 | $93.39 | $110.77 | $5.54 | $436,313 |
| 4/1/2014 | $53.89 | $93.39 | 105,127 | $154.64 | 24.8% | $116.31 | 105% | $53.89 | $93.39 | $110.77 | $5.54 | $582,255 |
| 5/1/2014 | $53.89 | $93.39 | 95,412 | $154.64 | 24.8% | $116.31 | 105% | $53.89 | $93.39 | $110.77 | $5.54 | $528,448 |
| 6/1/2014 | $53.89 | $93.39 | 98,009 | $154.64 | 24.8% | $116.31 | 105% | $53.89 | $93.39 | $110.77 | $5.54 | $542,828 |
| 7/1/2014 | $53.89 | $93.39 | 257,330 | $154.64 | 24.8% | $116.31 | 105% | $53.89 | $93.39 | $110.77 | $5.54 | $1,425,244 |
| 8/1/2014 | $53.89 | $93.39 | 285,220 | $154.64 | 24.8% | $116.31 | 105% | $53.89 | $93.39 | $110.77 | $5.54 | $1,579,715 |
| 9/1/2014 | $53.89 | $93.39 | 200,245 | $154.64 | 24.8% | $116.31 | 105% | $53.89 | $93.39 | $110.77 | $5.54 | $1,109,071 |
| 10/1/2014 | $53.89 | $93.39 | 167,479 | $154.64 | 24.8% | $116.31 | 105% | $53.89 | $93.39 | $110.77 | $5.54 | $927,594 |
| 11/1/2014 | $53.89 | $93.39 | 77,666 | $154.64 | 24.8% | $116.31 | 105% | $53.89 | $93.39 | $110.77 | $5.54 | $430,160 |
| 12/1/2014 | $53.89 | $93.39 | 80,083 | $154.64 | 24.8% | $116.31 | 105% | $53.89 | $93.39 | $110.77 | $5.54 | $443,547 |
| 1/1/2015 | $53.89 | $93.39 | 74,736 | $154.64 | 24.8% | $116.31 | 105% | $53.89 | $93.39 | $110.77 | $5.54 | $413,932 |
| 2/1/2015 | $53.89 | $93.39 | 94,289 | $154.64 | 24.8% | $116.31 | 105% | $53.89 | $93.39 | $110.77 | $5.54 | $522,228 |
| 3/1/2015 | $57.66 | $99.93 | 93,300 | $165.47 | 24.8% | $124.45 | 105% | $53.89 | $99.93 | $115.69 | $8.76 | $817,650 |
| 4/1/2015 | $57.66 | $99.93 | 118,853 | $165.47 | 24.8% | $124.45 | 105% | $53.89 | $99.93 | $115.69 | $8.76 | $1,041,587 |
| 5/1/2015 | $57.66 | $99.93 | 95,038 | $165.47 | 24.8% | $124.45 | 105% | $53.89 | $99.93 | $115.69 | $8.76 | $832,881 |
| 6/1/2015 | $57.66 | $99.93 | 99,352 | $165.47 | 24.8% | $124.45 | 105% | $53.89 | $99.93 | $115.69 | $8.76 | $870,687 |
| 7/1/2015 | $57.66 | $99.93 | 135,679 | $165.47 | 24.8% | $124.45 | 105% | $53.89 | $99.93 | $115.69 | $8.76 | $1,189,040 |
| 8/1/2015 | $57.66 | $99.93 | 152,518 | $165.47 | 24.8% | $124.45 | 105% | $53.89 | $99.93 | $115.69 | $8.76 | $1,336,616 |
| 9/1/2015 | $57.66 | $99.93 | 104,472 | $165.47 | 24.8% | $124.45 | 105% | $53.89 | $99.93 | $115.69 | $8.76 | $915,557 |
| 10/1/2015 | $57.66 | $99.93 | 109,200 | $165.47 | 24.8% | $124.45 | 105% | $53.89 | $99.93 | $115.69 | $8.76 | $956,992 |
| 11/1/2015 | $57.66 | $99.93 | 98,330 | $165.47 | 24.8% | $124.45 | 105% | $53.89 | $99.93 | $115.69 | $8.76 | $861,731 |
| 12/1/2015 | $60.54 | $106.92 | 75,057 | $177.05 | 24.8% | $133.16 | 106% | $54.61 | $106.92 | $121.49 | $11.67 | $876,284 |
| Total | | | | | | | | | | | | $35,458,203 |

Attachment D.4.b. Calculation of private overcharges of ProQuad assuming no FDA approval and competitive entry of MMR-II in January 2014

| | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | ProQuad | | | | Counterfactual | | Overcharges | |
| Month | MMR-II List Price | Varivax List Price | Doses | List Price | Discount | Net Price | List Price Markup | MMR-II List Price | Varivax List Price | MMR-II and Varivax Net Price | Per Dose | Total |

Notes
1-2 CDC Price Lists (2005 values are set equal to the first value from 2006)
3 Merck Transactions Data
4 CDC Price Lists (2005 values are set equal to the first value from 2006)
5 = 100% - (sales at net price / sales at list price) - all sales data from Merck Transactions Data
  Because ProQuad sales stopped for periods, I calculate a single discount for the full time period using all data
6 = Column 4 * (1 - Column 5)
7 = Column 4 / (Column 1 + Column 2)
8 Before 2014: Column 1
  From 2014 on: Attachment D.3.b Column 6
9 = Column 2
10 = (Column 8 + Column 9) * (1 - Column 5)
11 = Column 6 - Column 10 (if negative, value is set to $0.00)
12 = Column 3 * Column 11

Appx8357

**Attachment E**

Summary of Public Payments for Public MMR-II and ProQuad

| Year | Total Payments | | | Mumps Portion of Total Payments | | |
|---|---|---|---|---|---|---|
| | MMR-II | ProQuad | Total | MMR-II | ProQuad | Total |
| 2004 | $83,016,886 | $0 | $83,016,886 | $34,566,619 | $0 | $34,566,619 |
| 2005 | $79,769,849 | $0 | $79,769,849 | $33,214,616 | $0 | $33,214,616 |
| 2006 | $73,030,406 | $132,196,168 | $205,226,575 | $30,408,443 | $11,655,725 | $42,064,167 |
| 2007 | $56,619,814 | $132,723,565 | $189,343,379 | $23,575,391 | $11,573,174 | $35,148,565 |
| 2008 | $94,141,840 | $8,911 | $94,150,750 | $39,198,834 | $772 | $39,199,606 |
| 2009 | $90,363,782 | $0 | $90,363,782 | $37,625,724 | $0 | $37,625,724 |
| 2010 | $90,284,984 | $51,570,537 | $141,855,521 | $37,592,914 | $4,253,942 | $41,846,856 |
| 2011 | $87,949,141 | $8,759,009 | $96,708,151 | $36,620,314 | $722,512 | $37,342,826 |
| 2012 | $91,118,045 | $21,123,172 | $112,241,218 | $37,939,784 | $1,691,324 | $39,631,108 |
| 2013 | $62,243,788 | $167,905,880 | $230,149,668 | $25,917,105 | $13,319,459 | $39,236,563 |
| 2014 | $68,394,565 | $296,267,050 | $364,661,615 | $28,478,168 | $22,937,746 | $51,415,914 |
| 2015 | $58,762,548 | $243,173,376 | $301,935,924 | $24,467,584 | $17,929,055 | $42,396,639 |
| 2016 | $56,830,628 | $265,133,967 | $321,964,595 | $23,663,170 | $19,548,199 | $43,211,369 |
| 2017 | $56,830,628 | $265,133,967 | $321,964,595 | $23,663,170 | $19,548,199 | $43,211,369 |
| Total | $1,049,356,905 | $1,583,995,602 | $2,633,352,507 | $436,931,835 | $123,180,106 | $560,111,941 |

Notes

2016 payments = 2015 payments * 2016 sales / 2015 sales
MMR-II sales in 2015 and 2016 were $365 million and $353 million, respectively
ProQuad sales in 2015 and 2016 were $454 million and $495 million, respectively
See Merck & Co., Inc., Form 10-K, for the Fiscal Year ended December 31, 2016, p. 43

2017 payments = 2016 payments
Although MMR-II and ProQuad sales increased from 2016 to 2017 (for the first nine months of each year), the growth was attributed to international events
See Merck & Co., Inc., Form 10-Q, for the quarterly period ended September 30, 2017, p. 35

Appx8359

Attachment E.1. Total Payments to Merck for MMR-II and ProQuad under CDC Contract

| Quarter | MMR-II | ProQuad | Total |
|---|---|---|---|
| 1/1/2004 | $19,210,721 | | $19,210,721 |
| 4/1/2004 | $19,741,414 | | $19,741,414 |
| 7/1/2004 | $21,111,976 | | $21,111,976 |
| 10/1/2004 | $22,952,775 | | $22,952,775 |
| 1/1/2005 | $17,514,854 | | $17,514,854 |
| 4/1/2005 | $16,142,406 | | $16,142,406 |
| 7/1/2005 | $31,655,046 | | $31,655,046 |
| 10/1/2005 | $14,457,544 | | $14,457,544 |
| 1/1/2006 | $18,327,087 | $10,414,658 | $28,741,745 |
| 4/1/2006 | $17,835,092 | $24,864,839 | $42,699,930 |
| 7/1/2006 | $22,324,819 | $49,448,611 | $71,773,429 |
| 10/1/2006 | $14,543,409 | $47,468,062 | $62,011,471 |
| 1/1/2007 | $8,025,589 | $56,373,294 | $64,398,884 |
| 4/1/2007 | $12,834,070 | $42,734,594 | $55,568,664 |
| 7/1/2007 | $22,750,761 | $33,626,561 | $56,377,322 |
| 10/1/2007 | $13,009,393 | -$10,885 | $12,998,509 |
| 1/1/2008 | $16,838,385 | $8,911 | $16,847,296 |
| 4/1/2008 | $27,344,771 | $0 | $27,344,771 |
| 7/1/2008 | $22,182,960 | $0 | $22,182,960 |
| 10/1/2008 | $27,775,723 | $0 | $27,775,723 |
| 1/1/2009 | $12,617,961 | $0 | $12,617,961 |
| 4/1/2009 | $32,507,451 | | $32,507,451 |
| 7/1/2009 | $25,998,914 | | $25,998,914 |
| 10/1/2009 | $19,239,456 | | $19,239,456 |
| 1/1/2010 | $20,517,197 | | $20,517,197 |
| 4/1/2010 | $25,517,776 | $13,399,489 | $38,917,265 |
| 7/1/2010 | $28,773,933 | $20,188,982 | $48,962,916 |
| 10/1/2010 | $15,476,078 | $17,982,066 | $33,458,144 |
| 1/1/2011 | $16,238,206 | $8,759,009 | $24,997,215 |
| 4/1/2011 | $23,830,143 | | $23,830,143 |
| 7/1/2011 | $27,454,749 | | $27,454,749 |
| 10/1/2011 | $20,426,043 | | $20,426,043 |
| 1/1/2012 | $19,537,091 | | $19,537,091 |

Appx8360

| Date | | | |
|---|---|---|---|
| 4/1/2012 | $21,679,343 | | $21,679,343 |
| 7/1/2012 | $30,691,906 | | $30,691,906 |
| 10/1/2012 | $19,209,705 | $21,123,172 | $40,332,878 |
| 1/1/2013 | $14,708,954 | $33,592,612 | $48,301,567 |
| 4/1/2013 | $11,888,786 | $42,030,430 | $53,919,216 |
| 7/1/2013 | $33,374,780 | $53,477,603 | $86,852,384 |
| 10/1/2013 | $2,271,267 | $38,805,235 | $41,076,503 |
| 1/1/2014 | $21,927,396 | $33,990,252 | $55,917,648 |
| 4/1/2014 | $14,682,347 | $49,792,402 | $64,474,750 |
| 7/1/2014 | $24,600,380 | $127,387,655 | $151,988,035 |
| 10/1/2014 | $7,184,441 | $85,096,740 | $92,281,181 |
| 1/1/2015 | $21,369,660 | $42,141,318 | $63,510,978 |
| 4/1/2015 | $10,922,301 | $85,491,758 | $96,414,059 |
| 7/1/2015 | $14,274,614 | $66,749,197 | $81,023,811 |
| 10/1/2015 | $12,195,974 | $48,791,103 | $60,987,076 |
| Total | $935,695,648 | $1,053,727,668 | $1,989,423,317 |

Notes

Totals calculated from Merck's Sales data

**Appx8361**

Attachment E.2.a. Calculation of Mumps Portion of MMR-II and ProQuad

|  | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 |
|---|---|---|---|---|---|---|---|---|
|  |  |  |  |  |  |  | Mumps Portion of: | |
| Contract End Date | Measles | Mumps | Rubella | MMR-II | Varivax | ProQuad | MMR-II | ProQuad |
| 3/31/2002 | $6.15 | $8.49 | $5.75 |  |  |  | 41.6% |  |
| ... |  |  |  |  |  |  |  |  |
| 3/31/2006 |  |  |  | $14.42 | $51.50 | $71.85 |  | 9.1% |
| 3/31/2007 |  |  |  | $15.03 | $56.15 | $71.85 |  | 8.8% |
| 3/31/2008 |  |  |  | $15.35 | $58.40 | $74.75 |  | 8.7% |
| 3/31/2009 |  |  |  | $16.01 | $60.75 | $77.75 |  | 8.7% |
| 3/31/2010 |  |  |  | $16.05 | $63.78 | $79.67 |  | 8.4% |
| 3/31/2011 |  |  |  | $16.39 | $66.33 | $82.72 |  | 8.2% |
| 3/31/2012 |  |  |  | $16.74 | $68.98 | $82.72 |  | 8.1% |
| 3/31/2013 |  |  |  | $17.08 | $71.74 | $88.82 |  | 8.0% |
| 3/31/2014 |  |  |  | $17.51 | $74.61 | $92.12 |  | 7.9% |
| 3/31/2015 |  |  |  | $17.66 | $77.59 | $100.16 |  | 7.7% |
| 3/31/2016 |  |  |  | $17.65 | $83.02 | $106.01 |  | 7.3% |

Notes

1-6 CDC Price Lists

7 = Column 2 / (Column 1 + Column 2 + Column 3)

8 = Column 7 [3/31/2002 value] * Column 4 / (Column 4 + Column 5)

(Column 8 is the mumps portion of MMR-II multiplied by the MMR-II portion of ProQuad)

**Appx8362**

Attachment E.2.b. Mumps Portion of Total Payments to Merck for MMR-II and ProQuad under CDC Contract

| Quarter | MMR-II | ProQuad | Total |
|---------|--------|---------|-------|
| 1/1/2004 | $7,998,971 | | $7,998,971 |
| 4/1/2004 | $8,219,942 | | $8,219,942 |
| 7/1/2004 | $8,790,617 | | $8,790,617 |
| 10/1/2004 | $9,557,090 | | $9,557,090 |
| 1/1/2005 | $7,292,845 | | $7,292,845 |
| 4/1/2005 | $6,721,384 | | $6,721,384 |
| 7/1/2005 | $13,180,547 | | $13,180,547 |
| 10/1/2005 | $6,019,840 | | $6,019,840 |
| 1/1/2006 | $7,631,043 | $948,601 | $8,579,644 |
| 4/1/2006 | $7,426,186 | $2,186,136 | $9,612,321 |
| 7/1/2006 | $9,295,621 | $4,347,560 | $13,643,181 |
| 10/1/2006 | $6,055,593 | $4,173,428 | $10,229,021 |
| 1/1/2007 | $3,341,699 | $4,956,383 | $8,298,083 |
| 4/1/2007 | $5,343,858 | $3,703,535 | $9,047,392 |
| 7/1/2007 | $9,472,975 | $2,914,200 | $12,387,174 |
| 10/1/2007 | $5,416,859 | -$943 | $5,415,915 |
| 1/1/2008 | $7,011,177 | $772 | $7,011,949 |
| 4/1/2008 | $11,385,832 | $0 | $11,385,832 |
| 7/1/2008 | $9,236,554 | $0 | $9,236,554 |
| 10/1/2008 | $11,565,272 | $0 | $11,565,272 |
| 1/1/2009 | $5,253,874 | $0 | $5,253,874 |
| 4/1/2009 | $13,535,471 | | $13,535,471 |
| 7/1/2009 | $10,825,443 | | $10,825,443 |
| 10/1/2009 | $8,010,936 | | $8,010,936 |
| 1/1/2010 | $8,542,962 | | $8,542,962 |
| 4/1/2010 | $10,625,106 | $1,105,295 | $11,730,401 |
| 7/1/2010 | $11,980,907 | $1,665,345 | $13,646,252 |
| 10/1/2010 | $6,443,938 | $1,483,302 | $7,927,240 |
| 1/1/2011 | $6,761,274 | $722,512 | $7,483,785 |
| 4/1/2011 | $9,922,409 | | $9,922,409 |
| 7/1/2011 | $11,431,624 | | $11,431,624 |
| 10/1/2011 | $8,505,008 | | $8,505,008 |
| 1/1/2012 | $8,134,865 | | $8,134,865 |

| Date | | | |
|---|---|---|---|
| 4/1/2012 | $9,026,857 | | $9,026,857 |
| 7/1/2012 | $12,779,514 | | $12,779,514 |
| 10/1/2012 | $7,998,548 | $1,691,324 | $9,689,872 |
| 1/1/2013 | $6,124,523 | $2,689,746 | $8,814,269 |
| 4/1/2013 | $4,950,260 | $3,326,338 | $8,276,598 |
| 7/1/2013 | $13,896,610 | $4,232,281 | $18,128,892 |
| 10/1/2013 | $945,712 | $3,071,093 | $4,016,804 |
| 1/1/2014 | $9,130,142 | $2,690,029 | $11,820,171 |
| 4/1/2014 | $6,113,444 | $3,843,964 | $9,957,408 |
| 7/1/2014 | $10,243,120 | $9,834,302 | $20,077,422 |
| 10/1/2014 | $2,991,462 | $6,569,451 | $9,560,913 |
| 1/1/2015 | $8,897,911 | $3,253,301 | $12,151,213 |
| 4/1/2015 | $4,547,834 | $6,241,074 | $10,788,908 |
| 7/1/2015 | $5,943,672 | $4,872,829 | $10,816,501 |
| 10/1/2015 | $5,078,167 | $3,561,851 | $8,640,017 |
| Total | $389,605,495 | $84,083,707 | $473,689,203 |

Notes

All MMR-II values multiplied by the only value in Attachment E.2.a Column 7
All ProQuad values multiplied by the corresponding quarter of Attachment E.2.a Column 8

Appx8364

**Attachment F**

Summary of Public False Claims Penalties for MMR-II and ProQuad Purchases

| Year | Minimum | | | Maximum | | |
|---|---|---|---|---|---|---|
| | MMR-II | ProQuad | Total | MMR-II | ProQuad | Total |
| 2004 | $4,631,000 | $0 | $4,631,000 | $9,262,000 | $0 | $9,262,000 |
| 2005 | $4,526,500 | $0 | $4,526,500 | $9,053,000 | $0 | $9,053,000 |
| 2006 | $5,010,500 | $277,425,500 | $282,436,000 | $10,021,000 | $554,851,000 | $564,872,000 |
| 2007 | $3,212,000 | $239,470,000 | $242,682,000 | $6,424,000 | $478,940,000 | $485,364,000 |
| 2008 | $1,716,000 | $0 | $1,716,000 | $3,432,000 | $0 | $3,432,000 |
| 2009 | $1,116,500 | $0 | $1,116,500 | $2,233,000 | $0 | $2,233,000 |
| 2010 | $1,523,500 | $72,814,500 | $74,338,000 | $3,047,000 | $145,629,000 | $148,676,000 |
| 2011 | $1,408,000 | $13,293,500 | $14,701,500 | $2,816,000 | $26,587,000 | $29,403,000 |
| 2012 | $2,029,500 | $34,826,000 | $36,855,500 | $4,059,000 | $69,652,000 | $73,711,000 |
| 2013 | $1,716,000 | $334,367,000 | $336,083,000 | $3,432,000 | $668,734,000 | $672,166,000 |
| 2014 | $1,875,500 | $527,714,000 | $529,589,500 | $3,751,000 | $1,055,428,000 | $1,059,179,000 |
| 2015 (pre Nov 2) | $1,243,000 | $372,691,000 | $373,934,000 | $2,486,000 | $745,382,000 | $747,868,000 |
| Total | $30,008,000 | $1,872,601,500 | $1,902,609,500 | $60,016,000 | $3,745,203,000 | $3,805,219,000 |
| 2015 (Nov 2 on) | $313,068 | $113,744,313 | $114,057,381 | $626,164 | $227,498,799 | $228,124,963 |
| 2016 | $1,504,910 | $530,364,493 | $531,869,403 | $3,009,846 | $1,060,740,078 | $1,063,749,924 |
| 2017 | $1,504,910 | $530,364,493 | $531,869,403 | $3,009,846 | $1,060,740,078 | $1,063,749,924 |
| Total | $3,322,887 | $1,174,473,299 | $1,177,796,187 | $6,645,857 | $2,348,978,955 | $2,355,624,812 |
| Total (2004-2017) | $33,330,887 | $3,047,074,799 | $3,080,405,687 | $66,661,857 | $6,094,181,955 | $6,160,843,812 |

2016 penalties = 2015 penalties * 2016 sales / 2015 sales
MMR-II sales in 2015 and 2016 were $365 million and $353 million, respectively
ProQuad sales in 2015 and 2016 were $454 million and $495 million, respectively
See Merck & Co., Inc., Form 10-K, for the Fiscal Year ended December 31, 2016, p. 43

2017 penalties = 2016 penalties
Although MMR-II and ProQuad sales increased from 2016 to 2017 (for the first nine months of each year), the growth was attributed to international events
See Merck & Co., Inc., Form 10-Q, for the quarterly period ended September 30, 2017, p. 35

Appx8366

Attachment F. False Claim Penalties for MMR-II and ProQuad

| Quarter | MMR-II | | | ProQuad | | | Total | | |
|---|---|---|---|---|---|---|---|---|---|
| | Invoices | Minimum | Maximum | Invoices | Minimum | Maximum | Invoices | Minimum | Maximum |
| 1/1/2004 | 170 | $935,000 | $1,870,000 | | | | 170 | $935,000 | $1,870,000 |
| 4/1/2004 | 224 | $1,232,000 | $2,464,000 | | | | 224 | $1,232,000 | $2,464,000 |
| 7/1/2004 | 250 | $1,375,000 | $2,750,000 | | | | 250 | $1,375,000 | $2,750,000 |
| 10/1/2004 | 198 | $1,089,000 | $2,178,000 | | | | 198 | $1,089,000 | $2,178,000 |
| 1/1/2005 | 192 | $1,056,000 | $2,112,000 | | | | 192 | $1,056,000 | $2,112,000 |
| 4/1/2005 | 191 | $1,050,500 | $2,101,000 | | | | 191 | $1,050,500 | $2,101,000 |
| 7/1/2005 | 301 | $1,655,500 | $3,311,000 | | | | 301 | $1,655,500 | $3,311,000 |
| 10/1/2005 | 139 | $764,500 | $1,529,000 | | | | 139 | $764,500 | $1,529,000 |
| 1/1/2006 | 234 | $1,287,000 | $2,574,000 | 5,014 | $27,577,000 | $55,154,000 | 5,248 | $28,864,000 | $57,728,000 |
| 4/1/2006 | 277 | $1,523,500 | $3,047,000 | 10,500 | $57,750,000 | $115,500,000 | 10,777 | $59,273,500 | $118,547,000 |
| 7/1/2006 | 225 | $1,237,500 | $2,475,000 | 17,920 | $98,560,000 | $197,120,000 | 18,145 | $99,797,500 | $199,595,000 |
| 10/1/2006 | 175 | $962,500 | $1,925,000 | 17,007 | $93,538,500 | $187,077,000 | 17,182 | $94,501,000 | $189,002,000 |
| 1/1/2007 | 159 | $874,500 | $1,749,000 | 19,677 | $108,223,500 | $216,447,000 | 19,836 | $109,098,000 | $218,196,000 |
| 4/1/2007 | 178 | $979,000 | $1,958,000 | 14,126 | $77,693,000 | $155,386,000 | 14,304 | $78,672,000 | $157,344,000 |
| 7/1/2007 | 125 | $687,500 | $1,375,000 | 9,735 | $53,542,500 | $107,085,000 | 9,860 | $54,230,000 | $108,460,000 |
| 10/1/2007 | 122 | $671,000 | $1,342,000 | 2 | $11,000 | $22,000 | 124 | $682,000 | $1,364,000 |
| 1/1/2008 | 111 | $610,500 | $1,221,000 | 0 | $0 | $0 | 111 | $610,500 | $1,221,000 |
| 4/1/2008 | 109 | $599,500 | $1,199,000 | 0 | $0 | $0 | 109 | $599,500 | $1,199,000 |
| 7/1/2008 | 37 | $203,500 | $407,000 | 0 | $0 | $0 | 37 | $203,500 | $407,000 |
| 10/1/2008 | 55 | $302,500 | $605,000 | 0 | $0 | $0 | 55 | $302,500 | $605,000 |
| 1/1/2009 | 40 | $220,000 | $440,000 | 0 | $0 | $0 | 40 | $220,000 | $440,000 |
| 4/1/2009 | 60 | $330,000 | $660,000 | | | | 60 | $330,000 | $660,000 |
| 7/1/2009 | 55 | $302,500 | $605,000 | | | | 55 | $302,500 | $605,000 |
| 10/1/2009 | 48 | $264,000 | $528,000 | | | | 48 | $264,000 | $528,000 |
| 1/1/2010 | 54 | $297,000 | $594,000 | | | | 54 | $297,000 | $594,000 |
| 4/1/2010 | 105 | $577,500 | $1,155,000 | 2,722 | $14,971,000 | $29,942,000 | 2,827 | $15,548,500 | $31,097,000 |
| 7/1/2010 | 63 | $346,500 | $693,000 | 5,258 | $28,919,000 | $57,838,000 | 5,321 | $29,265,500 | $58,531,000 |
| 10/1/2010 | 55 | $302,500 | $605,000 | 5,259 | $28,924,500 | $57,849,000 | 5,314 | $29,227,000 | $58,454,000 |
| 1/1/2011 | 45 | $247,500 | $495,000 | 2,417 | $13,293,500 | $26,587,000 | 2,462 | $13,541,000 | $27,082,000 |
| 4/1/2011 | 86 | $473,000 | $946,000 | | | | 86 | $473,000 | $946,000 |
| 7/1/2011 | 70 | $385,000 | $770,000 | | | | 70 | $385,000 | $770,000 |
| 10/1/2011 | 55 | $302,500 | $605,000 | | | | 55 | $302,500 | $605,000 |

| Date | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 1/1/2012 | 77 | $423,500 | $847,000 | | | | 77 | $423,500 | $847,000 |
| 4/1/2012 | 99 | $544,500 | $1,089,000 | | | | 99 | $544,500 | $1,089,000 |
| 7/1/2012 | 122 | $671,000 | $1,342,000 | | | | 122 | $671,000 | $1,342,000 |
| 10/1/2012 | 88 | $390,500 | $781,000 | 6,332 | $34,826,000 | $69,652,000 | 6,403 | $35,216,500 | $70,433,000 |
| 1/1/2013 | 72 | $484,000 | $968,000 | 12,206 | $67,133,000 | $134,266,000 | 12,294 | $67,617,000 | $135,234,000 |
| 4/1/2013 | 103 | $396,000 | $792,000 | 14,977 | $82,373,500 | $164,747,000 | 15,049 | $82,769,500 | $165,539,000 |
| 7/1/2013 | 49 | $566,500 | $1,133,000 | 18,704 | $102,872,000 | $205,744,000 | 18,807 | $103,438,500 | $206,877,000 |
| 10/1/2013 | 94 | $269,500 | $539,000 | 14,907 | $81,988,500 | $163,977,000 | 14,956 | $82,258,000 | $164,516,000 |
| 1/1/2014 | 70 | $517,000 | $1,034,000 | 14,347 | $78,908,500 | $157,817,000 | 14,441 | $79,425,500 | $158,851,000 |
| 4/1/2014 | 126 | $385,000 | $770,000 | 17,930 | $98,615,000 | $197,230,000 | 18,000 | $99,000,000 | $198,000,000 |
| 7/1/2014 | 51 | $693,000 | $1,386,000 | 43,860 | $241,230,000 | $482,460,000 | 43,986 | $241,923,000 | $483,846,000 |
| 10/1/2014 | 86 | $280,500 | $561,000 | 19,811 | $108,960,500 | $217,921,000 | 19,862 | $109,241,000 | $218,482,000 |
| 1/1/2015 | 51 | $473,000 | $946,000 | 16,995 | $93,472,500 | $186,945,000 | 17,081 | $93,945,500 | $187,891,000 |
| 4/1/2015 | 69 | $280,500 | $561,000 | 19,423 | $106,826,500 | $213,653,000 | 19,474 | $107,107,000 | $214,214,000 |
| 7/1/2015 |  | $379,500 | $759,000 | 23,191 | $127,550,500 | $255,101,000 | 23,260 | $127,930,000 | $255,860,000 |
| 10/1/2015 (before Nov 2) | 20 | $110,000 | $220,000 | 8,153 | $44,841,500 | $89,683,000 | 8,173 | $44,951,500 | $89,903,000 |
| Total (before Nov 2, 2015) | 5,456 | $30,008,000 | $60,016,000 | 340,473 | $1,872,601,500 | $3,745,203,000 | 345,929 | $1,902,609,500 | $3,805,219,000 |
| 11/2/2015-12/31/2015 | 28 | $313,068 | $626,164 | 10,173 | $113,744,313 | $227,498,799 | 10,201 | $114,057,381 | $228,124,963 |
| Total | 5,484 | $30,321,068 | $60,642,164 | 350,646 | $1,986,345,813 | 3,972,701,799 | 356,130 | $2,016,666,881 | $4,033,343,963 |

Notes

Invoices calculated from Merck's Sales data

Before November 2, 2015:
Minimum Penalties = invoices * $5,500
Maximum Penalties = invoices * $11,000

From November 2, 2015 to the present:
Minimum Penalties = invoices * $11,181
Maximum Penalties = invoices * $22,363

Appx8368

10/25/2019
Declaration of G. Reilly
EXHIBIT 282

This document produced in native format only

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

MRK-KRA02143443
MRK-CHA02143443

Appx8370

10/25/2019
Declaration of G. Reilly
EXHIBIT 283

This document produced in native format only

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

MRK-KRA02143444
MRK-CHA02143444

Appx8372

10/25/2019
Declaration of G. Reilly
EXHIBIT 284

This document produced in native format only

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

MRK-KRA02143445
MRK-CHA02143445

Appx8374

10/25/2019
Declaration of G. Reilly
EXHIBIT 285

This document produced in native format only

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

MRK-KRA02143446
MRK-CHA02143446

Appx8376

10/25/2019

Declaration of G. Reilly

EXHIBIT 286

This document produced in native format only

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

MRK-KRA02143447
MRK-CHA02143447

10/25/2019
Declaration of G. Reilly
EXHIBIT 287

This document produced in native format only

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

MRK-KRA02143448
MRK-CHA02143448

Appx8380

10/25/2019
Declaration of G. Reilly
EXHIBIT 288

This document produced in native format only

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

MRK-KRA02143449
MRK-CHA02143449

Appx8382

10/25/2019
Declaration of G. Reilly
EXHIBIT 289

This document produced in native format only

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

MRK-KRA02143450
MRK-CHA02143450

10/25/2019
Declaration of G. Reilly
EXHIBIT 290

Appx8385

This document produced in native format only

MRK-KRA02143451
MRK-CHA02143451

Appx8386

10/25/2019

Declaration of G. Reilly

EXHIBIT 291

This document produced in native format only

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

MRK-KRA02143452
MRK-CHA02143452

Appx8388

10/25/2019
Declaration of G. Reilly
EXHIBIT 292

**Appx8389**

This document produced in native format only

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

MRK-KRA02143453
MRK-CHA02143453

Appx8390

10/25/2019
Declaration of G. Reilly
EXHIBIT 293

Appx8391

This document produced in native format only

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

MRK-KRA02143454
MRK-CHA02143454

Appx8392

10/25/2019
Declaration of G. Reilly
EXHIBIT 294

Appx8393

This document produced in native format only

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

MRK-KRA02143455
MRK-CHA02143455

Appx8394

10/25/2019
Declaration of G. Reilly
EXHIBIT 295

This document produced in native format only

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

MRK-KRA02143456
MRK-CHA02143456

Appx8396

10/25/2019
Declaration of G. Reilly
EXHIBIT 296

Appx8397

This document produced in native format only

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

MRK-KRA02143457
MRK-CHA02143457

Appx8398

10/25/2019
Declaration of G. Reilly
EXHIBIT 297

This document produced in native format only

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

MRK-KRA02143458
MRK-CHA02143458

Appx8400

10/25/2019
Declaration of G. Reilly
EXHIBIT 298

This document produced in native format only

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

MRK-KRA02143459
MRK-CHA02143459

Appx8402

10/25/2019
Declaration of G. Reilly
EXHIBIT 299

Appx8403

This document produced in native format only

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

MRK-KRA02143460
MRK-CHA02143460

Appx8404

10/25/2019
Declaration of G. Reilly
EXHIBIT 300

# Morgan Lewis

**Lisa C. Dykstra**
Partner
+1.215.963.5699
lisa.dykstra@morganlewis.com

April 17, 2017

**VIA EMAIL**

Marlene Koury
Constantine Cannon LLP
335 Madison Avenue
9th Floor
New York, NY 10017

John A. Macoretta
Spector Roseman Kodroff & Willis, P.C.
1818 Market Street
Suite 2500
Philadelphia, PA 19103

Kellie Lerner
Robins Kaplan LLP
601 Lexington Avenue
Suite 3400
New York, NY 10022

Re:     United States ex rel. Krahling v. Merck & Co., Inc., No. 10-4374 (E.D. Pa.);
        In Re: Merck Mumps Vaccine Antitrust Litigation, No. 12-3555 (E.D. Pa.)

Dear Counsel:

We write regarding Merck's production of transactional data and the parties' correspondence and meet and confers regarding Relators and Plaintiffs' request that Merck supplement its transactional data.  As discussed during our April 14, 2017 meet and confer, Merck will stipulate that the amounts recorded as being invoiced to the Centers for Disease Control and Prevention ("CDC") in Merck's transactional data for the CDC's purchase of Merck's mumps-containing vaccines were invoiced to CDC and that CDC paid the amounts requested by the invoice.  Please confirm within seven days whether Relators agree to the terms of this stipulation.

After we reach agreement on this issue, we will begin the process of supplementing the transactional data with batch and lot expiry information for public and private purchasers.  As reflected in the parties' various correspondence on the subject, Relators and Plaintiffs will not seek any further supplements to Merck's transactional data.

Sincerely,

Lisa Dykstra

Lisa C. Dykstra

cc:  All Counsel of Record

Morgan, Lewis □ Bockius LLP

1701 Market Street
Philadelphia, PA  19103-2921
United States
☎ +1.215.963.5000
🖷 +1.215.963.5001

10/25/2019
Declaration of G. Reilly
EXHIBIT 301

**Bernard Associates, llc.**
3 St. Bernard's Rd.
Far Hills, NJ 07931
Tel. 908-234-2704
Fax 908-234-2703
SBernardMD@BernardAssociatesLLC.com

## CONFIDENTIAL

November 9, 2008

Kim Haupt
Senior Director
Merck, Inc.
770 Sumneytown Pike
West Point, PA 19486-0004

### RE: Pediatric Vaccines Competitive Simulation Proposal

Dear Kim,

I have enjoyed speaking with you and Janet regarding the "Pediatric Vaccines Competitive Simulation." As you have requested, I have prepared a proposal for assisting Merck ("MERCK") with this project. This proposal outlines my understanding of the situation; the project objectives and scope; the proposed project approach and deliverables; project fees; confidentiality; and my qualifications.

### My Understanding of the Situation

GlaxoSmithKline ("GSK") is Merck's largest vaccine competitor in the U.S. GSK has recently launched Rotarix to compete head-on with Merck's RotaTeq, and is planning to launch Cervarix and Priorix Tetra to counter Merck's Gardasil and ProQuad vaccines. By 2010, Merck will lose sole-source status on all of its pediatric vaccines. At that point, GSK will have a more complete pediatric vaccine portfolio than Merck in the U.S. GSK's breadth of vaccines will provide opportunities for the company to leverage its vaccine portfolio for significant competitive advantage. For example, GSK could use its vast portfolio to "bundle" contracts and lock out Merck in some accounts.

REDACTED – OMP

REDACTED – OMP                                              The ProQuad Brand

**MRK-KRA02063339**
**MRK-CHA02063339**
**Appx8408**

Team has embarked on its own brand competitive simulation and planning exercise, scheduled for April, 2008.

Building on these successful competitive planning initiatives, Pediatric Vaccine Brand Leaders are interested in collectively working to counter GSK's burgeoning portfolio and gain competitive advantage pro-actively against GSK. **The Merck Pediatric Vaccines group would like to conduct a competitive simulation at the *portfolio level* to understand and anticipate ways in which these two rivals may compete in order to address and thwart GSK's potential advantages.**

## Project Goal and Objectives

**MVID's overall goal in conducting a competitive simulation is to optimize its vaccine portfolio strategies, plans, and execution for the pediatric customer segment to gain competitive advantage against GSK in the marketplace.** Based on our initial discussion, I understand the project objectives to be the following:

- To identify ways for MERCK to leverage its vaccine portfolio for customer benefit and competitive advantage, including corporate strategies, contracting strategies, and stakeholder relationships;
- To identify and counter approaches that GSK might use to leverage its vaccine portfolio for customer benefit and competitive advantage; and
- To enhance team-building, collaboration, synergies, relationships, and understanding among the various Merck vaccine franchises.

## Project Scope

*Pharmaceutical Companies/Products:* Merck (Comvax, Gardasil, M-M-R®II, PedvaxHIB, ProQuad, RecombivaxHB, Rotavirus, Vaqta, Varivax, etc.) vs. GSK (Cervarix, Engerix-B, Havrix, Hib-MenCY, Priorix-Tetra, RotaRix, etc.)
*Customers:* Private sector, Pediatric focus
*Geography:* United States
*Target Audiences:* Physicians (e.g., pediatricians, family practitioners), office managers, head immunization nurses, managed care organizations, GPO's, physician distributors, etc.
*Timeframe:* 2009-2011

## Key Questions

Some of the key questions that *may* be addressed as part of this project include:

1. What will be GSK's overall portfolio strategy, including its planned corporate positioning and key messages?
2. How will GSK try to differentiate itself and its portfolio from Merck in the U.S. market? Will GSK seek to differentiate its portfolio based on its unique adjuvant technology, reliable supply, product convenience, physician distribution channel, product safety issues, pricing or contract offerings, or in other ways?

2

MRK-KRA02063340
MRK-CHA02063340
Appx8409

3. What are some potential competitive portfolio strategies for Merck/MVID? What should Merck's corporate positioning and messages be to key customers/stakeholders?
4. How can Merck leverage its current broader Pediatric portfolio prior to the launch of several new GSK products (e.g., Cervarix, Priorix Tetra, etc.)? For example, will Merck be able to effectively leverage the combination vaccine ProQuad and component vaccines vs. GSK's combination-only formulation of Priorix Tetra? **REDACTED – OMP**
**REDACTED – OMP**
5. How can Merck transition from "customers by force" to "customers by choice" as the company loses sole source exclusivity in 2010? How can Merck make sure that customers are buying as many Merck pediatric vaccines as possible?
6. How will customers respond to a pediatric portfolio strategy implemented by Merck and/or GSK?
7. How will GSK try to take advantage of MVID's previous supply issues? What can Merck do to mitigate these issues?
8. How should Merck anticipate and counter the findings of GSK's head-to-head vaccine studies for several of its products?
9. As GSK extends it pediatric vaccine portfolio, how might GSK price and contract for competitive advantage? What can Merck do proactively to gain advantage with portfolio pricing and contracting?
10. What are some specific, implementable action steps that MERCK should take to leverage its portfolio and corporate capabilities to gain competitive advantage?

### Proposed Approach

I propose a three-phased approach to achieve the defined objectives:

### Proposed Project Approach



### Phase 1— Simulation Planning

At the beginning of Phase 1, we will conduct a "Kickoff Meeting" with the MERCK multi-disciplinary Pediatric Vaccines Core Simulation Team. We will begin by identifying the 3-4 key issues, challenges, or opportunities that need to be simulated. I will facilitate the brainstorming and preparation of appropriate simulation exercises, and templates.

I will develop an outline for a "Simulation Backgrounder" to provide a foundation of the market/competitive information for the Simulation participants. MERCK will need to utilize internal resources or an external vendor to develop this Backgrounder.

3

**CONFIDENTIAL**

**MRK-KRA02063341**
**MRK-CHA02063341**
**Appx8410**

*Deliverable:* **Competitive Simulation Plan**

## Phase 2— Competitive Simulation Exercise

I will serve as the leader of and facilitator for the simulation exercise. A Bernard Associates' Program Coordinator will work with MERCK's internal Meeting Planning Department (or an external Logistics Agency if needed) to confirm an appropriate meeting site, facilities, and other logistical factors.

For example, the simulation may be a 1.5-2 day, off-site meeting with a Merck Pediatric Vaccine Team and a GSK Pediatric Vaccine Team. Each of the Product Teams will consist of Merck professionals who represent the different disciplines of a typical vaccine portfolio team. We will likely assign team members to role-play specific GSK or MERCK pediatric vaccine brand leaders. We will utilize senior Merck executives to serve as judges to provide feedback and direction to the teams. We may decide to have a third group who role-play stakeholders or other constituents.

We may involve other Merck professionals outside of the current Pediatric Marketing Teams who have vaccine or other relevant experience and/or expertise (e.g., international experience, experience competing against GSK, etc.). The teams will compete on a series of custom-designed exercises designed to test and validate Merck's portfolio strategy, approaches, and plans. The simulation will be provocative, engaging, and fun.

*Deliverable*: Pediatric Vaccines Competitive Simulation

## Phase 3— Simulation Debrief (Following the Simulation)

The Core Simulation Team will review and discuss the findings of the simulation. The Pediatric Vaccines Marketing Team will review and discuss these findings to identify potential action steps for Pediatric Vaccines Marketing Team. I will prepare an Executive Summary (5-10 slides) of the Competitive Simulation findings. I will then generate the final report in the form of a PowerPoint Presentation (~ 50 slides, including the Executive Summary and Simulation templates).

*Deliverables:* **Pediatric Vaccines Competitive Simulation Final Report**

## Timeline and Staffing

I will lead the team through the design, customization, development, and execution of the Competitive Simulation Exercise. The Core Simulation Team will consist of multi-disciplinary MERCK professionals who meet weekly for 1-2 hours to help plan, design, and implement the Simulation. Additional MERCK professionals will participate in the Simulation exercise.

I estimate that this exercise will take approximately 8-12 weeks depending primarily on the personnel resources provided by MERCK. This timeframe also assumes that access to relevant MERCK professionals/advisors and internal data. I could begin working on this project at your earliest convenience to ensure that we meet your deadlines.

4

MRK-KRA02063342
MRK-CHA02063342
Appx8411

**Confidentiality**

In discussions between Bernard Associates, LLC ("Supplier") and Merck & Co., Inc. ("Merck"), Merck may disclose to Supplier certain confidential information including, but not limited to, that which relates to certain Merck products, apparatus, processes, formulae, manufacturing methods, or any manner of doing business ("Confidential Information"). The sole purpose of the disclosure is to enable Supplier to render services to Merck in the manner and terms already agreed upon or currently under negotiation. In consideration of Merck engaging and/or Merck's contemplating the engagement of Supplier to perform the work described above in the manner and under the terms agreed upon or under negotiation, Merck and Supplier, intending to be legally bound, agree as follows:

1. During the period of this Agreement and at any time subsequent, Supplier will not, without the prior written approval of Merck, use for itself or for others, or disclose to any third party any Confidential Information. This obligation does not apply to any information, knowledge, or data that was part of the public domain prior to the date of this Agreement or which prior to the time of disclosure or thereafter is properly in the public domain or which is disclosed to Supplier by a third party not under obligation of confidentiality to Merck.

2. Bernard Associates owns and shall retain ownership of all pre-existing intellectual property owned by Bernard Associates and used and/or provided in the course of performing the Services, including, without limitation, copyrights, patents and trade secrets, and trademarks; any pre-existing methods or utilities used in  performing the Services that are of general applicability and not specific to the Services, including, without limitation, reusable methods, methodologies, questionnaires, analysis frameworks, software, training materials, templates, graphic display formats, and other techniques (all such utilities, "Bernard Associates Tools"); and all  Bernard Associates Tools developed or discovered in the course of performing the Services.

Client has the right to use, copy and disclose the Consultant Materials to its employees for reference and evaluation purposes only and shall not include the right to use the Consultant Materials in a manner that is competitive to Consultant's services, to include without limitation, to provide same or similar competitive simulation, war games, and market preparation programs training and coaching programs to other individuals using Consultant Materials, to distribute Consultant Materials, and to divulge any Consultant Materials to third parties. Any non-MERCK Simulation attendees will be required to sign a standard Bernard Associates' Competitive Simulation NDA.

This Agreement shall become effective upon your acceptance of these terms and conditions and shall continue in effect for a period of three (3) years. This Agreement shall be construed in accordance with the laws of the Commonwealth of Pennsylvania.

**Project Fee**

The project fee for the design, customization, development, execution, and summary of the Competitive Simulation Exercise is TBD. If the project extends beyond [date] or additional consulting services beyond the scope or plans of this project are requested by MERCK, there will be additional fees. Project-related expenses will be billed separately.

CONFIDENTIAL

MRK-KRA02063343
MRK-CHA02063343

Appx8412

MERCK & Co. will pay the project fee in two equal installments corresponding to project initiation and project completion. I will notify you and receive your approval before engaging in any additional consulting services or project-related expenses. For such project-related expenses, I will provide a reasonably detailed statement for reimbursement purposes. Project-related expenses will not exceed 10% of the total fees.

*Please note that the following activities are out of the scope of this project and may need to be handled for additional fees by Bernard Associates, internal resources, or third-parties:*
- On-site Program Coordination
- Meeting Planning/Logistics
- Production of Simulation Materials
- On-site Production (sound, slides, etc.) as needed

## Qualifications

I have attached information on Bernard Associates and my background. I would also encourage you to visit my company website www.BernardAssociatesLLC.com for more information on my capabilities and services. Specifically, for this engagement I want to highlight my:

1. **Competitive Simulation Expertise and Experience** – Bernard Associates has been a leader in developing the "next generation" of war games for the pharmaceutical industry. The firm's Simulations have many important advantages over traditional war games. These advantages, as well as a description of the Bernard Associates' approach to Simulations, are summarized in a recent *PharmaVoice* article on "Seven Rules for the New War Games" (see attachment).
2. **Pharmaceutical Industry Knowledge and Experience** — I have worked with leading global pharmaceutical companies to address many diverse strategic, marketing, business development, medical, and research issues. I previously worked in several commercial and clinical positions at Bristol-Myers Squibb. For this project, it is important to note that I served as the Product Manager for the U.S. launch of the blockbuster product Pravachol and as the U.S. Medical Director for Anti-Infectives, overseeing all Phase IIIB-IV clinical research. I also served as the first Managed Care Medical Director in the pharmaceutical industry and co-initiated the first doctor-only medical liaisons field force in the U.S. As a Senior Fellow at The Wharton School of Business, I initiated and taught in the "Pharmaceutical Management" course at The Wharton School of Business for 14 years.
3. **Consulting Expertise** — I have worked as consultant to the pharmaceutical and health care industries for over twelve years: four as a Principal in the Health Care and Pharmaceutical Industry Practice at A.T. Kearney and eight as President of Bernard Associates, a firm I founded. I have conducted consulting engagements with eight of the top ten pharmaceutical companies in the world.
4. **Combined Business and Medical Background** — I am a physician with an MBA from the Wharton School of Business. I have worked in several areas of Clinical Research/Medical Affairs and in several business areas of a pharmaceutical company.
5. **Understanding of and Appreciation for MERCK** — I have worked with MERCK and its professionals on over 25 consulting projects over the past eight years, including serving as the

6

CONFIDENTIAL

lead consultant for the development and execution of the GARDASIL, ROTATEQ, ARCOXIA, CORDAPTIVE, and EMEND Competitive Simulations. I understand and appreciate the standard of excellence that MERCK expects from its professionals, products, and partners.

Kim, I look forward to your response. If you have any questions regarding this proposal, please call me at 908-234-2704. If this proposal is agreeable to you, please sign at the bottom and return to me.

Sincerely,

Stan Bernard, M.D., M.B.A.
President, Bernard Associates LLC

Approved by: _____

Title: _____

Company: _____

Date: _____

7

MRK-KRA02063345
MRK-CHA02063345
Appx8414

10/25/2019
Declaration of G. Reilly
EXHIBIT 302

| SOLICITATION/CONTRACT/ORDER FOR COMMERCIAL ITEMS | | 1. REQUISITION NUMBER | PAGE 1 OF |
|---|---|---|---|
| *OFFEROR TO COMPLETE BLOCKS 12, 17, 23, 24, & 30* | | | 28 |

| 2. CONTRACT NO.<br>200-2004-06442 | 3. AWARD/EFFECTIVE DATE<br>04/01/2004 | 4. ORDER NUMBER | 5. SOLICITATION NUMBER<br>2004-N-01104 | |
|---|---|---|---|---|

| 7. FOR SOLICITATION INFORMATION CALL: ▶ | a. NAME<br>Allyson R. Brown | b. TELEPHONE NUMBER *(No collect calls)*<br>(770) 488-2649 |
|---|---|---|

| 9. ISSUED BY | CODE | 2536 |
|---|---|---|

Centers for Disease Control and Prevention (PGO)
Acquisition & Assistance Branch A
2920 Brandywine Road
Atlanta, GA 30341-5539

**10. THIS ACQUISITION IS**

UNRESTRICTED

SET ASIDE:          % FOR

SMALL BUSINESS

SMALL DISADV. BUSINESS

8(A)

SIC: 325414

SIZE STANDARD: 500

**11. DELIVERY FOR FOB DESTINATION UNLESS BLOCK IS MARKED**

X SEE SCHEDULE

**13a. THIS CONTRACT IS A RATED ORDER UNDER DPAS (15 CFR 700)**

**13b. RATING**

**14. METHOD OF SOLICITATION**

RFQ          IFB          X RFP

| 15. DELIVER TO | CODE | | 16. ADMINISTERED BY | CODE | 2536 |
|---|---|---|---|---|---|

15. To Be Shown on Delivery Orders

16. Centers for Disease Control and Prevention (PGO)
Acquisition & Assistance Branch A
2920 Brandywine Road
Atlanta, GA 30341-5539

| 17a. CONTRACTOR/ OFFEROR | CODE | 297 | FACILITY CODE | | 18a. PAYMENT WILL BE MADE BY | CODE | |
|---|---|---|---|---|---|---|---|

Merck Vaccine Division
P O Box 4
WP 97 B 358
TELEPHONE NO.

TIN:22-1109110
DUNS:00-238-7926

18a. See Contract Clause C.1.15

17b. CHECK IF REMITTANCE IS DIFFERENT AND PUT SUCH ADDRESS IN OFFER

18b. SUBMIT INVOICES TO ADDRESS SHOWN IN BLOCK 18a UNLESS BLOCK BELOW IS CHECKED          SEE ADDENDUM

| 19. ITEM NO. | 20. SCHEDULE OF SUPPLIES/SERVICES | 21. QUANTITY | 22. UNIT | 23. UNIT PRICE | 24. AMOUNT |
|---|---|---|---|---|---|
| | Consolidated Vaccines for Children Contract<br><br>"See Continuation Page"<br><br>*(Attach Additional Sheets as Necessary)* | | | | |

| 25. ACCOUNTING AND APPROPRIATION DATA<br>To Be Shown on Delivery Orders | 26. TOTAL AWARD AMOUNT *(For Govt. Use Only)*<br>$620,795,000.00 |
|---|---|

27a. SOLICITATION INCORPORATES BY REFERENCE FAR 52.212-1, 52.212-4. FAR 52.212-3 AND 52.212-5 ARE ATTACHED. ADDENDA          ARE          ARE NOT ATTACHED.

X 27b. CONTRACT/PURCHASE ORDER INCORPORATES BY REFERENCE FAR 52.212-4. FAR 52.212-5 IS ATTACHED. ADDENDA          X ARE          ARE NOT ATTACHED.

| 28. CONTRACTOR IS REQUIRED TO SIGN THIS DOCUMENT AND RETURN _____ COPIES TO ISSUING OFFICE. CONTRACTOR AGREES TO FURNISH AND DELIVER ALL ITEMS SET FORTH OR OTHERWISE IDENTIFIED ABOVE AND ON ANY ADDITIONAL SHEETS SUBJECT TO THE TERMS AND CONDITIONS SPECIFIED HEREIN. | 29. AWARD OF CONTRACT: REFERENCE ___ Merck ___ OFFER DATED 01/14/04&03/09/04 . YOUR OFFER ON SOLICITATION (BLOCK 5), X INCLUDING ANY ADDITIONS OR CHANGES WHICH ARE SET FORTH HEREIN, IS ACCEPTED AS TO ITEMS: All Items |
|---|---|

| 30a. SIGNATURE OF OFFEROR/CONTRACTOR<br>*Adel Mahmoud* | 31a. UNITED STATES OF AMERICA *(Signature of Contracting Officer)*<br>*William J. Ryan* |
|---|---|
| 30b. NAME AND TITLE OF SIGNER *(Type or print)*<br>Adel Mahmoud, MD, Ph.D.<br>President, Merck Vaccine Division | 30c. DATE SIGNED<br>3/29/04 | 31b. NAME OF CONTRACTING OFFICER *(Type or print)*<br>William J. Ryan | 31c. DATE SIGNED<br>3/31/04 |

| 32a. QUANTITY IN COLUMN 21 HAS BEEN | 33. SHIP NUMBER | 34. VOUCHER NUMBER | 35. AMOUNT VERIFIED CORRECT FOR |
|---|---|---|---|
| ___ RECEIVED   ___ INSPECTED   ___ ACCEPTED, AND CONFORMS TO THE CONTRACT, EXCEPT AS NOTED | ___ PARTIAL ___ FINAL | | |

| 32b. SIGNATURE OF AUTHORIZED GOV'T REPRESENTATIVE | 32c. DATE | 36. PAYMENT<br>___ COMPLETE ___ PARTIAL ___ FINAL | 37. CHECK NUMBER |
|---|---|---|---|
| | | 38. S/R ACCOUNT NUMBER | 39. S/R VOUCHER NUMBER | 40. PAID BY |

| 41a. I CERTIFY THIS AMOUNT IS CORRECT AND PROPER FOR PAYMENT | | 42a. RECEIVED BY *(Print)* |
|---|---|---|
| 41b. SIGNATURE AND TITLE OF CERTIFYING OFFICER | 41c. DATE | 42b. RECEIVED AT *(Location)* |
| | | 42c. DATE REC'D | 42d. TOTAL CONTAINERS |

AUTHORIZED FOR LOCAL REPRODUCTION          SEE REVERSE FOR OMB CONTROL NUMBER AND PAPERWORK BURDEN STATEMENT          STANDARD FORM 1449          (10-95)

MRK-KRA01371280
MRK-CHA01371280
Appx8416

# TABLE OF CONTENTS

| Section | Document/Clause/Provision | Page No. |
|---------|---------------------------|----------|
| A | Standard Form 1449 | 1 |
| B | Continuation of SF1449 (Block 19 – 24) | 2 |
| C | Contract Clauses | 11 |
| D | Contract Documents, Exhibits or Attachments | 28 |

MRK-KRA01371281
MRK-CHA01371281

Appx8417

## SECTION B – CONTINUATION OF SF 1449

**BACKGROUND**:

The Vaccine For Children (VFC) program, established pursuant to Section 13631 of the Omnibus Budget Reconciliation Act of 1993 (OBRA '93), guarantees federal support for the purchase and supply of sufficient quantities of vaccine to the States to cover a defined group of children. Children (18 years-of-age or younger) who qualify for immunization through the VFC purchase program include those who are (1) Medicaid-eligible, (2) without health insurance, (3) Indian (as defined in Subsection (h)(3) of OBRA '93), or (4) children with health insurance, which does not cover the cost of vaccines, if they receive their immunizations at a Federally-qualified health center or rural health clinic (as defined by the Social Security Act). Health care providers who agree to certain requirements are eligible through the States to receive free vaccine through this VFC purchase program. Purchases for childhood immunization programs under Section 317(j) of the Public Health Service Act are also included under these contracts. In addition, States may opt to purchase vaccine under any resulting contract for children not included in above categories by using their own funding mechanism. Such orders shall not be subject to refusal by the manufacturers.

**Consolidated VFC Contract Features:**

This contract will include the following features:

(1)   Authorized ordering agencies may order from any contract when a vaccine is available from more than one manufacturer; ordering decisions will be based, at the option of the purchaser, upon price and/or other factors as appropriate (e.g. quality, packaging or other technical considerations).

(2)   This contract will have a guaranteed minimum of 100 Doses only.

(3)   Contractors will have an opportunity to revise unit prices every four months of the contract (not to exceed the initial awarded price). Price revisions will become effective on August 1, 2004 and December 1, 2004. (See Contract Clauses, Paragraph C.1.22, Price Revisions.)

**DEFINITIONS**:

OBRA ORDERS - Vaccine orders under Section 1928(a)(2)(A) of the Social Security Act.

OPTIONAL FUNDING - Vaccine orders under Section 1928(d)(4)(B) of the Social Security Act and orders placed by other Federal agencies and authorized immunization programs.

MRK-KRA01371282
MRK-CHA01371282
Appx8418

MRK-KRA01371283
MRK-CHA01371283

Appx8419

## CONTINUATION OF SF 1449

MANUFACTURER - As defined in Subsection (h)(4) of the Social Security Act, means any corporation, organization, or institution, whether public or private (including Federal, State and local departments, agencies, and instrumentalities), which manufacturers, imports, processes, or distributes under it's label any pediatric vaccine.

STATE AGENCIES - Includes State health departments and certain local health agencies authorized to order hereunder.

317/DA GRANT ORDERS - Vaccine orders under Section 317(j) of the Public Health Service Act.

## TYPE OF CONTRACT:

Indefinite delivery, indefinite quantity type contracts will be awarded for the standard commercial vaccines described herein, manufactured under a current establishment and product license issued by the U.S. Food and Drug Administration (FDA) and as otherwise set forth herein.

MRK-KRA01371284
MRK-CHA01371284
Appx8420

## CONTINUATION OF SF 1449

Contract Line
Item No. (CLIN)   Vaccine Description

**Hepatitis A Pediatric Vaccine (Solicitation CLIN 0005)**

Maximum Estimated Quantity:    4,000,000 Doses
Guaranteed Minimum:                100 Doses

| Description | Estimated Quantity | Unit Price | Extended Amount |
|---|---|---|---|
| Hepatitis A Pediatric Vaccine, Package of 10 single dose vials | 400,000 Pkg (4,000,000 Doses) | $111.50 | $44,600,000.00 |
| | **400,000 Pkg. (4,000,000 Doses)** | **$111.50** | **$44,600,000.00** |

Product Brand Name: Vaqta

NDC Number: 00006-4831-41

Minimum Shelf Life:    12 Months

Minimum Order Size:    10 Doses Per Destination

Federal Excise Tax:    Not Applicable

MRK-KRA01371285
MRK-CHA01371285
Appx8421

MRK-KRA01371286
MRK-CHA01371286

Appx8422

Contract 200-2004-06442

## CONTINUATION OF SF 1449

Contract Line
Item No. (CLIN)    Vaccine Description

0002    **Hepatitis B Pediatric/Adolescent  Vaccine (Ages 0-18) (Solicitation CLIN 0007)**

Maximum Estimated Quantity:    10,000,000 Doses
Guaranteed Minimum:                   100 Doses

| Description | Estimated Quantity | Unit Price | Extended Amount |
|---|---|---|---|
| Hepatitis B Pediatric/ Adolescent Vaccine, Package of 10 single Dose vials | 1,000,000 Pkg. (10,000,000 Doses) | $82.50 | $82,500,000.00 |
| Federal Excise Tax | 1,000,000 Pkg. (10,000,000 Doses) | $ 7.50 | $ 7,500,000.00 |
| **Total** | **1,000,000 Pkg. (10,000,000 Doses)** | **$90.00** | **$90,000,000.00** |

Product Brand Name:    Recombivax HB® Thimersol Free/Preservative Free

NDC Number- 00006-4981-00

Minimum Shelf Life:    18 Months

Minimum Order Size:    25 Doses Per Destination

Federal Excise Tax:    $0.75 Per Dose

Page 5 of 28

MRK-KRA01371287
MRK-CHA01371287
Appx8423

Contract 200-2004-06442

## CONTINUATION OF SF 1449

Contract Line
Item No. (CLIN)    Vaccine Description

**Hepatitis B Vaccine  (2-Dose Regimen) for Adolescents Ages 11 –15 (Solicitation CLIN 0008)**

Maximum Estimated Quantity:    300,000 Doses
Guaranteed Minimum:                    100 Doses

| Description | Estimated Quantity | Unit Price | Extended Amount |
|---|---|---|---|
| Hepatits B Vaccine (2 Dose Regimen) for Adolescents Age 11-15, Package of 10 Single Dose Vials | 30,000 Pkg. (300,000 Doses) | $235.00 | $7,050,000.00 |
| Federal Excise Tax | 30,000 Pkg. (300,000 Doses) | $  7.50 | $    225,000.00 |
| | **30,000 Pkg. (300,000 Doses)** | **$ 242.50** | **$ 7,275,000.00** |

Product/Brand Name: Recombivax HB®

NDC Number: 00006-4995-41

Minimum Shelf Life:    18 Months

Minimum Order Size:    30 Doses Per Destination

Federal Excise Tax:    $0.75 Per Dose

MRK-KRA01371288
MRK-CHA01371288
Appx8424

Contract 200-2004-06442

## CONTINUATION OF SF 1449

Contract Line
Item No. (CLIN)    Vaccine Description

**Hepatitis B Vaccine Combined with Haemophilus (Solicitation Line Item 0009) Influenza Type b Vaccine (Hep B/Hib)**

Maximum Estimated Quantity:    4,000,000 Doses
Guaranteed Minimum:                100 Doses

| Description | Estimated Quantity | Unit Price | Extended Amount |
|---|---|---|---|
| Hepatitis B Vaccine Combined with Haemophilus Influenza Type b Vaccine Package of 10 single Dose vials | 400,000 Pkg. (4,000,000 Doses) | $213.30 | $85,320,000.00 |
| Federal Excise Tax | 400,000 Pkg. (4,000,000 Doses) | $ 15.00 | $6,000,000.00 |
| | **400,000 Pkg. (4,000,000 Doses)** | **$228.30** | **$91,320,000.00** |

Product/Brand Name:    Comvax$^R$

NDC Number:               00006-4898-00

Minimum Shelf Life:      12 Months

Minimum Order Size:    100 Doses Per Destination

Federal Excise Tax:      $1.50 Per Dose

MRK-KRA01371289
MRK-CHA01371289
Appx8425

## CONTINUATION OF SF 1449

Contract Line
Item No. (CLIN)   Vaccine Description

**0005**       **Haemophilus Influenza Type b Vaccine (Hib) – (Solicitation CLIN 0009)**

Maximum Estimated Quantity:   2,500,000 Doses
Monthly Maximum:                    150,000 Doses
Guaranteed Minimum:                   100 Doses

| Description | Estimated Quantity | Unit Price | Extended Amount |
|---|---|---|---|
| Haemophilus Influenza Type b (Hib) Vaccine Package of 10 Single Dose Vials | 250,000 Packages (2,500,000 Doses) | $92.00 | $23,000,000.00 |
| Federal Excise Tax | 250,000 Packages (2,500,000 Doses) | $7.50 | $1,875,000.00 |
| **Total** | **250,000 Packages (2,500,000 Doses)** | **$99.50** | **$24,875,000.00** |

Product/Brand Name: Pedvax HIB®

NDC Number: 00006-4897-00

Minimum Shelf Life:   12 Months

Minimum Order Size:   800 Doses Per Destination

Federal Excise Tax:   $0.75 Per Dose

Note: This vaccine is a 3-dose series.

MRK-KRA01371290
MRK-CHA01371290
Appx8426

Contract 200-2004-06442

## CONTINUATION OF SF 1449

Contract Line
Item No. (CLIN)    Vaccine Description

**Measles, Mumps & Rubella Combination Vaccine (MMR)  (Solicitation CLIN 0013)**

Maximum Estimated Quantity:    8,000,000 Doses
Guaranteed Minimum:    100 Doses

| Description | Estimated Quantity | Unit Price | Extended Amount |
|---|---|---|---|
| MMR Vaccine Package of 10 Single Dose Vials | 800,000 Pkg. (8,000,000 Doses) | $140.00 | $112,000,000.00 |
| Federal Excise Tax | 800,000 Pkg. (8,000,000 Doses) | $ 22.50 | $ 18,000,000.00 |
| | **800,000 Pkg. (8,000,000 Doses)** | **$162.50** | **$130,000,000.00** |

Product/Brand Name:    M-M-R ® II

NDC Number:  00006-4681-00

Minimum Shelf Life:    12 Months

Minimum Order Size    400 Doses Per Destination

Federal Excise Tax:    $2.25 Per Dose

Page 9 of 28

MRK-KRA01371291
MRK-CHA01371291
Appx8427

## CONTINUATION OF SF 1449

Contract Line
Item No. (CLIN)   Vaccine Description

**Varicella Vaccine (Solicitation CLIN 0016)**

Maximum Estimated Quantity:   5,000,000 Doses
Guaranteed Minimum:              100 Doses

| Description | Estimated Quantity | Unit Price | Extended Amount |
|---|---|---|---|
| Varicella Vaccine Package of 10 Single Dose Vials | 500,000 Pkg. (5,000,000 Doses) | $472.50 | $236,250,000.00 |
| Federal Excise Tax | 500,000 Pkg. (5,000,000 Doses) | $7.50 | $ 3,750,000.00 |
| | **500,000 Pkg. (5,000,000 Doses)** | **$480.00** | **$240,000,000.00** |

Product/Brand Name:      Varivax$^{R}$

NDC Number:                00006-4827-00

Minimum Shelf Life:   12 Months

Minimum Order Size:   10 Doses Per Destination

Federal Excise Tax:   $0.75 Per Dose

MRK-KRA01371292
MRK-CHA01371292

Appx8428

## SECTION C - CONTRACT CLAUSES

**C.1    FAR 52.212-4, CONTRACT TERMS AND CONDITIONS - COMMERCIAL ITEMS, as incorporated by reference in Block 27 of the Standard Form 1449, includes the following addendum:**

**C.1.1.    Shelf Life**

Vaccine provided under this contract shall have a minimum shelf life remaining upon delivery to the consignee, as specified within each Contract Line Item Number (See Continuation of SF 1449).

**C.1.2.    Packaging and Packing Requirements**

a.    Packaging:

All items shall be packaged in standard commercial manner.

b.    Packing:

Product shall be packed to ensure maintenance of FDA recommended temperature during transit and safe arrival at destination. Freeze watch indicators or their equivalent are required with each shipment.

**C.1.3.    Contract Period of Performance**

The contract period of performance shall begin on April 1, 2004 or date of award, whichever is later, and shall end on March 31, 2005.

**C.1.4.    Time of Delivery**

Delivery is required to be made at destination within 15 working days after receipt of written or telephonic order (telephone orders to be confirmed in writing).

MRK-KRA01371293
MRK-CHA01371293
Appx8429

## C.1 – Contract Clauses (Continued)

### C.1.5.   Place of Delivery - F.O.B. Destination

    a.    The following applies to all Contract Line Item Numbers, except 0007 (Varicella):

    (1)    The Contractor shall be required to deliver vaccines F.O.B. Destination, as directed by delivery orders, to National, State and regional warehouses, as well as to private distributors under contract with the federal or State Governments (provided that the private distributor indemnifies or obtains insurance to indemnify, defend and hold harmless the Contractor from any claims and costs arising from or resulting from the distributor's handling of the vaccine purchases under this contract; the Contractor agrees that it will not require any indemnification by the distributor to extend to liability caused by acts or omissions of the Contractor) within the 50 states, the District of Columbia, Puerto Rico, Virgin Islands, Guam, American Samoa, the Commonwealth of the Northern Mariana Islands, Palau, Federated States of Micronesia, and the Marshall Islands or other designated sites in the event of a public health emergency as determined by CDC.

    (2)    No more than four (4) shipments each to American Samoa, Palau, Federated States of Micronesia, Guam, Marshall Islands and the Commonwealth of Northern Marianas will be required to be made during the contract period.  In the event that CDC requests the Contractor to make such shipments to these sites, CDC and the Contractor agree to discuss how to implement delivery of vaccine to those sites in the most efficient manner.

    (3)    Should a State assert, and a court uphold, that the State has the right to receive deliveries to individual providers directly from the manufacturers, this contract may be terminated at the option of the contractor.

    b.    The following applies to Contract Line Item Number 0007 (Varicella) only:

    (1)    The Contractor shall be required to deliver vaccines F.O.B. Destination, as directed by delivery orders, to National, State and regional warehouses, individual physician providers, as well as to private distributors under contract with the federal or state governments within the 50 states, the District of Columbia, Puerto Rico, Virgin Islands, Guam, Amercian Samoa or other designated sites in the event of a public health emergency, as determined by CDC.  Deliveries to national, state or regional warehouses will be contingent on the warehouses being validated solely by the CDC, or its appointed independent agent, as meeting all requirements specified in Attachment J1, Merck's Shipping Protocol for Varivax$^R$.  The CDC shall be responsible for identifying and validating all such warehouses as set forth above; however, in an effort to assist the CDC in fulfilling its obligation, the Contractor shall provide a list of all such warehouses of which the Contractor is aware as of the effective date of this contract and shall update such list as the Contractor becomes aware of additional warehouses.  Deliveries to private distributors under contract with the federal or

MRK-KRA01371294
MRK-CHA01371294

state governments will be contingent on (1) the distributor being validated solely by the CDC or its appointed independent agent as meeting all requirements specified in Attachment J1, Merck's Shipping Protocol for Varivax$^R$ and (2) that the distributor indemnifies or obtains insurance to indemnify, defend and hold harmless the Contractor from any claims and costs arising from or resulting from the distributors handling of the vaccine purchased under this contract. The Contractor agrees that it will not require any indemnification by the distributor to extend to liability caused by acts or omissions of the Contractor.

(2)     No more than four (4) shipments each to American Samoa and Guam will be required to be made during the contract period. In the event that CDC requests the Contractor to make such shipments to these sites, CDC and the Contractor agree to discuss how to implement delivery of vaccine to those sites in the most efficient manner.

(3)     Merck's Shipping Protocol for Varivax$^R$ is incorporated herein as Attachment J1

### C.1.6.  Amendment to OBRA Statute

In the event of an amendment to 42 U.S.C. Section 1396(s), any terms of this contract affected by such an amendment will be modified in accordance with the revised statute. The Contracting Officer and the Contractor shall meet to discuss such modifications to the contract before finalization of any changes to the contract.

### C.1.7.  Product Licensure

a.     The vaccines produced and delivered under this contract shall be manufactured under a current establishment and product license issued by the Food and Drug Administration. as indicated below:

2

b.     The Current Good Manufacturing Practice Regulations (CGMPR's) (21CFR Parts 210-211) will be the standard to be applied for manufacturing, processing and packing of drugs, chemicals, biologicals, and reagents.

MRK-KRA01371295
MRK-CHA01371295
Appx8431

**C.1 – Contract Clauses (Continued)**

      c.     The Contractor shall advise the Contracting Officer immediately of any relocation of his prime manufacturing facility or the relocation of any subcontractor's facility, and if at any time during the life of the contract, the item listed under this contract fails to meet CGMPR's and/or a negative Food and Drug Administration Quality Assurance Evaluation is received, the contract may be terminated, in whole or in part, without further liability to the Government.

**C.1.8.  Placement of Orders**

      a.     All vaccine under this contract will be ordered by delivery orders.  Orders shall be placed by the Health and Human Services (HHS) Supply Service Center, the Centers for Disease Control and Prevention (CDC); or other Federal and State agencies as authorized.  Orders may be placed by CDC by telephone (confirmed in writing) or by electronic transfer.

      b.     Optional Funding - Other Authorized Federal and State Agencies:

          (1)     Other Federal and State agencies wishing to order vaccines against this contract must receive written authorization from the Contracting Officer.  A list of authorized users shall be provided to the Contractor.

          (2)     Upon receipt of authorization, other Federal and State agencies may place orders against this contract.  Contractors shall honor all authorized optional funding orders.

      c.     Orders shall be submitted to the Ordering Address specified in Contract Clauses Paragraph C.1.13,  Contractor's Ordering/Payment Address and shall contain the following minimum information:

          (1)     Date of order;
          (2)     Contract number and order number;
          (3)     Item description, quantity and unit price;
          (4)     Delivery or performance date;
          (5)     Place of delivery or performance (including consignee);
          (6)     Packaging, packing and shipping instructions, if any;
          (7)     Accounting and appropriation data;
          (8)     Statement to indicate if partial deliveries are not acceptable; (Lack of a statement shall be construed to mean partial deliveries are acceptable and payment shall be made as required elsewhere herein)
          (9)     Any other pertinent data.

MRK-KRA01371296
MRK-CHA01371296
Appx8432

**C.1 – Contract Clauses (Continued)**

**C.1.9. Delivery Order Limitations**

    a.    Minimum Order Size: Individual delivery orders issued under this contract must meet the minimum order size as specified within each Contract Line Item Number (CLIN) (See Continuation of SF 1449). When the Government requires supplies covered by this contract in amounts less than stated above, the Government is not obligated to purchase, nor is the Contractor obligated to furnish those supplies under this contract.

    b.    Maximum Order: The maximum monthly quantity specified within each Contract Line Item Number (See Continuation of SF 1449) are the maximum number of doses that may be ordered on a monthly basis under the contract, not to exceed the total maximum estimated quantity stated for each CLIN.

**C.1.10.  FAR 52.216-18 ORDERING (OCT 1995)**

    a.    Any supplies and services to be furnished under this contract shall be ordered by issuance of delivery orders or task orders by the individuals or activities designated in the Schedule.  Such orders may be issued from the effective date of the contract through the expiration date of the contract.

    a.    All delivery orders or task orders are subject to the terms and conditions of this contract. In the event of conflict between a delivery order or task order and this contract, the contract shall control.

    c.    If mailed, a delivery order or task order is considered "issued" when the Government deposits the order in the mail.  Orders may be issued orally or by written telecommunications only if authorized in the Schedule.

**C.1.11.  FAR 52.216-22 INDEFINITE QUANTITY (OCT 1995)**

    a.    This is an indefinite-quantity contract for the supplies or services specified, and effective for the period stated, in the Schedule.  The quantities of supplies and services specified in the Schedule are estimates only and are not purchased by this contract.

    b.    Delivery or performance shall be made only as authorized by orders issued  in accordance with the Ordering clause. The Contractor shall furnish to the Government, when and if ordered, the supplies or services specified  in the Schedule up to and including the quantity designated in the Schedule as the "maximum."  The Government shall order at least the quantity of supplies or services designated in the Schedule as the "minimum."

MRK-KRA01371297
MRK-CHA01371297
Appx8433

Contract 200-2004-06442

## C.1 – Contract Clauses (Continued)

c.  Except for any limitations on quantities in the Delivery-Order Limitations clause or in the Schedule, there is no limit on the number of orders that may be issued. The Government may issue orders requiring delivery to multiple destinations or performance at multiple locations.

d.  Any order issued during the effective period of this contract and not completed within that period shall be completed by the Contractor within the time specified in the order. The contract shall govern the Contractor's and Government's rights and obligations with respect to that order to the same extent as if the order were completed during the contract's effective period; provided, that the Contractor shall not be required to make any deliveries under this contract after fifteen (15) working days beyond the expiration date of the contract.

### C.1.12. Report of Orders

a.  The Contractor shall provide monthly reports of all vaccine purchased under this contract by ordering offices other than CDC. The report shall be submitted within 30 days following the end of the month and shall contain the following information:

Name of Purchaser:
Number of Doses Purchased
Lot Number:

b.  Reports shall be forwarded to the designated Project Officer with a copy to the Contracting Officer.

### C.1.13. Contractor's Ordering/Payment Address

Submission of orders and payment of invoices should be addressed as indicated below:

| ORDERING ADDRESS | PAYMENT ADDRESS |
|---|---|
| Merck Vaccine Division | Merck & Co., Inc. |
| P.O. Box 4, Mailstop ZB-750 | P.O. Box 7780-3061 |
| West Point, PA  19486 | Philadelphia, PA  19182-3061 |

MRK-KRA01371298
MRK-CHA01371298
Appx8434

## C.1 – Contract Clauses (Continued)

### C.1.14. Invoice Submission

a. Invoice submission under this contract will be made as follows:

(1) HHS Supply Service Center, CDC and Other Authorized Federal Agencies: The Contractor shall submit invoices via Electronic Data Interchange (EDI) in a format to be mutually agreed upon between CDC and the Contractor.

(2) State and Local Agencies: The Contractor shall submit an original and 3 copies of its invoice(s) to the address specified on the delivery order.

b. The Contractor agrees to include the following information on each invoice:

(1) Contractor's name and invoice date;
(2) Contract number, or other authorization for delivery of property and/or services;
(3) Description, cost or price, and quantity of property and/or services actually delivered or rendered;
(4) Shipping and payment terms;
(5) Other substantiating documentation or information as required by the contract; and
(6) Name where practicable, title, phone number, and complete mailing address of responsible official to whom payment is to be sent.
(7) Lot number of vaccine vials shipped;
(8) Expiration date of vaccine vials shipped; and
(9) CDC accounting and appropriation data as described on the delivery order.

### C.1.15. Method of Payment

a. Payments under this contract will be made as follows:

(1) CDC and Other Authorized Federal Agencies. By check or by wire transfer through the Treasury Financial Communications System at the option of the Government.

(2) State Agencies: By check

b. The Government shall use electronic funds transfer to the maximum extent possible when making payments under this contract. The contractor is required to designate in writing a financial institution for receipt of electronic funds transfer payments. The Contractor shall forward the following information in writing to Centers for Disease Control and Prevention, Attn: Financial Management Office, Atlanta, GA 30333, not later than seven days after receipt of notice of award:

## C.1 – Contract Clauses (Continued)

(1)      Full name (where practicable), title, phone number, and complete mailing address of responsible official(s) to whom check payments are to be sent, and who may be contacted concerning the bank account information requested below.

(2)      The following bank account information required to accomplish wire transfers: (i) Name, address, and telegraphic abbreviation of the receiving financial institution; (ii) receiving financial institution's nine-digit American Bankers Association (ABA) identifying number for routing transfer of funds. (Provide this number only if the receiving financial institution has access to the Federal Reserve Communications System.) (iii) Recipient's name and account number at the receiving financial institution to be credited with the funds. (iv) If the receiving financial institution does not have access to the Federal Reserve Communications System, provide the name of the correspondent financial institution through which the receiving financial institution receives electronic funds transfer messages. If a correspondent financial institution is specified, also provide the address and telegraphic abbreviation of the correspondent financial institution, and the correspondent financial institution's nine-digit ABA identifying number for routing transfer of funds.

(3)      Any changes to the information furnished under paragraph (b) of this clause shall be furnished to Centers for Disease Control and Prevention, Attn: Financial Management Office, Atlanta, GA 30333 in writing at least 30 days before the effective date of the change. It is the Contractor's responsibility to furnish these changes promptly to avoid payments to erroneous addresses or bank accounts.

### C.1.16. Payments by Other Authorized Federal Agencies and State Agencies

All other Federal agencies and State agencies authorized to order vaccine using optional funding shall be required to comply with all terms and conditions hereunder, including the Prompt Payment Act and all payment provisions required by Paragraph's C.1.13, C.1.14 and C.1.15 above. All payment provisions are applicable to all partial deliveries accepted by the ordering office. Ordering offices are responsible for advising the Contractor if partial deliveries are not acceptable before shipment (reference Paragraph C.1.8).

MRK-KRA01371300
MRK-CHA01371300
Appx8436

## C.1 – Contract Clauses (Continued)

### C.1.17.   Project Officer

Rex Ellington has been designated in writing by the Contracting Officer to serve as Project Officer during the period of performance of the contract.  The Project Officer shall be responsible for guidance in regard to the technical aspect of the contract, provide a point for liaison between the Contractor and other Government agencies (Federal and State) and be the general focal point to address technical and logistical problems relating to the performance under the contract.  The Project Officer shall not have the authority to make any commitments or authorize any changes which affect the contract price, terms and/or conditions; any such changes shall be referred to the Contracting Officer for action.

### C.1.18.  Duty To Warn

a.   The Department of Health and Human Services (HHS), HHS  Supply Service Center, Centers for Disease Control and Prevention (CDC), and other HHS, Federal and State agencies as authorized, hereinafter referred to as the Government, represent and agree that all programs which are supplied vaccine under this contract shall take appropriate steps to assure either: (1) that such vaccine is administered to each patient on the basis of an individualized medical judgment by a physician; or (2) that such vaccine is administered after meaningful warnings related to the risks and benefits of vaccination are provided to such patient (or the patient's parent or legal guardian), in form and language understandable to such patient, parent, or guardian, including through use of the appropriate version of the most recent vaccine information materials.

b.   If any claim or action is asserted against the Contractor arising in whole or in part from an alleged failure by the Government, to carry out its responsibilities under paragraph (a) above, the Contractor shall promptly notify the Contracting Officer and furnish to him copies of all pertinent documents served upon or received by the Contractor.  The Government shall provide reasonable assistance and full cooperation including, but not limited to, making witnesses available to testify and providing relevant documents to the Contractor to assist the Contractor in defending any claims arising from the Government's alleged failure to carry out its responsibilities under paragraph (a) above.  The Government shall have the option to participate in the defense of that portion of such claim or action which arises from the alleged failure of the Government to carry out its responsibilities under paragraph (a) above.

MRK-KRA01371301
MRK-CHA01371301
Appx8437

Contract 200-2004-06442

## C.1 – Contract Clauses (Continued)

In the event of the Government's breach of, or failure to carry out, its responsibilities under paragraph (a) above, any measure of resulting damages to the Contractor shall include, but need not be limited to, damages (including money judgments, reasonable attorneys' fees, and other costs) sustained in connection with claims against the Contractor for personal injuries caused by such breach or failure. The Contractor agrees to take appropriate steps to mitigate any such claims by diligently defending claims brought against it or, when appropriate, by entering into reasonable settlement agreements. The entry of a judgment against the Contractor in connection with a claim for personal injury allegedly resulting in whole or in part from the Government's breach of, or failure to carry out, its obligations under paragraph (a) shall not conclusively determine the question whether the personal injury complained of or the damages suffered by the Contractor were caused by the Government's breach of or failure to carry its obligations under paragraph (a). This provision shall not limit any other right of the Contractor to obtain damages or other relief for any breach of this contract or for the settlement of any dispute arising under this contract.

### C.1.19. Return Privileges

Return privileges for credit, reimbursement or exchange do not apply to this contract except vaccines not conforming to the specifications set forth herein, which are limited to credit or exchange only.

### C.1.20. Restrictions on Use of Vaccines

Vaccines obtained under this contract shall be used only as authorized under section 1928 of the Omnibus Budget Reconciliation Act of 1993 (OBRA). Health Care Providers who receive vaccine purchased hereunder are strictly prohibited from reselling such vaccine, from charging for the cost of such vaccine or otherwise seeking reimbursement for vaccine supplies via public purchase.

### C.1.21. Federal Excise Tax Credit

Negotiated prices for the vaccines included in this Contract may include a Federal Excise Tax (See Continuation of SF 1449 for applicable Contract Line Item Numbers). If for any reason the vaccine is returned (other than for resale) or destroyed, the Contractor shall within 6 months following the date the vaccine is returned or destroyed, file a claim for credit or refund relative to any tax previously paid on such vaccine. The Contractor agrees to credit or refund the amount of such excise tax to the purchaser to the extent that the Contractor receives a credit or refund from the Federal Government. Any such credit or refund to the purchaser is expressly conditioned upon the authorized purchaser providing a written summary of events leading to the request for credit or refund. The purchaser shall return all undistributed vaccine to the

MRK-KRA01371302
MRK-CHA01371302
Appx8438

## C.1 – Contract Clauses (Continued)

manufacturer for proper disposal, unless destruction of the vaccine renders return impossible. If destruction of the vaccine renders return impossible and is therefore destroyed by the purchaser, the authorized purchaser must provide a written summary of events to the manufacturer within 30 days of said destruction. If a contract is in place with the Contractor at the time when a credit or refund is due, the purchaser may elect to receive vaccine which will be purchased at the current contract price in lieu of a cash payment. Otherwise, the Contractor shall refund the amount due to the purchaser's account. If a credit or refund is issued by the Contractor to the purchaser's CDC VFC or 317 Fund account, a credit memo and a copy of the purchaser's original request for credit shall be submitted to:

> Centers for Disease Control and Prevention
> National Immunization Program
> Immunization Services Division
> Program Support Branch
> Mailstop E-52, Attn: Rex Ellington
> 1600 Clifton Road
> Atlanta, GA 30333

The credit memo shall clearly identify the purchaser's state and source of funding. A separate copy of the credit memo shall also be sent to the purchaser's mailing address.

CDC acknowledges that the Contractor is not in a position to provide copies of all original purchase requests for credit. It is understood that Merck will provide copies of original purchasers requests for credit whenever possible. The Contractor is not obligated to submit copies of purchasers original requests if such copies are not available to the Contractor.

### C.1.22.   Price Revisions

The Contractor shall be allowed to revise the unit price for each CLIN either upward or downward, effective on the following dates: August 1, 2004 and December 1, 2004, provided that the revised price does not exceed the initial contract price. The contractor shall also, at these times, be allowed to revise proposed maximum quantities for each CLIN and add additional package sizes. Proposals for revisions shall be submitted by the contractor no later than 15 calendar days prior to the dates listed above. The CDC will accomplish these changes to the unit prices by issuing unilateral modifications to the contract(s).

### C.1.23.   New Vaccine Products

The following delineates the general approach to adding new vaccine products to the contract:

a.   Manufacturers who receive a new FDA product license for a vaccine already included within the scope of a VFC resolution may, upon written request, have the new product added to its contract by modification at the price revision intervals stated in Terms and Conditions, Paragraph C.1.22., Price Revisions. Such new products must be consistent with

MRK-KRA01371303
MRK-CHA01371303
Appx8439

### C.1 – Contract Clauses (Continued)

VFC formulary schedules (regarding periodicity and dosage regimens) as established for the vaccine by CDC's Advisory Committee on Immunization Practices (ACIP). Requests for addition of such products must be submitted to the Contracting Officer 30 days prior to the price revision interval dates.

b.    When new vaccine products are approved by the ACIP for inclusion in the VFC formulary, CDC will issue a separate solicitation for obtaining such products. This would include a totally new vaccine or new combination of vaccines, new indications or new formulations for existing products or new dosing regimens for an existing product. Provided negotiations result in receipt of reasonable prices, CDC may, at its option, award separate contracts for these new products or add the products by modification to contracts awarded as a result of solicitation number 2004-N-01104.

### C.1.24.   Prohibition on the Use of Appropriated Funds for Lobbying Activities

The Contractor is hereby notified of the restrictions on the use of Department of Health and Human Services's funding for lobbying of Federal and State legislative bodies.

Section 1352 of Title 10, United Stated Code (Public Law 101-121, effective 12/23/89), among other things, prohibits a recipient (and their subcontractors) of a Federal contract, grant, loan, or cooperative agreement from using appropriated funds (other than profits from a federal contract) to pay any person for influencing or attempting to influence an officer or employee of any agency, a Member of Congress, an officer or employee of Congress, or an employee of a Member of Congress in connection with any of the following covered Federal actions; the awarding of any Federal contract; the making of any Federal grant; the making of any Federal loan; the entering into of any cooperative agreement; or the modification of any Federal contract, grant, loan, or cooperative agreement. For additional information on prohibitions against lobbying activities, see FAR Subpart 3.8 and FAR Clause 52.203-12.

In addition, the current Department of Health and Human Services Appropriations Act provides that no part of any appropriation contained in this Act shall be used, other than for normal and recognized executive-legislative relationships, for publicity or propaganda purposes, for the preparation, distribution, or use of any kit, pamphlet, booklet, publication, radio, television, or video presentation designed to support, or defeat legislation pending before the Congress, or any State or Local legislature except in presentation to the Congress, or any State or Local legislative body itself.

The current Department of Health and Human Services Appropriations Act also provides that no part of any appropriation contained in this Act shall be used to pay the salary or expenses of any contract or grant recipient, or agent acting for such recipient, related to any activity designed to influence legislation or appropriations pending before the Congress, or any State or Local legislature.

MRK-KRA01371304
MRK-CHA01371304
Appx8440

## C.1 – Contract Clauses (Continued)

### C.1.25   Use of VFC Provider Lists and Distribution of Material

Any Contractor that ships vaccine directly to VFC providers is prohibited from inserting any promotional material into shipping containers for vaccine purchased under this contract, except for material related to use of the vaccine, as approved in writing by the CDC Project Officer.

In addition, Contractors are prohibited from utilizing any list of VFC providers provided by the CDC for any mailing or other communication intended to promote the use of particular vaccines or any other products, except as approved in writing by the CDC Project Officer. Contractors are prohibited from using such CDC-provided VFC Lists to provide names and/or addresses of VFC providers to any third party, except as needed to comply with the terms of this contract, in which case the CDC Project Officer shall be notified of such use. The CDC recognizes that a CDC provider may have independent relationships with the Contractor other than the Contractor's receipt of any CDC-provided VFC List. The Contractor may send such mailings or other communications and may provide such names and/or addresses to any third party, based on those relationships without the consent of the CDC. Without in any way limiting the foregoing, the CDC specifically authorizes the Contractor to use any list of VFC providers provided by CDC partners (e.g., local health departments) or CDC grantees so long as the Contractor is informed by the applicable CDC partner or grantee that such list is being made available to all Contractors.

### C.1.26   Delinquent Delivery Reports

Except for Varicella vaccine, the Contractor shall provide CDC with a weekly listing of all CDC orders that have not been shipped within the 15 working day requirement. The report shall include the following information: project name, order number, date of order, and status of order in number of pending/undelivered doses. For Varicella vaccine, the Contractor shall provide a weekly summary of the percentage of doses on backorder greater than 15 working days. Depending upon the nature of the delinquencies, the CDC may request this report less often during the Contract performance period and in this situation, frequency and method of providing such reports shall be mutually agreed upon by the Contractor and CDC. The Contractor, as soon as information is available, and the Contractor determines that the information is appropriate to be shared, shall provide an explanation as to the cause for the delinquent deliveries as well as when the vaccine will be delivered. This notification shall not relieve the Contractor from meeting its obligations under the contract and shall not limit the Government's right to seek relief for any breach of contract for failure to perform, including termination for cause. Notwithstanding the foregoing, the CDC agrees to allow the Contractor 60 days to remedy any supply shortage and therefore will not seek relief for any breach of contract for failure to perform, including termination for cause, during this time.

The Contractor is precluded from notifying the states or other parties prior to notifying CDC of any vaccine orders that have not been filled within the 15 working day requirement.

CDC acknowledges that the explanation as to the cause for delinquent deliveries and when vaccine will be delivered is confidential and proprietary information of the Contractor, and shall not use such

MRK-KRA01371305
MRK-CHA01371305

Appx8441

Contract 200-2004-06442

information other than for CDC's internal tracking and reporting purposes and shall not further disclose such information without the Contractor's prior written consent unless required by law or other Federal authority. The Contractor acknowledges that the failure to fill orders as well as data associated with such failure are not confidential or proprietary data but are data incidental to contract performance. In the event that CDC is required by law or other Federal authority to disclose the explanation as to the cause for delinquent deliveries and when vaccine will be delivered, CDC shall notify the Contractor prior to making such disclosure in accordance with law or other Federal authority.

### C.1.27 Biological Surveillance Data Reports

The Contractor shall submit a monthly report of historical sales data for the United States by month specifying the name of the vaccine and the total number of doses sold (segregated by CDC and non-CDC sales), in a format acceptable to CDC and the Contractor. Information related to vaccine sales through CDC contracts is not considered proprietary. CDC acknowledges that those reports pertaining to private sales unrelated to this contract are confidential and proprietary information of the Contractor, and shall not use such reports for any purpose other than CDC's internal tracking and reporting purposes and shall not further disclose such reports without the Contractor's prior written consent unless required by law or other Federal authority; provided that, no prior Merck authorization shall be required for the CDC to include the data from the Contractor's report in a report in which aggregated data from multiple manufacturers is summarized, so long as, with respect to multi-source products, the CDC's aggregated report does not include any data which could be individually identified as the Contractors. In the event that CDC is required by law or other Federal authority to disclose such reports required to be held confidential hereunder, CDC shall notify the Contractor prior to making such disclosure in accordance with law or other Federal authority.

### C.1.28 Prohibitions on Inducements

The Contractor is expressly prohibited from offering inducements of any kind to authorized purchasers (i.e., city, county, and state entities) ordering vaccine under this contract for the purpose of obtaining orders for vaccine. Examples of such inducements include, but are not limited to, free or reduced prices for syringes, vaccines, or other medical products or supplies. Notwithstanding the foregoing, CDC agrees that this section does not prohibit the Contractor from providing promotional and/or educational materials and resources to such authorized purchasers, including, but not limited to, brochures, patient information, reminder items (e.g., pens, notepads, vial dispensers) and detail aids.

### C.1.29 Advance Notice of Supply Issues

The Contractor, as soon as information if available and the Contractor determines that the information is appropriate to be shared, shall provide notification to CDC/NIP of any supply issue which will result in the Contractor's failure to deliver vaccine within the fifteen working day requirement specified in the contract. CDC acknowledges that any information provided by Merck in connection with such notification is confidential and proprietary information of the Contractor, and shall not use such information other than for CDC's internal tracking and reporting purposes and shall not further disclose such information without the Contractor's prior written consent unless required by law or other Federal authority. In the event that CDC is required by law or other Federal authority to disclose any such information, CDC shall notify the Contractor prior to making such disclosure in accordance with law or other Federal authority.

MRK-KRA01371306
MRK-CHA01371306

Appx8442

## SECTION C - CONTRACT CLAUSES

C.2    **Contract Terms and Conditions Required to Implement Statutes or Executive Orders-Commercial Items (Jan 2004)**

(a) The Contractor shall comply with the following Federal Acquisition Regulation (FAR) clause, which is incorporated in this contract by reference, to implement provisions of law or Executive orders applicable to acquisitions of commercial items: 52.233-3, Protest after Award (Aug 1996) (31 U.S.C. 3553).

(b) The Contractor shall comply with the FAR clauses in this paragraph (b) that the Contracting Officer has indicated as being incorporated in this contract by reference to implement provisions of law or Executive orders applicable to acquisitions of commercial items:

*[Contracting Officer check as appropriate.]*

X (1) 52.203-6, Restrictions on Subcontractor Sales to the Government (Jul 1995), with Alternate I (Oct 1995) (41 U.S.C. 253g and 10 U.S.C. 2402).

__ (2) 52.219-3, Notice of Total HUBZone Set-Aside (Jan 1999) (15 U.S.C. 657a).

__ (3) 52.219-4, Notice of Price Evaluation Preference for HUBZone Small Business Concerns (Jan 1999) (if the offeror elects to waive the preference, it shall so indicate in its offer) (15 U.S.C. 657a).

__ (4)(i) 52.219-5, Very Small Business Set-Aside (June 2003) (Pub. L. 103-403, section 304, Small Business Reauthorization and Amendments Act of 1994).

__ (ii) Alternate I (Mar 1999) of 52.219-5.

__ (iii) Alternate II (June 2003) of 52.219-5.

__ (5)(i) 52.219-6, Notice of Total Small Business Set-Aside (June 2003) (15 U.S.C. 644).

__ (ii) Alternate I (Oct 1995) of 52.219-6.

__ (6)(i) 52.219-7, Notice of Partial Small Business Set-Aside (June 2003) (15 U.S.C. 644).

__ (ii) Alternate I (Oct 1995) of 52.219-7.

X (7) 52.219-8, Utilization of Small Business Concerns (Oct 2000) (15 U.S.C. 637(d)(2) and (3)).

X (8)(i) 52.219-9, Small Business Subcontracting Plan (Jan 2002) (15 U.S.C. 637(d)(4).

__ (ii) Alternate I (Oct 2001) of 52.219-9.

__ (iii) Alternate II (Oct 2001) of 52.219-9.

__ (9) 52.219-14, Limitations on Subcontracting (Dec 1996) (15 U.S.C. 637(a)(14)).

__ (10)(i) 52.219-23, Notice of Price Evaluation Adjustment for Small Disadvantaged Business Concerns (June 2003) (Pub. L. 103-355, section 7102, and 10 U.S.C. 2323) (if the offeror elects to waive the adjustment, it shall so indicate in its offer).

__ (ii) Alternate I (June 2003) of 52.219-23.

__ (11) 52.219-25, Small Disadvantaged Business Participation Program-Disadvantaged Status and Reporting (Oct 1999) (Pub. L. 103-355, section 7102, and 10 U.S.C. 2323).

__ (12) 52.219-26, Small Disadvantaged Business Participation Program-Incentive Subcontracting (Oct 2000) (Pub. L. 103-355, section 7102, and 10 U.S.C. 2323).

__ (13) 52.222-3, Convict Labor (June 2003) (E.O. 11755).

X (14) 52.222-19, Child Labor-Cooperation with Authorities and Remedies (Jan 2004) (E.O. 13126).

X (15) 52.222-21, Prohibition of Segregated Facilities (Feb 1999).

X (16) 52.222-26, Equal Opportunity (Apr 2002) (E.O. 11246).

X (17) 52.222-35, Equal Opportunity for Special Disabled Veterans, Veterans of the Vietnam Era, and Other Eligible Veterans (Dec 2001) (38 U.S.C. 4212).

X (18) 52.222-36, Affirmative Action for Workers with Disabilities (Jun 1998) (29 U.S.C. 793).

X (19) 52.222-37, Employment Reports on Special Disabled Veterans, Veterans of the Vietnam Era, and Other Eligible Veterans (Dec 2001) (38 U.S.C. 4212).

__ (20)(i) 52.223-9, Estimate of Percentage of Recovered Material Content for EPA-Designated Products (Aug 2000) (42 U.S.C. 6962(c)(3)(A)(ii)).

__ (ii) Alternate I (Aug 2000) of 52.223-9 (42 U.S.C. 6962(i)(2)(C)).

__ (21) 52.225-1, Buy American Act-Supplies (June 2003) (41 U.S.C. 10a-10d).

MRK-KRA01371307
MRK-CHA01371307

__ (22)(i) 52.225-3, Buy American Act-Free Trade Agreements-Israeli Trade Act (Jan 2004) (41 U.S.C. 10a-10d, 19 U.S.C. 3301 note, 19 U.S.C. 2112 note, Pub. L. 108-77, 108-78).
__ (ii) Alternate I (Jan 2004) of 52.225-3.
__ (iii) Alternate II (Jan 2004) of 52.225-3.
X (23) 52.225-5, Trade Agreements (Jan 2004) (19 U.S.C. 2501, *et seq.*, 19 U.S.C. 3301 note).
__ (24) 52.225-13, Restrictions on Certain Foreign Purchases (Oct 2003) (E.o.s, proclamations, and statutes administered by the Office of Foreign Assets Control of the Department of the Treasury).
__ (25) 52.225-15, Sanctioned European Union Country End Products (Feb 2000) (E.O. 12849).
__ (26) 52.225-16, Sanctioned European Union Country Services (Feb 2000) (E.O. 12849).
__ (27) 52.232-29, Terms for Financing of Purchases of Commercial Items (Feb 2002) (41 U.S.C. 255(f), 10 U.S.C. 2307(f)).
__ (28) 52.232-30, Installment Payments for Commercial Items (Oct 1995) (41 U.S.C. 255(f), 10 U.S.C. 2307(f)).
X (29) 52.232-33, Payment by Electronic Funds Transfer-Central Contractor Registration (Oct 2003) (31 U.S.C. 3332).
__ (30) 52.232-34, Payment by Electronic Funds Transfer-Other than Central Contractor Registration (May 1999) (31 U.S.C. 3332).
__ (31) 52.232-36, Payment by Third Party (May 1999) (31 U.S.C. 3332).
__ (32) 52.239-1, Privacy or Security Safeguards (Aug 1996) (5 U.S.C. 552a).
__ (33)(i)  52.247-64, Preference for Privately Owned U.S.-Flag Commercial Vessels (Apr 2003) (46 U.S.C. Appx 1241 and 10 U.S.C. 2631)..
__ (ii) Alternate I (Apr 1984) of 52.247-64.
(c) The Contractor shall comply with the FAR clauses in this paragraph (c), applicable to commercial services, that the Contracting Officer has indicated as being incorporated in this contract by reference to implement provisions of law or Executive orders applicable to acquisitions of commercial items:

[*Contracting Officer check as appropriate.*]

__ (1) 52.222-41, Service Contract Act of 1965, as Amended (May 1989) (41 U.S.C. 351, *et seq.*).
__ (2) 52.222-42, Statement of Equivalent Rates for Federal Hires (May 1989) (29 U.S.C. 206 and 41 U.S.C. 351, *et seq.*).
__ (3) 52.222-43, Fair Labor Standards Act and Service Contract Act-Price Adjustment (Multiple Year and Option Contracts) (May 1989) (29 U.S.C. 206 and 41 U.S.C. 351, *et seq.*).
__ (4) 52.222-44, Fair Labor Standards Act and Service Contract Act-Price Adjustment (Feb 2002) (29 U.S.C. 206 and 41 U.S.C. 351, *et seq.*).
__ (5) 52.222-47, SCA Minimum Wages and Fringe Benefits Applicable to Successor Contract Pursuant to Predecessor Contractor Collective Bargaining Agreements (CBA) (May 1989) (41 U.S.C. 351, *et seq.*).
(d) *Comptroller General Examination of Record.* The Contractor shall comply with the provisions of this paragraph (d) if this contract was awarded using other than sealed bid, is in excess of the simplified acquisition threshold, and does not contain the clause at 52.215-2, Audit and Records-Negotiation.
(1) The Comptroller General of the United States, or an authorized representative of the Comptroller General, shall have access to and right to examine any of the Contractor's directly pertinent records involving transactions related to this contract.
(2) The Contractor shall make available at its offices at all reasonable times the records, materials, and other evidence for examination, audit, or reproduction, until 3 years after final payment under this contract or for any shorter period specified in FAR Subpart 4.7, Contractor Records Retention, of the other clauses of this contract. If this contract is completely or partially terminated, the records relating to the work terminated shall be made available for 3 years after any resulting final termination settlement. Records relating to appeals under the disputes clause or to litigation or the settlement of claims arising under or relating to this contract shall be made available until such appeals, litigation, or claims are finally resolved.

MRK-KRA01371308
MRK-CHA01371308
Appx8444

Contract 200-2004-06442

(3) As used in this clause, records include books, documents, accounting procedures and practices, and other data, regardless of type and regardless of form. This does not require the Contractor to create or maintain any record that the Contractor does not maintain in the ordinary course of business or pursuant to a provision of law.

(e)(1) Notwithstanding the requirements of the clauses in paragraphs (a), (b), (c), and (d) of this clause, the Contractor is not required to flow down any FAR clause, other than those in paragraphs (i) through (vi) of this paragraph in a subcontract for commercial items. Unless otherwise indicated below, the extent of the flow down shall be as required by the clause-

(i) 52.219-8, Utilization of Small Business Concerns (Oct 2000) (15 U.S.C. 637(d)(2) and (3)), in all subcontracts that offer further subcontracting opportunities. If the subcontract (except subcontracts to small business concerns) exceeds $500,000 ($1,000,000 for construction of any public facility), the subcontractor must include 52.219-8 in lower tier subcontracts that offer subcontracting opportunities.

(ii) 52.222-26, Equal Opportunity (Apr 2002) (E.O. 11246).

(iii) 52.222-35, Equal Opportunity for Special Disabled Veterans, Veterans of the Vietnam Era, and Other Eligible Veterans (Dec 2001) (38 U.S.C. 4212).

(iv) 52.222-36, Affirmative Action for Workers with Disabilities (June 1998) (29 U.S.C. 793).

(v) 52.222-41, Service Contract Act of 1965, as Amended (May 1989), flow down required for all subcontracts subject to the Service Contract Act of 1965 (41 U.S.C. 351, *et seq.*).

(vi) 52.247-64, Preference for Privately Owned U.S.-Flag Commercial Vessels (Apr 2003) (46 U.S.C. Appx 1241 and 10 U.S.C. 2631). Flow down required in accordance with paragraph (d) of FAR clause 52.247-64.

(2) While not required, the contractor may include in its subcontracts for commercial items a minimal number of additional clauses necessary to satisfy its contractual obligations.

(End of clause)

MRK-KRA01371309
MRK-CHA01371309

Appx8445

Contract 200-2004-06442

**SECTION D - CONTRACT DOCUMENTS, EXHIBITS OR ATTACHMENTS**

| ATTACHMENT NO. | TITLE | NUMBER OF PAGES |
|---|---|---|
| J1 | Merck Shipping Protocol for VARIVAX® | 4 |

MRK-KRA01371310
MRK-CHA01371310
Appx8446

10/25/2019
Declaration of G. Reilly
EXHIBIT 303

| SOLICITATION/CONTRACT/ORDER FOR COMMERCIAL ITEMS | | 1. REQUISITION NUMBER | | PAGE 1 OF 29 |
|---|---|---|---|---|
| *OFFEROR TO COMPLETE BLOCKS 12, 17, 23, 24, & 30* | | | | |

| 2. CONTRACT NO. 200-2003-01122 | 3. AWARD/EFFECTIVE DATE 04/01/2003 | 4. ORDER NUMBER | 5. SOLICITATION NUMBER 2003-N-00734 | 6. SOLICITATION ISSUE DATE |
|---|---|---|---|---|

| 7. FOR SOLICITATION INFORMATION CALL: ► | a. NAME Allyson R. Brown | b. TELEPHONE NUMBER (No collect calls) (770) 488-2649 | 8. OFFER DUE DATE/ LOCAL TIME 01/22/2003 |
|---|---|---|---|

| 9. ISSUED BY                             CODE    27 | 10. THIS ACQUISITION IS | 11. DELIVERY FOR FOB DESTINATION UNLESS BLOCK IS MARKED | 12. DISCOUNT TERMS |
|---|---|---|---|

Centers for Disease Control and Prevention (PGO)
Contracts Management Branch
2920 Brandywine Rd, Rm 3000
Atlanta, GA 30341-5539

**RECEIVED**
**APR 0 7 2003**
**JOANNE MONAHAN**

UNRESTRICTED

X SET ASIDE:          % FOR

SMALL BUSINESS

SMALL DISADV. BUSINESS

8(A)

SIC: 325414

SIZE STANDARD:

X SEE SCHEDULE

13a. THIS CONTRACT IS A RATED ORDER UNDER DPAS (15 CFR 700)

13b. RATING

14. METHOD OF SOLICITATION

RFQ          IFB          X RFP

| 15. DELIVER TO                          CODE | 16. ADMINISTERED BY                     CODE    27 |
|---|---|
| To Be Shown on Delivery Orders | Centers for Disease Control and Prevention (PGO) Contracts Management Branch 2920 Brandywine Rd, Rm 3000 Atlanta, GA 30341-5539 |

| 17a. CONTRACTOR/ OFFEROR   CODE  297   FACILITY CODE | 18a. PAYMENT WILL BE MADE BY              CODE   434 |
|---|---|
| Merck Vaccine Division          TIN:22-1109110 P O Box 4                       DUNS:00-238-7926 WP 97 B 358 TELEPHONE NO. | See Contract Clause C.1.15 |

17b. CHECK IF REMITTANCE IS DIFFERENT AND PUT SUCH ADDRESS IN OFFER

18b. SUBMIT INVOICES TO ADDRESS SHOWN IN BLOCK 18a UNLESS BLOCK BELOW IS CHECKED        SEE ADDENDUM

| 19. ITEM NO. | 20. SCHEDULE OF SUPPLIES/SERVICES | 21. QUANTITY | 22. UNIT | 23. UNIT PRICE | 24. AMOUNT |
|---|---|---|---|---|---|
| | Consolidated Vaccines for Children (VFC) Contract "See Continuation Page" *(Attach Additional Sheets as Necessary)* | | | | |

| 25. ACCOUNTING AND APPROPRIATION DATA To Be Shown on Delivery Orders | 26. TOTAL AWARD AMOUNT (For Govt. Use Only) $619,107,690.00 |
|---|---|

27a. SOLICITATION INCORPORATES BY REFERENCE FAR 52.212-1, 52.212-4.  FAR 52.212-3 AND 52.212-5 ARE ATTACHED. ADDENDA    ARE    ARE NOT ATTACHED.

X 27b. CONTRACT/PURCHASE ORDER INCORPORATES BY REFERENCE FAR 52.212-4. FAR 52.212-5 IS ATTACHED. ADDENDA    X ARE    ARE NOT ATTACHED.

| 28. CONTRACTOR IS REQUIRED TO SIGN THIS DOCUMENT AND RETURN          COPIES TO ISSUING OFFICE. CONTRACTOR AGREES TO FURNISH AND DELIVER ALL ITEMS SET FORTH OR OTHERWISE IDENTIFIED ABOVE AND ON ANY ADDITIONAL SHEETS SUBJECT TO THE TERMS AND CONDITIONS SPECIFIED HEREIN. | 29. AWARD OF CONTRACT: REFERENCE  Merck  OFFER DATED       . YOUR OFFER ON SOLICITATION (BLOCK 5), X INCLUDING ANY ADDITIONS OR CHANGES WHICH ARE SET FORTH HEREIN, IS ACCEPTED AS TO ITEMS: |
|---|---|
| 30a. SIGNATURE OF OFFEROR/CONTRACTOR *[signature]* | 31a. UNITED STATES OF AMERICA (Signature of Contracting Officer) *[signature]* |
| 30b. NAME AND TITLE OF SIGNER (Type or print) Adel Mahmoud, MD, Ph.D. President, Merck Vaccine Division | 30c. DATE SIGNED 3/27/03 | 31b. NAME OF CONTRACTING OFFICER (Type or print) WILLIAM J. RYAN, JR. | 31c. DATE SIGNED 4/1/03 |

| 32a. QUANTITY IN COLUMN 21 HAS BEEN | 33. SHIP NUMBER | 34. VOUCHER NUMBER | 35. AMOUNT VERIFIED CORRECT FOR |
|---|---|---|---|
| RECEIVED    INSPECTED    ACCEPTED, AND CONFORMS TO THE CONTRACT, EXCEPT AS NOTED | PARTIAL    FINAL | | |
| 32b. SIGNATURE OF AUTHORIZED GOV'T REPRESENTATIVE   32c. DATE | 36. PAYMENT COMPLETE    PARTIAL    FINAL | | 37. CHECK NUMBER |
| | 38. S/R ACCOUNT NUMBER | 39. S/R VOUCHER NUMBER | 40. PAID BY |
| 41a. I CERTIFY THIS AMOUNT IS CORRECT AND PROPER FOR PAYMENT | 42a. RECEIVED BY (Print) | | |
| 41b. SIGNATURE AND TITLE OF CERTIFYING OFFICER   41c. DATE | 42b. RECEIVED AT (Location) | | |
| | 42c. DATE REC'D | 42d. TOTAL CONTAINERS | |

AUTHORIZED FOR LOCAL REPRODUCTION          SEE REVERSE FOR OMB CONTROL NUMBER AND PAPERWORK BURDEN STATEMENT          STANDARD FORM 1449          (10-95)

MRK-KRA01371311
MRK-CHA01371311
Appx8448

# TABLE OF CONTENTS

| Section | Document/Clause/Provision | Page No. |
|---------|---------------------------|----------|
| A | Standard Form 1449 | 1 |
| B | Continuation of SF1449 (Block 19 – 24) | 2 |
| C | Contract Clauses | 12 |
| D | Contract Documents, Exhibits or Attachments | 29 |

MRK-KRA01371312
MRK-CHA01371312
Appx8449

## SECTION B – CONTINUATION OF SF 1449

**BACKGROUND:**

The Vaccine For Children (VFC) program, established pursuant to Section 13631 of the Omnibus Budget Reconciliation Act of 1993 (OBRA '93), guarantees federal support for the purchase and supply of sufficient quantities of vaccine to the States to cover a defined group of children. Children (18 years-of-age or younger) who qualify for immunization through the VFC purchase program include those who are (1) Medicaid-eligible, (2) without health insurance, (3) Indian (as defined in Subsection (h)(3) of OBRA '93), or (4) children with health insurance, which does not cover the cost of vaccines, if they receive their immunizations at a Federally-qualified health center or rural health clinic (as defined by the Social Security Act). Health care providers who agree to certain requirements are eligible through the States to receive free vaccine through this VFC purchase program. Purchases for childhood immunization programs under Section 317(j) of the Public Health Service Act are also included under these contracts. In addition, States may opt to purchase vaccine under any resulting contract for children not included in above categories by using their own funding mechanism. Such orders shall not be subject to refusal by the manufacturers.

**Consolidated VFC Contract Features:**

This contract will include the following features:

(1)   Authorized ordering agencies may order from any contract when a vaccine is available from more than one manufacturer; ordering decisions will be based, at the option of the purchaser, upon price and/or other factors as appropriate (e.g. quality, packaging or other technical considerations).

(2)   This contract will have a guaranteed minimum of 100 Doses only.

(3)   Contractors will have an opportunity to revise unit prices every four months of the contract (not to exceed the initial awarded price). Price revisions will become effective on August 1, 2003 and December 1, 2003. (See Contract Clauses, Paragraph C.1.22, Price Revisions.)

**DEFINITIONS:**

OBRA ORDERS - Vaccine orders under Section 1928(a)(2)(A) of the Social Security Act.

OPTIONAL FUNDING - Vaccine orders under Section 1928(d)(4)(B) of the Social Security Act and orders placed by other Federal agencies and authorized immunization programs.

MRK-KRA01371313
MRK-CHA01371313
Appx8450

CONTINUATION OF SF 1449

<u>MANUFACTURER</u> - As defined in Subsection (h)(4) of the Social Security Act, means any corporation, organization, or institution, whether public or private (including Federal, State and local departments, agencies, and instrumentalities), which manufacturers, imports, processes, or distributes under it's label any pediatric vaccine.

<u>STATE AGENCIES</u> - Includes State health departments and certain local health agencies authorized to order hereunder.

<u>317/DA GRANT ORDERS</u> - Vaccine orders under Section 317(j) of the Public Health Service Act.


TYPE OF CONTRACT:

Indefinite delivery, indefinite quantity type contracts will be awarded for the standard commercial vaccines described herein, manufactured under a current establishment and product license issued by the U.S. Food and Drug Administration (FDA) and as otherwise set forth herein.

MRK-KRA01371314
MRK-CHA01371314
Appx8451

## CONTINUATION OF SF 1449

Contract Line
Item No. (CLIN)   Vaccine Description

**Hepatitis A Pediatric Vaccine (Solicitation CLIN 0004)**

Maximum Estimated Quantity:   4,000,000 Doses
Guaranteed Minimum:                100 Doses

| Description | Estimated Quantity | Unit Price | Extended Amount |
|---|---|---|---|
| Hepatitis A Pediatric Vaccine, Package of 10 single dose vials | 400,000 Pkg (4,000,000 Doses) | $111.50 | $44,600,000.00 |
| | **400,000 Pkg. (4,000,000 Doses)** | **$111.50** | **$44,600,000.00** |

Product Brand Name: Vaqta

NDC Number: 00006-4831-41

Minimum Shelf Life:   12 Months

Minimum Order Size:   10 Doses Per Destination

Federal Excise Tax:     Not Applicable

MRK-KRA01371315
MRK-CHA01371315
Appx8452

Contract 200-2003-01122

## CONTINUATION OF SF 1449

Contract Line
Item No. (CLIN)    Vaccine Description

**0002**          **Hepatitis B Pediatric/Adolescent  Vaccine (Ages 0-18) (Solicitation CLIN 0006)**

                  Maximum Estimated Quantity:   12,000,000 Doses
                  Guaranteed Minimum:                100 Doses

| Description | Estimated Quantity | Unit Price | Extended Amount |
|---|---|---|---|
| Hepatitis B Pediatric/ Adolescent Vaccine, Package of 10 single Dose vials | 1,200,000 Pkg. (12,000,000 Doses) | $87.50 | $105,000,000.00 |
| Federal Excise Tax | 1,200,000 Pkg. (12,000,000 Doses) | $ 7.50 | $ 9,000,000.00 |
| **Total** | **1,200,000 Pkg. (12,000,000 Doses)** | **$95.00** | **$114,000,000.00** |

Product Brand Name:    Recombivax HB® Thimersol Free/Preservative Free

NDC Number- 00006-4981-00

Minimum Shelf Life:    18 Months

Minimum Order Size:   25 Doses Per Destination

Federal Excise Tax:    $0.75 Per Dose

MRK-KRA01371316
MRK-CHA01371316
Appx8453

## CONTINUATION OF SF 1449

Contract Line
Item No. (CLIN)   <u>Vaccine Description</u>

**Hepatitis B Vaccine  (2-Dose Regimen) for Adolescents Ages 11 –15 (Solicitation CLIN 0007)**

Maximum Estimated Quantity:   300,000 Doses
Guaranteed Minimum:                  100 Doses

| <u>Description</u> | <u>Estimated Quantity</u> | <u>Unit Price</u> | <u>Extended Amount</u> |
|---|---|---|---|
| Hepatits B Vaccine (2 Dose Regimen) for Adolescents Age 11-15, Package of 10 Single Dose Vials | 30,000 Pkg. (300,000 Doses) | $235.00 | $7,050,000.00 |
| Federal Excise Tax | 30,000 Pkg. (300,000 Doses) | $   7.50 | $     225,000.00 |
| | **30,000 Pkg. (300,000 Doses)** | **$ 242.50** | **$ 7,275,000.00** |

Product/Brand Name: Recombivax HB®

NDC Number: 00006-4995-41

Minimum Shelf Life:    18 Months

Minimum Order Size:   30 Doses Per Destination

Federal Excise Tax:    $0.75 Per Dose

MRK-KRA01371317
MRK-CHA01371317
Appx8454

Contract 200-2003-01122

## CONTINUATION OF SF 1449

Contract Line
Item No. (CLIN)     Vaccine Description

**Hepatitis B Vaccine  Combined with Haemophilus  (Solicitation Line Item 0008)**
**Influenza Type b Vaccine (Hep B/Hib)**

Maximum Estimated Quantity:    4,000,000 Doses
Guaranteed Minimum:                  100 Doses

| Description | Estimated Quantity | Unit Price | Extended Amount |
|---|---|---|---|
| Hepatitis B Vaccine Combined with Haemophilus Influenza Type b Vaccine Package of 10 single Dose vials | 400,000 Pkg. (4,000,000 Doses) | $203.30 | $81,320,000.00 |
| Federal Excise Tax | 400,000 Pkg. (4,000,000 Doses) | $ 15.00 | $6,000,000.00 |
| | **400,000 Pkg. (4,000,000 Doses)** | **$218.30** | **$87,320,000.00** |

Product/Brand Name:    Comvax$^R$

NDC Number:              00006-4898-00

Minimum Shelf Life:     12 Months

Minimum Order Size:   100 Doses Per Destination

Federal Excise Tax:      $1.50 Per Dose

**Page 7 of 29**

MRK-KRA01371318
MRK-CHA01371318
Appx8455

## CONTINUATION OF SF 1449

Contract Line
Item No. (CLIN)      Vaccine Description

0005      **Haemophilus Influenza Type b Vaccine (Hib) – (Solicitation CLIN 0009)**

Maximum Estimated Quantity:   1,800,000 Doses
Monthly Maximum:                   150,000 Doses
Guaranteed Minimum:                    100 Doses

| Description | Estimated Quantity | Unit Price | Extended Amount |
|---|---|---|---|
| Haemophilus Influenza Type b (Hib) Vaccine Package of 10 Single Dose Vials | 180,000 Packages (1,800,000 Doses) | $90.20 | $16,236,000.00 |
| Federal Excise Tax | 180,000 Packages (1,800,000 Doses) | $7.50 | $1,350,000.00 |
| **Total** | **180,000 Packages (1,800,000 Doses)** | **$97.70** | **$17,586,000.00** |

Product/Brand Name: Pedvax HIB®

NDC Number: 00006-4897-00

Minimum Shelf Life:    12 Months

Minimum Order Size:    800 Doses Per Destination

Federal Excise Tax:    $0.75 Per Dose

Note: This vaccine is a 3-dose series.

MRK-KRA01371319
MRK-CHA01371319
Appx8456

## CONTINUATION OF SF 1449

Contract Line
Item No. (CLIN)   Vaccine Description

**Rubella Vaccine (Solicitation CLIN 0012)**

Maximum Estimated Quantity:   1,000 Doses
Guaranteed Minimum:              100 Doses

| Description | Estimated Quantity | Unit Price | Extended Amount |
|---|---|---|---|
| Rubella Vaccine Package of 10 Single Dose Vials | 100 Pkg. (1,000 Doses) | $59.40 | $5,940.00 |
| Federal Excise Tax | 100 Pkg. (1,000 Doses) | $7.50 | $  750.00 |
| | **100 Pkg. (1,000 Doses)** | **$66.90** | **$6,690.00** |

Product Brand Name: Meruvax$^{R}$ II

NDC Number:  00006-4673-00

Minimum Shelf Life:    12 Months

Minimum Order Size:   100 Doses Per Destination

Federal Excise Tax:    $0.75 Per Dose

MRK-KRA01371320
MRK-CHA01371320
Appx8457

## CONTINUATION OF SF 1449

Contract Line
Item No. (CLIN)   Vaccine Description

007          **Measles, Mumps & Rubella Combination Vaccine (MMR)  (Solicitation CLIN 0010)**

Maximum Estimated Quantity:    8,000,000 Doses
Monthly Maximum:               1,000,000 Doses
Guaranteed Minimum:                  100 Doses

| Description | Estimated Quantity | Unit Price | Extended Amount |
|---|---|---|---|
| MMR Vaccine Package of 10 Single Dose Vials | 800,000 Pkg. (8,000,000 Doses) | $137.40 | $109,920,000.00 |
| Federal Excise Tax | 800,000 Pkg. (8,000,000 Doses) | $ 22.50 | $ 18,000,000.00 |
| **Total** | **800,000 Pkg. (8,000,000 Doses)** | **$159.90** | **$127,920,000.00** |

Product/Brand Name:    M-M-R ® II

NDC Number:  00006-4681-00

Minimum Shelf Life:    12 Months

Minimum Order Size:    400 Doses Per Destination

Federal Excise Tax:    $2.25 Per Dose

MRK-KRA01371321
MRK-CHA01371321
Appx8458

## CONTINUATION OF SF 1449

Contract Line
Item No. (CLIN)   Vaccine Description

**0008**          **Varicella Vaccine (Solicitation CLIN 0013)**

Maximum Estimated Quantity:   5,000,000 Doses
Guaranteed Minimum:                    100 Doses

| Description | Estimated Quantity | Unit Price | Extended Amount |
|---|---|---|---|
| Varicella Vaccine Package of 10 Single Dose Vials | 500,000 Pkg. (5,000,000 Doses) | $433.30 | $216,650,000.00 |
| Federal Excise Tax | 500,000 Pkg. (5,000,000 Doses) | $7.50 | $ 3,750,000.00 |
| **Total** | **500,000 Pkg. (5,000,000 Doses)** | **$440.80** | **$220,400,000.00** |

Product/Brand Name:        Varivax$^{R}$

NDC Number:                00006-4827-00

Minimum Shelf Life:   12 Months

Minimum Order Size:   10 Doses Per Destination

Federal Excise Tax:   $0.75 Per Dose

MRK-KRA01371322
MRK-CHA01371322
Appx8459

## SECTION C - CONTRACT CLAUSES

**FAR 52.212-4, CONTRACT TERMS AND CONDITIONS - COMMERCIAL ITEMS, as incorporated by reference in Block 27 of the Standard Form 1449, includes the following addendum:**

**Shelf Life**

Vaccine provided under this contract shall have a minimum shelf life remaining upon delivery to the consignee, as specified within each Contract Line Item Number (See Continuation of SF 1449).

**C.1.2. Packaging and Packing Requirements**

    a.    Packaging:

        All items shall be packaged in standard commercial manner.

    b.    Packing:

        Product shall be packed to ensure maintenance of FDA recommended temperature during transit and safe arrival at destination. Freeze watch indicators or their equivalent are required with each shipment.

**C.1.3. Contract Period of Performance**

The contract period of performance shall begin on April 1, 2003 or date of award, whichever is later, and shall end on March 31, 2004.

**C.1.4. Time of Delivery**

Delivery is required to be made at destination within 15 working days after receipt of written or telephonic order (telephone orders to be confirmed in writing).

MRK-KRA01371323
MRK-CHA01371323

Appx8460

**C.1 – Contract Clauses (Continued)**

C.1.5.   **Place of Delivery - F.O.B. Destination**

      a.      The following applies to all Contract Line Item Numbers, except 0008 (Varicella):

      (1)      The Contractor shall be required to deliver vaccines F.O.B. Destination, as directed by delivery orders, to National, State and regional warehouses, as well as to private distributors under contract with the federal or State Governments (provided that the private distributor indemnifies or obtains insurance to indemnify, defend and hold harmless the Contractor from any claims and costs arising from or resulting from the distributor's handling of the vaccine purchases under this contract; the Contractor agrees that it will not require any indemnification by the distributor to extend to liability caused by acts or omissions of the Contractor) within the 50 states, the District of Columbia, Puerto Rico, Virgin Islands, Guam, American Samoa, the Commonwealth of the Northern Mariana Islands, Palau, Federated States of Micronesia, and the Marshall Islands or other designated sites in the event of a public health emergency as determined by CDC.

      (2)      No more than four (4) shipments each to American Samoa, Palau, Federated States of Micronesia, Guam, Marshall Islands and the Commonwealth of Northern Marianas will be required to be made during the contract period.  In the event that CDC requests the Contractor to make such shipments to these sites, CDC and the Contractor agree to discuss how to implement delivery of vaccine to those sites in the most efficient manner.

      (3)      Should a State assert, and a court uphold, that the State has the right to receive deliveries to individual providers directly from the manufacturers, this contract may be terminated at the option of the contractor.

      b.      The following applies to Contract Line Item Number 0008 (Varicella) only:

      (1)      The Contractor shall be required to deliver vaccines F.O.B. Destination, as directed by delivery orders, to National, State and regional warehouses [provided that the warehouse is validated solely by the CDC, or its appointed independent agent, as meeting all requirements specified in the protocol (See Contract Clause, Paragraph C.1.5.b (4) in its handling of vaccine purchased under this agreement), and individual physician providers, as well as to private distributors under contract with the federal or state governments (provided that the private distributor: 1) is validated solely by the CDC or its appointed independent agent as meeting all requirements specified in the protocol (See Contract Clauses, Paragraph C.1.5.b (4) in its handling of vaccine purchased under this agreement; and 2) indemnifies or obtains insurance to indemnify, defend and hold harmless the Contractor from any claims and costs arising from or resulting from the distributor's handling of the vaccine purchased under this contract; the Contractor agrees that it will not require any indemnification by the distributor to extend to liability caused by acts or omissions of the Contractor] within the 50

MRK-KRA01371324
MRK-CHA01371324
Appx8461

states, the District of Columbia, Puerto Rico, Virgin Islands, Guam, American Samoa, or other designated sites in the event of a public health emergency as determined by CDC.

(2) No more than four (4) shipments each to American Samoa and Guam will be required to be made during the contract period. In the event that CDC requests the Contractor to make such shipments to these sites, CDC and the Contractor agree to discuss how to implement delivery of vaccine to those sites in the most efficient manner.

(3) Merck's Shipping Protocol for Varivax$^R$ is incorporated herein as Attachment 1

## C.1.6.  Amendment to OBRA Statute

In the event of an amendment to 42 U.S.C. Section 1396(s), any terms of this contract affected by such an amendment will be modified in accordance with the revised statute. The Contracting Officer and the Contractor shall meet to discuss such modifications to the contract before finalization of any changes to the contract.

## C.1.7.  Product Licensure

a.  The vaccines produced and delivered under this contract shall be manufactured under a current establishment and product license issued by the Food and Drug Administration. as indicated below:

2

b.  The Current Good Manufacturing Practice Regulations (CGMPR's) (21CFR Parts 210-211) will be the standard to be applied for manufacturing, processing and packing of drugs, chemicals, biologicals, and reagents.

MRK-KRA01371325
MRK-CHA01371325
Appx8462

Contract 200-2003-01122

## C.1 – Contract Clauses (Continued)

c.  The Contractor shall advise the Contracting Officer immediately of any relocation of his prime manufacturing facility or the relocation of any subcontractor's facility, and if at any time during the life of the contract, the item listed under this contract fails to meet CGMPR's and/or a negative Food and Drug Administration Quality Assurance Evaluation is received, the contract may be terminated, in whole or in part, without further liability to the Government.

### C.1.8.  Placement of Orders

a.  All vaccine under this contract will be ordered by delivery orders.  Orders shall be placed by the Health and Human Services (HHS) Supply Service Center, the Centers for Disease Control and Prevention (CDC); or other Federal and State agencies as authorized.  Orders may be placed by CDC by telephone (confirmed in writing) or by electronic transfer.

b.  Optional Funding - Other Authorized Federal and State Agencies:

(1)  Other Federal and State agencies wishing to order vaccines against this contract must receive written authorization from the Contracting Officer.  A list of authorized users shall be provided to the Contractor.

(2)  Upon receipt of authorization, other Federal and State agencies may place orders against this contract.  Contractors shall honor all authorized optional funding orders.

c.  Orders shall be submitted to the Ordering Address specified in Contract Clauses Paragraph C.1.13,  Contractor's Ordering/Payment Address and shall contain the following minimum information:

(1)  Date of order;
(2)  Contract number and order number;
(3)  Item description, quantity and unit price;
(4)  Delivery or performance date;
(5)  Place of delivery or performance (including consignee);
(6)  Packaging, packing and shipping instructions, if any;
(7)  Accounting and appropriation data;
(8)  Statement to indicate if partial deliveries are not acceptable; (Lack of a statement shall be construed to mean partial deliveries are acceptable and payment shall be made as required elsewhere herein)
(9)  Any other pertinent data.

MRK-KRA01371326
MRK-CHA01371326
Appx8463

**C.1 – Contract Clauses (Continued)**

**C.1.9. Delivery Order Limitations**

    a.   Minimum Order Size: Individual delivery orders issued under this contract must meet the minimum order size as specified within each Contract Line Item Number (CLIN) (See Continuation of SF 1449). When the Government requires supplies covered by this contract in amounts less than stated above, the Government is not obligated to purchase, nor is the Contractor obligated to furnish those supplies under this contract.

    b.   Maximum Order: The maximum monthly quantity specified within each Contract Line Item Number (See Continuation of SF 1449) are the maximum number of doses that may be ordered on a monthly basis under the contract, not to exceed the total maximum estimated quantity stated for each CLIN.

**C.1.10. FAR 52.216-18 ORDERING (OCT 1995)**

    Any supplies and services to be furnished under this contract shall be ordered by issuance of delivery orders or task orders by the individuals or activities designated in the Schedule. Such orders may be issued from the effective date of the contract through the expiration date of the contract.

    a.   All delivery orders or task orders are subject to the terms and conditions of this contract. In the event of conflict between a delivery order or task order and this contract, the contract shall control.

    c.   If mailed, a delivery order or task order is considered "issued" when the Government deposits the order in the mail. Orders may be issued orally or by written telecommunications only if authorized in the Schedule.

**C.1.11. FAR 52.216-22 INDEFINITE QUANTITY (OCT 1995)**

    a.   This is an indefinite-quantity contract for the supplies or services specified, and effective for the period stated, in the Schedule. The quantities of supplies and services specified in the Schedule are estimates only and are not purchased by this contract.

    b.   Delivery or performance shall be made only as authorized by orders issued in accordance with the Ordering clause. The Contractor shall furnish to the Government, when and if ordered, the supplies or services specified in the Schedule up to and including the quantity designated in the Schedule as the "maximum." The Government shall order at least the quantity of supplies or services designated in the Schedule as the "minimum."

MRK-KRA01371327
MRK-CHA01371327

Appx8464

## C.1 – Contract Clauses (Continued)

    c.    Except for any limitations on quantities in the Delivery-Order Limitations clause or in the Schedule, there is no limit on the number of orders that may be issued. The Government may issue orders requiring delivery to multiple destinations or performance at multiple locations.

    d.    Any order issued during the effective period of this contract and not completed within that period shall be completed by the Contractor within the time specified in the order. The contract shall govern the Contractor's and Government's rights and obligations with respect to that order to the same extent as if the order were completed during the contract's effective period; provided, that the Contractor shall not be required to make any deliveries under this contract after fifteen (15) working days beyond the expiration date of the contract.

### C.1.12.  Report of Orders

    a.    The Contractor shall provide monthly reports of all vaccine purchased under this contract by ordering offices other than CDC. The report shall be submitted within 30 days following the end of the month and shall contain the following information:

Name of Purchaser:
Number of Doses Purchased:
Lot Number:

    b.    Reports shall be forwarded to the designated Project Officer with a copy to the Contracting Officer.

### C.1.13.  Contractor's Ordering/Payment Address

Submission of orders and payment of invoices should be addressed as indicated below:

| ORDERING ADDRESS | PAYMENT ADDRESS |
|---|---|
| Merck Vaccine Division | Merck & Co., Inc. |
| P.O. Box 4, Mailstop ZB-750 | P.O. Box 7780-3061 |
| West Point, PA  19486 | Philadelphia, PA  19182-3061 |

MRK-KRA01371328
MRK-CHA01371328
Appx8465

## C.1 – Contract Clauses (Continued)

### C.1.14.  Invoice Submission

    a.    Invoice submission under this contract will be made as follows:

        (1)    HHS Supply Service Center, CDC and Other Authorized Federal Agencies:  The Contractor shall submit invoices via Electronic Data Interchange (EDI) in a format to be mutually agreed upon between CDC and the Contractor.

        (2)    State and Local Agencies:  The Contractor shall submit an original and 3 copies of its invoice(s) to the address specified on the delivery order.

    b.    The Contractor agrees to include the following information on each invoice:

        (1)    Contractor's name and invoice date;
        (2)    Contract number, or other authorization for delivery of property and/or services;
        (3)    Description, cost or price, and quantity of property and/or services actually delivered or rendered;
        (4)    Shipping and payment terms;
        (5)    Other substantiating documentation or information as required by the contract; and
        (6)    Name where practicable, title, phone number, and complete mailing address of responsible official to whom payment is to be sent.
        (7)    Lot number of vaccine vials shipped;
        (8)    Expiration date of vaccine vials shipped; and
        (9)    CDC accounting and appropriation data as described on the delivery order.

### C.1.15.  Method of Payment

    a.    Payments under this contract will be made as follows:

        (1)    CDC and Other Authorized Federal Agencies.  By check or by wire transfer through the Treasury Financial Communications System at the option of the Government.

        (2)    State Agencies:  By check

    b.    The Government shall use electronic funds transfer to the maximum extent possible when making payments under this contract.  The contractor is required to designate in writing a financial institution for receipt of electronic funds transfer payments.  The Contractor shall forward the following information in writing to Centers for Disease Control and Prevention, Attn:  Financial Management Office, Atlanta, GA 30333, not later than seven days after receipt of notice of award:

MRK-KRA01371329
MRK-CHA01371329
Appx8466

## C.1 – Contract Clauses (Continued)

(1)  Full name (where practicable), title, phone number, and complete mailing address of responsible official(s) to whom check payments are to be sent, and who may be contacted concerning the bank account information requested below.

(2)  The following bank account information required to accomplish wire transfers: (i) Name, address, and telegraphic abbreviation of the receiving financial institution; (ii) receiving financial institution's nine-digit American Bankers Association (ABA) identifying number for routing transfer of funds. (Provide this number only if the receiving financial institution has access to the Federal Reserve Communications System.) (iii) Recipient's name and account number at the receiving financial institution to be credited with the funds. (iv) If the receiving financial institution does not have access to the Federal Reserve Communications System, provide the name of the correspondent financial institution through which the receiving financial institution receives electronic funds transfer messages. If a correspondent financial institution is specified, also provide the address and telegraphic abbreviation of the correspondent financial institution, and the correspondent financial institution's nine-digit ABA identifying number for routing transfer of funds.

(3)  Any changes to the information furnished under paragraph (b) of this clause shall be furnished to Centers for Disease Control and Prevention, Attn: Financial Management Office, Atlanta, GA 30333 in writing at least 30 days before the effective date of the change. It is the Contractor's responsibility to furnish these changes promptly to avoid payments to erroneous addresses or bank accounts.

### C.1.16. Payments by Other Authorized Federal Agencies and State Agencies

All other Federal agencies and State agencies authorized to order vaccine using optional funding shall be required to comply with all terms and conditions hereunder, including the Prompt Payment Act and all payment provisions required by Paragraph's C.1.13, C.1.14 and C.1.15 above. All payment provisions are applicable to all partial deliveries accepted by the ordering office. Ordering offices are responsible for advising the Contractor if partial deliveries are not acceptable before shipment (reference Paragraph C.1.8).

MRK-KRA01371330
MRK-CHA01371330
Appx8467

## C.1 – Contract Clauses (Continued)

### C.1.17. Project Officer

Rex Ellington has been designated in writing by the Contracting Officer to serve as Project Officer during the period of performance of the contract. The Project Officer shall be responsible for guidance in regard to the technical aspect of the contract, provide a point for liaison between the Contractor and other Government agencies (Federal and State) and be the general focal point to address technical and logistical problems relating to the performance under the contract. The Project Officer shall not have the authority to make any commitments or authorize any changes which affect the contract price, terms and/or conditions; any such changes shall be referred to the Contracting Officer for action.

### C.1.18. Duty To Warn

a. The Department of Health and Human Services (HHS), HHS Supply Service Center, Centers for Disease Control and Prevention (CDC), and other HHS, Federal and State agencies as authorized, hereinafter referred to as the Government, represent and agree that all programs which are supplied vaccine under this contract shall take appropriate steps to assure either: (1) that such vaccine is administered to each patient on the basis of an individualized medical judgment by a physician; or (2) that such vaccine is administered after meaningful warnings related to the risks and benefits of vaccination are provided to such patient (or the patient's parent or legal guardian), in form and language understandable to such patient, parent, or guardian, including through use of the appropriate version of the most recent vaccine information materials.

b. If any claim or action is asserted against the Contractor arising in whole or in part from an alleged failure by the Government, to carry out its responsibilities under paragraph (a) above, the Contractor shall promptly notify the Contracting Officer and furnish to him copies of all pertinent documents served upon or received by the Contractor. The Government shall provide reasonable assistance and full cooperation including, but not limited to, making witnesses available to testify and providing relevant documents to the Contractor to assist the Contractor in defending any claims arising from the Government's alleged failure to carry out its responsibilities under paragraph (a) above. The Government shall have the option to participate in the defense of that portion of such claim or action which arises from the alleged failure of the Government to carry out its responsibilities under paragraph (a) above.

MRK-KRA01371331
MRK-CHA01371331
Appx8468

## C.1 – Contract Clauses (Continued)

    c.   In the event of the Government's breach of, or failure to carry out, its responsibilities under paragraph (a) above, any measure of resulting damages to the Contractor shall include, but need not be limited to, damages (including money judgments, reasonable attorneys' fees, and other costs) sustained in connection with claims against the Contractor for personal injuries caused by such breach or failure. The Contractor agrees to take appropriate steps to mitigate any such claims by diligently defending claims brought against it or, when appropriate, by entering into reasonable settlement agreements. The entry of a judgment against the Contractor in connection with a claim for personal injury allegedly resulting in whole or in part from the Government's breach of, or failure to carry out, its obligations under paragraph (a) shall not conclusively determine the question whether the personal injury complained of or the damages suffered by the Contractor were caused by the Government's breach of or failure to carry its obligations under paragraph (a). This provision shall not limit any other right of the Contractor to obtain damages or other relief for any breach of this contract or for the settlement of any dispute arising under this contract.

### C.1.19.  Return Privileges

Return privileges for credit, reimbursement or exchange do not apply to this contract except vaccines not conforming to the specifications set forth herein, which are limited to credit or exchange only.

### C.1.20.  Restrictions on Use of Vaccines

Vaccines obtained under this contract shall be used only as authorized under section 1928 of the Omnibus Budget Reconciliation Act of 1993 (OBRA). Health Care Providers who receive vaccine purchased hereunder are strictly prohibited from reselling such vaccine and from charging for the cost of such vaccine.

### C.1.21.  Federal Excise Tax Credit

Negotiated prices for the vaccines included in this Contract may include a Federal Excise Tax (See Continuation of SF 1449 for applicable Contract Line Item Numbers). If for any reason the vaccine is returned (other than for resale) or destroyed, the Contractor shall within 6 months following the date the vaccine is returned or destroyed, file a claim for credit or refund relative to any tax previously paid on such vaccine. The Contractor agrees to credit or refund the amount of such excise tax to the purchaser to the extent that the Contractor receives a credit or refund from the Federal Government. Any such credit or refund to the purchaser is expressly conditioned upon the authorized purchaser providing a written summary of events leading to the request for credit or refund. The purchaser shall return all undistributed vaccine to the

MRK-KRA01371332
MRK-CHA01371332
Appx8469

## C.1 – Contract Clauses (Continued)

manufacturer for proper disposal, unless destruction of the vaccine renders return impossible. If destruction of the vaccine renders return impossible and is therefore destroyed by the purchaser, the authorized purchaser must provide a written summary of events to the manufacturer within 30 days of said destruction. If a contract is in place with the Contractor at the time when a credit or refund is due, the purchaser may elect to receive vaccine which will be purchased at the current contract price in lieu of a cash payment. Otherwise, the Contractor shall refund the amount due to the purchaser's account. If a credit or refund is issued by the Contractor to the purchaser's CDC VFC or 317 Fund account, a credit memo and a copy of the purchaser's original request for credit shall be submitted to:

> Centers for Disease Control and Prevention
> National Immunization Program
> Immunization Services Division
> Program Support Branch
> Mailstop E-52, Attn: Rex Ellington
> 1600 Clifton Road
> Atlanta, GA 30333

The credit memo shall clearly identify the purchaser's state and source of funding. A separate copy of the credit memo shall also be sent to the purchaser's mailing address.

CDC acknowledges that the Contractor is not in a position to provide copies of all original purchase requests for credit. It is understood that Merck will provide copies of original purchasers requests for credit whenever possible. The Contractor is not obligated to submit copies of purchasers original requests if such copies are not available to the Contractor.

### C.1.22. Price Revisions

The contractor shall be allowed to revise the unit price for each CLIN either upward or downward, effective on the following dates: August 1, 2003 and December 1, 2003, provided that the revised price does not exceed the initial contract price. The contractor shall also, at these times, be allowed to revise proposed maximum quantities for each CLIN and add additional package sizes. Proposals for revisions shall be submitted by the contractor no later than 15 calendar days prior to the dates listed above. The CDC will accomplish these changes to the unit prices by issuing unilateral modifications to the contract(s).

### C.1.23. New Vaccine Products

The following delineates the general approach to adding new vaccine products to the contract:

a. Manufacturers who receive a new FDA product license for a vaccine already included within the scope of a VFC resolution may, upon written request, have the new product added to its contract by modification at the price revision intervals stated in Terms and Conditions, Paragraph C.1.22., Price Revisions. Such new products must be consistent with

MRK-KRA01371333
MRK-CHA01371333
Appx8470

### C.1 – Contract Clauses (Continued)

VFC formulary schedules (regarding periodicity and dosage regimens) as established for the vaccine by CDC's Advisory Committee on Immunization Practices (ACIP). Requests for addition of such products must be submitted to the Contracting Officer 30 days prior to the price revision interval dates.

b.  When new vaccine products are approved by the ACIP for inclusion in the VFC formulary, CDC will issue a separate solicitation for obtaining such products. This would include a totally new vaccine or new combination of vaccines, new indications or new formulations for existing products or new dosing regimens for an existing product. Provided negotiations result in receipt of reasonable prices, CDC may, at its option, award separate contracts for these new products or add the products by modification to contracts awarded as a result of solicitation number 2003-N-00734.

### C.1.24.  Prohibition on the Use of Appropriated Funds for Lobbying Activities

The Contractor is hereby notified of the restrictions on the use of Department of Health and Human Services's funding for lobbying of Federal and State legislative bodies.

Section 1352 of Title 10, United Stated Code (Public Law 101-121, effective 12/23/89), among other things, prohibits a recipient (and their subcontractors) of a Federal contract, grant, loan, or cooperative agreement from using appropriated funds (other than profits from a federal contract) to pay any person for influencing or attempting to influence an officer or employee of any agency, a Member of Congress, an officer or employee of Congress, or an employee of a Member of Congress in connection with any of the following covered Federal actions; the awarding of any Federal contract; the making of any Federal grant; the making of any Federal loan; the entering into of any cooperative agreement; or the modification of any Federal contract, grant, loan, or cooperative agreement. For additional information on prohibitions against lobbying activities, see FAR Subpart 3.8 and FAR Clause 52.203-12.

In addition, the current Department of Health and Human Services Appropriations Act provides that no part of any appropriation contained in this Act shall be used, other than for normal and recognized executive-legislative relationships, for publicity or propaganda purposes, for the preparation, distribution, or use of any kit, pamphlet, booklet, publication, radio, television, or video presentation designed to support, or defeat legislation pending before the Congress, or any State or Local legislature except in presentation to the Congress, or any State or Local legislative body itself.

The current Department of Health and Human Services Appropriations Act also provides that no part of any appropriation contained in this Act shall be used to pay the salary or expenses of any contract or grant recipient, or agent acting for such recipient, related to any activity designed to influence legislation or appropriations pending before the Congress, or any State or Local legislature.

MRK-KRA01371334
MRK-CHA01371334
Appx8471

**C.1 – Contract Clauses (Continued)**

**C.1.25  Use of VFC Provider Lists and Distribution of Material**

Any Contractor that ships vaccine directly to VFC providers is prohibited from inserting any promotional material into shipping containers for vaccine purchased under this contract, except for material related to use of the vaccine, as approved in writing by the CDC Project Officer.

In addition, Contractors are prohibited from utilizing any list of VFC providers provided by the CDC, CDC partner (e.g., local health department) or CDC grantee for any mailing or other communication intended to promote the use of particular vaccines or any other products, except as approved in writing by the CDC Project Officer.  Contractors are prohibited from using such VFC Lists to provide names and/or addresses of VFC providers to any third party, except as needed to comply with the terms of this contract, in which case the CDC Project Officer shall be notified of such use.  The CDC recognizes that providers may have independent relationships with the Contractor other than the Contractor's receipt of any VFC List.  The Contractor may send such mailings or other communications and may provide such names and/or addresses to any third party, based on those relationships without the consent of the CDC.

**C.1.26  Delinquent Delivery Reports**

Except for Varicella vaccine, the Contractor shall provide CDC with a weekly listing of all CDC orders that have not been shipped within the 15 working day requirement. The report shall include the following information: project name, order number, date of order, and status of order in number of pending/undelivered doses.  For Varicella vaccine, the Contractor shall provide a weekly summary of the percentage of doses on backorder greater than 15 working days.  Depending upon the nature of the delinquencies, the CDC may request this report less often during the Contract performance period and in this situation, frequency and method of providing such reports shall be mutually agreed upon by the Contractor and CDC.  The Contractor, as soon as information is available, and the Contractor determines that the information is appropriate to be shared, shall provide an explanation as to the cause for the delinquent deliveries as well as when the vaccine will be delivered.  This notification shall not relieve the Contractor from meeting its obligations under the contract and shall not limit the Government's right to seek relief for any breach of contract for failure to perform, including termination for cause.  Notwithstanding the foregoing, the CDC agrees to allow the Contractor 60 days to remedy any supply shortage and therefore will not seek relief for any breach of contract for failure to perform, including termination for cause, during this time.

The Contractor is precluded from notifying the states or other parties prior to notifying CDC of any vaccine orders that have not been filled within the 15 working day requirement.

CDC acknowledges that the explanation as to the cause for delinquent deliveries and when vaccine will be delivered is confidential and proprietary information of the Contractor, and shall not use such information other than for CDC's internal tracking and reporting purposes and shall not further disclose such information without the Contractor's prior written consent unless required by law or other Federal authority.  The Contractor acknowledges that the failure to fill orders as well as data

MRK-KRA01371335
MRK-CHA01371335
Appx8472

associated with such failure are not confidential or proprietary data but are data incidental to contract performance. In the event that CDC is required by law or other Federal authority to disclose the explanation as to the cause for delinquent deliveries and when vaccine will be delivered, CDC shall notify the Contractor prior to making such disclosure in accordance with law or other Federal authority.

### C.1.27   Biological Surveillance Data Reports

The Contractor shall submit a monthly report of historical sales data for the United States by month specifying the name of the vaccine and the total number of doses sold (segregated by CDC and non-CDC sales), in a format acceptable to CDC and the Contractor. Information related to vaccine sales through CDC contracts is not considered proprietary. CDC acknowledges that those reports pertaining to private sales unrelated to this contract are confidential and proprietary information of the Contractor, and shall not use such reports for any purpose other than CDC's internal tracking and reporting purposes and shall not further disclose such reports without the Contractor's prior written consent unless required by law or other Federal authority. In the event that CDC is required by law or other Federal authority to disclose such reports required to be held confidential hereunder, CDC shall notify the Contractor prior to making such disclosure in accordance with law or other Federal authority.

### C.1.28   Prohibitions on Inducements

The Contractor is expressly prohibited from offering inducements of any kind to authorized purchasers (i.e., city, county, and state entities) ordering vaccine under this contract for the purpose of obtaining orders for vaccine. Examples of such inducements include, but are not limited to, free or reduced prices for syringes, vaccines, or other medical products or supplies. Notwithstanding the foregoing, CDC agrees that this section does not prohibit the Contractor from providing promotional and/or educational materials and resources to such authorized purchasers, including, but not limited to, brochures, patient information, reminder items (e.g., pens, notepads, vial dispensers) and detail aids.

MRK-KRA01371336
MRK-CHA01371336

Appx8473

## SECTION C - CONTRACT CLAUSES

C.2       **FAR 52.212-5 Contract Terms and Conditions Required to Implement Statutes or Executive Orders -- Commercial Items (May 2002)**

(a) The Contractor shall comply with the following FAR clauses, which are incorporated in this contract by reference, to implement provisions of law or executive orders applicable to acquisitions of commercial items:

(1) 52.222-3, Convict Labor (E.O. 11755).

(2) 52.233-3, Protest after Award (31 U.S.C. 3553).

(b) The Contractor shall comply with the FAR clauses in this paragraph (b) that the Contracting Officer has indicated as being incorporated in this contract by reference to implement provisions of law or Executive orders applicable to acquisitions of commercial items or components:

*[Contracting Officer must check as appropriate.]*

X (1) 52.203-6, Restrictions on Subcontractor Sales to the Government, with Alternate I (41 U.S.C. 253g and 10 U.S.C. 2402).

☐ (2) 52.219-3, Notice of Total HUBZone Small Business Set-Aside (Jan 1999).

☐ (3) 52.219-4, Notice of Price Evaluation Preference for HUBZone Small Business Concerns (Jan 1999) (if the offeror elects to waive the preference, it shall so indicate in its offer).

☐ (4)(i)52.219-5, Very Small Business Set-Aside (Pub. L. 103-403, section 304, Small Business Reauthorization and Amendments Act of 1994).
☐ (ii) Alternate I to 52.219-5.
☐ (iii) Alternate II to 52.219-5.

X (5) 52.219-8, Utilization of Small Business Concerns (15 U.S.C. 637 (d)(2) and (3)).

X (6) 52.219-9, Small Business Subcontracting Plan (15 U.S.C. 637(d)(4)).

☐ (7) 52.219-14, Limitations on Subcontracting (15 U.S.C. 637(a)(14)).

☐ (8)(i)52.219-23, Notice of Price Evaluation Adjustment for Small Disadvantaged Business Concerns (Pub. L. 103-355, section 7102, and 10 U.S.C. 2323) (if the offeror elects to waive the adjustment, it shall so indicate in its offer).
☐ (ii) Alternate I of 52.219-23.

☐ (9) 52.219-25, Small Disadvantaged Business Participation Program—Disadvantaged Status and Reporting (Pub. L. 103-355, section 7102, and 10 U.S.C. 2323).

☐ (10) 52.219-26, Small Disadvantaged Business Participation Program—Incentive Subcontracting (Pub. L. 103-355, section 7102, and 10 U.S.C. 2323).

X (11) 52.222-21, Prohibition of Segregated Facilities (Feb 1999)

X (12) 52.222-26, Equal Opportunity (E.O. 11246).

X (13) 52.222-35, Equal Opportunity for Special Disabled Veterans, Veterans of the Vietnam Era, and Other Eligible Veterans (38 U.S.C. 4212)

MRK-KRA01371337
MRK-CHA01371337
Appx8474

Contract 200-2003-01122

**X** (14) 52.222-36, Affirmative Action for Workers with Disabilities (29 U.S.C. 793).

**X** (15) 52.222-37, Employment Reports on Special Disabled Veterans, Veterans of the Vietnam Era, and Other Eligible Veterans (38 U.S.C. 4212).

**X** (16) 52.222-19, Child Labor—Cooperation with Authorities and Remedies (E.O. 13126).

☐ (17)(i)52.223-9, Estimate of Percentage of Recovered Material Content for EPA-Designated Products (42 U.S.C. 6962(c)(3)(A)(ii)).
☐ (ii) Alternate I of 52.223-9 (42 U.S.C. 6962(i)(2)(C)).

☐ (18) 52.225-1, Buy American Act—Supplies (41 U.S.C. 10a - 10d).

☐ (19)(i) 52.225-3, Buy American Act—North American Free Trade Agreement—Israeli Trade Act (41 U.S.C. 10a - 10d, 19 U.S.C. 3301 note, 19 U.S.C. 2112 note).
☐ (ii) Alternate I of 52.225-3.
☐ (iii) Alternate II of 52.225-3.

**X** (20) 52.225-5, Trade Agreements (19 U.S.C. 2501, *et seq.*, 19 U.S.C. 3301 note).

☐ (21) 52.225-13, Restriction on Certain Foreign Purchases (E.O. 12722, 12724, 13059, 13067, 13121, and 13129).

☐ (22) 52.225-15, Sanctioned European Union Country End Products (E.O. 12849).

☐ (23) 52.225-16, Sanctioned European Union Country Services (E.O. 12849).

☐ (24) 52.232-33, Payment by Electronic Funds Transfer—Central Contractor Registration (31 U.S.C. 3332).

☐ (25) 52.232-34, Payment by Electronic Funds Transfer—Other than Central Contractor Registration (31 U.S.C. 3332).

☐ (26) 52.232-36, Payment by Third Party (31 U.S.C. 3332).

☐ (27) 52.239-1, Privacy or Security Safeguards (5 U.S.C. 552a).

☐ (28)(i)52.247-64, Preference for Privately Owned U.S.-Flag Commercial Vessels (46 U.S.C. 1241).
☐ (ii) Alternate I of 52.247-64.

(c) The Contractor shall comply with the FAR clauses in this paragraph (c), applicable to commercial services, which the Contracting Officer has indicated as being incorporated in this contract by reference to implement provisions of law or executive orders applicable to acquisitions of commercial items or components:

*[Contracting Officer check as appropriate.]*

☐ (1) 52.222-41, Service Contract Act of 1965, As Amended (41 U.S.C. 351, *et seq.*).

☐ (2) 52.222-42, Statement of Equivalent Rates for Federal Hires (29 U.S.C. 206 and 41 U.S.C. 351, *et seq.*

☐ (3) 52.222-43, Fair Labor Standards Act and Service Contract Act—Price Adjustment (Multiple Year and Option Contracts) (29 U.S.C. 206 and 41 U.S.C. 351, *et seq.*).

☐ (4) 52.222-44, Fair Labor Standards Act and Service Contract Act—Price Adjustment (29 U.S.C. 206 and 41 U.S.C. 351, *et seq.*).

MRK-KRA01371338
MRK-CHA01371338
Appx8475

☐ (5) 52.222-47, SCA Minimum Wages and Fringe Benefits Applicable to Successor Contract Pursuant to Predecessor Contractor Collective Bargaining Agreement (CBA) (41 U.S.C. 351, *et seq.*).

(d) *Comptroller General Examination of Record*. The Contractor shall comply with the provisions of this paragraph (d) if this contract was awarded using other than sealed bid, is in excess of the simplified acquisition threshold, and does not contain the clause at 52.215-2, Audit and Records—Negotiation.

(1) The Comptroller General of the United States, or an authorized representative of the Comptroller General, shall have access to and right to examine any of the Contractor's directly pertinent records involving transactions related to this contract.

(2) The Contractor shall make available at its offices at all reasonable times the records, materials, and other evidence for examination, audit, or reproduction, until 3 years after final payment under this contract or for any shorter period specified in FAR Subpart 4.7, Contractor Records Retention, of the other clauses of this contract. If this contract is completely or partially terminated, the records relating to the work terminated shall be made available for 3 years after any resulting final termination settlement. Records relating to appeals under the disputes clause or to litigation or the settlement of claims arising under or relating to this contract shall be made available until such appeals, litigation, or claims are finally resolved.

(3) As used in this clause, records include books, documents, accounting procedures and practices, and other data, regardless of type and regardless of form. This does not require the Contractor to create or maintain any record that the Contractor does not maintain in the ordinary course of business or pursuant to a provision of law.

(e) Notwithstanding the requirements of the clauses in paragraphs (a), (b), (c) or (d) of this clause, the Contractor is not required to include any FAR clause, other than those listed below (and as may be required by an addenda to this paragraph to establish the reasonableness of prices under Part 15), in a subcontract for commercial items or commercial components —

(1) 52.222-26, Equal Opportunity (E.O.   1246);

(2) 52.222-35, Equal Opportunity for Special Disabled Veterans, Veterans of the Vietnam Era, and Other Eligible Veterans (38 U.S.C. 4212);

(3) 52.222-36, Affirmative Action for Workers with Disabilities (29 U.S.C. 793);

(4) 52.247-64, Preference for Privately-Owned U.S. Flag Commercial Vessels (46 U.S.C. 1241) (flow down not required for subcontracts awarded beginning May 1, 1996); and

(5) 52.222-41, Service Contract Act of 1965, As Amended (41 U.S.C. 351, *et seq.*).

(End of clause)

MRK-KRA01371339
MRK-CHA01371339
Appx8476

## SECTION D - CONTRACT DOCUMENTS, EXHIBITS OR ATTACHMENTS

| ATTACHMENT NO. | TITLE | NUMBER OF PAGES |
|---|---|---|
| J1 | Merck Shipping Protocol for VARIVAX® | 4 |

MRK-KRA01371340
MRK-CHA01371340
Appx8477

10/25/2019
Declaration of G. Reilly
EXHIBIT 304

# SOLICITATION/CONTRACT/ORDER FOR COMMERCIAL ITEMS
*OFFEROR TO COMPLETE BLOCKS 12, 17, 23, 24, & 30*

| 1. REQUISITION NUMBER | PAGE 1 OF |
|---|---|
| 0000HCJ1-2005-17124 | 30 |

| 2. CONTRACT NO. | 3. AWARD/EFFECTIVE DATE | 4. ORDER NUMBER | 5. SOLICITATION NUMBER | 6. SOLICITATION ISSUE DATE |
|---|---|---|---|---|
| 200-2005 1533 | 04/01/2005 | | 2005-N-01706 | 01/05/2005 |

| 7. FOR SOLICITATION INFORMATION CALL: | a. NAME | b. TELEPHONE NUMBER (No collect calls) | 8. OFFER DUE DATE/ LOCAL TIME |
|---|---|---|---|
| ▶ | Brenda Good Miller | (770) 488-2845 | |

| 9. ISSUED BY | CODE | 2536 |
|---|---|---|

Centers for Disease Control and Prevention 'PGO'
Acquisition & Assistance Branch A
2920 Brandywine Road
Atlanta, GA 30341-5539

| 10. THIS ACQUISITION IS | 11. DELIVERY FOR FOB DESTINATION UNLESS BLOCK IS MARKED | 12. DISCOUNT TERMS |
|---|---|---|
| X UNRESTRICTED | SEE SCHEDULE | Net 30 |
| SET ASIDE: % FOR | 13a. THIS CONTRACT IS A RATED ORDER UNDER DPAS (15 CFR 700) | |
| SMALL BUSINESS | 13b. RATING | |
| SMALL DISADV. BUSINESS | | |
| 8(A) | 14. METHOD OF SOLICITATION | |
| SIC: 325414 | | |
| SIZE STANDARD: | RFQ    IFB    X RFP | |

| 15. DELIVER TO | CODE |
|---|---|
| To be shown on Delivery Orders | |

| 16. ADMINISTERED BY | CODE | 2536 |
|---|---|---|

Centers for Disease Control and Prevention (PGO)
Acquisition & Assistance Branch A
2920 Brandywine Road
Atlanta, GA 30341-5539

| 17a. CONTRACTOR/ OFFEROR | CODE | 297 | FACILITY CODE | |
|---|---|---|---|---|

Merck Vaccines          TIN: 22-1109110
P.O. Box 4, WP 97B-358  DUNS 00-238-7926
West Point, PA 19486-0004

TELEPHONE NO.

18a. PAYMENT WILL BE MADE BY          CODE

See Contract Clause C.1.15

| 17b. CHECK IF REMITTANCE IS DIFFERENT AND PUT SUCH ADDRESS IN OFFER | 18b. SUBMIT INVOICES TO ADDRESS SHOWN IN BLOCK 18a UNLESS BLOCK BELOW IS CHECKED    SEE ADDENDUM |
|---|---|

| 19. ITEM NO. | 20. SCHEDULE OF SUPPLIES/SERVICES | 21. QUANTITY | 22. UNIT | 23. UNIT PRICE | 24. AMOUNT |
|---|---|---|---|---|---|
| | "See Continuation Page" | | | | |
| | *(Attach Additional Sheets as Necessary)* | | | | |

| 25. ACCOUNTING AND APPROPRIATION DATA | 26. TOTAL AWARD AMOUNT *(For Govt. Use Only)* |
|---|---|
| | $557,300,000.00 |

27a. SOLICITATION INCORPORATES BY REFERENCE FAR 52.212-1, 52.212-4. FAR 52.212-3 AND 52.212-5 ARE ATTACHED. ADDENDA ☐ ARE ☐ ARE NOT ATTACHED.

X 27b. CONTRACT/PURCHASE ORDER INCORPORATES BY REFERENCE FAR 52.212-4. FAR 52.212-5 IS ATTACHED. ADDENDA X ARE ☐ ARE NOT ATTACHED.

| 28. X CONTRACTOR IS REQUIRED TO SIGN THIS DOCUMENT AND RETURN 3 COPIES TO ISSUING OFFICE. CONTRACTOR AGREES TO FURNISH AND DELIVER ALL ITEMS SET FORTH OR OTHERWISE IDENTIFIED ABOVE AND ON ANY ADDITIONAL SHEETS SUBJECT TO THE TERMS AND CONDITIONS SPECIFIED HEREIN. | 29. AWARD OF CONTRACT: REFERENCE Merck Vaccine OFFER DATED 02/28/05 . YOUR OFFER ON SOLICITATION (BLOCK 5), X INCLUDING ANY ADDITIONS OR CHANGES WHICH ARE SET FORTH HEREIN, IS ACCEPTED AS TO ITEMS: All Items |
|---|---|
| 30a. SIGNATURE OF OFFEROR/CONTRACTOR *Adel A. Mahmoud* | 31a. UNITED STATES OF AMERICA *(Signature of Contracting Officer)* |
| 30b. NAME AND TITLE OF SIGNER *(Type or print)* Adel A. Mahmoud, President Merck Vaccine Division | 30c. DATE SIGNED 3/30/05 | 31b. NAME OF CONTRACTING OFFICER *(Type or print)* Jeff Napier | 31c. DATE SIGNED 3/30/2005 |

| 32a. QUANTITY IN COLUMN 21 HAS BEEN | 33. SHIP NUMBER | 34. VOUCHER NUMBER | |
|---|---|---|---|
| RECEIVED    INSPECTED    ACCEPTED, AND CONFORMS TO THE CONTRACT, EXCEPT AS NOTED | PARTIAL    FINAL | | |
| | 36. PAYMENT | | 37. CHECK NUMBER |
| 32b. SIGNATURE OF AUTHORIZED GOV'T REPRESENTATIVE | 32c. DATE | COMPLETE    PARTIAL    FINAL | |
| | | 38. S/R ACCOUNT NUMBER | 39. S/R VOUCHER NUMBER | 40. PAID BY |
| | | 42a. RECEIVED BY *(Print)* | |
| 41a. I CERTIFY THIS AMOUNT IS CORRECT AND PROPER FOR PAYMENT | | | |
| 41b. SIGNATURE AND TITLE OF CERTIFYING OFFICER | 41c. DATE | 42b. RECEIVED AT *(Location)* | |
| | | 42c. DATE REC'D | 42d. TOTAL CONTAINERS |

| AUTHORIZED FOR LOCAL REPRODUCTION | SEE REVERSE FOR OMB CONTROL NUMBER AND PAPERWORK BURDEN STATEMENT | STANDARD FORM 1449 (10-95) |
|---|---|---|

MRK-KRA01371341
MRK-CHA01371341
Appx8479

# TABLE OF CONTENTS

| Section | Document/Clause/Provision | Page No. |
|---------|---------------------------|----------|
| A | Standard Form 1449 | 1 |
| B | Continuation of SF1449 (Block 19 – 24) | 3 |
| C | Contract Clauses | 12 |
| D | Contract Documents, Exhibits or Attachments | 30 |

MRK-KRA01371342
MRK-CHA01371342
Appx8480

# SECTION B - CONTINUATION OF SF1449

**BACKGROUND:**

The Vaccine For Children (VFC) program, established pursuant to Section 13631 of the Omnibus Budget Reconciliation Act of 1993 (OBRA '93), guarantees federal support for the purchase and supply of sufficient quantities of vaccine to the States to cover a defined group of children. Children (18 years-of-age or younger) who qualify for immunization through the VFC purchase program include those who are (1) Medicaid-eligible, (2) without health insurance, (3) Indian (as defined in Subsection (h)(3) of OBRA '93), or (4) children with health insurance, which does not cover the cost of vaccines, if they receive their immunizations at a Federally-qualified health center or rural health clinic (as defined by the Social Security Act). Health care providers who agree to certain requirements are eligible through the States to receive free vaccine through this VFC purchase program. Purchases for childhood immunization programs under Section 317(j) of the Public Health Service Act are also included under these contracts. In addition, States may opt to purchase vaccine under any resulting contract for children not included in above categories by using their own funding mechanism. Such orders shall not be subject to refusal by the manufacturers.

**Solicitation for Consolidated VFC Contracts:**

CDC intends to award one consolidated contract to each vaccine manufacturer to include all vaccines listed herein which the manufacturer produces. These consolidated contracts will include the following features:

(1)   Authorized ordering agencies may order from any contract when a vaccine is available from more than one manufacturer; ordering decisions will be based, at the option of the purchaser, upon price and/or other factors as appropriate (e.g. quality, packaging or other technical considerations).

(2)   Contracts awarded under this solicitation shall have a guaranteed minimum of 100 Doses only.

(3)   Contractors will have an opportunity to revise unit prices every four months of the contract (not to exceed the initial awarded price). Price revisions will become effective on August 1, 2005 and December 1, 2005. (See Contract Clauses, Paragraph C.1.22, Price Revisions.)

**DEFINITIONS:**

OBRA ORDERS - Vaccine orders under Section 1928(a)(2)(A) of the Social Security Act.

OPTIONAL FUNDING - Vaccine orders under Section 1928(d)(4)(B) of the Social Security Act and orders placed by other Federal agencies and authorized immunization programs.

MANUFACTURER - As defined in Subsection (h)(4) of the Social Security Act, means any corporation, organization, or institution, whether public or private (including Federal, State and local departments, agencies, and instrumentalities), which manufacturers, imports, processes, or distributes under it's label any pediatric vaccine.

STATE AGENCIES - Includes State health departments and certain local health agencies authorized to order hereunder.

MRK-KRA01371343
MRK-CHA01371343
Appx8481

Contract No. 200-2005-11533

<u>317/DA GRANT ORDERS</u> - Vaccine orders under Section 317(j) of the Public Health Service Act.

**TYPE OF CONTRACT:**

Indefinite delivery, indefinite quantity type contracts will be awarded for the standard commercial vaccines described herein, manufactured under a current establishment and product license issued by the U.S. Food and Drug Administration (FDA) and as otherwise set forth herein.

MRK-KRA01371344
MRK-CHA01371344
Appx8482

Contract No.  200-2005-11533

## CONTINUATION OF SF 1449

Contract Line
Item No. (CLIN)   Vaccine Description

**0001**       **Hepatitis A Pediatric Vaccine (RFP CLIN 0005)**

|  | Maximum Estimated Quantity: | 4,000,000 Doses |
|---|---|---|
|  | Monthly Maximum: | None   Doses |
|  | Guaranteed Minimum: | 100 Doses |

| Description: | Estimated Quantity | Unit Price | Extended Amount |
|---|---|---|---|
| Hepatitis A Pediatric Vaccine | 400,000 Boxes (4,000,000 Doses) | $114.00 | $ 45,600,000.00 |
| Federal Excise Tax | 400,000 Boxes (4,000,000 Doses) | $  7.50 | $  3,000,000.00 |
| **Total** | **400,000 Boxes (4,000,000 Doses)** | **$121.50** | **$ 48,600,000.00** |

| Product/Brand Name: | VAQTA® |
|---|---|
| NDC Number: | 00006-4831-41 (Box of 10 Single Dose Vials) |
| Minimum Shelf Life: | 12 Months |
| Minimum Order Size: | 100 Doses per Destination |
| Federal Excise Tax: | $0.75 Per Dose |

Note:  The per dose price for VAQTA® is $11.40.

MRK-KRA01371345
MRK-CHA01371345
Appx8483

## CONTINUATION OF SF 1449

Contract Line
Item No. (CLIN)    Vaccine Description

**Hepatitis B Pediatric/Adolescent Vaccine (Ages 0-18) (RFP CLIN 0007)**

Maximum Estimated Quantity:    8,000,000 Doses
Monthly Maximum:    None    Doses
Guaranteed Minimum:    100 Doses

| Description: | Estimated Quantity | Unit Price | Extended Amount |
|---|---|---|---|
| Hepatitis B Pediatric Adolescent Vaccine (Ages 0-18) | 800,000 Boxes (8,000,000 Doses) | $86.00 | $68,800,000.00 |
| Federal Excise Tax | 800,000 Boxes (8,000,000 Doses) | $ 7.50 | $ 6,000,000.00 |
| | **800,000 Boxes (8,000,000 Doses)** | **$93.50** | **$74,800,000.00** |

Product/Brand Name:    RECOMBIVAX HB®

NDC Number:    00006-4981-00 (Box of 10 – 0.5ml Single Dose Vials)

Minimum Shelf Life:    12 Months

Minimum Order Size:    100 Doses Per Destination

Federal Excise Tax:    $0.75 Per Dose

Note:  The per dose price for RECOMBIVAX HB® is $8.60.

MRK-KRA01371346
MRK-CHA01371346
Appx8484

## CONTINUATION OF SF 1449

Contract Line
Item No. (CLIN)   Vaccine Description

0003   **Hepatitis B Vaccine (2-Dose Regimen) for Adolescents Ages 11-15
(RFP CLIN 0008)**

Maximum Estimated Quantity:   300,000 Doses
Monthly Maximum:   None   Doses
Guaranteed Minimum:   100 Doses

| Description | Estimated Quantity | Unit Price | Extended Amount |
|---|---|---|---|
| Hepatitis B (2-Dose Regimen) for Adolescents Ages 11-15 | 30,000 Boxes (300,000 Doses) | $235.00 | $7,050,000.00 |
| Federal Excise Tax | 30,000 Boxes (300,000 Doses) | $ 7.50 | $ 225,000.00 |
| **Total** | **30,000 Boxes (300,000 Doses)** | **$242.50** | **$7,275,000.00** |

Product/Brand Name:   RECOMBIVAX HB®

NDC Number:   00006-4995-41 (Box of 10 – 1ml Single Dose Vials)

Minimum Shelf Life:   12 Months

Minimum Order Size:   50 Doses Per Destination

Federal Excise Tax:   $0.75 Per Dose

Note:  The per dose price for RECOMBIVAX HB® is $23.50

MRK-KRA01371347
MRK-CHA01371347
Appx8485

## CONTINUATION OF SF 1449

Contract Line
Item No. (CLIN)    Vaccine Description

**Hepatitis B Vaccine Combined with Haemophilus Influenza
Type B Vaccine (Hep B/Hib) (RFP CLIN 0009)**

| | |
|---|---|
| Maximum Estimated Quantity: | 3,000,000 Doses |
| Monthly Maximum: | 150,000 Doses |
| Guaranteed Minimum: | 100 Doses |

| Description: | Estimated Quantity | Unit Price | Extended Amount |
|---|---|---|---|
| Hepatitis B Vaccine Combined with Haemophilus Influenza Type B Vaccine (Hep B/Hib) | 300,000 Boxes (3,000,000 Doses) | $230.00 | $69,000,000.00 |
| Federal Excise Tax | 300,000 Boxes (3,000,000 Doses) | $ 15.00 | $ 4,500,000.00 |
| | **300,000 Boxes (3,000,000 Doses)** | **$245.00** | **$73,500,000.00** |

| | |
|---|---|
| Product/Brand Name: | COMVAX® |
| NDC Number: | 00006-4898-00 (Box of 10 Single Dose Vials) |
| Minimum Shelf Life: | 12 Months |
| Minimum Order Size: | 100 Doses Per Destination |
| Federal Excise Tax: | $1.50 Per Dose |

Note: The per dose price for COMVAX® is $23.00

MRK-KRA01371348
MRK-CHA01371348
Appx8486

Contract No.  200-2005-11533

## CONTINUATION OF SF 1449

Contract Line
Item No. (CLIN)   Vaccine Description

**Haemophilus Influenza Type b Vaccine (Hib) (RFP CLIN 0010)**

| | |
|---|---|
| Maximum Estimated Quantity: | 3,500,000 Doses |
| Monthly Maximum: | 400,000 Doses |
| Guaranteed Minimum: | 100 Doses |

| Description: | Estimated Quantity | Unit Price | Extended Amount |
|---|---|---|---|
| Haemophilus Influenza Type b Vaccine (Hib) | 350,000 Boxes (3,500,000 Doses) | $94.70 | $33,145,000.00 |
| Federal Excise Tax | 350,000 Boxes (3,500,000 Doses) | $ 7.50 | $ 2,625,000.00 |
| | **350,000 Boxes (3,500,000 Doses)** | **$102.20** | **$35,770,000.00** |

| | |
|---|---|
| Product/Brand Name: | Pedvax HIB® |
| NDC Number: | 00006-4897-00 (Box of 10 Single Dose Vials) |
| Minimum Shelf Life: | 12 Months |
| Minimum Order Size: | 800 Doses Per Destination |
| Federal Excise Tax: | $0.75 Per Dose |

Note: This vaccine is a 3-dose series

Note:  The per dose price for Pedvax HIB® is $9.47

MRK-KRA01371349
MRK-CHA01371349
Appx8487

CONTINUATION OF SF 1449

Contract Line
Item No. (CLIN)    Vaccine Description

**Measles, Mumps & Rubella Combination Vaccine (MMR) (RFP CLIN 0011)**

| | | |
|---|---|---|
| Maximum Estimated Quantity: | 6,500,000 Doses | |
| Monthly Maximum: | None Doses | |
| Guaranteed Minimum: | 100 Doses | |

| Description: | Estimated Quantity | Unit Price | Extended Amount |
|---|---|---|---|
| Measles, Mumps & Rubella Combination Vaccine (MMR) | 650,000 Boxes (6,500,000 Doses) | $144.20 | $ 93,730,000.00 |
| Federal Excise Tax | 650,000 Boxes (6,500,000 Doses) | $ 22.50 | $ 14,625,000.00 |
| | **650,000 Boxes (6,500,000 Doses)** | **$166.70** | **$108,355,000.00** |

| | |
|---|---|
| Product/Brand Name: | M-M-R® II |
| NDC Number: | 00006-4681-00 (Box of 10 Single Dose Vials) |
| Minimum Shelf Life: | 12 Months |
| Minimum Order Size: | 400 Doses Per Destination |
| Federal Excise Tax: | $2.25 Per Dose |

Note: The per dose price for M-M-R® II is $14.42

MRK-KRA01371350
MRK-CHA01371350
Appx8488

## CONTINUATION OF SF 1449

Contract Line
Item No. (CLIN)    Vaccine Description

**0007**         **Varicella Vaccine (RFP CLIN 0014)**

Maximum Estimated Quantity:    4,000,000 Doses
Monthly Maximum:         None    Doses
Guaranteed Minimum:          100 Doses

| Description | Estimated Quantity | Unit Price | Extended Amount |
|---|---|---|---|
| Varicella Vaccine | 400,000 Boxes (4,000,000 Doses) | $515.00 | $206,000,000.00 |
| Federal Excise Tax | 400,000 Boxes (4,000,000 Doses) | $ 7.50 | $ 3,000,000.00 |
| **Total** | **400,000 Boxes (4,000,000 Doses)** | **$522.50** | **$209,000,000.00** |

| | |
|---|---|
| Product/Brand Name: | VARIVAX® |
| NDC Number: | 00006-4827-00 (Box of 10 Single Dose Vials) |
| Minimum Shelf Life: | 12 Months |
| Minimum Order Size: | 10 Doses Per Destination |
| Federal Excise Tax | $0.75 Per Dose |

Note: The per dose price for VARIVAX® is $51.50.

MRK-KRA01371351
MRK-CHA01371351
Appx8489

## SECTION C - CONTRACT CLAUSES

**FAR 52.212-4, CONTRACT TERMS AND CONDITIONS - COMMERCIAL ITEMS, as incorporated by reference in Block 27 of the Standard Form 1449, includes the following addendum:**

### Shelf Life

Vaccine provided under this contract shall have a minimum shelf life remaining upon delivery to the consignee, as specified within each Contract Line Item Number (See Continuation of SF 1449).

### C.1.2.  Packaging and Packing Requirements

a.      Packaging:

All items shall be packaged in standard commercial manner.

b.      Packing:

Product shall be packed to ensure maintenance of FDA recommended temperature during transit and safe arrival at destination.  Freeze watch indicators or their equivalent are required with each shipment.

### Contract Period of Performance

The contract period of performance shall begin on April 1, 2005 or date of award, whichever is later, and shall end on March 31, 2006.

### C.1.4.  Time of Delivery

Delivery is required to be made at destination within 15 working days after receipt of written or telephonic order (telephone orders to be confirmed in writing).

MRK-KRA01371352
MRK-CHA01371352

Appx8490

**C.1 – Contract Clauses (Continued)**

C.1.5.  **Place of Delivery - F.O.B. Destination**

a.   The following applies to all Contract Line Item Numbers, except 0014, Varicella:

(1) The Contractor shall be required to deliver vaccines F.O.B. Destination, as directed by delivery orders, to National, State and regional warehouses, as well as to private distributors under contract with the federal or State Governments (provided that the private distributor indemnifies or obtains insurance to indemnify, defend and hold harmless the Contractor from any claims and costs arising from or resulting from the distributor's handling of the vaccine purchases under this contract; the Contractor agrees that it will not require any indemnification by the distributor to extend to liability caused by acts or omissions of the Contractor) within the 50 states, the District of Columbia, Puerto Rico, Virgin Islands, Guam, American Samoa, the Commonwealth of the Northern Mariana Islands, Palau, Federated States of Micronesia, and the Marshall Islands or other designated sites in the event of a public health emergency as determined by CDC.

(2) No more than four (4) shipments each to American Samoa, Guam, Federated States of Micronesia, Palau, Marshall Islands and the Commonwealth of Northern Marianas will be required to be made during the contract period. In the event that CDC requests the Contractor to make such shipments to these sits, CDC and the Contractor agree to discuss how to implement delivery of vaccine to these sites in the most efficient manner.

(3) Should a State assert, and a court uphold, that the State has the right to receive deliveries to individual providers directly from the manufacturers, the CDC shall renegotiate the terms and conditions of this contract with the contractor. Renegotiation topics shall include, but are not limited to, distribution costs, extended delivery times, and delivery methodology.

b.   The following applies to Contract Line Item Number 0014, Varicella, only:

(1) The Contractor shall be required to deliver vaccines F.O.B. Destination, as directed by delivery orders to National, State, and Regional warehouses, individual physician providers, as well as private distributors under contract with the Federal or state Governments within the 50 states, the District of Columbia, Puerto Rico, Virgin Islands, Guam, American Samoa or other designated sites in the event of a public health emergency, as determined by CDC. Deliveries to National, State, or Regional warehouses will be contingent on the warehouse being validated solely by the CDC, or it's appointed independent agent, as meeting all requirements specified in Attachment J1, Merck's Shipping Protocol for Varivax®. The CDC shall be responsible for identifying and validating all such warehouses as set forth above; however, in an effort to assist the CDC in fulfilling its obligation, the Contractor shall provide a list of all such warehouses of which the Contractor is award as of the effective date of this contract and shall update such list as the Contractor becomes aware of additional warehouses. Deliveries to private distributors under contract with the Federal or State Governments will be contingent upon (1) the distributor being validated soley by the CDC or its appointed independent agent as meeting all requirements specified in Attachment J1, Merck's Shipping Protocol for Varivax® and (2) that the distributor indemnifies or obtains

MRK-KRA01371353
MRK-CHA01371353
Appx8491

## C.1 – Contract Clauses (Continued)

insurance to indemnify, defend, and hold harmless the Contractor from any claims and costs arising from or resulting from the distributor's handling of the vaccine purchased under this contract. The Contractor agrees that it will not require any indemnification by the distributor to extend liability caused by acts or omissions of the Contractor.

(2) No more than four (4) shipments each to American Somoa and Guam will be required to be made during the contract period. In the event that CDC requires the Contractor to make such shipments to these sites, CDC and the Contractor agree to discuss how to implement delivery of vaccine to these sites in the most efficient manner.

(3) Merck's Shipping Protocol for Varivax® is incorporated herein as Attachment J1

### C.1.6. Amendment to OBRA Statute

In the event of an amendment to 42 U.S.C. Section 1396(s), any terms of this contract affected by such an amendment will be modified in accordance with the revised statute. The Contracting Officer and the Contractor shall meet to discuss such modifications to the contract before finalization of any changes to the contract.

### C.1.7. Product Licensure

a.    The vaccines produced and delivered under this contract shall be manufactured under a current establishment and product license issued by the Food and Drug Administration. as indicated below:

2

b.    The Current Good Manufacturing Practice Regulations (CGMPR's) (21CFR Parts 210-211) will be the standard to be applied for manufacturing, processing and packing of drugs, chemicals, biologicals, and reagents.

c.    The Contractor shall advise the Contracting Officer immediately of any relocation of his prime manufacturing facility or the relocation of any subcontractor's facility, and if at any time during the life of the contract, the item listed under this contract fails to meet CGMPR's and/or a negative Food and Drug Administration Quality Assurance Evaluation is received, the contract may be terminated, in whole or in part, without further liability to the Government.

### C.1.8. Placement of Orders

a    All vaccine under this contract will be ordered by delivery orders. Orders shall be placed by the Health and Human Services (HHS) Supply Service Center, the Centers for Disease Control and Prevention (CDC); or other Federal and State agencies as authorized. Orders may be placed by CDC by telephone (confirmed in writing) or by electronic transfer.

b.    Optional Funding - Other Authorized Federal and State Agencies:

MRK-KRA01371354
MRK-CHA01371354
Appx8492

## C.1 – Contract Clauses (Continued)

Other Federal and State agencies wishing to order vaccines against this contract must receive written authorization from the Contracting Officer. A list of authorized users shall be provided to the Contractor.

Upon receipt of authorization, other Federal and State agencies may place orders against this contract. Contractors shall honor all authorized optional funding orders.

Orders shall be submitted to the Ordering Address specified in Contract Clauses Paragraph C.1.13, Contractor's Ordering/Payment Address and shall contain the following minimum information:

(1)    Date of order;
(2)    Contract number and order number;
(3)    Item description, quantity and unit price;
(4)    Delivery or performance date;
(5)    Place of delivery or performance (including consignee);
(6)    Packaging, packing and shipping instructions, if any;
(7)    Accounting and appropriation data;
(8)    Statement to indicate if partial deliveries are not acceptable; (Lack of a statement shall be construed to mean partial deliveries are acceptable and payment shall be made as required elsewhere herein)
(9)    Any other pertinent data.

## C.1.9.  Delivery Order Limitations

a.    Minimum Order Size: Individual delivery orders issued under this contract must meet the minimum order size as specified within each Contract Line Item Number (CLIN) (See Continuation of SF 1449). When the Government requires supplies covered by this contract in amounts less than stated above, the Government is not obligated to purchase, nor is the Contractor obligated to furnish those supplies under this contract.

b.    Maximum Order: The maximum monthly quantity specified within each Contract Line Item Number (See Continuation of SF 1449) are the maximum number of doses that may be ordered on a monthly basis under the contract, not to exceed the total maximum estimated quantity stated for each CLIN.

## C.1.10.  FAR 52.216-18 ORDERING (OCT 1995)

a    Any supplies and services to be furnished under this contract shall be ordered by issuance of delivery orders or task orders by the individuals or activities designated in the schedule. Such orders may be issued from the effective date of the contract through the expiration date of the contract.

MRK-KRA01371355
MRK-CHA01371355
Appx8493

## C.1 – Contract Clauses (Continued)

b.    All delivery orders or task orders are subject to the terms and conditions of this contract. In the event of conflict between a delivery order or task order and this contract, the contract shall control.

c.    If mailed, a delivery order or task order is considered "issued" when the Government deposits the order in the mail. Orders may be issued orally or by written telecommunications only if authorized in the Schedule.

## C.1.11. FAR 52.216-22 INDEFINITE QUANTITY (OCT 1995)

a.    This is an indefinite-quantity contract for the supplies or services specified and effective for the period stated, in the Schedule. The quantities of supplies and services specified in the Schedule are estimates only and are not purchased by this contract.

b.    Delivery or performance shall be made only as authorized by orders issued in accordance with the Ordering clause. The Contractor shall furnish to the Government, when and if ordered, the supplies or services specified in the Schedule up to and including the quantity designated in the Schedule as the "maximum." The Government shall order at least the quantity of supplies or services designated in the Schedule as the "minimum."

c.    Except for any limitations on quantities in the Delivery-Order Limitations clause or in the Schedule, there is no limit on the number of orders that may be issued. The Government may issue orders requiring delivery to multiple destinations or performance at multiple locations.

d.    Any order issued during the effective period of this contract and not completed within that period shall be completed by the Contractor within the time specified in the order. The contract shall govern the Contractor's and Government's rights and obligations with respect to that order to the same extent as if the order were completed during the contract's effective period; provided, that the Contractor shall not be required to make any deliveries under this contract after fifteen (15) working days beyond the expiration date of the contract.

## C.1.12. Report of Orders

The Contractor shall provide monthly reports of all vaccine purchased under this contract by ordering offices other than CDC. The report shall be submitted within 30 days following the end of the month and shall contain the following information:

Name of Purchaser:
Number of Doses Purchased:
Lot Number:

Reports shall be forwarded to the designated Project Officer with a copy to the Contracting Officer.

MRK-KRA01371356
MRK-CHA01371356
Appx8494

Contract No.  200-2005-11533

## C.1 – Contract Clauses (Continued)

### C.1.13.  Contractor's Ordering/Payment Address

Submission of orders and payment of invoices should be addressed as indicated below:

*ORDERING ADDRESS*                    *PAYMENT ADDRESS*

Merck Vaccine Division                Merck & Co., Inc.
P.O. Box 4, Mailstop ZB-750           P.O. Box 7780-3061
West Point, PA 19486                  Phila., PA 19182-3061

### C.1.14.  Invoice Submission

a.   Invoice submission under this contract will be made as follows:

   (1)   HHS Supply Service Center, CDC and Other Authorized Federal Agencies:  The Contractor shall submit invoices via Electronic Data Interchange (EDI) in a format to be mutually agreed upon between CDC and the Contractor.

   (2)   State and Local Agencies:  The Contractor shall submit an original and 3 copies of its invoice(s) to the address specified on the delivery order.

b.   The Contractor agrees to include the following information on each invoice:

   (1)   Contractor's name and invoice date;
   (2)   Contract number, or other authorization for delivery of property and/or services;
   (3)   Description, cost or price, and quantity of property and/or services actually delivered or rendered;
   (4)   Shipping and payment terms;
   (5)   Other substantiating documentation or information as required by the contract; and
   (6)   Name where practicable, title, phone number, and complete mailing address of responsible official to whom payment is to be sent.
   (7)   Lot number of vaccine vials shipped;
   (8)   Expiration date of vaccine vials shipped; and
   (9)   CDC accounting and appropriation data as described on the delivery order.
   (10)  Taxpayer I.D. Number
   (11)   DUNS Number

### C.1.15.  Method of Payment

a.   Payments under this contract will be made as follows:

MRK-KRA01371357
MRK-CHA01371357
Appx8495

## C.1 – Contract Clauses (Continued)

CDC and Other Authorized Federal Agencies. By check or by wire transfer through the Treasury Financial Communications System at the option of the Government.

    (2)    State Agencies: By check

b.    The Government shall use electronic funds transfer to the maximum extent possible when making payments under this contract. The contractor is required to designate in writing a financial institution for receipt of electronic funds transfer payments. The Contractor shall forward the following information in writing to Centers for Disease Control and Prevention, Attn: Financial Management Office, Atlanta, GA 30333, not later than seven days after receipt of notice of award:

    Full name (where practicable), title, phone number, and complete mailing address of responsible official(s) to whom check payments are to be sent, and who may be contacted concerning the bank account information requested below.

    (2)    The following bank account information required to accomplish wire transfers: (i) Name, address, and telegraphic abbreviation of the receiving financial institution; (ii) receiving financial institution's nine-digit American Bankers Association (ABA) identifying number for routing transfer of funds. (Provide this number only if the receiving financial institution has access to the Federal Reserve Communications System.) (iii) Recipient's name and account number at the receiving financial institution to be credited with the funds. (iv) If the receiving financial institution does not have access to the Federal Reserve Communications System, provide the name of the correspondent financial institution through which the receiving financial institution receives electronic funds transfer messages. If a correspondent financial institution is specified, also provide the address and telegraphic abbreviation of the correspondent financial institution, and the correspondent financial institution's nine-digit ABA identifying number for routing transfer of funds.

    Any changes to the information furnished under paragraph (b) of this clause shall be furnished to Centers for Disease Control and Prevention, Attn: Financial Management Office, Atlanta, GA 30333 in writing at least 30 days before the effective date of the change. It is the Contractor's responsibility to furnish these changes promptly to avoid payments to erroneous addresses or bank accounts.

### C.1.16.  Payments by Other Authorized Federal Agencies and State Agencies

All other Federal agencies and State agencies authorized to order vaccine using optional funding shall be required to comply with all terms and conditions hereunder, including the Prompt Payment Act and all payment provisions required by Paragraph's C.1.13, C.1.14 and C.1.15 above.  All payment provisions are applicable to all partial deliveries accepted by the ordering

MRK-KRA01371358
MRK-CHA01371358
Appx8496

## C.1 – Contract Clauses (Continued)

office. Ordering offices are responsible for advising the Contractor if partial deliveries are not acceptable before shipment (reference Paragraph C.1.8).

### *C.1.17.* **Project Officer**

Rex Ellington has been designated in writing by the Contracting Officer to serve as Project Officer during the period of performance of the contract. The Project Officer shall be responsible for guidance in regard to the technical aspect of the contract, provide a point for liaison between the Contractor and other Government agencies (Federal and State) and be the general focal point to address technical and logistical problems relating to the performance under the contract. The Project Officer shall not have the authority to make any commitments or authorize any changes which affect the contract price, terms and/or conditions; any such changes shall be referred to the Contracting Officer for action.

### C.1.18. Duty To Warn

a.     The Department of Health and Human Services (HHS), HHS Supply Service Center, Centers for Disease Control and Prevention (CDC), and other HHS, Federal and State agencies as authorized, hereinafter referred to as the Government, represent and agree that all programs which are supplied vaccine under this contract shall take appropriate steps to assure either: (1) that such vaccine is administered to each patient on the basis of an individualized medical judgment by a physician; or (2) that such vaccine is administered after meaningful warnings related to the risks and benefits of vaccination are provided to such patient (or the patient's parent or legal guardian), in form and language understandable to such patient, parent, or guardian, including through use of the appropriate version of the most recent vaccine information materials.

b.     If any claim or action is asserted against the Contractor arising in whole or in part from an alleged failure by the Government, to carry out its responsibilities under paragraph (a) above, the Contractor shall promptly notify the Contracting Officer and furnish to him copies of all pertinent documents served upon or received by the Contractor. The Government shall provide reasonable assistance and full cooperation including, but not limited to, making witnesses available to testify and providing relevant documents to the Contractor to assist the Contractor in defending any claims arising from the Government's alleged failure to carry out its responsibilities under paragraph (a) above. The Government shall have the option to participate in the defense of that portion of such claim or action which arises from the alleged failure of the Government to carry out its responsibilities under paragraph (a) above.

MRK-KRA01371359
MRK-CHA01371359
Appx8497

## C.1 – Contract Clauses (Continued)

c.  In the event of the Government's breach of, or failure to carry out, its responsibilities under paragraph (a) above, any measure of resulting damages to the Contractor shall include, but need not be limited to, damages (including money judgments, reasonable attorneys' fees, and other costs) sustained in connection with claims against the Contractor for personal injuries caused by such breach or failure. The Contractor agrees to take appropriate steps to mitigate any such claims by diligently defending claims brought against it or, when appropriate, by entering into reasonable settlement agreements. The entry of a judgment against the Contractor in connection with a claim for personal injury allegedly resulting in whole or in part from the Government's breach of, or failure to carry out, its obligations under paragraph (a) shall not conclusively determine the question whether the personal injury complained of or the damages suffered by the Contractor were caused by the Government's breach of or failure to carry its obligations under paragraph (a). This provision shall not limit any other right of the Contractor to obtain damages or other relief for any breach of this contract or for the settlement of any dispute arising under this contract.

### C.1.19.  Return Privileges

Return privileges for credit, reimbursement or exchange do not apply to this contract except vaccines not conforming to the specifications set forth herein, which are limited to credit or exchange only.

### C.1.20.  Restrictions on Use of Vaccines

Vaccines obtained under this contract shall be used only as authorized under section 1928 of the Omnibus Budget Reconciliation Act of 1993 (OBRA). Health Care Providers who receive vaccine purchased hereunder are strictly prohibited from reselling such vaccine and from charging for the cost of such vaccine, from charging for the cost of such vaccine or otherwise seeking reimbursement for vaccine supplies via public purchase.

### C.1.21.  Federal Excise Tax Credit

a.  Negotiated prices for the vaccines included in this Contract may include a Federal Excise Tax (See Continuation of SF 1449 for applicable Contract Line Item Numbers). If for any reason the vaccine is returned (other than for resale) or destroyed, the Contractor shall within 6 months following the date the vaccine is returned or destroyed, file a claim for credit or refund relative to any tax previously paid on such vaccine. The Contractor agrees to credit or refund the amount of such excise tax to the purchaser to the extent that the Contractor receives a credit or refund from the Federal Government. Any such credit or refund to the purchaser is expressly conditioned upon the authorized purchaser providing a written summary of events leading to the request for credit or refund. The purchaser shall return all undistributed vaccine to the

MRK-KRA01371360
MRK-CHA01371360
Appx8498

## C.1 – Contract Clauses (Continued)

manufacturer for proper disposal, unless destruction of the vaccine renders return impossible. If destruction of the vaccine renders return impossible and is therefore destroyed by the purchaser, the authorized purchaser must provide a written summary of events to the manufacturer within 30 days of said destruction. If a contract is in place with the Contractor at the time when a credit or refund is due, the purchaser may elect to receive vaccine which will be purchased at the current contract price in lieu of a cash payment. Otherwise, the Contractor shall refund the amount due to the purchaser's account. If a credit or refund is issued by the Contractor to the purchaser's CDC VFC or 317 Fund account, a credit memo and a copy of the purchaser's original request for credit shall be submitted to:

> Centers for Disease Control and Prevention
> National Immunization Program
> Immunization Services Division
> Program Support Branch
> Mailstop E-52, Attn: Rex Ellington
> 1600 Clifton Road
> Atlanta, GA 30333

b.   The credit memo shall clearly identify the purchaser's state and source of funding. A separate copy of the credit memo shall also be sent to the purchaser's mailing address.

c.   CDC acknowledges that the Contractor is not in a position to provide copies of all original purchase requests for credit. It is understood that Merck will provide copies of original purchasers requests for credit whenever possible. The Contractgor is not obligated to submit copies of purchasers original requests if such copies are not available to the contractor.

## *C.1.22.* Price Revisions

The contractor shall be allowed to revise the unit price for each CLIN either upward or downward, effective on the following dates: August 1, 2005 and December 1, 2005, provided that the revised price does not exceed the initial contract price. The contractor shall also, at these times, be allowed to revise proposed maximum quantities for each CLIN and add additional package sizes. Proposals for revisions shall be submitted by the contractor no later than 15 calendar days prior to the dates listed above. The CDC will accomplish these changes to the unit prices by issuing unilateral modifications to the contract(s).

### C.1.23.   New Vaccine Products

The following delineates the general approach to adding new vaccine products to the contract:

a.   Manufacturers who receive a new FDA product license for a vaccine already included within the scope of a VFC resolution may, upon written request, have the new product added to its contract by modification at the price revision intervals stated in Terms and

MRK-KRA01371361
MRK-CHA01371361

Conditions, Paragraph C.1.22., Price Revisions.  Such new products must be consistent

MRK-KRA01371362
MRK-CHA01371362
**Appx8500**